
___ FILED        ___ ENTERED
___ LODGED       ___ RECEIVED

10-CV-01952-CMP

DEC 03 2010   JS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

*SEA381147/Summons Iss.*

# UNITED STATES DISTRICT COURT,
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JAMES MCDONALD, et. al<br><br>                        Plaintiffs,<br><br>vs.<br><br>ONEWEST BANK, FSB, NORTHWEST TRUSTEE SERVICES, MORTGAGE ELECTRONIC REGSITRATION SYSTEMS, INDYMAC BANK FSB, DOES 1-50<br><br>                       Defendants. | No. 10-CV-1952 RSL<br><br>COMPLAINT FOR:<br>(1) Violation of Washington Deed of Trust Act RCW 61.24 *et sec*;<br>(2) Slander of Title;<br>(3) Wrongful Foreclosure;<br>(4) Lack of Standing; and<br>(5) Temporary Restraining Order, Temporary Injunction and Permanent Injunction; |

JAMES MCDONALD, Plaintiff, states his claims against the respective Defendants,

ONEWEST BANK, FSB, NORTHWEST TRUSTEE SERVICES, MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INDYMAC BANK, FSB and DOES 1-50;

separately and together as follows:

## I.   JURISDICTION, VENUE AND PARTIES,

**1.1.   Jurisdiction and Venue.**

        Jurisdiction in this case is based on diversity of citizenship pursuant to 28 USC §1332.

The Plaintiff is a resident of Washington State, and some of the parties defendant are residents of

other states, as stated in the descriptions of the parties in Paragraphs 1.2 through 1.5 of this

Complaint. The value of the amount in controversy exceeds $75,000.00, as described in the

promissory note and deed of trust which are described in Paragraph 1.2 of this Complaint,

1   Venue in this matter is properly set in the U.S. District Court, Western District of Washington

2   pursuant to 28 USC §1391(a)(2) based on facts pled in Paragraphs 1.2 and 1.6, below.

3   **1.2   James McDonald, Plaintiff.**

4        James McDonald, Plaintiff, is a resident of the state of Washington and owner of the real

5   property in question. At the time of the acquisition by Plaintiff the Plaintiff signed a Deed of

6   Trust dated January 8, 2007 recorded in the King County Auditor Records January 8, 2007

7   Recording No. 20070110002077 with IndyMac Bank, FSB (Exhibit A). That deed of trust stated

8   that it secured payment of a promissory note (Exhibit B) also dated January 8, 2007 in the

9   original principal amount of $389,481.60. That loan and debt is one of the subjects of this

10  lawsuit. The Loan Number on the Deed of Trust is 125049243. The Legal Description of the

11  Property is

12       Lot 18, High Woodlands Div. 3, according to the plat thereof recorded in Volume
13       85 of Plats, pages 30 through 32, inclusive, in King County, Washington.
14
15       Tax Parcel Number: 328830018003
16
17       Site Address: 14840 119th PL NE, Kirkland, WA 98034
18

19  **1.3.   OneWest Bank, FSB, Defendant.**

20       OneWest Bank, FSB (hereinafter "OneWest") is a federal savings bank doing business in

21  King County, Washington, with a home office in Pasadena, CA. OneWest claims to be the

22  successor in interest of Mortgage Electronics Registration Systems (hereinafter "MERS").

23  OneWest Bank's subsidiary Indymac Mortgage Services is currently servicing the loan number

24  125049243.

25  **1.4.   Northwest Trustee Services, Inc, Defendant.**

1     Northwest Trustee Services, Inc; (hereinafter "Northwest Trustee") claims to be the

2     current substitute trustee of the deed of trust referred to in paragraph 1.1 above. Northwest

3     Trustee Services, Inc is a Washington based corporation. It recorded a Notice of Trustee's sale

4     (Exhibit C) under King County Auditor No. 20100304000502 with sale currently set for Friday,

5     December 10th, 2010 at 10:00 am at outside adjacent to the south entrance to 3535 Factoria

6     Blvd. SE, Bellevue, WA. Thus, Northwest Trustee is subject to the jurisdiction and venue of this

7     court by scheduling the non-judicial sale at the location described in this paragraph.

8     **1.5.  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Defendant.**

9     Mortgage Electronic Registration Systems (hereafter "MERS") is a corporation in

10    Delaware with a mailing address of 1818 Library St, Reston, Virginia. MERS was listed as the

11    beneficiary of the Deed of Trust named by the original lender Indymac Bank, FSB. This party is

12    subject to the jurisdiction and venue of this court.

13    **1.6.  INDYMAC BANK, FSB, Defendant.**

14    Indymac Bank, FSB was a federal savings bank located in Pasadena, CA that was taken

15    over by the FDIC.

16    **1.7.  DOES 1-50, Defendant.**

17    DOES 1-50 are for any parties currently unknown in which through the discovery of

18    these proceedings becomes known as an affiliated entity or entity of interest in the matters set

19    herewithin.

20
21                     **II.    BACKGROUND FACTS AND HISTORY**
22
23    2.1.  **Original Lender was IndyMac Bank, FSB;  Identification of Original**
24          **Borrowers and Trustee Named in Deed of Trust.**
25

1    The original lender on Loan No. 125049243 which is one of the subjects of this lawsuit

2    was Indymac Bank, FSB.  The promissory note in that loan was secured by the deed of trust

3    dated January 8, 2007 recorded in the King County Auditor Records January 8, 2007 Recording

4    No. 20070110002077.  The trustee named in the deed of trust is Pacific Northwest Title

5    Insurance Co, Inc.    The borrower (who signed the note) James McDonald is the sole owner of

6    the real property in question.

7    **2.2.**  **First Recorded Assignment of Recorded Deed of Trust;**
8          **Recording Date: 02/04/2010.**
9
10    On February 4, 2010 an Assignment of Deed of Trust (Exhibit D) was recorded between

11    Defendant(s) OneWest and MERS in King County Records Recording No.20100204000502.

12       a.  This Assignment reputedly assigned MERS' beneficial interests in both the Deed of

13           Trust referenced above and the Note therein described to OneWest Bank, FSB.

14       b.  This Assignment was signed by a Brian Burnett, Assistant Vice President of MERS

15           on January 27, 2010. According to Mr. Burnett's online resume found at

16           http://www.linkedin.com (Exhibit E) he is actually an "AVP – Foreclosure" at

17           OneWest Bank and not a true employee of MERS. Therefore OneWest has

18           apparently taken it upon themselves to appoint themselves as beneficiary. There is

19           no mention of Mr. Burnett working for both companies raising the question of how

20           he can be employed by both companies simultaneously.

21       c.  The signature was notarized by Alex McBride a notary in the State of Texas stating

22           that Brian Burnett had appeared before him and under on oath stated that he was

23           authorized to execute the instrument and acknowledged it as Assistant Vice

24           President of MERS.

1          i.  The notary's signature states "Notary Public in and for the State of Texas

2              Residing at "illegible location".

3    **2.3**    **Recorded Appointment of Successor Trustee Named**
4           **Northwest Trustee Services, Inc.**
5
6    On February 4, 2010 an Appointment of Successor Trustee (Exhibit F) was recorded by

7    Defendant OneWest in King County Records Recording No. 20100204000503.

8        a.  This document appointed Northwest Trustee Services, Inc. as a Successor Trustee.

9        b.  The 1st paragraph states the beneficiary as MERS.

10       c.  The 3rd paragraph certifies that the "present beneficiary" is the owner and holder of

11          the obligation (Note) secured by the deed of trust. However on May 18, 2010 the

12          Plaintiff received a letter from OneWest which on page 3, paragraph 1 states that the

13          investor (owner) of the note was Federal Home Loan Mortgage Company (hereafter

14          "Freddie Mac") (Exhibit G). This was further confirmed by verification through Freddie

15          Mac's website (Exhibit H). Therefore the statement made under oath in the recorded

16          document is false as there cannot be two owners of a mortgage Note.

17       d.  The Assignment is signed by Suchan Murray as Authorized Signatory for the

18          "present beneficiary" OneWest Bank, FSB on January 27, 2010.

19       d.  The signature was notarized by Anna Elizabeth Ramsey, a notary in the State of

20          Texas stating that Suchan Murray had appeared before her and under on oath stated

21          that she was authorized to execute the instrument and acknowledged it as Authorized

22          Signatory of OneWest Bank, FSB.

23       e.  This appointment was signed and recorded at the exact same time as the

24          abovementioned Assignment of the Deed of Trust, thereby making the actions taken

25          by both OneWest and Northwest Trustee even more questionable.

1   **2.5    <u>Plaintiff Received Notice of Trustee's Sale.</u>**

2          Plaintiff received a Copy of the Notice of Trustee Sale (Exhibit C) from Defendant

3   Northwest Trustee on or about February 12, 2010 stating the property described above was to be

4   sold at Trustee's Auction on May 10, 2010.

5   **2.6    <u>Plaintiff Made Multiple Attempts to Obtain a Loan Modification Without</u>**
6          **<u>Success.</u>**
7
8          Plaintiff made multiple attempts to obtain a loan modification from OneWest Bank but

9   was declined. Plaintiff further submitted a short sale offer but Defendant One West was

10  unresponsive. This brings up a pertinent question as to whether or not OneWest has the authority

11  or standing to grant a loan modification or short sale.

12

13  **2.7    <u>Research Related to The Loan</u>**
14
15         Due to Defendants refusing to provide Plaintiff with a loan modification and the flurry of

16  media attention on "Foreclosure Fraud," Plaintiff began to research this particular loan to see if

17  this may be a case of misrepresentation and possible "fraudulent" foreclosure.  As a result of that

18  investigation, Plaintiff discovered that there were breaks in the chain of title with multiple parties

19  claiming ownership of the loan. Those parties are OneWest and Freddie Mac. Due to the lack of

20  of assignments and omissions it is impossible to determine without the Court's assistance who in

21  fact is the owner of the obligation and has standing. The Appointment of the Successor Trustee is

22  void as OneWest failed to meet the requirements for appointment as they are not a real party of

23  interest. *See  the requirement in RCW 61.24.010 (2), which reads:*

24                 *"...[T]he beneficiary shall appoint a trustee or a successor trustee.*
25                 *Only upon recording the appointment of a successor trustee in each*
26                 *county in which the deed of trust is recorded, the successor trustee*
27                 *shall be vested with all powers of an original trustee"*
28

1   OneWest made a false statement in the Appointment of Successor Trustee because OneWest had

2   no right to appoint a successor trustee. OneWest cannot be the beneficiary as per the law the

3   beneficiary is the **owner** and holder of the note RCW 61.24.005(2) therefore OneWest cannot

4   appoint a successor trustee. OneWest stated that FreddieMac is the owner (Exhibit G). This fact

5   caused Plaintiff to bring this action to the court to obtain relief from this unlawful non-judicial

6   foreclosure action in violation of applicable law.  As Northwest Trustee was most likely

7   instructed to proceed by the parties who claim to be beneficiaries with the foreclosure action not

8   only has Northwest Trustee violated RCW 61.24.010 (2), but OneWest has breached their duty to

9   abide by RCW 61.24.010(2) before requesting a non-judicial foreclosure under the Deed of

10  Trust.

11

12  **2.9**     **Plaintiff Has Reason to Believe That Loan. No. 125049243 was securitized,**
13
14  If the note and deed of trust were indeed sold to Freddie Mac the loan was most likely

15  securitized. In mortgage securitization an individual note is placed in a "pool" of other mortgage

16  notes and then resold to investors. Per Freddie Mac's website this is their common practice

17  (Exhibit I). A pool of mortgages is governed by a document called the Pooling and Servicing

18  Agreement. This information was requested by the Plaintiff from Defendant OneWest who

19  refused to provide that information. If that is what occurred in this transaction it is unclear who

20  actually **owns** the note secured by the above mentioned Deed of Trust. As **RCW 61.24.030(7a)**

21           *states only the **owner** and holder of the mortgage note can initiate a non-judicial*

22  *foreclosure process.*

23  Who really **owns** and holds the note and is the true beneficiary of the Deed of Trust remains to

24  be proven, and the burden of proof is on the party who claims to own and hold the note.

1      a.  Do any of the parties currently bringing action satisfy the requirements of being the

2           owner and holder of the note, identified as a "Beneficiary" in RCW 61.24 et seq.

3           which is the only party with the proper standing to foreclosure, not the servicer or

4           the collecting agent,  and as such must be so named in the pleadings. *Id; Kang Jin*

5           *Hwang, supra; Vargas, supra.* Pursuant to FRCP 17(a) and 19(a), the real party in

6           interest is the only party that can proceed in this action on behalf of the beneficiary

7           of the note in question and their joinder is required.

8      b.  Another question that arises due to the securitization of the Loan is; Does the note

9           remain negotiable and has the obligation been discharged partially or fully. In

10         offering guidance in this matter, Plaintiff has included copies of In re: Jacobson #08-

11         45120, the decision being entered on March 10, 2009, in the Western District of

12         Washington Bankruptcy Court. The decision by Phillip H. Brandt provides some

13         clarity with regard to the issue at bar. Plaintiff also provides for review, In re: Mitchell

14         # 07-16226, entered March 31, 2009. Examples of these 3rd party sources are credit

15         default swaps and other forms of insurance, cross-collateralization, over-

16         collateralization, reserves, and bailouts from the Federal Reserve and U.S. Dept. of

17         Treasury.

18      c.  The issue of full and complete authority is complicated in cases when the obligation

19         is part of a MBS (MORTGAGE BACKED SECURITY), such as in this case, where

20         the true nature of the parties involvement and authority in reference to the

21         Transaction and subsequent Trustee's sale is difficult to ascertain due to the

22         complete disregard for applicable law and lack of maintaining proper records and

23         following applicable state law where the loans originated.

1    Any party acting on behalf of an MBS Trust has their powers spelled out within the terms of

2    the Pooling and Service Agreement ("PSA") for that Trust. Most PSA's grant only limited

3    powers to MBS Trustee's. They do not grant them the power to stand in the shoes of the real

4    party in interest unless there is a special document signed by at least a certain percentage of the

5    MBS certificate holders granting the MBS Trustee special powers pertaining to specific claims

6    and litigation. Full authority to act on behalf of the Trust must include the authority to enter into

7    compromise settlements in litigation. Furthermore, the authority must be in accordance with the

8    terms of the Bond Indenture of the mortgage bond held by the real party in interest, received by

9    the investor that funded the loan when the MBS certificate was purchased, that spells out the

10   terms of the agreement between the Bond Issuer and the Bondholders. Only the investor has the

11   right to enforce the note. OneWest has failed to prove it had standing to assign a substitute

12   trustee, much less the authority to instruct that trustee to begin foreclosure proceedings, and

13   the real true party in interest must be joined in this proceeding to show that OneWest's actions

14   were in fact authorized and not unlawful deception and performed in the pursuit of additional

15   economic benefits and a relevant decision can be made by the Court. See for example, *In re Kang*

16   *Jin Hwang* 396 B.R. 757 (Bankr.C.D.Cal.2008); *In re Vargas*, 396 B.R. 511 (Bankr.C.D.Cal.,

17   2008). The right to enforce a note on the note holder's behalf does not convert the note holder's

18   agent into a real party in interest. *Id.* at 396 B.R. at 767, quoting 6A Wright, Miller & Kane,

19   *Federal Practice and Procedure: Civil 2d* § 1553; *In re Jacobson*, 402 B.R. 359, 366 (Bankr.

20   W.D.Wash., 2009). The holder of the note, identified as a "Beneficiary" in RCW 61.24 *et sec.*

21   which is the only party with the proper standing to foreclosure, not the servicer or the

22   collecting agent,  and as such must be so named in the pleadings. *Id; Kang Jin Hwang, supra;*

23   *Vargas, supra.* Pursuant to FRCP 17(a) and 19(a), the real party in interest is the only party that

1   can proceed in this action on behalf of the beneficiary of the note in question and their joinder is

2   required. FED. R. CIV. P. 19 requires mandatory joinder of every person with an interest in the

3   note if not doing so could lead to inconsistent results in different proceedings affecting the same

4   subject matter. *Kang Jin Hwang, supra* at 7. Foreclosure agents and servicers must prove they

5   have authority to act for a party that has standing. *In re Scott*, 376 B.R. 285 290 (Bankr. D. Idaho

6   2007); *Kang Jin Hwang*, 396 B.R. at 767; *Jacobson, supra* at 12.  A nominee or agent must also

7   show that has actual authority from the true party in interest to act on its behalf and it cannot be

8   assumed that it continues to have such authority even if granted it in the original deed of trust.

9            Again, as the facts regarding these transactions are coming to light, a copy of the pooling

10  and servicing agreement(s), is necessary, as it is the document, if separate, that sets forth the terms

11  of the powers of the Trustee to the pool, because even the Trustee may not have the powers to act on

12  behalf of the Trust, let alone the servicing agent for the Trustee of the pool. And again the Bond

13  Indenture must also be produced to prove actual authority to act on behalf the Trust and the

14  Certificate (Bond) Holders. This is because the PSA is a contract between the "Lender" as

15  stated in the Deed of Trust, which wasn't really the lender but played the role of the lender in the

16  transaction, the "Master Servicer" and the "Trust." But this contract does not include the

17  investor (certificate holder), who is the real party in interest and the only party entitled to enforce

18  the note, and accordingly the only party with the power to grant authority to act on its behalf. It

19  has unfortunately customarily been the practice in many Courts to not insist on strict application

20  of the Rules of Evidence, in the interest of the efficient and inexpensive administration of

21  justice. But the MBS system has been one big giant fraud and there have been many reported

22  instances that have brought the veracity and authenticity of documents in mortgage foreclosure

23  cases into doubt. And there are generally gaping holes in proof of the history of ownership and

1    assignments of the notes and in the proof of their chain of custody, that would be necessary

2    to fairly prove the identity of the real party in interest and its connection to the party seeking

3    to act on its behalf are so glaring, there must be compliance with the Rules of Evidence, such

4    as those for competency of witness, personal knowledge, hearsay and authenticity, not to

5    mention matters such as relevance of factual assertions contained in documents, and

6    sufficiency of proof. Many of the cases cited herein strictly enforced the evidentiary rules in

7    these cases, because various facts in the cases placed the veracity of the documentary evidence in

8    doubt. For example, *In re Mitchell*, supra at 13-14; *In re Vargas*, 396 B.R. 511, 517 (Bankr.

9    C.D. Cal. 2008).

10   At a minimum, there must be an unambiguous representation or declaration setting forth the

11   servicer's authority from the present holder of the note to collect on the note and enforcement

12   of the deed of trust. If questioned, the servicer must be able to produce and authenticate that

13   authority *Jacobson at 18.*

14       A further development has come to light that makes even these requirements insufficient. It

15   is necessary to obtain proof that the original funding came from the MBS Pool Trust that is

16   seeking to enforce the note, as well proof of the identity of the specific persons or entities that

17   invested the funds that were loaned to Plaintiff, and a copy of the bond indenture specific to

18   the loan being sought to be enforced.

19   *Nosek v Ameriquest* et al (Fed D Mass 2009) (Case 4:08-cv-40095-WGY), supra, is a District

20   Court decision in its second trip up the appellate ladder from a Bankruptcy Court adversary

21   proceeding. This questions extremely serious matters to which every mortgage company,

22   servicer, trustee to a pool, and all attorneys involved ought to pay real attention. Up to the

23   present time, mortgage companies and servicers have bluffed their way through proofs of

1    claim, motions for relief from stay and on to foreclosure, misleading the Court as to

2    their real role in the matter and without identifying for the Court, borrower, trustee,

3    or anyone who requests the information, the real party in interest. The mortgage

4    entities seeking to enforce a note and deed of trust, and their attorneys were

5    sanctioned severely in *Nosek* for not investigating and revealing to the Court the

6    real nature of the mortgage company's interest in the note, nor of their real

7    authority to enforce them. It is not doubtful that attorneys involved in enforcing

8    mortgages in the past have not been aware of the true nature of the facts pertaining

9    to the securitized loans they have enforced. If the nature of the transactions were

10   apparent by mere review of the notes, deeds of trust and payment accountings, the

11   economy would not have been nearly destroyed by the loss of trust in the system that

12   arose when facts pertaining to MBS began to come to the awareness of the investing

13   persons and entities, particularly when the pool contains tranches that include

14   subprime loans, as is true in most, if not all, cases.  But *Nosek v Ameriquest* et al,

15   Id, provides guidance that a greater standard of investigation and disclosure to the

16   Court is required, due to the prevailing state of affairs, and of the fact that the

17   nature of these transactions is no longer a mystery, and is becoming increasingly

18   known to all.

19   The reason for intentional destruction of notes was to hide proof of fraud from the

20   investors and to hide from the borrower the identity of the holder of the note, because of

21   fear of liability pursuant to a plethora of causes of action. There have been a large number

22   of documents presented in Courts, including notes that had fabricated endorsements,

23   such as cleaning up gaps months and years after fact. The original note must be

1    produced complete with original endorsements, and all must have been made by the

2    proper party.

3    During the process of securitization and its aftermath, there were a number of routine

4    practices that had the effect of rendering the mortgage loans unsecured as a matter of

5    law. One such practice was to separate ownership of the note from the deed of trust,

6    where the security interest specifically follows the beneficial ownership of the note.

7    When the note is split from the deed of trust, "the note becomes, as a practical

8    matter, unsecured. A person holding only a note lacks the power to foreclose

9    because it lacks the security, and a person holding only a deed of trust suffers no

10   default because only the holder of the note is entitled to payment on it. "Where the

11   mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his

12   'assignee,' having received no interest in the underlying debt or obligation, has a

13   worthless piece of paper." 4 RICHARD R. POWELL, POWELL ON REAL

14   PROPERTY, § 37.27[2] (2000). In re Mitchell, supra at 8. Another event or state of

15   affairs that has rendered mortgage loans unsecured as a matter of law is when there has

16   been a separation of legal title to the note and equitable ownership of the note, in

17   cases where the note has been satisfied in favor of the equitable owner of the note by

18   a 3rd party that is not the holder of legal title to the note. Because of the commonality

19   of such events during the securitization years, OneWest must prove the degree to

20   which the obligation to the real party in interest has been discharged. This is because

21   in the MBS situation, there is little if any connection between the servicer's accounting of

22   mortgage payments and the degree to which the obligation to the real party in

23   interest has been discharged. In most cases the obligation to the investor, or real

1    party in interest, has been paid off by a third-party source, such as a credit default swap

2    obligee, other insurance, bailout funds, or a cross-collateralization source.

3    The "Lender" in the Deed of Trust, IndyMac Bank, FSB., as in all cases of MBS never provided

4    funding for the loan, but merely arranged and/or participated in the loan transaction. The

5    process by which the MBS were created was the sale of an interest in **the income stream of**

6    **payments** on residential mortgages. Typically, these mortgages did not exist at the time the

7    securities were purchased. Because of the way the securities were packaged and sold, such

8    huge pools of money were created that there was incredible pressure on all participants in the

9    process to go out and find people to borrow money and sign their name to notes and deeds of

10   trust. This lead to the laxity of lending standards, huge commissions for all concerned, and

11   pressure on borrowers to take on loans they could never realistically be expected to pay back.

12   The Originator is the person or company that finishes a mortgage transaction by helping the

13   borrower complete all the necessary steps. A mortgage originator could be a mortgage broker

14   or mortgage banker, and represents the original mortgage lender, and receives commissions or

15   fees for its participation. The Sponsor is a Bank, Investment Bank, or Mortgage Company, and

16   acts as a financial conduit between the funding source and the Closing Agent, which is an

17   Escrow or Title Company. The Sponsors have access to a warehouse line of credit from a

18   Bank, Investment Bank, or other Financial Institution, called the Depositor, that obtained the

19   funds from the sale of the MBS certificates. Depositors hold the funds from the sale of MBS

20   certificates, some of which is used to supply funds for mortgage loans paid through the

21   aforementioned process, and also obtain the notes executed by the Borrowers. The Issuer is a

22   Bank, Investment Bank or other financial institution that sets up the MBS and issues the

23   certificates. The Underwriter works with the Issuing Bank to set up the MBS, set up the

1    various tranches, and make risks determinations of the various tranches. The Investor in the

2    MBS situation must be a "Qualified Investor," which means that it satisfies legal criteria based

3    on a level of sophistication in knowledge and experience in the securities markets, examples

4    of which are fund managers, hedge fund managers, pension fund managers, high net worth

5    individuals, corporations, government agencies and other money management fund managers.

6    Servicers are financial institutions that administer and provide the mortgage payment

7    collections activities and are supposed to pass through the stream of income in accordance

8    with the terms of the PSA and the Servicing Agreements. The only real parties to the MBS

9    transaction are the borrowers and the investors. The investor is the only party that purchased

10   the note for value. None of the other intermediaries paid anything of value; rather all of

11   them were paid value in exchange for "services." Numerous reports have slowly unfolded

12   that have explained how individuals on Wall Street systematically engaged in the greatest

13   scheme of fraud in the history of the world. In fact, the complexity of the derivatives they

14   created and the complex structure of personnel involved in their creation and valuation

15   created a level of plausible deniability beyond the reach and comprehension of the regulatory

16   agencies and even very sophisticated bankers and investors. If this were not so then it would not

17   have led the world economy to the brink of collapse. At the heart of the "complexity" was the

18   use of computer algorithms that took spreadsheet projections to levels of "sophistication"

19   never seen before. The result was that when a computer spit out a value for mortgage

20   backed securities, it was impossible to audit by hand. So Wall Street created something that

21   was treated as the equivalent of money and the value of this money was whatever Wall Street

22   said it was. Every participant in the chain received consideration beyond that which they

23   would normally have received in traditional mortgage loan transactions, largely but not

1        entirely, due to the extremely heavy volume, starting with mortgage brokers and

2        appraisers, all the way through "Lenders," which was not really lenders,

3        intermediate selling banks, sponsoring investment banks, underwriters, rating

4        agencies, fund managers, sub-servicers, servicers, master servicers, pool

5        administrators, and top level pool tranche bondholders. At later stages, only the

6        intermediaries were making money. They have been reaping the benefit of payments

7        made and proceeds from foreclosures, even though they never invested as much as

8        a dime in loan funding.

9        The Wall Street firms, whose stocks were traded publicly, had no risk

10      whatsoever. They were essentially capitalized by investors in their stock,

11      investors (Customers) in their financial products at a time when everyone was

12      searching for higher returns and greater safety, which is how these fraudulent

13      products were sold. Certain Wall Street firms and certain individuals in those

14      firms made great profit, which were in reality the proceeds of fraud and theft.

15      It was quite common that the mortgage backed securities were sold to investors

16      before the loans were made, before the notes and deeds of trust were executed

17      and before it was even known who the borrowers would be. They were further

18      sold as backed by AAA ratings and insurance guarantees in the form of credit

19      default swaps and private mortgage insurance. Though they began as negotiable

20      instruments they were really unregulated securities and this was the original

21      design. When all the complexity and confusion is seen through, the only real

22      parties to a mortgage loan transaction are the investor (the real source of the

23      money that funded the loan) and the borrower (or "issuers of unregulated

1    securities"). All other intermediary participants in the securitization process were

2    superfluous entities without any value of their own placed at risk. Despite the

3    computer driven valuations that were produced, the real value was zero for both

4    investors and borrowers. Borrowers were  increasingly persuaded and pressured

5    into loans that were doomed to fail from the  start, and were left with properties

6    that whose real market value was sometimes half of  the amount that they owed.

7    The actual investors are the only parties that would have any real standing to

8    make a claim on a note or deed of trust, because they are the only parties that

9    provided any loan funding, though by the time they are run through the

10   securitization process these notes are really unsecured as a matter of law. The

11   fact is  that the notes were rendered non-negotiable because of the way that they

12   were pooled  into Real Estate Mortgage Investment Conduits ("REMIC"), the

13   MBS Pool Trusts, which by law are not permitted to own any assets, and by the

14   way mortgage payments and  funds from other sources passed through the

15   REMIC, not with payments on any individual note being applied to the funder of

16   the particular loan, but by payment first to  the top tranche and then downward,

17   regardless of which tranche belonged the note  upon which said payment was

18   made. This rendered all the notes non-negotiable, with there being no holder in

19   due course. The process and its aftermath have also rendered the notes unsecured.

20   The geniuses on Wall Street that masterminded such incredibly ironic results may

21   or may not have foreseen these legal effects of their creations, but this was really

22   irrelevant to them in as much as their money had already been made. The

23   investors have found themselves at a place where they either eat the entire loss or

1          find a way to recover from the intermediary participants. They cannot and are not

2          suing the borrowers, because even if they successfully established their status as

3          holders, they would be subjecting themselves to the risk of being hit with all the

4          defenses, claims and counterclaims under TILA, deceptive lending, securities

5          violations, rescission, treble damages, usury and so forth. Investors are not

6          making claims against borrowers, even when they are clearly identified as a

7          single hedge fund. They are mostly filing large suits, such as class action suits,

8          against intermediate participants such as the original sponsor investment banking

9          firms, depositing banks and issuing banks that masterminded the entire process,

10        and entities such as Wells Fargo, Citibank, JPMorgan, Bank of America,

11        OneWest Bank or Countrywide because of fraud in the sales of the securities

12        from the very beginning, and even after it had been established. None of these

13        entities have defenses, claims and counterclaims, and they have no basis for

14        claiming treble damages, interest, attorney fees and court costs. Many of these

15        suits can be brought against any and all intermediate participants, based on

16        theories such as joint venture, common purpose, aiding and abetting, and RICO.

17        It is likely that the true party in interest is responsible for numerous violations of

18        State and Federal Law that could subject it to serious financial and other

19        liabilities that exceed the face value of the note. It has often been speculated

20        among many commentators that this is the reason true parties in interest do not

21        appear in these cases. For if they did, it would amount to an admission that it is

22        the holder in due course in a consumer real estate transaction, which would make

23        it liable for the actions of all prior holders of the note and other causes of action,

1    such as malfeasance performed by agents of the true party in interest and those of

2    its predecessors.

3    Plaintiff, would then file a motion for leave to amend so as to add various causes of

4    action, which may include a quiet title action, and /or other irregularities, involving the

5    enforcement by OneWest and/or the true party in interest. Causes of action that are not

6    atypical to transactions, such as that involved in this case include: Failure to Join

7    Indispensable Parties; Standing; Reconveyence; Payment; Offset; Failure to Record --

8    - Condition Precedent; Fraud in the Inducement; Fraud in the Execution;

9    Rescission; Slander of Title; Breach of Fiduciary Duty; Negligence; Negligent

10   Supervision; Appraisal Error or Fraud; Unconscionable Predatory Lending Practices;

11   Unjust Enrichment; Identification Theft; Deceptive Practices; False Advertising;

12   Securities Fraud; Constructive Trust on Profits; Breach of Privacy, as well as statutory

13   causes of action under the following federal statutes, HOEPA; RESPA; TILA;

14   RICO, and possibly a quiet title action.

15   Plaintiff asks that even if the true party in interest were to be joined in this case and the

16   proof required as set forth herein were provided, Plaintiff asks that the action be tolled

17   pending the results of their investigation and complete and full responses to discovery

18   have been received, as well as additional time for the investigative report to be completed

19   and time to prepare the amended complaint.

20   Even if OneWest can prove it is a real party entitled to proceed with the Trustee Sale, that

21   it has a valid security interest and that the obligation has not been discharged, it may not

22   do so  if it is in violation of the statutory duties and obligations it contractually bound

23   itself to perform when it struck its agreement with the Department of the Treasury as a

1   condition for acceptance of  government bailout funds pursuant to the Troubled Asset

2   Relief Program ("TARP" or "TARP Funds") and/or otherwise.

3      d.  The first step here is for the Defendant(s) to provide evidence to show which if any

4         of them is the real parties in interest. The only real party in interest is the original

5         investor that supplied the funds that were loaned in exchange for the instrument (the

6         note). OneWest is not the original investor, and is not the real party in interest.

7         Only after the precise identity of the real party in interest has been proven can

8         OneWest then prove that it has actual, full and complete authority to act on behalf of

9         the real party in interest, which is something that it must prove. If it cannot prove

10        this, then the real party in interest must be joined as a party. If OneWest can prove that

11        it has this authority, then it must prove that the instrument is negotiable. Then it must

12        prove that the real party in interest is a holder in due course. Then it must prove the

13        extent to which the debt obligation has not been discharged. Then OneWest must

14        prove that the obligation remains secured by the real property described above.

15     e.  Plaintiff demands strict proof that:

16         a.  The endorsements were made to the proper entities;

17             i.  all endorsements were properly executed;

18             ii.  properly executed at the appropriate time by the appropriate parties;

19             iii.  not made subsequently in order to clean up the facial appearance of

20                the documents;

21         b.  That OneWest is the real party in interest and has the right to enforce the note

22            for its own benefit, or that if it does so with full and complete authority to act

23            on behalf of the real party in interest.

### III. Plaintiff's Claims

1.  **Claim of Violation of Deed of Trust Act RCW 61.24 et. Seq.**

    a.  Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

    b.  Plaintiff alleges that Defendant Northwest Trustee has violated RCW 61.24 *et sec.* by proceeding to issue and record in the King County Auditor records a Notice of Trustee Sale without being appointed the rights and authority of Trustee under the Deed of Trust referenced above.

    c.  Plaintiff alleges that Defendant Northwest Trustee has violated RCW 61.24 *et sec* by not complying with all of the prerequisites to issuing a Notice of Trustee Sale.

    d.  Plaintiff alleges that Defendant OneWest has violated RCW 61.24 *et seq.* by causing Defendant Northwest Trustee to initiate Non-judicial foreclosure proceedings.

2.  **Claim of Slander of Title**

    a.  Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

    b.  Plaintiff alleges that Defendant Northwest Trustee has Slandered title to the Real Property identified above by recording an unlawful notice of Trustee Sale.

    c.  Plaintiff alleges that Defendant OneWest has Slandered Title to the Real Property identified above by causing Defendant Northwest Trustee to record unlawful documents in the King County Auditor Records.

3.  **Claim of Wrongful/Unlawful Foreclosure**

1    a. Plaintiff James McDonald repeats and realleges each and every item and

2      allegation above as if fully and completely set forth herein.

3    b. Plaintiff alleges that Defendant(s) have all engaged in a wrongful and unlawful

4      foreclosure action by utilizing unfair and deceptive business practices in violation

5      of RCW 19.36 et sec. unfair and deceptive business practices include:

6       i. Engaging an unauthorized party to initiate foreclosure proceedings.

7       ii. Attempting to gain legal title to the Real Property described above through

8        the wrongful and unlawful foreclosure.

9  **4. <u>Claim for Temporary Restraining Order and Permanent Injunction</u>**

10    a. Plaintiff James McDonald repeats and realleges each and every item and

11      allegation above as if fully and completely set forth herein.

12    b. If the Defendant Northwest Trustee is permitted to sell the property at a non-

13      judicial foreclosure sale, the rights of and interests in Plaintiff's real property as

14      described above may be lost or otherwise thwarted, even though Plaintiffs are

15      filing this lawsuit. Furthermore if the sale is allowed to continue the Plaintiff may

16      be unable to recover the subject property.

17    c. Plaintiff moves this honorable court to immediately issue a Temporary

18      Restraining Order so as to preserve the status quo until a hearing for a Permanent

19      Injunction can be heard as to why Defendants should not be enjoined until a

20      determination of Plaintiffs' respective claims can be heard by the Court in their

21      respective merits; and further request a Temporary Injunction be entered so as to

22      preserve the status quo until the merits of Plaintiffs respective claims are

23      determined by the Court.

1    d.  Wherefore, Plaintiff hereby moves this honorable Court to issue a temporary

2        restraining order and a preliminary injunction in order to stop the foreclosure sale.

3        Until all claims and allegations brought by Plaintiff are determined by the Court.

4        In addition, Defendant(s) should be estopped from restarting any actions of

5        foreclosure until such time they provide strict proof that they have the standing

6        and appropriate to do so.

7  5.  **Claim for Lack of Standing**

8    a.  Plaintiff James McDonald repeats and realleges each and every item and

9        allegation above as if fully and completely set forth herein.

10    b.  Plaintiff alleges that none of the Defendant(s) have the proper authority to invoke

11       the power of sale originally granted to the named Trustee on the  Deed of Trust or

12       enforce the obligation referenced in the Note described above as they are not a

13       real party of interest in the obligation.

14    c.  There are significant gaps in the chain of ownership of the beneficial interests in

15       the Deed of Trust and Promissory Notes. The original named lender Indymac

16       never recorded any assignments or transfers whatsoever. The original beneficiary

17       MERS may have transferred the rights of the Deed of Trust that assignment is

18       void as they never had the rights to assign in the Note. Only the owner of the

19       financial instrument can assign beneficial interest in the Deed of Trust RCW

20       62A.3-305(c). **62a.3-201(b)** states:

21           "Except for negotiation by a remitter, if an instrument is payable to an

22           identified person, negotiation requires transfer of possession of the instrument

23           and its endorsement by the holder. If an instrument is payable to bearer, it may

24           be negotiated by transfer of possession alone."

1      d.  Therefore, the current foreclosure action is being brought by a party which does

2            not have the appropriate standing to enforce the obligations which the

3            Defendant(s) claim are secured by the Deed of Trust.

4

5      Wherefore, Plaintiff moves the Court to provide relief as follows: :

6      a.  Issue a Temporary Restraining Order to immediately stop the pending Trustee

7            Sale currently scheduled for December 10, 2010.

8      b.  Void all actions of foreclosure initiated by Defendant Northwest Trustee.

9      c.  Order Defendants to provide strict proof of their claim and standing to enforce it

10           including:

11              i.  all endorsements properly executed and made to the proper entities;;

12             ii.  properly executed at the appropriate time by the appropriate parties;

13            iii.  not made subsequently in order to clean up the facial appearance of the

14                  documents;

15             iv.  produce the servicing and pooling agreement for the trust in which this

16                  loan was placed in

17             v.  provide any and all unrecorded transactions relating to the loan by

18                  Indymac, OneWest, MERS, Freddie Mac or other unknown parties.

19      d.  Find that the actions of all the Defendants be determined to be unfair and

20           deceptive business practices in violation of RCW 19.86, et seq. and that this Court

21           award all such relief to Plaintiff as may entitled, including Treble damages and an

22           award of costs and attorney's fees;

23      e.  Order Defendant OneWest to provide strict proof that it is the real party in

24           interest and has the right to enforce the note for its own benefit, or that if it does so

1            with full and complete authority to act on behalf of the real party in interest.

2     f.   require the real party in interest to appear as a party to this proceeding, and to

3           present strict proof that it is the real party in interest, or has full and sufficient

4           authority to act on behalf of the real party in interest, as well as proof of all

5           required elements as set forth above, with strict application of the Rules of

6           Evidence, including proof of the amount, if any, of the obligation that remains

7           undischarged.

8     g.   Issue a permanent injunction based upon the extraordinary circumstances in

9           today's economy to stay further action until such time that strict evidence has been

10          provided by the real parties of interest as described above.

11     h.   And any other such relief as the Court deems just and proper.

12          Plaintiff reserves the right to assert additional defenses and rights as they arise.

13          RCW 62A.1-207

14