The Honorable Judge Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JAMES MCDONALD,

        Plaintiff,

        v.

ONEWEST BANK, FSB, NORTHWEST
TRUSTEE SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., INDYMAC BANK FSB, DOES 1-50,

        Defendants.

No.  C10-1952 RSL

**DEFENDANTS ONEWEST, MERS,
AND NORTHWEST TRUSTEE
SERVICES, INC.'S OPPOSITION TO
PLAINTIFF'S REQUEST FOR
TEMPORARY RESTRAINING
ORDER**

**NOTE ON MOTION CALENDAR:**
January 18, 2011

      COME NOW Defendants OneWest Bank, FSB ("OneWest"), Mortgage Electronic

Registration Systems Inc. ("MERS"), and Northwest Trustee Services, Inc. ("NWTS")

(collectively "Defendants") and submits this Opposition to Plaintiff's request for Temporary

Restraining Order.

## I.    RELIEF REQUESTED

      Pursuant to RCW 7.40.010 and RCW 61.24.130(1), Defendants request that the Court

deny Plaintiff's request for Temporary Restraining Order on the grounds that Plaintiff has failed

to follow the proper procedure for obtaining a TRO and there is no legal or equitable ground

upon which to restrain the sale.

//

///

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 1 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## II.   STATEMENT OF FACTS

The applicable facts are as follows:

On or about January 8, 2007, Plaintiff James B. McDonald ("McDonald" or "Plaintiff"), in order to secure repayment of a promissory note (the "Note") in the amount of $389,481.60, granted to Mortgage Electronic Registration Systems as nominee for the original lender, Indymac Bank, FSB and its successors and assigns, a deed of trust (the "Deed of Trust"). *See* Note, Exhibit 1. The Deed of Trust encumbers the real property commonly known as 14840 119th PL NE, Kirkland, Washington 98034 (the "Property"). The Deed of Trust was recorded on January 10, 2007, under King County Auditor's File No. 20070110002077. *See* Deed of Trust, Exhibit 2.

Freddie Mac is the investor on the Loan, and prior to March 2009, IndyMac serviced the loan for Freddie Mac. *See* Declaration of JC San Pedro ("San Pedro decl."), ¶ 2. In March 2009, OneWest Bank Group LLC acquired IndyMac's assets and operations from the FDIC. *See* San Pedro decl., ¶ 3. Pursuant to this purchase, OneWest acquired all home mortgage loans owned by IndyMac at the time IndyMac went into receivership and all servicing rights on Freddie Mac loans, including the servicing rights to Plaintiff McDonald's loan that is the subject of this lawsuit. *See* San Pedro decl., ¶ 3.

OneWest services the loan on behalf of Freddie Mac pursuant to a servicing agreement. *See* San Pedro decl., ¶ 4. As part of that servicing agreement, OneWest has possession of the Note, which is endorsed in blank, and is entitled to collect payments, initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in accordance with investor guidelines. *See* San Pedro decl., ¶ 4. *See* Exhibit 1.

Thereafter, Plaintiff defaulted by failing to make the payment due on October 1, 2009, and every payment thereafter due. *See* San Pedro decl., ¶ 5.

On or about January 27, 2010, Mortgage Electronic Registration Systems executed an assignment of deed of trust (the "Assignment") whereby MERS assigned its interest under the Deed

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 2 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

of Trust to OneWest Bank, FSB. The Assignment was recorded February 4, 2010, under King

County Auditor's File No. 20100204000502. *See* Assignment, Exhibit 3; *See* San Pedro decl., ¶ 6.

The Assignment was signed by Brian Burnett. *See* Exhibit 3. Brian Burnett is an employee of

OneWest and has signing authority on behalf of MERS. *See* San Pedro decl., ¶ 7.

On or about February 4, 2010, OneWest recorded an appointment of successor trustee (the

"Appointment") naming Northwest Trustee Services, Inc. the successor trustee. The Appointment

was recorded under King County Auditor's File No. 20100204000503. *See* Appointment, Exhibit 4.

On or about February 16, 2010, NWTS recorded a Notice of Trustee's Sale (the "NTS")

under King County Auditor's File No. 20100216001242, setting the trustee's sale for May 21,

2010, 2010. *See* NTS, Exhibit 5.

In April 2010, Plaintiff applied for a HAMP modification review of his loan, which was

later denied. *See* San Pedro decl., ¶ 8.

On or about November 4, 2010, NWTS recorded an Amended Notice of Trustee's Sale

(the "Amended NTS") under King County Auditor's File No. 20101104001321, setting the

trustee's sale for December 10, 2010. *See* Amended NTS, Exhibit 6.

On or about December 3, 2010, Plaintiff filed his Complaint for Violation of the Deed of

Trust Act, Wrongful Foreclosure, Slander of Title, and requesting a Temporary Restraining

Order and Permanent Injunction. Dkt. 1.

On December 8, 2010, Defendants agreed to postpone the December 10, 2010, sale date

in order for Plaintiff to reinstate the loan and/or request a modification. *See* San Pedro decl., ¶ 9;

*See* Declaration of Vonnie McElligott ("McElligott decl."), ¶ 4.  Thereafter, Plaintiff did not

make any attempts to communicate with any of the Defendants in furtherance of reinstatement or

modification. *See* San Pedro decl., ¶ 10. *See* McElligott decl., ¶ 5.

//

//

//

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 3 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### III.    ISSUES PRESENTED

1.  Whether Plaintiff's Motion for Temporary Restraining Order should be denied under RCW 7.40.010 and RCW 61.24.130(1) when Plaintiff failed to follow the statutory procedure for obtaining a restraining order and when Plaintiff fails to sufficiently state any plausible claims for relief as to Defendants OneWest, MERS, or NWTS.

2.  Alternatively, if the Court does grant Plaintiff's Motion for Temporary Restraining Order, whether under RCW 7.40.080 and RCW 61.24.130(1), Plaintiff should be required to 1) post a bond in the amount of $6,000.00 and 2) make his regularly monthly payment of $1,644.75 into the court registry while any temporary restraining order or preliminary injunction is in place.

### IV.    EVIDENCE RELIED UPON

This Opposition is based on pleadings and documents filed with the Court and Exhibits attached thereto; the Declarations of JC San Pedro and Vonnie McElligott; and this Opposition and memorandum of law in support thereof and the Exhibits attached hereto.

### V.    AUTHORITY & ARGUMENT

### A. PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER SHOULD BE DENIED AS PLAINTIFF HAS FAILED TO FOLLOW THE PROPER STATUTORY PROCEDURE FOR OBTAINING A TRO.

The Deed of Trust Act ("DTA") provides a procedure by which a party may restrain a trustee's sale. *See* RCW 61.24.130. Courts have been strict in holding that this statutory procedure is "the only means by which a grantor may preclude a sale once the foreclosure has begun." *Brown v. Household Realty Corp.,* 146 Wn. App. 157, 163, 189 P.3d 233, 235 - 236 (Wash. Ct. App. 2008). In *Plein,* the Supreme Court held that the filing of a lawsuit challenging the underlying obligation was insufficient to halt the sale under the DTA and that the party must move the court for entry of a preliminary injunction or restraining order to properly restrain the sale. *Plein v. Lackey,* 149 Wn.2d 214, 225, 67 P.3d 1061 (2003) *(citing Cox v. Helenius,* 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

Here, the Plaintiff did not move the court for a preliminary injunction or restraining order. Rather, the Plaintiff filed a Complaint objecting to the trustee's sale and included his

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 4 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

request for TRO within the Complaint. Just as the filing of a lawsuit challenging the underlying obligation was insufficient in *Plein*, here, the Plaintiff's Complaint is an insufficient attempt to restrain the sale.

**B. NOTWITHSTANDING THE PROCEDURAL DEFECTS, PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER ANY CLAIMS PLEADED, AND TEHREFORE THERE ARE NO LEGAL OR EQUITABLE GROUNDS TO RESTRAIN THE SALE.**

In order to obtain a restraining order or preliminary injunction, the plaintiff must show that he has a clear legal or equitable right, that he has a well-grounded fear of immediate invasion of that right, and that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Kucera v. State Department of Transportation,* 140 Wn.2d 200, 299, 995 P.2d 63 (2000), RCW 61.24.130.   In order to determine whether an applicant has a clear or equitable right, the Court will analyze the applicant's likelihood of prevailing on the merits. *Tyler Pipe Industries, Inc. v. Stat, Dept. of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). And, when it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great injury to the plaintiff; or when during the litigation, it appears that the defendant is doing, or threatened, or is about to do, or is procuring, or is suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action tending to render the judgment ineffectual; or where such relief, or any part thereof, consists in restraining proceedings upon any final order or judgment, an injunction may be granted to restrain such act or proceedings until the further order of the court, which may afterwards be dissolved or modified upon motion. RCW 7.40.020.

Plaintiff's complaint asserts the following causes of action as to the Defendants OneWest and NWTS:[1]  1) Slander of Title and 2) Wrongful Foreclosure, and 3) Lack of Standing.

---

[1] None of Plaintiff's causes of actions appear to be targeted at MERS. However, MERS is named as a Defendant, and to the extent any cause of action stems from the existence of MERS in the original loan transaction, such an allegation does not support entry of a TRO.  Courts in Washington have held that MERS may hold legal title to the deed of trust as the beneficiary as nominee for lender and lender's successors and assigns and has standing to assign

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 5 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Additionally, Plaintiff states a cause of action for Violation of the Washington Deed of Trust Act against Defendant NWTS and asks the court to enter a temporary restraining order and permanent injunction to stop the impending trustee's sale.

Plaintiff's theory of relief appears to be rooted in assertions that OneWest is not entitled to enforce the underlying obligation because Freddie Mac is the owner/investor of the Loan, and because OneWest has no authority to enforce the obligation, actions taken by OneWest and the successor trustee, NWTS, appointed by OneWest are unauthorized, unlawful, and void. However, Plaintiff's analysis is not in accordance with Washington law.

## 1.   The use of an agent in executing documents associated with the foreclosure is not grounds for restraint of the sale.

"There is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions." *Bain v. Metropolitan Mortgage Group, Inc.*, 2010 WL 891585, *6 (W.D.Wash.) (*citing Russell v. Lundberg*, 120 P.3d 541, 544 (Utah Ct.App.2005)). An agent may perform "mere ministerial acts" relating to a foreclosure. *Id.* (*citing Buse v. First Am. Title Co.*, C08-0510-MJP, 2009 WL 1543994, at *3 (W.D.Wash. May 29, 2009)).

In *Bain*, the Plaintiff borrower challenged a scenario in which the defendant Lender Processing Services ("LPS") had contracts with defendants IndyMac Bank and MERS. Under the contract with MERS, LPS employees were "appointed as assistant secretaries and vice presidents of [MERS] and, as such, are authorized to ... execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS system ... including but not limited to (a) substitution of trustee on Deeds of Trust ..." Similarly, LPS had

---

the deed of trust, substitute trustees, and even foreclose to enforce the property interest granted to it in the mortgage or deed of trust. *Vawter v. Quality Loan Service Corporation of Washington,* 2010 WL 1629355 (W.D. Wash. 2010) and *Daddabbo v. Countrywide Home Loans, Inc.,* No. C09-1417-RAJ, 2010 WL 2102485, at *5 (W.D. Wash. May 20, 2010). Therefore, MERS' role and participation is legally permissible and did not affect any Defendants' authority to act. Accordingly, MERS' involvement had no bearing on OneWest's authority to foreclose, appoint NWTS as successor trustee, or NWTS' authority to act as successor trustee and any assertion relating to MERS cannot support any claim.

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 6 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    separate contractual authority to execute documents as signing officers of IndyMac. There, the

2    LPS employees who signed the appointment and assignment were employed by LPS and had

3    signing authority for Indymac and MERS. The court held that using the LPS employees to sign

4    the documents was not an affirmative misrepresentation of fact and there was simply nothing

5    deceptive about this practice. *Bain,* *6.

6         Similarly, here plaintiff draws attention to the fact that Brian Burnett who is apparently

7    an Assistant Vice President of OneWest executed the Assignment on behalf of MERS. Plaintiff

8    claims that these facts shoe that Mr. Burnett is "not a true employee of MERS." Mr. Burnett, an

9    employee of OneWest, has signing authority for both OneWest and MERS. *See* San Pedro decl.,

10   ¶¶ 6-7. Just as the use of agents with signing authority to sign documents was not an affirmative

11   misrepresentation and was not deceptive in *Bain*, it is not here. Accordingly, such an allegation

12   does not give rise to a legal or equitable ground upon which to restrain the trustee's sale.

13        Additionally, Plaintiff claims that the fact the Assignment and Appointment were

14   recorded at the same time makes Defendants actions "even more questionable." However,

15   Plaintiff fails to cite any authority of law that stands for this proposition. Further, Plaintiff fails to

16   state why recordation on the same date is questionable. Under the Washington Deed of Trust Act

17   RCW 61.24 et seq., the beneficiary's authority to act does not depend upon the recording of an

18   assignment of the beneficial interest under the deed of trust. Rather, all that matters is that the

19   purported beneficiary be the holder of the note. RCW 61.24.005(2). An Assignment is generally

20   done for the purposes of accurately depicting the chain of title. An Appointment, on the other

21   hand, is only effective upon recording. RCW 61.24.010(2). Therefore, because OneWest was in

22   possession of the Note and therefore the beneficiary at the time of recording of both the

23   Assignment and the Appointment, there is nothing questionable about such documents being

24   recorded on the same date.

25   //

26   ///

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

2. **OneWest, as the holder of the Note, is the party who has "standing" and is entitled to foreclose**.

According to RCW 61.24.005(2), a "Beneficiary" is "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). "Holder" status may be evidenced by physical possession of the note, which has either been endorsed to that person or endorsed in blank. *See* RCW 62A.3-301 and RCW 62A.1-201. Under the DTA, the Beneficiary, or holder, may enforce the underlying obligation, may appoint a successor trustee, and may take steps in furtherance of the nonjudicial foreclosure. *See* RCW 61.24 *et seq.*

OneWest has been in possession of the Note, which is endorsed in blank, since March of 2009 when OneWest acquired the assets and operations of IndyMac from the FDIC. *See* San Pedro decl., ¶ 3. As possession confers holder status, and under the Deed of Trust Act, a beneficiary is the holder, OneWest is entitled to enforce the Note, and was entitled to enforce the Note at all times relevant to this foreclosure.

Plaintiff's claims relating to standing and Plaintiff's statement that only the owner of the note may enforce the note are not supported by law. OneWest does not dispute that Freddie Mac is the investor on the Loan. *See* San Pedro decl., ¶ 2. OneWest services the loan on behalf of Freddie Mac.[2] *See* San Pedro decl., ¶ 4. As part of that servicing agreement, OneWest has possession of the Note and is entitled to collect payments, initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in accordance with investor guidelines. *See* San Pedro decl., ¶ 4.

---

[2] Congress created the Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac") in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. The FHLMC does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708 (N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir. 1998). The FHLMC does not service the mortgages in which it has an interest. Rather, those mortgages are serviced for the FHLMC by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

As OneWest was the beneficiary entitled to initiate foreclosure and appoint the successor trustee, the appointed successor trustee, NWTS, was entitled to take the steps in furtherance of the foreclosure by recording the notices of trustee sale. In sum, the facts demonstrate that OneWest and NWTS have strictly complied with the Washington Deed of Trust Act in carrying out the foreclosure, and there is nothing about the foreclosure process that gives rise to restraint of the sale.

3.   **Defendant OneWest has the authority to but is under no obligation or duty to modify Plaintiff's loan.**

Plaintiff states that OneWest refused to modify his loan, which brings into question whether OneWest actually has authority to modify the loan. Plaintiff, however, fails to cite to any authority in support of such a proposition. Similarly, Plaintiff fails to cite any authority under which OneWest was obligated to modify Plaintiff's loan. There exists none. Nowhere in the Note, the Deed of Trust, or other loan documents is there any language that places a duty on Defendants to offer, accept, or approve an application for a loan modification in the event of default. *See* Exhibits 1 and 2.

Additionally, there is virtually no case law discussing whether a lender has a duty to modify loans, but, in a suit against Timothy Geithner (as the Secretary of Treasury) et. al, a Minnesota District Court judge recently held that the Home Affordable Modification Program (HAMP) did not create a protected property interest for borrowers, because borrowers are not entitled to approval of loan modifications. *Williams v. Geithner*, 2009 WL 3757380 (D. Minn.). The court noted that the HAMP works by providing financial *incentives* to participating mortgage servicers to modify the terms of eligible loans. *Id.*

Under the HAMP, servicers have discretion to approve loan modifications, but no absolute duty to approve such. *See Williams v. Geithner*, 2009 WL 3757380 (D. Minn.). Every Court that has been asked to imply a private right of action under HAMP or its enabling legislation has declined to do so. *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 9 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1177, 1187 (N.D. Cal. 2009) ("stating nowhere in the judicial review section [of EESA] is there a mention of a right of action against non-government entities"); *Gaitan v. MERS, Inc.*, 2009 WL 3244729, at *13 ("Plaintiff claims he is entitled to relief since OneWest has committed to the [HAMP]…[and] refused to determine Plaintiff's eligibility for a loan modification. Plaintiff fails to show how participation in this program gives rise to a private cause of action") (internal quotations omitted); *Ung v. GMAC Mortg.*, No. EDCV 09-893-VAP, 2009 LEXIS 115900, at *9-11 (C.D.Cal. Sept. 4, 2009); *Gonzales v. First Franklin Loan Svcs.*, No. 1:09-CV099941 AWI-GSA, 2010 WL 144862, at *18 (E.D.Cal. Jan. 11, 2010) (holding there is no private right of action under EESA).

The fact that OneWest would accept a loan modification application for review does not create a duty to approve the loan modification application. Thus, there can be no claim arising from Defendants' denial of such an application.

In fact, even after Plaintiff's initial attempt to modify, Defendants agreed to further postpone the trustee's sale in December 2010 after Plaintiff expressed a desire to reinstate his loan and/or seek a modification. *See* San Pedro decl., ¶ 9. However, after Defendants postponed, Plaintiff engaged in no efforts to communicate with any Defendant to effectuate either reinstatement or a loan modification review. *See* San Pedro decl., ¶ 10. *See* McElligott decl., ¶ 5.

Because there was no duty to modify Plaintiff's loan under the terms of the loan agreement, because the documents show that Defendants acted within their statutory and contractual rights, and because even when given a second opportunity to seek modification or reinstatement, Plaintiff took no steps in furtherance of such action, Plaintiff is not entitled to restraint of the sale based on any claim relating to OneWest's failure to modify Plaintiff's loan.

### 4. <u>Securitization of the loan does not preclude foreclosure.</u>

First, without providing any evidence or support, Plaintiff claims the loan was securitized. Additionally, Plaintiff cites a number of Bankruptcy cases, all outside of this jurisdiction, and various treatises in support of allegations relating to the inability of Defendants

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 10 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

to foreclose a loan that has been securitized. One of the grounds upon which Plaintiff bases his

argument is that securitization separates the note and security instrument thereby making the

security instrument unenforceable. However, in Washington, the security follows the debt with

or without actual assignment of the deed of trust. *In re Leisure Time Sports, Inc.,* 194 B.R. 859,

861 (9th Cir. B.A.P. 1996) (citing *Carpenter v. Longan*, 83 U.S. 271, 275, 21 L.Ed. 313 (1872)).

Furthermore, while there is no Washington authority directly on point, other nonjudicial

foreclosure jurisdictions have addressed Plaintiff's argument and have held that securitization

does not preclude foreclosure and foreclosures are routinely and justifiably conducted by trustees

of securitized mortgages. *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636,

641, 2010 WL 1444026 (E.D. Va. 2010). Therefore, the fact of securitization does not preclude

foreclosure and, in this case, does not warrant entry of a TRO.

### 5.   Plaintiff's Slander of Title claim will not prevail.

To prevail on a claim for libel/defamation/slander of title, the plaintiff must establish, by

a preponderance of the evidence, that 1) statements concerning the plaintiff's title were false, 2)

the statements were published maliciously, 3) the statements were spoken with reference to some

pending sale or related transaction concerning the plaintiff's property, 4) the plaintiff has

suffered pecuniary loss or injury as a result of the false statements, and 5) the statements were of

the nature to defeat plaintiff's title. *Lee v. Maggard*, 197 Wn. 380 (1938). The element of falsity

is established by recording a document known to contain false declarations. *Rogvig v. Douglas*,

123 Wn.2d 854 (1994). The element of "malice" is established by false statements that are not

made in good faith or otherwise based on a reasonable belief in the veracity of the statements. *Id.*

A claim for malicious prosecution in a civil case requires that the party must allege and

prove the following seven elements: 1) that the prosecution claimed to have been malicious was

instituted or continued by the defendant; 2) that there was want of probable cause for the

institution or continuation of the prosecution; 3) that the proceedings were instituted and

continued through malice; 4) that the proceedings terminated on the merits in favor of the

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 11 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    plaintiff or were abandoned; 5) that the plaintiff suffered injury or damages as a result of the

2    prosecution, 6) that there was arrest or seizure of property; and 7) that there was special injury

3    which means injury that would not necessarily result from similar causes of action. *Clark v.*

4    *Baines,* 150 Wn.2d 905, 965, 84 P.3d 245 (2004).

5         Plaintiff makes no allegations as to OneWest and MERS to support his

6    libel/defamation/slander of title and malicious prosecution claims. Plaintiff only asserts that

7    "Several named Defendants" are jointly and severally liable for these claims. Complaint, ¶ 7.4.

8    Plaintiff fails to specifically identify these "several named defendants." Therefore, because

9    Plaintiff fails to assert any facts that give rise to these claims, these claims cannot support the

10   entry of a TRO.

11         **6.    Plaintiff's Wrongful Foreclosure claim will not prevail.**

12         In Washington, the Deed of Trust Act ("DTA") does not authorize a cause of action for

13   damages for the wrongful institution of nonjudicial foreclosure proceedings where no trustee's

14   sale has occurred. *See Vawter v. Quality Loan Service Corporation of Washington,* 2010 WL

15   1629355 at 5 (W.D. Wash. 2010); *Pfau v. Wash. Mutual, Inc.*, No CV-08-00142-JLQ, 2009 WL

16   484448, at 12 (E.D. Wash. 2009); *Krienke v. Chase Home Fin., LLC*, 140 Wn. App. 1032, 2007

17   WL 2713737, at 5 (Wash. Ct. App. 2007); *see also Henderson v. GMAC Mortgage Corp.*, No.

18   C05-5781RBL, 2008 WL 1733265, at 5 (W.D. Wash. 2008) (holding that plaintiff's claim for

19   wrongful foreclosure under the DTA failed because, *inter alia*, no foreclosure occurred). In

20   *Vawter, Pfau,* and *Krienke*, the courts rejected the argument that a grantor can maintain a

21   damages claim for wrongful institution of nonjudicial foreclosure proceedings where no trustee's

22   sale actually occurs. *Vawter,* at 5. These courts underscored their view that there is simply no

23   statutory authority or case law to support such a claim. As the *Krienke* court explained:

24
25         [T]here is no case law supporting a claim for damages for the *initiation* of an
           allegedly wrongful foreclosure sale. Moreover, there is no statutory basis
26         supporting a claim for damages for wrongful *institution* of foreclosure
           proceedings. On the contrary, courts promote the [DTA's] objectives, declining to

---

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 12 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

invalidate completed sales even where trustees have not complied with the statute's technical requirements.

*Vawter*, at 6 (*citing Krienke*, 2007 WL 2713737, at 5 (emphasis in original)).

Here, Plaintiff fails to plead a viable claim under the Deed of Trust Act and Washington law. The Plaintiff's cause of action, though styled in the complaint as a claim for wrongful foreclosure, is properly construed as a claim for wrongful institution of nonjudicial foreclosure proceedings since the trustee's sale has not occurred. *See Id.* When viewed in this light, as a matter of law Plaintiff's claim will not prevail, and as such does not give rise to a legal or equitable right upon which to restrain the sale.

## C.  IF THE COURT GRANTS PLAINTIFF'S MOTION, THE COURT SHOULD REQUIRE PLAINTIFF TO POST A BOND AND MAKE HIS MONTHLY PAYMENT INTO THE COURT REGISTRY.

No restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order, with surety to the satisfaction of the clerk of the superior court, to the adverse party affected thereby, conditioned to pay all damages and costs which may accrue by reason of the injunction or restraining order. RCW 7.40.080. Where the court grants a restraining order, the court shall condition the granting on the applicant paying to the clerk the sums that would otherwise be due on the obligation secured by the Deed of Trust if the Deed of Trust was not being foreclosed. RCW 61.24.130(1).

If the Court grants Plaintiff's Motion for Temporary Restraining Order, Plaintiff must enter a bond and make monthly payments into the court registry. An appropriate bond amount in this case to cover Defendants' attorneys' fees and costs in order to defend against Plaintiff's action is $10,000.00. Additionally, in this case, Plaintiff has failed to make approximately 16 monthly payments of $2,347.56. Thus, Plaintiff should be required to make the monthly payment of $2,347.56 due under the Note into the court registry on the first of every month while any temporary restraining order or preliminary injunction is in place.

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 13 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

## VI.    CONCLUSION

2      Based on the foregoing, Defendants respectfully request that this Court deny Plaintiffs'

3  request for a temporary restraining order. Alternatively, Defendants request that any temporary

4  restraining order or preliminary injunction be conditioned upon Plaintiff paying into the court

5  registry a bond in the amount of $10,000.00 and the monthly payment of $2,347.56 due under

6  the Note into the court registry on the 19th of every month while any temporary restraining order

7  or preliminary injunction is in place.

8

## VII.    PROPOSED ORDER

9

10      Proposed orders granting the requested relief accompany this motion.

11

12      DATED this12th day of January, 2011.

13                                          ROUTH CRABTREE OLSEN, P.S.

14

15                                          _____
                                           Heidi E. Buck, WSBA No. 41769
16                                          Of Attorneys for Defendants OneWest
                                           Bank, Mortgage Electronic Registration
17                                          Systems, Inc., and Northwest Trustee
                                           Services, Inc.

18

19

20

21

22

23

24

25

26

DEFENDANTS OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
. – PAGE 14 OF 14
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# Exhibit 1



# FIXED/ADJUSTABLE RATE NOTE
## INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### (   10   Year Interest Only Period)

Loan #        9243                                          MIN: 100055401250492438

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

January  8, 2007                     Everett                          Washington
[Date]                               [City]                           [State]

14840 119th Pl NE, KIRKLAND, WA 98034

[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    389,481.60    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is          IndyMac Bank, F.S.B., a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.875      %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on          March  1, 2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on      February  1, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at          IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $      1,906.84      . This amount may change in accordance with subsection (C) below.

**(C) Monthly Payment Changes**

The First P&I Payment Due Date is   March 1, 2017         .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of       February, 2012              , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding   two and 750/1000ths          percentage point(s) (      2.750          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than       10.875       % or less than       2.750       %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than   two and NO/1000ths        percentage point(s) (       2.000       %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than       10.875       %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000      % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
James B McDonald            -Borrower                               -Borrower


_____ (Seal)       _____ (Seal)
                           -Borrower                               -Borrower


_____ (Seal)       _____ (Seal)
                           -Borrower                               -Borrower


_____ (Seal)       _____ (Seal)
                           -Borrower                               -Borrower

*[Sign Original Only]*


Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By: 

Sam Lindstrom
Vice President


Loan No:        9243

8480830 (0506)              Page 5 of 5                Form 5600
                                                       6/05
                                                       05



## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #:    9243

THIS ADDENDUM is made this   8th    day of   January,  2007    , and is incorporated into and intended to form a part of an Adjustable Rate Note dated the same date as this Addendum.

1.    Section 5 of the Adjustable Rate Note is modified to provide that I have the right to make payments of principal at any time before they are due. A Prepayment of all of the unpaid principal is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first   three        ( 3        ) year(s) I make a Partial Prepayment or Partial Prepayment(s) of less than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will not pay a Prepayment penalty. However, if within the first    three   ( 3    ) year(s), I make a Full Prepayment, Partial Prepayment or Partial Prepayments of more than twenty percent (20%) of the original principal amount in any 12-month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.    All other provisions of the Adjustable Rate Note are unchanged by this Addendum and remain in full force and effect.

Dated: _1/8/07_____

_____ (Seal)      _____ (Seal)
James B McDonald            -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                            -Borrower                                    -Borrower

IndyMac Bank and Federally Exempted Seller Use Only
Hard Prepayment Addendum (1-3 yrs) - ARM
First Mortgages - Multistate, Arkansas (loans over $150,000)

8480279 (0407)                    VMP Mortgage Solutions, Inc. (800)521-7291

SPD #084
(08/04)

# ADDENDUM TO ADJUSTABLE RATE NOTE

Loan #:        9243

THIS ADDENDUM is made this      8th      day of      January, 2007      , and is incorporated into and intended to form a part of an Adjustable Rate Note dated the same date as this Addendum.

### 1. Section 4(D) of the Adjustable Rate Note is modified as follows:

The interest rate I am required to pay at the first Change Date will not be greater than 10.875      % or less than      2.750      %. Thereafter, my interest rate will never be increased or decreased on any single change Date by more than   two and NO/1000ths percentage point(s) (      2.000      %) from the rate of interest I have been paying for the preceding 12      months. My interest rate will never be greater than      10.875      % or less than 2.750      %.

### 2. All other provisions of the Adjustable Rate Note are unchanged by this Addendum and remain in full force and effect.

Dated:  1 / 8 / 07

_James B McDonald_ _____ (Seal)
James B McDonald                              -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

IndyMac Bank
ARM Note Addendum - Multistate

8480344 (0602)                VMP Mortgage Solutions, Inc.

I074
(2/06)

07

# Exhibit 2

20070110002077.00

After recording please return to:
IndyMac Bank, F.S.B. c/o Document
Management

*[Name of Natural Person]*
901 E. 104th Street Building B
Suite 400/500
Kansas City, MO 64131
*[City, State Zip Code]*



20070110002077

PACIFIC NW TIT DT
PAGE001 OF 025         57.00
01/10/2007 15:53
KING COUNTY, WA

Assessor's Property Tax Parcel or Account Number:   328830018003
Abbreviated Legal Description:
Lot 18, High Woodlands Div. 3, V85/P30 32

_____ *[Space Above This Line For Recording Data]* _____

## DEED OF TRUST

25/57

FILED BY PRINT

MIN 100055401250492438

DNST 634468-4

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated       January  8, 2007
together with all Riders to this document.

(B)   "Borrower" is James B McDonald a single man

. Borrower is the trustor under this Security Instrument.

(C)   "Lender" is IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a        Federal Savings Bank        organized and existing under the laws of
United States of America        . Lender's address is  155 North Lake Avenue, Pasadena,
CA 91101

(D)   "Trustee" is Pacific Northwest Title Insurance Co., Inc.

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security

Loan No:     9243
Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 1 of 14                         14301WA 08/00 Rev. 11/06
www.compliancesource.com                                                                    ©2006, The Compliance Source, Inc.

01

20070110002077

Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)   "Note" means the promissory note signed by Borrower and dated   January 8, 2007
The Note states that Borrower owes Lender   three hundred eighty nine thousand four hundred eighty one and 60/100ths                                                             Dollars
(U.S. $ 389,481.60         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   February 1, 2037

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider            ☒ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider         ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Loan No     9243
Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 2 of 14                       14301WA 08/00 Rev. 11/06
www.compliancesource.com                                                              ©2006, The Compliance Source, Inc.

20070110002077

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   County   of   King   :
        *[Type of Recording Jurisdiction]*   *[Name of Recording Jurisdiction]*
See Exhibit A attached hereto and made a part hereof

which currently has the address of                               14840 119th Pl NE
                                                *[Street]*
KIRKLAND          ,   Washington   98034               ("Property Address"):
              *[City]*                      *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Loan No:        9243
Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 3 of 14                              14301WA  08/00 Rev. 11/06
www.compliancesource.com                                                                  ©2000, The Compliance Source, Inc.

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 3 of 25
Order: k Comment:

20070110002077.::

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender

Loan No:     9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.— Page 4 of 14 14501WA 08/00 Rev. 11/06
www.compliancesource.com ©2006, The Compliance Source, Inc.

20070110002077

receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.    Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance.    Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right

Loan No:       9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 5 of 14                          14301WA 08/00 Rev. 11/06
www.compliancesource.com                                                                    ©2006, The Compliance Source, Inc.

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 5 of 25
Order: k Comment:

20070110002077

shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Loan No:       9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                                Page 6 of 14                                           1400IWA 08/00 Rev. 11/06
www.compliancesource.com                                                                                 ©2006, The Compliance Source, Inc.

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 6 of 25
Order: k Comment:

20070110002077

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be

Loan No:   9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                                                                14301WA  08/00 Rev. 11/06
www.compliancesource.com                              Page 7 of 14                          ©2000, The Compliance Source, Inc.

20070110002077

non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be

Loan No:      9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT               MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 8 of 14                                14301WA 08/00 Rev. 11/06
www.compliancesource.com                                                              ©2006, The Compliance Source, Inc.

2007011002077

reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not

Loan No.      9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                              Page 9 of 14
www.compliancesource.com

MERS Modified Form 3048 01/01
14301WA 08/00 Rev. 11/04
©2006, The Compliance Source, Inc.

20070110002077.3

be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 10 of 25
Order: k Comment:

20070110002077.0I

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Loan No:      9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—      Page 11 of 14      14301WA 08/00 Rev. 11/06
www.compliancesource.com      ©2000, The Compliance Source, Inc.

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law.  If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23.  Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24.  Substitute Trustee.  In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25.  Use of Property.  The Property is not used principally for agricultural purposes.

Loan No:      9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                         Page 12 of 14                                              14301WA  08/00 Rev. 11/04
www.compliancesource.com                                                                                        ©2000, The Compliance Source, Inc.

20070110002077.υ:

26.  Attorneys' Fees.  Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument.  The term "attorneys' fees", whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                    James B McDonald                  -Borrower
                                                                                                   [Printed Name]


_____     _____ (Seal)
                                                                                                   -Borrower
                                                                                                   [Printed Name]


                                                    _____ (Seal)
                                                                                                   -Borrower
                                                                                                   [Printed Name]


                                                    _____ (Seal)
                                                                                                   -Borrower
                                                                                                   [Printed Name]


_____ [Acknowledgment on Following Page] _____

Loan No:        9243

Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 13 of 14                              14301WA 08/00 Rev. 11/04
       www.compliancesource.com                                                                                          ©2006, The Compliance Source, Inc.

20070110002077.91

State of Washington
§
§ ss.:
County of Snohomish
§

I certify that I know or have satisfactory evidence that    James B McDonald

[name of person] is the person who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 01-08-07

_____
(Signature)

(Seal)



Notary Public, Michael Angeles
(Title of Office)         Castaneda [Printed Name]

Lake Stevens
Place of Residence of Notary Public

Loan No:      9243
Washington Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3048 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 14 of 14                    14301WA  08/00 Rev. 11/06
www.compliancesource.com                                                           ©2006, The Compliance Source, Inc.

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 14 of 25
Order: k Comment:

14

2007011002077.C??

A.L.T.A. COMMITMENT
SCHEDULE A
Page 3

Order No. 634468

The land referred to in this commitment is situated in the State of Washington, and described as follows:

Lot 18, The High Woodlands Addition Div. No. 3, according to the plat thereof recorded in Volume 85 of Plats, pages 30 through 32, inclusive, in King County, Washington.

END OF SCHEDULE A

NOTE FOR INFORMATIONAL PURPOSES ONLY:

The following may be used as an abbreviated legal description on the documents to be recorded, per amended RCW 65.04. Said abbreviated legal description is not a substitute for a complete legal description within the body of the document.

Lot 18, High Woodlands Div. 3, Vol. 85, pgs. 30-32

15

2007011002077.54

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 8th day of January, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to IndyMac Bank, F.S.B., a federally chartered savings bank

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

14840 119th Pl NE, KIRKLAND, WA 98034

*[Property Address]*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Declaration of Covenants, Conditions, and Restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

Kirkland/Kingsgate

*[Name of Planned Unit Development]*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire,

Loan No:        9243                                    MIN: 100055401250492438

Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                                Page 1 of 3                        14501MU 08/00 Rev. 11/04
www.compliancesource.com                                                                        ©2004, The Compliance Source, Inc.

20070110002077.01

hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.   Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.   Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.   Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

---

*[Signatures on Following Page]*

---

Loan No:        9243

Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 2 of 3                          14503MU 08/00 Rev. 11/04
www.compliancesource.com                                                                        ©2004, The Compliance Source, Inc.

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 17 of 25
Order: k Comment:

20070110002077.C

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
James B. McDonald                -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]

Loan №          9243

Multistate PUD Rider—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                                Page 3 of 3                      14501MU 08/00 Rev. 11/04
www.compliancesource.com                                                                      ©2004, The Compliance Source, Inc.

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 18 of 25
Order: k Comment:

20070110002077.0:

# FIXED/ADJUSTABLE RATE RIDER
## INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### (   10 Year Interest Only Period)

Loan #        9243                                    MIN:   100055401250492438

THIS ADJUSTABLE RATE RIDER is made this 8th   day of   January,   2007   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to IndyMac Bank, F.S.B., a federally chartered savings bank

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

14840 119th Pl NE, KIRKLAND, WA 98034

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of        5.875        %. The Note provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of   February,   2012   , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

IndyMac Bank
Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period - Multistate

|                          Page 1 of 5                         | Form 5601 |
8480831 (0506)        VMP Mortgage Solutions, Inc. (800)521-7291                6/05

20070110002077

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                                                    percentage point(s)
(    2.750    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875   % or less than      2.750       %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
two and NO/1000ths                                                       percentage point(s)
(    2.000     %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than            10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



Loan No.         9243
8480631 (0506)                          Page 2 of 5

Form 5601
6/05

20070110002077 05

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
1.  UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan No          9243
8480831 (0506)

Page 3 of 5

Form 5601
6/05

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 21 of 25
Order: k Comment:

21

20070110002077 02

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No       9243
8480831 (0506)                    Page 4 of 5                    Form 5601
                                                                  6/05

20070110002077 03

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
James B. McDonald        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

Loan No:        9243
8480831 (0506)                  Page 5 of 5              Form 5601
                                                          6/05

Description: King,WA Document - Year.Month.Day.DocID 2007.110.2077 Page: 23 of 25
Order: k Comment:

2007011110002077.91

# ADDENDUM TO FIXED/ADJUSTABLE RATE RIDER

Loan #:        9243

THIS ADDENDUM to the Fixed/Adjustable Rate Rider is made this 8th day of January, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") and Fixed/Adjustable Rate Rider of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to  IndyMac Bank, F.S.B., a federally chartered savings bank

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

14840 119th Pl NE, KIRKLAND, WA 98034

[Property Address]

ADDITIONAL COVENANTS. In Addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1. Section 4(D) of the Fixed/Adjustable Rate Rider is modified as follows:

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single change Date by more than two and NO/1000ths percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 % or less than 2.750 %.

IndyMac Bank
ARM Addendum to Fixed/Adjustable Rate Rider
Multistate

8480345 (0602)          Page 1 of 2          I075
                 VMP Mortgage Solutions, Inc.          2/06

20070110002077 R.

2. All other provisions of the Fixed/Adjustable Rate Rider are unchanged by this Addendum and remain in full force and effect.

Dated: 1/8/07

_____ (Seal)          _____ (Seal)
James B McDonald        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

8480345 (0602)                    Page 2 of 2                      I075
                                                                   2/06

# Exhibit 3

*d.*

After Recording Return to:
OneWest Bank FSB
888 East Walnut Street
Pasadena, CA 91101

**20100204000502**

TITLE COURT SE ADT
PAGE-001 OF 001          14.00
02/04/2010 12:13
KING COUNTY, WA

7523.21352/McDONALD, JAMES B.

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to **OneWest Bank, FSB**, whose address is 888 East Walnut Street, Pasadena, CA 91101, all beneficial interest under that certain deed of trust, dated 01/08/07, executed by James B. McDonald, a single man, Grantors, to Pacific Northwest Title Insurance Co., Inc., Trustee, and recorded on 01/10/07, under Auditor's File No. 20070110002077, records of King County, Washington.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated ___January 27___, 20_10_

**Mortgage Electronic Registration Systems, Inc. "MERS"**

By: _____

Title:   Brian Burnett          **Assistant Vice President**

STATE OF ___Texas___                    )
                                                          ) ss.
COUNTY OF ___Travis___                 )

I certify that I know or have satisfactory evidence that ___Brian Burnett___ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___Assistant Vice President___ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS" to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: ___Jan. 27, 2010___

NOTARY PUBLIC in and for the State of ___Texas___

Residing at ___Travis___

My commission expires ___nov 10-10___

ALEX MCBRIDE
Notary Public, State of Texas
My Commission Expires
November 10, 2010

01

# Exhibit 4

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997



**201002040000503**
TITLE COURT SE AST          14.00
PAGE-001 OF 001
02/04/2010 12:13
KING COUNTY, WA

## Appointment of Successor Trustee

File No. 7523.21352

James B. McDonald, a single man is/are the grantor(s), Pacific Northwest Title Insurance Co., Inc. is the trustee and Mortgage Electronic Registration Systems, Inc. "MERS" is the beneficiary under that certain deed of trust dated 01/08/07 and recorded on 01/10/07 under King County, Washington Auditor's File No. 20070110002077.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the owner and holder of the obligation secured by the subject deed of trust and is not holding the same as security for a different obligation.

OneWest Bank, FSB

By _____
   Suchan Murray
   Authorized Signatory

STATE OF ___Texas_____ )
                               )ss
COUNTY OF ___Travis_____ )

I certify that I know or have satisfactory evidence that ___Suchan Murray___ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___Authorized Signatory___ of ONEWEST BANK, FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __01/27/10_____

_____
Notary Public in and for the State of ___Texas___
Residing at ___Travis___
My appointment expires _____

Anna Elizabeth Ramsey
Notary Public,
State of Texas
Comm. Exp. 12-15-13

01

# Exhibit 5

wmyAfter Recording, Return to:
**Vonnie McElligott**
**Northwest Trustee Services, INC.**
P.O. Box 997
Bellevue, WA 98009-0997



20100216001242
TITLE COURT SE NTS
PAGE-001 OF 004                65.00
02/16/2010 12:45
KING COUNTY, WA

File No.:      7523.21352
Grantors:     Northwest Trustee Services, Inc.
              OneWest Bank, FSB
Grantee:      Julie B. McDonald, a single man
Tax Parcel ID No.: 328830018003
Abbreviated Legal: Lot 18, High Woodlands Div. 3, V85/P30 32

### Notice of Trustee's Sale
Pursuant to the Revised Code of Washington 61.24, et seq.

I.

On May 21, 2010, at 10:00 a.m. outside adjacent to the south entrance to 3535 Factoria Blvd SE, in the City of Bellevue, State of Washington, the undersigned Trustee (subject to any conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property "Property", situated in the County(ies) of King, State of Washington:

Lot 18, The High Woodlands Addition Div. No. 3, according to the Plat thereof recorded in Volume 85 of Plats, Pages 30 through 32, inclusive, in King County, Washington.

Commonly known as:     14840 119th Place Northeast
                       Kirkland, WA 98034

which is subject to that certain Deed of Trust dated 01/08/07, recorded on 01/10/07, under Auditor's File No. 20070110002077, records of King County, Washington, from James B. McDonald, a single man, as Grantor, to Pacific Northwest Title Insurance Co., Inc., as Trustee, to secure an obligation "Obligation" in favor of Mortgage Electronic Registration Systems, Inc. "MERS", as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc. "MERS" to OneWest Bank, FSB, under an Assignment/Successive Assignments recorded under Auditor's File No. 20100304000502.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation.

01

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

|  |  | Amount due to reinstate by 02/15/10 |
|---|---|---|
| Monthly Payments |  | $11,969.30 |
| Late Charges |  | $381.36 |
| Lender's Fees & Costs |  | $22.00 |
| Total Arrearage | $12,372.66 |  |
| Trustee's Expenses (Itemization) |  |  |
| Trustee's Fee |  | $725.00 |
| Title Report |  | $951.00 |
| Statutory Mailings |  | $9.56 |
| Recording Costs |  | $30.00 |
| Postings |  | $70.00 |
| Sale Costs |  | $0.00 |
| Total Costs | $1,785.56 |  |
| Total Amount Due: |  | $14,158.22 |

Other known defaults as follows:

IV.

The sum owing on the Obligation is:  Principal Balance of $389,481.60, together with interest as provided in the note or other instrument evidencing the Obligation from 09/01/09, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute.  The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on May 21, 2010.  The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 05/10/10 (11 days before the sale date), to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 05/10/10 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid.  The sale may be terminated any time after 05/10/10 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust.

02

## VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME AND ADDRESS

James B. McDonald
14840 119th Place Northeast
Kirkland, WA 98034

Unknown Spouse and/or Domestic Partner
of James B. McDonald
14840 119th Place Northeast
Kirkland, WA 98034

by both first class and either certified mail, return receipt requested on 01/15/10, proof of which is in the possession of the Trustee; and on 01/15/10 Grantor and Borrower were personally served with said written notice of default **or** the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

## VII.

The Trustee, whose name and address are set forth below, will provide in writing to anyone requesting it a statement of all foreclosure costs and trustee's fees due at any time prior to the sale.

## VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their right, title and interest in the Property.

## IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

## X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com. and www.USA-Foreclosure.com.**

03

EFFECTIVE:  02/15/10

Northwest Trustee Services, Inc., Trustee

By _____
**Authorized Signature**
**P.O. BOX 997**
**Bellevue, WA 98009-0997**
**Contact:  Vonnie McElligott**
**(425) 586-1900**

STATE OF WASHINGTON   )
                                                   ) ss.
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged (he/she) as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____

```
HEATHER E. CASEY
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
04-22-10
```

NOTARY PUBLIC in and for the State of
Washington, residing at _____
My commission expires _____

**NORTHWEST TRUSTEE SERVICES, INC., SUCCESSOR BY MERGER TO NORTHWEST TRUSTEE SERVICES PLLC FKA NORTHWEST TRUSTEE SERVICES, LLC, P.O. BOX 997,  BELLEVUE, WA 98009-0997 PHONE  (425) 586-1900 FAX (425) 586-1997**

**File No:** 7523.21352
**Client:** OneWest Bank, FSB
**Borrower:**  McDONALD, JAMES B.

**SERVING WA, OR, ID, CA, NV, AZ, MT HI**

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

04

# Exhibit 6

After Recording, Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

```
20101104001321
```
TITLE COURT SE NTS
PAGE-001 OF 004
11/04/2010 14:02
KING COUNTY, WA
65.00

File No.:       7523.21352
Grantors:       Northwest Trustee Services, Inc.
                OneWest Bank, FSB
Grantee:        James B. McDonald, a single man
Ref to DOT Auditor File No.: 20070110002077
Tax Parcel ID No.: 328830018003
Abbreviated Legal: Lot 18, High Woodlands Div. 3, V85/P30 32

## Amended Notice of Trustee's Sale

Pursuant to the Revised Code of Washington 61.24, et seq.

I.

On December 10, 2010, at 10:00 a.m. The northwest corner of the ground level parking area located under the Pacific Corporate Center building, 13555 SE 36th Street in the City of Bellevue, State of Washington, the Trustee (subject to any conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property "Property", situated in the County(ies) of King, State of Washington:

> Lot 18, The High Woodlands Addition Div. No. 3, according to the Plat thereof recorded in
> Volume 85 of Plats, Pages 30 through 32, inclusive, in King County, Washington.

Commonly known as:    14840 119th Place Northeast
                      Kirkland, WA 98034

which is subject to that certain Deed of Trust dated 01/08/07 and recorded on 01/10/07, under Auditor's File No. 20070110002077, records of King County, Washington, from James B. McDonald, a single man, as Grantor, to Pacific Northwest Title Insurance Co., Inc., as Trustee, to secure an obligation "Obligation" in favor of Mortgage Electronic Registration Systems, Inc., as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc. to OneWest Bank, FSB, under an Assignment/Successive Assignments recorded under Auditor's File No. 20100304000502.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

01

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

|  | | Amount due to reinstate by 10/28/2010 |
|---|---|---|
| Monthly Payments | | $30,934.98 |
| Late Charges | | $1,239.42 |
| Lender's Fees & Costs | | $2,768.82 |
| Total Arrearage | $34,943.22 | |
| Trustee's Expenses (Itemization) | | |
| Trustee's Fee | | $508.00 |
| Title Report | | $0.00 |
| Statutory Mailings | | $147.00 |
| Recording Costs | | $129.00 |
| Postings | | $136.92 |
| Sale Costs | | $500.00 |
| Total Costs | $1,420.92 | |
| **Total Amount Due:** | | **$36,364.14** |

Other known defaults are as follows:

IV.

The sum owing on the Obligation is: Principal Balance of $389,481.60, together with interest as provided in the note or other instrument evidencing the Obligation from 09/01/09, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute. The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on **December 10, 2010**. The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 11/29/10 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 11/29/10 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after 11/29/10 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any

recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust.

## VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

### NAME AND ADDRESS

James B. McDonald
14840 119th Place Northeast
Kirkland, WA 98034

Unknown Spouse and/or Domestic Partner
of James B. McDonald
14840 119th Place Northeast
Kirkland, WA 98034

by both first class and either certified mail, return receipt requested on 01/15/10, proof of which is in the possession of the Trustee; and on 01/15/10 Grantor and Borrower were personally served with said written notice of default **or** the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

## VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it a statement of all foreclosure costs and trustee's fees due at any time prior to the sale.

## VIII.

The effect of the sale will be to deprive the Grantor, and all those who hold by, through or under the Grantor, of all their right, title and interest in the Property.

## IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

## X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

03

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com

EFFECTIVE: 10/28/2010

Northwest Trustee Services, Inc., Trustee

By _____
Authorized Signature
P.O. BOX 997
Bellevue, WA 98009-0997
Contact: Vonnie McElligott
(425) 586-1900

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING      )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged (he/she) as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____

HEATHER E. CASEY
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
04-22-14

NOTARY PUBLIC in and for the State of
Washington, residing at _____
My commission expires _____

NORTHWEST TRUSTEE SERVICES, INC, P.O. BOX 997, BELLEVUE, WA 98009-0997 PHONE (425) 586-1900 FAX (425) 586-1997

File No: 7523.21352
Client: OneWest Bank, FSB
Borrower: McDONALD, JAMES B.

SERVING WA, OR, ID, AK, CA, NV, AZ, MT, HI

This is an attempt to collect a debt and any information obtained will be used for that purpose.

04