1    The Honorable Robert S Lasnik

2    JAMES MCDONALD
3    14840 119th PL NE
     Kirkland, WA 98034
4    Phone (425) 210-0614
     In Pro Per

5              UNITED STATES DISTRICT COURT
6           WESTERN DISTRICT OF WASHINGTON
7                      AT SEATTLE

8

9    In Re:                          )    NO: C10-1952RSL
                                      )
10   JAMES MCDONALD                   )
                                      )
11                  Plaintiff         )
                                      )
12            v                       )    Response to Defendants Opposition to
     ONEWEST BANK, FSB, et al.,       )    Request for Temporary Restraining Order
13                  Defendants.       )
                                      )
14   ───────────────────────────────
15   TO:    CLERK OF THE U.S. DISTRICT COURT
            HEIDI E. BUCK, Attorney for Defendants
16

17      COME NOW Plaintiff James McDonald and submits this response to the Defendants OneWest
        Bank, FSB, et al's Opposition to my request for a Temporary Restraining Order and Preliminary Injunction.

18

19      I.     FACTS

20             A.     Defendants have submitted into the record of this Court and caused to file registered
                      documents with King County various documents evidencing the fact that there is a
21                    dispute or at a minimum a discrepancy even amongst Defendants themselves, as to
                      who the "owner and holder of the note" is. Due to this fact it is impossible based upon
22                    Defendants receipts, filings and pleadings to ascertain who the real party of interest as
                      defined in FCRP 17 & 19 is and furthermore who, if any, of the named Defendants has
23                    the beneficial interest and lawful authority to initiate a non-judicial foreclosure
24                    proceeding in reference to Plaintiff's loan. These conflicts simply strengthen the merits
                      upon which Plaintiff's case relies. The documents described above are:
25
                      i.    **Appointment of Successor Trustee Filed February 4, 2010 and recorded**
26                          **in King County Records recording number 20100204000503. (Exhibit A)**
27
               1.     This Appointment of Successor Trustee stated," The undersigned
28                    beneficiary warrants and represents that, as of the date of this

     Response to Defendants Opposition of TRO          -1-          James McDonald
                                                                    14840 119th PL NE, Kirkland, WA 98034
                                                                    (425) 210-0614

1 Appointment of Successor Trustee has been executed and

2 acknowledged, it is the **OWNER** and holder of the obligation secured

3 by the subject deed of trust".

    2. In the above mentioned document Suchan Murray claims ownership

4 for OneWest Bank of the Promissory Note. According to the

5 declaration of JC San Pedro further described below that the

6 Defendants are relying upon this is a false statement and

    misrepresentation of the facts.

7 3. This document was signed by Suchan Murray as Authorized Signatory

8 for OneWest Bank.

    a. Suchan Murray, during the flurry of many large financial

9 institutions, including Defendant OneWest, voluntarily

10 admitting to irregularities with the documentation, is a

11 known, "Robo-Signer"

12 4. This document was notarized by Anna Elizabeth Ramsey.

13 ii. **DECLARATION OF VONNIE MCELLIGOTT IN SUPPORT OF**
**DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST FOR TRO**

14 1. This document was signed by Vonnie McElligott under penalty of

15 perjury.

16 2. The document states, "This Declaration is made in support of

    defendants' motion for summary judgment" (Page 1, Par. 1, Line 17).

17 There has been no Motion for Summary Judgment in this case

18 therefore this entire document appears to be a form letter and that no

19 care was taken in its preparation or review by McElligott before she

    signed it. Therefore the question of the validity and integrity of this

20 declaration should be strongly questioned.

21 3. The document also states, "Any such document was prepared in the

22 ordinary course of business of NWTS by a person who had personal

    knowledge of the event being recorded and had or has a business

23 duty to record accurately such event." (Page 2, Par. 1, Line 6). Ms.

24 McElligott is claiming to have personal knowledge of someone else

    having personal knowledge which is physically impossible. For this

25 statement to be accurate first she would have to identify the

26 individual(s) she is referring to and they would have to be available for

27 deposition. As there is no specific individual or relationship mentioned,

28 this is hearsay.

4.    This document states "Defendants agreed to postpone the December 10, 2010, sale date in order for Plaintiff to reinstate the loan and/or request a modification (Page 2, Par. 2, Line 11). This is a false statement. No agreement between Plaintiff and Defendants was made or was in discussion at the time the lawsuit was filed or the postponement of trustee sale was made. I move the court to take action on McElligott's possible perjury.

**III.   DECLARATION OF JC SAN PEDRO IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR TRO**

1.    This document was signed by JC San Pedro under penalty of perjury.

2.    Mr. San Pedro declares, "Any such document was prepared in the ordinary course of business of One West by a person who had personal knowledge of the event being recorded and or has a business duty to record accurately such event."

    a.   Again we have a declaration that he has personal knowledge of all and any individuals that have prepared any documents relating to this case have personal knowledge. He does not identify those individuals or how he has personal knowledge of their personal knowledge. Without identifying those individuals and how he has personal knowledge of their knowledge this is hearsay.

    b.   Further the language in both San Pedros and McElligotts' declarations are identical in this paragraph. We have another case of a template letter in which case it begs to question the validity of the declarations and the review in which the declarants made in signing them.

3.    The document states, "Freddie Mac is the investor on the loan, and prior to March, 2009, Indymac serviced the loan for Freddie Mac."

    a.   Note that this declaration states that Freddie Mac is the INVESTOR of the loan, not the current owner of the promissory note. He fails to mention who the current owner is, if Freddie Mac sold the loan and if it has been placed into a mortgage backed security.

4.    In addition Mr. Pedro states, "In March 2009, OneWest Bank Group LLC acquired IndyMac's assets and operations from the FDIC."

a. OneWest Bank Group LLC is a non-party to this lawsuit and at
this time it is uncertain who they are or what their relationship
to Plaintiff's loan is.

5. Mr. Pedro states, "OneWest services the loan on behalf of Freddie
Mac pursuant to a servicing agreement."

   a. It is extremely perplexing how every document referred to in
   this declaration was provided by the Defendants as an exhibit
   yet this very important document has not been. The Servicing
   Agreement has been requested and demanded numerous
   times and yet it still has not been shown even though San
   Pedro claims it exists.

6. Mr. Pedro claims, "Defendants agreed to postpone the December 10,
2010, sale date in order for Plaintiff to reinstate the loan and/or request
a modification." Again this is a false statement as at the time of the
filing of the lawsuit no communication, whether verbal or written, was
taking place between Plaintiff and Defendants, in regards to
reinstatement of loan modification.

iv. DEFENDANTS FILED A NOTICE OF TRUSTEE SALE ON FEBRUARY 12,
2010

1. The Notice states, "The sale will be made without representation or
warranty, impress or implied regarding title, possession,
encumbrances or condition of the Property.". (Page 2, Par. 3)

2. The Notice states "to secure an obligation "Obligation" in favor of
Mortgage Electronic Registration Systems, Inc "MERS", as
Beneficiary, the beneficial interest in which was assigned by Mortgage
Electronic Registration Systems, Inc "MERS" to OneWest Bank, FSB"
(Page 1, Par. 2).

   A. By MERS own testimony, MERS does not have ANY beneficial
   interest in the Note and only acts as a nominal beneficiary to the Deed of
   Trust in order to track the assignments and sales of the Promissory Note.
   With this being the case it should be quite easy for Defendant MERS to
   produce a clear and legally assigned Chain of Title for the Note as they act
   in the role of an agent/custodian only.

v. ASSIGNMENT OF DEED OF TRUST, FILED BY ONEWEST BANK IN KING
COUNTY RECORDS RECORD #201002040000501 SIGNED JANUARY 27, 2010
(Exhibit B)

1    1. This assignment was signed by Brian Burnett as Vice President of

2    MERS. Brian Burnett is a known robo-signer...

3    2. Per San Pedro's declaration Brian Burnett is not in fact an employee of

4    MERS but has a title and signing authority for MERS. Where is the

5    authorization from MERS that proves this?

     vi. **NOTICE OF DEFAULT DATED JANUARY 12, 2010 (Exhibit C)**

6    1. Page 2 Section K states "The beneficiary of the deed of trust is

7    ONEWEST BANK, FSB". This statement is false. Even assuming the assignment

8    relied upon by Defendants is valid, which Plaintiff disputes, OneWest was not

9    assigned any interests to the Deed of Trust until 15 days after the Notice of Default

10   was executed. This is a blatant violation of the perquisites to a Trustee Sale

11   provided in RCW 61.24.030(8):

12   "That at least thirty days before

13   notice of sale shall be recorded, transmitted or

14   served, written notice of default shall be

15   transmitted by the beneficiary."

16   **2. CHARGES**

17   A. Page 2 Section D lists a title report charge of $985. As plaintiff

18   has a background in real estate this seems to be an extremely

19   high fee for this type of service. Plaintiff is concerned that this may

20   be an inaccurate and inflated charge.

21   **3. BENEFICIARY DECLARATION PURSUANT TO CHAPTER 61.24**

22   **RCW (SB 5810). (Exhibit C)**

23   A. This declaration states that the beneficiary of the loan is

24   OneWest Bank, FSB.

25   B. It was signed on January 7, 2010. THIS WAS 20 DAYS

26   BEFORE THE ASSIGNMENT OF DEED OF TRUST!

27   C. It was signed UNDER PENALTY OF PERJURY by Erica A

28   Johnson-Seck, one of the most notorious robo-signers in the

     industry.

     D. Seck declared in deposition that she does not personally review

     the documentation that she signs under oath *Indymac v Machado*.

     i. The deposition mentioned above further disproves that

     San Pedro can make a true statement that all persons

     who conduct work on the loans at OneWest Bank have

     personal knowledge of the accuracy of the information.

1   4. The Notice of Default is in violation of RCW 61.24 by making false

2   statements about who the beneficiary was at the time of its creation and

    execution.

3   B. **Plaintiff sent to Defendants** a combined Qualified Written Request and a Debt Validation

4   Demand (Exhibit F) sent via First Class Certified Mail on April 27, 2010. As part of the request,

5   Plaintiff requested a complete and accurate chain of title of the Note showing any transfers of

    interests including copies of any Servicing and Pooling Agreement and any information regarding

6   the loan's securitization and placement in an investment trust.

7   a.      1.   Indymac Bank, FSB #7009225000001615

8               2. Indymac Mortgage Services #7009225000001152196

9               3. Northwest Trustee Services #7009225000001152226

10              4. MERS #7009225000001152264

    b. MERS did not respond.

11  c. Indymac Bank, FSB did not respond.

12  c. On May 18th, 2010 OneWest responded to the request by declining to answer

    the questions set forth with the exception that Freddie Mac was the investor on the

13  loan. (Exhibit G)

14  C. As previously stated in the original COMPLAINT, **Freddie Mac does not retain loans it has**

    purchased. According to Freddie Mac's website, "In our Single-Family business we use mortgage

15  securitization to fund millions of home loans every year. Securitization is a process by which we purchase

16  home loans that lenders originate, put these loans into mortgage securities that are SOLD in global capital

    markets, and recycle the proceeds back to lenders." (Exhibit D)

17  1. If Freddie Mac was the investor, they sold the loan as part of the process of

18  doing business. Who was the loan sold to? What security was it sold in? Who now

19  is the true owner of the mortgage? As LAW HERE states only the OWNER of the

20  promissory note can initiate foreclosure proceedings. Who directed the

    agent/custodian to begin this process? And why have the Defendants not been

21  forthwith with this information?

22  D. **FREDDIE MAC Website Claims Freddie Mac is the owner of the mortgage (Exhibit E)**

23  1. As provided in Complaint, Plaintiff verified that Freddie Mac, a non-party, claims

    to be the owner of the Promissory Note. However this too conflicts with their

24  statement on their website that they resell mortgages that they have purchased.

25  Therefore it is unlikely Freddie Mac is the current owner of the Note.

26

27

28

# II.   ARGUMENTS

## A.   The Notice of Default is invalid (Exhibit C)

a.   The Notice of Default acts as the first step in the non-judicial foreclosure process in the state of Washington under RCW 61.24. Defendants OneWest Bank claimed to be the beneficiary on January 7, 2010 (see above). However the Assignment of the Deed of Trust, valid or invalid, was not signed until January 27", 2010. This is a blatant violation of the perquisites to a non-judicial trustee sale as defined in RCW 61.24.030(8). Plaintiff thereby moves the court to rule the Notice of Default is invalid and provide a preliminary injunction against Defendants for moving ahead with their attempts to conduct a trustee sale regarding 14840 119" PL NE, KIRKLAND, WA 98034.

b.   **Erica A Johnson–Seck made a false statement under penalty of perjury.**  Seck claimed and signed that OneWest Bank, FSB was the beneficiary of the obligation and security instrument on January 7, 2010. The Assignment of the Deed of Trust did not take place until 20 days after. Therefore Seck may have committed perjury. Plaintiff moves the court to rule whether or not Seck committed perjury and to take appropriate steps based on the ruling.

c.   **The Notice of Default is in violation of RCW 61.24.030(8)(2).**  This is true because the actual beneficiary at the time of the creation and execution of the document was not OneWest Bank, FSB. However, Defendant OneWest claimed to be the beneficiary and executed the declaration. As this is the initial requisite to trustee sale and does not comply with law, any and all other actions conducted by all Defendants in motion to conduct a trustee sale should be held as invalid.

   i.   (2) A notice of default issued under RCW 61.24.030(8) must include a declaration, as provided in subsection (9) of this section, from the beneficiary or authorized agent that it has contacted the borrower as provided in subsection (1)(b) of this section, or it has tried with due diligence to contact the borrower under subsection (5) of this section, or the borrower has surrendered the property to the trustee, beneficiary, or authorized agent. Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the declaration as evidence that the requirements of this section have been satisfied, and the trustee is not liable for the beneficiary's or its authorized agent's failure to comply with the requirements of this section.

d.   In *Indymac Federal Bank, FSB, v Machado* (Fifteenth Circuit Court in and for Palm Beach County, Florida, Case No. 50 2008 CA 037322XXXX MB AW) admitted that she does not personally review the documentation relating to the case before signing documents. The following is an excerpt from the deposition.

   Q. Okay. How many documents would you say that you sign on a week on average, in a week on average?

1  A. I could have given you that number if you had that question in

2  there because I would brought the report. However, I'm going to
   guess, today I saw an e-mail that 1,073 docs are in the office for
   signing. So if we just — and there's about that a day. So let's say
   6,000 a week and I do probably — let's see. There's eight of us

3  signing documents, so what's the math?

4  Q. *Six thousand divided by eight, that gives me 750.*

5  A. *That sounds about right.*

6  Q. Okay. That would be a reasonable estimate of how many you

7  sign, you personally sign per week?

8  A. Yes.

9  Q. And that would include Lost Note Affidavits, Affidavits of Debt?

10  A. Yes.

11  Q. What other kinds of documents would be included in that?

12  A. Assignments, declarations. I can sign anything related to a

13  bankruptcy or a foreclosure.

14  Q. *How long do you spend executing each document?*

15  A. *I have changed my signature considerably. It's just an E now.*

16  *So not more than 30 seconds.*

17  Q. *Is it true that you don't read each document before you sign*
    *it?*

18  A. *That's true.* [Emphasis added]

19  Q. Take me through the procedure for getting your actual

20  signature on the documents once they've gone through this
    quality control process?

21  A. The documents are delivered to me for signature and I do a

22  quick purview to make sure that I'm not signing for an entity that I
    cannot sign for. And I sign the document and I hand it to the

23  Notary, who notarizes it, who then hands it back to LPS who
    uploads the document so that the firms know it's available and

24  they send an original.

25  e.   Seck goes on to admit in this disposition that the notary is not even in the same room with

26  her when she signs the documents and they are not necessarily notarized on even the
    same day. As she states this is common practice for OneWest are we to believe any

27  notarized statement from that company?

28

1    Q. Are all the documents physically, that you were supposed to
     sign, are they physically on your desk?

2    A. Yes.

3    Q. You don't go somewhere else to sign documents?

4    A. No.

5    Q. When you sign them, there's no one else in your office?

6    A. Sometimes.

7    Q. Well, the Notaries are not in your office, correct?

8    A. They don't sit in my office, no.

9

10   Q. And the witnesses who, if you need witnesses on the
     document, are not sitting in your office?

11   A. That's right.

12   Q. So you take your ten minutes and you sign them and then you
13   give them to the supervisor of the Notaries, correct?

14   A. I supervise the Notaries, so I just give them to a Notary.

15   Q. You give all, you give the whole group that you just signed to
     one Notary?

16   A. Yes. [Emphasis added]

17   Q. I'm mostly interested in how long it takes for the Notary to
18   notarize your signature.

19   A. I can't say categorically because the Notary, that's not the only
     job they do, so.

20   Q. In any event, it doesn't have to be the same day?

21

22   A. No.

23   Q. When they notarize it and they put a date that they're
     notarizing it, is it the date that you signed it or is it the date that
24   they're notarizing it?

25   A. I don't know.

26   Q. When you execute a sworn document, do you make any kind
     of a verbal acknowledgment or oath to anyone?

27   A. I don't know if I know what you're talking about. What's a
28   sworn document?

| | |
|---|---|
| 1 | Q. Well, an affidavit. |
| 2 | A. Oh. No. |
| 3 | Q. In any event, there's no Notary in the room for you to — |
| 4 | A. Right. |
| 5 | Q. — take an oath with you, correct? |
| 6 | A. No there is not. |
| 7 | Q. In fact, the Notaries can't see you sign the documents; is that correct? |
| 8 | A. Not unless that made it their business to do so? |
| 9 | |
| 10 | Q. To peek into your office? |
| 11 | A. Yes. [Emphasis added] |
| 12 | **B.   The Appointment of Successor Trustee contains false statements** (Exhibit A) |
| 13 | a.   Suchan Murray signed this document stating, "The undersigned present beneficiary |
| 14 | WARRANTS and represents that, as of the date this Appointment of Successor Trustee |
| 15 | has been executed and acknowledged, it is the OWNER and holder of the obligation...". |
| 16 | This is false according to the Defendants evidence in the Declaration of San Pedro where |
| 17 | he confirms Freddie Mac was or is the investor/owner of the mortgage. |
| 18 | b.   As OneWest Bank was and is NOT the owner of the obligation, rather allegedly a servicer |
| 19 | or agent of whoever the owner truly is, Plaintiff moves the court to rule on possible perjury |
| 20 | against Suchan Murray. |
| 21 | c.   Suchan Murray is a known "robo-signer" along with Seck and Brian Burnett. |
| 22 | **C.   Declaration of Vonnie McElligott contains false and incorrect statements** |
| 23 | a.   There is no Motion for Summary Judgment that McElligott could be making this declaration |
| 24 | for as one does not exist in this case. |
| 25 | b.   McElligott cannot testify that all persons who have worked on this file have PERSONAL |
| 26 | knowledge unless she personally has done ALL work on the file. Unless she has some |
| 27 | remarkable ability she cannot speak for others. Without providing details of what |
| 28 | individuals worked on the file Plaintiff cannot verify the veracity of this statement. This is |

hearsay.

c.   Further she states that Northwest Trustee keeps accurate records. However the title of her

declaration is "in support of Defendants" opposition to Plaintiff's Request for TRO". And in

the very first paragraph of the document she signed is her sworn statement that the

declaration is in support of the Defendants' Motion for Summary Judgment. This does not



Response to Defendants Opposition of TRO        -10-        James McDonald
14840 119th Pl. NE, Kirkland, WA 98034

1    exactly inspire belief in accurate notations and documentation when she does not even

2    verify that what she is signing is accurately worded.

3    d. **Further evidence of the poor accuracy of records is the fact that Northwest Trustee began

4    acting as Trustee for the Deed of Trust in question without having been properly assigned

     as trustee.

5    e. **There was NO agreement or possibility of agreement between any of the Defendants and

6    Plaintiff on December 10, 2010. If such an agreement existed the case itself would have

7    not been filed. Nor did any of the Defendants contact the Plaintiff in written communication

     with any offer of mediation or settlement regarding this matter.

8    **D. Declaration of JC San Pedro contains false and misleading statements**

9    a. As listed above, Pedro claims to have personal knowledge that any/all person(s) have

10   PERSONAL experience and knowledge regarding any document they sign and the details

     of the transaction. Again, without providing identities of whom he is speaking of and the

11   nature of his knowledge this is hearsay.

12   b. **Further it has been proven through depositions that this statement is FALSE. Seck

13   admitted that she does not personally review facts and details of the documentation that

     she signs. Seck IS an employee of OneWest Bank. Therefore Pedro's claim that all

14   persons conducting business for OneWest Bank, FSB know the details of the

     documentation is FALSE.**

15   **E. Declaration of JC San Pedro does not give evidence to claims**

16   a. JC San Pedro states that a company called OneWest Bank Group LLC acquired servicing

17   rights to Freddie Mac loans. He does not explain who OneWest Bank Group LLC is in

     relation to OneWest Bank FSB or to my loan. This leads to further concerns of multiple

18   parties having potential claim in reference to any obligation that may remain. How did

19   OneWest Bank FSB acquire the servicing rights if another company acquired them? Even

20   if OneWest Bank FSB or OneWest Banking Group LLC have obtained the servicing rights

     to the Deed of Trust and Note referenced therein, servicing rights alone are not adequate

21   to initiate foreclosure proceedings.

22   b. Pedro also states that there is a servicing agreement between OneWest (unknown if this is

23   OneWest Bank Group LLC or OneWest Bank FSB) and Freddie Mac. However,

     Defendants did not produce this Servicing Agreement which has been repeatedly

24   requested and demanded by the Plaintiff for over a year (See Qualified Written Request

25   and Debt Validation Demand above). Plaintiff again requests and urges the Court to order

26   this document to be provided to show that such an agreement actually exists. Any entity

27   could easily claim to service a loan when in fact it does not. And with the dubious

     statements made in Pedro's declaration, Plaintiff urges the Court to be EXTREMELY wary

28   of taking statements at face value.

1    c.  Pedro claims that Brian Burnett, again a known "robo-signer", has signing authority for

2    MERS. Is he as sure of this as he is sure to the is certain that all parties that prepare and sign

3    documentation have personal knowledge when we know in fact they do not thanks to

4    Secks deposition? I move the Court to order Defendants provide whatever agreement may

5    or may not exist giving him the right to act as a Vice President and have signing authority

6    to transfer beneficial interest to his own company.

**F.  OneWest Bank FSB claims to be in possession of the Note**

7    a.  While OneWest claims to be the holder and in possession of the Note, due to the FACTS

8    identified above in the evidence the Defendants are relying upon, the veracity and

9    authenticity of any documents presented by the Defendants should be seriously

10   questioned by the Court. The word of San Pedro alone is questionable at best.

11   b.  OneWest provided a PHOTOCOPY of the Note in their list of exhibits. The Plaintiff also

12   provided a PHOTOCOPY of the note in his exhibits within the Original Complaint. Where

13   exactly is the original? Can Pedro testify he has personally seen the original? He does not

14   declare it so it is unlikely. All the Defendants have shown is that they have a photocopy in

15   their possession. Even if they have the original this does not by default grant them holder

16   status.

17   c.  In *Indymac v Machado Seck* testifies that the Note had to be requested from the trustee of

18   the Security Pool in which it was a part of. If that is what happened in that case, how do we

19   truly know that OneWest is indeed in possession?

20   d.  It would appear from the above described declarations that OneWest Bank FSB would be

21   holding the note in some capacity other than a "holder" as described in II.I below.

**G.  Plaintiff did not file a separate Motion for Temporary Restraining Order**

22   a.  This is absolutely correct and I apologize to the Court. I am a Pro Se litigant that is trying to cram

23   two years of law school into less than two months. I apologize that I was not aware of the necessity to file a

24   separate motion. However Plaintiff did "move the court" within the complaint. Plaintiff will be filing a

25   separate motion and here moves the court to issue an immediate TRO and continue the hearing until such

26   time that Plaintiff's motion can be properly filed, Defendants can respond, and Plaintiff can reply. Plaintiff is

27   making the utmost effort to comply with proper procedures and is happy to correct mistakes given the

28   opportunity.

     b.  Defendants Response to Complaint and Objection to TRO should be denied as I, plaintiff, am a

     pro se litigant and as such am entitled to some leeway as stated in Haines v Kemer, 404 U.S. 519-421; In

     re Haines:

                "pro se litigants are held to less stringent pleading standards

                than admitted or licensed bar attorneys. Regardless of the

                deficiencies in the pleadings, pro se litigants are entitled to the

                opportunity to submit evidence in support of their claims."

c. Plaintiff did not desire to have to be Pro Se and is currently seeking counsel. Due to time constraints with the impending sale, Plaintiff did not have the ability to find and retain competent counsel. There are very few attorneys who are experienced or capable in this new frontier of violations and rampant disregard for following appropriate law. Plaintiff is continually seeking appropriate counsel to take over this matter.

G. Defendants have requested the Court order Plaintiff to post a bond of $6,000-$10,000 if the court grants the Temporary Restraining Order. This would cause further injury to the Plaintiff as I am still interviewing appropriate counsel to take over the case. As stated above there are few adequate attorneys in this area of expertise and they all have very high retainers. Requiring me to post a bond would limit my access to legal counsel and cause further obstacles to my rights of due process. Defendants have yet to validate that any debt remains owing or that any of the named Defendants have the appropriate rights to collect and/or authority to foreclose.

**H. There are significant gaps in the "chain of title" to the Note**

    a. OneWest does not meet the conditions to be a holder or holder in due course according to RCW 62A.3-302.

        i. (2) The holder took the instrument (i) **for value**, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in RCW 62A.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in RCW 62A.3-305(a).

        ii. OneWest states in the Declaration of JC San Pedro that it is not the owner of the Note. Therefore under 62A.3-302 it is not a true holder and has no rights therewith to enforce the financial instrument as it did not take the instrument for value. OneWest has yet to provide Plaintiff with adequate responses to Plaintiff's requests that it has the proper rights and authority to collect and/or foreclose and that the amounts OneWest is attempting to collect are accurate. If OneWest is, in fact, currently holding the signature original note it would appear that it would only be holding the note in an agency capacity and would therefore not be the "beneficiary" as defined in 61.24 et seq and "holder" as defined in 62A et seq. Nor has OneWest provided any evidence to show that it is authorized to act as an agent for the true owner and holder in due course.

    b. The original lender on the Note was Indymac Bank FSB. However Indymac never recorded any assignments or indorsements to any party whatsoever.

1  c. If Indymac did indeed sell the loan to Freddie Mac, Freddie Mac did not record an

2  assignment or indorsement to any party at the time it sold the Note. As stated above in

3  1.C.1 Freddie Mac does not retain mortgages but sells them. Due to the lack of a proper

4  assignment it is unknown who Freddie Mac sold the loan to and as such which, if any, of

5  the named Defendants has any lawful rights and/or authority to collect or foreclose. Until a

6  full and complete "chain of title" of the note and proper accounting is given, Plaintiff is in

7  danger of future parties coming with a real benefit interest.

8  d. Due to this lack of certainty as to which of the Defendants, if any, Freddie Mac or some

9  unknown party holds both physical possession of the signature original note and is entitled

10 as the holder in due course and therefore has the proper rights and authority to foreclose

11 provides Plaintiff relief under RCW 62A.3-309(c)

12 "The court may not enter judgment in favor of the person

13 seeking enforcement unless it finds that the person required to

14 pay the instrument is adequately protected against loss that

15 might occur by reason of a claim by another person to enforce

16 the instrument…"

17 **I.  Defendants States that OneWest, as the holder of the Note, is the party who has "standing"**

18 **and is entitled to foreclose is unproven.**

19 a. Defendants have failed to prove that OneWest is in possession of the original signed note.

20 Their only claim to that is the questionable declaration by San Pedro who does not state

21 that he has personally seen the original signed Note.

22 b. Defendants maintain that RCW 61.24.005(2) gives them standing as beneficiary is

23 incorrect. "'Beneficiary'" means the holder of the instrument or document evidencing the obligations

24 secured by the deed of trust, excluding persons holding the same as security for a different

25 obligation." OneWest may or may not be in possession of the Note but it is not qualified as a holder

26 of the note.

27 i.  RCW 62A.3-302 states the definition of holder is a party that took the instrument

28 for VALUE. OneWest is claiming no ownership rights, nor are they claiming they

took the Note for value, therefore they do not qualify as a holder of the Note. At

best, they are a custodian of the Note which as yet remains to be proven by the

Defendants.

ii.  In the event that OneWest is acting as a custodian or agent OneWest would

need to have some agreement that establishes that authority. Furthermore, the

party that provided OneWest with that authority must have to meet the

requirements identified above to be the "holder" and "beneficiary" of the Note

referenced in the Deed of Trust identified in this case.

J.   **Defendants Claim that Securitization of the Loan Does Not Preclude Foreclosure**

   a.   In a mortgage backed security (MBS) that follows all applicable federal and state laws and applicable accounting principles it may be possible to foreclose on a property. However it remains to be seen if whatever MBS the Note was **sold** into follows proper procedures and who is authorized to act as its agent.

   b.   Most parties acting on behalf of an MBS Trust have their powers spelled out within the terms of the Pooling and Service Agreement ("PSA") or other governing documents for that Trust. Most PSA's grant only limited powers to MBS Trustee's. They do not grant them the power to stand in the shoes of the real party in interest unless there is a special document signed by at least a certain percentage of the MBS certificate holders granting the MBS Trustee special powers pertaining to specific claims and litigation. Full authority to act on behalf of the Trust must include the authority to enter into compromise settlements in litigation.

   c.   Defense is only partially correct in asserting that evidence of the Note in question is part of a MBS. Plaintiff has shown in Freddie Mac's own words that they do not retain loans purchased from lenders but sells them into the global market. That in and of itself gives credence that the Note has been sold by Freddie Mac to an unknown party, most likely an investment trust.

   d.   The only reason Plaintiff does not have a copy of the MBS that the loan was sold into is that Defendant OneWest refused to provide it (EXHIBIT). If it is a MBS that complies with all federal and state laws as well as all accounting principles there should be no reason for OneWest to have withheld the information upon request. In fact this reluctance to provide documentation leads Plaintiff to believe there is some type of violation that Defendants are attempting to keep hidden from this Court and Plaintiff. If this is proven to be true it would most definitely be a violation of Defendants duty of good faith and honesty owed to Plaintiff per RCW 61.24.010(4).

   e.   Further, it remains to be seen that OneWest is entitled to act as an agent for the MBS or the trustee of the MBS as they have only asserted a servicing agreement for the time period that Freddie Mac may have owned the loan. They have made NO claim to have a servicing agreement with another party.

   f.   Pursuant to FRCP 17(a) and 19(a), the real party in interest is the only party that can proceed in this action on behalf of the beneficiary of the note in question and their joinder is required. FED.R.CIV.P.19 requires mandatory joinder of every person with an interest of every person with an interest in the note if not doing so could lead to inconsistent results in different proceedings affecting the same subject matter. *Kang Jin Hwang, supra at 7.*

1    Foreclosure agents and servicers must prove they have authority to act for a party that has

2    standing. *In re: Scott 376 B.R. 285 290 (Bankr. D. Idaho 2007), Kang Jin Hwang, 396 B.R.*

3    *at 767; Jacobson, supra at 12.* A nominee or agent must also show that has actual

4    authority from the true party in interest to act on its behalf and it cannot be assumed that it

5    continues to have such authority even if granted it in the original deed of trust.

**K.   All actions in regards to the above referenced Deed of Trust and the non-judicial foreclosure sale are void**

6    a.   Defendant OneWest has violated 61.24 et seq.

7         i.   Defendant OneWest falsely claimed to be the beneficiary of the Deed of Trust on

8              January 7, 2010 when issuing a beneficiary declaration for the Notice of Default

9              thereby violating RCW 61.24.030(8).

10        ii.  OneWest violated RCW 61.24 *et seq* by causing Northwest Trustee Services to

11             initiate non-judicial foreclosure proceedings on January 12, 2010 when it knew or

12             should have known that no appointment of successor trustee had been signed or

13             recorded.

12   b.   Defendant Northwest Trustee has violated 61.24 et seq

13        i.   Northwest Trustee Services began duties as successor trustee before being

14             legally appointed successor trustee as required by 61.24.010(2).

15        ii.  Plaintiff claims that Defendant Northwest Trustee Services has violated RCW

16             61.24.030 by not complying with the prerequisites required prior to issuing a

17             Notice of Trustee Sale.

**L.   Northwest Trustee Services has Slandered Title**

17   a.   Plaintiff claims that Defendant Northwest Trustee Services has slandered title to the Real

18        Property identified above by recording an unlawful Notice of Trustee Sale.

**M.   OneWest Bank FSB has Slandered Title**

19   a.   Plaintiff alleges that Defendant OneWest Bank have authorized Northwest Trustee

20        Services to slander title to the Real Property identified above by recording an unlawful

21        Notice of Trustee Sale.

22   b.   Defendant OneWest slandered title by recording in King County records an Appointment of

23        Successor Trustee by claiming to be the owner of the Note which according to the

24        documents further described above it is not.

**N.   Defendants have used wrongful and unlawful foreclosure as an unfair and deceptive business practice**

25

26   a.   Defendants have engaged in unfair and deceptive business practices

27        i.   Plaintiff claims that Defendant(s) have all engaged together in a wrongful and

28             unlawful foreclosure action as part of a plan executed between them by utilizing

unfair and deceptive business practices in violation of RCW 19.86 et seq. The

Defendants' unfair and deceptive business practices include:

1. Defendant Northwest Trustee failed to disclose it is associated with
   Defendant OneWest Bank's attorney firm and thereby has a conflict of
   interest.

2. Engaging an unauthorized party to initiate wrongful and unlawful
   foreclosure proceeding which is still scheduled under the wrongful and
   unlawful Notice of Trustee's Sale as per RCW 61.24 et seq.

3. Attempting to gain legal title to the Real Property concerned through the
   wrongful and unlawful foreclosure.

b. Defendant Northwest Trustee has violated their duty of good faith (conflict of interest) – see
   Motion to Remove Opposing Counsel

   i. RCW 61.24.010(4) states "The trustee or successor trustee has a duty of good
      faith to the borrower, beneficiary and grantor".

   ii. Northwest Trustee Services prepared and served the Notice of Default described
       above dated January 12, 2010 (see I.A.v). However they were not appointed as
       successor trustee until January 27, 2010 (see I.A.i) They were not operating in
       good faith to Plaintiff as they had no right to act as trustee.

   iii. Routh, Crabtree and Olson lists Stephen Routh as the governing person with the
        Washington Department of Licenses and the Secretary of State (Exhibits
        H/ROC-A & I/ROC-B). Northwest Trustee Services lists Stephen Routh and
        David Fenell as the governing person(s) with the same departments (Exhibits
        J/ROC-C & K/ROC-D). Therefore both companies are owned in part or whole by
        Stephen Routh. All employees directly or indirectly report to Stephen Routh.
        Both companies are located at 3535 Factoria Blvd., Bellevue, Washington.

   iv. On or about January 15, Routh, Crabtree and Olson caused to be sent to the
       Plaintiff a letter identifying themselves as a "debt collector" for OneWest (Exhibit
       L/ROC-E). Northwest Trustee Services/RCO is in violation of this duty of good
       faith due to a serious conflict of interest. Stephen Routh obtains income for
       representing OneWest Bank and MERS for debt collection, legal representation
       and trustee services. There can be no good faith to all entities when Stephen
       Routh's companies are ganging up" with one side against another.

c. OneWest Bank caused to be issued a Notice of Default for a Deed of Trust in which it was
   not the beneficiary

   i. As described above in II.A OneWest attempted to deceive the Plaintiff by filing
      an Invalid Notice of Default.

d. None of the Defendants Have Standing to Foreclose

i.  Defendant MERS makes no claim to ownership of the Note and therefore has no
standing to Foreclose.

ii.  Defendant Northwest Trustee makes no claim to ownership of the Note and
therefore has no right to initiate non-judicial foreclosure proceedings.

iii.  Defendant OneWest does not have claim in due course status as stipulated in
62A.3-302 and therefore has no right to foreclose.

iv.  Further, OneWest has given no irrefutable evidence showing that there exists a
Servicing Agreement between them and Freddie Mac giving them rights to
Foreclose as an agent of Freddie Mac. Additionally, should Freddie Mac have
SOLD the Note OneWest has not even made a claim to have such an
agreement with the entity or individual that Freddie Mac sold the Note to.
Therefore they cannot be considered an agent or custodian until such
documentation is provided.

v.  **The holder of the note, identified as a "Beneficiary" in RCW 61.24**
**et sec. which is the only party with the proper standing to**
**foreclosure, not the servicer or the collecting agent,  and as such**
**must be so named in the pleadings. Id; Kang Jin Hwang, supra;**
***Vargas, supra.***

**O.  Plaintiff Requests Strict Proof of Defendant's Claims of Right to Foreclose**

A.  It has customarily been generally preferred in all Courts to not insist on strict application of
the Rules of Evidence, in the interest of the efficient and inexpensive administration of justice.
However, do to the facts identified above the veracity and authenticity of any documents
presented by the Defendants should be seriously questioned by the court. It has been found that
in the case of a "securitized" mortgage the governing documents of the securitization trust are not
adequate to prove the authority to foreclosure. In a report dated Nov. 16, 2010, the Congressional
Oversight Committee stated the following:

Effects of Document Irregularities

Effective transfers of real estate depend on parties' being able to answer seemingly
straightforward questions: Who owns the property? How did they come to own it? Can
anyone make a competing claim to it? The irregularities have the potential to make these
seemingly simple questions complex. As a threshold matter, a party seeking to enforce the

1  rights associated with the mortgage must have standing in court, meaning that a party

2  must have an interest in the property sufficient that a court will hear their claim and can

3  provide them with relief.[28] For a mortgage, "[a] mortgage may be enforced only by, or in

4  behalf of, a person who is entitled to enforce the obligation the mortgage secures."[29] Thus,

5  the only party that may enforce the rights associated with the mortgage, with standing to

6  take action on a mortgage in a court, must be legally able to act on the mortgage.[30]

7  Accordingly, standing is critical for a successful foreclosure, because if the party bringing

8  the foreclosure does not have standing to enforce the rights attached to the mortgage and

9  the note, that party may not be able to take the property with clear title that can be passed

10  on to another buyer.[31] Thus, if prior transfers of the mortgage were unsuccessful or

11  improper, subsequent transfers of the property, such as a foreclosure or even an ordinary

12  sale, could be affected. Further, failure to foreclose properly □□ whether because the

13  foreclosing party did not actually hold the mortgage and the note, or because robo-signing

14  affected the homeowner's due process rights □□ means that the prior homeowner may be

15  able to assert claims against a subsequent owner of the property.[32] In this way,

16  documentation irregularities can affect title to a property at a number of stages...."

17  *Footnotes from Congressional Foreclosure Report.*

18  [28] National Association of Attorneys General, *50 States Sign Mortgage Foreclosure Joint*

19  *Statement* (Oct.

20  13, 2010) (online at www.naag.org/joint-statement-of-the-mortgage-foreclosure-multistate-

21  group.php) (hereinafter "50 State Sign Mortgage Foreclosure Joint Statement.")

22

23  [27] Cases involved suits against Bank of America (as the parent of loan originator

24  Countrywide) claiming violations of representations and warranties and sought to enforce

25  put-back provisions. *Greenwich Financial Services Distressed Fund 3 L.L.C. vs.*

26  *Countrywide Financial Corp, et al.*, 1:08-cv-11343-RJH (S.D.N.Y. Oct. 15, 2010);

27  *Footbridge Limited Trust and OHP Opportunity Trust vs. Bank of America*, CV00367

28  (S.D.N.Y. Oct 1, 2010).

[28] *See* Stephen R. Buchenroth and Gretchen D. Jeffries, *Recent Foreclosure Cases: Lenders Beware* (June 2007) (online) at www.abanet.org/rppt/publications/ereport/2007/6/OhioForeclosureCases.pdf); *Wells Fargo v. Jordan,* 914 N.E.2d 204 (Ohio 2009) (if plaintiff has offered no evidence that it owned the note and mortgage when the complaint was filed, it would not be entitled to judgement as a matter of law."); Christopher Lewis Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System,* University of Cincinnati Law Review, Vol. 78, No. 4, at 1368-1371 (Summer 2010) (online at papers.ssm.com/sol3/papers.cfm?abstract_id=1469749) (hereinafter "Cincinnati Law Review Paper on Foreclosure"); *MERSCORP, Inc. v. Romaine,* 861 N.E. 2d 81 (N.Y. 2006). Accordingly, a second set of problems relates to the chain of title on mortgages and the ability of the foreclosing party to prove that it has legal standing to foreclose. While these problems are not limited to the securitization market, they are especially acute for securitized loans because there are more complex chain of title issues involved.

[29] Restatement (Third) of Prop. (Mortgages) § 5.4(c) (1997). Only the proven mortgagee may maintain a foreclosure action. The requirement that a foreclosure action be brought only by the actual mortgagee is at the heart of the issues with foreclosure irregularities. If the homeowner or the court challenges the claim of the party bringing a foreclosure action that it is the mortgage (and was when the foreclosure was filed), then evidentiary issues arise as to whether the party bringing the foreclosure can in fact prove that it is the mortgagee. The issues involved are highly complex areas of law, but despite the complexity of these issues, they should not be dismissed as mere technicalities. Rather, they are legal requirements that must be observed both as part of due process and as part of the contractual bargain made between borrowers and lenders.

[30] That party must either own the mortgage and the note or be legally empowered to act on
the owner's behalf. Servicers acting on behalf of a trust or an originator do not own the
mortgage, but by contract are granted the ability to act on behalf of the trust or the
originator. *See* Federal Trade Commission, *Facts for Consumers*(online at
www.ftc.gov/bcp/edu/pubs/consumer/homes/rea10.shtm) (accessed Nov. 12, 2010) ("In
*today's market, loans and the loans you take* out are often bought and sold. In many
cases, the company that you send your payment to is not the company that owns your
loan." *See also* October 2010 SIGTARP Report, *supra* note 5, at 160 (describing clients of
servicers).

[31] Laws governing the remedies available to a lender foreclosing on a property vary
considerably. States also differ markedly in how long it takes the lender to foreclose
depending on the available procedures. In general, claimants can seek to recover loan
amounts by foreclosing on the property securing the debt. If the loan is "non-recourse," the
lender only may foreclose upon the property, but if the loan is "recourse," the lender may
foreclose upon the property and other borrower assets. Most states are recourse states. A
loan in a recourse state allows a mortgagee to foreclose upon property securing a
promissory note and, if that property is insufficient to discharge the debt, move against the
borrower's other assets. In non-recourse states, recovery of the loan amount is limited to
the loan collateral. Put another way, the lender cannot go after the borrower's other assets
in a non-recourse state if the property is insufficient to discharge the debt. It is worth noting
that even in recourse states, given the current economic climate, the mortgagees' recourse
to the borrower's personal assets may be minimal relative to the costs and delay in
pursuing and collecting on a deficiency judgment. *See* Andra C.Ghent and Marianna
Kudlyak, *Recourse and Residential Mortgage Default: Theory and Evidence from U.S.*
*States*,Federal Reserve Bank of Richmond Working Paper, No. 09-10, at 1-2 (July 7, 2009)
(online at www.frfa.gov/webfiles/1505/website_qhent.pdf).

1

2   S.J. Quinney College of Law, University of Utah, conversations with Panel staff (Nov. 8,

3   2010).

4   B.    In addition, the Mass. Superior Court ruling referenced above which states:

5   "The judge did not err in concluding that the securitization documents submitted by the

6   plaintiffs failed to demonstrate that they were the holders of the Ibanez and LaRace

7   mortgages...."

8   Further in a separate writing to Mass. Superior court ruling above, Judge Cordy stated:

9   "I concur fully in the opinion of the court, and write separately only to underscore that what

10  is surprising about these cases is not the statement of principles articulated by the court...

11  but rather the utter carelessness with which the plaintiff banks documented the titles to

12  their assets.... the holder of an assigned mortgage needs to take care to ensure that his

13  legal paperwork is in order. ... Foreclosure is a powerful act with significant consequences,

14  and Massachusetts law has always required that it proceed strictly in accord with the

15  statutes that govern it. As the opinion of the court notes, such strict compliance is

16  necessary."

17  B.    **Plaintiff has identified significant gaps in proof of the history of ownership and**

18  assignments of the Deed of Trust and Note that are necessary to prove the identity of

19  the real party in interest and its connection to the party seeking to act on its behalf.

20  These are so glaring that there must be strict compliance with the Rules of Evidence,

21  such as those for competency of witness, personal knowledge, hearsay and

22  authenticity, not to mention matters such as relevance of factual assertions contained

23  in documents, and sufficiency of proof. Therefore, Plaintiff requests strict proof from

24  any Defendant who claims the right to foreclose which proof should meet the following

25  requirements:

26      a.    The indorsements of the signature original promissory note were made to the  proper

27  entities at the proper time and in the proper sequence to show the history of transfers

28

³² Christopher Lewis Peterson, associate dean for academic affairs and professor of law,

1   from the original lender/payee named on the note through to the current holder/owner

2   of the note, all pursuant to applicable Washington State negotiable instruments law.

3   b. That any assignments of the deed of trust were made to the same entities at the same

4   time as any indorsements of the note secured by the deed of trust, so that the

5   beneficial ownership of the deed of trust was not separated from the rightful ownership

6   of the note.

7   c. That the person who claims the right to foreclose the deed of trust is either the real

8   party in interest who owns and holds both the note and the deed of trust for its own

9   benefit, or that is has authority to act and is acting for the rightful owner(s) and holder

10   of the note and the beneficial interest in the deed of trust, whomever that may be.

11

12   **P.   Request for Temporary Restraining Order and Preliminary Injunction**

13   a. If Defendant Northwest Trustee Services is permitted to sell the property at a non-judicial

14   sale, the rights and interests of the Plaintiff in the real property described above will be lost

15   or otherwise thwarted, even though Plaintiff has filed this lawsuit. That will cause Plaintiff

16   irreparable harm as described below in ( II.P.c.i ). Furthermore a non-judicial foreclosure

17   sale is very unlikely to produce a reasonable value that will pay off the loan so whichever

18   Defendant, if any, may be entitled to foreclose will lose by the foreclosure sale. In any

19   event, none of the Defendants are likely to be able to prove entitlement to foreclose, given

20   the evidence apparently relied upon by Defendants.

21   **b.   Based on the Violations and Invalidity of the Documents Described in II.A – II.O**

22   **There is a Strong Likelihood of Success on the Merits with Respect to Plaintiff's**

23   **Claims and a Preliminary Injunction is Appropriate**

24   Preliminary injunctions are appropriate where there is (1) a strong likelihood of success on

25   the merits; (2) a possibility of irreparable injury not remediable by damages; (3) a balance of

26   hardships in the Movant's favor; and (4) a public policy in favor of granting the relief. *Powell-*

27   *Cerkoney v. TCR-Montana Ranch Joint Venture, II,* 176 Ariz. 275, 280, 860 P.2d 1328, 1333

28   (Ct App. 1993). This is further supported by one of the most cited federal appellate cases

concerning the legal standard for issuance of preliminary injunctive relief is *Blackwelder*

*Furniture Co. v. Statesville, Inc. v. Selig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir. 1977), which

concerned that plaintiff's appeal of the refusal of the Federal District Court to issue a

preliminary injunction under FRCP 65(a). The plaintiff was an authorized dealer of the

defendant manufacturer. The plaintiff's dealership was terminated by defendant in a manner

that plaintiff claimed violated section 1 of the Sherman Act, and requested a preliminary

injunction among other relief. The Court of Appeals reversed and remanded with instructions to

issue a preliminary injunction. Id. 198. The Court of Appeals, stated the fourfold equitable

rules of thumb for the determination of whether preliminary injunctive relief should be granted

under FRCP 65(a) as:

    1)  Has the petitioner made a strong showing that it is likely to prevail upon the merits?

    2)  Has the petitioner shown that without such relief it will suffer irreparable injury?

    3)  Would the issuance of the injunction substantially harm other interested parties?

    4)  Wherein lies the public interest?

The Court then discussed at length how the factors were to be weighed and evaluated by a trial court. Id

192-197. In essence, the Court ruled:

    It is sufficient (to grant the motion) if the court is satisfied that there is a probable right and a

probable danger, and that the right may be defeated, unless the injunction is issued, and

considerable weight is given to the need for protection to the plaintiff as contrasted with probable

injury to the defendant.

The Appellate Court in *Blackwelder*,550, F.2d 194, 195 states:

The balance-of-hardship test correctly emphasizes that, where serious issues are before the

court, it is a sound idea to maintain the status quo ante litem, provided that it can be done without

imposing too excessive an interim burden upon the defendant, Munoz v. Porto Rico Light &

Power Co., 83 F.2d 262, 269 (1st Cir. 1936); Benson Hotel Corp. v. Woods, 168 F.2d 694, 696

(8th Cir. 1948); Pratt v. Stout, 85 F.2d 172, 177 (8th Cir. 1936); Sinclair Refining Co., v. Midland Oil

Co., supra, 55 F.2d at 45 (citing Blount v. Societe Anonyme Du Filtre, 53 F. 98, 101 (6th Cir.

1892)), for otherwise effective relief may become impossible:

The controlling reason for the existence of the judicial power to issue a temporary injunction is

that the court may thereby prevent such a change in the relations and conditions of persons and

property as may result in irremediable injury to some of the parties before their claims can be

investigated and adjudicated.

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 743 n. 10 (2d Cir. 1953) (quoting Love

v. Atchison, T. & S. F. Ry. Co., supra, 185 F. at 332).

The district court below erred in holding that plaintiff must first show "likelihood of success" in

order to be entitled to preliminary relief. Instead, the first step in a Rule 65(a) situation is for the

court to balance the "likelihood" of irreparable harm to the plaintiffs against the "likelihood" of

harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor,

then the likelihood-of-success test is displaced by Judge Jerome Frank's famous formulation:

(i)t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious,

substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more

deliberate investigation.

Hamilton Watch Co. v. Benrus Watch Co., supra, 206 F.2d at 740, 743; Semmes Motors, Inc. v.

Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970).

The importance of probability of success increases as the probability of irreparable injury

diminishes,

Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 923 (3rd

Cir. 1974); Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974);

District 50, United Mine Workers v. United mine Workers, 134 U.S.App.D.C. 34, 412 F.2d 165,

168 (1969); Packard Instrument Co. v. ANS, Inc., 416 F.2d 943 (2d Cir. 1969);

and where the latter may be characterized as simply "possible," the former can be decisive. Even

so, it remains merely one "strong factor" to be weighed alongside both the likely harm to the

defendant and the public interest.

Dino De Laurentiis Cinematografica, SpA. V. D-150, Inc., 366 F.2d 373,375 (2d Cir. 1966)

(quoting 3 Barron & Holtzoff, Federal Practice & Procedure, ¶ 1433 at 493 (1958)).

Among cases in accord see: Abbott Laboratories v. Sandoz, Inc., 544 F.3d 1341, 1361, 1362,

(Fed. Cir. 2008); A&M Records v. Napster, 239 F.3d 1004, 1013 (9th Cir. 2001); L.J. By and Darr

*v. Massinga*, 838 F.2d 118, 120-122, (4th Cir.1988):  *Smith International, Inc., v. Hughes Tool*

*Company*, 718 F.2d 1573, 1577-1581, (Fed. Cir. 1983)

In *A&M Records v. Napster, supra*, at 239.F3d 1013, the Court stated:

i. Preliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips in its favor. *Prudential Real Estate Affiliates, Inc. v. PRR Reality, Inc.* v. 204 F.3d 867,874 (8th /Cir. 2000). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.

**c.  Strong Likelihood of Success on the Merits**

i. Plaintiff has shown that the Notice of Default does not meet the requirements as stated in RCW 61.24.030(8)(2) and therefore is invalid. All further steps taken by Defendants Northwest Trustee and OneWest are therefore also invalid as the initial pre-requisite step in a non-judicial foreclosure sale was not properly conducted.

ii. Plaintiff has shown that through the documentation provided by the Defendants that there are several misrepresentations of the facts throughout the evidence the Defendants rely upon for their defense. The Defendants have produced no tangible evidence supporting their rights to foreclose. Further discovery and evidentiary hearings will only continue to strengthen Plaintiff's case.

iii. The true Beneficiary of the Note, which according to Defendants supplied documentation, appears to be a securitized investment trust that Freddie Mac sold the note into. Therefore there has never been a true and correct declaration from the "Beneficiary". This is simply another example of Defendants' complete disregard for the procedures established by the Legislature.

iv. Defendants have neglected to provide any real "chain of title" of the Note nor have they provided the alleged Servicing Agreement between OneWest and Freddie Mac. Once again, OneWest only claimed to have a Servicing Agreement between themselves and Freddie Mac, not to whomever Freddie Mac sold the Note to. This further creates doubt that OneWest has any authority to conduct any "ministerial acts" as Defense stated.

**d.  Possibility of Irreparable Injury Not Remediable by Damages**

i. The real property in question is not an investment property, it is a home. If the non-judicial foreclosure sale takes place and is completed there is no guarantee

of the home being restored to the Plaintiff. "Chateau Zen" as it is referred to by
those that love it cannot be replaced by a settlement check.

ii. Further if the property IS restored after successful completion of these
procedures there is no guarantee what condition the property will be in when it is
regained. If it is left empty, it could be vandalized. If it is occupied it may be
damaged or not taken care of by the temporary occupants. The only guarantee
that it will remain well cared for is to remain in the possession of the Plaintiff
throughout the proceedings.

1. According to *Sabin v. Rauch, 75 Ariz. 275, 280 (Ariz. 1953)*

When dealing with real property, a "...Court may assume the inadequacy of
damages as a remedy without the necessity of a showing to that effect."

**e. Balance of Hardships in the Movants Favor**

i. The hardship to the Plaintiff is extreme compared to the hardship, if any even
exist, is miniscule to the Defendant(s). According to the facts presented above it
appears that the Plaintiff is the only real party of interest. Plaintiff will suffer
substantial loss in equity as a trustee sale is unlikely to gain full value of the
home at auction, especially in the slowest real estate time of the year while the
country is still suffering from a recession. Plaintiff will also be rendered homeless
and may not be able to secure a residence thereby forcing the Plaintiff to move
out of state to be with family. This would drastically reduce Plaintiff's ability to
continue the proceedings in this lawsuit as Plaintiff would be less likely to be able
to attend future hearings due to extraordinary costs in travel.

1. Specific Damages that will be caused to the Plaintiff if the Defendants are
allowed to eliminate Plaintiff's rights via this Unlawful foreclosure:

a. Plaintiff will be left with little course of action but to move out of
state and thereby be unable to properly prosecute this lawsuit.

b. Plaintiff will lose all rights and interests in the real property in
question.

c. Plaintiff has over the course of the last 48 months since its
acquisition of the property incurred considerable additional
expense, which is not recoverable as it is the Plaintiff's time and
efforts into updating, repairing and maintaining the residence.

**f. Apparent Damages to Defendants upon Granting of Temporary Restraining Order
and Preliminary Injunction:**

i. Defendant Northwest Trustee Services- According to the evidence relied upon
by Defendants, Northwest Trustee Services is not a real party of interest nor an

It also wastes the potential buyers time, energy and effort and could cause emotional harm which Plaintiff would regret extremely.

ii.  In addition to the statements from the US Congressional Oversight Panel, more fully described above in the legislature has created a the Deed of Trust statute where the creditor was given an expedited remedy in exchange for *strict procedural safeguards*. The Defendants must be held to these procedures. The very least of these procedures is to properly authorize a party to conduct the process, put true and correct documents into the record, and ensure beyond the shadow of a doubt that the proper party, as defined in the statute, is authorizing and instructing the Trustee to begin the Trustee Sale process. According to the documents relied upon by the Defendants the strict procedures have not been complied with. Property rights are crucial to our social system. A full exploration of possible infringements should be conducted before property owners, such as the Plaintiff is stripped of their property rights and equity.

Public Policy also favors equitable behavior. In the instant case, ALL of the Defendants; OneWest, MERS and Northwest Trustee Services have acted in a highly inequitable manner. They have omitted true facts and true parties, misrepresented the true nature of their roles in the transaction, and completely disregarded the procedures defined by the legislature. The authenticity of ALL the documents presented or recorded by any of the Defendant(s) is highly questionable and the Plaintiff is aggressively researching and disputing any inaccuracies.

The Washington State Deed of Trust Act must be construed in favor of the borrower:

"The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower' interests and the lack of judicial oversight in conducting non-judicial foreclosure sales."

Udall, ___ Wn.2d at ___, 154 P.3d at 890. See also Amresco Independence Funding, Inc. v. SPS Properties, LLC, 129 Wn. App. 532, 536-37, 119 P.3d 884, 886 (2005)

The Defendants have engaged in unlawful and deceptive business practices and inequitable conduct. A Temporary Restraining Order is critical in maintaining the status quo and preventing an unlawful non-judicial trustee's sale that will irreparably damage the Plaintiff.

Further, a Preliminary Injunction is appropriate as described through Section II of this Response until discovery and an evidentiary hearing can take place to determine who is the true owner and holder in due course of the Note and whether or not the Deed of Trust has become nullified all pursuant to Plaintiff's request in II.O.

These actions by the Court will provide relief to the Plaintiff from the unlawful, unfair and deceptive actions committed separately and jointly by the Defendants in attempting to complete an unlawful foreclosure sale that violates Washington State law.

Plaintiff hereby moves the Court to the following:

1. Grant Plaintiff's Motion for Temporary Restraining Order until such a time as a Preliminary Injunction Hearing may take place.

2. Rule that the Defendant's Notice of Default as described above is invalid and void due to the application and execution by unauthorized parties.

Dated: January 17, 2011

_____

James McDonald
Pro Se

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  JAMES MCDONALD
2  14840 119th PL NE
   Kirkland, WA 98034
3  Phone (425) 210-0614
   In Pro Per
4
5           UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
6                    AT SEATTLE
7
8  In Re:                        )  NO.: C10-1952RSL
                                 )
9                                )
   JAMES MCDONALD                )
10                               )  Plaintiff            Declaration of Service
                                 )
11                               )  v
   ONEWEST BANK, FSB, et al.,    )
12                               )  Defendants.
                                 )
13  _____
14                    CERTIFICATE OF MAILING
15     I hereby certify under penalty of perjury of the laws of the State of Washington that I
16  electronically sent a true and correct copy of the Response of Defendants Opposition for
17  Restraining Order and Preliminary Injunction, by James McDonald, on the 17 day of January, 2011
18  to the parties listed below.
19              DATED this 17 day of January, 2011.
20
21  By:
22                                    James McDonald
                                      Pro Se
23
24
25                                    Routh Crabtree Olsen, P.S.
26                                    13555 SE 36th St, Suite 300
27                                    Bellevue, WA 98006
28  Certificate of Mailing              -1-              James McDonald
                                                        14840 119th PL NE, Kirkland, WA 98034
                                                        Phone: (425) 210-0614

```
1    JAMES MCDONALD
2    14840 119th PL NE
     Kirkland, WA 98034
3    Phone (425) 210-0614
     In Pro Per
4
5              UNITED STATES DISTRICT COURT
6      FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE
7
8    In Re:                    )  NO.: C10-1952RSL
                               )
9    JAMES MCDONALD            )
                               )
10            Plaintiff        )
                               )
11                  v          )  ORDER GRANTING PLAINTIFF'S MOTION
     ONEWEST BANK, FSB, et al.,)  FOR TEMPORARY RESTRAINING ORDER
                               )  AND PRELIMINARY INJUNCTION
12            Defendants.      )
                               )
13   _____
14         This matter came before the Court upon James McDonald's (PLAINTIFF's) motion for
15   temporary restraining order and preliminary injunction. The Court considered the motion and any
16   opposition thereto and the matters on record. It appears for the reasons stated in the motion that
17   the temporary restraining order and preliminary injunction should be granted until such a time that
18   the Court renders a final judgment.
19         IT IS THEREFORE ORDERED that Defendants Northwest Trustee Services, MERS and
20   OneWest Bank, FSB cease and desist any and all actions leading towards the non-judicial
21   foreclosure sale of the Plaintiff's residence located at 14840 119th PL NE, Kirkland, WA 98034. It is
22   further ordered that the order shall be effective immediately and the order shall be effective as to
23   any chapter under which the present case may be converted absent further order of this Court.
24
25   Dated this _____ day of _____ 20____.
26
27                                                    Robert S. Lasnik, United States District Judge
28
```

Proposed Order for Removal Of Opposing Attorney  -1-              James McDonald

14840 119th PL NE, Kirkland WA 98034

Phone: 425-210-0614

Presented by:



James McDonald
Pro Se

Proposed Order for Removal Of Opposing Attorney  -2-

James McDonald
14840 119th Pl NE, Kirkland WA 98034
Phone: 425-216-0614

List of Exhibits

Exhibit A – Appointment of Successor Trustee
Exhibit B – Assignment of Deed of Trust
Exhibit C – Notice of Default
Exhibit D – Printoff of Freddie website
Exhibit E – Freddie Mac Owns Mortgage
Exhibit F – QWR
Exhibit G – OneWest Response to QWR
Exhibit H/ROC-A – RCO WA State of Licenses
Exhibit I/ROC-B – RCO Sec of State
Exhibit J/ROC-C - NWT WA State of Licenses
Exhibit K/ROC-D – NWT Sec of State
Exhibit L/ROC-E – RCO Letter 1/12

# EXHIBIT A
# Appointment of Successor Trustee

After Recording Return to:
OneWest Bank FSB
888 East Walnut Street
Pasadena, CA 91101

20100204000502

TITLE COURT SE ADT      14.00
PAGE-001 OF 001
02/04/2010 12:13
KING COUNTY, WA

7523.21352/McDONALD, JAMES B.

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to OneWest Bank, FSB, whose address is 888 East Walnut Street, Pasadena, CA 91101, all beneficial interest under that certain deed of trust, dated 01/08/07, executed by James B. McDonald, a single man, Grantors, to Pacific Northwest Title Insurance Co., Inc., Trustee, and recorded on 01/10/07, under Auditor's File No. 2007011002077, records of King County, Washington.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: January 27, 2010

Mortgage Electronic Registration Systems, Inc. "MERS"

By: [signature]
Title: Brian Burnett   Assistant Vice President

STATE OF Texas
COUNTY OF Travis ) ss.

I certify that I know or have satisfactory evidence that      Brian Burnett      is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the   Assistant Vice President   of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS", to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: Jan 27, 2010

ALEX MCBRIDE
Notary Public, State of Texas
My Commission Expires
November 10, 2010

NOTARY PUBLIC in and for the State of: [signature]
Residing at: Travis
My commission expires: 11/10/10

# EXHIBIT B
# Assignment of
# Deed of Trust

After Recording Return to:
OneWest Bank FSB
888 East Walnut Street
Pasadena, CA 91101

```
20100202400000502
```

TITLE COURT SE AGT
PAGE-001 OF 001
02/04/2010 12:13
KING COUNTY, WA
14.00

7523.21352/McDONALD, JAMES B.

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to **OneWest Bank, FSB**, whose address is 888 East Walnut Street, Pasadena, CA 91101, all beneficial interest under that certain deed of trust, dated 01/08/07, executed by James B. McDonald, a single man, Grantor, to Pacific Northwest Title Insurance Co., Inc., Trustee, and recorded on 01/10/07, under Auditor's File No. 2007011000207, records of King County, Washington.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: January 27, 2010

**Mortgage Electronic Registration Systems, Inc. "MERS"**



By: _____
Title: Brian Burnett    Assistant Vice President

STATE OF Texas
) ss.
COUNTY OF Travis

I certify that I know or have satisfactory evidence that **Brian Burnett** is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the **Assistant Vice President** of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS" to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: Jan. 27, 2010

_____
NOTARY PUBLIC in and for the State of Texas
Residing at Travis Texas
My commission expires 11-10-10

ALEX MCBRIDE
Notary Public, State of Texas
My Commission Expires
November 10, 2010

Ex. 6:4 ID

# EXHIBIT C
# Notice of Default

# Notice of Default

**To:**

| | |
|---|---|
| James B. McDonald | Unknown Spouse and/or Domestic Partner |
| 14840 119th Place Northeast | of James B. McDonald |
| Kirkland, WA 98034 | 14840 119th Place Northeast |
| | Kirkland, WA 98034 |

Regarding the real property "Property" located at:

**Property Address:**
14840 119th Place Northeast
Kirkland, WA 98034

**If you are the owner of this property and you occupy it as your residence, you should take care to protect your interest in your home. This notice of default (your failure to pay or otherwise perform) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:**

**Can you pay and stop the foreclosure process?**
**Do you dispute the failure to pay?**
**Can you sell your property to preserve your equity?**
**Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?**
**Do you qualify for any government or private homeowner assistance programs?**
**Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?**

**Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrowers' distress.**

**You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower-cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower-cost or free legal services for those who qualify. You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.**

A) **Property description:**

> Lot 18, The High Woodlands Addition Div. No. 3, according to the Plat thereof recorded in Volume 85 of Plats, Pages 30 through 32, inclusive, in King County, Washington.

B) **Deed of Trust information:** King County Auditor's File No.: 20070110002077; Recording Date: 01/10/07

C) **Declaration of payment default:** The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

**D) Itemized account of the arrears:**

| | |
|---|---|
| Delinquent monthly payments beginning with the 10/01/09 installment. | $9,575.44 |
| Late charges: | $286.02 |
| Lender's Fees and Costs | $22.00 |
| Trustee's fees | $508.00 |
| Costs | |
|     Title report (estimate) | $951.00 |
|     Recording | $30.00 |
|     Certified mail | $14.00 |
|     Posting | $70.00 |
|     Sale Costs | $0.00 |
| **Total arrears and costs due today** | **$11,426.46** |

**E) Itemized account of all other specific charges, costs or fees that grantor or borrower is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale.**

| | |
|---|---|
| Additional monthly payment | $2,393.86 |
| Additional late charge | $95.34 |

**F)  Amount required to cure payment defaults before notice of sale recorded: $13,915.66**
**In addition, grantor or borrower must timely cure all other defaults before the note and deed of trust are deemed reinstated.**

*Payments and late charges continue to accrue and additional advances may be made. **The sums stated above are estimates only.** Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults.*

**G)  Effect of failure to cure:**  Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice.

**H)  Effect of recording, transmitting and publication of the notice of sale:**  The effect of the recordation, transmittal and publication of the notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property for sale.

**I)  Effect of sale of the Property:**  The Trustee's sale of the Property will deprive the borrower, grantor and any successor in interest of all their interest in the Property.

**J)  Recourse to courts:**  The borrower, grantor, any guarantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the default(s) on any proper ground.

## K) Contact Information for Beneficiary (Note Owner) and Loan Servicer.

The beneficiary of the deed of trust is **OneWest Bank, FSB**, whose address and telephone number are:

888 East Walnut Street
Pasadena, CA 91101
800-669-2300

The loan servicer for this loan is OneWest Bank FSB, whose address and telephone number are:

888 East Walnut Street

Pasadena, CA  91101
800-669-2300

**L)  Notice pursuant to the Federal Fair Debt Collection Practices Act:**  If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:

1.  As of the date of this notice you owe $398,736.08.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check.  For further information, write to the address provided in Section 5 below or call us at 425-586-1900.
2.  The creditor to whom the debt is owed OneWest Bank, FSB/OneWest Bank FSB.
3.  Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.
4.  If you notify us in writing within 30 days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you.
5.  If you request in writing within 30 days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor.
6.  Written requests should be addressed to Northwest Trustee Services, Inc., Post Office Box 997, Bellevue, WA 98009-0997.

**Dated:  January 12, 2010**                    OneWest Bank, FSB
                                                By Northwest Trustee Services, Inc., its duly authorized agent

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

**NORTHWEST TRUSTEE SERVICES, INC.**
**P.O. BOX 997**
**BELLEVUE, WA 98009-0997**

**File No:** 7523.21352
**Borrower:** McDonald, James B.
**Client:** OneWest Bank, FSB

**VONNIE MCELLIGOTT**
**425-586-1900**
**FAX 425-586-1997**

## BENEFICIARY DECLARATION PURSUANT TO CHAPTER 61.24 RCW (SB 5810) AND "FORECLOSURE LOSS" MITIGATION FORM

Borrower(s):       McDONALD, JAMES
Beneficiary:       OneWest Bank, FSB
Loan Servicer:     OneWest Bank FSB
Property:          14840 119th Place Northeast, Kirkland,WA 98034
Loan No.:          1009111244

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that [check the applicable box and fill in any blanks so that the trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under chapter 61.24 RCW as specified in SB 5810/Chapter 292, 2009 Laws ("the act")]:  Regarding the above-referenced loan (check applicable box – only ONE choice should apply):

[✓] (1) The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, section 2 of the act (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure").

[ ] (2) The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in section 2(5) of the act and, after waiting fourteen days after the requirements in section 2 of this act were satisfied, the beneficiary or the beneficiary's authorized agent sent to the borrower(s), by certified mail, return receipt requested, the letter required under section 2 of the act.

[ ] (3) The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee.

[ ] (4) Under section 2 of the act, the beneficiary or the beneficiary's authorized agent has verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the bankruptcy stay remains in place, or the borrower has filed for bankruptcy and the bankruptcy court has granted relief from the bankruptcy stay allowing the enforcement of the deed of trust."

**SB 5810 Does NOT apply because, regarding the above-referenced loan:**

[  ]  The deed of trust was made before January 1, 2003 or after December 31, 2007, inclusive; or

[  ]  The property is not owner occupied as the principal residence of the borrower(s); or

[  ]  The deed of trust secures a commercial loan; or

[  ]  The deed of trust secures obligations of a grantor who is not the borrower or a guarantor; or

[  ]  The deed of trust secures a purchaser's obligations under a seller-financed sale.

Dated _January 7, 2010_                    _____
                                            (Beneficiary's Authorized Agent's signature)

                                            Erica A. Johnson-Seck   **Vice President**
                                            _____
                                            Print Name

# EXHIBIT D
# Freddie Mac
# Website

 

# Our Business

In 1970, Congress created Freddie Mac with a few important goals in mind:

- Make sure that financial institutions have mortgage money to lend
- Make it easier for consumers to afford a decent house or apartment
- Stabilize residential mortgage markets in times of financial crisis

To fulfill this mission, Freddie Mac conducts business in the U.S. secondary mortgage market – meaning we do not originate loans – and works with a national network of mortgage lending customers. We have three business lines: a Single Family Credit Guarantee business for home loans; a Multifamily business for apartment financing; and an investment portfolio.

Single-Family Credit Guarantee Business
Multifamily Business
Investment Business
Benefits
Conservatorship
Foreclosure Prevention

## Single-Family Credit Guarantee Business



In our Single-Family business, we use mortgage securitization to fund millions of home loans every year. Securitization is a process by which we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in global capital markets, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend. During 2009, Freddie Mac guaranteed $475 billion in home loans, representing 2.2 million families who purchased or refinanced their homes. And at year-end 2009, our total outstanding obligations of mortgage-backed securities stood at $1.9 trillion.

What makes the securitization process work? Families paying their mortgages every month. Because once a family moves into their home, their monthly payments of mortgage principal and interest are transferred ultimately to securities investors. When a family stops making payments – often due to loss of income – Freddie Mac steps in and makes those payments to securities investors. Managing this risk, known as credit risk, is how we generate revenue. Each time we fund a loan, we collect a credit guarantee fee from the lender selling us the loan. This fee is intended to protect us in case of loan default.

Other features of this business line:

- We guarantee mortgages exclusively in the conventional conforming market, where we purchase loans only up to a certain dollar amount [PDF] (for 2010, $417,000 for most of the nation and $729,750 in high-cost areas)
- The vast majority of the loans we fund are long term, fixed rate mortgages
- We generally require third-party mortgage insurance on loans with low downpayments
- We have loan servicing operations that work with lenders to avoid foreclosure, where possible, for families in financial difficulty

## Multifamily Business

Since not everyone owns their own home, Freddie Mac supports renters, too. Through our Multifamily business, we work with a network of lenders to finance apartment buildings around the country. Like single-family loans, these lenders originate and close loans that Freddie Mac later purchases; lenders then use the proceeds to originate additional loans.

Unlike single-family loans, which are relatively small in dollar amount and standardized in their composition and underwriting, multifamily loans typically are several million dollars in size, have underwriting characteristics that vary from property to property, and require custom examination such as on-site property inspections and verification of income cash flows (i.e., rents). One other difference: while single-family borrowers are individual consumers, multifamily borrowers are property developers and/or managers.

In this business line, Freddie Mac finances most of its loan acquisitions by issuing corporate debt securities. We generate revenue by producing what is known as net interest income; that is, the difference between the interest payments we collect on the multifamily loans we own and the yields we pay securities investors for investing in our debt. Freddie Mac also funds

# EXHIBIT E
# Does Freddie Mac
# Own Your Mortgage

Case 2:10-cv-01952-RSL  Document 17  Filed 01/17/11  Page 47 of 81

Avoiding Foreclosure - Does Freddie Mac Own Your Mortgage?                                      Page 1 of 2

Go straight to content.

**Exhibit H**

- Home |
- Terms and Conditions |
- Privacy Policy



Freddie Mac: Avoiding Foreclosure
Steps You Can Take Today to Protect Your Home

# Does Freddie Mac Own Your Mortgage?

Call your servicer -- the organization to which you make your mortgage payments -- immediately if you are having difficulty paying your mortgage on time. The telephone number and mailing address of your mortgage servicer should be listed on your monthly statement. There are also a number of organizations that may be able to help you.

Your servicer should be able to tell you if your mortgage is owned by Freddie Mac. If you wish, you may conduct a search using the secured look-up tool below. **Please enter your information carefully** -- a spelling error or other small mistake could cause an uncertain result. Abbreviations, typos, or including the "Street Type" in the "Street Name" field can lead to incorrect results.

## Self-Service Lookup

\* Indicates required fields

| | |
|---|---|
| First Name * | James |
| Last Name * | McDonald |
| House Number * | 14840 |
| Street Name * | 119th     Do not include "Street", "Avenue", "Drive", etc. in this form field. |
| Street Suffix | Other |
| Unit Number | |
| City * | kirkland |
| State * | WA |
| Zip Code * | Format: ##### |
| | 98034 |
| Last 4 Digits of Social Security Number * | Enter last 4 digits only. Format: #### |
| | Why do we ask for Social Security? |
| Verification * | ☑ By checking this box and clicking on the button below to submit this information, I confirm I am the owner of this property or have the consent of the owner to lookup this information. |

Avoiding Foreclosure - Does Freddie Mac Own Your Mortgage?                                    Page 2 of 2

Submit        Clear

Do you know what information you should have in front of you when you call your servicer?
Freddie Mac offers a variety of tips, information and resources for homeowners at
http://www.freddiemac.com/avoidforeclosure/stop_foreclosure.html.

© Freddie Mac

Go straight to content.

- Home |
- Terms and Conditions |
- Privacy Policy



Freddie Mac
How to Get Help with Your Mortgage

# Yes. Our records show that Freddie Mac is the owner of your mortgage.

En Español

## What to Do Next

1. **For help with your mortgage, contact your lender and let them know you would like to pursue assistance through the federal Making Home Affordable program.**

   (Your lender is the company to which you make your mortgage payments, and may also be referred to as a mortgage servicer.)  Your lender can help you determine if you are eligible for the Making Home Affordable Program.

   a. **Through the Making Home Affordable program**, there are several options available to you:

      - A **Home Affordable Modification** to help you obtain more affordable mortage payments if you're behind in making your mortgage payments or believe you may be soon.

      - A **Home Affordable Refinance** to better position you for long-term homeownership success if you have been making timely mortgage payments but have been unable to refinance due to declining property values.

      - A **short sale** or **"deed-in-lieu of foreclosure"** to transition to more affordable housing if it is not realistic for you to keep your home.

      Freddie Mac is working with our mortgage servicers (your lenders) to offer these solutions to eligible borrowers with Freddie Mac-owned mortgages. *Because Freddie Mac does not work directly with consumers, you will need to work with your lender to determine your best foreclosure prevention option.*

   b. **If you are not eligible for the Making Home Affordable program**, don't give up!  Ask your lender about other options to make your payments more affordable

# EXHIBIT F
# Qualified Written Request and
# Debt Validation Demand

After recording, return to:

JAMES BRADLEY MCDONALD
14840 119th Pl NE
Kirkland, WA 98034
TEL: (425) 210-0614

DATE: _____, 2010

Loan #125049243/1009111244
APN #328830-0180-03
Legal Description: See Attached Exhibit A

CONFORMED COPY

**20100428000527**
MCDONALD       MISC       76.00
PAGE-001 OF 015
04/28/2010 12:46

---

## CONSTRUCTIVE LEGAL NOTICE OF LAWFUL DEBT VALIDATION DEMAND

Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605(e);
Regulation X at 24 C.F.R. § 3500 et seq.
**Truth-In-Lending-Act (TILA)** § 1604(e), 15 U.S.C. §§ 1601 et seq. (1968) and 1692 et seq.
**Fair Debt Collection Practices Act (FDCPA)** 15 U.S.C. §1692c

---

**GRANTOR(S):**  **JAMES BRADLEY MCDONALD**
14840 119th Pl NE
Kirkland, WA 98034

**GRANTEE(S):**  **INDYMAC BANK, F.S.B**
901 E. 104TH ST., BLDG B, STE 400/500
KANSAS CITY, MO 64131
USPS Certified Mail # ____  7009 2250 0000 1615 2189

INDYMAC MORTGAGE SERVICES / Servicer
6900 BEATRICE DRIVE
KALAMAZOO, MI 49003-4045
USPS Certified Mail # ___  7009 2250 0000 1615 2196

NORTHWEST TRUSTEE SERVICES, INC
P.O. BOX 997
BELLEVUE, WA 98009-0997
USPS Certified Mail # ___  7009 2250 0000 1615 2226

You are now in receipt of this NOTICE under the authority of the Truth-In-Lending-Act (TILA) § 1604(e), 15 U.S.C. §§ 1601 et seq. (1968) and 1692 et seq., and the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692c, and the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500 regarding loan number 125049243 / 1009111244. I dispute the alleged mortgage debt in its entirety for being inaccurate and firmly believe that I have had fraud in the factum committed against me for lack of full disclosure by the alleged Lender.

**NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT,
NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL.**

**THIS IS MY "QUALIFIED WRITTEN REQUEST": TILA REQUEST, RESPA REQUEST,
COMPLAINT OF PROBABLE FRAUD IN THE FACTUM, DISPUTE OF DEBT &
VALIDATION OF DEBT**

Reference:        Alleged Mortgage Loan # 125049243 / 1009111244
                  Private Land & Chattel Property located at
                  14840 119TH PL NE
                  KIRKLAND, WASHINGTON

Attention Authorized Representative for the Above Referenced Companies / Corporations:

After several consultation meetings with Legal Counsel and knowledgeable accountants regarding this
matter, I am writing to formally complain about intentional accounting omissions and probable fraud in
the factum that took place at the closing in the purchase of my home. I need a clear understanding and
clarification (**FULL DISCLOSURE**) of the transactions that occurred at my signing of the initial
documents, the funding source, legal and beneficial ownership, charges, credits, debits, transactions,
reversals, actions, payments, analyses and records related to the servicing of this account from its
origination to the present date.

With our nation's mortgage default crisis and the mortgage scams that have occurred against millions of
American families, I am most concerned that potential fraudulent and deceptive practices have been
committed against me in the intentional omission of due consideration in the exchange of my promissory
note, my signing of the mortgage note and security agreement; including deceptive and fraudulent
servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks.

I hereby **DEMAND** absolute first-hand evidence from you and/or your legal department with regard to
the original signed promissory note and an uncertificated or certificated security concerning account
numbers 125049243 / 1009111244. In the event you refuse or fail to supply me with these documents it
will be positive confirmation on your part that INDYMAC BANK, F.S.B never really created and owned
a security. I also hereby **DEMAND** that a chain of transfer from you to wherever the security is now be
promptly sent to me as well. Absent the actual evidence of the security, I have no choice but to dispute the
validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By
debt, I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated
escrow payment and any fees claimed to be owed by you or any trust or entity you may service or
subservice for.

**To independently validate this debt, I need to conduct a complete exam, audit, review and
accounting of this mortgage account from its inception through the present date. Upon receipt of
this QUALIFIED WRITTEN REQUEST, please refrain from reporting any negative credit
information [if any] to any credit reporting agency until you respond to each of the requests.**

I also request that you conduct your own investigation and audit of this account since its inception to
validate the debt you currently claim I owe. Upon receipt of your answers and production of documents, I
will contract with my CPA to do another audit for a secondary validation. I **DEMAND** that you validate
this debt so that it is accurate to the penny!

I firmly request that you do not rely on previous servicers or originators records, assurances or indemnity
agreements and refuse to conduct a full audit and investigation of this account. I understand that potential
abuses by you or previous servicers could have deceptively, wrongfully, unlawfully, and/or illegally:

◊        Increased the amounts of monthly payments,
◊        Increased the principal balance I owe;
◊        Increased escrow payments;

◊     Increased the amounts applied and attributed toward interest on this account;

◊     Decreased the proper amounts applied and attributed toward principal on this account;

◊     Assessed, charged and/or collected fees, expenses and misc. charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I **DEMAND** that you demonstrate that I have not been the victim of such predatory, fraudulent servicing or lending practices that have occurred throughout the nation.

To ensure this, I have authorized a thorough review, examination, accounting and audit of mortgage account # 125049243 / 1009111244 by mortgage auditing and predatory servicing or lending experts. These exam and audit experts will review this mortgage account file from the date of initial contact with the mortgage provider, INDYMAC BANK, F.S.B. their applications and the origination of this account to the present date.

Again this is a **Qualified Written Request** under the Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code. TAKE NOTICE that RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions & production of documents as requested in this letter within twenty [20] business days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed for me and my audit experts to insure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to TILA, FDCPA, RESPA, HOEPA and other laws;

2. That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3. That the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc., were and still are properly disclosed to me;

5. That each servicer and/or sub-servicers of this mortgage have serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust;

6. That each servicer and sub-servicers of this mortgage have serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

7. That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

8. That interest and principal have been properly calculated and applied to this loan;

9. That any principal balance has been properly calculated, amortized and accounted for; that no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account;

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account number or my name.

As such, please mail to me, at the address above, copies of the documents requested below as soon as possible. Please provide copies of:

10. Any certificated or uncertificated security, front and back, used for the funding of account # 125049243.

11. Any and all "Pool Agreement(s)" including account # 125049243 between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES account # 1009111244 and any government sponsored entity, hereinafter (GSE).

12. Any and all "Deposit Agreement(s)" regarding account # 125049243 or the "Pool Agreement" including account # 125049243 between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES account # 1009111244 and any GSE.

13. Any and all "Servicing Agreement(s)" between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

14. Any and all "Custodial Agreement(s)" between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

15. Any and all "Master Purchasing Agreement(s)" between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

16. Any and all "Issuer Agreement(s)" between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

17. Any and all "Commitment to Guarantee" agreement(s) between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

18. Any and all "Release of Document agreements" between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

19. Any and all "Master Agreement(s) for servicer's Principle and Interest Custodial Account(s)" between INDYMAC BANK, F.S.B and any GSE.

20. Any and all "Servicers Escrow Custodial Account" between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

21. Any and all "Release of Interest" agreements between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES and any GSE.

22. Any Trustee agreement(s) between INDYMAC BANK, F.S.B and INDYMAC MORTGAGE SERVICES trustee regarding account # 125049243 and or # 1009111244 or pool accounts with any GSE.

23. Please send to the requester a copy of any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter.

24. Please send to the requester a copy of any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note.

25. Please send to the requester a copy of any and all document(s) establishing the date of any appointment of Trustee for this Mortgage/Deed of Trust **and** any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s).

26. Please send to the requester a copy of any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note.

27. Please send to the requester a copy of any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note.

28. Please send to the requester a copy of any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note.

29. Please send to the requester any documentation evidencing the Mortgage or Deed of trust is **not** a constructive trust or any other form of trust.

30. Please send to the requester a certified copy of the signed promissory note showing the front and back of the document.

31. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

32. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review this mortgage account may properly conduct their work.

33. All assignments, transfers, allonges, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.

34. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

35. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

36. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

37. All escrow analyses conducted on this account from the inception of this account until the date of this letter;

38. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statement(s) including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

39. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

40. All letters, statements and documents sent to me by your company;

41. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

42. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

43. All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to present date.

44. All electronic transfers, assignments, sales of the note/asset, mortgage, deed of trust or other security instrument.

45. All copies of my property inspection reports, appraisals, BPOs and reports done on the property.

46. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.

47. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

48. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

49. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account until the date of this RESPA request.

50. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the from the inception of this account until the date of this RESPA request.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions listed below.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

51. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that the experts can decipher the data provided. I demand a certified Transaction Chart (T Chart) showing the GAAP journal entries made at the inception.

52. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company or party that designed and sold the system.

53. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS & CREDITS

54. Pursuant to banking law 12 USCA § 1813, please provide me the deposit slip for the alleged borrower's promissory note(s) that were issued to INDYMAC BANK, F.S.B for processing through the Federal Reserve Bank in exchange for borrower's credit on January 8, 2007 and deposited on or around February 8, 2007.

55. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to this account as well as the date any credit was received.

56. Please provide the order authorizing the withdrawal of funds from the borrower's promissory note deposit account.

57. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.

58. For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

59. For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

60. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the parish/county property records in the parish/county and state in which my land and chattel property is located from the inception of this account to the present date? Yes or No?

61. If not, why?

62. Is your company the servicers of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

63. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

64. If yes, please detail for me the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

65. For purposes of my questions below dealing with attorney fees, please consider the terms attorney fees and legal fees to be one in the same.

66. Have attorney fees ever been assessed to this account from the inception of this account to the present date?

67. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessment to this account?

68. Have attorney fees ever been charged to this account from the inception of this account to the present date?

69. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account?

70. Have attorney fees ever been collected from this account from the inception of this account to the present date?

71. If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account?

72. Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date?

73. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment, charge or collection of attorney fees.

74. Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

75. Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

76. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

77. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment(s) were made and the reasons for such adjustment(s).

78. Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

79. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

80. How much in total attorney fees have been assessed to this account from the inception of this account until present date? $_____

81. How much in total attorney fees have been collected on this account from the inception of this account until present date? $_____

82. How much in total attorney fees have been charged to this account from the inception of this account until present date? $_____

83. Please send to me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one and the same.

84. Have there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

85. If yes, please explain the reason for each and every suspense transaction that occurred on this account? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

86. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that have occurred on this account from the inception of this account until present date.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

87. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

88. Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

89. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

90. Are late fees considered interest? Yes or No?

91. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

92. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

93. If yes, please describe what expenses or charges were charged or assessed to this account.

94. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

95. Please describe for me in writing what damages you or others undertook due to any payment I made which was late.

96. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment or collection of late fees.

97. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to present date.

98. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to present date.

99. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

100. Has interest been charged on any late fee assessed or charged to this account? Yes or No?

101. Is interest allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

102. Have any late charges been assessed to this account? Yes or No?

103. If yes, how much in total late charges have been assessed to this account from the inception of this account until present date? $_____

104. Please provide me with the exact months or payment dates you or other previous servicers of this account claim I have been late with a payment from the inception of this account to the present date.

105. Have late charges been collected on this account from the inception of this account until present date? Yes or No?

106. If yes, how much in total late charges have been collected on this account from the inception of this account until present date? $_____

**LAND & CHATTEL PROPERTY INSPECTIONS**

107. For purposes of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

108. Have any property inspections been conducted on my land and chattel property from the inception of this account until the present date?

109. If your answer is no, you can skip the rest of these questions in this section concerning property inspections.

110. If yes, please tell me the date of each property inspection conducted on my land & chattel property that is the secured interest for this mortgage, deed or note?

111. Please tell me the price charged for each property inspection.

112. Please tell me the date of each property inspection.

113. Please tell me the name and address of each company and person who conducted each property inspection on my land & chattel property.

114. Please tell me why property inspections were conducted on my property.

115. Please tell me how property inspections are beneficial to me.

116. Please tell me how property inspections are protective of my land & chattel property.

117. Please explain to me your policy on property inspections.

118. Do you consider the payment of inspection fees as a cost of collection? Yes or No?

119. If yes, why?

120. Do you use property inspections to collect debts? Yes or No?

121. Have you used any portion of the property inspection process on my land & chattel property to collect a debt or inform me of a debt, payment or obligation I owe?

122. If yes, please answer when and why?

123. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees?

124. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

125. If yes, why?

126. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

127. If yes, why?

128. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

129. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

130. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

131. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

132. Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

133. If yes, when and how much was charged?

134. Is interest allowed to be assessed or charged on inspection fees or assessed to this account? Yes or No?

135. How much in total inspection fees have been assessed to this account from the inception of this account until present date? $_____

136. How much in total inspection fees have been collected on this account from the inception of this account until present date? $_____

137. Please forward to me copies of all property inspections made on my property in this mortgage account file.

138. Has any fee charged or assessed for property inspections been placed into escrow account? Yes or no?

**BPO FEES**

139. Have any BPOs [Broker Price Opinions] been conducted on my land & chattel property?

140. If yes, please tell me the date of each BPO conducted on my land & chattel property that is the secured interest for this mortgage, deed or note?

141. Please tell me the price of each BPO.

142. Please tell me who conducted each BPO.

143. Please tell me why BPOs were conducted on my land & chattel property.

144. Please tell me how BPOs are beneficial to me.

145. Please tell me how BPOs are protective of my land & chattel property.

146. Please explain to me your policy on BPOs.

147. Have any BPO fees been assessed to this account? Yes or No?

148. If yes, how much in total BPO fees have been assessed to this account? $_____

149. Have any BPO fees been charged to this account? Yes or No?

150. If yes, how much in total BPO fees have been charged to this account? $_____

151. Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from me.

152. Please send to me copies of all BPO reports that have been done on my land & chattel property.

153. Has any fee charged or assessed for a BPO been placed into escrow? Yes or no?

**FORCED-PLACED INSURANCE**

154. Have you placed or ordered any forced-placed insurance polices on my land & chattel property?

155. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed or note.

156. Please tell me the price of each policy.

157. Please tell me the agent for each policy.

158. Please tell me why each policy was placed on my land & chattel property.

159. Please tell me how the policies are beneficial to me.

160. Please tell me how policies are protective of my land & chattel property.

161. Please explain to me your policy on forced-placed insurance.

162. Have any forced-placed insurance fees been assessed to this mortgage or escrow account? Yes or No?

163. If yes, how much in total forced-placed policy fees have been assessed to this account? $_____

164. Have any forced-placed insurance fees been charged to this mortgage or escrow account? Yes or No?

165. If yes, how much in total forced-placed insurance fees have been charged to this mortgage or escrow account? $_____

166. Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect forced-placed insurance fees from me.

167. Do you have any relationship with the agent or agency that placed any policies on my land and chattel property? If yes, please describe.

168. Do you have any relationship with the carrier that issued any policies on my land & chattel property? If yes, please describe.

169. Has the agency or carrier you used to place a forced-placed insurance policy on my land & chattel property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

170. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? If yes, please send me a copy of each such policy.

171. Please send to me copies of all forced-placed insurance policies that have been ordered on my land & chattel property.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below:

172. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

173. Did the originator of this account or previous servicers of this account have a warehouse account agreement or contract with your company?

174. Did the originator of this account or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

175. Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected?

176. Where is the original monetary instrument (*promissory note*) or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

177. Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

178. Since the inception of this loan, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment.

179. Since the inception of this loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment.

180. Since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale.

181. Since the inception of this loan, have any sub-servicers serviced any portion of this mortgage loan? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that have sub-serviced this mortgage loan.

182. Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

183. Has each and every assignment of my asset/monetary instrument been recorded in the parish/county land records where the property associated with this mortgage account is located?

184. Has there been any electronic assignment of this mortgage with MERS [Mortgage Electronic Registration System] or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned the mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

185. Have there been any investors [as defined in your industry] who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this mortgage to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust involved.

186. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

187. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

188. How much was paid for this individual mortgage account by you?

189. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan.

190. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

191. Who did you issue a check or payment to for this mortgage loan?

192. Please provide me copies with the front and back of canceled check.

193. Did any investor approve the foreclosure of my property?

194. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

195. Please identify all persons who approved the foreclosure of my property!

196. Has INDYMAC BANK, F.S.B and/or INDYMAC MORTGAGE SERVICES been paid any insurance claim based on requester's alleged default of mortgage agreement?

197. If so, provide the amount of insurance payment collect by INDYMAC BANK, F.S.B and/or INDYMAC MORTGAGE SERVICES $_____

198. If insurance has been paid, please provide document signed under the penalty of perjury showing where there is still alleged debt owed by James Bradley McDonald.

Under the Truth In Lending Act [TILA] 15 U.S.C. § 1601. et seq., the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code it is mandatory that you provide me full disclosure of the alleged debt that is said to be owed before proceeding any further with your collection action from twenty (20) days of receipt of this QUALIFIED WRITTEN REQUEST. If you do not provide all answers and production of documents requested in this Notice, you will be in fault, admitting no lawful claim and a default will be in order. Your admission of no lawful claim will be the basis for our Right to Cancel. A Notice of Right to Cancel will be issued twenty (20) days from the date of receipt of this CONSTRUCTIVE LEGAL NOTICE.

## AFFIDAVIT OF FACT

14840 119TH PL NE
KIRKLAND, WASHINGTON

STATE OF WASHINGTON          )
COUNTY OF KING     ) *ss.*

I, James Bradley McDonald, hereafter Affiant, being of sound mind, competent and able to testify to the accuracy of this Affidavit, hereby confirms that all the facts stated and affirmed herein are true, correct, complete, and not misleading, admissible as evidence, and if testifying shall so state under the penalty of perjury:

1. That, Affiant makes this Affidavit based on first hand knowledge of all the facts stated herein, including the research of federal and state laws and public policy documents that govern monetary instruments related to banking and financial institutions.

2. That, Affiant did sign alleged loan documents with INDYMAC BANK, F.S.B at INTEGRATED ESCROW office in SEATTLE, WASHINGTON on January 8, 2007 concerning property located at 14840 119TH PL NE, KIRKLAND, WASHINGTON.

3. That, Affiant did sign a promissory note and issued to INDYMAC BANK, F.S.B for processing on January 8, 2007; the promissory note was for the sum of $389,482.

4. That, Affiant was rushed by INDYMAC BANK, F.S.B representatives to sign other alleged closing documents and was not provided time to review or provided a clear understanding of the terms and conditions of these documents that he was requested to sign.

5. That, since the above events and the exposure of this nation's mortgage default crisis, Affiant has recently learned that there has been possible fraud committed against him by INDYMAC BANK, F.S.B representatives in withholding FULL DISCLOSURE at the signing of closing documents and that it appears fraud in the factum has been committed against him regarding his signing the mortgage note and Deed of Trust.

6. That, Affiant confirms that attorney firm NORTHWEST TRUSTEE SERVICES, INC allegedly hired by ONE WEST BANK has issued a Notice of Intent to Foreclose to Affiant dated JANUARY 15, 2010.

7. That, Affiant affirms hereby that NORTHWEST TRUSTEE SERVICES, INC does not have first hand knowledge of the probable fraud in the factum committed by their alleged client, ONE WEST BANK.

8. That, Affiant confirms and re-affirms his lawful and timely dispute and demands full compliance in providing FULL DISCLOSURE to all requested questions and provide all request for documentation per the LAWFUL DEBT VALIDATION DEMAND annexed hereto and made a part hereof.

9. That, INDYMAC BANK, F.S.B registered agent and INDYMAC MORTGAGE SERVICES acting as servicer are being served this Affidavit and LAWFUL DEBT VALIDATION DEMAND.

I hereby state that the above is true to the best of my knowledge and understanding.

Date: 4/27, 2010        BY: _____
                            JAMES BRADLEY MCDONALD
                            14840 119TH PL NE
                            KIRKLAND, WA 98034
                            TEL: (425) 210-0614


## Jurat

State of WASHINGTON

County of _King_

Subscribed and sworn to (or affirmed) before me on this _27th_ day of

_April_, 2010 by _James Bradley McDonald_, proved

to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____                    (Seal)
Signature of Notary Public

# EXHIBIT G
# OneWest Response To QWR

Exhibit G

# OneWest Bank

One West Bank, FSB
6900 Beatrice Drive
Kalamazoo, MI 49009

May 18, 2010

800 781 7399 Tel
269 353 2160 International Callers

James Bradley McDonald
14840 119Th Place NE
Kirkland, WA 98034

www.onewestbank.com

RE: Loan Number 1009111244

Dear Mr. James McDonald:

This letter is in response to your correspondence received May 5, 2010 regarding the above referenced home loan. Although your correspondence is presented as a Qualified Written Request (QWR) the information requested is well beyond the scope of a QWR as defined in the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. 2605(e)(1)(B), and does not constitute a QWR subject to the provisions of that statute. This response is provided solely as a matter of customer service in accordance with IndyMac Mortgage Services, a division of OneWest Bank®, FSBs policy.

A QWR is written correspondence to your loan servicer stating specific reasons why you believe the servicing of your account is in error. It must also include sufficient detail to allow the servicer the opportunity to fully investigate the matter to determine if errors were made in connection with the servicing of the account. Your correspondence fails to state that you believe there are specific errors in the servicing of your account. If you have a specific loan servicing issue, such as a payment application issue or a disbursement issue, please send all inquiries to the address below with a detailed explanation as to why you feel the account is in error. IndyMac Mortgage Services, a division of OneWest Bank®, FSB, 6900 Beatrice Dr, Kalamazoo MI 49009 Attention: Research Department

A QWR is not a vehicle for obtaining information regarding the lender's general business practices, including but not limited to its operations, systems of record, servicing by a prior servicing company or business relationships. With respect to those of your inquiries which go beyond the scope of a legitimate QWR, IndyMac Mortgage Services respectfully declines to provide the information requested.

From your letter I understand you are questioning the validity of the loan referenced above. Enclosed is a copy of the Executed Note that was signed at closing showing you entered into a contractual agreement. As a courtesy a 24 month payment history has also been included to show you have acknowledged the debt, along with the most recent escrow analysis for your review.

You retained Atlas Mortgage, Inc., an independent mortgage broker, to assist you in obtaining the loan. This may have included a discussion of one or more mortgage


Member FDIC

# OneWest Bank

OneWest Bank, FSB
6900 Beatrice Drive
Kalamazoo, MI 49009

800 781 7399 Ta.
269 353 2860 International Callers

www.onewestbank.com

products suited to your objectives, compiling your credit and property information and submitting your loan request to one or more lenders, including IndyMac Mortgage Services. Atlas Mortgage, Inc. represented you in this loan request transaction to IndyMac Mortgage Services.

Atlas Mortgage, Inc. is an independent mortgage broker and was not acting in the capacity of IndyMac Mortgage Services agent and did not represent IndyMac Mortgage Services. The mortgage professional with whom you conducted your discussions regarding the proposed financing was a Atlas Mortgage, Inc. employee. He or she represented you in this transaction, prepared the settlement figures/costs and estimated your monthly escrow deposits. Please contact Atlas Mortgage, Inc. at (425) 771-2311 if you have any questions regarding any representations your loan officer may or may not have made regarding the proposed loan terms. Issues with Atlas Mortgage, Inc. cannot be resolved by IndyMac Mortgage Services.

Original documents – or at least the original promissory note and deed of trust/mortgage – are not available for inspection although if you would like to obtain a certified copy please fill out the order form enclosed.

Your letter included a request for copies of certain documents that pertain to your loan. The copies you requested can be costly, so as a courtesy we are writing you to encourage you to check your records to determine if you have retained the documents provided when your loan closed. Limiting the number of document copies you actually need from IndyMac Mortgage Services will be less expensive to you and may save time.

Please research your records and complete the enclosed order form once you have identified the document copies you still require from Indymac Mortgage Services. An example of how to fill out the order form is presented on the back of the form. Once your form is complete, please submit a check in the total amount due along with the request form to IndyMac Mortgage Services, 6900 Beatrice Drive Kalamazoo, MI 49003, Attn: RESPA Department. Upon receiving your request and payment, we will provide the desired documents to you within 30 business days of our receipt of the order form. If we do not receive the order form and payment within 30 business days, we will close this request.

IndyMac Mortgage Services respectfully declines to put a stop on your credit reporting. As IndyMac Mortgage Services is required to comply with the FCRA (Fair Credit Reporting Act) stops will not be placed on the mortgage. If there is specific payment application issues brought forth stops will be considered.



Member
FDIC
EQUAL HOUSING LENDER

# OneWest Bank

One West Bank  FSB
6900 Beatrice Drive
Kalamazoo, MI 49009

800 781 7399 Tel
269 353 2450 International Callers

www.onewestbank.com

Please accept this letter as confirmation that the investor on your loan is Federal Home Loan Mortgage Company.  Any questions regarding your loan should be addressed directly to IndyMac Mortgage Services, a division of OneWest Bank®, FSB as we are responsible for the servicing of this loan.   The investor should not be contacted directly.

In providing the above response, IndyMac Mortgage Services is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under your loan documents, at law or in equity, all of which rights and remedies are expressly reserved. Further, the subject loan remains in full force and effect and we will continue to service the loan in accordance with the loan documents and applicable law.

Please be assured all options were considered in every effort to assist you with this matter. In the event you require further assistance please call 1-800-781-7399 Monday through Friday, from 8:00 a.m. until 9:00 p.m. EST.

Respectfully,

IndyMac Mortgage Services, a division of OneWest Bank, ® FSB

"This company is a debt collector and any information obtained will be used for that purpose.  However, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or your debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes."



# EXHIBIT H/ROC-A
# RCO – WA State
# Of Licenses

*Exhibit ROC - A*

# Search
## BUSINESS & PROFESSIONAL LICENSES

**License Details**

**License Information:**

| | |
|---|---|
| **Entity Name:** | ROUTH CRABTREE OLSEN, P.S. |
| **Firm Name:** | ROUTH CRABTREE OLSEN, PS |
| **License Type:** | Washington State Business |
| **Entity Type:** | Professional Service Corporation |
| **UBI:** | 601840737    Business ID:001    Location ID:0002 |
| **Status:** | To check the status of this company, go to <u>Secretary of State</u>. |

**Location Address:**
13555 SE 36TH STE #120
BELLEVUE, WA, 98006

**Mailing Address:**
13555 SE 36TH STE #120
BELLEVUE, WA, 98006

**Governing People:**
STEPHEN ROUTH

**Registered Trade Names:**
ROUTH CRABTREE FENNELL, P.S.
ROUTH & FENNELL, P.S.
ROUTH CRABTREE FENNELL
ROUTH CRABTREE & FENNELL

Information Current as of 01/10/2011 4:50AM Pacific Time

[ New Search ]

Use of lists of individuals provided on this site for commercial purposes is prohibited under Chapter 42.56 of the Revised Code of Washington.

*This site is limited to searching for business and professional licenses issued by the Department of Licensing or through the Master License Service. See <u>Other Licenses</u> for information on licenses issued by other agencies.

# EXHIBIT I/ROC-B
# RCO Secretary
# Of State

Exhibit ROC-B

**Division**

Contact Us | Connect:

SEARCH

**Corporations**

| Home | Search | Apostilles | Domestic Partnerships | Awards Program | Public Notices |

## Corporations Division - Registration Data Search

Neither the State of Washington nor any agency, officer, or employee of the State of Washington warrants the accuracy, reliability, or timeliness of any information in the Public Access System and shall not be liable for any losses caused by such reliance on the accuracy, reliability, or timeliness of such information. While every effort is made to ensure the accuracy of this information, portions may be incorrect or not current. Any person or entity who relies on information obtained from the System does so at his or her own risk.

### ROUTH CRABTREE OLSEN, P.S.

| | |
|---|---|
| UBI Number | 601840737 |
| Category | PRO |
| Profit/Nonprofit | Profit |
| Active/Inactive | Active |
| State Of Incorporation | WA |
| WA Filing Date | 12/24/1997 |
| Expiration Date | 12/31/2011 |
| Inactive Date | |
| Registered Agent Information | |
| Agent Name | LANCE E OLSEN |
| Address | 13555 SE 36TH ST STE 300 |
| City | BELLEVUE |
| State | WA |
| ZIP | 98006 |
| Special Address Information | |
| Address | |
| City | |
| State | |
| Zip | |

### Governing Persons

| Title | Name | Address |
|---|---|---|
| Secretary | ROUTH , STEPHEN | 13555 SE 36TH ST STE 300 BELLEVUE , WA |
| Treasurer | ROUTH , STEPHEN | 13555 SE 36TH ST STE 300 BELLEVUE , WA |
| President | ROUTH , STEPHEN | 13555 SE 36TH ST STE 300 BELLEVUE , WA |

Purchase Documents for this Corporation »

« Return to Search List

Translate our site into:

Phone Numbers | Privacy Policy | Accessibility
Washington Secretary of State - Corporations Division
801 Capitol Way South
PO Box 40234, Olympia WA 98504-0234
(360) 725-0377

Select Language    ▾
Powered by Google  Translate

# EXHIBIT J/ROC-C NWT Washington State License



*Exhibit ROC-C*

# Search
BUSINESS & PROFESSIONAL LICENSES

**License Details**

**License Information:**

|  |  |
|---|---|
| **Entity Name:** | NORTHWEST TRUSTEE SERVICES PLLC |
| **Firm Name:** | NORTHWEST TRUSTEE SERVICES PLLC |
| **License Type:** | Washington State Business |
| **Entity Type:** | |
| **UBI:** | 602073255    Business ID:001    Location ID:0002 |
| **Status:** | To check the status of this company, go to <u>Secretary of State</u>. |

**Location Address:**
3535 FACTORIA BLVD SE # 200
BELLEVUE, WA, 98006

**Mailing Address:**
3535 FACTORIA BLVD SE # 200
BELLEVUE, WA, 98006

**Governing People:**
DAVID FENELL
STEPHEN D ROUTH

**Registered Trade Names:**
NORTHWEST TRUSTEE SERVICES PLLC

Information Current as of 01/10/2011 4:50AM Pacific Time

[ New Search ]

Use of lists of individuals provided on this site for commercial purposes is prohibited under Chapter 42.56 of the Revised Code of Washington.

*This site is limited to searching for business and professional licenses issued by the Department of Licensing or through the Master License Service. See <u>Other Licenses</u> for information on licenses issued by other agencies.

# EXHIBIT K/ROC-D
# NWT Secretary
# Of State

*Exhibit RUC-D*

Contact Us | Connect:    **Corporations**

**Division**

## Corporations Division - Registration Data Search

Neither the State of Washington nor any agency, officer, or employee of the State of Washington warrants the accuracy, reliability, or timeliness of any information in the Public Access System and shall not be liable for any losses caused by such reliance on the accuracy, reliability, or timeliness of such information. While every effort is made to ensure the accuracy of this information, portions may be incorrect or not current. Any person or entity who relies on information obtained from the System does so at his or her own risk.

### NORTHWEST TRUSTEE SERVICES PLLC

| | |
|---|---|
| UBI Number | 602073255 |
| Category | PLC |
| Profit/Nonprofit | Profit |
| Active/Inactive | Inactive |
| State Of Incorporation | WA |
| WA Filing Date | 10/16/2000 |
| Expiration Date | 10/31/2004 |
| Inactive Date | 04/29/2004 |
| Registered Agent Information | |
| Agent Name | M GAIL RYDER |
| Address | 777 108TH AVE NE STE 1900 PO BOX C-90016 |
| City | BELLEVUE |
| State | WA |
| ZIP | 980099016 |
| Special Address Information | |
| Address | |
| City | |
| State | |
| Zip | |

**Governing Persons**

| Title | Name | Address |
|---|---|---|
| Manager | FENELL , DAVID | BELLEVUE , WA |
| Member | ROUTH , STEPHEN | BELLEVUE , WA |

« Return to Search List

Phone Numbers | Privacy Policy | Accessibility
Washington Secretary of State · Corporations Division
801 Capitol Way South
PO Box 40234, Olympia WA 98504-0234
(360) 725-0377

Translate our site into:
Select Language
Powered by Google Translate

# EXHIBIT L/ROC-E
# RCO Letter to Plaintiff

Exhibit ROL-E

ROUTH CRABTREE OLSEN, P.S.

*A Law Firm and Professional Services Corporation*
3535 Factoria Blvd. SE, Suite 200
Bellevue, WA 98006
Telephone (425) 458-2121 ◆ Facsimile (425) 283-0938
www.rcolegal.com

THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. THE FOLLOWING LETTER IS A DISCUSSION OF ALTERNATIVES TO FORECLOSURE.   IT IS OUR UNDERSTANDING THAT YOU ARE NOT CURRENTLY IN BANKRUPTCY.   IF YOU ARE IN BANKRUPTCY, THEN PLEASE DISREGARD THIS LETTER IN ITS ENTIRETY AND HAVE YOUR ATTORNEY CONTACT OUR OFFICE AS SOON AS POSSIBLE.

Jan 15, 2010

Re:    Property:    14840 119th Place Northeast, Kirkland, WA 98034
       Loan No.:    1009111244
       Our File No.:  7523.21352

Dear Homeowner:

Please be advised that **Routh Crabtree Olsen, P.S.** is working with OneWest Bank FSB to help you keep your home. We represent your mortgage company and have received notice to commence foreclosure proceedings against your property. It is OneWest Bank FSB's mission to attempt to work out a solution to your loan situation, and they have asked us to open a line of communication with you.

## WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!

You may be eligible for certain opportunities that will help you stay in your home. You may have had an unexpected expense or a circumstance beyond your control that has forced you to miss some mortgage payments. OneWest Bank FSB would like to discuss your situation with you to determine what you can do to bring your loan current.

These alternatives are voluntary and could include:

- **Forbearance Plan:** An agreement to temporarily let you pay less than the full amount of your mortgage payment, or pay nothing at all, during the forbearance period. Your lender may consider a forbearance when you can show that funds from a bonus, tax refund, or other source of future income will let you bring the mortgage current or qualify you for a repayment plan or loan modification at the end of the forbearance period.
- **Reinstatement of Your Loan:** You would pay the total amount past due in one lump sum by a specified date.
- **Repayment Plan:**  An agreement that gives you a fixed amount of time to repay the amount you are behind by combining a portion of what is past due with your regular mortgage payment. At the end of the repayment period you will have gradually paid back the amount of your mortgage that was delinquent.

- Modification: This is a written agreement between you and the lender that permanently changes the terms of the loan that in some instances may make your payments more affordable. Common loan modifications include:
  1. Adding missed payments to your existing loan balance
  2. Making an adjustable-rate mortgage into a fixed-rate mortgage
  3. Extending the number of years you have to pay to a longer term

## WHAT IF YOU CAN NO LONGER AFFORD TO KEEP YOUR HOME?

If you cannot or do not want to keep your home, your lender can work with you to avoid foreclosure. This can help reduce the negative effect on your credit reputation. There are several different ways this might occur depending on your financial circumstances:

- Deed in Lieu of Foreclosure:  Under certain circumstances, you would voluntarily transfer ownership of your property to the lender in exchange for cancellation of your mortgage debt. In most cases, you must attempt to sell your home for its fair market value for at least 90 days.  You would be given a specific period of time to relocate. This option may not be available to you if there are other liens or judgments on your home.
- Short Payoff: If you can sell your house but the sales proceeds are less than the total amount you owe on your mortgage, your lender may agree to a short payoff and write off the portion of your mortgage that exceeds the net proceeds from the sale.
- Assumption of Your Loan: This option permits a qualified buyer to take over your mortgage debt and pay the payments, even if the mortgage is non-assumable.

## HOW DO YOU TAKE ADVANTAGE OF THESE ALTERNATIVES?

Complete the enclosed two-page financial form and return it in the enclosed self-addressed envelope. Time is of the essence: this information will enable us to determine what option is best suited to keep your account from being foreclosed upon. Please return the requested information via fax at (425) 283-0938, or mail to:

Routh Crabtree Olsen, P.S.
Attention: Antoinette Bartlein
P.O. Box 4143
Bellevue, WA 98009-4143

Please note that the foreclosure action will continue whether or not the form is completed and returned. The foreclosure action will continue unless your lender determines that you are eligible for one of these alternatives and an agreement is signed. You also have the right and should seek the advice of an attorney.

We hope that you will complete the enclosed forms so that we can work with you to consider alternatives to the pending foreclosure of your property.

Sincerely,
ROUTH CRABTREE OLSEN, P.S.