The Honorable Robert S Lasnik

**JAMES MCDONALD**
**14840 119th PL NE**
**Kirkland, WA 98034**
**Phone (425) 210-0614**
**In Pro Per**

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

| | |
|---|---|
| In Re:<br><br>**James McDonald**<br><br>                     **Plaintiff**<br><br>         **v.**<br><br>**OneWest Bank, FSB,**<br>**Northwest Trustee Services,**<br>**Mortgage Electronic Registration Systems,**<br>**Indymac Bank, FSB,**<br>**Does 1-50**<br><br>               **Defendants.** | **NO.:  C10-1952RSL**<br><br>**First Amended Complaint For:**<br>**(1) Violations of the Washington Deed of**<br>     **Trust Act, RCW 61.24 *et seq***<br>**(2) Violations of RESPA 12 U.S.C. §2605 *et***<br>     ***seq* & §2607 *et seq.***<br>**(3) Violations of Truth In Lending Act 15**<br>     **U.S.C. §1641 *et seq.***<br>**(4) Violations of FDCPA 15 U.S.C. §1692 *et***<br>     ***seq.***<br>**(5) Violations of FCRA 15 U.S.C. §1681**<br>**(6) Violations of the Washington Consumer**<br>     **Protection Act RCW 19.86 *et seq.***<br>**(7) Slander of Title**<br>**(8) Fraud**<br>**(9) Civil Conspiracy**<br>**(10)Declaratory Relief; Lack of Standing**<br>**(11) Permanent Injunction** |

    **James McDonald, Plaintiff**, states claims against the following named Defendants: OneWest

Bank FSB, Northwest Trustee Services, Mortgage Electronic Registration Systems, Indymac Bank FSB

and Does 1-50; separately and together as follows:

**I.    Jurisdiction, Venue and Parties**

**1.1    Jurisdiction and Venue**

Jurisdiction in this case is based on 28 USC §1331 because Plaintiff's claims stated below against

Defendants include allegations of violations of federal statutes. In addition, in this case is based on diversity

of citizenship pursuant to 28 USC §1332. The Plaintiff is a resident of Washington State, and some of the

parties are residents of other states, as stated in the descriptions of the parties in **Paragraphs 1.2 through**

**1.7** of this Amended Complaint.  The value of the amount in controversy exceeds $75,000.00, as described

in the promissory note and deed of trust which are described in Paragraph 1.2 of this Complaint, Venue in

this matter is properly set in the U.S. District Court, Western District of Washington pursuant to 28 USC §1391(a)(2) based on facts pled in **Paragraphs 1.2 and 1.7, below**.

1.2     **James McDonald, Plaintiff**

      James McDonald, Plaintiff, is a resident of the state of Washington and owner of the real property in question.  At the time of the acquisition by Plaintiff the Plaintiff signed a  Deed of Trust dated January 8, 2007 recorded in the King County Auditor Records January 8, 2007 Recording No. 20070110002077 with IndyMac Bank, FSB (Exhibit A).  That deed of trust stated that it secured payment of a promissory note (Exhibit B) also dated January 8, 2007 in the original principal amount of $389,481.60.  That loan and debt is one of the subjects of this lawsuit.  The Loan Number on the Deed of Trust is 125049243. The Legal Description of the Property is

        Lot 18, High Woodlands Div. 3, according to the plat thereof recorded in Volume 85 of

        Plats, pages 30 through 32, inclusive, in King County, Washington.

        Tax Parcel Number: 328830018003

        Site Address: 14840 119th PL NE, Kirkland, WA 98034

1.3     **OneWest Bank FSB, Defendant**

      OneWest Bank, FSB (hereafter "OneWest") is a federal savings bank doing business in King County, Washington with a home office in Pasadena, California. OneWest claims to be the successor in interest to Defendant Mortgage Electronic Registration Systems. OneWest's subsidiary, Indymac Mortgage Services Inc allegedly has a servicing agreement allowing it to service Plaintiff's loan, loan number 125049243. Indymac Mortgage Services is not licensed to do business in the state of Washington. Defendant OneWest is subject to the jurisdiction and venue of this Court by a combination of four reasons: (1) by its residency in California, (2) by it's claims of being the owner/holder of the $389,481.60 promissory note signed by the Plaintiff, (3) by its requesting defendant Northwest Trustee Services perform a non-judicial foreclosure sale with respect to the certain deed of trust and (4) by Plaintiff's claims against OneWest in this First Amended Complaint.

1.4     **Northwest Trustee Services, Defendant**

Northwest Trustee Services (hereafter "Northwest Trustee") is a Washington corporation with a home office in Bellevue, WA and doing business in King County. Northwest Trustee claims to be the successor trustee of the certain deed of trust and also the agent of defendant OneWest. Northwest Trustee is co-owned by Stephen Routh who also is an owner in Routh Crabtree Olsen, PLLC, the law firm representing three of the defendants in this case. Northwest Trustee recorded or caused to be recorded several documents including an Amended Notice of Trustee Sale under King County Auditor No. 20100304000502 with a sale date set for Friday, December 10th, 2010 at 10:00 am at outside adjacent to the south entrance to 3535 Factoria Blvd. SE, Bellevue, WA. Northwest Trustee is subject to the jurisdiction and venue of this court by scheduling the non-judicial sale at the location described in this paragraph and its other activities as alleged in this complaint.

**1.5  Mortgage Electronic Registration Systems, Defendant**

Mortgage Electronic Registration Systems (hereafter "MERS") is a corporation in Delaware with a mailing address of 1818 Library St, Reston, Virginia. MERS was listed as the beneficiary of the Deed of Trust named by the original lender Indymac Bank, FSB. It purportedly transferred ownership of the Note in question to Defendant OneWest Bank and its beneficiary status in the certain deed of trust. MERS is not licensed to conduct business in the state of Washington; however it does conduct business in the state of Washington by purporting to obtain beneficial interests in deeds of trusts to secure obligations to real property. MERS is subject to the jurisdiction and venue of this Court (1) by its residency in Delaware and address in Virginia, (2) by its purported assignment of the ownership of the Note and beneficiary status in the deed of trust and (3) by Plaintiff's claims against MERS in Plaintiff's First Amended Complaint.

**1.6  Indymac Bank FSB, Defendant**

Indymac Bank, FSB (hereafter "Indymac") was a federal savings bank incorporated under the laws of Delaware with a home office in Pasadena, California. Indymac was shut down by the Office of Thrift Supervision on July 8, 2008. The FDIC took over as conservator and receiver under the newly formed thrift Indymac Federal Bank, FSB until selling certain assets and liabilities to

OneWest Bank Group LLC. There is no public record that the sale included the note or deed of trust in question in any way.

**1.7**   **Does 1-50, Defendants**

DOES 1-50 are for any parties currently unknown in which through the discovery of these proceedings becomes known as an affiliated entity or entity of interest in the matters set herein.

**II.**   **Background Facts and History**

**2.1**   **Deed of Trust (Exhibit FAC1)**

The original lender on Loan No. 125049243 which is one of the subjects of this lawsuit was Indymac Bank, FSB.  The promissory note in that loan was secured by the deed of trust dated January 8, 2007 recorded in the King County Auditor Records January 8, 2007 Recording No. 20070110002077.  The trustee named in the deed of trust is Pacific Northwest Title Insurance Co, Inc. The borrower (who signed the note) James McDonald at the time of execution of the above referenced documents was the sole owner of the property in question.

That Deed of Trust stated that it secured payment of a promissory note also dated January 8, 2007 in the original principal amount of $389,481.60. The Deed of Trust named:

**Lender**: Indymac Bank, FSB

**Beneficiary:** Mortgage Electronic Registration Systems "MERS"

**Trustee**: Pacific Northwest Title Insurance Co., Inc

**Borrower**: James McDonald as sole owner of the property.

**2.2**   **Promissory Note (Exhibit FAC2)**

2.2.1   MERS Identification Number: 100055401250492438

2.2.2   Lender: Indymac Bank, FSB

2.2.3   The company and address for Payments to be made to: Indymac Bank, FSB, P.O. Box 78826, Phoenix, AZ 85062-8826

2.2.4   The monthly payment listed on the Note is $1,906.84.

**2.3**   **Custodial Agreement between Freddie Mac, Deutsche Bank National Trust Co. and OneWest (Exhibit FAC3)**

        The Defense utilized this document as part of the evidence they relied upon in their Motion for

Summary Judgment in an attempt to show that OneWest was in fact the holder of the obligation in

question. However, this document clearly indicates that OneWest has no rights as a holder. On Page 5,

Section 2(c) it states, "Upon receiving Notes to be held in custody for Freddie Mac…". Further in Section

2(g) Release of Documents it states, "Seller/Servicer shall hold in trust and for the sole benefit of Freddie

Mac all notes released to it." The Seller/Servicer in this agreement is OneWest as shown in the opening

paragraph of the agreement. Therefore OneWest Bank is indeed not granted the rights of holder but is

keeping it for the benefit of another party. Freddie Mac's exact role in this agreement is not expressly

defined. The parties that signed the document were: Christopher Corcorran as Vice President of Deutsche

Bank National Trust Company, Aaron Wade as Sr. Vice President for OneWest and Pam Williams as

Director of Counterparty Credit Risk Management for Freddie Mac. The agreement was dated May 12,

2009.

**2.4    Notice of Default (Exhibit FAC4)**

        The Notice of Default was dated January 12, 2010. The document was prepared and served or

caused to be served by Northwest Trustee at the request of OneWest. In the Declaration of Vonnie

McElligott (Docket #49-4) Ms. McElligott declares that Northwest Trustee was not performing this task as a

properly appointed trustee but as an agent of OneWest. Section K of the Notice of Default states, "Contact

Information for the Beneficiary (Note Owner)". The party listed is Defendant OneWest. RCW

61.24.030(8)(l) requires that the current note owner's name and contact information be provided on the

Notice of Default. However, Defendant OneWest admits to never being the owner of the promissory note

in both the Declaration of JC San Pedro (Docket #16) and the Declaration of Charles Boyd (Docket #49-4).

        The defendants provide the Plaintiff and the Court their definition of a beneficiary as the Note

Owner as shown above. As OneWest admits it has never been the Note Owner so too they are not nor

have ever been the Beneficiary.

        Therefore OneWest and Northwest Trustee are in violation of the perquisites of a non-judicial

trustee sale as provided in RCW 61.24.030(8), "That at least 30 days before notice of sale shall be

recorded, transmitted or served, written notice of default shall be transmitted by the beneficiary or

trustee…". As stated above Ms. McElligott declared Northwest Trustee was acting as an agent for

OneWest, not a properly appointed trustee. OneWest was not the beneficiary (note owner) as they claimed in the Notice of Default.

Further Section L.2 states, "The creditor to whom the debt is owed OneWest Bank, FSB/OneWest Bank, FSB." Plaintiff has never borrowed money from OneWest Bank, nor has OneWest Bank ever purchased any obligation signed by the Plaintiff. Plaintiff therefore disputes this claim that any money is owed to OneWest.

### 2.4.1   Beneficiary Declaration Pursuant to Chapter 61.24 RCW (SB 5810)

The Beneficiary Declaration (required by RCW 61.24.031) was executed on January 7, 2010 by notorious robo-signer under the penalty of perjury by Erica A. Johnson-Seck. Ms. Johnson-Seck made a false statement by claiming Defendant OneWest was the beneficiary. Not only is the Beneficiary Declaration a violation of RCW 61.24.031 but was also a misrepresentation of the facts.

**WHEREFORE** Plaintiff moves the Court to order the Notice of default void.

### 2.5   Routh Crabtree Olsen PLLC Letter to Plaintiff January 15, 2010 (Exhibit FAC5)

On January 15, 2010, Routh Crabtree Olsen PS executed a letter to Plaintiff. On the first page, second paragraph they stated, "Please be advised the Routh Crabtree Olsen PS is working with OneWest Bank FSB to help you keep your home. We represent your mortgage company…". Once again Plaintiff disputes that OneWest was or has ever been his "mortgage company" as stated in Section 2.4 above in this Amended Complaint. Secondly this letter represents the written contact required by RCW 61.24.031(1)(b) that is to occur no earlier than 30 days before the Notice of Default is served. However the Notice of Default was served on January 12, 2010, therefore it appears to Plaintiff that OneWest is in violation of RCW 61.24.031(1)(b).

### 2.6   Assignment of Deed of Trust (Exhibit FAC6)

The Assignment of Deed of Trust was signed on January 27th, 2010 and recorded in King County under recording number 20100204000502 on February 4, 2010. This assignment was signed by Brian Burnett as Assistant Vice President of MERS. Brian Burnett is a known robo-signer. The defendants have admitted that Brian Burnett is not an employee of MERS but is an employee of OneWest with signing authority for MERS. Their evidence of this "signing authority" comes from a MERS Corporate Resolution

(Exhibit FAC12) dated August 19, 2010, almost seven months after the Assignment of Deed of Trust was executed. The defense has provided no documentation that Brian Burnett had signing authority at the time he signed this document.

Paragraph 2 states, "Together with note or notes therein described or referred to, the money due and to become due thereon, with interest and all rights accrued or to accrue under said Deed of Trust." This purportedly transferred the ownership of the Note to OneWest. However MERS never owned the note and had no right to transfer ownership of something that did not belong to it. "MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record." *See, e.g., Landmark Nat. Bank v. Kesler, 289 Kan. 528, 536, 216 P.3d 158, 164 (2009) (providing a profile of MERS).* MERS cannot assign beneficial interest in the Deed of Trust to a person or entity that is not the owner of the promissory note. To assign beneficial interest in the deed of trust without ownership of the note would make the deed of trust null. Carpenter v. Longan, 83 U.S. 271, 274 (1872).

WHEREFORE Plaintiff moves the Court to rule the Assignment of the Deed of Trust is void.

**2.7    Appointment of Successor Trustee (Exhibit FAC7)**

An Appointment of Successor Trustee was signed by known robo-signer Suchan Murray on January 27, 2010 and recorded by either Northwest Trustee or Routh Crabtree Olsen PS on behalf of OneWest on February 4, 2010. This Appointment purported to transfer Trustee duties from Pacific Title Insurance Corp to defendant Northwest Trustee.

The third paragraph states, "The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the **owner** and holder of the obligation (Plaintiff's note: Note) secured by the subject deed of trust…". Again, Defendant OneWest has since admitted that they are not nor have they ever been the owner of the Note. Further as shown in the Custodial Agreement (Exhibit FAC3) they had and have no rights as a beneficiary.

According to RCW 61.24.010(2) Plaintiff alleges OneWest had no right to appoint a successor trustee. The statute states, "…or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee."

WHEREFORE Plaintiff moves the Court to rule the Appointment of Successor Trustee is void.

**2.8    Notice of Trustee Sale (Exhibit FAC8)**

Plaintiff received a Copy of the Notice of Trustee Sale from Defendant Northwest Trustee on or about February 12, 2010 stating the property described above was to be sold at Trustee's Auction on May 10, 2010. The Notice of Trustee Sale was recorded under King County records under recording number 20100216001242 on February 16, 2010 which further clouds the Plaintiff's title.

2.8.1  **Parties**

2.8.1.1  Grantors: Northwest Trustee Services, Inc and OneWest Bank, FSB. Neither of these parties have a real or vested interest in the Note and/or Deed of Trust.

2.8.1.2  Grantee is listed as "Julie B. McDonald, a single man". According to Vonnie McElligott's declaration **(Docket #13)** "…has or had a duty to record accurately such event." She did not even get Plaintiff's name right.

2.8.1.3  The Notice of Trustee Sale states that Defendant MERS was the beneficiary under the Deed of Trust and assigned that Beneficial Interest to Defendant OneWest. As shown in Section 2.6 of this Amended Complaint that Assignment is a nullity.

2.8.2  **Fees and Amount to Reinstate in Section II**

2.8.2.1  The Notice of Trustee Sale lists a total of $11,969.30 in arrears. There is no mathematical equation based on either the payment on the note as described above or the note payment and the escrow items. Plaintiff disputes this amount. There is a total of $381.36 in late fees listed on the Notice of Trustee Sale. Again at a 5% fee of the 1,906.84 payment this figure is incorrect. Lender's Fees and Costs are listed at $22.00. There is no explanation of this and it appears to be erroneous. There is a Trustee's Fee of $725.00 but no explanation of what this fee entails. As Northwest Trustee has never been appointed by the owner of the Note. Plaintiff disputes this charge. There is a Title Report fee of $951.00. Plaintiff disputes this amount until it is verified with a receipt. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed by the owner or beneficiary of the note. Statutory Mailings fee of $9.56. Plaintiff disputes this amount until it is verified. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed by the owner/beneficiary of the note. Recording Costs are set at $30.00. Plaintiff disputes this amount until it is verified. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed

by the owner/beneficiary of the note. Postings fee is listed at $70. Plaintiff has no knowledge of what Defendant Northwest Trustee is claiming as a "posting fee" and it appears to be erroneous. Further, Plaintiff disputes this amount until it is verified. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed by the owner of the note. Sales Cost is $0.00 on the First Notice of Trustee Sale.

2.8.2.2  As shown above, there are many inaccurate fees listed within the costs section. The "arrearage" is much higher than it actually would have been had the loan actually been in default. Therefore Plaintiff believes that Defendants Northwest Trustee and OneWest hiked up the amounts in an effort to fatten their own pockets. Plaintiff believes this is a deceptive and unethical business practice as Vonnie McElligott claims that all actions taken are done accurately by people that have personal knowledge **(Docket #13).**

2.8.2.3  The Notice of Trustee Sale was signed by **Vonnie McElligott** and notarized by Heather E. Casey.

2.8.3  The last line on the Notice of Trustee Sale states, "This is an attempt to collect a debt…" which makes Northwest Trustee Services a debt collector regulated under the Fair Debt Collection Practices Act.

> *"any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .For the purpose of section 808(6) [15USC § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."*

**2.9     Amended Notice of Trustee Sale (Exhibit FAC9)**

Plaintiff received a Copy of the Notice of Trustee Sale from Defendant Northwest Trustee on or about October 28, 2010 stating the property described above was to be sold at Trustee's Auction on December 10, 2010. The Notice of Trustee Sale was recorded under King County records under recording number 20101104001321 on November 4, 2010 which further clouds the Plaintiff's title.

2.9.1  **Parties**

**2.9.1.1** Grantors: Northwest Trustee Services, Inc and OneWest Bank, FSB. Neither of these parties have a real or vested interest in the property.

**2.9.1.2** Grantee is listed as James McDonald, a single man.

**2.9.1.3** The notice of trustee sale states that MERS was the beneficiary of the deed of trust and assigned that beneficial interest to OneWest Bank which was covered in Section 2.6 above.

2.9.2     **Fees and Amount to Reinstate in Section III**

**2.9.2.1**          The Amended Notice of Trustee Sale lists a total of $30,934.98 in arrears. There is no mathematical equation based on either the payment on the note as described above or the note payment and the escrow items. Plaintiff disputes this amount. There is a total of $1,239.42 in late fees listed on the Amended Notice of Trustee Sale. Again at a 5% fee of the 1,906.84 payment this figure is incorrect and therefore Plaintiff disputes the amount. Lender's Fees and Costs are listed at $2,768.82. There is no explanation of this and it appears to be erroneous, therefore Plaintiff disputes this fee. There is a Trustee's Fee of $508.00 but no explanation of what this fee entails. As Northwest Trustee has never been appointed by the owner/beneficiary of the Note Plaintiff disputes this charge. There is a Title Report fee of $0. Statutory Mailings fee of $147.00. Plaintiff disputes this amount until it is verified. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed by the owner/beneficiary of the note. Recording Costs are set at $129.00. Plaintiff disputes this amount until it is verified. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed by the owner/beneficiary of the note. Postings fee is listed at $136.92. Plaintiff has no knowledge of what Defendant Northwest Trustee is claiming as a "posting fee" and it appears to be erroneous. Further, Plaintiff disputes this amount until it is verified. Even so Northwest Trustee is not entitled to this fee in the Plaintiff's opinion as they were never appointed by the owner of the note. Sales Cost is $500.00 on the Amended Notice of Trustee Sale. There is no explanation of this fee and it was not included in the First Notice of Trustee Sale therefore Plaintiff strongly disputes this fee.

          As shown above, there are many inaccurate fees listed within the costs section. The "arrearage" is much higher than it actually would have been had the loan actually been in default.

Therefore Plaintiff believes that Defendants Northwest Trustee and OneWest hiked up the amounts in an effort to fatten their own pockets. Plaintiff believes this is a deceptive and unethical business practice as Vonnie McElligott claims that all actions taken are done accurately by people that have personal knowledge **(Docket #13)**.

2.9.3    The Notice of Trustee Sale was signed by **Vonnie McElligott** and notarized by Heather E. Casey.

2.9.4    The last line on the Notice of Trustee Sale states, "This is an attempt to collect a debt…" which makes Northwest Trustee Services a debt collector regulated under the Fair Debt Collection Practices Act 15 U.S.C. §1692a(5) as shown in Section 2.8.3 above in this Amended Complaint.

**2.10    Comparison of Notice of Trustee Sale and Amended Notice of Trustee Sale**

| Fee | First Notice | Amended Notice |
|---|---|---|
| Monthly Payments | $11,969.30 or $2393.86 per month | $30,934.98 or $2577 per month |
| Late Charges | $381.36 or $76.27 per month | $1,239.42 or $103.29 per month |
| Lenders Fees and Costs | $22.00 | $2768.82 |
| Trustee's Fee | $725 | $508 |
| Title Report | $951 | $0 |
| Statutory Mailings | $9.56 | $147 |
| Recording Costs | $30 | $129 |
| Postings | $70 | $136.92 |
| Sale Costs | $0 | $500 |

Plaintiff claims that the table listed above is a clear example of Defendant Northwest Trustee's unethical and deceptive business practices as per RCW 19.86 that is one of the primary through lines in this lawsuit.

**2.11    Qualified Written Request and Debt Validation Demand (Exhibit FAC10)**

Due to the tremendous amount of attention to foreclosure fraud the media began to give in early 2010, Plaintiff began researching foreclosure fraud and making inquiries to determine whether he had been the victim of foreclosure fraud. Plaintiff made multiple attempts to obtain a validation of the accounting and proof of the identity of Owner/Holder of the Note from Defendants OneWest, MERS and

Northwest Trustee. One of these attempts was the Qualified Written Request (QWR), Dispute of Debt

(Dispute) and Debt Validation Demand (DVD) that Plaintiff served upon the defendants on April 27th, 2010

via prepaid, certified return receipt requested mail. Plaintiff has signed receipts of the mailings. Plaintiff

also recorded a copy of the QWR, Dispute and DVD in King County Recorder's office to provide notice to

any unknown parties, such as the as yet unidentified investors the Plaintiff's Note was sold into. Defendant

MERS made no response to Plaintiff's mailing. Defendant Northwest Trustee chose not to assist Plaintiff in

his request. Defendant OneWest responded to Plaintiff as detailed below in Section 2.12 of this Amended

Complaint.

**2.12    Letter to Plaintiff from OneWest dated May 18, 2010 (Exhibit FAC11)**

In response to Plaintiff's QWR, Dispute and DVD Defendant OneWest sent Plaintiff a letter on May

18th, 2010. Within that letter they stated that Freddie Mac was the investor of the loan. Plaintiff concurs

that at one point Freddie Mac was the purchaser of the Note but as Section 2.17 below will show they then

sold their beneficial interest in the Note to an as of yet unidentified party. They also provided Plaintiff a

copy of a copy of the note and deed of trust as well as a payment history showing payments Plaintiff had

previously made. They did not provide any chain of title of the Note or Deed of Trust, nor any accounting

records, purchase agreements and other information Plaintiff had requested in order to validate the debt.

It has been found by many courts that to comply with the statute and protect the consumer's rights

validation requires presentment of the account and general ledger statement signed and dated by the

party responsible for maintaining the account. *Pacific Concrete F.C.U, v, Kauanoe,* 62 Haw. 334, 614 P.2d

936 (1980); GE Cap/fa/ *Hawaii, Inc. v. Yonenaka,* 25 P.3d 807, 96 Hawaii 32 (Hawaii App 2001); *Fooks v.

Norwich Housing Authority,* 28 Conn. L. Rptr. 371, (Conn. Super.2000); *Town of Brookfieid v. Candlewood

Shores Estates, Inc.,* 513 A.2d 1218, 201 Conn. 1 (1986); and *Solaon v. Godbole,* 163 III. App. 3d 845,

114 III. Dec. 890, 515 N.E. 2d 1045 (3rd Dist 1987).

Per USC 15 1692 §809(b) all collection activities must cease until the debt had been validated. The

Defendants have failed to comply with this statute and the rulings of the above referenced courts by

continuing to attempt to collect a debt that is in dispute. Plaintiff firmly believes, and all the evidence shows

this belief is well founded, that all parties named as defendants and Freddie Mac, a non-party, have been

fully paid off or were never eligible to receive payoff of a note they never owned.

**2.13    MERS Corporate Resolution: Certifying Officers (Exhibit FAC12)**

The defendants provided this document in support of their Motion for Summary Judgment (Docket #49) as an attempt to explain Brian Burnett's claim of being an Assistant Vice President of MERS when in fact he worked for OneWest. However on Page 1 of the Exhibit, paragraph 2 it states, "A certifying officer holds the title of an assistant secretary." As shown in 2.6 above Brian Burnett claimed to be an Assistant Vice President. Further on Page 2 of the exhibit item (2) it states they are only authorized to assign the lien of any mortgage when the Member (OneWest) is the current promissory note-holder. As shown in 2.3 above in the Custodial Agreement (Exhibit FAC3) Defendant OneWest has no rights as a note-holder and therefore was ineligible to be assigned the Deed of Trust in question.

**2.14    Freddie Mac "Our Business – Single Family Credit Guarantee Business" (Exhibit FAC13)**

Freddie Mac's website states, "Securitization is a process by which we purchase home loans that lenders originate, **put these loans into mortgage securities that are sold in global capital markets**, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend". This appears to be their standard business practice in which they purchase a loan from a lender and quickly sell those purchased promissory notes to investors around the world. However, defense has claimed in the Declaration of Charles Boyd that for the promissory note in question, "Freddie Mac has remained the investor and owner of the Note." While Plaintiff has evidence that proves this is not the case as stated below in Section 2.14, Freddie Mac's own website proves that this would be completely against their standard operating procedures. Freddie Mac simply does not retain promissory notes. Its revenue stream primarily results in the quick turnaround of reselling those notes into mortgage securities.

In the 3rd paragraph under the Single Family Credit Guarantee section the website further states, "When a family stops making payments – often due to loss of income – **Freddie Mac steps in and makes those payments to securities investors.** Managing this risk, known as credit risk, is how we generate revenue. **Each time we fund a loan, we collect a credit guarantee fee from the lender selling us the loan. This fee is intended to protect us in case of loan default**." Therefore even if a currently known or yet unidentified party is shown to have a beneficial interest adequate to foreclose, per the Deed of Trust, the power of sale which was granted to the original beneficiary cannot be invoked because there was never a default to the real party of interest.

**2.15    Notice of Objection to Trustee Sale (Exhibit FAC14)**

On April 28, 2010, Plaintiff caused to be sent to Defendant Northwest Trustee an Objection to Trustee Sale. Northwest Trustee received the Certified mail on 5/3/2010. A copy of this Objection was sent to Defendant OneWest who received it on 5/4/2010. Neither of the Defendants provided a written response to this objection which should have caused them to cease all collection activities

**2.16    Credit Report Agency Dispute Letter (Exhibit FAC15)**

On or about June 29th, 2010 Plaintiff sent a letter to Experian, TransUnion, Equifax and OneWest Bank disputing the derogatory information listed on his credit. OneWest Bank did not respond to Plaintiff.

**2.17    Deutsche Bank Communication to Plaintiff (Exhibit FAC16)**

Upon receiving an administrative subpoena deus tecum, Deutsche Bank National Trust Company (hereafter "DB"), the Custodian identified in the Custodial Agreement (Exhibit FAC3) obeyed the subpoena and sent to the Plaintiff a letter and enclosure in response. In the third paragraph on the letter their Counsel Shawn Hynes writes, "Please also note that DBNTC acted as the Custodian for several trusts, of which these loans were a part of…". DB has acknowledged that the promissory note in question was part of a trust and therefore not owned by Freddie Mac has Charles Boyd claims in his Declaration and which defense counsel Heidi Buck asserts gives OneWest the right to foreclose.

In the table at the bottom of Page 1 of the Exhibit OneWest and Freddie Mac are both listed as Servicers. Neither of them is listed as the owner of the note in question. Therefore it appears neither of them has the beneficial rights of the promissory note.

In the enclosure entitled Complete Loan File Information (hereafter "CLFI") the loan is listed as being part of subpool IN070227. A subpool is a smaller group of loans that is part of a larger pool of loans sold into a mortgage backed security. This further supports Plaintiff's allegation that Freddie Mac is NOT the owner of the promissory note.

On the second page of the CLFI it provides a list of the items that were received by DB. The first was the Initial Loan Review on January 16, 2007. The second was the Mortgage (Deed of Trust) on 3/27/2007. The final was the Title associated with the property in question on 4/9/2007. There is no indication that the original Promissory Note in question was ever received by DB. Therefore it appears to Plaintiff that OneWest's and their counsel's claim that they have received the original note from DB is

highly questionable and that any promissory note that is brought into the Court will require high scrutiny as to its authenticity.

The CLFI further shows that the file was withdrawn for servicing by OneWest on 10/6/2010, which shows OneWest did not even have the promissory note in their possession as they claimed in the Declaration of JC San Pedro.

### III.     Plaintiff's Claims

**3.1     Violations of the Washington Deed of Trust Act, RCW 61.24 *et seq.***

**3.1.1**     Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.1.2**     It appears to Plaintiff that Defendant OneWest cannot be considered the beneficiary of the Note as it never took the note "for value" RCW 62A.3-302(2)(ii). Further in the evidence the defense relies upon in the Custodial Agreement it shows that OneWest has no beneficial interest in any notes that DB releases to it (Exhibit FAC3). Therefore even with the Defense's past theories that there can be multiple holders of a promissory note, which they do not back up with statute or case law, it explicitly states that they are not the beneficiary.

**3.1.3**     It appears to Plaintiff that Defendant OneWest violated the Doctrine of Ultra Vires and RCW 61.24.010(2) by appointing Defendant Northwest Trustee Successor Trustee without being the beneficiary/holder/owner of the promissory note as clearly shown OneWest was not in the Custodial Agreement (FAC3), Declaration of Charles Boyd (Docket #49-4), Communication from DB (Exhibit FAC16).

"(2) … **the beneficiary shall appoint a trustee or a successor trustee.**"

**3.1.4**     It appears to Plaintiff that Defendant Northwest Trustee has violated on several occasions their duty of good faith to Plaintiff as required by RCW 61.24.010(4), "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." Northwest Trustee was well aware of the false statements in their foreclosure file having assisted Defendant OneWest in the preparation of the Notice of Default and Appointment of Successor Trustee as well as Defendant MERS in the Assignment of the Deed of Trust. Further the very fact that they had operated as an agent of the party opposing Plaintiff is a violation of their duty of good faith in and

of itself. There can not be equal good faith when there is a pre-existing relationship between two

of the three parties. Once money is received for services other than their duty as trustee there is a

bias formed. Plaintiff alleges that Defendant Northwest Trustee failed to reveal the

misrepresentations in order to solicit future business from Defendant OneWest for both

themselves and their Affiliated Entity Routh Crabtree Olsen PS.

**3.1.5**     Plaintiff alleges Defendant Northwest Trustee further violated their duty of good faith by

failing to disclose that it was an affiliated entity relationship with Routh Crabtree Olsen who was

Defendant OneWest collection agency and legal counsel.

**3.1.6**     Plaintiff claims that Defendant Northwest Trustee violated RCW 61.24.030(7)(a)&(b) by

knowingly preceded with filing and recording a Notice of Trustee sale (Exhibit FAC8) on or about

February 16, 2010 when they knew that OneWest was not the owner of the Note in question. As

previously detailed above Northwest Trustee acted as agent to OneWest by filing the Assignment

of Deed of Trust that purported to transfer MERS' beneficial interest in the Note which they knew

or should have known to be a non-existent interest as MERS is only a nominal beneficiary in the

Deed of Trust with no ownership rights to any notes.

**3.1.7**     Plaintiff claims that Defendant Northwest Trustee violated RCW 61.24.030(7)(a) a second

time by filing and recording the Amended Notice of Trustee Sale (Exhibit FAC9) on or about

November 4, 2010 for the same reasons as listed in 3.1.5 above. Further they had received a

letter from the Attorney General of Washington, Rob McKenna, a letter less than a month ago

strongly reminding them of their legal responsibilities to conduct their affairs within the strictest

measures of the law. This letter is attached to the Amended Complaint as Exhibit FAC17. At this

time Northwest Trustee was well aware of the dispute the Plaintiff had made as well as the

questionable chain of title of the note and deed of trust, yet still moved forward with conducting a

non-judicial foreclosure sale that was only halted by the intercession of this Court.

**3.1.8**     Plaintiff claims Defendant OneWest was in violation of RCW 61.24.030 by claiming to be

the "Beneficiary (Note Owner)" in the Notice of Default (Exhibit FAC4) when they knew they were

not the owner of the promissory note as Declared by both JC Sane Pedro and Charles Boyd of

OneWest or given any rights as beneficiary as described in the Custodial Agreement (Exhibit FAC3).

**3.1.9**   Plaintiff alleges Defendant OneWest violated RCW 61.24.031 by falsely claiming to be the beneficiary of the Note in the Beneficiary's Declaration that accompanied the Notice of Default (Exhibit FAC4) when they knew they were not the Note owner or given any rights as holder as described in the Custodial Agreement (Exhibit FAC3).

**3.1.10**   Plaintiff alleges both Defendants OneWest and Northwest Trustee are in violation of RCW 61.24.030(8)(l) by failing to put on the Notice of Default the actual owner of the promissory note thereby preventing Plaintiff from investigating the alleged default.

**3.1.11**   Plaintiff claims that Defendant MERS assisted Defendants OneWest and Northwest Trustee in preparing for and attempting to conduct an illegal non-judicial foreclosure sale of Plaintiff's real property by assigning beneficiary/ownership interest in the note in question that Defendant MERS knew it was not the owner of and creating a division in the chain of title of the Deed of Trust by assigning beneficiary status to Defendant OneWest when it knew OneWest was not the owner of the Promissory Note and by its own Corporate Resolution (Exhibit FAC12) was ineligible to be the assignee.

**3.1.12   PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest, MERS and Northwest Trustee for the various violations of the Washington Deed of Trust Act as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of RCW 61.24 *et seq.*

**3.2**     **Violations of RESPA 12 U.S.C. §2605 *et seq* & §2607 *et seq.***

**3.2.1**   Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.2.2**   Plaintiff alleges that Defendant OneWest violated U.S.C 12 §2605(e)(2)(C)(1) by refusing to provide the requested information regarding the Plaintiff's loan or providing a reason for the inability the information was unavailable other than it was "burdensome" in their letter to Plaintiff on May 18th, 2010 (Exhibit FAC10).

"(C) after conducting an investigation, provide the borrower with a written

explanation or clarification that includes--

(i) information requested by the borrower or an

explanation of why the information requested is unavailable or cannot be

obtained by the servicer;"

**3.2.3**   Plaintiff claims that Defendant Northwest Trustee violated RESPA 12 U.S.C. §2607(b)

when they charged a "Sale Fee" of $500 in the Amended Notice of Trustee Sale (Exhibit FAC9)

when "no service was performed in exchange for money" and for other errors in the representation

of the amounts due and payable to cure the alleged default in both the Notice of Trustee Sale and

the Amended Notice of Trustee Sale as described in the table in Section 2.10 of this Amended

Complaint.

**3.2.4**   Plaintiff alleges Defendant MERS violated RESPA 12 U.S.C. §2605 when it failed to

respond to the Plaintiff's QWR, Dispute and DVD (Exhibit FAC10).

**3.2.5**   Plaintiff claims Defendant OneWest violated RESPA 12 U.S.C. §2605 when it failed to

adequately respond to Plaintiff's "Qualified Written Request" inquiries.

**3.2.6**   Plaintiff alleges Defendant OneWest violated U.S.C 12 §2605(e)(3) by continuing to report

derogatory information to the credit bureaus Experian, Equifax and TransUnion during the 60 days

they had to review Plaintiff's Qualified Written Request as required by that statute.

During the 60-day period beginning on the date of the servicer's receipt

from any borrower of a qualified written request relating to a dispute

regarding the borrower's payments, a servicer may not provide

information regarding any overdue payment, owed by such borrower and

relating to such period or qualified written request, to any consumer

reporting agency (as such term is defined under section 1681a of title

15).

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

**3.2.7**    Plaintiff claims Defendant Northwest Trustee violated U.S.C. 12 §2607(c)(4) by failing to provide written disclosure to Plaintiff of their Affiliated Business Entity Relationship with Routh Crabtree Olsen PS.

**3.2.8    PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest, MERS and Northwest Trustee for the various violations of RESPA as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of violations of RESPA.

**3.3**    **Violations of Truth In Lending Act 15 U.S.C. §1641 *et seq.***

**3.3.1**    Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.3.2**    It appears to client that Defendant OneWest violated 15 U.S.C §1641(f)(2) by failing to provide the name, address and telephone number of the owner of the promissory note or the master servicer of the same when Plaintiff requested it in the Qualified Written Request and Debt Validation Demand and Dispute (Exhibit FAC10). While Defendant OneWest claimed the owner of the promissory note was Freddie Mac, which has now been shown to be false, they failed to provide the necessary contact information.

> "Upon written request by the obligor, the servicer shall provide the
> obligor, to the best knowledge of the servicer, with the name, address,
> and telephone number of the owner of the obligation or the master
> servicer of the obligation."

**3.3.3**    Plaintiff alleges that Defendants OneWest and MERS failed to comply with 15 U.S.C §1641(g)(1) when MERS purportedly transferred its beneficial interest in the Deed of Trust to OneWest. While Plaintiff continues to allege that the transfer is invalid, by the Defendants taking said action they would have had to comply with this regulation. At no point has Plaintiff received proper notification that OneWest was assigned beneficial interest in the Deed of Trust. The only way Plaintiff found out was by conducting his own research in King County public records.

**3.3.4    PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest and MERS for the various violations of TILA as set forth above. The amount of damages of an amount to be decided at trial

or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of violations of TILA.

**3.4** **Violations of FDCPA 15 U.S.C. §1692 *et seq.***

**3.4.1** Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.4.2** Defendant Northwest Trustee is a debt collector. Northwest Trustee states as much in the voicemails it leaves and the notices it issues. Defendant Northwest Trustee violated and continues to violate FDCPA 15 U.S.C. §1692 when it continued to perform debt collection activities on behalf of Defendant OneWest after it received numerous dispute and validation attempts by Plaintiff as described in Section 2.11 and 2.12 in this Amended Complaint.

**3.4.3** Defendant OneWest is a debt collector. OneWest states as much in the voicemails it leaves, the mailings it sends and the notices it causes to be posted upon Plaintiff's door on a monthly basis for over a year. Defendant OneWest violated and continues to violate FDCPA 15 U.S.C. §1692 when it continued and continues to perform debt collection activities after it received numerous dispute and validation attempts by Plaintiff as described in Section 2.11 and 2.12 in this Amended Complaint.

**3.4.4** Defendant OneWest violated the FDCPA when it caused Routh Crabtree Olsen to make collection attempts to the Plaintiff on behalf of OneWest as the mortgage lender (Exhibit FAC5) when OneWest has never been the owner of the promissory note nor has ever lent or caused to be lent any monies to Plaintiff.

**3.4.5** Defendant OneWest has further violated the FDCPA by continuing to call Plaintiff after it received and acknowledged a written request to stop all phone contact with the Plaintiff as required by USC 15 1692c §805 **(Exhibit FAC18).** Plaintiff made the decision to request OneWest to halt contacts after OneWest began harassing Plaintiff's parents at a phone number which Plaintiff could not be directly contacted at and after it became apparent through OneWest's continued refusal to provide validation of the debt and the identity of the owner of the financial and security instruments. The exact number of infractions will be provided through the discovery process.

**3.4.6**    **PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest and Northwest Trustee for the various violations of FDCPA as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of violations of FDCPA.

**3.5**    **Violations of FCRA 15 U.S.C. §1681**

**3.5.1**    Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.5.2**    Defendant OneWest furnished information to one or more of the credit reporting entities: Experian, Equifax and Transunion that was inaccurate or incomplete. Plaintiff notified Defendant OneWest of the dispute. After receiving multiple notices of the dispute Defendant OneWest failed to correct its information or mark the account in dispute with the three credit reporting entities. Instead they reported the account was in foreclosure even though OneWest knew that the foreclosure itself was in dispute. Such actions by Defendant OneWest violated and continue to daily violate 15 U.S.C. §1681s-2(a),(1),(2)&(3). Such actions by OneWest are also a "willful noncompliance" in violation of 15 U.S.C. §1681n.

**3.5.3**    **PLAINTIFF CLAIMS DAMAGES** against OneWest for the various violations of FCRA as set forth above. The amount of damages of an amount to be decided at trial or in a dispositive motion and any attorney fees and or related costs incurred to Plaintiff for bringing these claims of violations of FCRA.

**3.6**    **Violations of the Washington Consumer Protection Act RCW 19.86 *et seq.***

**3.6.1**    Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.6.2**    **Elements of a Washington Consumer Protection Act Violation Claim**

**3.6.2.1**  Plaintiff understands that a cause of action involving the WA CPA is not to be lightly made. He therefore began researching the necessary requirements for making such a claim. Plaintiff discovered a recent ruling by this Court on January 26, 2011 in Thepvongsa v. Regional Trustee Services Corp *et al*.

"To state a claim under the CPA, plaintiff must plead facts demonstrating: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act. Indus. Indem. Co. v. Kallevig, 114 Wn. 2d 907, 920-21 (1990). Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790 (1986). However, a private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. Id. The Court must examine several factors to determine whether the public interest is impacted: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions? Id. at 790-91."

**3.6.2.2** In order to be as brief as possible, Plaintiff will answer the final four questions in regards to Defendants OneWest and Northwest Trustee services together. These alleged acts ARE committed in the course of the defendant's business as Northwest Trustee is a foreclosure mill and OneWest continuously processes foreclosures as a part of its business. Northwest Trustee does advertise their trustee sales to the general public, including Plaintiff's real property, without ever warning the public that there has been a dispute involved since shortly after the Notice of Default was served. OneWest directs Northwest Trustee to initiate the advertising of the trustee sales as well as their own REO program without making reference to the possible litigation potential buyers could become involved with as more and more fraudulent documents come to light. The third question of the final four is did the Defendants actively solicit the Plaintiff. The relationship involved does not constitute soliciting the Plaintiff but the greater risk to the public through solicitation for the illegal foreclosure sale of Plaintiff's residence. Finally the Plaintiff and

Defendant have very unequal bargaining ground as Defendants OneWest and Northwest Trustee have violated Plaintiff's civil rights, hid the real parties of interest and refused to comply with all the legal requests and demands Plaintiff has made. Furthermore, due to the nature of WA Deed of Trust Act as there is no judicial oversight, no checks or balances of any type that would cause any of the Defendants or any other party for that matter to stop their attempts to wrongfully and illegally deprive Plaintiff of his REAL PROPERTY RIGHTS. Plaintiff's only recourse is having to bring this lawsuit which Defendants are uniquely situation to have the upper hand in as the affiliated entities involved in a Law Firm that specializes in this area of Law. So, that in the event Plaintiff was unable to adequate retain experienced, qualified counsel, (a seriously difficult task especially considering the financial hardship of many victims who are preyed upon by these "Foreclosure Mills") or educated himself, perform the adequate research, effectively plead his findings, and be lucky enough to not have his case dismissed on a technical issue as so many Pro-Se litigants in the bringing to light of these "Foreclosure Fraud" issues have.

### 3.6.3    Plaintiff alleges that Defendant Northwest Trustee has Violated the WA CPA

**3.6.3.1** <u>Element 1: An Unfair or deceptive act:</u> Defendant Northwest committed violated of the WA CPA when it began its duties as a trustee after having already been a witness and participant of Defendants MERS and OneWest filing misrepresentations to the ownership of the note tied to Plaintiff's Real Property. Northwest Trustee was aware that MERS was not the owner of the Promissory Note and yet caused to be recorded the Assignment of Deed of Trust (Exhibit FAC6) while acting as OneWest's agent. Defendant Northwest Trustee further knew upon the multiple discussions and mailings between itself and Plaintiff that OneWest was not the owner/beneficiary of the promissory note yet continued forward with a non-judicial trustee sale of Plaintiff's real property.

**3.6.3.2** <u>Element 2: In Trade or Commerce:</u> Plaintiff's loan transaction, like that of any homeowner that Northwest Trustee conducts trustee duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*" Defendant

Northwest Trustee is selling their services within Washington State, whether or not the Plaintiff agrees upon utilizing their company as trustee.

**3.6.3.3** Element 3: That Impacts the Public Interest: Defendant Northwest Trustee's action constitute as impacting the public interest as it effects thousands of Washington homeowners and potential real estate buyers and investors. Their unethical conduct continues to cause the lowering of home values throughout the area by forcing depressed sales in the real estate market. Additionally they create huge risk and potential losses for all potential buyers in their trustee auctions as more previous homeowners become aware of the serious issues at hand and fight to regain their rights to the properties that have been sold.

**3.6.3.4** Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted **without review** or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure."*

**3.6.3.5** Which causes injury to the Plaintiff: Defendant Northwest Trustee has caused significant damage to Plaintiff as their actions have severely clouded Plaintiff's title to his real property when it filed documents with false parties, claims and amounts owed for recording in King County. Further if Northwest Trustee concludes its trustee sale then Plaintiff will lose his legitimate rights to the real property in question. All of the claims against Northwest Trustee set within this Complaint are directly tied to the unethical and deceptive business practices referred to in this section. In addition the bringing of this action has taken an overwhelming toll on Plaintiff's time which has further impacted his ability to recover from the financial hardship caused when he lost his employment AT INDYMAC. Further, these additional impacts have cause a dramatic increase in Plaintiff stress which has cause him to lose sleep and become ill which has further caused financial injury as Plaintiff has been unable to work full time as when he isn't tending to his health he is research and attempting to increase his knowledge to that of a competent litigant. Which as previously stated the Defendants have a unique advantage over the Plaintiff with their Affiliated Entity relationship with Routh Crabtree Olsen.

**3.6.3.6** <u>Injury is casually linked to the deceptive act:</u> The injuries specified in 3.6.3.5 above are a direct result to Northwest Trustee's actions.

### 3.6.4    Plaintiff alleges that Defendant OneWest has Violated the WA CPA

**3.6.4.1** <u>Element 1: An unfair or deceptive act:</u> Plaintiff alleges Defendant OneWest violated RCW 19.86 et seq. by participating in and causing Northwest Trustee to initiate a non-judicial foreclosure sale when OneWest knew it did not have ownership of the promissory note yet claimed to have that ownership. Further OneWest committed unfair or deceptive acts by filing or causing to be filed false statements with the King County recording office as described in detail above.

**3.6.4.2** <u>Element 2: In Trade or Commerce:</u> Plaintiff's loan transaction, like that of any homeowner that OneWest professes to be conduct servicing duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*"  OneWest is allegedy performing these servicing duties for another party, which one would reasonably expect Onewest is expecting compensation in the form of a fee, therefore it is selling its services. Although OneWest has insofar failed to produce the servicing agreement to show whom these services are performed on behalf of and what that fee is.

**3.6.4.3** <u>Element 3: That Impacts the Public Interest:</u> Defendant OneWest's actions of making false claims to ownership of properties that were originally lended upon by Indymac Bank effect thousands of citizens in the state of Washington. Their unethical conduct continues to cause the lowering of home values throughout the area by forcing depressed sales in the real estate market. Additionally they create huge risk and potential losses for all potential buyers in their trustee auctions as more previous homeowners become aware of the serious issues at hand and fight to regain their rights to the properties that have been sold.

**3.6.4.4** Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in <u>Cox v. Helenius</u>, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted **without review** or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure."*

**3.6.4.5** <u>Which causes injury to the Plaintiff:</u> Defendant OneWest has caused injury to Plaintiff by filing fraudulent documents with the King County recording office which further clouds Plaintiff's title and reporting on Plaintiff's credit of a foreclosure, which has been executed unlawfully and wrongly. Further OneWest has damaged Plaintiff's credit by making false claims of being a creditor to Plaintiff and refusing to mark the account in dispute as required by the FCRA, FDCPA and RESPA as detailed above. OneWest causes punitive injury to Plaintiff by forcing Plaintiff to continue with this litigation rather than come clean and make sufficient amends without the intervention of the Court.

**3.6.4.6** <u>Injury is casually linked to the deceptive act:</u> Defendants actions are directly related to the injury as described above.

### 3.6.5    Plaintiff alleges that Defendant MERS has Violated the WA CPA

**3.6.5.1** <u>Element 1: An unfair or deceptive act:</u> Plaintiff alleges that Defendant MERS has violated the Washington Consumer Protection Act by assigning ownership to a note it knew it did not own and by assigning beneficiary status to the deed of trust in question to a party it knew not to be the note owner or holder in violation of its own Corporate Resolution (Exhibit FAC12).

**3.6.5.2** <u>Element 2: In Trade or Commerce:</u> Plaintiff's loan transaction, like that of any homeowner that OneWest professes to be conduct servicing duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*"  Defendant MERS claims that it is the nominal beneficiary for the majority of the Deeds of Trusts recorded it each which directly effects the residents of Washington state. It charges a fee to assist lenders to avoid paying their proper fees in assigning and/or selling mortgage loans to the counties located in Washington, therefore it is receiving a fee for its services. The citizens of this state are forced to do business with MERS as the majority of lenders offering financing in the state are now MERS Members. They even go so far now as to pass on the MERS fee on homeowners HUD-1 closing statements so the borrowers are now directly paying for MERS' service.

**3.6.5.3** <u>Element 3: That Impacts the Public Interest:</u> As Washington AG McKenna stated in his letter to trustee (Exhibit FAC17) our state has seen a large number of fraudulently assigned Deeds of

Trust, thereby victimizing countless numbers of Washington residents. As is the case here, if MERS is not stopped from its fraudulent assignments of Deeds of Trust and related foreclosure issues the residents of Washington will continue to be the victims of foreclosure fraud for years to come.

3.6.5.4  Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in <u>Cox v. Helenius</u>, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted __without review__ or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, __the burden is on him__ to seek judicial protection from wrongful foreclosure."*

3.6.5.5  <u>Which causes injury to the Plaintiff:</u> Defendant MERS allowed a false transfer of ownership of Plaintiff's Note and Deed of Trust which directly led to Defendants OneWest and Northwest Trustee to begin their illegal attempt at foreclosing upon Plaintiff's real property. In addition this falsity kept the Plaintiff from learning the identities of the real party of interest, if there even is one, kept him from mediation and caused severe damage to Plaintiff's credit. If Northwest Trustee is allowed to finalize their attempts at this illegal foreclosure, Plaintiff will lose his home. As a direct result of the numerous violations within this Amended Complaint, Plaintiff has had to turn his focus from his life and career to focus on battling the wrongs done against him.

3.6.5.6  <u>Injury is casually linked to the deceptive act:</u> Defendants actions are directly related to the injury as described above.

3.6.6  **PLAINTIFF CLAIMS DAMAGES** against Defendants Northwest Trustee, OneWest and MERS for violations of the WA CPA and alleges all preceding allegations in sections 3.1-3.5 above are also violations of the CPA and therefore claims treble damages as allowed by the WA CPA on all counts and claims above as well as any attorneys fees and expenses Plaintiff incurred in bringing these claims against the Defendants. The exact amount of damages will be determined at trial or in a dispositive motion.

**3.7      Fraud**

**3.7.1**     Plaintiff James McDonald repeats and realleges each and every item and allegation above

as if fully and completely set forth herein.

**3.7.2     Elements, Requirements and Definitions of Pleading Fraud**

**3.7.2.1** Plaintiff understands that a cause of action involving fraud is not to be lightly made. He therefore

began researching the necessary requirements for making such a claim. Plaintiff discovered a

recent ruling by this Court on January 26, 2011 in Thepvongsa v. Regional Trustee Services Corp

*et al.*

> "To survive a motion to dismiss, a complaint must plead allegations of fraud with
>
> particularity. Fed. R. Civ. P. 9(b). The complaint must include an account of the
>
> time, place, and specific content of the false representations as well as the
>
> identities of the parties to the misrepresentations. Schwartz v. KPMG LLP, 476
>
> F.3d 756, 764 (9th Cir. 2007). Rule 9(b) does not allow a plaintiff to lump all
>
> defendants together, but requires plaintiffs to differentiate their allegations and
>
> inform each defendant separately of the allegations surrounding his alleged
>
> participation in the fraud. Id. at 764-65. In Washington, a claim for fraud has the
>
> following elements: (1) representation of an existing fact, (2) materiality, (3)
>
> falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it
>
> should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7)
>
> plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely
>
> upon it, and (9) damages suffered by plaintiff. Stiley v. Block, 130 Wn. 2d 486,
>
> 505 (1996)."

**3.7.2.2 Legal definition of fraud according to Lectlaw:** The term 'fraud' is generally defined in the law

as an intentional misrepresentation of material existing fact made by one person to another with

knowledge of its falsity and for the purpose of inducing the other person to act, and upon which

the other person relies with resulting injury or damage. [Fraud may also include an omission or

intentional failure to state material facts, knowledge of which would be necessary to make other

statements not misleading.] To make a 'misrepresentation' simply means to state as a fact

something which is false or untrue. [To make a material 'omission' is to omit or withhold the statement of a fact, knowledge of which is necessary to make other statements not misleading.]

**3.7.2.3 Legal definition of materiality according to Lectlaw:** That which is important; that which is not merely of form but of substance.

### 3.7.3    Count One: Defendant OneWest and the Notice of Default

**3.7.3.1** Element 1- Representation of an existing fact: A Notice of Default was issued or caused to be issued by OneWest Bank stating that OneWest was both the OWNER and BENEFICIARY in the financial instrument in question. This occurred on January 12, 2010 at the Plaintiff's residence located at 14840 119th PL NE, Kirkland, WA 98034.

**3.7.3.2** Element 2- Materiality: A Notice of Default is the first perquisite in the process of foreclosure under RCW 61.24. If it is not executed properly, legally and ethically everything that follows in the non-judicial foreclosure is based on a lie.

**3.7.3.3** Element 3- Falsity: Two falsities were committed here. On Page 2 Section K it falsely claims the NOTE OWNER is OneWest Bank (Exhibit FAC4). The second falsity is that OneWest claims to be the beneficiary in both the Notice of Default and the accompanying Declaration of Beneficiary. OneWest has already admitted it is NOT the owner of the Note as it claimed in the Declarations of JC San Pedro (Docket #16) and the Declaration of Charles Boyd (Docket #49-4). Further the evidence the Defense relies upon to make its claims shows that OneWest is not entitled to be the beneficiary of the note as shown in the Custodial Agreement (Exhibit FAC3) described above in Section 2.3 of this Amended Complaint.

**3.7.3.4** Element 4- Speakers Knowledge of Its Falsity: As the self-proclaimed servicer of the loan OneWest knew very well that it did not own the promissory note in question. Further as a participant in the Custodial Agreement (Exhibit FAC3) it knew that it had no beneficial rights in the promissory note or the deed of trust securitizing the obligation. Both declarants Charles Boyd and JC San Pedro were able to see in their records that OneWest was not the owner which they admitted under the penalty of perjury.

**3.7.3.5** Element 5- Intent of the Speaker…: Defendant OneWest's intent was and apparently continues to be to hide the true identity of the owner of the Plaintiff's note to keep the Plaintiff ignorant and in an unequal position while OneWest illegally foreclosed on his home.

**3.7.3.6** Element 6- Plaintiff's Ignorance of Its Falsity: At the time the Notice of Default was executed Plaintiff had no idea who owned his promissory note and to this day still does not. Furthermore it was only due to the facts plead above and the flurry of media attention that brought these issues to the Plaintiff's attention.

**3.7.3.7** Element 7- Plaintiff's Reliance on the Truth of the Representation: Plaintiff had no reason at the time of receiving the Notice of Default to believe that OneWest was committing fraud against him.

**3.7.3.8** Element 8- Plaintiff's Right to Rely Upon It: By law, only the beneficiary (note owner) or rightful note holder with the rights of an owner of the note can initiate non-judicial foreclosure proceedings. OneWest is a licensed business and bank governed by the Office of Thrift Supervision so Plaintiff has a reasonable expectation that OneWest would comply with all applicable laws and procedures. Therefore the Plaintiff had every reason to believe that the Notice was honest and true. It was not until a friend of the Plaintiff's brought his own personal experience to Plaintiff's attention that Plaintiff began to suspect OneWest's fraudulent behavior.

**3.7.3.9** Element 9- Damages Suffered By Plaintiff: Plaintiff now has an illegal foreclosure on his credit report, thereby reducing his ability to obtain new credit and eliminating many job opportunities. Further Plaintiff has had to turn his focus away from his life and career in order to fight the fraud done against him by OneWest and their partners which has resulted in a further loss of income in an already struggling economy.

**3.7.4    Count Two: Defendant Northwest Trustee and the Notice of Default**

**3.7.4.1** Element 1- Representation of an existing fact: A Notice of Default was issued or caused to be issued by Northwest Trustee as "agent" for OneWest Bank on January 12, 2010 at the Plaintiff's residence of 14840 119th PL NE, Kirkland, WA 98034.

**3.7.4.2** Element 2- Materiality: A Notice of Default is the first perquisite in the process of foreclosure under the Deed of Trust Act. If it is not executed properly, legally and ethically everything that follows in the non-judicial foreclosure is based on a lie.

**3.7.4.3** Element 3- Falsity: Northwest Trustee, as purported agent for OneWest, prepared a Notice of Default (Exhibit FAC4) falsely claiming that OneWest was the owner of the Plaintiff's note and beneficiary of said note.

**3.7.4.4** Element 4- Speakers Knowledge of Its Falsity: Directly from Northwest Trustee's website they claim, "Each non-judicial file goes through numerous reviews…"[1] Further on their website they state that they are, "Our company is fully integrated with all primary vendor systems." Plaintiff was able to learn that OneWest was not the owner without being integrated with any vendor systems. If Northwest Trustee reviews each file rigorously as they claim, then they knew that OneWest was neither the Note Owner nor the Beneficiary.

**3.7.4.5** Element 5- Intent of the Speaker…: Northwest Trustee's intent was and apparently continues to be to hide the true identity of the owner of the Plaintiff's note to keep the Plaintiff ignorant and in an unequal position while OneWest illegally foreclosed on his home.

**3.7.4.6** Element 6- Plaintiff's Ignorance of Its Falsity: At the time Plaintiff received the Notice of Default Plaintiff had no idea who owned Plaintiff's Note as no party that had purchased the Note at any time ever notified Plaintiff that they had done so as required by TILA. Plaintiff still has no idea who actually is a real party of interest to his Note.

**3.7.4.7** Element 7- Plaintiff's Reliance on the Truth of the Representation: With a company who's, "managers average more than twenty years working on foreclosures and some are nearing thirty years in the states they service" and are bound by federal and state legislation to ethically and legally execute their duties Plaintiff should be able to trust them.

**3.7.4.8** Element 8- Plaintiff's Right to Rely Upon It: A Notice of Default is supposed to be executed by the proper parties so Plaintiff is expected to believe it is true. A Trustee has at a minimum a duty of good faith to Borrower according to the RCW 61.24, further as later discovered NWTS is owned and operated by a licensed Bar attorney who has a code of ethics to abide by.

**3.7.4.9** Element 9- Damages Suffered By Plaintiff: Plaintiff now has a foreclosure listed on his credit report when the foreclosure in question was done fraudulently. As the executor of the Notice of Default Northwest Trustee Services, in addition to its violation of duty of good faith, shares responsibility

---

[1] http://www.northwesttrustee.com/profile.aspx

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

for that. Further, Plaintiff now has a further cloud on his title that is filled with misrepresentations and false claims of rights and ownerships to parties that have no ownership interest. Finally, Plaintiff has had to take time out of his life and career to fight the violations described within this Amended Complaint which are a direct result of the actions of Northwest Trustee as described herein.

### 3.7.5    Count Three: Defendant Northwest Trustee and the Notice of Trustee's Sale

**3.7.5.1** Element 1- Representation of an existing fact: Defendant Northwest Trustee filed, published and recorded a Notice of Trustee's Sale (Exhibit FAC8) for the Plaintiff's real property. This document was recorded in King County Records on February 16, 2010.

**3.7.5.2** Element 2- Materiality: A non-judicial foreclosure sale cannot be completed without a Notice of Trustee's Sale first being filed, served, published and recorded as required by RCW 61.24.030.

**3.7.5.3** Element 3- Falsity: Northwest Trustee falsely stated erroneous amounts in their charges as described in Section 2.8 above in this Amended Complaint. Further they falsely claimed that OneWest was the beneficiary and had the power of sale per the Deed of Trust.

**3.7.5.4** Element 4- Speakers Knowledge of Its Falsity: Per the information and quotes provided in Section 3.7.4 above Northwest Trustee does an extensive file review and therefore would know that OneWest was in fact not the owner of the note nor the beneficiary. Further they assisted OneWest and MERS in creating, filing and recording other falsified documents such as the Assignment of Deed of Trust (Exhibit FAC6) and the Appointment of Successor Trustee (Exhibit FAC7).

**3.7.5.5** Element 5- Intent of the Speaker…: Northwest Trustee's intent was and apparently continues to be to hide the true identity of the owner of the Plaintiff's note to keep the Plaintiff ignorant and in an unequal position while OneWest illegally foreclosed on his home.

**3.7.5.6** Element 6- Plaintiff's Ignorance of Its Falsity: As stated above Plaintiff was and is still unaware of the identity of the actual owner of the promissory note in question or what the true figures are in the alleged default.

**3.7.5.7** Element 7- Plaintiff's Reliance on the Truth of the Representation: With a company who's, "managers average more than twenty years working on foreclosures and some are nearing thirty

years in the states they service" and are bound by federal and state legislation to ethically and legally execute their duties Plaintiff should be able to trust them.

3.7.5.8 Element 8- Plaintiff's Right to Rely Upon It: A Notice of Default is supposed to be executed by the proper parties so Plaintiff is expected to believe it is true. A Trustee has at a minimum a duty of good faith to Borrower according to the RCW 61.24, further as later discovered NWTS is owned and operated by a licensed Bar attorney who has a code of ethics to abide by.

3.7.5.9 Element 9- Damages Suffered By Plaintiff: Plaintiff now has a foreclosure listed on his credit report when the foreclosure in question was done fraudulently. As the executor of the Notice of Trustee Sale, Northwest Trustee Services, in addition to its violation of duty of good faith, shares responsibility for that. Further, Plaintiff now has a further cloud on his title that is filled with misrepresentations and false claims of rights and ownerships to parties that have no ownership interest. Finally, Plaintiff has had to take time out of his life and career to fight the violations described within this Amended Complaint which are a direct result of the actions of Northwest Trustee as described herein.

### 3.7.6    Count Four: Defendant Northwest Trustee and the Amended Notice of Trustee Sale

3.7.6.1 Element 1- Representation of an existing fact: On or about November 4th, 2010 Defendant Northwest Trustee caused to be filed, served, published and recorded an Amended Notice of Trustee Sale (Exhibit FAC9) in King County, Washington and with the King County Recorders Office.

3.7.6.2 Element 2- Materiality: A non-judicial foreclosure sale cannot be completed without a Notice of Trustee's Sale first being filed, served, published and recorded as required by RCW 61.24.030.

3.7.6.3 Element 3- Falsity: Northwest Trustee falsely stated erroneous amounts in their charges as described in Section 2.9 and 2.10 above in this Amended Complaint. Further they falsely claimed that OneWest was the beneficiary and had the power of sale per the Deed of Trust.

3.7.6.4 Element 4- Speakers Knowledge of Its Falsity: As described above Defendant Northwest Trustee Services had an extensive review process on all of their non-judicial foreclosure files. Further, they participated in the filing and recording of false statements and misrepresentations in the Assignment of Deed of Trust (Exhibit FAC6) and the Appointment of Successor Trustee (Exhibit

FAC7). They were included on all disputes and debt validation demands that the Plaintiff made to co-defendants MERS and OneWest. Finally they had just received a letter from Attorney General McKenna reminding them of their legal responsibilities and alerting them to the large number of fraudulent assignments and other foreclosure fraud instances going on in the state (Exhibit FAC17).

**3.7.6.5** Element 5- Intent of the Speaker…: Northwest Trustee's intent was and apparently continues to be to hide the true identity of the owner of the Plaintiff's note to keep the Plaintiff ignorant and in an unequal position while OneWest illegally foreclosed on his home.

**3.7.6.6** Element 6- Plaintiff's Ignorance of Its Falsity: At this point, Plaintiff was distrustful of OneWest and beginning to find the wrongdoings OneWest had conducted, but still thought Northwest Trustee wouldn't blatantly violate the law and commit wholesale fraud against him. Unfortunately that did not prove to be the case.

**3.7.6.7** Element 7- Plaintiff's Reliance on the Truth of the Representation: With a company who's, "managers average more than twenty years working on foreclosures and some are nearing thirty years in the states they service" and are bound by federal and state legislation to ethically and legally execute their duties Plaintiff should be able to trust them.

**3.7.6.8** Element 8- Plaintiff's Right to Rely Upon It: A Notice of Default is supposed to be executed by the proper parties so Plaintiff is expected to believe it is true. A Trustee has at a minimum a duty of good faith to Borrower according to the RCW 61.24, further as later discovered NWTS is owned and operated by a licensed Bar attorney who has a code of ethics to abide by.

**3.7.6.9** Element 9- Damages Suffered By Plaintiff: Plaintiff now has a foreclosure listed on his credit report when the foreclosure in question was done fraudulently. As the executor of the Notice of Trustee Sale, Northwest Trustee Services, in addition to its violation of duty of good faith, shares responsibility for that. Further, Plaintiff now has a further cloud on his title that is filled with misrepresentations and false claims of rights and ownerships to parties that have no ownership interest. Finally, Plaintiff has had to take time out of his life and career to fight the violations described within this Amended Complaint which are a direct result of the actions of Northwest Trustee as described herein.

### 3.7.7   Count Five: Defendant MERS and the Assignment of the Deed of Trust

**3.7.7.1** Element 1- Representation of an existing fact: Defendant MERS transferred beneficial status of

the Deed of Trust, "Together with note or notes therein described or referred to, the money due

and to become due thereon, with interest…" This document was executed on January 27, 2010 in

Austin, Texas and recorded in King County, WA on February 4, 2010.

**3.7.7.2** Element 2- Materiality: A transfer of ownership of the promissory note conveys all powers that an

owner has and makes the receiving party the owner and holder in due course. **Transferring a**

**note's ownership without being the actual owner not only is in violation of the Doctrine of**

**Ultra Vires but also creates a further cloud on title.**

**3.7.7.3** Element 3- Falsity: By MERS own website MERS has no ownership interest or rights in any

promissory Notes and therefore was not the owner of Plaintiff's financial instrument. Further the

assignment of deed of trust is in violation of their own company policy by assigning a document to

a party who is not the beneficiary of the note as shown in MERS Corp Resolution (Exhibit FAC12),

the Custodial Agreement (Exhibit FAC3) and the Communication from DB to Plaintiff (Exhibit

FAC16).

**3.7.7.4** Element 4- Speakers Knowledge of Its Falsity: By MERS own admission on its website and

through their CEO's own testimony in Senate oversight committee hearings it does not have any

ownership rights to any promissory notes. Therefore the Defendant is quite aware that this is false.

**3.7.7.5** Element 5- Intent of the Speaker…: Defendant MERS intended to deceive the Plaintiff into thinking

it had the right to transfer ownership in Plaitiff's Note to enable its affiliated parties to unlawfully

obtain the rights and title to Plaintiff's home through an illegal foreclosure when its partner

OneWest had no rights to the promissory note or the deed of trust.

**3.7.7.6** Element 6- Plaintiff's Ignorance of Its Falsity: Plaintiff had no idea who actually owned the

promissory note at the time this document was executed.

**3.7.7.7** Element 7- Plaintiff's Reliance on the Truth of the Representation: MERS like all of its affiliated

parties made appearances to seem to be a reliable and honest party conducting business in good

faith. It wasn't until the flurry of media attention and unwillingness of the parties to disclose

information as required by several statues including TILA, RESPA, FDCPA, FCRA and WA DOTA

that Plaintiff realized he might be the victim of fraudulent activities.

**3.7.7.8** Element 8- Plaintiff's Right to Rely Upon It: RCW 62A governs the transfer of ownership of

financial and security instruments. As a company that claims to be the nominal beneficiary of a

majority of mortgages closed each year Plaintiff should be able to believe they would follow

applicable laws. Unfortunately as the large amount of cases throughout the country has shown,

Plaintiff and thousands of others were sorely wrong in their belief.

**3.7.7.9** Element 9- Damages Suffered By Plaintiff: Plaintiff now has an illegal foreclosure on his credit

report, thereby reducing his ability to obtain new credit and eliminating many job opportunities.

Further Plaintiff has had to turn his focus away from his life and career in order to fight the fraud

done against him by OneWest and their partners which has resulted in a further loss of income in

an already struggling economy.

### 3.7.8    Count Six: Defendant OneWest and the Appointment of Successor Trustee

**3.7.8.1** Element 1- Representation of an existing fact: Defendant OneWest stated on the Appointment of

Successor Trustee mentioned above that it was the owner and holder of the note. Executed on

January 27, 2010 in Austin, TX and recorded on February 4, 2010 in King County, WA.

**3.7.8.2** Element 2- Materiality: Once recorded, this document grants the appointed trustee all the vested

powers and rights of a trustee per RCW 61.24.010(2).

**3.7.8.3** Element 3- Falsity: OneWest was not and never has been the owner of the Note in question per

the Declaration of JC San Pedro (Docket #16) and the Declaration of Charles Boyd (Docket #49-

4). Further they do not qualify as holder per the evidence the Defense relies upon in the Custodial

Agreement (Exhibit FAC3).

**3.7.8.4** Element 4- Speakers Knowledge of Its Falsity: Both JC San Pedro and Charles Boyd were able to

tell that OneWest was in fact not the owner of the note. Therefore Suchan Murray, another

Assistant Vice President and the individual that signed the document, would be knowledgeable or

have access to such information as well. Further OneWest would be aware of its rights per the

Custodial Agreement it was a part of that would make it ineligible to be a holder (Exhibit FAC3).

**3.7.8.5** Element 5- Intent of the Speaker…: It appears to Plaintiff that OneWest sought to hide the identity of the true owner of the promissory note as it continued to do through the time of the writing of this amended complaint and dodge the necessary requirements of appointing a new trustee. In an effort to complete the unlawful non-judicial trustee sale process thereby depriving Plaintiff of all his rights in his Real Property.

**3.7.8.6** Element 6- Plaintiff's Ignorance of Its Falsity: Plaintiff had received a Notice of Default a few weeks prior to the filing of this document so had no reason at that time to believe it was untrue.

**3.7.8.7** Element 7- Plaintiff's Reliance on the Truth of the Representation: At the time of its filing Plaintiff had no reason to believe Defendant OneWest had falsely claimed to be the owner of the Note as the Plaintiff had no idea ownership of the Note had changed from the original lender Indymac, especially since the servicing statement still showed a company using the name of Indymac as the party Plaintiff was doing business with. In addition Plaintiff had never received any notices that the note owner had changed per RESPA requirements noted above.

**3.7.8.8** Element 8- Plaintiff's Right to Rely Upon It: RCW 61.24.010 states the requirements for the appointment of a successor trustee. OneWest is a licensed business and bank governed by the Office of Thrift Supervision so Plaintiff has a reasonable expectation that OneWest would comply with all applicable laws and procedures. Therefore the Plaintiff had every reason to believe that the Notice was honest and true.

**3.7.8.9** Element 9- Damages Suffered By Plaintiff: Plaintiff now has an illegal foreclosure on his credit report, thereby reducing his ability to obtain new credit and eliminating many job opportunities. Further Plaintiff has had to turn his focus away from his life and career in order to fight the fraud done against him by OneWest and their partners which has resulted in a further loss of income in an already struggling economy.

### 3.7.9 Fraud on the Court

**3.7.9.1** JC San Pedro declared under the penalty of perjury that Freddie Mac is the owner of the note in question. As the Communication from DB to Plaintiff shows (Exhibit FAC16) that is not the case. JC San Pedro also claimed that OneWest is the holder and beneficiary of the Note and Deed of

Trust which the Defense's own evidence proves is not the case as shown in the Custodial

Agreement (Exhibit FAC3).

3.7.9.2  Charles Boyd declared under the penalty of perjury that Freddie Mac is the owner of the note in

question. As the Communication from DB to Plaintiff shows (Exhibit FAC16) that is not the case.

Charles Boyd also claimed that OneWest is the holder and beneficiary of the Note and Deed of

Trust which the Defense's own evidence proves is not the case as shown in the Custodial

Agreement (Exhibit FAC3). Further he claimed that DB is OneWest's custodian when the

aforementioned custodial agreement shows that they are not.

3.7.9.3  **Wherefore** Plaintiff moves the court to file perjury charges against JC San Pedro and Charles

Boyd.

3.7.10  **PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest, Northwest Trustee and

MERS for separately and jointly committing fraud and violations of the Doctrine of Ultra Vires

against Plaintiff as set forth above and treble damages for those violations as an unfair and

deceptive business practice and claims all applicable attorney fees and expenses associated with

making these claims. The amount of damages will be determined at trial or in a dispositive motion

at a later time.

**3.8  Civil Conspiracy**

3.8.1  Plaintiff James McDonald repeats and realleges each and every item and allegation above

as if fully and completely set forth herein.

3.8.2  <u>Elements and Requirements of Civil Conspiracy</u>

3.8.2.1  "A civil conspiracy exists when there is an **agreement by two or more persons** to accomplish an **unlawful**

**purpose** or to accomplish some purpose, not in itself unlawful, by unlawful means.37  A finding that a

conspiracy exists may be based on circumstantial evidence, although the 'circumstances **must be**

**inconsistent with a lawful or honest purpose** and reasonably consistent only with {the} existence of the

conspiracy.'38  While a finding that a conspiracy existed may be based on circumstantial evidence, mere

suspicion is not a sufficient ground upon which to base a finding of conspiracy.39  The evidence at issue

must be construed in the light most favorable to the nonmoving party.40" Herrington v. Hawthorne, CPA,

P.S., 111 Wn.App. 824, 47 P.3d 567 (2002).

3.8.3  **Conspiracy of Defendants Against Plaintiff**

**3.8.3.1** <u>Two or More Parties</u>: Defendants OneWest, Northwest Trustee and MERS conspired together to initiate and execute an unlawful non-judicial foreclosure against Plaintiff.

**3.8.3.2** <u>Unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means</u>: The Purpose of the conspiracy was to conduct a non-judicial foreclosure sale of the Plaintiff's real property.

**3.8.3.3** <u>Unlawful means</u>: Plaintiff alleges that the Defendants jointly filed false documentation and violated state and federal regulations as shown in Section 3.1-3.7 and 3.9 of this Amended Complaint in order to conduct a non-judicial foreclosure on the Plaintiff's real property. Defendant OneWest and Northwest Trustee Services executed false statements of ownership and beneficial status in the Notice of Default (Exhibit FAC4), Notice of Trustee Sale (FAC8) and the Amended Notice of Trustee Sale (FAC9). Defendant OneWest executed false statements of ownership in the Appointment of Successor Trustee which Defendant Northwest Trustee caused to be recorded with King County Records (FAC7). Defendant OneWest and MERS executed an unlawful Assignment of the Note in the Assignment of Deed of Trust (Exhibit FAC6) which both OneWest and MERS knew MERS did not own and OneWest was ineligible to become the holder of. Northwest Trustee caused the document to be recorded in King County.

**3.8.3.4** <u>Inconsistent with a lawful or honest purpose</u>: The three Defendants in question jointly committed and executed **false statements** in documentation and publicly recorded information in order to conduct a non-judicial foreclosure sale of the Plaintiff's real property and to hide the fact that none of them are a real party of interest in the promissory note in question.

    **3.8.4** **PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest, Northwest Trustee and MERS for conspiring against him to illegally seize and sell his real property. The amount of damages and associated expenses of bringing this violation of civil conspiracy to litigation will be determined at trial or in a dispositive motion at a later time.

**3.9**    **Slander of Title**

    **3.9.1**    Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

    **3.9.2**    **Elements of Slander of Title**

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

"The elements of slander of title are: that the words spoken must be false; that they must be maliciously spoken and that they must result in pecuniary loss or injury to the party complaining. They must also be spoken with reference to some pending sale or purchase of property...and it must be such a slander as goes to defeat the plaintiff's title." Brown v. Safeway Stores, 94 Wash.2d 359, 375, 617 P.2d 704 (Wash. 1980).

### 3.9.3    Count 1: Assignment of Deed of Trust

3.9.3.1  <u>Element 1- Words Spoken Must Be False:</u> MERS transferred ownership rights and beneficial status in the Note which it did not own as described above in Section 2.6 above. Further the only appropriate party that MERS could transfer its beneficial interest in the Deed of Trust without it being a nullity would be to the actual owner of the note which again Defendant OneWest has stated they are not in the Declaration of JC San Pedro and the Declaration of Charles Boyd.

3.9.3.2  <u>Element 2- They must be maliciously spoken:</u> MERS knew that it was not the owner of the promissory note as the company has stated numerous times including in testimony of MERS' CEO to the Senate oversight committee's hearings that they have no ownership in any promissory notes. This falsity appears to be an attempt to sneak past the Plaintiff's civil rights described above. "*MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record. See, e.g., Landmark Nat. Bank v. Kesler, 289 Kan. 528, 536, 216 P.3d 158, 164 (2009) (providing a profile of MERS).*"

3.9.3.3  <u>Element 3- Must Result in Pecuniary loss or injury to Plaintiff:</u> The resulting monetary loss is based on the lost investment of the real property in question should the wrongful foreclosure be concluded.

3.9.3.4  <u>Element 4- Some Pending Sale or Purchase of Property:</u> This document was recorded as part of the process of selling the Plaintiff's home at a non-judicial foreclosure sale.

3.9.3.5  <u>Element 5- Defeat Plaintiff's Title:</u> If the Defendant's wrongful foreclosure concluded Plaintiff would lose his rights to title of the real property in question.

### 3.9.4    Count 2: Appointment of Successor Trustee

3.9.4.1  <u>Element 1- Words Spoken Must Be False:</u> Defendant OneWest claimed to be the owner of the promissory note on the Appointment of Successor Trustee which it admitted in the Declaration of

JC San Pedro (Docket #16) and the Declaration of Charles Boyd (Docket #49-4), which they knew they were not. Further they claimed to be the holder of the note which the Custodial Agreement shows they have no beneficial interest in (Exhibit FAC3).

3.9.4.2 Element 2- They must be maliciously spoken: Defendant OneWest knew that it was not the owner of the promissory note and sought to deceive the Plaintiff and any other interested parties.

3.9.4.3 Element 3- Must Result in Pecuniary loss or injury to Plaintiff: The loss of the Plaintiff's home and his investment and improvements in the real property in question would result in a great monetary loss.

3.9.4.4 Element 4- Some Pending Sale or Purchase of Property: This document was recorded as part of the process of selling the Plaintiff's home at a non-judicial foreclosure sale.

3.9.4.5 Element 5- Defeat Plaintiff's Title: If the Defendant's wrongful foreclosure concluded Plaintiff would lose his rights to title of the real property in question.

### 3.9.5    Count 3: Notice of Trustee Sale

3.9.5.1 Element 1- Words Spoken Must Be False: The Notice of Trustee Sale is based on a string of falsities that began with the fraudulent information on the Notice of Default if not earlier. The "Grantors" listed on the Notice of Trustee Sale were OneWest and Northwest Trustee, neither of whom were properly conveyed any rights as stated throughout Section 2 of this Amended Complaint.

3.9.5.2 Element 2- They must be maliciously spoken: It appears to Plaintiff that both Defendants were attempting to defraud Plaintiff by illegally sell the Plaintiff's real property so as to gain the rights to it themselves, and furthermore during  the process it appears they would had been able to collect several fees as described on the Notice of Trustee Sale.

3.9.5.3 Element 3- Must Result in Pecuniary loss or injury to Plaintiff: As Page 3 of the Notice of Trustee Sale states on Page 3, VIII, "The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their right, title and injury in the Property." Therefore the investment and money spent on the property by the Plaintiff will be lost.

3.9.5.4 Element 4- Some Pending Sale or Purchase of Property: This document was recorded as part of the process of selling the Plaintiff's home at a non-judicial Trustee sale.

**3.9.5.5** <u>Element 5- Defeat Plaintiff's Title</u>: If the Defendant's wrongful foreclosure concluded Plaintiff would lose his rights to title of the real property in question.

    **3.9.6**    **Count 4: Amended Notice of Trustee Sale**

**3.9.6.1** <u>Element 1- Words Spoken Must Be False</u>: The Notice of Trustee Sale is based on a string of falsities that began with the fraudulent information on the Notice of Default if not earlier. The "Grantors" listed on the Notice of Trustee Sale were OneWest and Northwest Trustee, neither of whom were properly conveyed any rights as stated throughout Section 2 of this Amended Complaint.

**3.9.6.2** <u>Element 2- They must be maliciously spoken</u>: It appears to Plaintiff that both Defendants were attempting to defraud Plaintiff by illegally sell the Plaintiff's real property so as to gain the rights to it themselves, and furthermore during  the process it appears they would had been able to collect several fees as described on the Notice of Trustee Sale.

**3.9.6.3** <u>Element 3- Must Result in Pecuniary loss or injury to Plaintiff</u>: As Page 3 of the Notice of Trustee Sale states on Page 3, VIII, "The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their right, title and injury in the Property." Therefore the investment and money spent on the property by the Plaintiff will be lost.

**3.9.6.4** <u>Element 4- Some Pending Sale or Purchase of Property</u>: This document was recorded as part of the process of selling the Plaintiff's home at a non-judicial Trustee sale.

**3.9.6.5** <u>Element 5- Defeat Plaintiff's Title</u>: If the Defendant's wrongful foreclosure concluded Plaintiff would lose his rights to title of the real property in question.

    **3.9.7**    **PLAINTIFF CLAIMS DAMAGES** against Defendants OneWest, MERS and Northwest Trustee jointly and separately for the counts of Slander of Title as set forth herein and for all reasonable expenses and attorney fees that resulted in Plaintiffs filing of the Slander of Title. The amount of damages will be determined at trial or in a dispositive motion at a later time.

**3.10**    **Declaratory Relief; Lack of Standing**

    **3.10.1**  Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

**3.10.2**  Plaintiff alleges that Defendant MERS has neither the standing to initiate a non-judicial foreclosure of Plaintiff's real property nor any interest in the promissory note in which to assign interest to Defendant OneWest.

**3.10.3**  Plaintiff alleges Defendant OneWest has no standing to initiate a non-judicial foreclosure. First and foremost Defendant OneWest admitted in the Declaration of JC San Pedro and the Declaration of Charles Boyd it does not own the promissory note which appears to prove Plaintiff's allegations that the Notice of Default and Appointment of Successor Trustee were falsely and unlawfully executed. Further as identified in the Custodial Agreement (Exhibit FAC3) Defendant OneWest has nor has ever had any beneficial status in the Note and thereby cannot be considered the holder. Further Defendant OneWest has failed to provide any documentation between it and the actual owner of the promissory note to even allow OneWest to be given the title "servicer".

**3.10.4**  Defendant Northwest Trustee Services lacks standing to participate or initiate a non-judicial foreclosure against Plaintiff's real property as the Appointment of Successor Trustee was not executed by the beneficiary as required by RCW 61.24.010. Therefore Plaintiff moves the Court to void all documents created, executed or filed by Defendant Northwest and order Plaintiff's title to be quieted.

**3.10.5**  There are significant gaps in the chain of ownership of the beneficial interests in the Deed of Trust and Promissory Note. The original named lender, Indymac, never recorded any assignments or transfers whatsoever. The original beneficiary of the Deed of Trust, MERS, may have transferred the rights of the Deed of Trust but per Carpenter v. Longan that transfer is null as it was not to the party that had ownership of the note. Further no party has come forward or has requested to be joined as required by FCRP 17, therefore Plaintiff believes that any party of interest has been paid in full through selling of the instrument or receiving an insurance payoff.

**3.10.6**  As described above it appears that Defendants OneWest, Northwest Trustee and MERS are attempting to unlawfully collect a debt and enforce a Security Instrument to which they have no rightful authority to enforce, no lawful rights to collect upon, no valid beneficial interest in as described in detail above.

**3.10.7   WHEREFORE** Plaintiff moves the Court to issue and order of Declaratory Judgment deeming all actions described herein by Defendants OneWest, Northwest Trustee and MERS be ordered void.

**3.11    Permanent Injunction**

**3.11.1**  If the defendants OneWest, Northwest Trustee or MERS or any other parties or persons who claim any right without having the Power of Sale as stated in the Deed of Trust (Exhibit FAC1) are permitted to sell the property at a non-judicial foreclosure sale, the rights and interests of Plaintiff in the real property described above will be lost, even though Plaintiff filed this lawsuit.

**3.11.1.1**    That will cause Plaintiff irreparable harm in the loss of the title and associated ownership rights to his real property. In addition, the extensive damage to Plaintiff's financial status and credit standing will further damage his ability to recover from the unlawful action of the Defendants. Thus the Plaintiff will lose greatly by such foreclosure sale.

**3.11.1.2**    Plaintiff's harm is significantly greater than that of the Defendants who appear to have no real interest in Plaintiff's Note. Even if any of the defendants do have rightful authority and interest to collect and/or foreclose on Plaintiff's loan, which all evidence provided by the Defense indicate they do not, the beneficial impact to the Defendants would be minimal at best with the insurance policies and credit risk fees implemented by Freddie Mac to protect against any defaults on loans.

**3.11.1.3**    Furthermore a non-judicial foreclosure sale is very unlikely to produce a reasonable value that will pay off the first and second loans so whoever (if anyone) may have a rightful interest in the note, and therefore may be entitled to foreclose, which if anyone, appears to be a currently unnamed party and not one of the current Defendants, will also suffer losses caused by the foreclosure sale conducted by any of the currently named Defendants.

**3.11.1.4**    In any event, based upon the strong likelihood of Plaintiff's success based upon the merits of this Second Amended Complaint and the previous pleadings and the unwillingness of the Defendants to provide the documentation they claim exists that gives them the rights they purport to have, none of the Defendants are likely to be able to prove entitlement to foreclose given the evidence described throughout the pleadings in this case.

**3.11.1.5**        Public policy is in favor of granting Plaintiff relief. This is supported by rulings by Washington Courts and legislature[2] which have stated the Washington Deed of Trust Act must be construed in favor of the borrower.

   **3.11.2**   Plaintiff James McDonald repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

   **3.11.3**   Plaintiff claims the right of permanent injunction against Indymac Bank, FSB if it cannot prove that it did not sell the note and instead retained ownership of the financial and security instrument as well as provided the Plaintiff with the knowledge he had the right to review closing documents 24 hours before closing.

   **3.11.4**   Plaintiff claims the right of permanent injunction against OneWest for any and all activities related to the Plaintiff's financial and security instruments, in its capacity as Owner/Holder if it cannot prove that it purchased for value the promissory note on or before January 7, 2010 when the Beneficiary Declaration for the Notice of Default was signed. Further Plaintiff claims the right of permanent injunction against OneWest for any and all activities related to Plaintiff's financial and security instruments in its capacity as servicer for Freddie Mac in their position as owner of the promissory note if it cannot prove that Freddie Mac never sold Plaintiff's promissory note.

   **3.11.5**   Plaintiff claims the right of permanent injunction against Northwest Trustee for any and all activities related to the Plaintiff's financial and security instruments, in its capacity as Substitute Trustee granted by the Appointment recorded in King County Records #20100204000503 if it cannot prove that it was properly appointed as Trustee for the Deed of Trust in question at the time the Notice of Default was executed on January 12, 2010.

   **3.11.6**   Plaintiff claims the right of permanent injunction against MERS for any and all activities related to the Plaintiff's financial and security instruments if it cannot prove that it was the owner of the financial instrument (note) on January 27, 2010 when it allegedly transferred ownership rights of the financial instrument to Defendant OneWest.

---

[2] "The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower interests and the lack of judicial oversight in conducting non-judicial foreclosure sales." Udall, __Wn.2d at__, 154 P.3d at 890. See also Amresco Independence Funding, Inc. v. SPS Properties, LLC, 129 Wb. App. 532, 536-537, 119 P.3d 884, 886 (2005) ("Because these statutes' remove many protections borrowers have under a mortgage, lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor").

### IV.     Requests for Relief

**WHEREFORE, Plaintiff having stated his claims for relief, requests relief against Defendants as follows:**

4.1     For Judgment against Defendants on Plaintiff's claims for violations of the Washington State Deed of Trust Act:

4.1.1     For Declaratory Judgment that Defendant Northwest Trustee Services violated RCW 61.24.030(7) and RCW 61.24.040 by failing to "have proof that the beneficiary is the owner of the promissory note…secured by the deed of trust…before the notice of trustee's sale is recorded, transmitted or served"; and

4.1.2     For Declaratory Judgment that Defendants OneWest and MERS authorized and participated in the preparation and recording of documents that falsely indicated that MERS and OneWest was owner of the Note and that OneWest became the legal beneficiary of the deed of trust through the Assignment of Deed of Trust that MERS executed on behalf of OneWest.; and in addition

4.1.3     For Judgment of damages jointly and separately against Defendants Northwest Trustee, OneWest and MERS for the multiple violations of the Washington Deed of Trust Act as described in Section 3.1 of this Amended Complaint and treble damages allowed by the Washington Consumer Protection Act and an award for reasonable attorney fees, court costs and expenses with the amount to be determined at trial or a dispositive motion.

4.2     For Judgment on Plaintiff's claims for violations of Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §2605 et seq. and §2607 et seq. against Defendants OneWest, Northwest Trustee and MERS, jointly and severally, in amounts to be proven at trial or dispositive motions and treble damages allowed under the Washington Consumer Protection Act along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.3     For Judgment against Defendants OneWest and MERS for violations of the Truth In Lending Act (TILA), 15 U.S.C. §1641 et seq, jointly and severally, in amounts to be proven at trial or dispositive motions along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.4     For Judgment against Defendants OneWest and Northwest Trustee on Plaintiff's claims of violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692; jointly and severally, for damages in an amount to be proven at trial or in a dispositive motion and a reasonable award for attorney fees, court costs and expenses incurred while bringing this action.

4.5     For Judgment against Defendant OneWest on Plaintiff's claims of violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 et seq, with damages in amounts to be proven at trial or dispositive motions along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.6     For Judgment against Defendants OneWest, Northwest Trustee and MERS on Plaintiff's claims for violations of the Washington Consumer Protection Act (CPA), RCW 19.86 et al., for damages in the amount to be determined at trial or dispositive motion and trebled, along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.7     For Judgment on Plaintiff's Claims against Defendants OneWest, Northwest Trustee and MERS for Slander of Title against Plaintiff's title to his real property for damages in the amount to be determined at trial or dispositive motion and trebled under RCW 19.86, along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.8     For Judgment against Defendants OneWest, Northwest Trustee and MERS for Plaintiff's claims for fraud against him with damages to be determined and trial or dispositive motion and trebled under RCW 19.86, along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.9     For Judgment against Defendants OneWest, Northwest Trustee and MERS for Plaintiff's claims for civil conspiracy against him for damages in the amount to be determined at trial or dispositive motion and trebled under RCW 19.86, along with reasonable attorney fees, court costs and expenses incurred in bringing this action.

4.10    For Declaratory Judgment on Plaintiff's Claims  re: Lack of Standing to Foreclose. Plaintiff requests a Declaratory Judgment that none of the named Defendants in this action have standing to foreclose or collect upon Plaintiff's note and deed of trust described in this Amended Complaint above.

4.11    For Permanent Injunction in favor of Plaintiff against all Defendants as described in Section 3.11 in this Amended Complaint.

4.12    For such additional relief as the Court deems to be just and fair under the circumstances.

**Dated: May 30, 2011**

**/s/ James McDonald -**
**James McDonald**
**Pro Se**

**Certificate of Service**
        I hereby certify that on the 3rd day of June, 2011 the foregoing was electronically filed with the Clerk of the Court using the ECF system, which sent notification and therefore served the following:
Heidi Buck
Routh Crabtree Olsen
13555 SE 36th ST Suite 300
Bellevue, WA 98006

**/s/ James McDonald    -**
**James McDonald**
**Pro Se**