The Honorable Judge Robert S. Lasnik

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| JAMES MCDONALD,<br><br>        Plaintiff,<br><br>    v.<br><br>ONEWEST BANK, FSB, NORTHWEST TRUSTEE SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., INDYMAC BANK FSB, DOES 1-50,<br><br>        Defendants. | No.  C10-1952 RSL<br><br>**DEFENDANTS ONEWEST, MERS, AND NWTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: June 17, 2011** |

## I.     RELIEF REQUESTED

COME NOW, Defendants OneWest Bank, FSB ("OneWest"), Mortgage Electronic Registration Systems Inc. ("MERS"), and Northwest Trustee Services, Inc. ("NWTS") (collectively "Defendants"), by and through their attorney of record, Heidi E. Buck and Routh Crabtree Olsen, P.S., and oppose Plaintiff's Motion for Leave to File an Amended Complaint on the grounds Plaintiff's proposed amendments are futile.

## II.     BACKGROUND

On or about December 3, 2010, Plaintiff filed his Complaint alleging violations of the Washington Deed of Trust Act, Wrongful Foreclosure, Lack of Standing, and requesting a temporary restraining order and permanent injunction. Dkt.1.

On or about January 25, 2011, the Court entered a Preliminary Injunction. Dkt. 24. The sale has since been cancelled. Declaration of Vonnie McElligott, ¶ 4.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 1 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1       Defendants answered Plaintiff's Complaint on February 11, 2011, and filed a Motion for

2  Summary Judgment as to all of Plaintiff's claims and to dissolve the injunction on March 30,

3  2011. *See* Dkt. 29 and 49. Defendants' Motion for Summary Judgment establishes OneWest's

4  standing to foreclose as the note holder and beneficiary under RCW 61.24.005(2), the Plaintiff's

5  assent to MERS' involvement in the original loan transaction, and NWTS strict compliance with

6  the Washington Deed of Trust Act ("DTA") in carrying out the foreclosure. Dkt. 49.

7  Additionally, Defendants' pending Motion for Summary Judgment demonstrates Plaintiff's

8  default in October 2009, which prompted the foreclosure proceeding against the subject property.

9  Dkt. 49.

10       On or about June 3, 2011, Plaintiff moved the Court for Leave to File an Amended

11  Complaint. Dkt. 67. Plaintiff's proposed Amended Complaint asserts, in addition to his original

12  causes of action, claims under the 1) Fair Debt Collection Practices Act ("FDCPA"), 2) Truth In

13  Lending Act ("TILA"), 3) Real Estate Settlement Procedures Act ("RESPA"), 4) Fair Credit

14  Reporting Act ("FCRA"), 4) Consumer Protection Act ("CPA"), 5) Civil Conspiracy, 6) Fraud,

15  and 7) Slander of Title. Dkt. 68.

16                 **III.**    **ARGUMENT**

17  **A. LEGAL STANDARD FOR GRANTING LEAVE TO AMEND UNDER F.R.C.P. 15.**

18       While Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [[to

19  amend] shall be freely given when justice so requires," courts may deny leave to amend in the

20  presence of several factors, including undue delay, bad faith, prejudice or the futility of the

21  proposed amendment. *Hinton v. Pacific Enterprises,* 5 F.3d 391, 395 (9th Cir. 1993), *cert.*

22  *denied,* 511 U.S. 1083 (1994). Accordingly, despite the liberality in granting leaving to amend,

23  "courts need not accommodate futile amendments." *Newland v. Dalton,* 81 F.3d 904, 907 (9th

24  Cir. 11996)(citing *Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau,* 701

25  F.2d 1276, 1293 (9h Cir. 1983), *cert. denied,* 464 U.S. 822 (1983)). Where granting leave to

26  amend would be futile because it would subject the amendment to a motion to dismiss or a

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   motion for summary judgment, "the court must look to the merits of the challenge to the

2   amendment."[4] *Lazuran v. Kemp,* 142 F.R.D. 466, 468 (W.D. Wash. 1991); *Bowles v. Reade,* 198

3   F.3d 752, 757 (9th Cir. 1999)("Liberality in granting a plaintiff leave to amend is subject to the

4   qualification that the amendment ... is not futile."). *See Forsyth v. Humana, Inc.,* 114 F.3d 1467,

5   1482 (9th Cir. 1997)(Leave to amend denied because amendment was futile); *Newland v. Dalton,*

6   81 F.3d at 907(Leave to amend denied because of futility). Likewise, an amendment should be

7   denied where the amendment would cause prejudice to the non-moving party. *Lockheed Martin*

8   *Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999)(Undue delay, bad faith,

9   prejudice and futility supported court's denial of leave to amend); *Texaco, Inc. v. Ponsoldt,* 939

10  F.2d 794, 798-799 (9th Cir. 1991).

11  **B.  THE COURT MUST DENY PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

12  **BECAUSE HIS PROPOSED AMENDMENTS ARE FUTILE.**

13       **1.  Plaintiff's Proposed Amendments to the Violation of Deed of Trust Act Claim**

14            **are Futile.**

15           As outlined in the Defendants' Motion for Summary Judgment, Defendant OneWest

16  derives its authority to enforce the Plaintiff's Note due to its status as "holder" of the Note. Both

17  the Uniform Commercial Code, as adopted in Washington, and the Washington Deed of Trust

18  Act authorize the "holder" of a Note to enforce it. *See* RCW 62A.3-301 ("Person entitled to

19  enforce an instrument means: (i) the holder of the instrument"); RCW 61.24.2005 ("Beneficiary

20  means the holder of the instrument"). Plaintiff erroneously uses the terms holder, beneficiary,

21  and owner interchangeably.

22           "Holder," with respect to a negotiable instrument, means the "person in possession" and

23  it is undisputed that "OneWest has been in actual possession or in possession through its

24  custodian" of the Plaintiff's Note since March 2009." RCW 62A.1-201(20). Defendants' Motion

25  for Summary Judgment 8.  Thus, by definition, OneWest is the holder of the Plaintiff's Note and,

26  therefore, entitled to enforce it.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

The above cannot be disputed by Plaintiff's proposed amendments. Plaintiff's proposed amendments include a number of allegations that, even if true, are wholly irrelevant to the Defendants' authority to foreclose.

Additionally, Plaintiff's proposed amendments to his violation of the Deed of Trust Act claim are duplicative of theories Plaintiff has already put forth which Defendants have responded to and refuted.

<ol type="a"><li> OneWest Qualifies as a Holder in Due Course under the Federal Holder in Due Course Doctrine.</li></ol>

Plaintiff originally argued that OneWest is not entitled to enforce the note because it is not the owner of the Note. Once OneWest obtained the original note for production at the summary judgment hearing as well as laid out the detailed chain of events that led to OneWest holding the original endorsed in blank Note, Plaintiff now claims OneWest cannot qualify as a holder in due course because OneWest did not take the instrument for value per RCW 62A.3-302. Plaintiff seeks to amend his complaint to reflect this allegation. However, pursuant to the Federal Holder in Due Course Doctrine, OneWest qualifies as a holder.  Defendants hereby incorporate by reference their argument to that effect as contained in their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment. Dkt. 49. Thus, Plaintiff's proposed amendment relating to OneWest's failure to take "for value" is futile.

<ol type="a" start="2"><li> The Custodial Agreement is Between Freddie Mac, OneWest, and Deutsche Bank.</li></ol>

As discussed in Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, the custodial agreement reflects that it is between Freddie Mac, OneWest, and Deutsche Bank and details that Deutsche Bank will hold the subject Note on behalf of Freddie Mac, the note owner, and OneWest, the servicer. Dkt. 49. At any time either Freddie Mac or OneWest may request the custodian deliver the Note. The May 20, 2011, letter Plaintiff received from Deutsche Bank simply shows that in October 2010, OneWest requested the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 4 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

custodian deliver the Note to OneWest.[1] At the time of OneWest's request, OneWest had moved the Court for relief from the automatic stay in Plaintiff's bankruptcy proceeding. The hearing on OneWest's Motion for Relief from Stay was set for hearing on October 1, 2010. Given that it is standard that where there is an objection to a Motion for Relief,[2] counsel would appear with the original note, the request as reflected in the letter makes sense. *See* Case No.10-18496-SJS, Dkt. 22.[3] Given the reasonable inferences from the information that can be drawn from Plaintiff's bankruptcy proceeding, there is nothing in the letter that calls into question OneWest's status as holder. Accordingly, the proposed amendment seeking to incorporate the letter from Deutsche Bank into the Complaint and any claim arising from that is futile.

### c.   The Appointment was Authorized and Proper.

Because OneWest has been the holder of the Note at all times relevant to the foreclosure, the appointment of NWTS by OneWest was authorized and proper. *See* RCW 61.24.010(2).

### d.   NWTS Has Not Violated its Duty of Good Faith.

There is nothing in the Deed of Trust Act to prevent an entity later appointed trustee from acting as the beneficiary's agent in mailing and posting the notice of default. In fact, the DTA contemplates and authorizes the use of agents. *See* RCW 61.24.031(1)(a). Additionally, there is nothing in the DTA that prevents the agent of the beneficiary from later being appointed trustee. *See* RCW 61.24 *et seq*. And, Plaintiff can provide no factual or legal authority for the proposition that NWTS has violated its duty of good faith. In fact, the evidence shows that NWTS acted in good faith.

As discussed in previous filings, NWTS was directed by OneWest to mail and post the Notice of Default. Dkt. 49. At the time of the Notice of Default, OneWest was the holder and beneficiary of the Note. *Id.* Additionally, NWTS voluntarily postponed the trustee's sale to allow

---

[1] Defendants request the Court take judicial notice of Plaintiff's bankruptcy proceeding filed under Petition Number 10-18496-SJS pursuant to FRE 201(b).
[2] Plaintiff had filed an objection to OneWest's Motion for Relief from Stay. *See* Case No. 10-18496-SJS, Dkt. 22.
[3] The hearing on OneWest's Motion for Relief from Stay never took place as Plaintiff's Bankruptcy was dismissed on or about September 29, 2010 for Plaintiff's failure to appear at the Meeting of Creditors. *See* Case No. 10-18496-SJS, Dkt. 29.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 5 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Plaintiff to reinstate or modify his loan and has strictly complied with the Deed of Trust Act.

2   Dkt. 12 and 13. Finally, NWTS' affiliation with Routh Crabtree Olsen is irrelevant to NWTS'

3   duty of good faith owed to the borrower.

4               e.   The declaration received by NWTS from OneWest satisfied RCW

5                    61.24.030(7).

6       Under RCW 61.24.030(7)(a), before the notice of trustee's sale is recorded, transmitted,

7   or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or

8   other obligation secured by the deed of trust. **A declaration by the beneficiary made under the**

9   **penalty of perjury stating that the beneficiary is the actual holder of the promissory note or**

10  **other obligation secured by the deed of trust shall be sufficient proof as required under this**

11  **subsection.** (Emphasis added). The Beneficiary Declaration executed by OneWest and delivered

12  to NWTS satisfied RCW 61.24.030(7)(a) as it states "OneWest Bank, FSB is the actual holder of

13  the promissory note or other obligation evidencing the above-referenced loan or has requisite

14  authority under RCW 62A.3-301 to enforce said obligation." *See* Declaration of Vonnie

15  McElligott, Exhibit 1. Accordingly, the amendment Plaintiff seeks to put forth relating to the

16  beneficiary declaration is futile.

17          **2.   Plaintiff's Proposed Amendments to the CPA Claim are Futile Because the**

18               **CPA Claim is Preempted by the National Bank Act and is Barred by The**

19               **Economic Loss Rule.**

20               a.   The CPA Claim is Preempted by Federal Law.

21      Plaintiff's Consumer Protection Act ("CPA") claim is expressly preempted under the

22  National Bank Act ("NBA"). *See* 12 U.S.C. §1 *et seq.*  The NBA, and associated regulations

23  promulgated by the Office of the Comptroller of the Currency ("OCC"), control the business

24  activities of national banks, including their subsidiaries. *See Watters v. Wachovia Bank, N.A.,*

25  550 U.S. 1 (2007), *Marquette Nat'l Bank v. First of Omaha Service Corp.,* 439 U.S. 299 (1978);

26  *see also* 12 C.F.R. 7.4006.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 6 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    The United States Supreme Court has recognized that it is "[b]eyond genuine dispute"

2 that "state law may not significantly burden a national bank's own exercise of its real estate

3 lending power, just as it may not curtail or hinder a national bank's efficient exercise of any

4 other power, incidental or enumerated under the NBA." *Watters, supra.* at 18.  In turn, the OCC

5 has the "authority to displace contrary state regulations where the Bank Act itself preempts

6 contrary state regulation of national banks." *Wells Fargo Bank, N.A. v. Boutris*, 419 F.3d 949

7 (9th Cir. 2005); *see also Fidelity Fed. and Sav. Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982).

8    OCC regulations in 12 C.F.R. §34.1 *et seq.* also provide that state laws which impair a

9 national bank's ability to exercise its real estate lending powers are expressly preempted.  12

10 C.F.R. 34.4(a) states:

> [e]xcept where made applicable by Federal law, state laws that obstruct, impair, or
> condition a national bank's ability to fully exercise its Federally authorized real estate
> lending powers do not apply to national banks. Specifically, a national bank may make
> real estate loans... without regard to state law limitations concerning:
> [...]
> (9) Disclosure and advertising, including laws requiring specific statements, information,
> or other content to be included in credit application forms, credit solicitations, billing
> statements, credit contracts, or other credit-related documents;
> (10) *Processing, origination, servicing, sale or purchase of, or investment or
> participation in, mortgages*;....  [Emphasis added.]

The State Supreme Court has recognized that a claim against a federal bank that seeks to dictate

"how or when" the bank chooses to take action "is preempted." *McCurry v. Chevy Chase Bank,

FSB*, 169 Wn.2d 96 (2010).

    Here, because Plaintiff's CPA claim is preempted by controlling federal law, it is futile.

        b.   The CPA Claim is Barred by the Economic Loss Rule.

    The economic loss rule prohibits plaintiffs from recovering in tort economic losses where

their entitlement flows only from contract because "tort law is not intended to compensate parties

for losses suffered as a result of a breach of duties assumed only by agreement." *Alejandre v.

Bull*, 159 Wn.2d 674, 681-82, 153 P.3d 864 (2007). The economic-loss rule prevents a party to a

contract from obtaining through a tort claim benefits that were not part of the bargain. *Id.* at 683.

"When parties' difficulties arise directly from a contractual relationship, the resulting litigation

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    concerning those difficulties is one in contract no matter what words the plaintiff may wish to

2    use in describing it." *Id.* at 683. The economic-loss rule maintains the "fundamental boundaries

3    of tort and contract law." *Id.* at 682, citing *Berschauer/Phillips,* 124 Wn.2d at 826.

4          In short, the purpose of the economic loss rule is to bar recovery for alleged breach of tort

5    duties where a contractual relationship exists between the parties and the losses are economic in

6    nature. If the economic loss rule applies, a party will be held to the contractual remedies,

7    regardless of how the plaintiff characterizes the claims. *Id.* at 684.

8          The economic-loss rule applies to CPA claims, because a CPA claim sounds in tort, not

9    contract. *Cf. Stuart v. Coldwell Banker Commercial Group, Inc.,* 109 Wn.2d 406, 421, 745 P.2d

10   1284 (1987). The purpose of tort law is to "protect society's interests in freedom from harm, with

11   the goal of restoring the plaintiff to the position he or she was in prior to the defendant's harmful

12   conduct, while contract law is concerned with performance of promises, with the goal of placing

13   the plaintiff where he or she would be if the defendant had performed as promised." *Alejandre,*

14   159 Wn.2d at 682. The CPA is designed to protect the public from unfair, deceptive, and

15   fraudulent acts and to foster fair and honest competition. RCW 19.86.920. Thus, a CPA claim

16   sounds in tort because it is designed to "protect society's interests in freedom from harm" that

17   could arise from unfair business practices. Thus, the economic loss rule applies.

18         Here, the only damages sought are economic and stem from the contract that governs the

19   relationship between Plaintiff and Defendants. Thus, Plaintiff has asserted a claim against

20   Defendants upon which no relief may be granted. Because it would be futile, the Court should

21   deny Plaintiff's proposed amendments to assert a CPA claim.

22         **3.  Plaintiff's Fraud Claim is Futile.**

23              a.   Plaintiff's Fraud Claim is Prohibited by the Economic Loss Rule.

24         Plaintiff makes allegations of fraud as to OneWest, MERS, and NWTS relating to

25   allegations that language in the Notice of Default, Notice of Trustee's Sale, Assignment and

26   Appointment made false statements as to the ownership of Plaintiff's note. *See Am. Complaint,*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 8 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

¶¶ 3.7.2.1-3.7.8.9. Plaintiffs also allege the declarations of JC San Pedro and Charles Boyle to be fraudulent as they state Freddie Mac owns the loan. *See* Am. Complaint, ¶¶ 3.7.9.1- 3.7.9.3.

Where the "fraud" alleged occurred specifically in the course of performing the contract, it is a breach of standards of behavior articulated in the contract and therefore economic damages sought via tort are inappropriate under the economic loss rule. *Alejandre v. Bull*, 159 Wn.2d 674, 681-82, 153 P.3d 864 (2007); *Carlile v. Harbour Homes, Inc.* 147 Wash. App 193, 194 P.3d 280, (Wash.App.Div. 1, 2008); and *Cox v. O'Brien*, 206 P.3d 682 Wash.App.Div.2, 2009).

Because the Notice of Default, Notice of Sale, Assignment and Appointment were all done within the course of Defendants exercising their rights under the terms of the loan contract, Plaintiff's fraud claim is barred by the economic loss rule.

### b.   Plaintiff cannot prove the required elements of a fraud claim.

Additionally, Plaintiff's Fraud claim is futile because he will not be able to prove the required elements of a Fraud claim as to any of the Defendants.[4] The Notice of Default and Appointment make reference to ownership. However, Plaintiff cannot show that such a reference (even if inaccurate) is material. The law in Washington is that the holder, even if not the owner, is entitled to enforce the obligation. Accordingly, the representations made in the Notice of Default and Appointment that OneWest is the beneficiary are consistent with the evidence and relevant to the authority to enforce the Note. Similarly, Plaintiff cannot show any intent to defraud on behalf of NWTS or any other Defendant as it relates to any notice of document executed or recorded in conjunction with the underlying foreclosure. And, Plaintiff cannot show any damage suffered by Plaintiff as a result of any representation made in any notice or document referenced by Plaintiff's proposed amendments. It is undisputed that Plaintiff has defaulted under the terms of the Note and Deed of Trust. The predicament Plaintiff faces is a

---

[4] To prevail on fraud claim, Plaintiff must The nine elements of an intentional misrepresentation, or fraud claim, are (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and (9) damages suffered by the plaintiff. *W. Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 48 P.3d 997 (2002).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 9 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    direct result of Plaintiff's default under the loan not any hyper technical error Plaintiff is able to

2    glean from dissecting the documents.

3            Plaintiff also suggests that NWTS' corporate structure constitutes fraud or some ethical

4    violation. Am. Complaint, ¶ 3.7.4.8. Plaintiff's speculative assertion would not survive a motion

5    to dismiss or motion for summary judgment.

6            Accordingly, Plaintiff's claim for fraud will not prevail and is therefore futile.

7        **4.  Plaintiff's RESPA Claim as to OneWest and MERS is Futile.**

8            12 U.S.C. § 2605 pertains to the servicing of mortgage loans and administration of

9    escrow accounts. Subsection (e) requires a loan servicer to respond to borrower inquires,

10   including a "Qualified Written Request" ("QWR").  A *valid* QWR must be acknowledged within

11   5 days, and responded to within 30 days. *See* 12 U.S.C. § 2605(e).

12           Plaintiff alleges Defendant OneWest violated 12 U.S.C. 2605(e)(C)(2)(C)(1) by refusing

13   to provide the requested information regarding Plaintiff's loan or providing a reason for the

14   inability the information was unavailable other than it was "burdensome" and that Defendants

15   MERS and OneWest violated 12 U.S.C. 2605 by failing to respond to Plaintiff's QWR. Am.

16   Complaint, ¶ 3.2.2. Yet, by Plaintiff's own admission he admits OneWest responded to

17   Plaintiff's QWR. *See* Am. Complaint, ¶ 2.11.

18           As MERS was never a loan servicer on the loan, it had no obligation to respond to

19   Plaintiff's QWR. Additionally, because Plaintiff admits OneWest responded to the QWR, such a

20   claim for failure to respond must fail. Accordingly, this claim is futile and should not be

21   permitted.

22       **5.  Plaintiff's RESPA Claim as to NWTS is Futile Because No RESPA Provision**

23            **Applies to NWTS and the Alleged Conduct Does Not Fall Within the Purview**

24            **of 12 U.S.C. § 2607.**

25           Plaintiff alleges Defendant NWTS violated 12 U.S.C. 2607(b) by charging a sale fee in

26   the Amended Notice of Sale and 12 U.S.C. 2607(c)(4) by failing to provide written disclosure to

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 10 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Plaintiff of their affiliated business entity relationship with Routh Crabtree Olsen. P.S. Am.

2   Complaint, ¶ 3.2.7.

3       12 U.S.C. § 2607 relates to the prohibition against kickbacks and unearned fees

4   associated with real estate settlement services at the time of loan origination. Thus, not only is no

5   RESPA provision applicable to a trustee in a foreclosure proceeding the conduct Plaintiff alleges

6   violates RESPA does not fall within the purview of 12 U.S.C. § 2607 as it is not related to loan

7   origination. Accordingly, the claim is futile and should not be allowed.

8       **6.  Plaintiff's TILA Claim is Futile Because it is Time-Barred.**

9       TILA requires that claims for damages be brought "within one year from the date of the

10  occurrence of the violation," unless the claim is asserted "as a matter of defense by recoupment

11  or set-off." *See* 15 U.S.C. §1640(e).

12  15 U.S.C. §1641(g)(1) states:
    In addition to other disclosures required by this subchapter, not later than 30 days
13  after the date on which a mortgage loan is sold or otherwise transferred or
    assigned to a third party, the creditor that is the new owner or assignee of the debt
14  shall notify the borrower in writing of such transfer, including--
    (A) the identity, address, telephone number of the new creditor;
15  (B) the date of transfer;
    (C) how to reach an agent or party having authority to act on behalf of the new
16  creditor;
    (D) the location of the place where transfer of ownership of the debt is recorded;
17  and
    (E) any other relevant information regarding the new creditor.
18
    Plaintiff alleges Defendant OneWest violated 15 U.S.C. 1641 by failing to provide the
19
    name, address, and telephone number of the owner of the promissory note or master servicer as
20
    requested by Plaintiff's QWR. Am. Complaint, ¶ 3.3.2. Furthermore, Plaintiff alleges Defendants
21
    OneWest and MERS failed to comply with 15 U.S.C. 1641(g)(1) when MERS transferred its
22
    beneficiary interest in the Deed of Trust. Am. Complaint, ¶ 3.3.3.
23
        First, a QWR is not pursuant to TILA.[5]
24

25
    _____
26  [5] A QWR is pursuant to 12 U.S.C. § 2605. For a valid QWR, a borrower's inquiry "must include a statement of the
    reasons for the belief of the borrower ... that the account is in error or provide sufficient detail to the servicer
    regarding other information sought by the borrower." *Gates v. Wachovia Mortgage, FSB*, 2010 WL 2606511 (E.D.
    Cal. 2010), *citing* 12 U.S.C. § 2605(e)(1)(B)(ii).  The term "servicing" refers to "receiving any scheduled periodic

    DEFENDANTS' OPPOSITION TO PLAINTIFF'S
    MOTION FOR LEAVE TO FILE AMENDED
    COMPLAINT - PAGE 11 OF 19
    CASE NO. C10-1952 RSL

1    Second, Plaintiff's TILA claim is time-barred. By Plaintiff's own admission, he "served

2    upon the defendants on April 27, 2010" a Qualified Written Request, Dispute of Debt and Debt

3    Validation Demand. Am. Complaint, ¶ 2.11. At the time of Plaintiff's request, a *valid* QWR must

4    have been acknowledged within 5 days, and responded to within 30 days. *See* 12 U.S.C. §

5    2605(e).[6] Assuming for the sake of argument that Plaintiff's QWR was valid and that Defendants

6    did not respond to Plaintiff's QWR (which is not the case, *see supra*), the non-response violation

7    occurred on May 27, 2010. The Assignment from MERS to OneWest was executed January 27,

8    2010, and recorded February 4, 2010. Plaintiff's Amended Complaint is dated May 30, 2011.

9    Thus, the claim under TILA is time barred as it was brought more than one year after the alleged

10   non-response violation and more than one year after the Assignment was executed and recorded.

11   Third, even if the claim was not time-barred, the Assignment from MERS to OneWest

12   did not transfer or assign ownership of the note so as to trigger the requirements of 15 U.S.C.

13   §1641. Freddie Mac was and has remained the investor and owner of the loan. OneWest was and

14   has remained the holder of the note.

15   **7. Plaintiff's FDCPA Claim is Futile Because the FDCPA Does Not Apply to**

16       **Defendants.**

17   Plaintiff alleges Defendants OneWest and NWTS are debt collectors for purposes of the

18   FDCPA and claims Defendants violated the FDCPA by contacting Plaintiff on the subject loan.

19   *See* Am. Complaint, ¶¶ 3.4.1-3.4.6.

20       a.   OneWest, MERS, and NWTS Are Not Debt Collectors under the FDCPA.

21   The FDCPA creates guidelines under which debt collectors may conduct business. *See*

22   15 U.S.C. 1692. The FDCPA's stated purpose is "to eliminate abusive debt collection practices

23   by debt collectors, to insure that those debt collectors who refrain from using abusive debt

24   collection practices are not competitively disadvantaged, and to promote consistent State action

25   

26   payments from a borrower pursuant to the terms of any loan." *Id.*, *citing* 12 U.S.C. § 2605(i)(3). Courts typically
     require a QWR to relate to servicing, and not creation or modification, of a loan. *Id.*
     [6] Pursuant to the Dodd Frank Act, a valid QWR must be acknowledged within 5 days and responded to in 20 days. .

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  to protect consumers against debt collection abuses." *See* 15 U.S.C. 1692(a)(6), 15 U.S.C.

2  1692(e).

3        To establish a prima facie case for violation of the FDCPA, the plaintiff must prove by a

4  preponderance of the evidence the following four elements: 1) the plaintiff is any natural person

5  who is harmed by violations of the FDCPA, or is a "consumer" (15 U.S.C.A. § 1692a(3)) when

6  the cause of action is for a violation of 15 U.S.C.A. § 1692c (communication in connection with

7  debt collection) or 15 U.S.C.A. § 1692e(11) (requiring the debt collector provide the consumer

8  with the "mini-Miranda" warning); 2) the "debt" arises out of a transaction entered primarily for

9  personal, family, or household purposes; 15 U.S.C.A. § 1692a(5); 3) the defendant collecting the

10  debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and 4) the defendant

11  violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A. § 1692a-1692o. 15

12  U.S.C.A. § 1692k.

13        In order for the FDCPA to apply, the individual or entity must be a "debt collector" under

14  the statute's definition. *See* 15 U.S.C. 1692(a).[7] The term "debt collector" does not include "any

15  officer or employee of a creditor while, in the name of the creditor, collecting debts for such

16  creditor." 15 U.S.C, § 1692(a)(6)(A); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208

17  (5th Cir., 1985) ("The legislative history of section 1692(a)(6) indicates conclusively that a debt

18  collector does not include the consumer's creditors, a mortgage servicing company, or an

19  assignee of a debt, as long as the debt was not in default at the time it was assigned"). *Stewart v.*

20  *Mortgage Elec. Registration Sys., Inc.*, CV. 09-688-PK, 2010 WL 1054384 (D. Or. Feb. 18,

21  2010) *report and recommendation adopted,* CIV. 09-688-PK, 2010 WL 1054697 (D. Or. Mar.

22  19, 2010).

23
24
25
26

---

[7] Under 15 U.S.C. 1692(a): "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 13 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Most federal courts have held that provisions of the FDCPA to be *inapplicable* to the

2    enforcement of security interests, such as in the context of a non-judicial home foreclosure.[8] *See*

3    *Roman v. Nw. Tr. Services, Inc.*, C10-5585BHS, 2010 WL 5146593 *3 (W.D. Wash. Dec. 13,

4    2010); *see also Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002);

5    *see also Jordan v. Kent Recovery Services*, 731 F. Supp. 652, 657-58 (D.Del.1990).

6    Consequently, case law recognizes that carrying out a nonjudicial foreclosure is not "debt

7    collection" under the FDCPA because the actions merely involve foreclosing on the property

8    pursuant to a deed of trust. *See Roman v. Nw. Tr. Services, Inc.*, at *3 (W.D. Wash. Dec. 13,

9    2010) (citing *Hulse v. Ocwen Federal Bank, supra.* at 1204).

10        b.   Enforcement of Plaintiff's Loan Through Nonjudicial Foreclosure is Not Debt

11              Collection.

12    Foreclosing a deed of trust is not enforcing an obligation to pay money; the foreclosure is

13    an action to enforce a security interest in property. Foreclosing on a trust deed is distinct from the

14    collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts

15    occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an

16    entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the

17    lender is foreclosing its interest in the property. *Hulse v. Ocwen Federal Bank*, FSB, 195 F.

18    Supp. 2d 1188, 1204 ( D. Or. 2002). *See also Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp

19    2d 716 (*D. W. VA. 1998*) (holding that because "the trustees were not collecting on the debt at

20    the time, but merely foreclosing on the property pursuant to the deed of trust, these activities do

21    not fall within the terms of the FDCPA"), *aff'd,* 173 F. 3d 850 (4th Cir. 1999); and, *Oldroyd v.*

22    *Associates Consumer Discount Co.*, 863 F. Supp. 237 (E.D. Pa. 1994) (holding that a mortgage

23    company is not a "debt collector' under FDCPA; and *Williams v. Trott*, 822 F. Supp 1266, 1269

24    (D. Mich., 1993).

25

26

---

[8] With the exception of 15 U.S.C. 1692(f)(6) and 15 U.S.C. 1692(i)(a), pertaining to non-relevant rules.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 14 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Here, the complained of conduct by Defendants relates exclusively to Defendants'

2   enforcement of a security interest in real property through a nonjudicial foreclosure.

3   Accordingly, for the purposes of the FDCPA, Defendants are not debt collectors and are not

4   subject to a FDCPA violation claim. Thus, Plaintiff's proposed amendment is futile.

5       c.   Use of the FDCPA "Debt Collector" disclaimer is not conclusive to a

6       determination that an entity is a debt collector.

7   Courts have held that where a foreclosing party, as a cautionary device, includes the

8   FDCPA disclaimers in their foreclosure communications, the use of the disclaimer does not

9   make them a debt collector if they would otherwise not fall within the purview of the statute.

10   *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP,* 2007 WL 2695795 (D. Minn. 2007); *see also*

11   *Obi v. Chase Home Fin., LLC,* 10 C 5747, 2011 WL 529481 (N.D. Ill. Feb. 8, 2011) *(citing*

12   *Gburek v. Litton Loan Serv. LP,* 614 F.3d 380, 386 at n. 3 (7th Cir.2010) (a letter bearing a

13   disclaimer identifying it as an attempt to collect a debt "does not automatically trigger the

14   protections of the FDCPA")); *see also Siwulec v. Chase Home Fin., LLC,* CIV.A. 10-1875, 2010

15   WL 5071353 (D.N.J. Dec. 7, 2010) ("debt collector" and "FDCPA" language used in the written

16   notice is not dispositive of Chase's status as a debt collector for Plaintiff's loan. The mere use of

17   "debt collection" language does not make a party a proper defendant under the FDCPA since the

18   Act specifically defines "debt collector" to include persons or entities whose "principal purpose"

19   is the collection of debts or who regularly collects debts due or owed another); *and see Nwoke v.*

20   *Countrywide Home Loans, Inc.,* 251 Fed.Appx. 363, 365 (7th Cir.2007) (Countrywide's

21   statement that it was a debt collector "has nothing to do with whether Countrywide is a 'debt

22   collector' for purposes of the FDCPA.").

23   In *Chomilo,* after discussing the foreclosing party's dilemma of either including the

24   disclaimer as a cautionary measure or leaving it out thereby risking potential liability, the court

25   noted that they would not penalize the foreclosing party for having to make a Hobson's choice in

26

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 15 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    this unsettled area of law. Furthermore, the court stated that it was reasonable for the foreclosing

2    party to err on the side of caution by including the disclaimer in their communications. *Id.*

3            In this case, and as it does in all notices sent in conjunction with nonjudicial foreclosure

4    proceedings, NWTS and OneWest included the disclaimer as a cautionary measure. The

5    inclusion, however, of the disclaimer does not convert NWTS or OneWest into a debt collector

6    when they otherwise would not be such.

7        **8.  Plaintiffs Claim Under FCRA is Futile Because Plaintiff has no Private Right**

8            **of Action Under the FRCA.**

9            Plaintiff alleges OneWest furnished information to one or more credit reporting agencies

10   that was inaccurate or incomplete when Plaintiff had disputed the debt and the foreclosure in

11   alleged violation of 15 U.S.C. 1681s-2(a),(1),(2),and (3).

12           The FCRA was passed to impose certain requirements on consumer reporting agencies.

13   15 U.S.C. §1681(b). A consumer reporting agency under the FCRA is defined as follows:

14   "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly

15   engages in whole or in part in the practice of assembling or evaluating consumer credit

16   information or other information on consumers for the purpose of furnishing consumer reports to

17   third parties, and which uses any means or facility of interstate commerce for the purpose of

18   preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f)."

19           OneWest is not a consumer reporting agency that performs services described in Section

20   1681a(f). OneWest is the servicer and beneficiary under Plaintiff's loan which reports delinquent

21   accounts to collection agencies. Such a designation may make OneWest a "furnisher" of

22   information to consumer reporting agencies under the FCRA. *Gorman v. Wolpoff & Abramson*

23   *LLP.* 552 F.3d 1008, 1013 (9th Cir. 2009).

24           Congress intended the FCRA to protect consumers through enforcement by government

25   bodies - it did not intend that furnishers of credit information be "exposed to suit by any and

26

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 16 OF 19
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  every consumer dissatisfied with the credit information furnished." *Nelson v. Chase Manhattan*

2  *Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir 2002).

3      The FCRA provides a private right of action for a consumer against a person who

4  willfully or negligently fails to comply with the requirements of the act. *See* 15 U.S.C. §1681n

5  (willful violation); 15 U.S.C. §1681o (negligent violation). However, a consumer's right to bring

6  a private action is limited by the statute. *Nelson, supra,* at 1059.

7      15 U.S.C. §1681s-2(c) and 15 U.S.C. §1681s-2(d) provide the enforcement mechanism

8  for violations of 15 U.S.C. §1681s(2)(a), the sections plaintiff has alleged OneWest violated.

9  Am. Complaint, ¶ 3.5.2. Subsection (2)(c) provides that private rights of action under Sections

10  1681n and 1681o "do not apply to any failure to comply with subsection (a) of this section,

11  except as provided in section 1681s(c)(1)(B) of this title." Similarly, subsection (2)(d) provides

12  that subsection (a) "shall be enforced *exclusively* under section 1681 of this title by the Federal

13  agencies and officials and the State officials identified in that section." 15 U.S.C. § 1681 s-2(d)

14  (emphasis added). The Ninth Circuit held this language excludes private actions under Section

15  1681s-(2)(a). *Nelson, supra,* at 1059.

16      Plaintiff has brought a private action specifically prohibited under 15 U.S.C. §1681s-2(c)

17  and 15 U.S.C. §1681s-2(d). Even if Plaintiff could demonstrate OneWest violated 15 U.S.C.

18  §1681s-2(a)(1),(2), or (3), the ability to bring a cause of action rests with state and federal

19  authorities. Plaintiff cannot bring this action under the FCRA. Accordingly, the claim fails as a

20  matter of law and is therefore futile.

21      **9.  Plaintiff's Civil Conspiracy Claim is Futile Because it is Subject to Dismissal**

22          **Under a 12(b)(6) Motion to Dismiss.**

23      To establish a civil conspiracy in Washington, a plaintiff must prove by clear, cogent and

24  convincing evidence that: (1) two or more people combined to accomplish an unlawful purpose,

25  or combined to accomplish a lawful purpose by unlawful means, and (2) the conspirators entered

26  into an agreement to accomplish the object of the conspiracy. Mere suspicion or commonality of

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 17 OF 19
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    interests is insufficient to prove a conspiracy. *All Star Gas, Inc., of Washington v. Bechard,* 100

2    Wn. App. 732, 740, 998 P.2d 367 (2000). "[When] the facts and circumstances relied upon to

3    establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful

4    undertaking, they are insufficient." *Lewis Pac. Dairyment's Ass'n v. Turner,* 50 Wn.2d 762, 314

5    P.2d 625 (1957)). The conspirators must have entered an agreement to accomplish the object of

6    the conspiracy. *Leadbetter v. Comcast Cable Commc'ns., Inc.,* No. C05-0892RSM, 2005 U.S.

7    Dist. Lexis 45365, *14-15 (W.D. Wash. Apr. 22, 2005) (dismissing plaintiffs civil conspiracy

8    claim for failing to properly plead agreement).

9          Plaintiff alleges Defendants OneWest, MERS, and NWTS conspired together to initiate

10   and execute an unlawful non-judicial foreclosure against Plaintiff and jointly filed false

11   documents in carrying out the nonjudicial foreclosure. *See* Am. Complaint, ¶¶ 3.8.3.1 – 3.8.3.4.

12         Following Plaintiff's default, Defendants were authorized to initiate the foreclosure

13   proceeding pursuant to the terms of the Note and Deed of Trust. Accordingly, Plaintiff cannot

14   show any unlawful purpose. Plaintiff's accusations of civil conspiracy are unfounded, no more

15   than suspicion, and would not survive a motion to dismiss. Accordingly, the claim is futile.

16        **10. Plaintiff's Proposed Amendments to the Slander of Title Claim are Futile**

17          **Because it is Subject to Dismissal Under a 12(b)(6) Motion to Dismiss.**

18         To prevail on a claim for  slander of title, the plaintiff must establish, by a preponderance

19   of the evidence, that 1) statements concerning the plaintiff's title were false, 2) the statements

20   were published maliciously, 3) the statements were spoken with reference to some pending sale

21   or related transaction concerning the plaintiff's property, 4) the plaintiff has suffered pecuniary

22   loss or injury as a result of the false statements, and 5) the statements were of the nature to defeat

23   plaintiff's title. *Lee v. Maggard,* 197 Wn. 380 (1938). The element of falsity is established by

24   recording a document known to contain false declarations. *Rogvig v. Douglas,* 123 Wn.2d 854

25   (1994). The element of "malice" is established by false statements that are not made in good

26   faith or otherwise based on a reasonable belief in the veracity of the statements. *Id.*

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Plaintiff's slander of title claim incorporates the Assignment, Appointment, Notice of Default, and Notice of Sale. Notwithstanding Defendants' position that none of these documents contained any material falsities, Plaintiff cannot show any malice. Accordingly, the claim is subject to dismissal under F.R.C.P. 12(b)(6), and is therefore futile.

### IV.   CONCLUSION

Granting leave to amend in this case would be improper. The claims asserted by Plaintiff in the proposed amended complaint would be futile, as the claims are barred by the economic loss rule, time-barred, inapplicable to Defendants, or subject to a motion to dismiss for failure to state a claim or motion for summary judgment. Therefore, Plaintiff's Motion for Leave to Amend should be denied.

DATED this 13th day of June, 2011.

ROUTH CRABTREE OLSEN, P.S.

/s/ Heidi E. Buck
Heidi E. Buck, WSBA No. 41769
Of Attorneys for Defendant Northwest
Trustee Services, Inc.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT - PAGE 19 OF 19
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131