

Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

VIA FIRST CLASS MAIL

January 14, 2005

Anthony J. Sylvester
Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Madeline L. Houston
Houston & Totaro
56 Broad Street, Suite 1
Bloomfield, N.J. 07003

Subject:      Wells Fargo Bank, Minnesota, N.A. v. Alberta Harris, et al.
Docket No. ESX-L-4676-02

and

Bank One National Association v. Feinstein
Docket No. F-11450-00

Dear Mr. Sylvester and Ms. Houston:

This letter is in response to your letter dated December 13, 2004, seeking the views of the Office of the Comptroller of the Currency ("OCC") concerning preemption of certain state laws in connection with claims and defenses asserted by the parties in the above-named cases. You requested the OCC's views at the direction of the Honorable Kenneth S. Levy, J.S.C., presiding judge in this litigation. For the reasons stated below, based on the facts presented in the materials provided to us, we believe that neither 12 C.F.R. § 34.4 nor the National Bank Act preempts application of the state laws at issue here to loans simply because they were purchased and held by national banks acting as trustees in connection with issuance of the mortgage-backed securities involved in this case.

**Background**

According to the materials provided with the December 13th letter addressed to me, Delta Funding made a mortgage loan to Alberta Harris in December 1999 (Wells Fargo Complaint,

First Count ¶1), and subsequently assigned the mortgage to Wells Fargo "as Trustee for Delta Funding Home Equity Loan Trust 2000-1" (Wells Fargo Complaint, First Count ¶4).  Delta Funding made a mortgage loan to Dequilla Robinson in November 1999 (Bank One Statement of Material Facts Not in Dispute ¶3), and subsequently assigned the mortgage to Bank One National Association "as Trustee in Trust for the Registered Holders of Delta Funding Home Equity Loan Asset-Backed Certificates Series 1999-3" (Certification of Harold L. Kofman, Esq. ¶¶1, 3).  There is no indication that either Wells Fargo or Bank One made the original mortgage loans to Alberta Harris or Dequilla Robinson, nor does any party assert that Wells Fargo or Bank One has any other interest in these transactions except as trustees for investors in the mortgage-backed securities.

As trustee acting on behalf of the investors in Home Equity Loan Trust 2000-1, Wells Fargo filed suit against Ms. Harris alleging that she had defaulted on the loan made by Delta and sought to foreclose on the real estate she had pledged as collateral for that loan (Wells Fargo Complaint, First Count ¶¶1-14).  As trustee acting on behalf of the investors in Delta Asset-Backed Certificates Series 1999-3, Bank One filed suit against Jack Feinstein, as Administrator *Ad Prosequendum* for the estate of Ms. Robinson, seeking to foreclose on the real estate she had pledged as collateral for the loan made by Delta (Memorandum of Law in Support of Plaintiff Bank One National Association's Motion for Summary Judgment at 3-4).  Ms. Harris and Mr. Feinstein ("Defendants"), through counsel, opposed the foreclosure actions.  They alleged in counterclaims against the Banks (and third-party claims against Delta and others) defenses based upon alleged violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56.8-2, which, among other things, proscribes unconscionable practices in real estate transactions. N.J.S.A. 56.8-2.  *See* Defendant's Brief in Opposition to Plaintiff Wells Fargo's Motion for Partial Summary Judgment at 3; Defendant's Brief in Opposition to Plaintiff Bank One's Motion for Summary Judgment at 4.  Asserting that federal law authorizing national banks to make and purchase real estate loans preempted the Defendants' state law defenses under the CFA, Wells Fargo and Bank One, as trustees acting on behalf of the investors, sought partial summary judgment on the cross-claims.

**Discussion**

Pursuant to 12 U.S.C. § 371, national banks may "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to * * * such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order."  The OCC's real estate lending regulations provide that, "[e]xcept where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks."  12 C.F.R. § 34.4(a).

The Banks assert that application of the CFA is preempted because it would interfere with their power as national banks to purchase loans as authorized under 12 U.S.C. § 371, and that holding them liable for violations of the CFA as loan purchasers would be contrary to 12 C.F.R. § 34.4(a), which preempts state laws that interfere with national bank real estate lending authority.

Section 34.4(a)(10) states that national banks "may **make** real estate loans under 12 U.S.C. § 371 without regard to state law limitations concerning * * * [p]rocessing, origination, servicing, **sale or purchase of**, or investment or participation in, mortgages." 12 C.F.R.§ 34.4(a)(10) (emphasis added). However, in no sense, under the facts presented, can the Banks be viewed as *making* a real estate loan under 12 U.S.C. § 371 and 12 C.F.R. § 34.4. The Banks did not originate the loans. They did not fund the loans at inception. Nor did they "purchase" the loans as part of any real estate lending program comprehended by the regulation. Here, the Banks act as trustees for the benefit of investors in the trusts. The substance of the transaction is that the investors, not the Banks, are purchasing the loans that have been made by Delta. The investors own the beneficial interest in the loans held by the Banks as trustees. And the effect of any liability for violation of the CFA ultimately falls on the investors. Nowhere do the Banks allege that they themselves, as opposed to the trusts they represent, are exposed to liability for any violation of the CFA. For all these reasons, 12 U.S.C. § 371 and 12 C.F.R. § 34.4(a) simply do not apply to the transactions by which the Banks acquired legal title to the loans in the circumstances at issue here.

With respect to the activities of Wells Fargo and Bank One as trustees, the banks derive their power to act as trustees from 12 U.S.C. § 92a. When state law conflicts with national banks exercising powers granted to them by federal law, the Supremacy Clause of the United States Constitution requires that the state law yield to the paramount authority of federal law, with the result that application of the state law to national banks is preempted. The Supreme Court has explained this principle stating that it interprets "grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 32 (1996).

As the Supreme Court demonstrated in its review of preemption cases in the *Barnett* case, Supremacy Clause principles animating conflict preemption have been expressed in a wide variety of phrases that do not yield materially different meanings, including "stand as an obstacle to," "impair the efficiency of," "significantly interfere," "interfere," "infringe," and "hamper." *See Barnett*, 517 U.S. at 33. Thus, if application of the CFA to the loans held by the Banks as trustee were to obstruct, impair, condition, or otherwise interfere with the Banks' exercise of fiduciary powers granted to them under federal law, the state statute would be preempted.

Based on the facts presented, we do not believe that to be the case. The Banks have not claimed that application of the CFA would impair their ability to act as trustee in these circumstances or that the state law otherwise interferes with the performance of their legal obligations as trustee. Nor could they claim that having to respond to state law defenses to recovery on assets held in trust obstructs or impairs their power to act as trustee absent some indication that the state law infringes their authority, conditions their actions, or imposes a burden in a way prohibited by federal law. In short, the Banks' authority to act as trustees under federal law does not insulate the assets the Banks hold in trust for the benefit of investors from state law requirements otherwise applicable to those assets.

We trust that the foregoing is responsive to your request.

Sincerely,

**/s/ Daniel P. Stipano**

Daniel P. Stipano
Acting Chief Counsel

Cc:   Hon. Kenneth S. Levy, J.S.C.
      212 Washington Street
      The Wilentz Justice Complex
      General Equity, 8th Floor
      Newark, New Jersey 07102