1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
JAMES MCDONALD,                             )          No. C10-1952RSL
                                                              )
                                Plaintiff,              )
                                                              )
            v.                                               )          ORDER GRANTING IN PART
                                                              )          PLAINTIFF'S MOTION TO AMEND
ONEWEST BANK, FSB, *et al.*,             )          COMPLAINT
                                                              )
                                Defendants.          )
_____)

        This matter comes before the Court on plaintiff's "Motion for Leave to File

Amended Complaint."  Dkt. # 67.  Plaintiff seeks to add five causes of action and supplement

the factual allegations offered in support of his claims.  Defendants oppose the amendment on

futility grounds.  Having reviewed the memoranda, declaration, and exhibits submitted by the

parties,[1] the Court finds as follows:

        This action was filed on December 3, 2010, asserting numerous causes of action

arising from defendants' attempts to foreclose on plaintiff's property.  Defendants answered in

_____

        [1] Plaintiff's objection to defendants' overlength response memorandum are overruled.  Dkt. # 79
at 1.  Plaintiff's proposed amended complaint is almost fifty pages long, exceeds the limits imposed by
CR 10(e)(1), and asserts eleven separate claims, almost all of which have subparts.  The Court finds that
the additional pages were necessary to address the relevant issues.  Defendants are, however, warned
that prior permission to file an overlength memorandum is generally required and that excess pages may
be ignored in the future.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

February 2011 and filed a motion for summary judgment on March 30, 2011.  The motion for summary judgment has not been fully briefed because the hearing date was continued to allow plaintiff an opportunity to conduct discovery.  The case, including discovery, was subsequently stayed for five months while the parties engaged in settlement negotiations.  A briefing schedule for the motion for summary judgment has yet to be established.

Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  There is a "strong policy in favor of allowing amendment" after "considering four factors:  bad faith, undue delay, prejudice to the opposing party, and the futility of amendment."  Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).[2]  The underlying purpose of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).  However, if the proposed amendment would be futile (i.e., it would be immediately subject to dismissal if challenged under Rule 12(b)(6)), there is no reason to put defendants through the unnecessary expense and delay of responding to the amendment.  Nordyke v. King, 644 F.3d 776, 787 n.12 (9th Cir. 2011).  Defendants argue that all of plaintiff's proposed claims and amendments are futile.

**A.  Washington Deed of Trust Act ("DTA") Claim**

Defendants rely on the arguments raised in their summary judgment motion to argue that plaintiff's proposed amendments to his existing DTA claim would be futile.  The futility of this claim is not apparent from the complaint, however.  The Court declines to resolve the dispositive challenges until plaintiff has had an opportunity to conduct discovery and respond to defendants' motion.

**B.  Washington Consumer Protection Act ("CPA") Claim**

Defendants argue that the proposed CPA claim is preempted by the National Bank

---

[2]  The Ninth Circuit also takes into consideration whether plaintiff has previously amended the complaint.  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).  Plaintiff has not yet amended his complaint.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT            -2-

Act ("NBA"), 12 U.S.C. §§ 1, *et seq*., and foreclosed by the economic loss doctrine.  Defendants have not, however, identified which, if any, of them are national banks for purposes of the NBA. Nor have defendants engaged in the multi-step analysis necessary to determine whether a particular claim under state law is preempted.[3]  Defendants' argument is too superficial:  the CPA is not preempted simply because plaintiff has asserted claims regarding a mortgage.

With regards to their economic loss rule argument, defendants have not identified the contract that supposedly bars plaintiff's CPA claim or the parties to the alleged contract.  Nor do they acknowledge that plaintiff's CPA claim arises out of defendants' alleged breach of obligations imposed by the DTA and/or their alleged unfair and deceptive practices related to foreclosures, not out of a breach of contract.  Whether the economic loss rule applies to such losses is doubtful.  See Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc., 170 Wn.2d 442, 449 (2010) (the economic loss doctrine does not apply if an injury traces back to a breach of a tort duty arising independently of the terms of the contract).

### C. Fraud Claim

Plaintiff seeks to add allegations regarding intentional misrepresentations in the documents used to initiate foreclosure proceedings and in the declarations provided to the Court in this litigation.  Defendants argue that plaintiff's fraud claim is barred by the economic loss doctrine and that he will not be able to prove all the elements of his claim.  The duties allegedly violated arguably arise independently of the promissory note that underlies the foreclosure.  The Court therefore declines to apply the economic loss doctrine on the current record.  Whether

---

[3]  When determining preemption under the NBA, the Court first evaluates the object of the state law to determine whether its purpose is to regulate the relationship between national banks and borrowers.  If it is, the law is automatically preempted under § 34.4(a).  If, on the other hand, the law is one of general applicability, the Court must determine whether the law "only incidentally affect[s] the exercise of national banks' real estate lending powers."  12 C.F.R. § 34.4(b).  Laws of general applicability, such as the CPA, are not preempted unless plaintiff's use of the law will significantly impact the bank's lending powers.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT                  -3-

plaintiff will be able to prove his fraud claim at trial is not the issue in the context of a motion to amend.  Plaintiff has stated a claim of fraud that, given the mortgage crises and robo-signing headlines facing the nation, is at least plausible.

### D.  Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*

RESPA requires lenders and loan servicers to timely respond to Qualified Written Requests ("QWRs") from borrowers.  Within 5 days of receipt of a QWR from a borrower, a lender or servicer must provide written acknowledgment.  12 U.S.C. § 2605(e)(1)(A).[4]  Within 30 days after receiving a QWR, the servicer must provide the borrower with a written response that includes the information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer.  12 U.S.C. § 2605(e)(2)(C). Plaintiff alleges that defendant Mortgage Electronic Registration Systems ("MERS") failed to respond to a QWR and that defendant OneWest Bank, FSB, failed to provide an adequate response and reported derogatory information to credit bureaus in violation of § 2605(e)(3).  In addition, plaintiff alleges that defendant Northwest Trustee Services ("NWTS") violated § 2607(b) (by charging fees for which no services were provided and misstating amounts due and payable) and § 2607(4) (by failing to disclose an affiliated business relationship).

MERS argues that it is not a loan servicer and therefore had no obligation to respond to a QWR.  MERS is identified as the beneficiary of the Deed of Trust, and the Court declines to determine the legal implications of MERS' role in the context of this motion to amend.  Defendant OneWest argues that plaintiff's RESPA claim against it is barred by his admission that OneWest sent a letter in response to his QWR.  Plaintiff has alleged that the response he received was inadequate, however, and OneWest has not identified authority that would support the proposition that any response, no matter how cursory and uninformative,

---

[4]  The Dodd Frank Act, Pub. L. 111-203, Title XIV, § 1400(c) and § 1463(b) (July 21, 2010), shortened the time periods in which the lender had to respond.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT             -4-

shields a loan servicer from RESPA liability.  The statute suggests otherwise:  the servicer is required to provide the information requested or an explanation of why it could not be obtained. Whether OneWest's response is adequate given the circumstances of this case will have to be determined as an issue of fact.  OneWest did not address plaintiff's claim under § 2605(e)(3) regarding the provision of information to a consumer reporting agency within the 60-day protected period.

Plaintiff's RESPA claims against NWTS are futile, however.  Section 2607 regulates conduct and services provided as part of "a real estate settlement service."  See 12 U.S.C. § 2607(a) and (b).  A "real estate settlement service" includes the many services provided in connection with settling the original real estate loan, such as the loan application process, title searches, document preparation, property surveys, credit reports, inspections, underwriting and funding of the loans, and the closing.  See 12 U.S.C. § 2602(3).  NWTS' conduct occurred long after closing and is not, therefore, regulated under § 2607 of RESPA.

## E.  Truth in Lending Act, 15 U.S.C. § 1641, *et seq.*

Plaintiff alleges that MERS and OneWest violated 15 U.S.C. § 1641(g)(1) when MERS purportedly transferred its beneficial interest in plaintiff's loan to OneWest on or about January 27, 2010, and failed to give written notice of the transfer and information regarding the new creditor to the borrower.  The notification obligation imposed by § 1641(g)(1) falls on the "new owner or assignee of the debt," not on the transferor.  Thus, to the extent a violation occurred in relation to the January 27, 2010, transfer, only OneWest could be responsible for the lack of notification.

Defendants argue that this claim is untimely because it had to be filed "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  The alleged violation occurred on or about February 26, 2010, when the 30-day notice period expired without OneWest having furnished the required notice.  See Squires v. BAC Home Loan

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT                    -5-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Servicing, L.P., 2011 WL 5966948 at *2 (S.D. Ala. Nov. 29, 2011).  Plaintiff apparently concedes that an attempt to assert this claim for the first time in 2012 would be time-barred, but argues that the claim was set forth in his original complaint, filed on December 3, 2010, albeit without a specific statutory citation.  Plaintiff does not provide a pinpoint cite to the allegations on which he relies, however, and the Court has been unable to find in the original complaint any allegations that would support a claim that OneWest violated § 1641(g)(1) of TILA or that would have put OneWest on notice that such a claim was being asserted.  Plaintiff's TILA claim regarding the January 27, 2010, transfer is therefore futile.

Plaintiff also alleges that OneWest violated § 1641(f)(2) when it failed to respond to plaintiff's written request seeking the name, address, and telephone number of the owner of plaintiff's debt.  Plaintiff alleges that he sent a written request for information regarding the owner of his loans on April 27, 2010.  Any violation related to this request would have occurred on or about May 27, 2010.  Defendants argue that this part of plaintiff's TILA claim is also barred by the one year statute of limitations.  Although this is a closer case, the Court again agrees with defendants.  One of the underlying themes of plaintiff's original complaint was that OneWest's identification of Freddie Mac as the owner of plaintiff's loan may not have been accurate in that it did not address the possibility that the debt instrument had been securitized.  Part of the relief sought in the complaint was to compel OneWest to make a full disclosure regarding ownership of the note.  These allegations and requests were more in the nature of an inquiry, however, and were offered in support of plaintiff's Deed of Trust Act and injunctive claims, not a TILA claim.  Fed. R. Civ. P. 8(a) requires "a short and plain statement of the claim."  Even if the original complaint is construed liberally in the light most favorable to plaintiff, it did not provide OneWest fair notice that plaintiff was asserting a violation of § 1641(f)(2).  Because that claim was first set forth in a motion to amend filed in June 2011, it is untimely.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT          -6-

**F.  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692,** *et seq.*

Plaintiff alleges that NWTS and OneWest acted as "debt collectors" as that term is defined in the FDCPA and failed to comply with the requirements of the statute.[5]  Defendants point out that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."  15 U.S.C. § 1692a(6)(A). Although defendants cite this exclusion as support for the proposition that the FDCPA does not apply to entities who are attempting to enforce a security interest in real property, the exclusion is clearly not that broad and defendants have not attempted to show that one or all of them is a creditor or an officer or employee of a creditor.

Without citing any particular statutory provision, defendants argue that the process of foreclosing on a deed of trust does not involve an attempt to collect on the underlying debt. Rather, the argument goes, the creditor has given up hope of recouping its money and is instead taking possession of the collateral in which it has a secured interest.  Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. §1692a(5).  The debt, then, is an obligation "to pay money."  A "debt collector" means:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .  For the purpose of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

---

[5]  Plaintiff relies in large part on the fact that defendants identified themselves as debt collectors in various notices and correspondence.  Such disclaimers do not create "debt collector" status if it does not exist under the statute.

15 U.S.C. § 1692a(6).  Because plaintiff has not alleged that defendants were attempting to compel monetary payments on the underlying loans, defendants do not fall within the first part of the definition of "debt collector."  They may, however, be debt collectors "for purposes of § 1692f(6)" if their principal business is the enforcement of security interests.[6]  Section 1692f(6) prohibits a debt collector from taking or threatening to take "non-judicial action to effect dispossession or disablement of property if -- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6) (emphasis added).  Under plaintiff's theory of the case, NWTS and OneWest had no present right to possession of the property through non-judicial foreclosure because neither they nor their principals were the holders of the underlying debt instrument.  Thus, if plaintiff is able to prove the underlying DTA violation, he may also be able to show that NWTS and OneWest are debt collectors under the second part of the definition

_____

[6] The current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only § 1692f(6) of the FDCPA applies.  See, e.g., Jara v. Aurora Loan Servs., LLC, 2011 WL 6217308, at * 5 (N.D. Cal. Dec. 14, 2011); Pizan v. HSBC Bank USA, N.A., 2011 WL 2531104, at *3 (W.D. Wash. June 23, 2011); Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 WL 1938166, at *11-12 (D. Or. May 20, 2011); Armacost v. HSBC Bank USA, 2011 WL 825151, at * 5-6 (D. Idaho Feb. 9, 2011); Long v. Nat'l Default Servicing Corp., 2010 WL 3199933 at *4 (D. Nev. Aug. 11, 2010).  See also Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (relying on the two-part definition of "debt collector" to find that, if a party falls only within the security interest provisions of the definition, then they "are subject only to this provision [§ 1692f(6)] and not the rest of the FDCPA.'").  While this analysis has not been universally accepted (see, e.g., Gillespie v. Countrywide Bank FSB, 2011 WL 3652603, at *2 (D. Nev. Aug. 19, 2011) (stating without analysis that "activities undertaken in connection with a nonjudicial foreclosure do not constitute debt collection under the FDCPA") and Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (noting that plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings commenced," such that actions "surrounding foreclosure proceeding were attempts to collect that debt" under the FDCPA)), the Court finds it persuasive based on both the language of the statute and its policy implications.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT          -8-

provided by § 1692a(6) and that they violated § 1692f(6)(A).  In the absence of any allegations that NWTS or OneWest engaged in conduct beyond that necessary to effectuate a nonjudicial foreclosure, they are not "debt collectors" for any purpose other than  § 1692f(6) and are not subject to the other requirements or prohibitions of the FDCPA.

### G.  Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

Plaintiff alleges that he notified defendant OneWest of a dispute regarding the validity of the foreclosure process and that OneWest nevertheless failed to correct the information it had provided to third-party credit reporting agencies, in violation of § 1681s-2(b) of FCRA.[7]  The duties imposed on furnishers of information by § 1681s-2(b) are triggered by "notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency."  The notice described in § 1681i(a)(2) comes from the third-party credit reporting agency, not from the consumer.  Plaintiff has not alleged that he disputed the foreclosure with a credit reporting agency and/or that the credit reporting agency provided notice of the dispute to OneWest.  The only allegation is that plaintiff notified OneWest of the dispute.  Such notification would not trigger the duties imposed by § 1681s-2(b), and plaintiff will be unable to establish a violation of the statute.

### H.  Conspiracy

Plaintiff alleges that defendants MERS, OneWest, and NWTS conspired together to effectuate a nonjudicial foreclosure of plaintiff's property through the use of invalid assignments and false statements of ownership.  The gist of plaintiff's complaint is that defendants jointly and knowingly agreed to cut corners (*i.e.*, to use unlawful means) to create a veneer of compliance with the requirements of the DTA.  Defendants argue that such an

---

[7]  For purposes of this analysis, the Court accepts plaintiff's representation that the citation in the proposed amended complaint to various provisions of § 1681s-2(a) should have been to § 1681s-2(b).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT          -9-

inference of joint action is purely speculative, but recent events and disclosures regarding mortgage industry practices suggest a level of plausibility that is, unfortunately, rather high.  If plaintiff is able to prove his claims, defendants may be liable for civil conspiracy.

## I.  Slander of Title

Plaintiff's original complaint asserted a claim of slander of title.  Defendants have moved for summary judgment on this claim.  Because its futility is not apparent from the complaint, and the Court declines to resolve the dispositive challenges until plaintiff has had an opportunity to conduct discovery and respond to defendants' motion.

For all of the foregoing reasons, plaintiff's motion to amend (Dkt. # 67) is GRANTED in part and DENIED in part.  The Clerk of Court is directed to accept Dkt. # 68 for filing.  Plaintiff may not, however, pursue his RESPA claims against NWTS, his TILA claims, his FDCPA claim other than for violations of § 1692f(6)(A), or his FCRA claim.

Dated this 21st day of February, 2012.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO AMEND COMPLAINT                    -10-