**The Honorable Robert S Lasnik**

JAMES MCDONALD
14840 119th PL NE
Kirkland, WA 98034
Phone (425) 210-0614
In Pro Per

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

In Re:                                              )      NO.: C10-1952RSL
                                                    )
                                                    )
JAMES MCDONALD                                      )
              Plaintiff                             )
      v                                             )   Plaintiff's Motion for Partial
ONEWEST BANK, FSB, *et al.*,                        )   Summary Judgment
              Defendants                            )
                                                    )   Noting Date: March 30, 2012
-----------------------------------------------------

## I.     Introduction

**COMES NOW Plaintiff, James McDonald, and files this Motion for Partial Summary Judgment against Defendants OneWest Bank (OWB), Northwest Trustee Services (NWTS) and Mortgage Electronic Registration Systems (MERS), separately and jointly as allowed under FCRP 56.** In filing this Motion for Partial Summary Judgment under FCRP 56, Plaintiff in no way waives or dismisses any of his other claims filed in the First Amended Complaint.

FCRP 56(a) "A party may move for summary judgment, identifying each claim or defense – **or the part of each claim or defense** – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The facts of the case show that OWB is not the holder, owner or beneficiary of the Note. They show that Defendant MERS was never the owner, holder or beneficiary of the Note. They show that Defendant NWTS was never appropriately appointed Successor Trustee. These statements of fact are supported not only by the evidence and discovery that Plaintiff relies on but are backed up by the evidence the Defendants have tried to utilize to support their position. It is the Plaintiff's view that these facts are indisputable.

## II.    Statement of Facts

Motion for Partial Summary Judgment           -1-                      James McDonald
                                                            14840 119th PL NE, Kirkland, WA 98034
                                                                   Phone: (425) 210-0614

**2.1** Definition of Terms

**2.1.1 Beneficiary:** "'Beneficiary' means the holder of the instrument or document evidencing the obligations secured by the Deed of Trust, excluding persons holding the same as security for a different obligation." RCW 61.24.005

**2.1.1.1 Beneficiary:** One who benefits from act of another. A party **who will <u>benefit</u> from a transfer of property or other arrangement**. (*Blacks Law Dictionary*, 6th Ed., West 2009)

**2.1.2** **Holder:** "The holder took the instrument (i) **for value**, (ii) in good faith, (iii) without notice that **the instrument is overdue** or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in RCW 62A.3-306, and (vi) without notice that any party has a defense or claim of recoupment described in RCW 62A.3-305(a)." RCW 62A.3-302(a)(1)

**2.1.3** **Owner:** "The term "owner" is used to indicate a person in whom one or more interests are vested for his own benefit. The person in whom the interests are vested has "title" to the interests whether he holds them for his own benefit or for the benefit of another. Thus the term "title", unlike "ownership", is a colorless word; to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as a trustee." (*Blacks Law Dictionary*, 6th Ed., West 2009)

**2.1.4** **Mortgage Backed Security (MBS):** "Mortgage-backed securities are debt obligations that represent claims to the cash flows from pools of mortgage loans, most commonly on residential property. Mortgage loans are purchased from banks, mortgage companies, and other originators and then assembled into pools by a governmental, quasi-governmental, or private equity." http://www.sec.gov/answers/mortgagesecurities.htm. These MBS are sold as a **Real Estate Investment Trust** (REIT) and are governed by a Trust Agreement. http://www.investopedia.com/terms/r/reit.asp#axzz1laNHeySK.

**2.1.5** **Benefit:** Advantage; profit; fruit; privilege; **interest.** (*Blacks Law Dictionary*, 6th Ed., West 2009)

**2.2** MERS is not nor has ever been the owner or holder of the Note or the legal beneficiary.

**2.2.1** "MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record*." See, e.g., Landmark Nat. Bank v. Kesler, 289 Kan. 528, 536, 216 P.3d 158, 164 (2009) (providing a profile of MERS).*

**2.2.2** In the Attorney General of Washington's Amicus Brief in Bain v. Metropolitan Mortgage Group et al, the AG quite clearly supports Plaintiff's position in answering the Federal Court's question if MERS is a "lawful" beneficiary under Washington's DOTA.

'This question is immediately answered by the plain language of the Deed of Trust Act – a "beneficiary" is defined as the "holder" of the promissory note. RCW 61.24.005(2). Thus, if MERS never "held the promissory note" then it is not a lawful beneficiary. The DTA unambiguously defines "beneficiary" as: "Beneficiary

means the holder of the instrument or document evidencing the obligations secured by the deed of trust." *Id.* The "instrument" obviously means the promissory note because the only other document in the transaction is the deed of trust and it would be absurd to read this definition as saying that "beneficiary means the holder of the deed of trust secured by the deed of trust."'

**2.3** OWB is not nor has ever been the owner of the Note

  **2.3.1** The Note was originally payable to Indymac Bank FSB who then sold the Note to Freddie Mac or received a guarantee from Freddie Mac and sold the Note to an unknown party. Subsequently, Freddie Mac or another party then sold the note as part of a Mortgage Backed Security (MBS) under the pool number IN070227 on or about February 27, 2007 (Exhibit 1).

  **2.3.2** The Declaration of JC San Pedro (Exhibit 2) provided by the Defense states that OneWest is not the owner of the Note.

  **2.3.3** The Declaration of Charles Boyd (Exhibit 3) provided by the Defense states that OneWest is not the owner of the Note.

**2.4** OWB is not nor has ever been the Beneficiary of the Note

  **2.4.1** The Custodial Agreement (Exhibit 4) between Freddie Mac, OWB and Deutsche Bank National Trust Company (DBNTC) states, "The Seller/Servicer shall hold in trust and for the sole benefit of Freddie Mac all notes released to it." While Freddie Mac is no longer the legal owner or holder of the Note as discussed in §2.6 below, it is undisputable that OneWest is not nor has ever been the legal beneficiary of the Note. According to Black's Law, the beneficiary would "benefit from a transfer or property." The Custodial Agreement clearly states that would not be the case.

2.5   OWB is not nor has ever been the Holder of the Note

  **2.5.1** OWB admits in the Declarations of JC San Pedro (Exhibit 2) and Charles Boyd (Exhibit 3) that it is not the owner of the Note. Therefore it never took the note "for value" as required by RCW 62A.3-302(a)(1).

  **2.5.2** As shown in 2.4 OWB has no beneficial interest in the Note. Under Washington Law beneficiary is synonymous with "holder". RCW  61.24.005(2)

  **2.5.3** In the Request for Admissions (Exhibit 5) served upon OWB through its counsel, the Defendant admitted it does not have the authority to modify the terms of the Note or the Deed of Trust through a principal reduction or renegotiation of the rate without prior approval from a third party.

**2.6** Freddie Mac sells Notes it purchases into MBS/Trusts

  **2.6.1** Per Freddie Mac's Website (Exhibit 6), their standard business practice is to purchase and resell promissory notes into a MBS. "In our Single-Family business, we use mortgage securitization to fund millions of home loans every year. Securitization is a process by which

we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in global capital markets, and recycle the proceeds back to lenders."

**2.6.2** The written communication from Deutsche Bank National Trust Company (DBNTC) (Exhibit 1) dated May 20, 2011 states, "Please also note that DBNTC acted as the Custodian for several **trusts, of which these loans were a part of**…". On page 3 of the document it identifies the trust (MBS) the loan is a part of as IN070227.

2.7   On January 27, 2010 Brian Burnett, listed as the Assistant Vice President of MERS, executed an Assignment of Deed of Trust (Exhibit 7) in relationship to Plaintiff's Note, allegedly transferring the Deed of Trust and the Note to OWB. In previous pleadings the Defense advised that Mr. Burnett was not in fact an employee of MERS, but was rather an employee of OWB that had signing authority for MERS. However, the Defendants provided the Plaintiff with a Corporate Resolution from MERS (Exhibit 8) that does not identify Brian Burnett as an individual with signing authority for MERS.

### III. Arguments

**3.1   Violations of the Deed of Trust Act (RCW 61.24)**

3.1.1   Defendant OWB violated the Doctrine of Ultra Vires and RCW 61.24.010(2) by appointing by appointing Defendant NWTS Successor Trustee without being the beneficiary of the Promissory Note.

> "(2)… the beneficiary shall appoint the successor trustee"

3.1.1.1   The Notice of Default (Exhibit 9), which the Defendants rely upon and delivered to the Plaintiff to begin the foreclosure process, defines Beneficiary as the "(Note Owner)" in Section K. Both JC San Pedro (Exhibit 2) and Charles Boyd (Exhibit 3) admit in their Declarations that OneWest is not the Note Owner.

3.1.1.2   The Custodial Agreement (Exhibit 4), which the Defense relies upon as evidence, states in Section 2(d), "Seller/Servicer shall hold in trust and for the sole benefit of Freddie Mac all notes released to it." While Freddie Mac or another party sold the Note after Indymac sold it, it shows OWB has no benefit of any note the custodian releases to it. As Black's Law shows benefit in a contract means:

> When it is said that a valuable consideration for a promise may consist of a benefit to the promisor, "benefit" means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. Woolum v. Sizemore, 267 Ky. 384, 102 S.W.2d 323, 324.

Black's Law further defines beneficiary as "One who benefits from act of another. A party **who will benefit from a transfer of property or other arrangement**." As a simple loan servicer, OWB would not benefit if the loan were paid off by any means.

3.1.2   The evidence shows that Defendant OWB violated RCW 61.24.030 by claiming to be the "Beneficiary (Note Owner)" in the NOD (Exhibit 9) when OWB knew they were not the owner of the Promissory Note as declared by both JC San Pedro (Exhibit 2) and Charles Boyd (Exhibit 3) and described above.

3.1.2.1   OWB has no benefit from the Note as shown in the Custodial Agreement (Exhibit 4) Section 2(g).

3.1.3 The evidence shows that Defendant OWB violated RCW 61.24.031 by claiming to be the Beneficiary of the Note in the Beneficiary's Declaration that accompanied the NOD (Exhibit 9) when they knew they were not the Note Owner as described in §3.1.2 above or given any beneficial interest in the Note as stated in the Custodial Agreement (Exhibit 4).

3.1.4 The evidence shows that Defendant MERS assisted Defendants OWB and NWTS in violating the DOTA by assigning beneficial/ownership interest in the Promissory Note in the Assignment of Deed of Trust (Exhibit 7) when MERS did not have legal or beneficial ownership or interest in the Note as described in §2.2 above *Nebraska Dept of Banking and Finance, 704 N.W.d. at 787* (MERS has no right to the Note or its payments). Further it assigned beneficial interest in the DOT when it knew through its relationship with Defendant OWB that OWB did not have Beneficial or Ownership rights in the Note. Further it violated its own policies laid out in its Corporate Resolution (Exhibit 8) by making the assignment when MERS knew or should have known OWB to be ineligible to be the assignee.

3.1.5 The evidence shows that Defendant NWTS assisted Defendant OWB in violating RCW 61.24.030 by working as OWB's agent in delivering or causing to be delivered the NOD (Exhibit 9) to Plaintiff and violating RCW 61.24.031 in delivering or causing to be delivered the Beneficiary's Declaration in accompaniment of the NOD. As OWB's agent, NWTS participated in the filing of the Assignment of the Deed of Trust (Exhibit 7) with the King County clerk, which purported to assign the ownership of the Note from MERS to OWB. According to their website (http://www.northwesttrustee.com/profile.aspx), NWTS and their employees average over 20 years of experience and therefore knew or should have known that Defendant MERS never has any beneficial interest, holder status or ownership of any Promissory Note in which to transfer rights to another party. NWTS further violated their duty of good faith to the Plaintiff as described in RCW 61.24.010(4), "The trustee or successor trustee has a duty of good faith to the **borrower**, beneficiary and **grantor**", by both assisting in the Assignment of Deed of Trust (Exhibit 7) and the Notice of Default which they knew or should have known to be a wrongful assignment.

3.1.6 Both Defendants OneWest and Northwest Trustee are in violation of RCW 61.24.030(8)(l) by failing to put on the Notice of Default (Exhibit 9) the actual owner of the promissory note thereby preventing Plaintiff from contacting the actual Note Owner. OWB knew, as shown in the Declarations of JC San Pedro (Exhibit 2) and Charles Boyd (Exhibit 3), that OWB was not the owner of the Note, yet claimed to be on the NOD (Exhibit 9).

3.1.7 The Defendants' own testimony, in the Declaration of Vonnie McElligott (Docket #49), show that NWTS violated their duty of good faith in RCW 61.24.010(4) in acting both as an agent for Defendant OWB and as trustee for the illegally initiated foreclosure. The fact that they were a compensated agent for OWB rather than an impartial party creates a bias in favor of OWB. Further they failed to advise the Plaintiff of their affiliated relationship with Routh Crabtree Olsen (RCO), Defendant OWB's counsel and debt collector, in which both NWTS and RCO have shared

|     |        |                                                                                                                         |
|-----|--------|-------------------------------------------------------------------------------------------------------------------------|
|     |        | ownership by the same individual, Stephen Routh (Exhibits 10 & 11). This clearly is a conflict of interest in maintaining a non-biased and equal good faith to all parties. |
|     | 3.1.8  | NWTS violated RCW 61.24.030(7)(a)&(b) by knowingly proceeding to file and record a Notice of Trustee Sale (Exhibit 13) on or about February 16, 2010 when they knew that OneWest was not the owner of the Note in question. As previously detailed above Northwest Trustee acted as agent to OneWest by filing the Assignment of Deed of Trust (Exhibit 7) that purported to transfer MERS' beneficial interest in the Note which they knew or should have known to be a non-existent interest as MERS is only a nominal beneficiary in the Deed of Trust with no ownership rights to any notes. Further this is another violation of their duty of good faith to the Plaintiff. |
|     | 3.1.9  | Defendant Northwest Trustee violated RCW 61.24.030(7)(a) a second time by filing and recording the Amended Notice of Trustee Sale (Exhibit 14) on or about November 4, 2010 for the same reasons as listed in 3.1.7 above. Further they had received a letter from the Attorney General of Washington, Rob McKenna (Exhibit 12), a letter less than a month ago strongly reminding them of their legal responsibilities to conduct their affairs within the strictest measures of the law. At this time Northwest Trustee was well aware of the dispute the Plaintiff had made as well as the questionable chain of title of the note and deed of trust, yet still moved forward with conducting a non-judicial foreclosure sale that was only halted by the intercession of this Court as shown in Plaintiff's Objection to Trustee Sale (Exhibit 15) and other attempts the Plaintiff made to communicate with NWTS (Declaration of James McDonald). Further this is another violation of NWTS' duty of good faith to the Plaintiff. |
|     | 3.1.10 | Defendant OWB violated RCW 61.24.030(7)(a)&(b) by causing NWTS to file and record a Notice of Trustee Sale (Exhibit 13) on or about February 16, 2010 when OWB was aware it was not the Owner or Beneficiary of the Note in question. |
|     | 3.1.11 | Defendant OWB violated RCW 61.24.030(7)(a)&(b) a second time by causing NWTS to file and record an Amended Notice of Trustee Sale (Exhibit 14) on or about February 16, 2010 when OWB was aware it was not the Owner or Beneficiary of the Note in question. |
|     | 3.1.12 | **Plaintiff claims damages** against OWB, NWTS and MERS for the violations of the Deed of Trust Act (RCW 61.24) and treble damages as discussed in 3.2 below. The list of damages is attached as Appendix B. |

**3.2    Violations of the Consumer Protection Act (RCW 19.86)**

3.2.1   Elements of a Washington Consumer Protection Act Violation Claim

Plaintiff discovered a recent ruling by this Court on January 26, 2011 in Thepvongsa v. Regional Trustee Services Corp *et al* No. 10-cv-1045, 2011 WL 307364, (W.D. Wash. Jan. 26, 2011).

> "To state a claim under the CPA, plaintiff must plead facts demonstrating: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act. Indus.

Indem. Co. v. Kallevig, 114 Wn. 2d 907, 920-21 (1990). Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790 (1986). However, a private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. Id. The Court must examine several factors to determine whether the public interest is impacted: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions? Id. at 790-91."

3.2.2   In order to be as brief as possible, Plaintiff will answer the final four questions in regards to Defendants OneWest and Northwest Trustee services together. These alleged acts ARE committed in the course of the defendant's business as Northwest Trustee is a foreclosure mill and OneWest continuously processes foreclosures as a part of its business. Northwest Trustee does advertise their trustee sales to the general public, including Plaintiff's real property, without ever warning the public that there has been a dispute involved since shortly after the Notice of Default was served. OneWest directs Northwest Trustee to initiate the advertising of the trustee sales as well as their own REO program without making reference to the possible litigation potential buyers could become involved with as more and more fraudulent documents come to light. The third question of the final four is did the Defendants actively solicit the Plaintiff. IndyMac Bank, the original lender, did solicit the Plaintiff's business. Defendant OWB allegedly purchased the servicing rights after Indymac was shut down by the FDIC. NWTS was forced onto the Plaintiff by the illegal Appointment of Successor Trustee (Exhibit 16) instead of continuing with Pacific Northwest Title, which Plaintiff had mutually agreed to utilize with Indymac Bank. NWTS also solicits to the Plaintiff and the greater public through solicitation of foreclosure sales, including that of Plaintiff's residence. Finally the Plaintiff and Defendant have very unequal bargaining ground as Defendants OneWest and Northwest Trustee have violated Plaintiff's civil rights, hid the real parties of interest and refused to comply with all the legal requests and demands Plaintiff has made. Furthermore, due to the nature of WA Deed of Trust Act as there is no judicial oversight, no checks or balances of any type that would cause any of the Defendants or any other party for that matter to stop their attempts to wrongfully and illegally deprive Plaintiff of his REAL PROPERTY RIGHTS. Plaintiff's only recourse is having to bring this lawsuit which Defendants are uniquely situation to have the upper hand in as the affiliated entities involved in a Law Firm that specializes in this area of Law. So, that in the event Plaintiff was unable to adequate retain experienced, qualified counsel, (a seriously difficult task especially considering the financial hardship of many victims who are preyed upon by these "Foreclosure Mills") or educated himself, perform the adequate research,

effectively plead his findings, and be lucky enough to not have his case dismissed on a technical issue as so many Pro-Se litigants in the bringing to light of these "Foreclosure Fraud" issues have.

3.2.3 **Northwest Trustee has Violated the WA CPA**

3.2.3.1 Element 1: An Unfair or deceptive act: Defendant NWTS committed violations of the WA CPA when it began duties as a trustee after having already been a witness and participant of Defendants MERS and OWB's filing of misrepresentations of ownership and beneficial interest of the Note in question. Northwest Trustee was or should have been aware that MERS was not the owner of the Promissory Note and yet caused to be recorded the Assignment of Deed of Trust (Exhibit 7) while acting as OneWest's agent. Defendant Northwest Trustee further knew upon the multiple discussions and mailings (Exhibit 15) between itself and Plaintiff that OneWest was not the owner/beneficiary of the promissory note yet continued forward with a non-judicial trustee sale of Plaintiff's real property with the actions as described in 3.1 above.

3.2.3.2 Element 2: In Trade or Commerce: Plaintiff's loan transaction, like that of any homeowner that Northwest Trustee conducts trustee duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*" Defendant Northwest Trustee is selling their services within Washington State, whether or not the Plaintiff agrees upon utilizing their company as trustee.

3.2.3.3 Element 3: That Impacts the Public Interest: Defendant Northwest Trustee's action constitute as impacting the public interest as it effects thousands of Washington homeowners and potential real estate buyers and investors. Their unethical conduct in being a one-stop shop for foreclosures removes unbiased third party oversight to protect all the involved parties. Additionally they create huge risk and potential losses for all potential buyers in their trustee auctions as more previous homeowners become aware of the serious issues at hand and fight to regain their rights to the properties that have been sold. This has been shown to be true in cases such as Albice v. Premiere Mortgage Services *et al* where the Washington Court of Appeals overturned a trustee sale and returned the rights to the victim. *Albice v. Premiere Mortgage Services et al*, 2010, 39265-8-II.

3.2.3.4 Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted **without review** or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure."*

3.2.3.5 Which causes injury to the Plaintiff: Defendant Northwest Trustee has caused significant injury to Plaintiff as their actions have severely clouded Plaintiff's title to his real property when it filed documents with false parties, claims and amounts owed for recording in King County *Sorrel v.*

*Eagle Healthcare, Inc., 110 Wn. App. 290, 38 P. 3d 1024 (2002)*. Further if Northwest Trustee concludes its trustee sale then Plaintiff will lose his legitimate rights to the real property in question. All of the claims against Northwest Trustee set within this Motion for Summary Judgment are directly tied to the unethical and deceptive business practices referred to in this section. In addition the bringing of this action has taken an overwhelming toll on Plaintiff's time which has further impacted his ability to recover from the financial hardship caused when he lost his employment AT INDYMAC. Further, these additional impacts have caused a dramatic increase in Plaintiff stress as Plaintiff has been unable to work full time as he is constantly researching and attempting to increase his knowledge to that of a competent litigant. Which, as previously stated, the Defendants have a unique advantage over the Plaintiff with their Affiliated Entity relationship with Routh Crabtree Olsen (Exhibits 10 & 11). Injury may be presumed when the consumer has to take time or expend money when the consumer has to remediate his status due to a CPA violation *Panag v Farmers Ins. Co. of Washington,* 166 Wn.2d 27, 204 P.3d 885 (2009).

3.2.3.6 <u>Injury is casually linked to the deceptive act:</u> The injuries specified in 3.2.3.5 above are a direct result to Northwest Trustee's actions.

3.2.4 **Plaintiff alleges that Defendant OneWest has Violated the WA CPA**

3.2.4.1 <u>Element 1: An unfair or deceptive act:</u> Plaintiff alleges Defendant OneWest violated RCW 19.86 et seq. by participating in and causing Northwest Trustee to initiate a non-judicial foreclosure sale when OneWest knew it did not have ownership of the promissory note yet claimed to have that ownership. Further OneWest committed unfair or deceptive acts by filing or causing to be filed false statements with the King County recording office as described in detail above.

3.2.4.2 <u>Element 2: In Trade or Commerce:</u> Plaintiff's loan transaction, like that of any homeowner that OneWest professes to be conduct servicing duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*" OneWest is allegedly performing these servicing duties for another party, which one would reasonably expect OneWest is expecting compensation in the form of a fee, therefore it is selling its services.

3.2.4.3 <u>Element 3: That Impacts the Public Interest:</u> Defendant OneWest's actions of making false claims to ownership of properties that were originally lent upon by Indymac Bank effect thousands of citizens in the state of Washington. Their unethical conduct continues to cause the lowering of home values throughout the area by forcing depressed sales in the real estate market. Additionally they create huge risk and potential losses for all potential buyers in their trustee auctions as more

previous homeowners become aware of the serious issues at hand and fight to regain their rights to the properties that have been sold.

3.2.4.4 Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted **without review** or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure."*

3.2.4.5 Which causes injury to the Plaintiff: Defendant OneWest has caused injury to Plaintiff by filing fraudulent documents with the King County recording office which further clouds Plaintiff's title and reporting on Plaintiff's credit of a foreclosure, which has been initiated unlawfully and wrongly. *Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 38 P. 3d 1024 (2002)*. Further OneWest has damaged Plaintiff's credit by making false claims of being a creditor to Plaintiff and refusing to mark the account in dispute as required by the FCRA, FDCPA and RESPA. OneWest causes punitive injury to Plaintiff by forcing Plaintiff to continue with this litigation rather than come clean and make sufficient amends without the intervention of the Court. Injury may be presumed when the consumer has to take time or expend money when the consumer has to remediate his status due to a CPA violation *Panag v Farmers Ins. Co. of Washington, 166 Wn.2d 27, 204 P.3d 885 (2009).*

3.2.4.6 Injury is casually linked to the deceptive act: Defendants actions are directly related to the injury as described above.

3.2.5 **Plaintiff alleges that Defendant MERS has Violated the WA CPA**

3.2.5.1 Element 1: An unfair or deceptive act: Plaintiff alleges that Defendant MERS has violated the Washington Consumer Protection Act by assigning ownership to a note it knew it did not own and by assigning beneficiary status to the deed of trust in question to a party it knew not to be the note owner or holder in violation of its own Corporate Resolution (Exhibit 8).

3.2.5.2 Element 2: In Trade or Commerce: Plaintiff's loan transaction, like that of any homeowner that OneWest professes to be conduct servicing duties with, meets the requirements of an action in trade or commerce as defined in RCW 19.86.010, "*shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.*" Defendant MERS claims that it is the nominal beneficiary for the majority of the Deeds of Trusts recorded it each which directly effects the residents of Washington state. It charges a fee to assist lenders to avoid paying their proper fees in assigning and/or selling mortgage loans to the counties located in Washington, therefore it is receiving a fee for its services. The citizens of this state are forced to do business with MERS as the majority of lenders offering financing in the state are now MERS Members. They even go so far now as to pass on the MERS fee on homeowners HUD-1 closing statements so the borrowers are now directly paying for MERS' service.

3.2.5.3 Element 3: That Impacts the Public Interest: As Washington AG McKenna stated in his letter to trustee (Exhibit 12) our state has seen a large number of fraudulently assigned Deeds of Trust,

   thereby victimizing countless numbers of Washington residents. As is the case here, if MERS is not stopped from its fraudulent assignments of Deeds of Trust and related foreclosure issues the residents of Washington will continue to be the victims of foreclosure fraud for years to come.

3.2.5.4 Plaintiff and Defendant occupy significantly unequal bargaining positions due to structure of Washington's Deed of Trust Act which as stated in Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985) *"Because the deed of trust foreclosure process is conducted **without review** or confrontation by a court…"* and recently by this Court in the January 26th Order [Dkt#32] *"If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure."*

3.2.5.5 Which causes injury to the Plaintiff: Defendant MERS allowed a false transfer of ownership of Plaintiff's Note and Deed of Trust which directly led to Defendants OneWest and Northwest Trustee to begin their illegal attempt at foreclosing upon Plaintiff's real property. In addition this falsity kept the Plaintiff from learning the identities of the real party of interest, if there even is one, kept him from mediation and caused severe damage to Plaintiff's credit. If Northwest Trustee is allowed to finalize their attempts at this illegal foreclosure, Plaintiff will lose his home. As a direct result of the numerous violations within the Complaint and First Amended Complaint, Plaintiff has had to turn his focus from his life and career to focus on battling the wrongs done against him. *Panag v Farmers Ins. Co. of Washington, 166 Wn.2d 27, 204 P.3d 885 (2009).*

3.2.5.6 Injury is casually linked to the deceptive act: Defendants actions are directly related to the injury as described above.

3.2.6 **Plaintiff therefore claims treble damages** of the violations set forth in Section 3.1 above, the list of which are included in Appendix B.

## 3.3 Declaratory Relief; Lack of Standing

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Jurisdiction to award declaratory relief exists only in a case of actual controversy." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). Consequently, the Ninth Circuit instructs district courts to first determine whether there is an actual controversy within its jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). If the court finds that an actual controversy exists, it must next decide whether to exercise its jurisdiction by analyzing the factors numerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495.

3.3.1  Defendant MERS has neither the standing to initiate a non-judicial foreclosure of Plaintiff's real property nor any ownership or beneficial interest in the Promissory Note in which to assign interest to Defendant OneWest as described in §2.2 above. MERS cannot assign beneficial interest in the Deed of Trust to a person or entity that is not the beneficiary of the promissory note. To assign beneficial interest in the deed of trust without ownership of the note would make the deed of trust null. *Carpenter v. Longan*, 83 U.S. 271, 274 (1872). Further, MERS cannot be considered the legal beneficiary of the DOT under RCW 61.24.005 (WA AG Amicus Brief, *Bain v Metropolitan Mortgage et al.*). Therefore it cannot assign any beneficial interest to OWB and even if it could, OWB has no benefit of the Note as discussed in §3.3.2 below. The Assignment of the Deed of Trust fails as a matter of law.

3.3.2  Defendant OWB has no standing to initiate a non-judicial foreclosure of Plaintiff's real property. First and foremost OWB admitted in the Declarations of JC San Pedro (Exhibit 2) and Charles Boyd (Exhibit 3) that it is not the owner of the Promissory Note. Second, the Custodial Agreement (Exhibit 4) clearly states that OWB has no beneficial interest in the Note. Third, OWB admitted in their response to Plaintiff's RFA (Exhibit 5) that they have no authority to make a unilateral decision on renegotiating the terms of the Note. Fourth, Freddie Mac's website (Exhibit 6) and the Subpoenaed information from DBNTC (Exhibit 1) indicate that Freddie Mac is not the current owner or beneficiary of the Note and therefore cannot convey any holder rights to OneWest on its own behalf. By these undisputable facts OWB has no authority or rights as the Holder of Plaintiff's Note.

3.3.2.1  The Notice of Default (Exhibit 9) should be held as invalid. OneWest has admitted it is not the owner of the note in the Declaration of Charles Boyd (Exhibit 3) and the Declaration of JC San Pedro (Exhibit 2). However on the Notice of Default OneWest (Exhibit 9) listed itself as the owner. As this Court has stated, "Additionally, pursuant to the DTA, the beneficiary or trustee was required to provide… the name and address of the **owner** of any promissory notes or other obligations secured by the deed of trust." *Thepvongsa v. Regional Trustee Service Corp., No. 10-cv-1045, 2011 WL 307364, (W.D. Wash. Jan. 26, 2011).*

3.3.2.2  OWB has no legal authority to appoint NWTS as the successor trustee and violated the DOTA and the Doctrine of Ultra Vires by doing so. As stated in 3.1.1 above, OWB is not the beneficiary as stated in the Custodial Agreement (Exhibit 4). "Seller/Servicer shall hold in trust and for the sole benefit of Freddie Mac all notes released to it." While Freddie Mac is not the owner of the Note in question, it clearly states that OneWest may have no "benefit" in any notes released to it from Deutsche Bank National Trust Company. If OWB has no benefit from the Note, it is not the beneficiary. Therefore it cannot appoint a Successor Trustee (Exhibit 16) as RCW 61.24.010(2) states, "the beneficiary shall appoint a trustee or a successor trustee".

3.3.3  Defendant Northwest Trustee Services lacks standing to participate or initiate a non-judicial foreclosure against Plaintiff's real property as the Appointment of Successor Trustee (Exhibit 16) was not executed by the beneficiary as required by RCW 61.24.010(2).

3.3.3.1 The Notice of Trustee Sale (Exhibit 13) and the Amended Notice of Trustee Sale (Exhibit 14) should be held as invalid as NWTS never had the legal authority to conduct a non-judicial foreclosure on the Note and DOT.

3.3.4 As described above it appears that Defendants OneWest, Northwest Trustee and MERS are attempting to unlawfully collect a debt and enforce a Security Instrument to which they have no rightful authority to enforce, no lawful rights to collect upon, no valid beneficial interest in as described in detail above.

3.3.5 **WHEREFORE** Plaintiff moves the Court to issue and order Declaratory Judgment and ruling void all documents created, executed or filed by Defendants OWB, MERS and NWTS and order Plaintiff's title to be quieted.

**3.4    Permanent Injunction**

3.4.1 If the defendants OneWest, Northwest Trustee or MERS or any other parties or persons who claim any right without having the Power of Sale as stated in the Deed of Trust are permitted to sell the property at a non-judicial foreclosure sale, the rights and interests of Plaintiff in the real property described above will be lost, even though Plaintiff filed this lawsuit.

3.4.2 That will cause Plaintiff irreparable harm in the loss of the title and associated ownership rights to his real property. In addition, the extensive damage to Plaintiff's financial status and credit standing will further damage his ability to recover from the unlawful action of the Defendants. Thus the Plaintiff will lose greatly by such foreclosure sale.

3.4.3 Plaintiff's harm is significantly greater than that of the Defendants who have no real interest in Plaintiff's Note. Even if any of the defendants do have rightful authority and interest to collect and/or foreclose on Plaintiff's loan, which all evidence provided by the Defense indicate they do not, the beneficial impact to the Defendants would be minimal at best with the insurance policies and credit risk fees implemented by Freddie Mac to protect against any defaults on loans.

3.4.4 Furthermore a non-judicial foreclosure sale is very unlikely to produce a reasonable value that will pay off the first and second loans so whoever (if anyone) may have a rightful interest in the Note, and therefore may be entitled to foreclose, which if anyone, appears to be a currently unnamed party and not one of the current Defendants, will also suffer losses caused by the foreclosure sale conducted by any of the currently named Defendants.

3.4.5 Public policy is in favor of granting Plaintiff relief. This is supported by rulings by Washington Courts and legislature[1] which have stated the Washington Deed of Trust Act must be construed in favor of the borrower.

---

[1] "The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrower interests and the lack of judicial oversight in conducting non-judicial foreclosure sales." Udall, __Wn.2d at__, 154 P.3d at 890. See also Amresco Independence Funding, Inc. v. SPS Properties, LLC, 129 Wb. App. 532, 536-537, 119 P.3d 884, 886 (2005) ("Because these statutes' remove many

Motion for Partial Summary Judgment          -13-                    James McDonald
                                                        14840 119th PL NE, Kirkland, WA 98034
                                                                    Phone: (425) 210-0614

3.4.6   Plaintiff claims the right of permanent injunction against OneWest for any and all activities related to the Plaintiff's financial and security instruments, in its capacity as Owner/Holder as it never purchased for value the promissory note on or before January 7, 2010 when the Beneficiary Declaration for the Notice of Default (Exhibit 9) was signed. Further Plaintiff claims the right of permanent injunction against OneWest for any and all activities related to Plaintiff's financial and security instruments in its capacity as servicer for Freddie Mac in their position as owner of the Promissory Note since Freddie Mac sold its interests in the Promissory Note on or about February 27, 2007 (Exhibit 1).

3.4.7   Plaintiff claims the right of permanent injunction against Northwest Trustee for any and all activities related to the Plaintiff's financial and security instruments, in its capacity as Substitute Trustee granted by the Appointment (Exhibit 16) recorded in King County Records #20100204000503.

3.4.8   Plaintiff claims the right of permanent injunction against MERS for any and all activities related to the Plaintiff's financial and security instruments since it was not the owner of the financial instrument (Note) on January 27, 2010 when it allegedly transferred ownership rights of the financial instrument to Defendant OneWest.

### 3   Conclusion

Defendant OneWest has no beneficial or ownership interest in the Note and therefore cannot be the holder in due course. OWB has **admitted** that they do not own the Note in the Declarations of Charles Boyd and JC San Pedro as they **falsely swore under the penalty of perjury** to in the Appointment of Successor Trustee. OWB has provided the Court with the Custodial Agreement that implicitly states OWB has **no beneficial interest** in the Note.

MERS has never had any ownership or holder status in the Note. Therefore their falsely sworn statement in the Assignment of the Deed of Trust that they conveyed ownership/holder status to OWB should be held as void. Further, without the power to convey the status of the Note, any transfer of the Deed of Trust to a party other than the rightful holder of the Note is a nullity.

NWTS was never appointed Successor Trustee by the holder/beneficiary/owner of the Note and therefore has no right to act as a Trustee in relation to Plaintiff's Note. Further they clearly violated their duty of good faith to the Plaintiff by receiving compensation from OWB in acting as their agent. They were complicit in the filing of false statements into King County Recorders office by acting as such agent for OWB, which is also a violation of WA Criminal Code RCW 40.16.030.

For the foregoing reasons, the Court should find in favor of the Plaintiff in granting Summary Judgment against Defendants OWB, MERS and NWTS and finding the Defendants in several violations of the Deed of Trust Act, having no standing to bring foreclosure against Plaintiff and granting a Permanent Injunction against the Defendants as specified in §3.5 in this Motion for Partial Summary Judgment.

---

protections borrowers have under a mortgage, lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor").

1                                                                 **/s/ James McDonald -**

**James McDonald**

2                                                                                      **Pro Se**

**Certificate of Service**

3     I hereby certify that on the 29 day of, 2012 the foregoing was electronically filed with the Clerk of the Court using the ECF system, which sent notification and therefore served the following:

4 Heidi Buck
Routh Crabtree Olsen

5 13555 SE 36th ST Suite 300
Bellevue, WA 98006

6                                                             **/s/ James McDonald -**

7                                                                **James McDonald**

8                                                                      **Pro Se**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Partial Summary Judgment           -15-           James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614