The Honorable Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MCDONALD,

          Plaintiff,

    v.

ONEWEST BANK, FSB, NORTHWEST
TRUSTEE SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., INDYMAC BANK FSB, DOES 1-50,

        Defendants.

No.  C10-1952 RSL

**DEFENDANTS ONEWEST, MERS,
AND NORTHWEST TRUSTEE
SERVICES, INC.'S MOTION FOR
SUMMARY JUDGMENT AND TO
DISSOLVE INJUNCTION**

**[NOTE ON MOTION CALENDAR:
April 13, 2012]**

**ORAL ARGUMENT REQUESTED**

## I.  INTRODUCTION AND RELIEF REQUESTED

COME NOW, Defendants OneWest Bank, FSB ("OneWest"), Mortgage Electronic

Registration Systems Inc. ("MERS"), and Northwest Trustee Services, Inc. ("NWTS")

(collectively "Defendants") and move the court for an order granting summary judgment in favor

of Defendants and dissolving the injunction entered on January 25, 2011. This motion is made

pursuant to Fed. R. Civ. P. 56 on the grounds that no genuine issue of material fact exists as to

James McDonald's ("Plaintiff") causes of action against Defendants as stated in Plaintiff's First

Amended Complaint ("FAC"), and Defendants are entitled to judgment as a matter of law and

dissolution of the injunction restraining the trustee's sale.

## II.   STATEMENT OF FACTS

On or about January 8, 2007, Plaintiff James B. McDonald received a loan in the amount

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 1 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   of $389,481.60. The loan was evidenced by a promissory note ("Note"), which was signed by

2   Plaintiff. Declaration of Charles Boyle ("Boyle Decl."), Exhibit 1, Note.

3        To secure repayment of the Note, Plaintiff granted to Mortgage Electronic Registration

4   Systems as nominee for the original lender, Indymac Bank, FSB and its successors and assigns, a

5   deed of trust (the "Deed of Trust"). The Deed of Trust encumbers the real property commonly

6   known as 14840 119th PL NE, Kirkland, Washington 98034 (the "Property"). The Deed of Trust

7   was recorded on January 10, 2007, under King County Auditor's File No. 20070110002077.

8   Boyle Decl., ¶ 3, Exhibit 2, Deed of Trust.

9        Thereafter, Indymac Bank, FSB sold Plaintiff's Note to Federal Home Loan Mortgage

10  Company ("Freddie Mac"). FAC, ¶ 2.12.  Indymac Bank, FSB retained the servicing rights and

11  serviced the loan on behalf of Freddie Mac. Boyle Decl. ¶ 4. Freddie Mac has remained the

12  investor and owner of the Note. Boyle Decl. ¶ 4.

13       IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008,

14  and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. *See* Boyle

15  Decl. ¶ 5, Exhibit 3, OTS Order No. 2008-24 (July 11, 2008).[1] IndyMac Federal Bank ("IMFB")

16  was created and the FDIC was appointed Conservator. *See* Boyle Decl. ¶ 6, Exhibit 4, Excerpts

17  from the Purchase and Assumption Agreement.[2]

18       On March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the

19  assets including the rights to service the loan presently at issue to OneWest Bank, FSB. *See*

20  Boyle Decl. ¶ 7, Exhibit 5, Excerpts from the Master Purchase Agreement;[3] Exhibit 6; Excerpts

21  from the Loan Sale Agreement;[4] and Exhibit 7, Excerpts from the Servicing Business Asset

22

23

24  [1] The Office of Thrift Supervision Order No. 2008-24, dated July 11, 2008, can be found, in entirety, online at
    http://www.ots.treas.gov/_files/680018.pdf.

25  [2] The Purchase and Assumption Agreement, in entirety, can be found online at
    http://www.fdic.gov/bank/individual/failed/IndyMac_P_and_A.pdf.

26  [3] The Master Purchase Agreement, in entirety, is available online at
    http://www.fdic.gov/about/freedom/IndyMacMasterPurchaseAgrmt.pdf.
    [4] The Loan Sale Agreement, in entirety, is available online at
    http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 2 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Purchase Agreement.[5]

2       OneWest Bank is the current servicer; IndyMac Mortgage Services is a division of

3   OneWest Bank. Boyle Decl., ¶ 8. OneWest services the loan on behalf of Freddie Mac in

4   accordance with Freddie Mac's Single-Family Seller/Servicer Guide (the "Freddie Mac Servicer

5   Guide").[6,7] *Id.* As part of the Freddie Mac Servicer Guide, OneWest has possession of the blank

6   endorsed Note through a document custodian, Deutsche Bank National Trust Co. ("Custodian").

7   *See* Boyle Decl. ¶ 9, Exhibit 8, Custodial Agreement. OneWest is entitled to collect payments,

8   initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification

9   in accordance with investor guidelines.[8] Boyle Decl., ¶ 10.

10      OneWest has been in possession of the Note and therefore the holder since on or about

11   March 19, 2009, and the Note has been held by the Custodian since on or about May 12, 2009.

12   Boyle Decl., ¶ 11. *See also* Exhibit 8.[9]

13      On or about October 1, 2009, Plaintiff defaulted by failing to make the payment due for

14   October 1, 2009, and every payment thereafter due. Boyle Decl., ¶ 12.

15      On or about November 2, 2009 and November 16, 2009, IndyMac Mortgage Services, a

16   division of OneWest Bank, FSB mailed to Plaintiff via first class mail letters (the "November

---

[5] The Servicing Business Asset Purchase Agreement, in entirety, is available online at
http://www.fdic.gov/bank/individual/failed/ServicingBusinessAssetPurchaseAgreement.pdf.
[6] The Freddie Mac Servicer Guide is available, in entirety, at http://www.allregs.com/tpl/Main.aspx.
[7] Congress created the Federal Home Loan Mortgage Corporation ("Freddie Mac") in order to promote a stable
secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery,
and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans;
rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage
investments and to improve the distribution of investment capital available for residential mortgage financing. *See*
12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708
(N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir.
1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced
for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes
collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.
[8] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Servicer
Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at
http://www.allregs.com/tpl/Main.aspx.
[9] On or about October 1, 2010, OneWest requested that the Custodian deliver the Note to OneWest. The Note was
released to OneWest on or about October 5, 2010. The Note is currently stored at the office of counsel for
Defendants'. Boyle, Decl., ¶¶ 16-17.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 3 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    2009 Letters") which satisfied the requirements set forth in RCW 61.24.031(b). Boyle Decl., ¶

2    13. *See also* Exhibit 9, November 2009 Letters.

3            On or about January 12, 2010, as an agent of OneWest Bank, FSB, NWTS mailed and

4    posted a notice of default (the "Notice of Default") in response to Plaintiff's default. *See*

5    Declaration of Vonnie McElligott ("McElligott Decl."), ¶ 4, Exhibit 10, Notice of Default.

6            On or about January 27, 2010, Mortgage Electronic Registration Systems, Inc. executed an

7    assignment of deed of trust (the "Assignment") whereby MERS assigned its interest under the Deed

8    of Trust to OneWest Bank, FSB. The Assignment was recorded February 4, 2010, under King

9    County Auditor's File No. 20100204000502. *See* Boyle Decl., Exhibit 11, Assignment; **Boyle**

10   **Decl., ¶ 6.[10],[11]**

11           On or about February 4, 2010, OneWest recorded an appointment of successor trustee (the

12   "Appointment") naming Northwest Trustee Services, Inc. the successor trustee. The Appointment

13   was recorded under King County Auditor's File No. 20100204000503. *See* Boyle Decl., ¶ 15,

14   Exhibit 12, Appointment.

15           On or about February 16, 2010, NWTS recorded a notice of trustee's sale (the "Notice of

16   Sale") under King County Auditor's File No. 20100216001242, setting the trustee's sale for May

17   21, 2010, 2010. *See* McElligott Decl., ¶ 5, Exhibit 13, Notice of Sale.

18           On or about April 27, 2010, Plaintiff mailed to OneWest a purported Qualified Written

19   Request, Dispute of Debt, and Debt Validation Demand. FAC, ¶ 2.11. In a letter dated May 18,

20   2010, OneWest responded to Plaintiff's Qualified Written Request, Dispute of Debt, and Debt

21   Validation Demand stating that Freddie Mac was the investor on the loan as well as provided

22   Plaintiff copies of the Note, Deed of Trust, and payment history on the loan. FAC, ¶ 2.12.

23           On or about November 4, 2010, NWTS recorded an Amended Notice of Trustee's Sale

---

[10] Under Washington law, the security (Deed of Trust) follows the debt (Note) with or without actual assignment. *Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) ("transfer of the note carries ... the security"); Leisure Time Sports v. Wolfe, 194 B.R. 859, 861 (9th Cir. BAP 1996) ("security ... follows the debt").
[11] *In re United Home Loans*, 71 B.R. 885, 891 (W.D. Wash. 1987), aff'd 876 F.2d 897 (9th Cir. 861 (9th Cir. BAP 1989) ("assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded"; "Recording of the assignments is for the benefit of third parties").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 4 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   (the "Amended Notice of Sale") under King County Auditor's File No. 20101104001321, setting

2   the trustee's sale for December 10, 2010. McElligott Decl., ¶ 6, Exhibit 14, Amended Notice of

3   Sale.

4        On or about December 3, 2010, Plaintiff filed his original complaint, which alleged

5   violations of Washington's Deed of Trust Act ("DTA"), wrongful foreclosure, and slander of

6   title as well as requested a Temporary Restraining Order and Permanent Injunction. Dkt. 1.

7        On January 25, 2011, the court granted a preliminary injunction ("Injunction") against the

8   Property. Dkt. 24. The Injunction was conditioned upon Plaintiff making the monthly payment

9   due under the Note and Deed of Trust into the court registry each month while the Injunction

10   was in place. *Id.* Plaintiff has failed to pay any amounts into the court registry since May 2011,

11   and therefore his payments for June 2011 through March 2012 are overdue.

12        Plaintiff has since filed the FAC. The FAC alleges violations of the DTA, violations of

13   the Consumer Protection Act ("CPA"), fraud, civil conspiracy, and slander of title.

### III.   ISSUES PRESENTED

15        Whether Defendants are entitled to judgment, as a matter of law, as to all of Plaintiff's

16   claims.

### IV.   EVIDENCE RELIED UPON

18        This Motion for Summary Judgment is supported by the pleadings, exhibits thereto,

19   records, and docket on file in this case, this Motion and Memorandum of law and exhibits

20   attached hereto, the Declaration of Vonnie McElligott, and Declaration of Charles Boyle.

### V.   AUTHORITY & ARGUMENT

**A.   LEGAL STANDARD FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56.**

23        The Court should grant summary judgment if no genuine issue of material fact exists and

24   the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving

25   party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

26   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is

   material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 5 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a properly

2   supported motion for summary judgment has been presented, the adverse party "may not rely

3   merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e). Rather, the non-

4   moving party must set forth "specific facts" demonstrating the existence of a genuine issue for

5   trial. *Id.; Anderson,* 477 U.S. at 256. All "justifiable inferences" are to be drawn in favor of the

6   non-moving party. *Anderson,* 477 U.S. at 255. When the record, however, taken as a whole,

7   could not lead a rational trier of fact to find for the non-moving party, summary judgment is

8   warranted. *See Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 988 (9th Cir.2006).

9   **B.   PLAINTIFF'S CLAIM FOR VIOLATIONS OF THE DEED OF TRUST ACT.**

10          **1.   Plaintiff's claim for violations of the DTA as to OneWest fails as a matter of**

11               **law because Washington does not recognize a cause of action for damages for**

12               **"wrongful initiation of foreclosure."**

13          Plaintiff's claim for violations of the DTA as to OneWest are based upon Plaintiff's

14   allegations that (1) OneWest is not the beneficiary of the Note because it never took the note "for

15   value"; (2) the custodial agreement shows OneWest has no beneficial interest in the notes that

16   Deutsche Bank, as custodian, releases to it; (3) OneWest violated RCW 61.24.030 by claiming to

17   be the beneficiary in the Notice of Default; and 4) OneWest violated RCW 61.24.030(8)(1) by

18   failing to list the note owner on the Notice of Default. *See* FAC, ¶¶ 3.1.2 and 3.1.8. Plaintiff also

19   cites a host of errors he purports to have found in the documentation supporting the nonjudicial

20   foreclosure. *See* FAC.

21          In Washington, several courts have concluded that where no trustee's sale has occurred,

22   the DTA does not authorize a cause of action for "wrongful initiation of nonjudicial foreclosure

23   proceedings" like the one Plaintiff attempts to put forth here.[12] *Vawter v. Quality Loan Serv.*

24   *Corp. of Washington,* 707 F. Supp. 2d 1115, 1123 (W.D. Wash. 2010); *see also Pfau v. Wash.*

25

26

---

[12] The DTA specifically states that a trustee's sale may be restrained only upon the tendering of the obligations due. RCW 61.24.130. This restraint may be for any legal or equitable grounds. Here, the Court granted Plaintiff a preliminary injunction to enjoin the sale, which was conditioned upon Plaintiff making monthly payments into the court registry. *See* Dkt. 24. Plaintiff, however, has failed to make the monthly payment as required by the preliminary injunction since May 2011. Dkt. 94.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Mutual, Inc.*, No CV-08-00142-JLQ, 2009 WL 484448, at *12 (E.D. Wash. Feb. 24, 2009);

2   *Krienke v. Chase Home Fin., LLC,* 140 Wn. App. 1032, 2007 WL 2713737, at *5 (Wash. Ct.

3   App. 2007); *see also Henderson v. GMAC Mortgage Corp.*, No. C05-5781RBL, 2008 WL

4   1733265, at *5 (W.D. Wash. Apr. 10, 2008) (holding that plaintiff's claim for wrongful

5   foreclosure under the DTA failed because, among other things, no foreclosure occurred).  In both

6   *Pfau* and *Krienke,* the courts rejected the argument that a grantor can maintain a damages claim

7   for wrongful institution of nonjudicial foreclosure proceedings where no trustee's sale actually

8   occurs. These courts emphasized their view that there is simply no statutory authority or case law

9   to support such a claim. As the *Krienke* court explained:

10        There is no case law supporting a claim for damages for the *initiation* of an
       allegedly wrongful foreclosure sale. Moreover, there is no statutory basis

11        supporting a claim for damages for wrongful *institution* of foreclosure
       proceedings. On the contrary, courts promote the [DTA's] objectives, declining to

12        invalidate completed sales even where trustees have not complied with the
       statute's technical requirements.

13   *Krienke*, 2007 WL 2713737, at *5 (emphasis in original).

14        The court in *Vawter* further emphasized that recognizing a cause of action for the

15   wrongful institution of foreclosure proceedings would be inconsistent with the intent of the DTA.

16   *Vawter*, 707 F. Supp. 2d at 1124 ("Interjecting a cause of action for damages for wrongful

17   institution of nonjudicial foreclosure proceedings into the DTA's scheme would potentially upset

18   the balance struck by the legislature.").  The sole method to contest a foreclosure sale is to file an

19   action to enjoin or restrain the sale in accordance with 61.24.130 of the DTA. Washington courts

20   are clear in holding that "[a]nyone having any objection to the sale on any grounds whatsoever

21   will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to

22   restrain the sale pursuant to the Revised Code of Washington 61.24.130." *Plein v. Lackey*, 67

23   P.3d 1061, 1066 (Wash. 2003).  Failure to properly bring such a lawsuit may result in a waiver of

24   any proper grounds for invalidating the trustee's sale. RCW 61.24.040(1)(f)(IX); *see also* RCW

25   61.24.127.  Recognizing a cause of action for the wrongful institution of foreclosure procedures

26   in spite of the DTA's statutory scheme and objectives, would, as the court in *Vawter* explained,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 7 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  //

2  ///

> undermine the legislature's goal that the nonjudicial foreclosure process remains efficient and inexpensive . . . [The approach would] spawn litigation under the DTA for damages, thereby interfering with the efficient and inexpensive nature of the nonjudicial foreclosure process, while at the same time failing to address directly the propriety of foreclosure or advancing the opportunity of interested parties to prevent wrongful foreclosure.

*Vawter*, 707 F.Supp.2d at 1123–24.   Here, Plaintiff's cause of action, though styled in the complaint as one for violations of the DTA, is properly construed as a claim for wrongful institution of nonjudicial foreclosure proceedings since the trustee's sale has not occurred. *See Id.* When viewed in this light, as a matter of law, Plaintiff's claim fails.

**2. Even assuming Plaintiff's "wrongful initiation of nonjudicial foreclosure" was plausible, the claim fails as a matter of law as to OneWest.**

**a. Under the federal holder-in-due-course doctrine, OneWest is a holder-in-due-course.**

Plaintiff alleges that OneWest is not the beneficiary of the Note because it "never took the note for value" per RCW 62A.3-302." FAC, ¶ 3.1.1.

Pursuant to the federal holder-in-due-course doctrine, which has been expressly adopted in the Ninth Circuit, OneWest qualifies as a holder-in-due-course. The technical requirements for holder-in-due-course are greatly relaxed, if not dispensed with altogether, when the FDIC acquires a note in a purchase and assumption transaction from a failed bank. *Resolution Trust Corp. v Kennelly*, 57 F.3d 819, 821 (9th Cir. 1995); *see also Fed. Sav. and Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 559-60 (5th Cir. 1990) (extending the status of a federal holder-in-due-course to private assignees of the FDIC and FSLIC). Washington law is in accord. RCW 62A.3-203(b) ("Transfer of an instrument ... vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder-in-due-course").

Technically, the FDIC cannot qualify as a holder-in-due-course; it is not a "holder" as defined by NMSA 1978, Section 55-1-201(20) (Repl.Pamp.1993), and often, as receiver, it

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

acquires notes by bulk transactions. *Id.* (citing Steven A. Weiss & Kenneth E. Kraus, *D'Oench Protection for Private Institutions Assisting the FDIC: A Necessary Component of the Thrift and Bank Bailout,* 108 Banking L.J. 256, 270 (1991)). The principle of allowing the FDIC and its successors in interest to enjoy the benefits of a holder-in-due-course is grounded in the need for a uniform rule of immunity for the FDIC in order to perform its statutory function. *Id.* (citing *Gunter v. Hutcheson,* 674 F.2d 862, 869 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), *and overruled on other grounds Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987)). The federal holder-in-due-course doctrine requires that, given the special circumstances that face the FDIC, state holder-in-due-course law does not apply. *Id.* A purchase and assumption transaction helps preserve stability of and confidence in the banking system and is the preferred method for resolving bank failures. *Id.* Subsequent holders who acquire notes from the FDIC also enjoy holder-in-due-course status "whether or not they satisfy the technical requirements of state law." *Campbell Leasing,* 901 F.2d at 1249; *see* Kraus, *supra,* at 270 ("an assignee from the FDIC cannot technically be a holder in due course").

As the *Cadle* court stated:

> To hold otherwise "would emasculate the policy behind ... promoting purchase and assumption transactions. If holder in due course status did not run with the notes acquired by the FDIC in purchase and assumption transactions, the market for such notes would be smaller, which would have a deleterious effect on the FDIC's ability to protect the assets of failed banks." *FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989). We recognize that "a subsequent purchaser ... stands in the shoes of the FDIC" for holder-in-due-course status. *Id.*

*Cadle Co., Inc. v. Wallach Concrete, Inc.*, 120 N.M. 56, 61, 897 P.2d 1104, 1109, 27 UCC Rep. Serv. 2d 518, 1995 WL 367288 (1995).

Here, after the Plaintiff's Note was sold to Freddie Mac, Indymac Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac. IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. IndyMac Federal Bank ("IMFB") was created and the FDIC was appointed Conservator, and on March 19, 2009, the FDIC was appointed as

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 9 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Receiver for IMFB and sold most of the assets including the rights to service the loan presently

2   at issue to OneWest Bank, FSB. Thus, under the federal holder-in-due-course doctrine, as a

3   subsequent holder following the FDIC, OneWest is a holder-in-due-course.

4       Moreover, as the Note is endorsed in blank, and OneWest is currently in possession of

5   the Note and has been at all times in actual possession or constructive possession through the

6   Custodian,[13] OneWest is entitled to enforce the Note. Additionally, this is consistent with RCW

7   62A.3-301 in that OneWest need not own the Note to enforce it.

8       **b.   The Custodial Agreement provides that Deutsche Bank acts as**

9           **Custodian to house the original Note for the benefit of Freddie Mac**

10          **and OneWest.**

11      The Custodial Agreement, dated May 12, 2009, details an agreement between Freddie

12  Mac, the owner, OneWest, the servicer, and Deutsche Bank, the custodian. *See* Exhibit 8.

13  Pursuant to the Agreement, Deutsche Bank will hold the subject Notes on behalf of Freddie Mac

14  and OneWest. At any time either Freddie Mac or OneWest may request the custodian deliver the

15  Note to them. On or about October 1, 2010, OneWest requested that the Custodian deliver the

16  Note to OneWest. The Note was released to OneWest on or about October 5, 2010, and the Note

17  is currently stored at the office of counsel for Defendants'.

18      **c.   OneWest is a beneficiary entitled to enforce the Note and Deed of**

19          **Trust.**

20      RCW 61.24.005(2) provides that, "unless the context otherwise requires," the term

21  "'beneficiary' means the holder of the instrument or document evidencing the obligation secured

22  by the deed of trust[.]" RCW 61.24.005(2). Under the U.C.C., as adopted in Washington, a

23  "[p]erson entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a

24  nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in

25  possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-

26

---

[13] At all times since May 12, 2009 (date of Custodial Agreement), OneWest could demand actual possession of the Note at any time from the Custodian and the Note would be delivered to OneWest.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 10 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

309 or 62A.3-418(d). RCW 62A.3-301. **A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument** or is in wrongful possession of the instrument. *Id.* (Emphasis added). "Holder" status may be evidenced by physical possession of the note, which has either been endorsed to that person or endorsed in blank. RCW 62A.1-201.

Under the DTA and the terms of the Note and Deed of Trust, a beneficiary may enforce the underlying obligation, may appoint a successor trustee, and may take steps in furtherance of the nonjudicial foreclosure. *See* RCW 61.24 *et seq.*

OneWest has been the note holder since March of 2009 when OneWest acquired the assets and operations of IndyMac from the FDIC. Accordingly, OneWest is a beneficiary entitled to enforce the Note, and was entitled to enforce the Note and to take steps in furtherance of the nonjudicial foreclosure[14] at all times since March 2009. Thus, at all times relevant to the underlying foreclosure, OneWest was authorized to enforce the Note and Deed of Trust through nonjudicial foreclosure.

Plaintiff claims that OneWest has no "standing" and that **only** the note owner may enforce the Note. However, such statements are not grounded in the law. In fact, OneWest does not dispute that Freddie Mac is the owner of the Loan. OneWest services the loan on behalf of Freddie Mac in accordance with the Freddie Mac Servicer Guide.[15,16] As part of the Freddie Mac Servicer Guide, as with all loans owned by Freddie Mac, the servicer, OneWest in this matter,

---

[14] This includes directing NWTS to transmit the Notice of Default on behalf of OneWest and appointing NWTS as successor trustee.

[15] Available at http://www.allregs.com/tpl/Main.aspx.

[16] Congress created the Federal Home Loan Mortgage Corporation ( "Freddie Mac") in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708 (N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir. 1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  has possession[17] of the blank endorsed Note, and is entitled to collect payments, initiate

2  foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in

3  accordance with investor guidelines.[18]   In fact the Freddie Mac Servicer Guide provides that

4  where default occurs, foreclosure is to be carried out in the name of the servicer.[19] The Freddie

5  Mac Servicer Guide designates sweeping authority to the servicer to "act in the most time,

6  efficient and responsible manner to protect Freddie Mac's interests."[20]

7       Accordingly, in accordance with the federal holder-in-due-course doctrine, the U.C.C.

8  and DTA, OneWest is a beneficiary entitled to enforce the Note and Deed of Trust through

9  foreclosure in response to Plaintiff's undisputed default.

10      Moreover, Plaintiff's allegations that OneWest wrongfully asserted itself as the note

11  owner in the Appointment and Notice of Default are irrelevant and immaterial. "The issue of

12  ownership, however, is largely immaterial...[b]ecause under Washington law the focus of the

13  analysis is on who is the holder of the note, and thus the beneficiary under the [DTA], Plaintiff's

14  concern should be whether he knows who to pay." *In re Reinke*, BR 09-19609, 2011 WL

15  5079561 at *11 (Bankr. W.D. Wash. Oct. 26, 2011) (citing *Veal v. American Home Mortg.*

16  *Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011)). Plaintiff, however, makes

17  no allegations that his default was caused by his uncertainty as to who payments should be

18  directed.

19           **d.  Alleged errors identified by Plaintiff in the foreclosure process and**

20                **supporting documents do not refute OneWest's authority to**

21                **foreclose and do not give rise to any damages.**

22      Before a court will set aside or restrain a trustee's sale in the face of allegations of errors

23  like those asserted by Plaintiff, a showing of prejudice must be made. *See Amresco Independence*

24

25  [17] Actual or through the custodian.
    [18] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Freddie Mac

26  Servicer Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at
    http://www.allregs.com/tpl/Main.aspx.
    [19] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 67.17, available at http://www.allregs.com/tpl/Main.aspx.
    [20] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 51.1, available at http://www.allregs.com/tpl/Main.aspx.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 12 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

*Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing

*Koegel v. Prudential Mut. Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988). In *Koegel*, the

court declined to invalidate a sale where Plaintiff identified "technical, formal error[s], non-

prejudicial, and correctable." *Koegel*, 752 P.2d at 388. Thus, even where technical errors exist,

like those asserted here, a foreclosure may proceed without restraint in the absence of prejudice.

*Id.*[21]

    ***Notice of Default***. The alleged errors identified in the Notice of Default are not

prejudicial to Plaintiff and do not warrant restraint of the trustee's sale nor do they give rise to

any liability. Plaintiff alleges that the Notice of Default (1) erroneously lists OneWest as owner,

(2) erroneously lists OneWest as beneficiary; (3) was transmitted by a party who was not the

beneficiary or trustee in violation of RCW 61.24.030(8), and (4) falsely listed OneWest as the

creditor to whom the debt is owed. FAC, ¶ 2.4.

    As noted *supra,* note ownership is immaterial to determining who is legally entitled to

enforce the promissory note. *In re Reinke,* 2011 WL 5079561 at *11.

    There is no dispute Plaintiff's loan is owned by Freddie Mac and therefore governed by

the Freddie Mac Servicer Guide such that the Note is endorsed in blank, housed by a custodian

for the benefit of Freddie Mac and OneWest, and enforceable by the servicer, OneWest. As the

servicer, at all times relevant (prior to and following Plaintiff's default), OneWest was the entity

charged with the responsibility of accepting and applying his payments, communicating in

regard to the default, initiating and carrying out the foreclosure, accepting and reviewing any

---

[21] The court in *Cervantes* listed several examples of prejudice sufficient to warrant a claim. *Cervantes,* 656 F.3d at 1043; *See e.g., Ed Peters Jewelry Co.,* 124 F.3d 252, 263 n.8 (declining to "countenance the freewheeling 'wrongful foreclosure' claim" advocated by the mortgagor and noting that the Massachusetts Supreme Court recognized a claim for wrongful foreclosure where no default had occurred in *Mechanics Nat'l Bank of Worcester v. Killeen,* 384 N.E.2d 1231, 1236 (Mass. 1979)); *Fields v. Millsap & Singer, P.C.,* 295 S.W.3d 567, 571 (Mo. Ct.App. 2009) (In Missouri, "[a] plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose" (internal alteration and citation omitted)); *Gregorakos v. Wells Fargo Nat'l Ass'n,* 647 S.E.2d 289, 292 (Ga. Ct. App. 2007) (In Georgia, a "plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (internal quotation marks and alteration omitted)); *Collins v. Union Fed. Sav. & Loan Ass'n,* 662 P.2d 610, 623 (Nev. 1983) (In Nevada, "the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised.")

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 13 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   request for modification, and providing reinstatement figures. As Plaintiff points out, the Notice

2   of Default identified OneWest as the Servicer and the Beneficiary and incorrectly referenced

3   OneWest as the "Note Owner." Such an error offers no prejudice, however. Plaintiff was still

4   provided the relevant information, the party to which he could provide his payment, negotiate a

5   loan modification, or coordinate reinstatement. Furthermore, the evidence demonstrates Plaintiff

6   knew OneWest was the party designated to collect and apply his payments as he made payments

7   to OneWest prior to his undisputed default. FAC, ¶ 2.12.

8        Additionally, OneWest is a Beneficiary. *See* Section B(2)(c)¶4 *supra*.

9        ***Beneficiary Declaration***. The allegations relating to the Beneficiary Declaration, as a

10   matter of law, do not amount to an actionable claim and offer Plaintiff no prejudice. Plaintiff

11   alleges the Beneficiary Declaration was ineffective because it was signed by a "notorious robo-

12   signer." FAC, ¶ 2.4.1.

13        First, Washington courts have held that generic allegations that documents were "robo-

14   signed" are nothing more than conjecture and are too vague and conclusory to state a plausible

15   claim for relief under the standards set forth in *Twombly,* 550 U.S. at 570. *Mickelson v. Chase*

16   *Home Fin. LLC*, C11-1445 MJP, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011).

17        Secondly, RCW 61.24.030(7)(a) requires that before a notice of sale is recorded,

18   transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any

19   promissory note or other obligation secured by the deed of trust. One way in which the

20   requirement is satisfied is through receipt of a declaration by the beneficiary made under the

21   penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other

22   obligation secured by the deed of trust. *See* RCW 61.24.030(7)(a).

23        Here, even if Plaintiff could show the Beneficiary Declaration was "robo-signed" and

24   that such a showing resulted in the Beneficiary Declaration being void (which he cannot),

25   Plaintiff can make no showing of injury based upon NWTS' reliance on the Beneficiary

26   Declaration. NWTS only relied on the Beneficiary Declaration to record the Notice of Sale and

Amended Notice of Sale, both of which have now expired. *See* RCW 61.24.040(6).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 14 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   In order for a new trustee's sale to be scheduled, a new notice of sale must be recorded.

2   Since NWTS' receipt of the Beneficiary Declaration, NWTS has been presented with the original

3   promissory note, which is endorsed in blank and in the possession of OneWest. Thus, the

4   Beneficiary Declaration is no longer necessary, and NWTS need not rely upon the Beneficiary

5   Declaration.

6   Additionally, Washington courts have held that generic allegations that documents were

7   "robo-signed" are nothing more than conjecture and are vague and conclusory as well as

8   inadequate to state a plausible claim for relief under the standards set forth in *Twombly,* 550 U.S.

9   at 570. *See Mickelson v. Chase Home Fin. LLC*, C11-1445 MJP, 2011 WL 5553821, at *3 (W.D.

10  Wash. Nov. 14, 2011). Plaintiff's conclusory statements that Erica Johnson-Seck, Brian Burnett,

11  and Suchan Murray are "well-known robo-signers" are nothing more than conjecture.

12  ***Letter dated January 15, 2010.*** The fact that Routh Crabtree Olsen, P.S., as counsel to

13  OneWest mailed Plaintiff a letter in an effort to advise Plaintiff of options that may exist that

14  would allow him to avoid foreclosure does not offer Plaintiff any prejudice nor does it give rise

15  to liability as to any Defendant herein.

16  Plaintiff incorrectly presumes the letter from Routh Crabtree Olsen, P.S. was meant to

17  satisfy the "written contact" as required under RCW 61.24.031(1)(b). Plaintiff is incorrect,

18  however. OneWest sent, in accordance with RCW 61.24.031(1)(b), two letters in November

19  2009, which served as the "written contact."

20  ***Assignment.*** Allegations identifying alleged errors in the Assignment offer no prejudice

21  to Plaintiff and do not give to liability under any legal theory. Plaintiff alleges the following

22  "defects" with the Assignment: 1) it was signed by a known "robo-signer," 2) the signer, Brian

23  Burnett, is not truly a MERS employee, 3) the Corporate Resolution evidencing Burnett's

24  signing authority was not instructive as it was dated after the Assignment, 4) the Assignment was

25  a nullity because it purported to transfer the note ("together with note or notes therein"), and

26  because MERS never owned the note (and therefore was never the beneficiary) and therefore

could not assign any note. FAC, ¶ 2.6.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 15 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1     As discussed *supra*, conclusory allegations of "robo-signing" are insufficient to state a

2  claim as a matter of law. *Mickelson,* WL 5553821, at *3.

3     Additionally, "[t]here is simply nothing deceptive about using an agent to execute a

4  document, and this practice is commonplace in deed of trust actions." *Bain v. Metropolitan*

5  *Mortgage Group, Inc.,* 2010 WL 891585, *6 (W.D.Wash.) (citing Russell v. Lundberg,* 120 P.3d

6  541, 544 (Utah Ct.App.2005)). An agent may perform "mere ministerial acts" relating to a

7  foreclosure. *Id. (citing Buse v. First Am. Title Co.,* C08-0510-MJP, 2009 WL 1543994, at *3

8  (W.D.Wash. May 29, 2009)).

9     In *Bain,* the Plaintiff borrower challenged a scenario in which the defendant Lender

10  Processing Services ("LPS") had contracts with defendants IndyMac Bank and MERS. Under

11  the contract with MERS, LPS employees were "appointed as assistant secretaries and vice

12  presidents of [MERS] and, as such, are authorized to ... execute any and all documents necessary

13  to foreclose upon the property securing any mortgage loan registered on the MERS system ...

14  including but not limited to (a) substitution of trustee on Deeds of Trust ..." Similarly, LPS had

15  separate contractual authority to execute documents as signing officers of IndyMac. There, the

16  LPS employees who signed the appointment and assignment were employed by LPS and had

17  signing authority for Indymac and MERS. The court held that using the LPS employees to sign

18  the documents was not an affirmative misrepresentation of fact and there was simply nothing

19  deceptive about this practice. *Bain,* *6.

20     Finally, Plaintiff challenges the Assignment on the basis that it improperly attempts to

21  transfer the underlying Note. First, the language upon which Plaintiff bases such allegations, the

22  phrase "together with note or notes therein," is a term of art that has long been used the language

23  of real property assignments and is of no legal consequence. Under the U.C.C., a negotiable

24  instrument may be transferred through endorsement and delivery. As discussed *supra*, OneWest

25  has had the authority to enforce the Note and Deed of Trust as the Note holder since March 2009

26  notwithstanding any assignment of deed of trust or language used in the Assignment.

     ***Appointment.*** Errors identified in the Appointment offer no prejudice Plaintiff and do not

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

give rise to any liability. Plaintiff alleges the Appointment was signed by a known "robo-signer" and that the Appointment erroneously identified OneWest as the Note owner. FAC, ¶ 2.7.

As previously discussed, OneWest is and has been a beneficiary authorized to foreclose, conclusory allegations that a document was "robo-signed" cannot support any claim. *See* Section B(2)(c), ¶4 *supra*; *see also Mickelson,* WL 5553821, at *3. Moreover, as discussed *supra*, to the extent OneWest was erroneously identified as the Note owner, such an error is of no prejudicial consequence given the fact that note ownership is not germaine to determining who is entitled to enforce the Note and Deed of Trust. *See In re Reinke,* 2011 WL 5079561 at *11; *see also* RCW 61.24 *et seq., and see* RCW 62A.1-201.

***Notice of Sale & Amended Notice of Sale.*** RCW 61.24.040(1) provides that, at least 90 days before sale, the trustee shall record a notice with the county auditor comporting with the form described in subsection (f) of the statute.  Additionally, the trustee must transmit a copy of the notice of sale to certain individuals, including the "borrower and grantor." *See* RCW 61.24.040(1)(b)(i).

A trustee may only "continue the sale for a period… not exceeding 120 days." *See* RCW 61.24.040(6); *see also Albice v. Dickinson*, Slip Opin No. 39265-8 (Div. 2, Sept. 28, 2010). Should the sale be unable to occur within the required 120 days, the trustee must again comply with RCW 61.24.040(1), and record a new Notice of Sale.

Where a trustee's sale is stayed as a result of a federal bankruptcy petition, upon entry of an order dismissing the case, the trustee may set a new sale date, which shall not be less than forty-five days after the bankruptcy court's order. RCW 61.24.130(4).[22]

Here, Plaintiff has set forth a laundry list of allegations in regard to the Notice of Sale and Amended Notice of Sale. Plaintiff's demands and allegations, however, are without merit. For example, each of the charges set forth in the Notice of Sale and Amended Notice of Sale are statutorily provided for, and Defendants are under no obligation to provide a "mathematical

---

[22] Plaintiff's Chapter 7 Bankruptcy was dismissed on October 14, 2010. In accordance with RCW 61.24.130(4), NWTS recorded the Amended Notice of Sale on or about November 4, 2010.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 17 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

equation" or an explanation within the notices as Plaintiff suggests (Plaintiff provides no authority for such a propostion). Plaintiff's allegations suggest additional requirements that a trustee and beneficiary must comply with that are simply not part of the statute-driven nonjudicial foreclosure process requirements. *See* RCW 61.24 *et seq*.

Notwithstanding the lack of merit to Plaintiff's challenges of the Notice of Sale and Amended Notice of Sale, because NWTS must re-issue and record a new notice of sale as more than 120 days have passed from the December 10, 2010 sale date, any arguments concerning the Notice of Sale and Amended Notice of Sale are moot.[23]

In sum, as noted above, even if Plaintiff's claim under the DTA was actionable, the claim would fail because Plaintiff has not shown any prejudice as technical errors that are correctible are not prejudicial. *Amresco*, 119 P.3d at 886–87; *see also Koegel*, 752 P.2d at 388. Moreover, even in states that do recognize substantive claims for wrongful foreclosure, such claims are available only *after* foreclosure and are based upon allegations that the borrower was not in default or upon some technical issue that resulted in damages to the borrower (i.e., a form of prejudice). *Cervantes*, 656 F.3d at 1043-1044.

In this case, a trustee's sale has not occurred.  Plaintiff does not dispute that Plaintiff was in default for failure to make payments as required by the Note and Deed at the time the Notice of Default was posted and mailed. Plaintiff further does not dispute that Plaintiff failed to timely cure the default set forth in the Notice of Default as required to reinstate the loan and prevent recording of the Notice of Trustee's Sale. Although Plaintiff alleges that Defendants failed to comply with the procedural requirements of the DTA, those allegations, which identify hyper-technical errors cannot indefinitely prevent the foreclosure from proceeding absent a showing of prejudice.

Any allegation by the Plaintiff as to uncertainty regarding to whom the debt is owed or whether the foreclosing party has authority to foreclose is similarly insufficient to establish

---

[23] Plaintiff cannot show any prejudice or injury he has suffered by virtue of a notice that did not result in an actual sale of the Property. *See Vawter*, 707 F. Supp. 2d at 1124.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    prejudice even assuming the allegation were true.  Once the trustee's sale occurs, the debt owed

2    by the borrower and secured by the deed of trust is satisfied by the sale.  *See e.g., Udall v. T.D.*

3    *Escrow Svcs., Inc.*, 154 P.3d 882, 890 (2007) (pointing to the DTA's anti-deficiency provision).

4    Even if foreclosure were initiated by a party without authority, the borrower's interests are not

5    injured and no prejudice exists. With no evidence proffered in support of the notion that Plaintiff

6    has suffered prejudice, Plaintiff's claim fails as a matter of law.

       e.   **Securitization of the loan has no effect on OneWest's right to**

8               **foreclosure.**

9          Plaintiff suggests that the supposed securitization of his Note renders both the Note and

10   Deed of Trust void and unenforceable.  However, this Court has recognized that a loan's alleged

11   securitization has no bearing on whether a party may foreclose and does not provide a basis to

12   relieve a borrower or his loan obligations. "[S]ince the securitization merely creates a separate

13   contract, distinct from plaintiffs' debt obligations under the Note and does not change the

14   relationship of the parties in any way, plaintiffs' claims arising out of securitization fail." *Lamb*

15   *v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 5827813, *6 (W.D. Wash. 2011) (citing cases);

16   *Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229, *5 (W.D. Wash. 2011) (citing cases); *In re Veal*,

17   450 B.R.at 912 ("[Plaintiffs] should not care who actually owns the Note—and it is thus

18   irrelevant whether the Note has been fractionalized or securitized—so long as they do know who

19   they should pay.").

20         Thus, Plaintiff's securitization allegations – even assuming they are accurate – do not

21   provide any basis for her to assert claims against OneWest, MERS, or NWTS, or for the Court to

22   declare the loan documents void or prevent Defendants from foreclosing on the Property.

23   Therefore, the fact of securitization does not preclude foreclosure and does not support any

24   claim.

25       **3.   Plaintiff's claim for violation of the DTA fails as a matter of law as to NWTS.**

26          **a.   NWTS, as Trustee, is entitled to foreclose and has complied with the**

           **DTA in carrying out the foreclosure.**

ROUTH
CRABTREE
OLSEN, P.S.

Under the DTA, a trustee so appointed by a beneficiary may foreclose a deed of trust nonjudicially. RCW 61.24 *et seq*. A beneficiary has the power to appoint any trustee that is qualified to act as such pursuant to law. RCW 61.24.010(2). Upon recording the appointment of a successor trustee...the successor trustee shall be vested with all powers of an original trustee. *See* RCW 61.24.010(2) and Exhibit 2. The Deed of Trust grants the trustee [or successor trustee] the power of sale in the event of default. *See* Exhibit 2.

### b.  NWTS was not required to be Trustee to issue the Notice of Default.

Plaintiff claims NWTS began acting as trustee under the Deed of Trust before it had been properly appointed as trustee when it mailed and posted the Notice of Default on January 12, 2010. But under the DTA, the Notice of Default need not be delivered by the trustee, and instead may be delivered by the beneficiary or its agent (as well as the trustee). *See* RCW 61.24.030(8); *see also* RCW 61.24.031 ("A trustee, beneficiary, or *authorized agent*" may issue notice of default) (emphasis added). Thus, an agent of the beneficiary may issue the Notice of Default, which is exactly what happened here, since the Notice of Default makes clear that NWTS was not acting as Trustee, but rather the "duly authorized agent" for OneWest. *See* Exhibit 10. This is common practice. *See, e.g., Klinger v. Wells Fargo Bank, NA*, 2010 WL 4237849 (W.D. Wash. 2010) ("Defendant [NWTS] … as agent to Wells Fargo, mailed a Notice of Default to Plaintiffs and posted the Notice of Default at the Property") (Emphasis added). Thus, the fact that NWTS was not yet appointed as trustee at the time it issued the Notice of Default (acting as OneWest's agent) is irrelevant (since it was acting as an agent, not as trustee) and cannot form the basis for liability.

### c.  NWTS took no action as Trustee until after the Appointment was recorded.

On February 4, 2010, NWTS was named successor trustee upon the recordation of the Appointment. Thereafter, it recorded the Notice of Trustee's Sale and later the Amended Notice of Sale consistent with RCW 61.24 *et seq*. Therefore, the facts demonstrate that NWTS acted properly in proceeding with foreclosure as successor trustee for the beneficiary, OneWest Bank.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 20 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### d. **Standard for Acting in Good Faith.**

Under RCW 61.24.010(4), "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."[24] "This subsection became effective on June 12, 2008, and was intended to address ambiguities regarding the duties of trustee after the Washington Supreme Court imposed dual (and in many ways competing) obligations in *Cox.*" *Thepvongsa v. Reg'l Tr. Services Corp.*, C10-1045 RSL, 2011 WL 307364 (W.D. Wash. Jan. 26, 2011), *citing Cox v. Helenius,* 103 Wn.2d 383, 693 P.2d 683 (1985), Wn. Senate Bill Report, 2008 Reg. Sess. S.B. 5378 (Feb. 9, 2008); Wn. House Rep. Bill Report, 2008 Reg. Sess. S.B. 5378 (March 6, 2008).

In general, "good faith" is also the "absence of intent to defraud or to seek unconscionable advantage." *See* Black's Law Dictionary, 701 (7th ed. 1999); *see also Indus. Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520 (1990).

A "covenant of good faith and fair dealing cannot 'be read to prohibit a party from doing that which is expressly permitted by an agreement'." *Collins v. Power Default Services, Inc.,* 2010 WL 234902 (N.D. Cal. Jan. 14, 2010), *citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992).

In *Mickelson v. Chase Home Fin. LLC,* 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011), the Western District of Washington recently dismissed a "Breach of Good Faith" action against an original trustee, holding that "Plaintiffs would have every trustee conduct a secondary investigation into the papers filed by the beneficiary, which is simply too great a demand."[25]

Under RCW 61.24.030(7):

(a)... for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any

---

[24] RCW 61.24.010(3) also notes that a "trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." *Cf. Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 403, 663 P.2d 104 (1983), *citing Esmieu v. Schrag,* 88 Wn.2d 490, 498, 563 P.2d 203 (1977) (scope of care for trustees which possess fiduciary duties.).

[25] The Court also noted, "Plaintiffs suggest the duty of good faith required Chicago to undertake a separate investigation as to whether the signatures on the papers appointing Chase and Northwest as successor beneficiary and trustee, respectively, were valid or forgeries. While there is no binding authority discussing the scope of the statutory duty of good faith, Plaintiffs' view is unreasonable." *Id.* at *3.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 21 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    promissory note or other obligation secured by the deed of trust.  A declaration by the
2    beneficiary made under the penalty of perjury stating that the beneficiary is the actual
     holder of the promissory note or other obligation secured by the deed of trust shall be
3    sufficient proof as required under this subsection.
     (b) [u]nless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee
4    is entitled to rely on the beneficiary's declaration as evidence of proof required under this
     subsection.

5        In this case, Plaintiff seeks to impose additional requirements on trustees which are not

6    present in the DTA, and implies that reliance on a beneficiary's declaration that is later shown to

7    be inaccurate is – by itself – a violation of the good faith requirement.  Plaintiff, however, lacks

8    legal authority for this reasoning.

9                      **e.  <u>NWTS did not violate its duty of good faith.</u>**

10       Plaintiff alleges NWTS failed to act pursuant to the duty of good faith because 1) it was

11   aware of false statements by OneWest when it prepared the Notice of Default and Appointment,

12   2) was aware of false statements by MERS when it prepared the Assignment, 3) there was a

13   "preexisting relationship between two of the three parties," 4) that NWTS failed to reveal

14   misrepresentations by OneWest and MERS in order to solicit future business from Defendant

15   OneWest for NWTS and Routh Crabtree Olsen, and 5) NWTS violated its duty of good faith by

16   failing to disclose it "was an affiliated entity relationship with Routh Crabtree Olsen" who was

17   Defendant OneWest collection agency and legal counsel."

18       As a threshold matter, if NWTS was never properly appointed the successor trustee, it

19   owed *no* legal duty of good faith under RCW 61.24 to either Plaintiff or the purported

20   beneficiary.

21       Nonetheless, as discussed *supra*, any hyper-technical deficiencies Plaintiff has identified

22   in the Notice of Default, Appointment, Assignment, and Notices of Sale are either irrelevant

23   given the expiration of the Notice of Sale or inconsequential as they offer no prejudice.

24       Additionally, the evidence demonstrates that at all times OneWest was, in fact,

25   authorized to pursue the foreclosure and direct NWTS as an agent or trustee to take steps in

26   furtherance of the foreclosure and that NWTS was in receipt of information that it could

     reasonably rely on to proceed with the foreclosure. Finally, Plaintiff has put forth nothing more

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 22 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

than bare allegations of impropriety based on some "affiliation" with a non-party or "pre-existing relationship." Plaintiff can cite no legal authority or verified facts to support such a theory of liability, and it should be dismissed.

### 4. Plaintiff's claim for violation of the DTA fails as a matter of law as to MERS.

Plaintiff alleges Defendant MERS assisted OneWest and NWTS in preparing for and attempting to conduct an illegal non-judicial foreclosure by executing the Assignment. FAC, ¶ 3.1.1. Plaintiff takes issue with the Assignment as he alleges it was signed by a known "robo-signer" who was not a true employee of MERS. Plaintiff also alleges that the corporate resolution previously provided by Defendants to evidence Brian Burnett's authority to sign on behalf of MERS was inapplicable to the timeframe when he signed the subject Assignment. Finally, Plaintiff takes issue with the language in the Assignment that purported to assign the "note or notes therein described or referred to."

Defendants incorporate the argument as stated in Section (B)(2)(d) of this brief. Moreover, the existing federal case law interpreting Washington's DTA overwhelmingly recognizes that MERS is a proper beneficiary and is able to assign the deed of trust as it did in this case. *See Salmon v. Bank of Am. Corp.*, 2011 WL 2174554, at *8 (E.D. Wash. 2011) (finding no issue where deed of trust expressly allowed for MERS to serve as nominee); *Klinger,* 2010 WL 5138478 at *7; *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102486 (W.D. Wash. 2010) (same); *Vawter*, 707 F. Supp. 2d at 1125–26 (same).[26] The *Klinger* court also dismissed Plaintiff's argument that an assignment of a deed by MERS is improper because MERS "has no beneficial interest in the underlying Debt Obligation." *Compare Klinger,* 2010 WL 5138478, at *7, with FAC, ¶¶ 2.6.

The Ninth Circuit has also rejected these claims: "[T]he disclosures in the deed indicate

---

[26] *See also* See, e.g., *Corales v. Flagstar Bank, FSB,* --- F. Supp. 2d ---, No. C10–1922JLR, 2011 WL 4899957, *5 (W.D. Wash. Oct. 24, 2011); *St. John v. Northwest Trustee Services, Inc.*, No. C11-5382BHS, 2011 WL 4543658, *3 (W.D. Wash. Sept. 29, 2011); *Cebrun v. HSBC Bank USA, N.A.*, No. C10-5742BHS, 2011 WL 321992, *3 (W.D. Wash. Feb. 2, 2011); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102485, *5; *Vawter*, 707 F. Supp. 2d at 1125-26; *Moon v. GMAC Mortgage Corp.*, 2008 WL 4741492 (W.D. Wash. 2008).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 23 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

that MERS is acting 'solely as nominee for Lender and Lender's successors and assigns.' . . . By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents."

*Cervantes*, 656 F.3d at 1042 (Emphasis added).

## C.   PLAINTIFF'S RESPA CLAIM.

### 1.   Plaintiff's RESPA claim under 12 U.S.C. §2605 fails as to OneWest.

RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A).

A "Qualified Written Request" ("QWR") is defined as a written document including the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A loan servicer has the duty to act when it receives a QWR "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e)(1)(A); *see also Joern v. Ocwen Loan Servicing, LLC*, CV-10-0134-JLQ, 2010 WL 3516907 (E.D. Wash. Sept. 2, 2010).

Plaintiff asserts violations of 12 U.S.C. § 2605 based on allegations that he served a purported Qualified Written Request ("QWR"), Dispute of Debt ("Dispute"), and Debt Validation Demand ("DVD") on Defendants on April 27, 2010. Plaintiff further asserts MERS never responded and OneWest responded to Plaintiff advising that Freddie Mac was the investor on the loan and provided Plaintiff copies of the Note, Deed of Trust, and payment history. Plaintiff asserts, however, that OneWest did not provide a "chain of title" for the Note or Deed of Trust, any accounting records, purchase agreements, or other information Plaintiff has requested. Based on the foregoing allegations, Plaintiff concludes that 1) Defendant OneWest violated 12 USC § 2605(e)(2)(C)(1) "by refusing to provide the requested information regarding Plaintiff's

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   loan or providing a reason for the inability the information was unavailable other than it was

2   burdensome in their letter to Plaintiff on May 18, 2010" (Complaint, ¶ 3.2.2); 2) that Defendant

3   OneWest violated 12 USC § 2605(e)(3) by continuing to report derogatory information to the

4   credit bureaus during the 60 days they had to review Plaintiff's QWR; and 3) Defendant MERS

5   violated 12 USC § 2605 when it failed to respond to plaintiff's QWR, Dispute and DVD

6   (Complaint, ¶ 3.2.4).

7     Plaintiff attached as Exhibit 10 to the FAC copies of his QWR, Dispute, and DVD.

8   Plaintiff's QWR, Dispute, and DVD includes of list of 198 demands, which encompass every

9   request imaginable to address Plaintiff's formal "complain[t] about intentional accounting

10  omissions and probable fraud in the factum that took place at the closing in the purchase of my

11  home." *See* FAC, Exhibit 10. Plaintiff's demands provide that "[i]n order to conduct the

12  examination and audit of this loan, I need to have full and immediate disclosure including copies

13  of all pertinent information regarding this loan." Plaintiff goes on to list his voluminous 198

14  demands. *See* FAC, Exhibit 10.

15    Recently Washington courts, in analyzing RESPA claims relating to the alleged non-

16  response or insufficient response to a borrower's alleged QWR, have held that where a

17  borrower's request is related to allegations of underlying fraud or mischief in the transaction, fail

18  to contain specific reasons why they feel their account was in error, put forth a general inquiry

19  regarding the account with broad requests for several categories of documents, and are so

20  voluminous so as to demand "anything and everything that relates to their loan, from its

21  inception, as well as to the Deed of Trust," such letters do not assist the servicer in identifying

22  and investigating any purported discrepancies with the servicing of the loan. *See Bhatti v. Guild*

23  *Mortg. Co.*, C11-0480JLR, 2011 WL 6300229 (W.D. Wash. Dec. 16, 2011); *Eifling v. National*

24  *City Mortg.*, 2011 WL 893233 (W.D.Wash.2011); *and see Segle v. PNC Mortg.*, 10-5655RJB,

25  2011 WL 1098936 (W.D. Wash. Mar. 25, 2011). And, "such broad requests for information and

26  documentation related generally to Plaintiffs' loan are not covered by section 2605 of Title 12."

  *Bhatti* (citing *Derusseau v. Bank of Am., N.A.*, No. 11 CV 1766 MMA (JMA), 2011 WL

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 25 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

5975821, at *4 (S.D.Cal. Nov.29, 2011); *Rymal v. Bank of Am.*, No. CV 10–00280 DAE–BMK, 2011 WL 6100979, at *4 (D.Hawai'i Dec.6, 2011) (dismissing complaint for failing to adequately allege facts to establish that request was "qualified written request" under RESPA); and *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV–11–156–HZ, 2011 WL 3476648, at * 12 (D.Or. Aug.8, 2011) (dismissing a RESPA claim because plaintiffs failed to "attach a copy of their correspondence to the Complaint or to allege facts showing the communication concerned servicing of the loan as defined by the statute")).

As the *Bhatti* Court noted, section 2605 only requires loan servicers to respond to a proper qualified written request by correcting the account discrepancy, explaining why the account is correct, or if the information is unavailable, by providing contact information for someone who can assist the borrower with her inquiry. *See* 12 U.S.C. §§ 2605(e) (2)(A)-(C). And, as the *Segle* Court noted, a "QWR" that largely serves as a repudiation of the national lending industry does not meet the first portion of the definition of a QWR. *Segle* at *6.

Here, like the letters in *Bhatti* and *Segle*, Plaintiff's QWR, Dispute, and DVD "far exceed the scope of information" OneWest is required to provide in a response. And, Plaintiff's letter appears to be more akin to a repudiation of the lending industry than a letter including specific reasons he believes the account to be in error. OneWest had no statutory obligation under RESPA to provide Plaintiff "the extraordinary amount of information and documents" he requested in his letters. *Bhatti*; see also *See Derusseau*, 2011 WL 5975821, at *4. Plaintiff concedes OneWest responded within the required time frame, provided a payment history so as to verify the payments made on the account as well as copies of the Note and Deed of Trust. Given that Plaintiff's QWR did not meet the definition of a QWR, OneWest was under no obligation to respond. To the extent Plaintiff's letter could be construed as a QWR, Defendant OneWest satisfied its obligation in responding and providing information to validate the debt.

### 2. Plaintiff's RESPA claim under 12 USC § 2605(e)(3) fails as to OneWest.

12 U.S.C. § 2605(e)(3) provides that during the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 26 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  regarding the borrower's payments, a servicer may not provide information regarding any

2  overdue payment, owed by such borrower and relating to such period or qualified written

3  request, to any consumer reporting agency (as such term is defined under section 1681a of Title

4  15).

5      Plaintiff alleges that OneWest violated 12 U.S.C. § 2605(e)(3) by continuing to report

6  derogatory information to the credit bureaus during the 60 days they had to review Plaintiff's

7  QWR. FAC, ¶ 3.2.6.

8      Because Plaintiff's request did not meet the definition of a QWR, the duties under 12

9  U.S.C. § 2605(e)(3) to refrain from reporting derogatory information to credit reporting agencies

10  were not triggered

11      **3.  Plaintiff's RESPA claim fails as to MERS.**

12      As a threshold matter, no RESPA provision is applicable to MERS. 12 U.S.C. § 2605

13  pertains to the servicing of mortgage loans and administration of escrow accounts. Pursuant to §

14  2605(i), " 'servicing' means receiving any scheduled periodic payments from a borrower ... and

15  making the payments of principal and interest and such other payments with respect to the

16  amounts received from the borrower." *See also Moseley v. CitiMortgage Inc.*, C11-5349RJB,

17  2011 WL 5175598 (W.D. Wash. Oct. 31, 2011).

18      Plaintiff does not allege that MERS serviced his loan or collected payments on the loan,

19  and there is no evidence to suggest that MERS acted in the capacity as a loan servicer.

20  Identification of MERS as the beneficiary under the Deed of Trust alone does not bring MERS

21  under the purview of RESPA such that MERS had any obligation to respond to Plaintiff's letter,

22  and Plaintiff has cited no authority that supports the notion that MERS is subject to the

23  requirements under RESPA.

24      Moreover, as discussed *supra*, Plaintiff's purported QWR, Dispute, and DVD do not

25  meet the definition of a QWR, and therefore, even if Plaintiff could allege MERS acted a

26  servicer for his loan, OneWest had no obligation to respond to the purported QWR, Dispute, and

DVD in this case.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 27 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   **D.   PLAINTIFF'S FAIR DEBT COLLECTION PRACTICES ACT CLAIM.**

2          Here, the Court has determined that a claim under the FDCPA could only be plausible

3   pursuant to an allegation under 15 U.S.C. § 1692f(6).

4          For purposes of Section 1692f(6), a debt collector is "any person who uses any

5   instrumentality of interstate commerce or the mails in any business the principal purpose of

6   which is the enforcement of security interests." 15 U.S.C. 1692a(6). Section 1692f(6) prohibits a

7   debt collector from taking or threatening to take "non-judicial action to effect dispossession or

8   disablement of property if – (A) there is no present right to possession of the property claimed as

9   collateral through an enforceable security interest; (B) there is no present intention to take

10  possession of the property; or (C) the property is exempt by law from such dispossession or

11  disablement.

12         As the Court has noted, Plaintiff's theory under the FDPCA is that neither NWTS or

13  OneWest has the present right to possession of the property through nonjudicial foreclosure

14  because neither they nor their principals were the holders of the Note.

15         The contention that OneWest and NWTS "did not have a right to possession of the

16  subject real property" is legally flawed, however, and therefore fails to bring either OneWest or

17  NWTS within the requirements of the FDCPA.  In order for a claim under section 1692f(6) to

18  suceed, as a matter of law, Plaintiff would need to establish not only that OneWest and NWTS

19  were enforcing a security interest, but also that OneWest and NWTS were threatening to

20  effectuate dipossession of the Property where there was no present right to possess the collateral.

21  An examination of the nature of a nonjudicial foreclosure proceeding reveals that allegations that

22  OneWest and NWTS did not have a "right to possession" fail as a matter of law.

23         The act of enforcing a security interest is not an action to effect dispossession of property

24  or assert a present right to possession. Nonjudicial foreclosure is "a process where property that

25  secures a defaulted obligation is sold by a trustee pursuant to [the] power of sale contained in a

26  deed of trust, without recourse to the courts." *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097,

1105 (9th Cir. 1998). The conduct of OneWest and NWTS in this case is therefore limited to that

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

which they are permitted to accomplish under the terms of the Note and Deed and pursuant to the DTA in enforcing the security interest. A nonjudicial foreclosure proceeding is not an action wherein the trustee or beneficiary are effecting dispossession of property or asserting a present "right to possess." Rather, a nonjudicial foreclosure action in Washington is an action to establish title to the property. In Washington, "[t]he trustee holds an interest *in the title* of the grantor's property on behalf of the lender." *Vawter,* 707 F. Supp. 2d at 1123. (Emphasis added). This concept is also highlighted by the DTA's third public policy objective, which is to promote the stability of land titles. *Cox v. Helenius*, 693 P.2d 683 (1985).

The effectuating of "dispossession" of the property and the "right to possess" the property occurs only **after** the foreclosure process has completed.  A sale through nonjudicial foreclosure conveys to the purchaser at the sale the rights, title, and interest possessed by the grantor, or borrower, when the borrower originally executed the deed of trust to the grantee, or lender. *See* RCW 61.24.050. Specifically, "the trustee sells the property at auction, the purchaser pays the price bid, and the trustee executes the deed to the purchaser *at which time* 'all of the right, title, and interest' in the property is conveyed." *Udall v. T.D. Escrow Services, Inc.*, 154 P.3d 882, 887 (Wash. 2007) (Emphasis in original). Moreover, the statutory scheme of the DTA grants the purchaser at a trustee's sale the *right to possession* on the twentieth day following the sale. RCW 61.24.060.  Given the foregoing, any claim under section 1692f(6) fails as a matter of law because OneWest and NWTS were neither "taking or threatening to take any nonjudicial action to effect dispossession or disablement" of the Property by virtue of their actions to effectuate the foreclosure nor were they asserting a "present right to possess" the Property via enforcement of the security interest. A logical extension of this argument (essentially that OneWest and NWTS violated the FDCPA by adhering to the requirements of the DTA in effectuating nonjudicial foreclosure) would lead to every nonjudicial foreclosure proceeding in Washington resulting in a *per se* violation of the FDCPA. Such an attempt to stretch the law is without merit. Therefore, OneWest's conduct as beneficiary and NWTS' conduct as successor trustee does not fall within Section 1692f(6) of the FDCPA and Plaintiff's claim fails as a matter

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   of law.

2   Given that none of Plaintiff's contentions under the FDCPA can succeed as a matter of

3   law, it appears as though the Plaintiff's allegations under the FDCPA have been construed as a

4   collateral attack on NWTS' authority to act as foreclosure trustee in this case. To the extent that

5   Plaintiff's FDCPA claims are premised upon NWTS' authority to act as foreclosure trustee, the

6   claims fail as a matter of law. NWTS' authority to act is described *supra* in Section B(3)(a)-(e).

7   **E.   PLAINTIFF'S CONSUMER PROTECTION ACT CLAIM.**

8   The five elements of a Consumer Protection Act (CPA) claim under RCW 19.86 are: (1)

9   an unfair or deceptive act or practice, (2) the act or practice occurred in the conduct of trade or

10  commerce, (3) the act or practice impacted the public interest, (4) an injury to the plaintiff's

11  business or property, and (5) a causal link between the unfair or deceptive act or practice and the

12  injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 719 P.2d

13  531 (1986). Failure to meet any one of these elements is fatal and necessitates dismissal. *Sorrel*

14  *v. Eagle Healthcare,* 110 Wn. App. 290, 298 (2002). "[W]hether a particular action gives rise to

15  a CPA violation is reviewable as a question of law." *Columbia Physical Therapy Inc., P.S. v.*

16  *Benton Franklin Orthopedic Assoc., P.L.L.C.,* 168 Wn.2d 421, 228 P.3d 1260 (2010), *citing*

17  *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wn.2d 133, 930 11 P.2d 288 (1997).

18  "Implicit in the definition of 'deceptive' under the CPA is the understanding that the

19  practice misleads or misrepresents something of material importance." *Holiday Resort Comm.*

20  *Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App. 210, 135 P.3d 499 (2006). But "acts performed

21  in good faith under an arguable interpretation of existing law do not constitute unfair conduct

22  violative of the consumer protection law." *Leingang, supra.* at 155.

23  Plaintiff can meet the first CPA element in only two ways: he may show either that an act

24  or practice (i) "has a capacity to deceive a substantial portion of the public," or (ii) that "the

25  alleged act constitutes a per se unfair trade practice." *See Saunders v. Lloyd's of London,* 113

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 30 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Wn.2d 330 (1989), *quoting Hangman, supra.*[27]

The third factor articulated in *Hangman Ridge* also requires "a showing of impact to public interest separate and apart from showing an unfair and deceptive act." *Holiday Resort, supra.* at 226, *citing Hangman Ridge, supra.* Courts may look to a number of factors, including:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.*

In a private dispute, it is more difficult to show public interest. *Hangman Ridge, supra.* at 790; *see also Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009) (dismissing CPA claim where defendant did not advertise to the general public).

"Mere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim. *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006). Instead, the test to determine the public interest requirement is based upon the context of the practice. "Where the transaction was essentially a consumer transaction... these factors are relevant to establish [a] public interest... (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?" *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,* 162 Wn.2d 59, 170 P.3d 10 (2007).

Under the fourth *Hangman Ridge* factor, the alleged acts must also result in injury to Plaintiff. *See Hangman Ridge* at 792, *citing Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 617 P.2d 415 (1980). The injury must be expressly "*by*" a violation of RCW

---

[27] An unfair trade practice "requires a showing that a statute has been violated which contains a specific legislative declaration of the public interest impact." *Hangman*, 105 Wn.2d at 791. Plaintiff does not allege that either.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    19.86.020, meaning that "but for" a defendant's conduct, the alleged injury would not have

2    occurred. *See Carlile v. Harbour Homes, Inc.*, 147 Wn.App. 193, 194 P.2d 280 (2008).

3         Even if Plaintiff did somehow allege facts supporting the other four elements of a CPA

4    claim, the final *Hangman Ridge* factor requires that he also allege a causal link between a

5    defendant's unlawful actions and a resulting injury. *See Indoor Billboard, supra.*

6         The State Supreme Court has clarified that reliance on false or deceptive acts is not a

7    element under the CPA; rather, the Court concluded that "where a defendant has engaged in an

8    unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact,

9    our case law establishes that there must be some demonstration of a causal link between

10   misrepresentation and the plaintiff's injury." *Indoor Billboard*, 162 Wn.2d at 81-82. A plaintiff

11   must demonstrate that the "injury complained of ... would not have happened" if not for

12   defendant's acts. *Id.* at 82.

13            **1.  Plaintiff's claim under the Consumer Protection Act fails as a matter of law**

14                **as to OneWest.**

15        Plaintiff alleges OneWest violated the Consumer Protection Act by participating in and

16   causing NWTS to initiate a nonjudicial foreclosure when OneWest knew it did not have

17   ownership of note.

18        ***Deceptive Act or Practice.*** As a matter of law, any representation about ownership of the

19   underlying loan is "largely immaterial" under both case law and the U.C.C., and therefore is not

20   of "material importance" so as to qualify as deceptive. *In re Reinke*, 2011 WL 5079561 at *11;

21   *see also Amresco Independence Funding, Inc.*, 119 P.3d 884, 886–87; *and see Koegel*, 752 P.2d

22   385, 388. With no deceptive act or practice, Plaintiff's CPA claim fails as a matter of law.

23        ***Public Interest Impact.*** Plaintiff cannot show a public interest impact. Plaintiff puts forth

24   speculative assertions as to how OneWest's conduct has caused home values decrease and

25   creates risk and **potential** losses for buyers at trustee auctions. However, Plaintiffs allegations

26   completely speculative and are not support by any shred of evidence. Here, Plaintiff has alleged

     nothing more than facts relating to his own foreclosure and therefore has plead nothing to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 32 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

support claims of decreased home values or losses for buyers. As "[m]ere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim, Plaintiff's claim fails. *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn. App. 835, 854 n. 27, 138 P.3d 638 (2006).

*Damages.* Plaintiff claims he has been damaged in the following manner as a result of OneWest's CPA violation as described above: 1) title to the property has been clouded, 2) his credit report has been damaged, and 3) he has suffered punitive injury by forcing him to continue this litigation.

It is unclear how a representation of who owns the underlying loan constitutes a cloud on title. Nonetheless, any cloud on title has little effect on plaintiff, the defaulting borrower on a property currently in foreclosure. Upon foreclosure, Plaintiff's interest in the property will be extinguished. Thus, the condition of title is of no relevance to Plaintiff.

Additionally, it is unclear how a representation of who owns the loan would damage Plaintiff's credit report. Any damage to Plaintiff's credit is a direct result of his failure to make good on his commitment to repay his loan.

Finally, Plaintiff appears to have confused the parties' roles in this lawsuit. Plaintiff filed this lawsuit, and Defendants are entitled to put on a defense. In fact, it is only Plaintiff who has unilateral authority to cause the litigation to cease, not Defendants.

In sum, as a matter of law, Plaintiff cannot prove necessary elements to prevail on his CPA claim as to OneWest and therefore OneWest is entitled to summary judgment in its favor.

### 2. Plaintiff's claim under the Consumer Protection Act fails as a matter of law as to MERS.

Plaintiff claims that MERS violated the CPA by assigning ownership to a note it knew it did not own and by assigning beneficiary status to the deed of trust it knew not to be the note holder which, in turn, kept plaintiff from learning the identities of the real party in interest.

### 3. Plaintiff's claim under the Consumer Protection Act fails as a matter of law

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 33 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    **as to NWTS.**

2    Plaintiff alleges that NWTS violated the CPA when it began its duties as trustee after

3    having already been a witness and participant of Defendants MERS and OneWest filing

4    misrepresentations to the ownership of the note and that it was aware MERS was not the owner

5    yet but caused the Assignment to be recorded and that it knew OneWest was not the

6    owner/beneficiary of the Note but continued with the foreclosure.

7             **a.   Deceptive Act or Practice.**

8    Plaintiff cannot show any deceptive act or practice by NWTS. As discussed at length

9    *supra*, neither OneWest nor MERS need to be the owner of the note to take action in furtherance

10   of a foreclosure. Moreover, as discussed *supra*, a representation as to note ownership is

11   immaterial. Finally, "acts performed in good faith under an arguable interpretation of existing

12   law do not constitute unfair conduct violative of the consumer protection law." *Leingang, supra.*

13   at 155. Thus, even if Plaintiff could show that ownership was somehow material, there is nothing

14   to suggest to NWTS' conduct was anything beyond acts performed in good faith under an

15   arguable interpretation of existing law.

16            **b.   Public Interest Impact.**

17   Plaintiff cannot show a public interest impact. Plaintiff puts forth grand speculation as to

18   how NWTS' conduct effects thousands of Washington homeowners, potential real estate buyer,

19   and investors and that they conduct has made home values decrease. However, Plaintiffs

20   allegations completely speculative and are not support by any shred of evidence. Plaintiff has

21   alleged nothing more than facts relating to his own foreclosure. And, while Plaintiff can

22   speculate, "[m]ere speculation that an alleged unfair or deceptive act had the capacity to deceive

23   a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim.

24   *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing*

25   *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006).

26            **c.   Damages.**

Plaintiff claims he has been damaged in the following manner as a result of NWTS' CPA

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 34 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    violation as described above: 1) title to the property has been clouded, 2) **if** the sale goes

2    forward, he will lose his home, and, 3) he has suffered stress, loss of sleep, and illness.

3           As with the damages claimed against OneWest, Plaintiff has failed to show any injury to

4    himself as a result of an apparent cloud on title. Moreover, Plaintiff's statement of damages

5    touches on something of great importance, **if** the property is sold, he will lose his home. As

6    Plaintiff concedes, the property has not been sold, and therefore he has suffered no injury. Courts

7    have agreed that were no sale of the property has actually occurred, a borrower plaintiff cannot

8    show he is damaged by conduct to carry out the nonjudicial foreclosure. *In re Reinke*, BR 09-

9    19609, 2011 WL 5079561 (Bankr. W.D. Wash. Oct. 26, 2011). Moreover, courts have agreed

10   that mental distress alone does not establish injury to support a CPA claim. *Id. (citing Stephens v.*

11   *Omni Ins. Co.*, 138 Wn. App. 151, 180, 159 P.3d 10, 2007 WL 1180497 (2007) *aff'd sub nom.*

12   *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 204 P.3d 885, 2009 WL 866274

13   (2009)). Finally, incurring time and money to prosecute a CPA claim does not suffice as an

14   injury to business or property. *Id. (citing Sign–O–Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64

15   Wash.App. 553, 563, 825 P.2d 714 (1992)).

16          Here, Plaintiff has, in fact, received the benefit of living in the home for well over two

17   years without making even one mortgage payment. This alone, counters any damage he has

18   suffered as a result of a hyper-technical error in the documentation supporting the foreclosure.

19          Accordingly, Plaintiff cannot prove necessary elements to support his CPA claim and

20   NWTS is entitled to summary judgment.

21

22   **F.    PLAINTIFF'S FRAUD CLAIM.**

23          **1.   Legal Standard for Fraud.**

24          To sustain a finding of common law fraud in Washington, the trial court must make

25   findings of fact as to each of the nine elements of fraud. *Howell v. Kraft*, 10 Wn. App. 266, 517

26   P.2d 203 (1973). The elements of fraud are (1) a representation of an existing fact; (2) its

     materiality; (3) its falsity; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that it

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 35 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  be acted upon by the person to whom it is made; (6) ignorance of the falsity on the part of the

2  person to whom the representation is addressed; (7) the latter's reliance on the truth of the

3  representation; (8) the right to rely upon it; and (9) consequent damage. *Chen v. State,* 86 Wn.

4  App. 183, 188, 937 P.2d 612 (1997). Each element of fraud must be proven by clear, cogent, and

5  convincing evidence. *Id.*

6  An essential element of a fraud claim under Washington law is that the plaintiff suffers

7  consequent damage from the fraud. *See Blanton v. Mobil Oil Corp.,* 721 F.2d 1207, 1218 (9th

8  Cir. 1983); *see also A.B.C. Packard, Inc. v. General Motors Corp.,* 275 F.2d 63, 71 (9th Cir.

9  1960) ("The burden is on the plaintiff to prove all essential elements, and the absence of any of

10  them is fatal to a recovery").

11         **2.  Plaintiff's Fraud claim fails as a matter of law as to OneWest, NWTS, and**

12            **MERS.**

13            **a.  "Falsities" identified by Plaintiff are immaterial.**

14        Plaintiff cannot maintain a fraud claim because he has not identified any material

15  representation upon which he relied, has not demonstrated knowledge of the immaterial falsities

16  he alleges, has not demonstrated intent, and has not demonstrated damages casually linked to the

17  alleged immaterial falsities.

18        Plaintiff's fraud claim is premised on alleged falsities he has discovered relating to the

19  Notice of Default, Notice of Trustee's Sale, Amended Notice of Sale, Appointment, and

20  Assignment.

21        As Plaintiff alleges, the falsities includes (1) statements that OneWest was the Owner and

22  Beneficiary, (2) erroneous statements regarding charges by NWTS in the Notice of Sale and

23  Amended Notice of Sale, and (3) language relating to "transfer of the note" in the assignment of

24  deed of trust by MERS to OneWest.

25        As discussed at length *supra,* OneWest is a beneficiary entitled to enforce the Note and

26  Deed of Trust and the issue of ownership is immaterial.

          **b.  Plaintiff has not identified any damages suffered casually linked to**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 36 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1      **the alleged falsities.**

2      Washington courts require a causal connection between the alleged omission and the loss.

3      *First Maryland Leasecorp v. Rothstein,* 72 Wn. App. 278, 282, 864 P.2d 17 (1993) ("In damage

4      actions based on common law fraud, a party is entitled to judicial relief only if damages have

5      occurred as a consequence of the fraudulent acts").

6      Plaintiff alleges the following damages in support of his fraud claim: (1) Plaintiff now

7      has an illegal foreclosure on his credit report, which has reduced his ability to obtain credit and

8      job opportunities; (2) Plaintiff has had to turn away from his life and career to "fight the fraud"

9      resulting in loss of income; and (3) title to the Property has been clouded.

10     First, as discussed *supra*, damage to Plaintiff's credit report is a direct result of Plaintiff's

11     undisputed default on the underlying loan. Even if Plaintiff could show that any of the

12     representations he complains of were materially false, he cannot show a causal link to his

13     damaged credit. Neither NWTS nor MERS (and there are no allegations to suggest otherwise)

14     report to credit agencies, and while OneWest has reported Plaintiff's account in default, Plaintiff

15     does not dispute this his account has been in default since October 1, 2009.

16     Second, like his CPA claim, Plaintiff cannot claim damages for time he incurred to

17     pursue a meritless fraud claim. *See e.g., In re Reinke*, BR 09-19609, 2011 WL 5079561 (Bankr.

18     W.D. Wash. Oct. 26, 2011); *see also Sign–O–Lite,* 64 Wash.App. at 564, 825 P.2d 714.

19     Third, there is no requirement that a transfer of ownership of the underlying note be

20     recorded, and, in practice, ownership of promissory notes is not tracked through county property

21     records. Thus, any declaration of ownership or transfer of ownership would have no effect on the

22     condition of title, and would have no impact on those who are intended to benefit from county

23     property records, third party purchasers, investors, buyers…not the defaulting borrower like

24     Plaintiff. Moreover, any cloud on title has little effect on the defaulting Plaintiff as his interest in

25     the property will be extinguished upon the foreclosure. Again, the condition of title is of no

26     relevance to Plaintiff and cannot have caused any injury to Plaintiff.

**G.     PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.**

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Under Washington law, a plaintiff proves a civil conspiracy by showing "by clear, cogent

2  and convincing evidence that (1) two or more people contributed to accomplish an unlawful

3  purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the

4  conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v.*

5  *State of Washington,* 84 Wn. App. 332, 350–51, 929 P.2d 448 (1996).  Because the conspiracy

6  must be combined with an unlawful purpose, civil conspiracy does not exist independently—its

7  viability hinges on the existence of a cognizable and separate underlying claim. *N.W. Laborers–*

8  *Employers Health & Sec. Trust Fund v. Philip Morris. Inc.,* 58 F.Supp.2d 1211, 1216

9  (W.D.Wash.1999). A conspiracy claim fails if the underlying act or claim is not actionable. *Id.*;

10  *Wilson v. State,* 84 Wash. App. 332, 350–51, 929 P.2d 448 (1996).

11    Plaintiff's civil conspiracy claim is premised on the allegation that OneWest, NWTS, and

12  MERS conspired together to initiate and execute an unlawful nonjudicial foreclosure against

13  Plaintiff by filing false documents and executing false statements in the Notice of Default,

14  Notice of Trustee Sale,  Amended Notice of Sale, Appointment, and Assignment. In other words,

15  Plaintiff's civil conspiracy claim is premised on the same allegations that support Plaintiff's

16  claims for DTA violations, CPA violations, and Fraud. However, because none of the

17  aforementioned claims are actionable as a matter of law, Plaintiff's civil conspiracy claim fails as

18  well. Moreover, as the evidence demonstrates, the foreclosure was not unlawful or wrongful.

19  OneWest held the Note and was therefore authorized to enforce the Note and Deed of Trust

20  notwithstanding an assignment of deed of trust or a "declaration of" or showing of ownership."

21  RCW 62A.3-205(b); RCW 61.24.005(2). Plaintiff simply cannot establish OneWest falsely

22  represented the identity of the beneficiary. Compl. ¶¶ 3.8-3.8.3.4. Similarly, Plaintiff cannot state

23  a claim based on the Notice of Default and Appointment of Successor Trustee because OneWest

24  could, as it did, direct NWTS to issue the Notice of Default as OneWest's "agent," and

25  subsequently appointed NWTS as successor trustee. *See* RCW 61.24.030, .031, .040.

26  Accordingly, the claim fails as a matter of law.

## H.    PLAINTIFF'S SLANDER OF TITLE CLAIM.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    To prevail on a claim for slander of title, plaintiff must prove the following that the

2    alleged slanderous statements were: (1) false; (2) maliciously published; (3) spoken with

3    reference to some pending sale or purchase of the property; (4) resulting in a pecuniary loss or

4    injury to the claimant; and (5) be such as to defeat the claimant's title. *Brown v. Safeway Stores,*

5    *Inc.,* 94 Wn.2d 359, 375, 617 P.2d 704 (1980).

6    Plaintiff's slander of title claim fails because Plaintiff cannot demonstrate malice or any

7    injury or loss.

8    "Malice is not present where the allegedly slanderous statements were made in good faith

9    and were prompted by a reasonable belief in their veracity." *Brown,* 94 Wn.2d at 375.

10   In *Brown,* an action was initiated against Safeway for an alleged breach of a written

11   lease. *Brown,* 94 Wn.2d at 362. Safeway claimed the action constituted slander of title

12   precluding a proposed sublease to a third party. *Brown,* 94 Wn.2d at 363. The court held "[t]he

13   initiation of litigation to determine the rights of the respective parties to a lease cannot, without

14   more, be characterized as malicious conduct." *Brown,* 94 Wn.2d at 375. Likewise, the initiation

15   of foreclosure proceedings cannot be deemed malicious in the context of a bona fide dispute over

16   mortgage payments. *See, e.g., Hulse v. Owen Fed. Bank, FSB,* 195 F.Supp.2d 1188, 1208 (2002).

17   By Plaintiff's own allegations of damages, it is clear that Plaintiff has, in fact, suffered no

18   damages. The property has not been sold, and therefore Plaintiff has incurred no loss. An

19   allegation of what may occur is not sufficient to demonstrate actual damages. And, as discussed

20   *supra*, the damages Plaintiff would suffer as a result of the foreclosure moving forward are a

21   direct result of his default. As necessary elements to support the claim are missing, Defendants'

22   slander of title claim fails.

23   **I.   THERE IS NO FURTHER BASIS FOR AN INJUNCTION.**

24   The power to modify, continue, or dissolve a temporary or permanent injunction, whether

25   preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court,

26   according to the facts and circumstances of the particular case, and its action in exercise of that

discretion will not be disturbed on appeal in the absence of a clear showing of abuse. *United*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 39 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *States v. Swift & Co.*, 286 U.S. 106, 114 (1932). The dissolution of a preliminary injunction, a

2   temporary or provisional injunction or restraining order, or the modification of an injunction or

3   restraining order is largely a matter of judicial discretion to be determined by the facts of each

4   particular case. *Id.* The court is charged with the same exercise of discretion it exercised in

5   granting or denying injunctive relief. *Id.* While the power exists to modify or dissolve an

6   injunction, courts generally only do so when there is a change in the operative facts, a change in

7   decisional law, or a change in statutory law. *Bedford v. Sugarman*, 112 Wn.2d 500, 505 (1989).

8         In the Preliminary Injunction, the court noted that based upon what was before the court

9   as of the date of entry, the court had not been able to determine 1) whether OneWest had

10  authority to appoint a successor trustee on January 27, 2010, 2) whether the Notice of Default

11  complied with the statutory requirements, and 3) whether OneWest is the beneficiary as defined

12  by the DTA. *See* Dkt. 24.

13        Moreover, as the court noted in its Order Denying Plaintiff's Motion for Relief from

14  Preliminary Injunction, Plaintiff has failed to comply with the terms of the Preliminary

15  Injunction by failing to make any payment since May 13, 2011. As the court further noted,

16  unless the Plaintiff brings his registry account current for payments due June 2011 through

17  March 2012 by April 2, 2012, the injunction will be lifted. Dkt. 94.

18        Moreover, in support of this motion, Defendant OneWest has submitted a Declaration

19  attesting to the fact that OneWest took possession of Plaintiff's Note on or about March 19,

20  2009, and has provided the Custodial Agreement evidencing the fact that the Note is now held by

21  the Custodian for the benefit of OneWest. Accordingly, as OneWest has been in possession of

22  Plaintiff's Note since on or about March 19, 2009, a date clearly prior to both the Notice of

23  Default and the Appointment, it is clear that when the Notice of Default was sent by NWTS as

24  an agent to OneWest on January 12, 2010, OneWest was the beneficiary such that the Notice of

25  Default was authorized. Similarly, OneWest, as beneficiary in possession of the Note, was

26  authorized on February 4, 2010, to appoint NWTS as successor trustee. Therefore, the

Defendants have demonstrated OneWest's current and prior authority to enforce the note such

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FAC – PAGE 40 OF 41
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    that the injunction should be dissolved.

2        Upon dissolution of the Preliminary Injunction, the Defendants move the court, pursuant

3    to RCW 61.24.130(3), to set a sale date for the Property to be sold, which is not less than forty-

4    five days from entry of the order granting summary judgment and dissolving the Preliminary

5    Injunction.

6                              **VI.    CONCLUSION**

7        Based on the foregoing, Defendants respectfully request that this court enter and order on

8    summary judgment in favor of Defendants as to all of Plaintiff's claims, dissolve the injunction

9    entered on January 25, 2011, and set a sale date pursuant to RCW 61.24.130(3).

10       DATED this _____ day of March, 2012.

11

12                              **ROUTH CRABTREE OLSEN, P.S.**

13

14                              /s/ Heidi E. Buck

15                              Heidi E. Buck, WSBA No. 41769
                                Of Attorneys for Defendants OneWest

16                              Bank, Mortgage Electronic Registration
                                Systems, Inc., and Northwest Trustee
                                Services, Inc.

17

18

19

20

21

22

23

24

25

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131