The Honorable Judge Robert S. Lasnik

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JAMES MCDONALD,

        Plaintiff,

        v.

ONEWEST BANK, FSB, NORTHWEST
TRUSTEE SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., INDYMAC BANK FSB, DOES 1-50,

        Defendants.

No.  C10-1952 RSL

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NOTING DATE: MARCH 30, 2012**

## I.    INTRODUCTION

COME NOW, OneWest Bank, FSB ("OneWest"), Mortgage Electronic Registration Systems Inc. ("MERS"), and Northwest Trustee Services, Inc. ("NWTS") (collectively "Defendants") and submit the following in opposition to Plaintiff's partial motion for summary judgment ("Plaintiff's Motion").[1]

//

///

---

[1] Defendants must acknowledge that this following response slightly exceeds the page limit as set forth in Local Court Rule 7(e)(3), which limits summary judgment response briefs to 24 pages. However, Defendants must point out that all of Plaintiff's pleadings, including the motion for summary judgment, appear to violate Local CR 10(e) in both font size and spacing requirements. Plaintiff's pleadings appear to be formatted in 9.5 point Arial font and less than double-spaced. It appears that if Plaintiff's motion was formatted to fit local rules, it would be over-length as well, and explains Defendants' difficulty in limiting their response to the page limits. At such short notice, Defendants did not have adequate time to move the court for leave to file an over-length response.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## II. FACTS

On or about January 8, 2007, Plaintiff James B. McDonald received a loan in the amount of $389,481.60. The loan was evidenced by a promissory note ("Note"), which was signed by Plaintiff.[2] *See* Note, Dkt. 121, Exhibit 1; *see also* Dkt. 123 at ¶ 2.

To secure repayment of the Note, Plaintiff granted to Mortgage Electronic Registration Systems as nominee for the original lender, Indymac Bank, FSB and its successors and assigns, a deed of trust (the "Deed of Trust"). The Deed of Trust encumbers the real property commonly known as 14840 119th PL NE, Kirkland, Washington 98034 (the "Property"). The Deed of Trust was recorded on January 10, 2007, under King County Auditor's File No. 20070110002077. *See* Deed of Trust, Dkt. 121, Exhibit 2; *see also* Dkt. 123 at ¶ 3.

Thereafter, Indymac Bank, FSB sold Plaintiff's Note to Federal Home Loan Mortgage Company ("Freddie Mac"). FAC, ¶ 2.12. Indymac Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac. *See* Dkt. 123 at ¶ 4. Freddie Mac has remained the investor and owner of the Note. *See* Dkt. 123 at ¶ 4.

IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. *See* OTS Order No. 2008-24 (July 11, 2008), Dkt. 121, Exhibit 3; *see also* Dkt. 123 at ¶ 5.[3] IndyMac Federal Bank ("IMFB") was created and the FDIC was appointed Conservator. *See* Excerpts from the Purchase and Assumption Agreement, Dkt. 121, Exhibit 4; *see also* Dkt. 123 at ¶ 6.[4]

On March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the assets including the rights to service the loan presently at issue to OneWest Bank, FSB. *See*

---

[2] On or about March 22, 2012, Defendants filed a motion for summary judgment. Dkt. 121. Defendants' motion was accompanied by the Declaration of Vonnie McElligott and Declaration of Charles Boyle. Dkt. 122, 123, respectively. Defendants have submitted to this response as Appendix 1 and 2 the McElligott and Boyle Declarations as well as copies of the Exhibits authenticated by those Declarations which are attached to Defendants' motion for summary judgment.
[3] The Office of Thrift Supervision Order No. 2008-24, dated July 11, 2008, can be found, in entirety, online at http://www.ots.treas.gov/_files/680018.pdf.
[4] The Purchase and Assumption Agreement, in entirety, can be found online at http://www.fdic.gov/bank/individual/failed/IndyMac_P_and_A.pdf.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Excerpts from the Master Purchase Agreement,[5] Dkt. 121, Exhibit 5; *see also* Dkt. 123 at ¶ 7; *see*

2   *also* Excerpts from the Loan Sale Agreement,[6] Exhibit 6, Dkt. 121 and Dkt. 123 at ¶ 7; *see also*

3   Excerpts from the Servicing Business Asset Purchase Agreement,[7] Exhibit 7, Dkt. 121 and Dkt.

4   123 at ¶ 7.

5        OneWest Bank is the current servicer; IndyMac Mortgage Services is a division of

6   OneWest Bank. *See* Dkt. 123 at ¶ 8. OneWest services the loan on behalf of Freddie Mac in

7   accordance with Freddie Mac's Single-Family Seller/Servicer Guide (the "Freddie Mac Servicer

8   Guide").[8,9] *Id.* As part of the Freddie Mac Servicer Guide, OneWest has possession of the blank

9   endorsed Note through a document custodian, Deutsche Bank National Trust Co. ("Custodian").

10  *See* Custodial Agreement, Dkt. 121; *see also* Dkt. 123 at ¶ 9. OneWest is entitled to collect

11  payments, initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible

12  modification in accordance with investor guidelines.[10] Dkt. 123 at ¶ 10.

13       OneWest has been in possession of the Note and therefore the holder since on or about

14  March 19, 2009, and the Note has been held by the Custodian since on or about May 12, 2009.

---

[5] The Master Purchase Agreement, in entirety, is available online at
http://www.fdic.gov/about/freedom/IndyMacMasterPurchaseAgrmt.pdf.
[6] The Loan Sale Agreement, in entirety, is available online at
http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf.
[7] The Servicing Business Asset Purchase Agreement, in entirety, is available online at
http://www.fdic.gov/bank/individual/failed/ServicingBusinessAssetPurchaseAgreement.pdf.
[8] The Freddie Mac Servicer Guide is available, in entirety, at http://www.allregs.com/tpl/Main.aspx.
[9] Congress created the Federal Home Loan Mortgage Corporation ("Freddie Mac") in order to promote a stable
secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery,
and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans;
rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage
investments and to improve the distribution of investment capital available for residential mortgage financing. *See*
12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708
(N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir.
1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced
for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes
collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.
[10] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Servicer
Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at
http://www.allregs.com/tpl/Main.aspx.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Dkt. 123 at ¶ 11. *See also* Dkt. 121, Exhibit 8.[11]

On or about October 1, 2009, Plaintiff defaulted by failing to make the payment due for October 1, 2009, and every payment thereafter due. Dkt. 123 at ¶ 12.

On or about November 2, 2009 and November 16, 2009, IndyMac Mortgage Services, a division of OneWest Bank, FSB mailed to Plaintiff via first class mail letters (the "November 2009 Letters") which satisfied the requirements set forth in RCW 61.24.031(b). *See* November 2009 Letters, Dkt. 121, Exhibit 9; *see also* Dkt. 123 at ¶ 13.

On or about January 12, 2010, as an agent of OneWest Bank, FSB, NWTS mailed and posted a notice of default (the "Notice of Default") in response to Plaintiff's default. *See* Notice of Default, Dkt. 121, Exhibit 10; *see also* Dkt. 122 at ¶ 4.

On or about January 27, 2010, Mortgage Electronic Registration Systems, Inc. executed an assignment of deed of trust (the "Assignment") whereby MERS assigned its interest under the Deed of Trust to OneWest Bank, FSB. The Assignment was recorded February 4, 2010, under King County Auditor's File No. 20100204000502. *See* Assignment, Dkt. 121, Exhibit 11; *see also* Dkt. 123 at ¶ 6.[12,13]

On or about February 4, 2010, OneWest recorded an appointment of successor trustee (the "Appointment") naming Northwest Trustee Services, Inc. the successor trustee. The Appointment was recorded under King County Auditor's File No. 20100204000503. *See* Appointment, Dkt. 121, Exhibit 12; *see also* Dkt. 123 at ¶ 15.

On or about February 16, 2010, NWTS recorded a notice of trustee's sale (the "Notice of

---

[11] On or about October 1, 2010, OneWest requested that the Custodian deliver the Note to OneWest. The Note was released to OneWest on or about October 5, 2010. The Note is currently stored at the office of counsel for Defendants'. Dkt. 123 at ¶¶ 16-17.

[12] Under Washington law, the security (Deed of Trust) follows the debt (Note) with or without actual assignment. *Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) ("transfer of the note carries … the security"); Leisure Time Sports v. Wolfe, 194 B.R. 859, 861 (9th Cir. BAP 1996 ("security … follows the debt").

[13] *In re United Home Loans*, 71 B.R. 885, 891 (W.D. Wash. 1987), aff'd 876 F.2d 897 (9th Cir. 861 (9th Cir. BAP 1989) ("assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded"; "Recording of the assignments is for the benefit of third parties").

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Sale") under King County Auditor's File No. 20100216001242, setting the trustee's sale for May

2    21, 2010, 2010. *See* Notice of Sale, Dkt. 121, Exhibit 13; *see also* Dkt. 122 at ¶ 5.

3           On or about April 27, 2010, Plaintiff mailed to OneWest a purported Qualified Written

4    Request, Dispute of Debt, and Debt Validation Demand. FAC, ¶ 2.11. In a letter dated May 18,

5    2010, OneWest responded to Plaintiff's Qualified Written Request, Dispute of Debt, and Debt

6    Validation Demand stating that Freddie Mac was the investor on the loan as well as provided

7    Plaintiff copies of the Note, Deed of Trust, and payment history on the loan. FAC, ¶ 2.12.

8           On or about November 4, 2010, NWTS recorded an Amended Notice of Trustee's Sale

9    (the "Amended Notice of Sale") under King County Auditor's File No. 20101104001321, setting

10   the trustee's sale for December 10, 2010. *See* Amended Notice of Sale, Dkt. 121, Exhibit 14; *see*

11   *also* Dkt. 122 at ¶ 6.

12          On or about December 3, 2010, Plaintiff filed his original complaint, which alleged

13   violations of Washington's Deed of Trust Act ("DTA"), wrongful foreclosure, and slander of

14   title as well as requested a Temporary Restraining Order and Permanent Injunction. Dkt. 1.

15          On January 25, 2011, the court granted a preliminary injunction ("Injunction") against the

16   Property. Dkt. 24. The Injunction was conditioned upon Plaintiff making the monthly payment

17   due under the Note and Deed of Trust into the court registry each month while the Injunction

18   was in place. *Id.* Plaintiff has failed to pay any amounts into the court registry since May 2011,

19   and therefore his payments for June 2011 through March 2012 are overdue.

20          Plaintiff has since filed the FAC. The FAC alleges violations of the DTA, violations of

21   the Consumer Protection Act ("CPA"), fraud, civil conspiracy, and slander of title. Plaintiff has

22   moved for summary judgment as to his claims for 1) damages under alleged violations of the

23   DTA, 2) damages for alleged violations of the CPA, 3) declaratory judgment quieting title in

24   Plaintiff's favor, 4) declaratory judgment that Defendants lack "standing" to foreclose

25   nonjudicially, and 5) for a permanent injunction. Dkt. 103.

26

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

## III. RESPONSE ARGUMENT

2  **A.   APPLICABLE SUMMARY JUDGMENT STANDARDS.**

3      Summary judgment is proper only where "the pleadings, depositions, answers to

4  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

6  of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The

7  Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v.*

8  *O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

9  (1994). The moving party has the burden of demonstrating the absence of a genuine issue of

10  material fact for trial. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,*

11  *Inc.,* 818 F.2d 1366, 1468 (9th Cir. 1987).

12      Genuine factual issues are those for which the evidence is such that "a reasonable jury

13  could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are

14  those which might affect the outcome of the suit under governing law. *See id.* In ruling on

15  summary judgment, a court does not weigh evidence to determine the truth of the matter, but

16  "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d

17  547, 549 (9th Cir. 1994) (*citing O'Melveny & Meyers,* 969 F.2d at 747).

18  **B.   PLAINTIFF HAS FAILED TO AUTHENTICATE DOCUMENTS UPON WHICH**

19      **THE SUMMARY JUDGMENT MOTION RELIES.**

20      A trial court can only consider admissible evidence in ruling on a motion for summary

21  judgment. *See* Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th

22  Cir.1988). Authentication is a "condition precedent to admissibility," and this condition is

23  satisfied by "evidence sufficient to support a finding that the matter in question is what its

24  proponent claims." Fed.R.Evid. 901(a). We have repeatedly held that unauthenticated documents

25  cannot be considered in a motion for summary judgment. *See Cristobal v. Siegel,* 26 F.3d 1488,

26  1494 (9th Cir.1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542,

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1550-51 (9th Cir.1989); *Beyene,* 854 F.2d at 1182; *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987); *Hamilton v. Keystone Tankship Corp.,* 539 F.2d 684, 686(9th Cir.1976).

In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada,* 831 F.2d at 925 (citation omitted). However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *See* Fed.R.Evid. 901(b)(providing ten approaches to authentication); Fed.R.Evid. 902 (self-authenticating documents need no extrinsic foundation).

### 1. Plaintiff's Exhibit 1: Response Letter by Deutsche Bank National Trust Company.

"A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 774, 2002 WL 507525 (9th Cir. 2002).

Plaintiff fails to authenticate Exhibit 1 to Plaintiff's motion, Response by Deutsche Bank National Trust Company. The letter appears to be on Deutsche Bank letterhead and was written by Shawn T. Hynes, Counsel for Deutsche Bank to Plaintiff. Plaintiff fails to authenticate the document because Plaintiff has failed to submit an affidavit from Hynes stating that he wrote the letter. Plaintiff neither wrote the letter or witnessed Hynes do so. *See Hal Roach Studios,* 896 F.2d at 1550-51; *Canada,* 831 F.2d at 925.

### 2. Plaintiff's Exhibit 12: Letter from Washington State Attorney General.

As a threshold evidentiary matter, Plaintiff's Exhibit 12, a letter from Washington State Attorney General is inadmissible.[14] Plaintiff appears to submit the letter to demonstrate a violation of NWTS' duty of good faith. Plaintiff concludes that NWTS has received a letter from the Attorney General warning it about the conduct Plaintiff alleges to have occurred here.

---

[14] Additionally, Plaintiff actually failed to attach a copy within his exhibits to his motion for summary judgment. *See* Dkt. 103-104. Plaintiff did, however, include the letter as Exhibit 17 to the FAC. Dkt. 68-1.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  However, the letter provides no indication that the letter was sent to or that NWTS received such

2  letter.

3      Even if admissible, Plaintiff has failed to authenticate Exhibit 12. The letter appears to be

4  a form letter, addressed using the generic place holders to "Trustee Name, Address, City, State,

5  Zip Code" from the office of Rob McKenna, Washington's Attorney General. Plaintiff did not

6  draft the letter, and it does not appear that Plaintiff even received the letter. Plaintiff has failed to

7  submit any affidavit or deposition testimony from Rob McKenna stating that he wrote the letter.

8      Accordingly, the court should strike Exhibits 1 and 12.

9  **C.   PLAINTIFF FAILS TO ESTABLISH HE IS ENTITLED TO JUDGMENT AS A**

10     **MATTER OF LAW AS TO CLAIMS FOR VIOLATION OF THE DEED OF**

11     **TRUST ACT, VIOLATION OF THE CPA, DECLARATORY RELIEF, LACK OF**

12     **STANDING, AND INJUNCTION.**

13         **1.   Plaintiff has not established he is entitled to summary judgment as to his**

14             **claim for violations of the Deed of Trust Act.**

15             **a.   As a matter of law, Washington does not recognize a cause of action**

16                 **for damages under a "wrongful foreclosure" theory where no**

17                 **trustee's sale has occurred.**

18     In Washington, several courts have concluded that where no trustee's sale has occurred,

19  the Deed of Trust Act ("DTA") does not authorize a cause of action for "wrongful initiation of

20  nonjudicial foreclosure proceedings" similar to the one Plaintiff attempts to put forth here.[15]

21  *Vawter v. Quality Loan Serv. Corp. of Washington*, 707 F. Supp. 2d 1115, 1123 (W.D. Wash.

22  2010); *see also Pfau v. Wash. Mutual, Inc.*, No CV-08-00142-JLQ, 2009 WL 484448, at *12

23  (E.D. Wash. Feb. 24, 2009); *Krienke v. Chase Home Fin., LLC*, 140 Wn. App. 1032, 2007 WL

---

[15] The DTA specifically states that a trustee's sale may be restrained only upon the tendering of the obligations due. RCW 61.24.130. This restraint may be for any legal or equitable grounds. Here, the Court granted Plaintiff a preliminary injunction to enjoin the sale, which was conditioned upon Plaintiff making monthly payments into the court registry. *See* Dkt. 24. Plaintiff, however, has failed to make the monthly payment as required by the preliminary injunction since May 2011. Dkt. 94. Thus, Plaintiff is also not entitled to the pre-sale remedy of injunction at this time.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

2713737, at *5 (Wash. Ct. App. 2007); *see also Henderson v. GMAC Mortgage Corp.*, No. C05-5781RBL, 2008 WL 1733265, at *5 (W.D. Wash. Apr. 10, 2008) (holding that plaintiff's claim for wrongful foreclosure under the DTA failed because, among other things, no foreclosure occurred). In both *Pfau* and *Krienke,* the courts rejected the argument that a grantor can maintain a damages claim for wrongful institution of nonjudicial foreclosure proceedings where no trustee's sale actually occurs. These courts emphasized their view that there is simply no statutory authority or case law to support such a claim. As the *Krienke* court explained:

> There is no case law supporting a claim for damages for the *initiation* of an allegedly wrongful foreclosure sale. Moreover, there is no statutory basis supporting a claim for damages for wrongful *institution* of foreclosure proceedings. On the contrary, courts promote the [DTA's] objectives, declining to invalidate completed sales even where trustees have not complied with the statute's technical requirements.

*Krienke*, 2007 WL 2713737, at *5 (emphasis in original).

The court in *Vawter* further emphasized that recognizing a cause of action for the wrongful institution of foreclosure proceedings would be inconsistent with the intent of the DTA. *Vawter*, 707 F. Supp. 2d at 1124 ("Interjecting a cause of action for damages for wrongful institution of nonjudicial foreclosure proceedings into the DTA's scheme would potentially upset the balance struck by the legislature."). The sole method to contest a foreclosure sale is to file an action to enjoin or restrain the sale in accordance with 61.24.130 of the DTA. Washington courts are clear in holding that "[a]nyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to the Revised Code of Washington 61.24.130." *Plein v. Lackey*, 67 P.3d 1061, 1066 (Wash. 2003). Failure to properly bring such a lawsuit may result in a waiver of any proper grounds for invalidating the trustee's sale. RCW 61.24.040(1)(f)(IX); *see also* RCW 61.24.127. Recognizing a cause of action for the wrongful institution of foreclosure procedures in spite of the DTA's statutory scheme and objectives, would, as the court in *Vawter* explained,

> undermine the legislature's goal that the nonjudicial foreclosure process remains efficient and inexpensive . . . [The approach would] spawn litigation under the DTA for damages, thereby interfering with the efficient and inexpensive nature of the nonjudicial

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   foreclosure process, while at the same time failing to address directly the propriety of
2   foreclosure or advancing the opportunity of interested parties to prevent wrongful
    foreclosure.

3   *Vawter*, 707 F.Supp.2d at 1123–24. Here, Plaintiff's cause of action, though styled in the

4   complaint as one for violations of the DTA, is properly construed as a claim for wrongful

5   institution of nonjudicial foreclosure proceedings since the trustee's sale has not occurred. *See*

6   *Id.* When viewed in this light, as a matter of law, Plaintiff's claim for damages under the DTA as

7   to all Defendants fails as a matter of law.

8            **b.   As a matter of law, OneWest is the note holder entitled to enforce the**

9            **promissory note and there should be no liability for OneWest.**

10          Even if Plaintiff could show Washington recognizes a pre-sale cause of action for

11   damages under the DTA, Plaintiff's claim fails. Plaintiff has moved for summary judgment on

12   his claim for violation of the DTA. Yet, Plaintiff's argument, which is devoid of nearly any legal

13   authority, simply re-states the allegations made in his first amended complaint ("FAC"). And,

14   while Plaintiff asserts there is no dispute that OneWest was never the holder, owner, or

15   beneficiary of Plaintiff's Note, such all allegation is simply untrue, and the testimonial evidence

16   set forth by Defendants proves as such.

17          RCW 61.24.005(2) provides that, "unless the context otherwise requires," the term

18   "'beneficiary' means the holder of the instrument or document evidencing the obligation secured

19   by the deed of trust[.]" RCW 61.24.005(2). Under the Uniform Commercial Code ("UCC"), as

20   adopted in Washington, a "[p]erson entitled to enforce" an instrument means (i) the holder of the

21   instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii)

22   a person not in possession of the instrument who is entitled to enforce the instrument pursuant to

23   RCW 62A.3-309 or 62A.3-418(d). RCW 62A.3-301. A person may be a person entitled to

24   enforce the instrument even though the person is not the owner of the instrument or is in

25   wrongful possession of the instrument. *Id.* (Emphasis added). "Holder" status may be evidenced

26

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   by physical possession of the note, which has either been endorsed to that person or endorsed in

2   blank. RCW 62A.1-201.

3       OneWest is the note holder and beneficiary. OneWest has testified to having actual or

4   constructive (through its custodian, Deutsche Bank) possession of the promissory note since on

5   or about March 19, 2009.[16] OneWest has detailed the "chain of title" starting from the

6   origination of the loan to the present.[17] Additionally, OneWest has produced the original

7   promissory note, which is endorsed in blank.

8       Moreover, OneWest has demonstrated its entitlement to the benefit of the federal holder

9   in due course doctrine, which alleviates Plaintiff's concerns that OneWest is not entitled to

10  enforce the Note on the basis that it did not take the Note "for value".[18] Thus, as the note holder,

11  OneWest is entitled to enforce the Note in accordance with the terms of the Note and Deed of

12  Trust as well as the DTA. Furthermore, OneWest was entitled to do so at all times relevant to the

13  underlying nonjudicial foreclosure given that OneWest took possession of the Note nearly a year

14  before the Notice of Default was transmitted. Accordingly, allegations that the Notice of Default

15  erroneously identified OneWest as the beneficiary, that OneWest erroneously identified itself as

16  the beneficiary in the beneficiary declaration, and that OneWest was not authorized to appoint

---

[16] Dkt. 123 at ¶ 11.

[17] See Dkt 121, Exhibits 1, 3, 4, 5, 6, 7, and 8; see also Dkt. 123 at ¶¶ 1-11.

[18] The federal holder-in-due-course doctrine requires that, given the special circumstances that face the FDIC, state holder-in-due-course law does not apply. *Resolution Trust Corp. v Kennelly*, 57 F.3d 819, 821 (9th Cir. 1995). A purchase and assumption transaction helps preserve stability of and confidence in the banking system and is the preferred method for resolving bank failures. *Id.* Subsequent holders who acquire notes from the FDIC also enjoy holder-in-due-course status "whether or not they satisfy the technical requirements of state law." *Id.* Washington law is in accord. RCW 62A.3-203(b) ("Transfer of an instrument ... vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder-in-due-course"). Here, after the Plaintiff's Note was sold to Freddie Mac, Indymac Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac. IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. IndyMac Federal Bank ("IMFB") was created and the FDIC was appointed Conservator, and on March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the assets including the rights to service the loan presently at issue to OneWest Bank, FSB. Thus, under the federal holder-in-due-course doctrine, as a subsequent holder following the FDIC, OneWest is a holder-in-due-course. Moreover, as the Note is endorsed in blank, and OneWest is currently in possession of the Note and has been at all times in actual possession or constructive possession through the Custodian,[18] OneWest is entitled to enforce the Note. Additionally, this is consistent with RCW 62A.3-301 in that OneWest need not own the Note to enforce it.

---

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    NWTS as successor trustee fail as a matter of law and provide no legal basis for entry of an order

2    on summary judgment in Plaintiff's favor.

             **c.  Plaintiff's focus on note ownership is irrelevant and immaterial.**

4          OneWest (or any party for that matter) need not be the note owner to properly enforce the

5    Note, and allegations that OneWest wrongfully asserted itself as the note owner in the

6    Appointment and Notice of Default are irrelevant and immaterial and do not entitle Plaintiff to

7    summary judgment on any claim. "The issue of ownership, however, is largely

8    immaterial...[b]ecause under Washington law the focus of the analysis is on who is the holder of

9    the note, and thus the beneficiary under the [DTA], Plaintiff's concern should be whether he

10   knows who to pay." *In re Reinke*, BR 09-19609, 2011 WL 5079561 at *11 (Bankr. W.D. Wash.

11   Oct. 26, 2011) (citing *Veal v. American Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897,

12   912 (9th Cir. BAP 2011)).

13         Any erroneous identification of ownership status is a hyper-technical error that offers no

14   prejudice and cannot be the basis for a claim or further enjoining the sale. *Amresco Independence*

15   *Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing

16   *Koegel v. Prudential Mut. Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988).

17         Nonetheless, OneWest does not dispute that Freddie Mac is the note owner. OneWest

18   services the loan on behalf of Freddie Mac in accordance with the Freddie Mac Servicer

19   Guide.[19,20] As part of the Freddie Mac Servicer Guide, as with all loans owned by Freddie Mac,

---

[19] This court may take judicial notice of the Freddie Mac Servicer Guide, which is publicly available at http://www.allregs.com/tpl/Main.aspx.

[20] Congress created the Federal Home Loan Mortgage Corporation ( "Freddie Mac") in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708 (N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir. 1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.

---

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

the servicer, OneWest in this matter, has possession[21] of the blank endorsed Note, and is entitled to collect payments, initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in accordance with investor guidelines.[22]  The Freddie Mac Servicer Guide provides that where default occurs, foreclosure is to be carried out in the name of the servicer.[23]  The Freddie Mac Servicer Guide designates sweeping authority to the servicer to "act in the most time, efficient and responsible manner to protect Freddie Mac's interests."[24] Thus, the Freddie Mac Servicer Guide further supports the notion that OneWest is the Note holder entitled to enforce through nonjudicial foreclosure.

Finally, as a matter of law, whether or not the loan was securitized on the secondary market has no bearing on OneWest's authority to enforce through foreclosure. Washington courts have agreed. "[S]ince the securitization merely creates a separate contract, distinct from plaintiffs' debt obligations under the Note and does not change the relationship of the parties in any way, plaintiffs' claims arising out of securitization fail." *Lamb v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 5827813, *6 (W.D. Wash. 2011) (citing cases); *Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229, *5 (W.D. Wash. 2011) (citing cases); *In re Veal*, 450 B.R.at 912 ("[Plaintiffs] should not care who actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized—so long as they do know who they should pay.").

> **d.  As a matter of law, the parties contractually agreed that MERS was the beneficiary under the Deed of Trust and MERS' role under the Deed of Trust is in accordance with agency principles such that there should be no liability for MERS as to Plaintiff's DTA damages claim.**
>
> > **i.  The parties contractually agreed that MERS was the beneficiary under the original Deed of Trust.**

---

[21] Actual or through the custodian.

[22] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Freddie Mac Servicer Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at http://www.allregs.com/tpl/Main.aspx.

[23] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 67.17, available at http://www.allregs.com/tpl/Main.aspx.

[24] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 51.1, available at http://www.allregs.com/tpl/Main.aspx.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Plaintiff's argument that MERS never had any beneficial interest in the Deed of Trust

2   fails because it is squarely contrary to exactly what Plaintiff contractually agreed to. The Deed of

3   Trust is a contract the Plaintiff entered into to secure repayment of the Note. It is black letter law

4   that, absent an unlawful purpose, parties in Washington are free to contract as they wish. "The

5   whole panoply of contract law rests on the principle that one is bound by the contract which he

6   voluntarily and knowingly signs." *National Bank of Wash. v. Equity Investors*, 81 Wn.2d 886,

7   912-13 (1973) (en ban); *see also Torgerson v. One Lincoln Tower, LLC,* 166 Wn.2d 510, 517

8   (2009) ("It is black letter law of contracts that the parties to a contract shall be bound by its

9   terms.").

10   Moreover, the DTA itself invokes fundamental contract principles. The DTA provides

11   that all deeds of trust are subject to all laws relating to mortgages on real property. RCW

12   61.24.040.  Under RCW 61.12.020, "parties may insert in [a] mortgage *any lawful agreement or*

13   *condition.*" RCW 61.12.020 (Emphasis added). Therefore, according to the DTA itself, parties

14   are free to include any lawful contractual agreement or condition in the Deed of Trust.

15   Here, Plaintiff contractually agreed in the subject Deed of Trust that MERS was a proper

16   beneficiary under the Deed of Trust, authorized to act as the agent of the lender and the lenders

17   successors and assigns. Plaintiff unequivocally agreed by signing the Deed of Trust: *"The*

18   *beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's*

19   *successors and assigns)* and the successors and assigns of MERS. *This Security Instrument*

20   *secure to Lender:* (i) the repayment of the Loan...; and (ii) the performance of Borrower's

21   covenants and agreements under this Security Instrument and the Note." Plaintiff further agreed

22   that "*MERS...has the right*: to exercise any or all [legal rights of Lender], including, but not

23   limited to, the right to foreclose and sell the Property; and *to take any action required of Lender*

24   including, but not limited to, releasing and cancelling this Security Instrument."[25]

25   It is indisputable that Plaintiff contractually agreed that MERS could act on behalf of the

26

[25] *See* Dkt. 121, Exhibit 2.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

lender (IndyMac) and its successors and assigns (OneWest) as beneficiary of the Deed of Trust.
It is further indisputable that Plaintiff contractually agreed MERS was a valid beneficiary under
the Deed of Trust, with all the powers bestowed upon it through the Deed of Trust. Plaintiff
should not now be able to argue that MERS was not a proper beneficiary.

Moreover, the existing federal case law interpreting Washington's DTA overwhelmingly
recognizes that MERS is a proper beneficiary and is able to assign the deed of trust as it did in
this case. *See Salmon v. Bank of Am. Corp.*, 2011 WL 2174554, at *8 (E.D. Wash. 2011) (finding
no issue where deed of trust expressly allowed for MERS to serve as nominee); *Klinger,* 2010
WL 5138478 at *7; *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102486 (W.D.
Wash. 2010) (same); *Vawter,* 707 F. Supp. 2d at 1125–26 (same).[26] The *Klinger* court also
dismissed the argument that an assignment of a deed by MERS is improper because MERS "has
no beneficial interest in the underlying Debt Obligation." *Compare Klinger,* 2010 WL 5138478,
at *7, with FAC, ¶¶ 2.6 and Plaintiff's Motion, ¶ 3.1.4.

The Ninth Circuit has also conducted the same analysis holding that: "[T]he disclosures
in the deed indicate that MERS is acting 'solely as nominee for Lender and Lender's successors
and assigns.' . . . By signing the deeds of trust, the plaintiffs agreed to the terms and were on
notice of the contents." *Cervantes,* 656 F.3d at 1042 (Emphasis added).

### ii. The parties' agreement – i.e. that MERS is a proper beneficiary – is consistent with basic principles of agency.

Within the challenge of MERS, Plaintiff appears to argue that, in addition to the
argument that he should not be held to the contract he signed, that the lender (Indymac), and its
successors could not act through an agent[27] (MERS). The argument fails.

---

[26] *See also See, e.g., Corales v. Flagstar Bank, FSB,* --- F. Supp. 2d ---, No. C10–1922JLR, 2011 WL
4899957, *5 (W.D. Wash. Oct. 24, 2011); *St. John v. Northwest Trustee Services, Inc.*, No. C11-5382BHS, 2011
WL 4543658, *3 (W.D. Wash. Sept. 29, 2011); *Cebrun v. HSBC Bank USA, N.A.*, No. C10-5742BHS, 2011 WL
321992, *3 (W.D. Wash. Feb. 2, 2011); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102485, *5;
*Vawter,* 707 F. Supp. 2d at 1125-26; *Moon v. GMAC Mortgage Corp.*, 2008 WL 4741492 (W.D. Wash. 2008).
[27] Indeed, an "agent" and "nominee" are synonymous. A "nominee" simply means "one designated to act for another
as his representative in a rather limited sense." *Schuh Trading Co. v. Comm'r,* 95 F.2d 404, 411 (7th Cir. 1938); *see*

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Agency principles have long been recognized under Washington law. "Whatever one

may lawfully do for himself, he may lawfully authorize an agent to do for him." *Sherman v.*

*Millikin,* 9 Wn.2d 339, 341 (1941). Moreover, the DTA specifically contemplates the use of

agents in nonjudicial foreclosure proceedings. For example, RCW 61.24.031, repeatedly

recognizes that acts may be performed under the DTA by an "authorized agent."[28] In

promulgating the DTA, the Washington Legislature intended to permit participants in

transactions governed by the DTA to act through agents. Here, when MERS assigned the Deed

of Trust. That is precisely what happened.

### e.   Plaintiff has not demonstrated entitlement to summary judgment as to NWTS for his DTA violation damages claim.

Plaintiff asserts NWTS violated specific provisions of the DTA by transmitting the

Notice of Default and providing Plaintiff a copy of the Beneficiary Declaration. Plaintiff also

asserts that NWTS violated its duty of good faith on a number of occasions. Plaintiff asserts that

these alleged infractions give rise to a damages claim. Again, as discussed *supra*, there is no

cause of action for damages under the "wrongful initiation of foreclosure" theory. *Vawter v.*

*Quality Loan Serv. Corp. of Washington*, 707 F. Supp. 2d 1115, 1123 (W.D. Wash. 2010).

Moreover, courts have held that non-prejudicial errors in the foreclosure process do not warrant

indefinite restraint of the foreclosure. *See Amresco Independence Funding, Inc. v. SPS*

*Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing *Koegel v. Prudential Mut.*

*Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988). Finally, the evidence demonstrates that

NWTS is the proper successor trustee, has complied with the DTA in carrying out the

nonjudicial foreclosure, and did not violate its duty of good faith.

First, NWTS was properly appointed successor trustee by OneWest. Under the DTA, a

trustee so appointed by a beneficiary may foreclose a deed of trust nonjudicially. RCW 61.24 *et seq.*

---

*also* Black's Law Dictionary (9th ed. 2009) ("nominee" is "[a] person designated to act in place of another, usu. in a very limited way.")

[28] *See* RCW 61.24.031; *see also Udall v. T.D. Escrow Services, Inc.*, 159 Wn.2d 903, 914-15 (2007); *see also Buse v. First American Title Ins. Co.*, 2009 WL 1543994, *2 (W.D. Wash. 2009).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    A beneficiary has the power to appoint any trustee that is qualified to act as such pursuant to law.

2    RCW 61.24.010(2). Upon recording the appointment of a successor trustee…the successor trustee

3    shall be vested with all powers of an original trustee. *See* RCW 61.24.010(2). As discussed

4    *supra*, OneWest is a beneficiary and has been since March 2009. Thus, upon recordation of the

5    Appointment on February 4, 2010, NWTS was validly appointed successor trustee.[29]

6         Second, NWTS' conduct in recording the Notice of Sale and Amended Notice of Sale did

7    not violate the DTA. NWTS was authorized to record the Notice of Sale and Amended Notice of

8    Sale in response to Plaintiff's default. RCW 61.24.030(7)(a) requires that before a notice of sale

9    is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner

10   of any promissory note or other obligation secured by the deed of trust. One way in which the

11   requirement is satisfied is through receipt of a declaration by the beneficiary, made under the

12   penalty of perjury, stating that the beneficiary is the actual holder of the promissory note or other

13   obligation secured by the deed of trust. *See* RCW 61.24.030(7)(a). Here, there is no dispute that

14   NWTS received the Beneficiary Declaration prior to its issuance of the Notice of Sale and

15   Amended Notice of Sale. Rather, Plaintiff claims that NWTS violated the DTA because it

16   "knowingly proceeded to file and record a Notice of Sale…when they (sic) knew that OneWest

17   was not the owner of the Note." Plaintiff's Motion, ¶ 3.1.8. However, as discussed *supra*,

18   ownership is not a prerequisite to enforcement. *In re Reinke*, 2011 WL 5079561 at *11; *see also*

19   RCW 61.24 *et seq.*, *and see* RCW 62A.1-201. Accordingly, even taking the allegation as true, as

20   a matter of law, it does not entitle Plaintiff to judgment as a matter of law. Moreover, both the

21   Notice of Sale and Amended Notice of Sale have expired rendering Plaintiff's allegations under

22   those documents moot.[30]

---

[29] Plaintiff does argue that NWTS was never appointed successor trustee. If that is the case, then NWTS never owed Plaintiff any duty of good faith under RCW 61.24.

[30] Plaintiff also notes that NWTS "had received a letter from the Attorney General of Washington…less than a month ago strongly reminding them of their legal responsibilities." Response, 3.1.9. Defendants assume the letter Plaintiff is referencing is the letter attached to the FAC as Exhibit 17 (not Exhibit 12 as stated by Plaintiff). In addition to the letter's lack of authentication and admissibility, the letter itself bears no relation to the underlying matter. A form letter purportedly sent to every company acting as a nonjudicial foreclosure trustee in the state of Washington supports no claim asserted by Plaintiff and should not be considered by the court.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 17 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Third, NWTS did not violate or breach its duty of good faith under RCW 61.24. Under RCW 61.24.010(4), "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."[31] "This subsection became effective on June 12, 2008, and was intended to address ambiguities regarding the duties of trustee after the Washington Supreme Court imposed dual (and in many ways competing) obligations in *Cox*." *Thepvongsa v. Reg'l Tr. Services Corp.*, C10-1045 RSL, 2011 WL 307364 (W.D. Wash. Jan. 26, 2011), *citing Cox v. Helenius*, 103 Wn.2d 383, 693 P.2d 683 (1985), Wn. Senate Bill Report, 2008 Reg. Sess. S.B. 5378 (Feb. 9, 2008); Wn. House Rep. Bill Report, 2008 Reg. Sess. S.B. 5378 (March 6, 2008). In general, "good faith" is also the "absence of intent to defraud or to seek unconscionable advantage." *See* Black's Law Dictionary, 701 (7th ed. 1999); *see also Indus. Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 792 P.2d 520 (1990). A "covenant of good faith and fair dealing cannot 'be read to prohibit a party from doing that which is expressly permitted by an agreement'." *Collins v. Power Default Services, Inc.*, 2010 WL 234902 (N.D. Cal. Jan. 14, 2010), *citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992).

In *Mickelson v. Chase Home Fin. LLC*, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011), the Western District of Washington recently dismissed a "Breach of Good Faith" action against an original trustee, holding that "Plaintiffs would have every trustee conduct a secondary investigation into the papers filed by the beneficiary, which is simply too great a demand."[32]

Recordation of the Notice of Sale and Amended Notice of Sale was not a breach of duty of good faith. Plaintiff alleges that it was because NWTS knew OneWest was not the Note owner at the time of both notices. Plaintiff's Motion, ¶¶ 3.1.8-3.1.9. As discussed *supra*, NWTS was in

[31] RCW 61.24.010(3) also notes that a "trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." *Cf. Allard v. Pacific Nat'l Bank*, 99 Wn.2d 394, 403, 663 P.2d 104 (1983), *citing Esmieu v. Schrag*, 88 Wn.2d 490, 498, 563 P.2d 203 (1977) (scope of care for trustees which possess fiduciary duties.).

[32] The Court also noted, "Plaintiffs suggest the duty of good faith required Chicago to undertake a separate investigation as to whether the signatures on the papers appointing Chase and Northwest as successor beneficiary and trustee, respectively, were valid or forgeries. While there is no binding authority discussing the scope of the statutory duty of good faith, Plaintiffs' view is unreasonable." *Id.* at *3.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   receipt of the Beneficiary Declaration, upon which it could legally rely, that satisfied the proof

2   requirement under RCW 61.24.030(7)(a).

3     Issuing the Notice of Default as an agent to OneWest Bank was also not a violation of the

4   duty of good faith[33] owed under the DTA nor was it a violation of the DTA in an of itself.[34]

5     The DTA contemplates that an agent of the beneficiary may issue the Notice of Default

6   under RCW 61.24.031. *See* RCW 61.24.031(1)(a) ("A trustee, beneficiary, or authorized agent

7   may not issue a notice of default…"). And, in fact, this is common practice. *See, e.g., Klinger v.*

8   *Wells Fargo Bank, NA*, 2010 WL 4237849 (W.D. Wash. 2010) ("Defendant [NWTS] … as agent

9   to Wells Fargo, mailed a Notice of Default to Plaintiffs and posted the Notice of Default at the

10  Property") (Emphasis added).

11    Moreover, there is no prohibition on the party who is eventually named successor trustee

12  from acting as the beneficiary's agent for the limited purpose of transmitting a notice of

13  default.[35] *See* RCW 61.24 *et seq*. Thus, there is no legal basis for Plaintiff's claim that NWTS'

14  conduct in acting as an agent to OneWest for the purpose of transmitting the Notice of Default

15  gives rise to a breach of its duty of good faith or violation of the DTA.

16    Fourth, NWTS did not violate its duty of good faith by "assisting in the Assignment of

17  Deed of Trust" or by erroneously identifying OneWest as the note owner on the Notice of

18  Default.

19    Allegations by Plaintiff identifying alleged errors in the Assignment offer no prejudice to

---

[33] At the time the Notice of Default was issued, NWTS had not yet been appointed successor trustee. Thus, NWTS owed no duty of good faith at the time of the Notice of Default.

[34] Plaintiff claims NWTS was "compensated" for acting as an agent to OneWest. Response, ¶ 3.1.7. In fact, the record is completely devoid of any evidence in regard to compensation received by NWTS. Such a statement is unfounded.

[35] Plaintiff claims that by acting as an agent to OneWest, NWTS was impartial. Response, ¶ 3.1.7. However, NWTS does not owe a duty of impartiality. *See* RCW 61.24 *et seq*. In fact, during the 2009 legislative session, the legislature removed the "duty of impartiality" and replaced it with the "duty of good faith to the borrower, beneficiary, and grantor." *See* 2009 Reg. Sess. S.B. No. 5810 (July 26, 2009). Moreover, Plaintiff claims NWTS "failed to advise Plaintiff of their affiliated relationship with Routh Crabtree Olsen." Response, ¶ 3.1.7. Again, Plaintiff provides no basis upon which such a failure constitutes a violation of the DTA or a breach of duty of good faith. Accordingly, Plaintiff has not proven any violation as a result of such allegations that entitle him to summary judgment.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Plaintiff and do not give to liability under any legal theory. Additionally, as discussed *supra*, MERS was authorized, pursuant to both the signed contract and agency principles, to execute the Assignment.[36] And, to the extent Plaintiff challenges the Assignment on the basis that it improperly attempts to transfer the underlying Note, such a challenge does not entitle plaintiff to summary judgment. First, the language upon which Plaintiff bases such allegations, the phrase "together with note or notes therein," is a term of art that has long been used the language of real property assignments and is of no legal consequence. Under the UCC, a negotiable instrument may be transferred through endorsement and delivery. *See* RCW 62A.3-203. As discussed *supra*, OneWest's authority to enforce the Note and Deed of Trust stems from its status as Note holder since March 2009 notwithstanding any assignment of deed of trust or language used in the Assignment.

In sum, as a matter of law, Plaintiff cannot demonstrate any legal entitlement to judgment for either damages or injunction based on 1) hyper-technical deficiencies identified in the Notice of Default, Appointment, Assignment, Notice of Sale, Amended Notice of Sale as they are either irrelevant given the expiration of the Notice of Sale or inconsequential as they offer no prejudice.

> **2. Plaintiff has not established he is entitled to summary judgment as to his Consumer Protection Act claim.**

The five elements of a Consumer Protection Act (CPA) claim under RCW 19.86 are: (1) an unfair or deceptive act or practice, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) an injury to the plaintiff's business or property, and (5) a causal link between the unfair or deceptive act or practice and the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). Failure to meet any one of these elements is fatal and necessitates dismissal. *Sorrel*

---

[36] "There is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions." *Bain v. Metropolitan Mortgage Group, Inc.*, 2010 WL 891585, *6 (W.D.Wash.) (*citing Russell v. Lundberg*, 120 P.3d 541, 544 (Utah Ct.App.2005)). An agent may perform "mere ministerial acts" relating to a foreclosure. *Id.* (*citing Buse v. First Am. Title Co.*, C08-0510-MJP, 2009 WL 1543994, at *3 (W.D.Wash. May 29, 2009)).

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 20 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002).  "[W]hether a particular action gives rise to

2   a CPA violation is reviewable as a question of law." *Columbia Physical Therapy Inc., P.S. v.*

3   *Benton Franklin Orthopedic Assoc., P.L.L.C.*, 168 Wn.2d 421, 228 P.3d 1260 (2010), *citing*

4   *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 930 11 P.2d 288 (1997).

5       "Implicit in the definition of 'deceptive' under the CPA is the understanding that the

6   practice misleads or misrepresents something of material importance."  *Holiday Resort Comm.*

7   *Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App. 210, 135 P.3d 499 (2006).  But "acts performed

8   in good faith under an arguable interpretation of existing law do not constitute unfair conduct

9   violative of the consumer protection law." *Leingang, supra.* at 155.

10      Plaintiff can meet the first CPA element in only two ways: he may show either that an act

11  or practice (i) "has a capacity to deceive a substantial portion of the public," or (ii) that "the

12  alleged act constitutes a per se unfair trade practice." *See Saunders v. Lloyd's of London*, 113

13  Wn.2d 330 (1989), *quoting Hangman, supra.*[37]

14      The third factor articulated in *Hangman Ridge* also requires "a showing of impact to

15  public interest separate and apart from showing an unfair and deceptive act." *Holiday Resort,*

16  *supra.* at 226, *citing Hangman Ridge, supra.*  Courts may look to a number of factors, including:

17      (1) Were the alleged acts committed in the course of defendant's business? (2)
        Did defendant advertise to the public in general? (3) Did defendant actively solicit
18      this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff
        and defendant occupy unequal bargaining positions?" *Id.*
19
        In a private dispute, it is more difficult to show public interest. *Hangman Ridge, supra.*
20
    at 790; *see also Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009) (dismissing CPA
21
    claim where defendant did not advertise to the general public).
22
        "Mere speculation that an alleged unfair or deceptive act had the capacity to deceive a
23
    substantial portion of the public is insufficient to survive summary judgment" on a CPA claim.
24
    *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing*
25

26  _____

[37] An unfair trade practice "requires a showing that a statute has been violated which contains a specific legislative declaration of the public interest impact." *Hangman,* 105 Wn.2d at 791.  Plaintiff does not allege that either.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 21 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006).

2  Instead, the test to determine the public interest requirement is based upon the context of the

3  practice. "Where the transaction was essentially a consumer transaction... these factors are

4  relevant to establish [a] public interest... (1) Were the alleged acts committed in the course of

5  defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3)

6  Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and

7  substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If

8  the act complained of involved a single transaction, were many consumers affected or likely to

9  be affected by it?" *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*

10  162 Wn.2d 59, 170 P.3d 10 (2007).

11     Under the fourth *Hangman Ridge* factor, the alleged acts must also result in injury to

12  Plaintiff. *See Hangman Ridge* at 792, *citing Cooper's Mobile Homes, Inc. v. Simmons,* 94

13  Wn.2d 321, 617 P.2d 415 (1980). The injury must be expressly "*by*" a violation of RCW

14  19.86.020, meaning that "but for" a defendant's conduct, the alleged injury would not have

15  occurred. *See Carlile v. Harbour Homes, Inc.*, 147 Wn.App. 193, 194 P.2d 280 (2008).

16     Even if Plaintiff did somehow allege facts supporting the other four elements of a CPA

17  claim, the final *Hangman Ridge* factor requires that he also allege a causal link between a

18  defendant's unlawful actions and a resulting injury. *See Indoor Billboard, supra.*

19     The State Supreme Court has clarified that reliance on false or deceptive acts is not a

20  element under the CPA; rather, the Court concluded that "where a defendant has engaged in an

21  unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact,

22  our case law establishes that there must be some demonstration of a causal link between

23  misrepresentation and the plaintiff's injury." *Indoor Billboard,* 162 Wn.2d at 81-82. A plaintiff

24  must demonstrate that the "injury complained of ... would not have happened" if not for

25  defendant's acts. *Id.* at 82.

26

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 22 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**a. Plaintiff's claim under the Consumer Protection Act fails as a matter of law as to OneWest and MERS.**

Plaintiff alleges OneWest violated the Consumer Protection Act by participating in and causing NWTS to initiate a nonjudicial foreclosure when OneWest knew it did not have ownership of note. Plaintiff's Motion, ¶ 3.2.4.1. Plaintiff asserts that MERS violated the CPA on essentially the same basis. *Id.* at ¶ 3.2.5.1.

*Deceptive Act or Practice.* As a matter of law, any representation about ownership of the underlying loan is "largely immaterial" under both case law and the U.C.C., and therefore is not of "material importance" so as to qualify as deceptive. *In re Reinke,* 2011 WL 5079561 at *11; *see also Amresco Independence Funding, Inc.,* 119 P.3d 884, 886–87; *and see Koegel,* 752 P.2d 385, 388. With no deceptive act or practice, Plaintiff's CPA claim fails as a matter of law.

*Public Interest Impact.* Plaintiff cannot show a public interest impact. Plaintiff puts forth speculative assertions as to how OneWest's conduct has caused home values decrease and creates risk and **potential** losses for buyers at trustee auctions. However, Plaintiffs allegations completely speculative and are not support by any shred of evidence. Here, Plaintiff has alleged nothing more than facts relating to his own foreclosure and therefore has plead nothing to support claims of decreased home values or losses for buyers. As "[m]ere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim, Plaintiff's claim fails. *Brown ex rel. Richards v. Brown,* 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn. App. 835, 854 n. 27, 138 P.3d 638 (2006).

*Damages.* Plaintiff claims he has been damaged in the following manner as a result of OneWest's CPA violation as described above: 1) title to the property has been clouded, 2) his credit report has been damaged, and 3) he has suffered punitive injury by forcing him to continue this litigation.

It is unclear how a representation of who owns the underlying loan constitutes a cloud on

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    title. Nonetheless, any cloud on title has little effect on plaintiff, the defaulting borrower on a

2    property currently in foreclosure. Upon foreclosure, Plaintiff's interest in the property will be

3    extinguished. Thus, the condition of title is of no relevance to Plaintiff.

4          Additionally, it is unclear how a representation of who owns the loan would damage

5    Plaintiff's credit report. Any damage to Plaintiff's credit is a direct result of his failure to make

6    good on his commitment to repay his loan.

7          Finally, Plaintiff appears to have confused the parties' roles in this lawsuit. Plaintiff filed

8    this lawsuit, and Defendants are entitled to put on a defense. In fact, it is only Plaintiff who has

9    unilateral authority to cause the litigation to cease, not Defendants.

10         In sum, as a matter of law, Plaintiff has not proven necessary elements to prevail on his

11   CPA claim as to OneWest and therefore Plaintiff's motion must be denied.

12            **b.  Plaintiff's claim under the Consumer Protection Act fails as a matter**

13                 **of law as to NWTS.**

14         Plaintiff alleges that NWTS violated the CPA when it began its duties as trustee after

15   having already been a witness and participant of Defendants MERS and OneWest filing

16   misrepresentations to the ownership of the note and that it was aware MERS was not the owner

17   yet but caused the Assignment to be recorded and that it knew OneWest was not the

18   owner/beneficiary of the Note but continued with the foreclosure. Plaintiff's Motion, ¶ 3.2.3.1.

19         ***Deceptive Act or Practice.*** Plaintiff cannot show any deceptive act or practice by NWTS.

20   As discussed at length *supra*, neither OneWest nor MERS need to be the owner of the note to

21   take action in furtherance of a foreclosure. Moreover, as discussed *supra*, a representation as to

22   note ownership is immaterial. Finally, "acts performed in good faith under an arguable

23   interpretation of existing law do not constitute unfair conduct violative of the consumer

24   protection law." *Leingang, supra.* at 155. Thus, even if Plaintiff could show that ownership was

25   somehow material, there is nothing to suggest to NWTS' conduct was anything beyond acts

26   performed in good faith under an arguable interpretation of existing law.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    ***Public Interest Impact.*** Plaintiff cannot show a public interest impact. Plaintiff puts forth

2    grand speculation as to how NWTS' conduct effects thousands of Washington homeowners,

3    potential real estate buyer, and investors and that they conduct has made home values decrease.

4    However, Plaintiffs allegations completely speculative and are not support by any shred of

5    evidence. Plaintiff has alleged nothing more than facts relating to his own foreclosure. And,

6    while Plaintiff can speculate, "[m]ere speculation that an alleged unfair or deceptive act had the

7    capacity to deceive a substantial portion of the public is insufficient to survive summary

8    judgment" on a CPA claim. *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239

9    P.3d 602, 609 (2010), *citing Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn.App. 835,

10   854 n. 27, 138 P.3d 638 (2006).

11   ***Damages.*** Plaintiff claims he has been damaged in the following manner as a result of

12   NWTS' CPA violation as described above: 1) title to the property has been clouded, 2) **if** the sale

13   goes forward, he will lose his home, and, 3) he has suffered stress, loss of sleep, and illness.

14   As with the damages claimed against OneWest and MERS, Plaintiff has failed to show

15   any injury to himself as a result of an apparent cloud on title. Moreover, Plaintiff's statement of

16   damages touches on something of great importance, **if** the property is sold, he will lose his home.

17   As Plaintiff concedes, the property has not been sold, and therefore he has suffered no injury.

18   Courts have agreed that were no sale of the property has actually occurred, a borrower plaintiff

19   cannot show he is damaged by conduct to carry out the nonjudicial foreclosure. *In re Reinke*, BR

20   09-19609, 2011 WL 5079561 (Bankr. W.D. Wash. Oct. 26, 2011). Moreover, courts have agreed

21   that mental distress alone does not establish injury to support a CPA claim. *Id. (citing Stephens v.*

22   *Omni Ins. Co.*, 138 Wn. App. 151, 180, 159 P.3d 10, 2007 WL 1180497 (2007) *aff'd sub nom.*

23   *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 204 P.3d 885, 2009 WL 866274

24   (2009)). Finally, incurring time and money to prosecute a CPA claim does not suffice as an

25   injury to business or property. *Id. (citing Sign–O–Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64

26   Wn. App. 553, 563, 825 P.2d 714 (1992)).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Here, Plaintiff has, in fact, received the benefit of living in the home for well over two

2    years without making even one mortgage payment. This alone, counters any damage he has

3    suffered as a result of a hyper-technical error in the documentation supporting the foreclosure.

4    Accordingly, Plaintiff has not proven necessary elements to warrant judgment on a claim

5    under the CPA claim as to NWTS.

6    **3.  Plaintiff has not established he is entitled to declaratory judgment.**

7    **a.  MERS.**

8    Plaintiff alleges MERS lacks standing to initiate a nonjudicial foreclosure of Plaintiff's

9    property. Here, MERS did not attempt to initiate or carry out a nonjudicial foreclosure of

10   Plaintiff's property. MERS simply executed the Assignment for the benefit of a title report.

11   Moreover, MERS' conduct was in accordance with the terms of the Deed of Trust to which

12   Plaintiff had contractually agreed. Finally, even if, as Plaintiff suggests, the Assignment "fails,"[38]

13   the fact remains that OneWest has been the Note holder since even before Plaintiff defaulted on

14   the obligation. Accordingly, whether or not the Assignment fails does not limit the party seeking

15   to enforce the obligation from doing so.

16   **b.  OneWest.**

17   Plaintiff bases his request for declaratory relief as to OneWest on the allegation that

18   OneWest lacks standing to foreclose because it is not the owner of Plaintiff's Note. As discussed

19   *supra*, OneWest need not own the Note to enforce it. Moreover, OneWest has demonstrated its

20   entitlement to enforce the Note as the holder. As discussed *supra*, OneWest's holder status also

21   refutes Plaintiff's allegations that OneWest lacked the authority to appoint NWTS successor

22   trustee, and the alleged deficiencies identified in the foreclosure notices simply offer Plaintiff no

23   prejudice and cannot be the basis for any liability.

24   \\

25   \\

26

---

[38] Response, ¶ 3.3.1.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 26 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### c. NWTS.

Plaintiff bases his request for declaratory judgment as to NWTS on allegations that NWTS was improperly appointed successor trustee and NWTS lacked authority to record the Notice of Sale and Amended Notice of Sale. Again, NWTS was properly appointed successor trustee and were authorized to record the (now moot) Notice of Sale and Amended Notice of Sale. *See supra*, Section III(C)(1)(e).

### 4.  Plaintiff has not established he is entitled to a permanent injunction.

First and foremost, Plaintiff is not entitled to a permanent injunction because he has failed to comply with the terms of the preliminary injunction by failing to make any payment since May 13, 2011. Dkt. 94. The DTA mandates that "[t]he court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW 61.24.130. Here, the court imposed such a mandate. Yet, Plaintiff has failed to comply. In the face of Plaintiff's blatant defiance of the preliminary injunction, Plaintiff is not entitled to entry of a permanent injunction.

Second, as discussed at length herein, Plaintiff is not entitled to any relief based on allegations that OneWest is not the Note owner, MERS is not the Note owner, NWTS is not the valid successor trustee, and that there were deficiencies in the foreclosure documents as such allegations have either been refuted or are not grounded in law. *See supra*.

Finally, Plaintiff argues he is entitled to a permanent injunction because "the sale is very unlikely to produce a reasonable value that will pay off the first and second loans." Plaintiff appears to make this argument out of concern for the true note holder who could suffer loss when the full obligation is not paid off. Plaintiff's Motion, ¶ 3.4.4. Not only is Plaintiff's argument nothing more than a veiled attempt to obtain a permanent injunction that will allow him to continue living in the Property rent free, Plaintiff's argument fails primarily on the basis that OneWest has demonstrated it is the note holder.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 27 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

## IV.   CONCLUSION

2        Based on the foregoing, Defendants respectfully request the Court deny Plaintiff's motion

3  for summary judgment.

4

        DATED this _26th_ day of March, 2012.

5

6                                              ROUTH CRABTREE OLSEN, P.S.

7

8                                              By: /s/ Heidi E. Buck

9                                                  Heidi E. Buck, WSBA No. 41769
                                                   Attorneys for Defendants OneWest, MERS,
10                                                 and Northwest Trustee Services, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 28 of 28
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131