# Judge's Copy

The Honorable Robert S Lasnik

**JAMES MCDONALD**
**14840 119th PL NE**
**Kirkland, WA 98034**
**Phone (425) 210-0614**
**In Pro Per**

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

| | |
|---|---|
| In Re: | ) **NO.: C10-1952RSL** |
| | ) **Plaintiff's Opposition and Response** |
| **JAMES MCDONALD** | ) **to Defendants' OneWest Bank, MERS** |
| **Plaintiff** | ) **and Northwest Trustee Services Motion** |
| v | ) **for Summary Judgment** |
| **ONEWEST BANK, FSB, et al.,** | ) |
| **Defendants.** | ) |

-----------------------------------------------------------------

## I.       Introduction

**COMES NOW**, Plaintiff James McDonald and respectfully submits this Opposition, Response and Counter to Defendants' OneWest Bank (OWB), Northwest Trustee Services (NWTS) and Mortgage Electronic Registration Systems (MERS) Motion for Summary Judgment on Plaintiff's First Amended Complaint.

Pursuant to the Court's Order (Dkt 116) Plaintiff has been given a total of 51 pages to respond to Defendants' Motion and therefore is not constrained by the 24 pages pursuant to Local Rule 7(e)(3).

The Defendants' Motion should be denied and/or summary judgment should be awarded to Plaintiff as Plaintiff has and will continue to show that the Defendants have violated Plaintiff's civil rights, violated the federal and state statutes as described in Plaintiff's First Amended Complaint and have conducted themselves, singly and jointly, in an unethical, unfair and deceptive fashion.

## II.       Defendants' Alleged Facts

**II.1** Page 2 ¶1 of Defendants Motion states, "To secure repayment of the Note, Plaintiff granted to Mortgage Electronic Registration Systems as **nominee for the original lender, Indymac Bank** and its successors and assigns". This is true. Plaintiff did indeed sign the Deed of Trust (Exhibit 1). In said DOT MERS was given **nominal** status for the principal, Indymac Bank,

FSB. Nominee is, "One designated to act for another as his representative in a rather <u>limited</u> <u>sense</u>" (*Black's Law Dictionary,* 6th Ed, West 2009, p.1160). OneWest Bank is not the principal of MERS in this instance as discussed below.

**II.2** In Page 2 ¶2 of the Defendants motion, they admit that Indymac Bank, FSB sold Plaintiff's note. It is notable that this is Indymac Bank, FSB and not Indymac Federal Bank, FSB, which was created after the FDIC took over the operations of Indymac Bank, FSB. However, the Defendants' claim that Freddie Mac has remained the owner of the Note is contradicted by the evidence in the Court record. Plaintiff disputes that Freddie Mac has remained owner as Freddie Mac's business model is to purchase notes then sell them into securitizations to the global market (Exhibit 3). Further as the subpoenaed information from Deutsche Bank National Trust Company (DBNTC) shows, the Note was placed into a securitization pool on or about February 27, 2007 (Exhibit 4).

**II.3** The Defense states, "On March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold **most** of the assets including the rights to service the loan presently at issue to OneWest Bank, FSB" (Defendants' Motion Page 2 ¶4). The items referenced as exhibits by the Defendants in this paragraph make no specific reference to Plaintiff's Note. Therefore Defendants have presented no evidence that Plaintiff's Note was included in any of the transactions. Plaintiff had requested all exhibits/addendums related to these agreements on April 4, 2011 (Dkt. 54) but the Defendants never produced them (See Dkt. 102- Plaintiff's Reply Second Motion to Compel Defendants Item 12). On the following page, the Defense again claims, "OneWest Bank is the current servicer". Plaintiff disputes that OWB is the master servicer for the real party of interest.

**II.4** On Page 3, ¶1 the Defense makes a false statement. "OneWest has possession of the blank endorsed Note through a document custodian". The document custodian, DBNTC was not holding the Note (which Plaintiff disputes DBNTC ever had the Note) for OneWest. They were holding it for a non-party. OneWest has no benefit of any notes in the custodian's possession (Exhibit 5, §g). The Defense reiterates the false statement in the following paragraph.

**II.5** OneWest Bank is not the note holder as will be discussed at considerable length in this Response. OWB has not been in possession of the "Note" since March 19, 2009 as they claim, as once again, DBNTC was holding the note on behalf of another party and OneWest had no benefit of any notes being held by the custodian or released to OneWest (Exhibit 5, §g). As OneWest has no benefit of the Note, OneWest certainly is not the beneficiary or holder of the Note as discussed

Plaintiff's Opposition and Counter                    -2-                         James McDonald
To Defendants' Second Motion for Summary                          14840 119th PL NE, Kirkland, WA 98034
Judgment                                                                         Phone: (425) 210-0614

in depth below. Further, as the subpoenaed information from DBNTC shows, the Custodian (DBNTC) has been in possession of the file regarding Plaintiff's Note since on or about March 27, 2007, well before the "on or about May 12, 2009 as the Defense and their Declaration (Dec. of Charles Boyle) claims. Mr. Boyle, who claims to be relying on accurately kept records, shows that he has a true lack of knowledge and his testimony should be heavily questioned.

**II.6** Plaintiff disputes ¶3 of P.3 in its entirety. Plaintiff has never been declared in default by a real party of interest. OneWest is not Plaintiff's creditor, nor are they the beneficiary/holder of the Note. Freddie Mac, a non-party, sold Plaintiff's Note on or about February 27, 2007 and therefore also would not be the real party of interest.

**II.7** Plaintiff also disputes ¶4 of page 3 in its entirety. Plaintiff never received these alleged letters. The first time Plaintiff saw these letters was within the motion at hand (Declaration of JM Dkt. 129). There are no indications from this Exhibit that show OneWest even mailed the letters, nor can Charles Boyle personally attest to seeing them mailed. Therefore **Plaintiff moves to strike Exhibit 9** from the record.

**II.8** Plaintiff concurs with P.4 ¶1. Northwest Trustee Services did indeed mail and post a Notice of Default (Exhibit 6), either themselves or through an affiliated company, acting as the agent of OneWest rather than an impartial third party trustee between the parties. The Notice of Default falsely identifies OneWest as the Note Owner (in violation of RCW 61.24.030(8)(l), Plaintiff's creditor and is accompanied by a Beneficiary Declaration that claimed OneWest was the Beneficiary, whereas they were not as discussed below and claiming that they had complied with the contact requirements as required by RCW 61.24.031, which they had not. It was signed by Erica Johnson-Seck[1] under the penalty of perjury.

**II.9** Plaintiff also concurs with P.4 ¶2. An Assignment of the Deed of Trust (Exhibit 7) was filed and recorded in King County Records. The Assignment was sworn under the penalty of perjury by Brian Burnett, who was not even authorized to sign the document as the MERS Corporate Resolution shows (Exhibit 8). It also purported to transfer ownership of the Note which MERS, through their counsel, admits to have not been the owner or holder of. There is no "term of art", as the Defense colors it, to claim passing the rights of something that one has no dominion over. Further, Northwest Trustee Services filed and recorded or caused to file and record the document in King County Public Records, when they knew or should have known MERS has no

---

[1] http://voices.washingtonpost.com/political-economy/2010/09/onewest_bank_employee_not_more.html

ownership in any notes. Therefore all three defendants are in criminal violation of RCW 40.16.030.

> "Every person who shall knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, is guilty of a class C felony and shall be punished by imprisonment in a state correctional facility for not more than five years, or by a fine of not more than five thousand dollars, or by both."

**II.10** Defendant OneWest did indeed record or caused to be recorded an unlawful Appointment of Successor Trustee signed by Suchan Murray. This Appointment of Successor Trustee states, "The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the **owner and holder** of the obligation secured by the subject deed of trust and is not holding the same as security for another obligation." The notary, Anna Elizabeth Ramsey, testifies that Suchan Murray executed this document **under oath and penalty of perjury**.

First, OneWest has admitted in the course of this trial that it is not the owner of the Note, as they admit again in their present Motion for Summary Judgment. Second, they are not the holder of the Note as again will be discussed throughout this Response. Third, the Note became a surety when it was securitized. Once a Note joins a Mortgage Backed Security it becomes a surety of the new debt the seller of the MBS took on. So even if OneWest was the holder, which they are most definitely not, the Note was also being held as a surety of another debt. NWTS, acting as OneWest's agent, filed and recorded the Appointment with King County Public Records. Both OneWest and NWTS committed a criminal violation of RCW 40.16.030 by filing or causing to be filed false statements in a recorded document.

**II.11** NWTS did indeed file the Notice of Trustee Sale in King County Public Records. The Grantee at the top of the page is **Julie** B. McDonald, a single man. While this is a "hypertechnical error" it does show the sloppiness and inaccuracies of NWTS' procedures. The NOTS falsely states, "The Beneficiary alleges default of the Deed of Trust…" NWTS knew or should have known, as they were OneWest's agent as described supra, that OneWest was not, in fact, the owner, holder or legal beneficiary of the Note in violation of RCW 61.24.030(7)(a). "That, for residential real property, **before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the <u>owner of any promissory note</u>** or other obligation secured by the deed of trust." While it goes on to say that a trustee that has not violated their duty of good faith, which NWTS had, can rely on the Beneficiary's Declaration; NWTS

Plaintiff's Opposition and Counter
To Defendants' Second Motion for Summary
Judgment

-4-

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

knew or should have known that OneWest was not the owner of the Note and therefore the NOTS should never have been filed and recorded.

Even had NWTS been unaware that OneWest had falsely claimed to be the owner, the Plaintiff made them aware of it shortly after receiving the NOTS (Dec of JM, Dkt. 129). Instead of cancelling the sale and filing a recordation of the cancellation due to the fallacies, NWTS continued forward with the sale even though they knew OneWest was not the owner as required by RCW 61.24.030(7)(a) as discussed above. Therefore NWTS not only utilized unfair and deceptive practices, but violated criminal code RCW 40.16.030 by filing and recoding false statements with King County Public Records.

**II.12** NWTS also did indeed file and record the Amended Notice of Trustee Sale on November 4, 2010. At this point, NWTS was well aware that OneWest was not the owner of the Note as required by RCW 61.24.030(7)(a) as discussed supra. They knew the NOD and Beneficial Declaration contained falsities. They also knew that the Appointment of Successor Trustee was deceptive in claiming that OneWest was the owner and holder of the Note. Further they knew that the Assignment of Deed of Trust contained falsities as well. And yet they knowingly filed the Amended NOTS with King County Public Records in the ongoing unfair and deceptive acts that also constituted another violation of criminal code RCW 40.16.030 as discussed supra.

**II.13** Plaintiff did mail a Qualified Written Request, Dispute and Debt Validation Demand to OneWest on or about April 27, 2010 after discovering some of their false statements. Plaintiff included NWTS and MERS. OneWest's response failed to comply with applicable law as will be discussed below and is described in the First Amended Complaint. OneWest did state that Freddie Mac was the investor. However, they did not state who the owner was. The Defense would have Plaintiff and the Court to believe that "investor" is a simile for "owner". That is simply not the case. An investor is:

"A person who makes investments. An investor may act either for him or herself or on behalf of others. A stock broker or mutual fund manager, for instance, makes investments for others who have entrusted that person with their money."[2]

Similes for investor would include backer or grantor. This is an accurate description of what Freddie Mac does. Freddie Mac purchases pools of loans through proceeds from the sales of mortgage backed securities, then sells the new pools into new mortgage backed securities (Exhibit

---

[2] http://www.nolo.com/dictionary/investor-term.html

3). If they held onto the loans they purchased (or rather utilized, like a stock broker, other people's money in the MBS market) they would run out of funds to purchase new loans. Once a MBS is sold, it receives a guarantee from Freddie Mac. That means the owners of the MBS (and the Notes within those pools) are guaranteed payment by Freddie Mac. Freddie Mac is able to do that through the "credit risk fee" it collects on every loan it purchases (Exhibit 3).

As investor is not a simile for owner, OneWest failed the most basic requirement of the QWR portion of the document Plaintiff sent them. They failed to disclose who the true owner (in this case the MBS Trust) of Plaintiff's Note was. Further they failed to mark the account in dispute as required. Still further, they failed to validate the debt. These will be discussed in greater length below and are discussed in the First Amended Complaint.

### III.     Plaintiff's Statement of Facts

On May 20, 2011 Plaintiff received a response from DBNTC (Exhibit 4) to a subpoena issued on May 13, 2011. DBNTC's counsel, Shawn Hynes' letter enclosed requested information regarding Plaintiff's loan file. Mr. Hynes stated that Plaintiff's note was part of a trust (MBS). The subpoenaed information showed that DBNTC had never received the Note as Defense claims, but had released the file containing the Deed of Trust and Title policy to OneWest on October 5, 2010.

### IV.     Exhibits and Declarations Defendants Utilize as Evidence

#### IV.1 – Declaration of Charles Boyle

In the first paragraph of Mr. Boyle's Declaration, he testifies, "In the regular performance of my job functions (Plaintiff's Note: which he does not specify what those are), I am familiar with business records maintained by OneWest Bank for the purpose of servicing mortgage loans (Plaintiff's Note: not owning, not holding). These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by OneWest Bank. It is the regular practice of OneWest Bank's mortgage servicing (Plaintiff's Note: again, not holding business) to make these records. In connection with making this declaration, I have personally examined these **business records**."

As Plaintiff noted, Mr. Boyle makes no references to OneWest performing anything but simple loan servicing. He does not indicate OneWest as a holdings company (one who holds investments such as promissory notes for their benefit).

Mr. Boyle is quite personally aware that these records, including executed documents such as declarations, assignments and appointments, have been proven to contain falsities (indicating a pattern of deceptions by OneWest). Further he has been reprimanded for his flawed and inaccurate testimony.

On May 26, 2011 Judge Fabre of the US Bankruptcy Court in the District of Southern California issued a Memorandum Decision that involved strong criticism of OneWest Bank and specifically about Brian Burnett (who signed the Assignment of Deed of Trust in Plaintiff's case) and Mr. Boyle. *In Re: OneWest Bank, FSB v Arizmendi* BK Case 09-19263-PB13 (2011). This case reflects similar deceptive patterns, such as false statements under oath, to Plaintiff's case. Brian Burnett executed a sworn Declaration stating that OneWest was the "real party of interest" and the "current beneficiary" of Mrs. Arizmendi's Note and Deed of Trust. However, at the hearing, Mr. Boyle was put on the stand. Mr. Boyle, under examination, admitted that was not the case. He then claimed that Freddie Mac was the real party of interest and current beneficiary. Further, though he testified that he had *reviewed the records* pertaining to Mrs. Arizmendi's case, he was unaware of payments that had been made.

Judge Fabre concluded, "OneWest's handling of this issue was sloppy at best and **illustrates the problem with any reliance on its witnesses. To put it bluntly, the right hand does not know what the left hand is doing at OneWest** (emphasis added)." The Judge also stated, "Thus, MERS' purported assignment of the Trust Deed **and the related note** as nominee for the Original Lender and without a reference to Indymac Bank, FSB or Freddie Mac appears **designed to disguise rather than to illuminate the facts**…**OneWest failed to tell the true and complete story** in the OneWest Declaration and the Claim." The Court then ruled to deny the Stay Motion stating, "The Court will not participate in a process where OneWest increases its profits by disobeying the rules of this Court and by providing the Court with erroneous information."

The Judge ordered a show cause hearing on, "why OneWest should not be held in contempt and/or otherwise sanctioned."

The Arizmendi case is a clear showing of a pattern of OneWest's activities of deceptive practices. It also proves that Mr. Boyle's testimony is highly suspect in its accuracy, reliability and

legitimacy. Yet this is not the only time that Mr. Boyle's testimony and OneWest's deceptive actions has resulted in a show cause hearing. *In re Doble*; BK Case No 10-11296 again has OneWest and Charles Boyle's testimony resulting in a show cause hearing for being "neither candid nor credible".  *In re Carter;* BK Case No 10-10257-MM13 (similar show cause hearing that is still ongoing including more declarations by Brian Burnett and Charles Boyle). *In Re Telebrico* Bk. No. 10-07643-LA13 OneWest included a declaration by Suchan Murray (who signed under oath the Appointment of Successor Trustee in Plaintiff's case) and the actions of OneWest resulted in a show cause hearing for "One West provided evidence that was either intentionally or recklessly false."

While Arizmendi alone is enough in Plaintiff's opinion to require anything and everything Mr. Boyle testifies to be fully authenticated, this pattern indicates that anything OneWest claims should be fully authenticated. Mr. Boyle's testimony, however, is not authenticated.

**IV.1.A** Paragraph 4 of Mr. Boyle's declaration states the Indymac Bank, FSB sold Plaintiff's Note to Freddie Mac. However, while he utilizes specific dates throughout his declaration, he does not have a specific date in which this occurred. While Plaintiff does not dispute that Indymac sold the loan, he finds it rather odd that the "records" Boyle only reviewed do not give him a specific date or that he failed to disclose it.

**IV.1.B** ¶8 is not backed up by any document that specifically identifies Plaintiff's note. The evidence before the Court (Exhibit 4) shows that Freddie Mac sold the note as part of a trust.

**IV.1.C** ¶9 is false. The Defendant's own evidence (Exhibit 5) states that DBNTC is holding the notes (if they have them) for a party other than OneWest. Any notes released to OneWest are to be held for another party, not for OneWest's benefit.

**IV.1.D** ¶10: There are two points to this paragraph. First, if they were the holder/beneficiary of the Note they would have unilateral rights to modify its terms. They admit in the First RFA (Exhibit 10) served upon them that they cannot make this unilateral decision. This is yet another point as to why they are not the true holder/beneficiary/real party of interest. Second, Mr. Boyle's assertion is not backed up by any authenticated evidence that specifically identifies Plaintiff's Note.

**IV.1.E** ¶11 This is a falsity. As discussed in IV.1.D and the evidence before the Court (Exhibit 4) OneWest has not been in possession of the Note since March 19, 2009. Further, the Custodian

(DBNTC) received the mortgage file (not the Note) electronically on January 11, 2007 and received the Deed of Trust on March 27, 2007 (Exhibit 4).

**IV.1.F** As discussed supra, Plaintiff disputes paragraph 12.

**IV.1.G** As discussed supra, Plaintiff disputes OneWest actually sent the two letters (Defendants' Exhibit 9) to Plaintiff. Mr. Boyle is apparently looking at a screen shot of template letters and cannot testify that they were printed, put in an envelope and mailed to Plaintiff. Stating that the letters were sent rather than generated at some point in time is nothing more than hearsay.

**IV.1.I** ¶16 is marginally correct. Defendant OneWest requested the Note on October 5, 2010 and the file (not Note) was sent on October 6, 2010 (Exhibit 4). Mr. Boyle fails to get the date correct, again indicating poor record keeping at OneWest.

**IV.1.J** Plaintiff disputes that the original note is at the office of the Counsel for the Defense and will discuss this below.

**IV.1.K** Mr. Boyle provides no relevant or reliable evidence that specifically identifies Plaintiff's Note that conveys real authority to OneWest Bank to act in any capacity, let alone beneficiary and holder. For the above reasons, Plaintiff **moves the Court to strike** Par. 4 Sentence 2, Par. 8, Par. 9, Par. 10, Par. 11, Par. 12, Par 13 and Par. 17 as hearsay. **Plaintiff further moves the Court to hold a show cause hearing for the inaccuracies and unauthenticated testimony as described herein**.

**IV.2 Defense Exhibit 3: OTS Pass Through Receivership:**

This exhibit fails to pass the relevance test of FRE 401. The fact that Indymac Bank, FSB failed is of no consequence to the issues at hand. Plaintiff therefore moves to strike.

**IV.3 Defense Exhibit 4: Purchase and Assumption Agreement**

The Defendants utilization of these excerpts of this document as evidence fails to pass the relevance test of FRE 401 and appears to confuse the issue under FRE 403. The Defense utilizes pages 1,2,26 and 42 of this document. None of the sections utilized specifically identifies Plaintiff's Note in any way, nor do these excerpts mention anything more than the Assuming Bank wanting to acquire "certain assets". Further the Defense's utilization of Page 26 of this Agreement without utilizing Page 25 is deceptive. Page 26 is a continuance of Article VI: Records – Transfer of Records (data transfer). The Defense appears to be trying to utilize Page 26 as a list of assets purchased, which is not the case. **Therefore Plaintiff moves to strike this Exhibit and moves**

**for a show cause hearing as to why the Defense appears to be attempting to mislead the Court.**

### IV.4 Defense Exhibit 5: Master Purchase Agreement

Again the Defense utilizes a short excerpt of an agreement. In the excerpt used it says, "Indymac Federal's servicing advances and servicing rights with respect to **certain** mortgage loans and the related platform". There is absolutely no specific mention of Plaintiff's Note. In point of fact, Plaintiff requested all addendums and exhibits to all of the agreements contained in this section of the Defense's exhibits (Dkt. 54) the first time they utilized them in the first Motion for Summary Judgment. The Defense failed to authenticate that these agreements had anything to do with Plaintiff's Note by failing to provide the documentation necessary to authenticate them as relevant to the matter at hand. **Therefore Plaintiff moves to strike this exhibit**.

### IV.5 Exhibit 6: Loan Sale Agreement

This exhibit has no relevance to the litigation at hand. The Defense has already admitted that Indymac Bank, FSB sold the loan prior to the takeover of the bank by the FDIC (Defendants Motion P.2 ¶2). This agreement is solely for the purchase of loans still owned by Indymac Federal Bank, FSB at the time that OneWest Bank purchased "certain assets". Not only does it fail to pass the FRE 401 relevance test, it is accomplishes nothing but confuses the matter at hand and wastes the Court and Plaintiff's time as per FRE 403. **Wherefore Plaintiff moves to strike the exhibit.**

### IV.6 Exhibit 7: Servicing Business Asset Purchase Agreement

There is no specific mention of Plaintiff's note in this Agreement. Plaintiff requested in his First Request to Produce (Dkt. 54) for all attachments to the agreement to be delivered to him for review. The Defendants failed to provide those items. What this agreement does mention is that there are Servicing Agreements, which the Defendants have yet to produce (Dkt. 102), not just a servicing guide. As the Defendants failed to provide the addendums to this Purchase Agreement that may or may not identify Plaintiff's loan and failed to provide the executed Servicing Agreement related to Plaintiff's loan, **Plaintiff moves to strike.**

### IV.7 Exhibit 9: "November Letters"

As discussed supra, Plaintiff never received the alleged letters that Defendants claim to have sent. Their testimony and exhibit only indicate a screen shot of a template letter. There is no evidence on record that these letters were actually printed and put in the mail by someone. Therefore Plaintiff moves to strike.

Plaintiff's Opposition and Counter                -10-                              James McDonald
To Defendants' Second Motion for Summary                          14840 119th PL NE, Kirkland, WA 98034
Judgment                                                                              Phone: (425) 210-0614

**IV.8 The alleged note in possession of Counsel.**

Plaintiff believes the "note" in possession of the Counsel of the Defense is not the original Note. This belief is based upon the evidence before the Court record and personal inspection which he made on July 13, 2011 in the presence of the Defense's Counsel (Declaration of JM, Dkt 129).

First, the Subpoenaed information (Exhibit 4), and quite likely why the Defense is pushing to exclude it in their response to Plaintiff's Motion for Partial Summary Judgment, shows a complete inventory of the file DBNTC had in relation to Plaintiff's loan. According to Page 2 of the document, DBNTC received the Mortgage (Deed of Trust[3]) on March 27, 2007. It also received the Title (Lenders Title Policy) on April 9, 2007. According to the records **DBNTC never received the Note**. While DBNTC sent documents to OWB when OWB requested the file on 10/1/10 (8 months after the foreclosure proceedings started), they did not have the Note to send. So while Charles Boyle provides already questionable testimony as discussed supra OWB received the Note on or about October 5, 2010 (which he never personally witnessed or received), the authenticated data from the Custodian shows otherwise.

Further, as stated above, Plaintiff viewed the "note" in the presence of Heidi Buck on July 13, 2011. While Plaintiff is not a forensic document expert, he did notice that the document looked basically untouched and that no trace of where the pen he used could be felt on the paper. Further, as a former Indymac employee, Plaintiff is aware of the process and the large number of hands that the Note would have gone through, yet the pages were in near pristine condition (Dec. of JM, Dkt. 129).

Plaintiff is therefore convinced this is not, in fact, the original Note. **Plaintiff moves to strike the unauthenticated "note"**.

## V. Arguments and Responses

**V.1 Defendants MSJ V.B.1 – Deed of Trust Act Violations**

In Plaintiff's Original Complaint (Dkt. 1), as the Defense is well aware, Plaintiff brought both a wrongful foreclosure tort claim and claims for Deed of Trust Act violations against the Defendants. These are two separate claims that the Defense is trying to creatively fuse into one

---

[3] "A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Black's Law, P.1115

and by doing so, attempt to discredit Plaintiff's legitimate claims against the Defendants and mislead the Court.

Black's Law defines foreclosure by stating it is, "The **process** by which a mortgagor of real or personal property, or other owner of property subject to a lien, is deprived of his interest therein" (*Black's Law Dictionary*, 6th Ed., West 2009 P.646). A process is a "series of actions, motions, or occurrences." (*Black's* P.1324).

The Defense's case law in their argument fails in comparison to the litigation before this Court in both the claims pled and the manner in which they are pled.

**Krienke v. Chase Home Fin., LLC**

The Krienkes filed a lawsuit through their counsel Melissa Huelsman. The lawsuit had two primary claims. The first was the tort of wrongful foreclosure. The second was for a preliminary injunction. There were no specific DOTA violations alleged or pled in their Complaint. The Krienkes and Ms. Huelsman apparently did not work well together and Ms. Huelsman withdrew as counsel citing irreconcilable differences. Rather than obtaining new counsel, the Krienkes moved forward as pro se and attempted to file claims against Ms. Huelsman. The Krienkes appear to have been very directionless as they conducted no discovery and gathered no evidence. The only item they went into their hearing for the MSJ was a Declaration by Mrs. Krienke. They failed to plead their case appropriately and were dismissed by the Judge.

The Krienkes then tried to appeal the Court's decision, citing a great many reasons why the decision should be reversed, but once again having no evidence other than Mrs. Krienkes Declaration. They stated in their appeal that their claim was for the "wrongful initiation of foreclosure". And that's where the phrase came from later used in the various case law that the Defense in the current litigation utilizes. This one, completely poorly pled case from a wisely unpublished opinion is the basis for the dismissals of several cases, of which the Defense is trying to capitalize on.

Plaintiff has done much better in litigating his case than the Krienkes did in theirs. Plaintiff chose to ignore his wrongful foreclosure tort claim from his Original Complaint and has identified specific violations of the DOTA that are unfair and deceptive acts that are then tied directly to the WA Consumer Protection Act. Plaintiff's case is day and night compared to the Krienkes'.

*Krienke v. Chase Home Fin*., LLC, 140 Wn. App. 1032, 2007 WL 2713737 at 5 (Wash. Ct. App. 2007)

**Pfau v. Wash. Mutual, Inc**

Plaintiff's Opposition and Counter                    -12-                                    James McDonald
To Defendants' Second Motion for Summary                                14840 119th PL NE, Kirkland, WA 98034
Judgment                                                                                       Phone: (425) 210-0614

Mr. Pfau's situation developed over an apparent confusion over who was supposed to be paying property taxes. The taxes were escrowed, then they weren't, then they were again. The result was an alleged default by Mr. Pfau and the trustee sold his house at auction. Like Krienke, Pfau made a wrongful foreclosure tort claim. He also included claims for Emotional Distress, CPA Violations (which he did not properly plead the elements of), FCRA Violations, Unjust Enrichment and Slander of Title.

Mr. Pfau made no claims on violations of the Deed of Trust Act, nor alerted the Court to any fraudulent or deceptive documents executed or filed by the Defendants. Mr. Pfau lost most of his claims based on the fact that the foreclosure had already concluded (remember, foreclosure is a process not a single act) and he had failed to enjoin it. "The Plaintiff has waived any and all claims related to the foreclosure of 201 N. Napa, including any wrongful initiation of foreclosure claims." As far as his ruling on a wrongful foreclosure claim, the Judge based his entire opinion on Krienke, which as discussed supra was not well pled. For the reasons notes herein, the Pfau case is not similar to Plaintiff's.

*Pfau v. Wash. Mutual, Inc,* NO CV-08-00142-jlw, 2009 WL 484448, at 12 (E.D. Wash. 2009)

**Vawter v Quality Loan Service of Washington**

The Complaint was for claims of: Temporary and Permanent Restraining Order, Infliction of Emotional Distress, Breach of Fiduciary/Quasi-Fiduciary Duty, Violations of the CPA and Violations of TILA. It was removed from WA Superior Court to the US District Court. Vawter won their claims against the Mortgage Broker(s) involved. Judge Robard utilizes Krienke as his basis for dismissing the Complaint against Chase and QLS. Vawter did not specifically tie in violations of the DOTA (which were quite general in his case) as unfair and deceptive acts as part of the CPA.

*Vawter v. Quality Loan Service Corporation of Washington*, 2010 WL 1629355 at 5 (W.D. Wash. 2010)

**Henderson v GMAC Mortgage Corp.**

The Henderson case relied almost entirely on an "oral agreement" between the Hendersons and GMAC. This agreement appears to be a short term to long term modification or forbearance. The basis of their case relied upon GMAC not honoring the agreement and moving to foreclose on their residence. In the complaint, the Hendersons did not request the Court to restrain the sale and invoke the Washington Deed of Trust Act (RCW 61.24 *et al*), which provides a path for victims of an unlawful foreclosure to seek the Courts' assistance in halting the foreclosure process. Further,

the Hendersons make no allegations of any wrong doing in the foreclosure process other than an oral contract was broken. That is not the case in the present litigation before this Court and therefore this case has no resemblance to Plaintiff's case.

   *Henderson v GMAC Mortgage Corp.,* No. C05-5781RBL, 2008 WL 1733265 at 5 (WD Wash 2008)

**V.1.1 Alleged lenders/servicers/trustees must strictly comply with the Deed of Trust Act**

   Again, Plaintiff's claim is not a tort "wrongful initiation of foreclosure" as the Defense tries to lead the Court to believe. Courts have ruled that the Deed of Trust Act must be strictly followed. "In addition, because nonjudicial foreclosures lack the oversight inherent in judicial foreclosures, we strictly apply and interpret the Act in the borrower's favor" (*Albice v. Premier Mortgage Services of WA, Inc*., 239 P.3d 148 (2011) at page 1152, citing CHD, Inc. v. Boyles, 138 Wash.App. 131, 137, 157 P.3d 415 (2007)).  The federal court also acknowledged the dangers of the unsupervised **process**, stating that it is "mindful that lenders must strictly comply with the DOTA because the non-judicial foreclosure process removes many protections borrowers and grantors have under a mortgage". (*Vawter*, supra). Further, "Washington's Deed of Trust Act has been consistently construed to further three basic objectives. First, the nonjudicial foreclosure process should remain efficient and inexpensive. *Peoples Nat'l Bank v. Ostrander*, 6 Wn. App. 28, 491 P.2d 1058 (1971). **Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure**. Third, the process should promote the stability of land titles." *Plein v. Lackey*, 149 Wn.2d 214, 225-26 (2003); *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 686 (1985).

   The DOTA itself does not have a provision for damages under the DOTA. However the violations allow for damages under other applicable law such as RCW 19.86- Consumer Protection Act. Each of the violations of the Deed of Trust Act were explicitly tied to a claim of violations of the CPA in Plaintiff's First Amended Complaint as unfair and deceptive acts and properly pled out. Further, while statutory damages are not provided for, declaratory judgment and a permanent injunction are applicable.

   Plaintiff filed this lawsuit, not to simply restrain the sale under RCW 61.24.130 but to obtain declaratory relief and a permanent ban on the fact pattern that the Defendants have been attempting to utilize, which is filled with deceptive acts and practices. Restraining an unlawfully appointed trustee such as NWTS is a temporary solution. Restrain is: "To keep in check; to hold back from acting, proceeding, or advancing, either by physical or moral force, or by interposing

obstacle; to repress or suppress; to curb" (Black's Law, P. 1441). Hence a preliminary injunction or restraining order is, "An order in the nature of an injunction which may issue upon filing of an application for an injunction forbidding the defendant from doing the threatened act until a hearing on the application can be had" (Black's Law, P. 1441). These are temporary steps, a band-aid onto the injury, until a more permanent order is obtained through Declaratory Judgment.

**V.2 Defendants arguments in V.B.2 of their Motion for Summary Judgment**

The Defense utilizes a different fact pattern than what they had been using in this section of their Motion. In fact this more resembles the fact pattern they were utilizing prior to the litigation when they claimed OneWest was the "owner" of the Note in the Notice of Default (Exhibit 6) and Appointment of Successor Trustee (Exhibit 11) or when MERS purportedly transferred the Note to OneWest in the Assignment of Deed of Trust (Exhibit 7). Since the litigation began, however, they have admitted that neither OneWest nor MERS is the owner of the Note. Yet they are now trying to return to the holder-in-due-course (HDC) doctrine under federal law.

The Federal HDC Doctrine is codified under the Uniform Commercial Code §3-302. It states:

- (a) Subject to subsection (c) and Section 3-106(d), "**holder in due course**" means the holder of an instrument if:
    - (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
    - (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).

OneWest does not qualify as a HDC under §3-302(a)(2)(i) because, once again, they did not take the Note "for value". Further, neither did the FDIC when they were the Conservator/Receiver of Indymac. As the Defense admits (P.2 ¶2 of this Motion), Indymac Bank, FSB sold the Note prior to the assumption by the FDIC on July 11, 2008. When the Note was sold the first time, the HDC transferred to the purchaser. When the loan was sold as part of a trust on or about February 27, 2007 (Exhibit 4) the certificate holders became the HDC.

At the time that the FDIC created Indymac Federal Bank, FSB they would have only acquired "servicing rights", if even that, and not acquired the Note. The Defense states as much on P.9 ¶2 of their motion, "Indymac Bank, FSB, retained the servicing rights..".  While the Defense argues,

Plaintiff's Opposition and Counter
To Defendants' Second Motion for Summary
Judgment

-15-

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

"Subsequent holders who aquire notes from the FDIC also enjoy holder-in-due-course status…" the Defense completely ignores the fact that OneWest has admitted to not acquiring the Note.

Further, the Supreme Court clarified the FDIC's rights in O'Melveny & Myers v. FDIC:

"Section 1821(d)(2)(A)(i), which is part of a Title captioned "Powers and duties of [the FDIC] as . . . receiver," states that "the [FDIC] shall . . . by operation of law, succeed to--all rights, titles, powers, and privileges of the insured depository institution . . . ." 12 U.S.C. § 1821(d)(2)(A)(i) (1988 ed., Supp. IV). This language appears to indicate that the FDIC as receiver "steps into the shoes" of the failed S&L, cf. *COIT Independence Joint Venture* v. *FSLIC*, 489 U.S. 561, 585 (1989), obtaining the rights "*of* the insured depository institution" that existed prior to receivership." *O'Melveny & Myers* v. *FDIC*, 512 U.S. 79, 87

When the FDIC "stepped into the shoes" of Indymac, they allegedly took on servicing rights on the Note, which may or may not be the case as nothing the Defendants have provided to the Court shows that FDIC or OneWest is the master servicer of the actual holder-in-due-course as discussed in the Defendants Facts section supra. They did not, nor ever purport to be, the holder-in-due-course of Plaintiff's Note.

Further, the Supreme Court disagrees that state law is overruled on every basis. In *Atherton v FDIC* the Supreme Court narrowed the FDIC "get out of jail free card" that the Defense is trying to utilize by stating:

"The Court notes that here, as in *O'Melveny,* the FDIC is acting only as a receiver of a failed institution; it is not pursuing the Government's interest as a bank insurer--an interest likely present whether the insured institution is state, or federally, chartered. The federal need here is far weaker than was present in the few and restricted instances in which this Court has created a federal common law. Thus, state law (except as modified by §1821(k)) provides the applicable rules for decision." *Atherton v FDIC* (95-928), 519 U.S. 213 (1997)

Thus, there is no immunity for the Defendants even if they were the HDC, which as discussed supra, they are most definitely not.

**V.3 Defendant OneWest is Not the Holder**

**V.3.1 Defendant OneWest has not been in actual or constructive possession of the Note since May 12, 2009 as they falsely claim.**

Defendant OneWest claims, on Page 10 of the Defendants Motion, that it has been in actual or constructive possession of the Note since May 12, 2009. This is a falsity. First, as noted in IV.8 supra, the "note" they claim to have has been viewed by Plaintiff and appears to be a color copy. Second, DBNTC never received the Note as is shown in the subpoenaed information (Exhibit 4). Third, even if DBNTC had received the Note, they were holding it for another party per the Custodial Agreement (Exhibit 5). Regardless of what Defendant claims, their evidence clearly indicates that the note is being held for Freddie Mac (under what capacity it does not say, nor does

it specify Plaintiff's Note so Plaintiff's Note may be governed by a completely separate Custodian Agreement).  The Custodial Agreement also states, "Seller/Servicer shall hold in trust and for the sole benefit of Freddie Mac all Notes released to it." Therefore the Defense attempts misdirection of the facts of their evidence by claiming the Custodian was OneWest's as they do again here or that the Custodian was holding the Note for the benefit of OneWest (Defense Motion P. 10, ¶2). The defense cannot cite any direct quote from the Custodian Agreement that supports their position, without artificially creating one, as one does not exist. OneWest has NO benefit of the Notes governed by this Custodial Agreement. As they have no benefit, they are not the beneficiary of any notes governed by the Agreement.

OneWest's claims to be in "constructive possession" of the Note fails as a matter of law and the facts in the case. Constructive possession signifies a party that has dominion (Black's Law, Page 314) over an instrument. As discussed supra, OneWest has no benefit and was to hang onto it for the benefit of another party.

**V.3.2 RCW 62A.3-301**

The statute allows that certain parties are allowed to enforce the instrument. It allows for the holder to enforce, which OneWest is not as discussed supra. It allows a non-holder with the rights of a holder, which they have provided no evidence that specifically identifies Plaintiff's Note from the current HDC/real party of interest. As shown in Exhibit 4, Plaintiff's loan was sold into a Mortgage Backed Security. Therefore, as discussed supra, the real party of interest and HDC would be the certificate holders of that trust. Not Freddie Mac. Not OneWest. Not MERS. Finally, the statute says that:

"(iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

What the Defense fails to acknowledge is that the line they highlighted in their motion is part of part (iii). It is not a separate section. Anyone can make the law say about anything if they take pieces out of context rather than examine the whole thing. Further, it says, "A person **may** be". Notice the conditional word "may" instead of "shall". The statute does not give carte blanche to anyone to enforce any note. It is conditional. The law will not allow for just anyone to enforce an instrument, it only gives the chance that it may happen if the evidence allows for it. In this case, the evidence shows that OneWest has no benefit of the Note. Further this sentence is in reference

to "lost" or "stolen" instruments as part of section (iii). No one that has stolen an instrument could reasonably believe a Court would allow it to enforce.

This is not the first time OneWest has tried and failed to utilize a similar argument. In *Arizmendi (supra)* OneWest tried to enforce the debtors Note and declared they were the beneficiary (holder) of the Note. However, Mr. Boyle admitted at trial that OneWest was not the beneficiary or real party of interest. That resulted in a show cause hearing. Unfortunately, OneWest has not learned their lesson.

### V.3.3 Plaintiff's Note, wherever it actually is, is not a negotiable instrument.

UCC §3-104(a): "Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:… (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money…"

UCC §3-106(a): "(a)  Except as provided in this section, for the purposes of Section 3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another record, or (iii) that rights or obligations with respect to the promise or order are stated in another record.  A reference to another record does not of itself make the promise or order conditional."

**V.3.3.A:** On Plaintiff's DOT (Exhibit 1) under Uniform Covenant 2 it states,

"all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 (escrow). Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." It further states, "Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note." Per 3-106(a)(3) a note cannot be a negotiable instrument if it contains such an undertaking. The rules of negotiability apply only to promises to pay money, not to other non-monetary understandings such as principal reductions for prepayment or overpayment.

**V.3.3.B:** On Plaintiff's Note (Exhibit 2) §5 it states I have, "the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment.' **When I make a prepayment, I will tell the Note Holder in writing that I am doing so**."

Clearly this is an "undertaking or instruction" to do an act other than pay the payment. Therefore under §3-104(a)(3) the Note is not a negotiable instrument.

**V.3.3.C** Uniform Covenant 14 of the DOT (Exhibit 1) states:

"Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law. If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.

If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge."

§3-104(a) & §3-106(a) clearly state that to be a negotiable instrument it must be an unconditional in the promise to pay and the obligation to pay. §3-106(a) also states if there is an "express condition to pay" then it is not a negotiable instrument.

For the above reasons, Plaintiff's note cannot be construed as a negotiable instrument and therefore is governed by Article 9 of the UCC. As Max Gardner states in his article, "Obstacles to Negotiability of Residential Mortgage Notes"[4]:

Presuming a real estate secured note is a non-negotiable instrument (which it is) AND the originator of a given non-negotiable note opts to sell the same THEN UCC Article 9 applies (as it applies both to Sales of secured instruments and secured transactions). In such a case the note must be assigned by the originator/assignor to the assignee AND the assignee MUST pay good and valuable consideration to the assignor in exchange for the assignment.

Thereafter, any further assignment of the non-negotiable note would require full compliance with Article 9 –that is each subsequent assignee must pay good and valuable consideration to the assignor.

In Plaintiff's case, the Defendants claim they have the original note, which Plaintiff disputes, endorsed in blank. However, as the Note in question is not a negotiable instrument, their argument fails as Article 9 allows no such thing.

**V.3.4 Defendant OneWest is not the beneficiary of the Note.** As discussed in great length above, OneWest has no benefit of any notes governed by the Custodial Agreement. They are, as proved above, not the holder. Therefore they are not the beneficiary. What the Defense fails to acknowledge, though utilizes in their motion, is RCW 61.24.030(7)(a) states that the beneficiary of the trust must also be the owner of the Note. This is no "spirit of the law", it is a direct statement. "…the trustee shall have proof that **the beneficiary is the owner of any promissory note** or other obligation secured by the deed of trust." The law is quite clear and OneWest, through the evidence and the law, does not qualify as beneficiary or holder of the Note. The legislature obviously understood that these promissory notes are not negotiable instruments when drafting the legislation.

In addition, once again, Freddie Mac is not the owner of the Note. The Defendants have provided no authenticated evidence that Freddie Mac is the owner of the Note. Plaintiff, however, has provided authenticated evidence from an uninterested third party that states the Note was part of a trust (MBS) (Exhibit 4).

---

[4] http://mattweidnerlaw.com/blog/wp-content/uploads/2012/03/Obstacles-to-Negotiability-of-Residential-Mortgage-Notes.pdf

**V.3.5 Plaintiff has shown false statements made and sworn under penalty of perjury in violation of the DOTA and CPA.**

The fact that the Defense utilizes *Koegel v Prudential Mut. Savings Bank* as a comparison to what her clients have done is frivolous and insulting. In Koegel, the Plaintiff attempted to set aside the sale because there was an inaccurate description of the property. That is most definitely a correctable error. In the present litigation there are no "technical" errors such as an inaccurate property description that are brought as claims. A technical error in this case would be Plaintiff claiming defamation or invalidity because the first NOTS called him Julie instead of James. Plaintiff understands that is just sloppy work. What is not sloppy work is swearing under the penalty of perjury that you are the owner of something you're not. That's deception. And it most definitely prejudices[5] the Plaintiff. Pretending to be the owner/holder/beneficiary of a Note in order to take someone's property definitely creates a bias.  "If the borrower objects, **the burden is on him** to seek judicial protection from wrongful foreclosure." <u>Cox v. Helenius</u>, 103 Wn.2d 383, 388, 693 P.2d 683 (1985).

While Plaintiff's claim is not for wrongful foreclosure, the principle applies. Plaintiff has had an uphill battle. First he spent a considerable amount of time trying to take care of the Defendants' violations administratively. Then he had to file this lawsuit and prove his case against the Defendants, with Routh Crabtree Olsen, and their full array of tools and finances, affiliated with one of the Defendants. The "bias" comes from Plaintiff having to show that Defendants, who the public should have been able to trust, are deceptive.

**Claims**- Plaintiff has specifically pointed out each and every claim of violations of the DOTA against the Defendants in both the First Amended Complaint §3.1 and in Plaintiff's MSJ (Dkt. 103). In order to be as brief as possible, Plaintiff will request the Court review the claims and focus attention here on refuting the Defense's statements.

**The Defense's attempt to classify these claims as "hypertechnical" fails**

There is no "hypertechnical error" in pretending to be something that you're not. A hypertechnical error is something that is excessively specific. An example of a hypertechnical error is when Miss Buck referred to the Plaintiff as "her" twice in her MSJ (P.19, L 21). A claim of defamation against Miss Buck for that would be based on a hypertechnical error. The violations depicted by Plaintiff are plain deception and an unethical attempt to avoid the law and

---

[5] "A leaning towards one side of a cause for some reason other than a conviction of its justice." (Black's P. 1298)

fool unsuspecting homeowners that are supposed to be able to trust banks, trustees and servicers. Does OWB and NWTS truly expect us to believe, when they have Routh Crabtree Olsen on speed dial, that they accidentally claimed to be something they are not **multiple times** when those deceptions are what allowed them to move forward in foreclosure in the first place? The Defendants' attempts to play these off as simply hypertechnical errors are frivolous at best and likely fraud on the Court.

Many Courts agree with Plaintiff. In *Arizmendi, Doble, Carter* & *Telebrico* (supra), OneWest was called to task on providing falsities that were sworn under the penalty of perjury. The same deceptive tactics they utilized in those cases are to be found in Plaintiff's. They claim to be the "owner", "holder" and "beneficiary" of something they are not in order to unfairly and deceptively avoid the law and take the Plaintiff's home when they are not the real party of interest. MERS does the same thing in the Assignment (Exhibit 7). NWTS, the biased agent of lenders, assists them in making these deceptions. Plaintiff would not be before this honorable Court if these were merely hypertechnical issues such as referring to him as "Julie" on the Notice of Trustee Sale. Calling Plaintiff Julie shows a lack of work ethic, poor record keeping and notation, thereby putting into question the trustworthiness of Vonnie McElligott's testimony, but is not grounds for a lawsuit.

Further the 9th Circuit Appeals Court filed an authoritative opinion on March 26, 2012. The Court ruled that violations of Hawaii's version of the Deed of Trust Act constituted an unfair and deceptive act as well as a breach of contract under the Deed of Trust as the "lender" must strictly comply with applicable law. (*Kanamu v Ameriquest et al*. HI-08-1166-JuPaD). Washington state courts concur with Hawaii courts that the state DOTA must be strictly complied with. "In addition, because nonjudicial foreclosures lack the oversight inherent in judicial foreclosures, we strictly apply and interpret the Act in the borrower's favor" (Albice v. Premier Mortgage Services of WA, Inc., 239 P.3d 148 (2011) at page 1152, citing CHD, Inc. v. Boyles, 138 Wash.App. 131, 137, 157 P.3d 415 (2007).

**Notice of Default Claims:**

1.  The owner of the Note was not listed, which the Defense admits, as required by RCW 61.24.030(8)(l). The Defendant has admitted to this violation.

2.  Defendant OneWest purported to be the beneficiary which as discussed supra they are not.

Plaintiff's Opposition and Counter                    -21-                         James McDonald
To Defendants' Second Motion for Summary                    14840 119th PL NE, Kirkland, WA 98034
Judgment                                                                     Phone: (425) 210-0614

3. The Notice of Default did falsely state that OneWest was the creditor. It has been shown they are not the owner, holder or beneficiary. They are not the real party of interest. Plaintiff has never borrowed money from OneWest and they have never purchased Plaintiff's debt. They are not his creditor. RCW 61.24, FDCPA, RESPA and TILA all state the Plaintiff has a right for the true identity of his creditor.

4. Once again, the Defense ignores RCW 61.24.030(7)(a) that requires the beneficiary of the deed of trust to be the owner of the Note. (Dkt. 103, 1.D.6).

5. Again, Plaintiff disputes that Freddie Mac is the owner of the Note as the evidence before the Court shows that Freddie Mac sold Plaintiff's note into a trust (Exhibit 4) as is their standard business model (Exhibit 3). Plaintiff is not certain why the Defense keeps claiming there is no dispute that Freddie Mac is the owner when Plaintiff has disputed it and has shown that Freddie Mac did sell his Note.

6. Yes, before Plaintiff understood what was happening, Plaintiff did make payments to OneWest Bank through continued automatic withdrawals that were set up at the time the loan was originated. However, after Plaintiff discovered OneWest had been dishonest about owning and holding the Note, he then demanded strict proof in the QWR, Dispute and Debt Validation Demand (Exhibit 12) that OneWest was the servicer for the real party of interest. OneWest did not comply. Even in the Court record, OneWest has given no evidence specifically identifying Plaintiff's Note that they are the master servicer for the real party of interest (the certificate holders of the MBS). Plaintiff is still, two years later, trying to uncover the truth that the Defendants are still trying to keep hidden.

7. No, OneWest is not the beneficiary as discussed and proven throughout the FAC, Plaintiff's MSJ and this Response.

**Beneficiary Declaration:**

1. The Defense appears to be confused. There are two "beneficiary declarations" mentioned in the DOTA. The first is what she is referring to and is the declaration the "beneficiary" sends to the trustee. The second, which is the case here, is the Beneficiary Declaration that is required to accompany the Notice of Default under RCW 61.24.031. Here, Erica Johnson-Seck falsely swore under the penalty of perjury and violation of Ultra Vires that OneWest was the beneficiary. Defense also knows that Plaintiff has evidence of Erica Johnson-Seck falsely swearing that she has personal knowledge of items that she signs as Plaintiff included an

excerpt of a deposition Ms. Seck took in his Motion for TRO (Dkt. 18, §2.5.3) where she admits to doing just that in *Indymac Mortgage Services v Machado*.[6]

2. While Miss Buck's next paragraph continues on with the same mistake, Plaintiff will point out that once again Miss Buck ignores that the trustee is to have proof that the beneficiary is the <u>owner</u> of the Note. NWTS, as OneWest's agent knew or should have known they were not as they had access to OneWest's systems and the MERS Database. Further, Plaintiff advised them of the falsity and NWTS was more concerned about being OneWest's "one-stop shop"[7] than ensuring the law was followed as discussed supra.

3. NWTS admits through its Counsel that it still intends to move forward with the foreclosure process on P. 15¶1, even though it is unlawful, which is one of the principal reasons we are in this litigation.

**Letter dated January 15, 2010**

As stated supra, Plaintiff never received the alleged "November Letters" attached as Exhibit 9. The only letter Plaintiff received was the letter from RCO. As Defendants have provided no evidence that these alleged letters were ever actually sent and Mr. Boyle cannot testify, even if it would be questionable testimony, that they were actually sent, Plaintiff maintains the violation of improper contact with Plaintiff as required by RCW 61.24.030.

**Assignment of Deed of Trust**

1. Plaintiff has already covered how these unfair and deceptive acts are prejudicial.

2. Again, the Defense brings up the use of "robo-signer". Robo-signer simply means an individual that signed a document Ultra Vires and includes false statements sworn under the penalty of perjury.

3. As proven in the *Arizmendi* case discussed in IV.1 Brian Burnett, who signed the Assignment DOT, has been proven to make false statements under oath. In Arizmendi he claimed OneWest was the **beneficiary** of the Note. This proved to be a false statement made under oath.

4. Further, the Corporate Resolution that the Defense references is dated prior to the signing of the DOT, **not after**. Brian Burnett was not listed as a party with authorization to sign for MERS. Yet MERS, a defendant in this litigation, is not stepping forward about this issue which only shows they are a willing accomplice.

---

[6] The full deposition can be found at:
http://www.lsnj.org/NewsAnnouncements/Foreclosure/materials/EXHIBITGIndyMacDepositionIndymacvMachado.pdf
[7] This is how NWTS advertises itself to "lenders": http://www.northwesttrustee.com/profile.aspx

5.  Again, the Defense twists what Plaintiff actually stated in his FAC. The Assignment is a nullity, not because MERS assigned it, but because they assigned it to a party other than the owner/beneficiary/holder of the Note. OneWest, as discussed at length throughout this case, is none of those.

6.  Plaintiff is not challenging the use of agents as the Defense tries to suggest. However, the agent (nominee) would need to be directed by the principal (actual beneficial owner) to execute the Assignment.

> "However, even if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal." *In Re Agard*. US BK No. 810-77338-reg (2011)

OWB is not the principal, HDC, holder, beneficiary or owner. The certificate holders of the MBS that the Note was sold into would have become the successor principal as described in the DOT when Plaintiff became, under novation, a surety rather than the Principle Debtor. Second, MERS claimed not only to assign the DOT but also the Note! "Together with the Note or Notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust." This is no "term of art"[8] as Defense tries to color it, but another deceptive act trying to manufacture rights OWB does not have to foreclose on Plaintiff's home. Assigning the Note that MERS never owned **is deceptive** and Courts agree. "Thus, MERS' purported assignment of the Trust Deed **and the related note** as nominee for the Original Lender and without a reference to Indymac Bank, FSB or Freddie Mac appears **designed to disguise rather than to illuminate the facts**… *Arizmendi*

7.  Plaintiff finds it very interesting that the Defense is attempting to utilize Bain, which is currently being considered by the Washington State Supreme Court. Further, Bain received the backing of the Washington State Attorney General who agrees with Bain and submitted an Amicus Brief which Plaintiff utilized in his MSJ. Further, Lender Processing Services is part of the discussion in *Bain*, *Doble* and *Machado*. LPS also had a subsidiary known as DocX that OneWest utilized through LPS. DocX offered to "recreate collateral package" for lenders that had lost parts of files, say a note, for the low price of $95 (Exhibit 13).

8.  As discussed supra, OneWest is not the legal holder or beneficiary of the Note.

**Appointment of Successor Trustee**

---

[8] http://legal-dictionary.thefreedictionary.com/Term+of+Art

Plaintiff's Opposition and Counter     -24-     James McDonald
To Defendants' Second Motion for Summary     14840 119th PL NE, Kirkland, WA 98034
Judgment     Phone: (425) 210-0614

1. The unlawful appointment of successor trustee was signed by Suchan Murray. Ms. Murray was part of the *Telebrico* case discussed supra where, "One West provided evidence that was either intentionally or recklessly false." Further, Suchan Murray was identified as a "common robo-signer" in the article, *Bank Delays in the Resolution of Delinquent Mortgages: The Problem of Limbo Loans*[9] (Citing *American Banker,* July, 2011).

2. Ms. Murray signed the false statement Ultra Vires, under the penalty of perjury, that OneWest was the **owner and holder** of the Note, when it is neither.

3. As discussed in length above and proven by the evidence before the Court, OneWest is not the owner, holder, HDB or beneficiary of the Note.

**Notice of Trustee Sale and Amended Notice of Trustee Sale**

1. The Defense actually doesn't address the claims that Plaintiff made on these two documents, but appears solely focused on the "Facts" section of the FAC. The claims are that NWTS knowingly filed and recorded the NOTS and ANOTS in violation of RCW 61.24.030(7)(a)&(b) when they knew the preceding documents contained falsities as they acted as OneWest's agent. Both the NOTS and ANOTS contained false information, which Plaintiff made sure NWTS was aware of as discussed supra and in Plaintiff's MSJ (Dkt. 103). Further the requisites required under RCW 61.24.030 had not been conducted by the real party of interest, lawful beneficiary, owner or holder as discussed supra.

2. The claims are not moot, as the Defense suggests. The violations have occurred, expired or not. The actions don't disappear simply because a document expires. Plaintiff made these claims in a timely manner and NWTS, through their counsel, has shown their intent to do so again in this MSJ by requesting the Court to set a sale date.

3. Defense attempts to utilize *Udall v Escrow Services Inc* to excuse her clients actions. However, Udall was not a case of DOTA violations against the borrower. Udall consisted of TD Escrow refusing to hand over the deed to Mr. Udall after he was the successful bidder at the auction. This foreclosure appears to have been conducted legally, unlike Plaintiff's. In Plaintiff's case, as OneWest is not the real party of interest, the real party of interest would be able to file suit against Plaintiff for the amount owed, whatever it may actually be. As 62A.3-309 states, "The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against

---

[9] The entire article can be found at: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2018948

loss that might occur by reason of a claim by another person to enforce the instrument." In this case, the debt would not be extinguished as OneWest has provided no proof strictly identifying Plaintiff's Note that shows it services the loan for the real party of interest.

### V.3.6 Securitization of Plaintiff's Note

The Defense again twists Plaintiff's words when she claims Plaintiff suggested, "the supposed securitization of his Note renders both the Note and Deed of Trust void and unenforceable." That is not the case. What **is** the case is Plaintiff's loan was securitized when it was sold as part of a trust (Exhibit 4). Therefore the certificate holders of the trust would be the only party with the right to foreclose if they had realized a default.

Miss Buck also attempts to utilize *Lamb v MERS* 2011 WL 5827813 (W.D. Wash 2011) to prove her point. The Lamb case was dismissed <u>on the pleadings</u> not the law. One of the Lamb's claims was for "wrongful foreclosure for failure to file a tax return..." The Judge dismissed the case based on, "These causes of action fail to state a claim." That is not the case here. Plaintiff does not dispute that a note that was securitized can be foreclosed upon. When a note is sold into a MBS, a novation occurs and the note becomes a surety. The Depositor becomes the Principal Debtor and the original borrower becomes the surety. Should the trust not receive payment from the borrower, insurance policy or guarantee such as Freddie Mac and Fannie Mae have, the trust can then foreclose on one or more of the sureties in the pool. However, it would be the MBS' certificate holders or trustee that would be executing a Notice of Default, themselves or through an agent (which the Defendants are admittedly not their agent). While Plaintiff's Note is part of a MBS/trust (Exhibit 4), the real party of interest did not issue or cause to be issued the Notice of Default or order the foreclosure. See *US Bank v Ibanez*, 458 Mass. 637 (2011).

### V.3.7 Page 20, ¶2

Again the Defense claims Plaintiff claimed an allegation he did not claim! Plaintiff stated both in the Facts section and in the DOTA Claims that the violations in regard to the NOD was when NWTS was acting as OneWest's agent. The claim is that they cooperated with OneWest in creating, executing and sending the NOD when it contained false statements which NWTS knew to be false. This knowledge, besides having taken part in the Appointment and Assignment as discussed supra, is further shown by the letter Plaintiff received from Jeff Stenman of NWTS

where he does not reference OneWest as the owner, holder or beneficiary, but merely as the "servicer" (Exhibit 14).

**V.3.8 Page 20, ¶3**

As stated previously in this Response, in the Plaintiff's MSJ and the FAC, NWTS was never legally appointed trustee. The Appointment (Exhibit 11) unlawfully appointed NWTS as successor trustee when OneWest was not the owner or holder (or beneficiary) as the Appointment claimed.

**V.3.9 NWTS has violated their duty of good faith**

NWTS is nothing more than a vendor for alleged lenders and servicers. Their business model is, "we are uniquely positioned to be a one-stop shop for lenders with holdings in the Western United States." Nowhere on their About Us page do they tell borrowers and grantors what they do for them. They are the "one-stop shop for lenders". While the mutually agreed upon Pacific Northwest Title Co was an unbiased trustee between the parties, NWTS is all about the "lenders". As the "one-stop shop" they don't just provide trustee foreclosure services, they are the lender's vendor for the creation and deliverance of Notices of Default, filing and recording Assignments and Appointments, and sending their sister company, FEI, knocking on homeowners' doors at least once a month to harass them.

In this case, NWTS admits to being the agent of OWB. OWB used them, not only in the capacity of alleged trustee, but as their agency vendor. When they received the Assignment DOT and saw that MERS was purporting to transfer ownership of a Note, when MERS never owns notes as they are well aware of, that didn't give them pause. When Plaintiff contacted them both by phone and in writing, as stated in his Dec to his MSJ and alerted them to the fact that OWB had falsely stated they were the owner and holder, NWTS did not cancel the sale. As discussed supra the letter Plaintiff received from Mr. Stenman identifies OWB as a "servicer" only. When Plaintiff continued to give them further evidence, they remained as OWB's "one-stop shop" instead of obeying their duty of good faith to the borrower/grantor as RCW 61.24.010(5) requires of them. NWTS does not dispute that Plaintiff brought to their attention the falsities Plaintiff discovered on the paperwork as described in Plaintiff's MSJ and the FAC.

Black's Law defines "good faith" as

In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. *Efron v. Kalmanovitz*, 249 Cal.App. 187, 57 Cal.Rptr. 248, 251.

RCW 62A.3-103 defines "good faith" as, "honesty in fact and the observance of reasonable commercial standards of fair dealing." There is nothing honest or fair about NWTS' actions.

This is different from *Mickelson v Chase*. In *Mickelson* the good faith allegation was against the original trustee for not authenticating their notice of removal when the "lender" appointed NWTS. In this case, even after Plaintiff brought the truth to them (not realizing they were a party to the wrongdoing) NWTS **knowingly proceeded in the foreclosure** knowing that it was all based on deception. That certainly doesn't count as "honesty of purpose" or "freedom from intention to defraud". They violated their duty of good faith to Plaintiff as described in his MSJ and FAC.

Also in the Defendants' Motion, Miss Buck is incorrect. Whether or not NWTS was legally appointed does not excuse the fact that they acted as and purported to be the trustee and were complicit in the other violations. Good faith still applies.

The Defense brings up *Klinger v Wells Fargo* in their Motion for some reason. Klinger claimed a violation of good faith, but argued that NWTS was responsible for validating the debt in question. That's not NWTS' job, but the "lender's" responsibility. NWTS duty of good faith is not to defraud the homeowner or allow the homeowner to be defrauded as discussed above.

The Defense also fails to remember that the Attorney General (as stated in the FAC) sent out a letter to all trustees reminding them of their duty of good faith. It also reminded them, "Since July, 2009, Washington trustees have been required to identify the actual owner of the loan and the company that is acting as servicer…"[10]

### V.3.10 MERS has violated the DOTA

As stated on Page 21 of this response, the issue is not whether or not MERS, as nominee, can assign beneficial interest to a party. It is that they assigned the beneficial interest with no direction of the principal (real party of interest as required by Agency Law as discussed in *Agard supra*) to a party other than the owner/holder/beneficiary of the Note. Further they purported to transfer ownership of the Note.

All of Plaintiff's Deed of Trust Act claims are an unfair and deceptive act by the Defendants, which is why each claim is specifically tied to Plaintiff's claims for the WA Consumer Protection

---

[10] The letter goes on to state, "Your role as foreclosure trustee is to ensure that each foreclosure you conduct is completed in good faith and in full compliance with the law. Because Washington State law allows foreclosure without court oversight, you are the party most responsible for ensuring that foreclosures are done properly." The letter can be found at the AG's website: http://atg.wa.gov/uploadedFiles/Home/News/Press_Releases/2010/Trustee%20Letter.pdf

Act violations (See FAC §3.6). Further, all of Plaintiff's claims are supported by evidence, case law and statutory law. The Defense's defense, however, is not.

**V.4 – Plaintiff's RESPA Claims**

As the Defense notes, Plaintiff did not simply send a "Qualified Written Request" in his communication to the Defendants on April 27, 2010 (Exhibit 12). The Communication was a Qualified Written Request, Dispute and Debt Validation Demand as the Defense acknowledges on P.24¶2 of the MSJ. However, the Defense does not include that in the following arguments and seeks to only diminish the document's worth as only a QWR. That is flawed as it does not take into account that the document contains two other segments and is governed by other applicable law as discussed in the FAC. Further, OneWest acknowledged that the document included a QWR in their May 18, 2010 letter, "With respect to those of your inquiries which go beyond the scope of a legitimate QWR, Indymac Mortgage Services respectfully declines to provide the information requested." Therefore they did acknowledge the QWR portion of the document and declined to validate the debt as argued in Plaintiff's other claims. OneWest, through their counsel, cannot now argue that there was no QWR when they acknowledged it previously without it being yet another false statement and potentially fraud on the Court. Also, there were not 198 "demands." Many of the items, which the Defense knows if they have read the document is informational. Many of the other items are simple yes and no questions.

A letter from a borrower must contain two elements to be considered a QWR as shown in USC §2605(e)(B)(i)&(ii).

1. Enables the "servicer" to identify the borrower/account: This is clearly shown on the top of Page 2.

2. "provides sufficient detail to the servicer regarding other information sought by the borrower". Plaintiff requested "information relating to the servicing of the loan" *Joern v OcWen Loan Servicing, LLC*, cv-10-0134-JLQ, 2010.[11] This included requesting the servicer provide proof that it was servicing the loan on behalf of the real party of interest (including the identity and address of the note owner) and showing payouts to that real party of interest as well as an

---

[11] "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond." *Catalan v GMAC* 7th Circuit of Appeals. 09-2182 (2011)

explanation of the debits made on the account. The amount of information requested was obviously very much needed as OneWest had already attempted to deceive the Plaintiff by claiming to be the Note Owner and Creditor on the NOD and Appointment as discussed supra.

In the May 18 letter, OneWest refused to comply with USC §2605(e)(3) in not reporting derogatory information on Plaintiff's credit during the 60 day period by stating, IMS "respectfully declines to put a stop on your credit reporting." They then proceeded to commit six violations of the statute by reporting twice to each of the three credit bureaus in violation of the law.

In *Bhatti*, the Plaintiff only issued a QWR, not a QWR and DVD as Plaintiff has. Therefore it does not apply as comparison. The Bhatti letter can be viewed on Dkt. 9 Exh. 1. *Segle* was dismissed on the pleadings, not the facts. "Plaintiff however, has failed to state claims to relief that are plausible on their face." In this case, Plaintiff has or the honorable Court would never have allowed his RESPA claim to move forward.

**For the reasons discussed supra, OneWest did indeed violate USC §2605(e)**.

**V.5 FDCPA Claims**

Per the Court's restriction, Plaintiff claims that both NWTS and OneWest violated USC §1692(f)(6) of the FDCPA. The statute reads, "Taking or **threatening to take** any nonjudicial action to effect dispossession or disablement of property". Both NWTS and OneWest threatened to take Plaintiff's property.

**Notice of Default:** On or about January 12, 2010 NWTS and OneWest threatened to take the property in the Notice of Default (Exhibit 6). OneWest, and NWTS acting as their agent, threatened to take the Property in question if Plaintiff did not pay them $13,915.66. This included: allegedly delinquent monthly payments of $9,575.44, "late payments" of $286.02, "Lender's fees and costs (without description of what those allegedly were) of $22.00, Trustee's Fees (again without description of what those allegedly were) of $508.00, a Title report Plaintiff did not order of $951.00, a Recording fee when nothing had been recorded of $30, a Certified mail charge Plaintiff did not request of $14.00, a "Posting" fee (when nothing had been "posted") of $70, an additional "monthly payment" of $2,393.86 and an additional "late fee" of $95.34. The two Defendants threatened that if Plaintiff did not pay the $13,915.66 within 30 days that it "may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold…".

On the Notice of Default, the two Defendants listed OneWest as the Beneficiary (Note Owner) and listed OneWest as the "creditor to whom the debt is owed". Plaintiff disputed the debt.

**RCO Letter on January 15:** On or about January 15, 2010 OneWest caused Routh Crabtree Olsen, their Counsel, to send a collection letter stating that they represent "your mortgage company", when OneWest was not Plaintiff's creditor or lender.

**Notice of Trustee Sale:** On or about February 12, 2010 OneWest and NWTS cooperated in delivering a NOTS to Plaintiff. This included: allegedly delinquent monthly payments of $11,969.30, "late payments" of $381.36, "Lender's fees and costs (without description of what those allegedly were) of $22.00, Trustee's Fees (again without description of what those allegedly were) of $725.00 (an increase of over $200 from the NOD), a Title report Plaintiff did not order of $951.00, a Recording fee of $30, a statutory mailing charge Plaintiff did not request of $9.56, a "Posting" fee (when nothing had been "posted") of $70 for a total of $14,158.22. The Defendants stated Plaintiff had to restate by 11 days before May 21, 2010 or the Property would be sold at auction on May 21, 2010. The document was signed by Vonnie McElligott.

**Amended Notice of Trustee Sale:** On or about October 28, 2010 OneWest and NWTS cooperated in delivering a NOTS to Plaintiff and then recorded that notice in King County Public Records on November 4, 2010. This included: allegedly delinquent monthly payments of $30,934.98, "late payments" of $1,239.42, "Lender's fees and costs (without description of what those allegedly were) of $2,768.82, Trustee's Fees (again without description of what those allegedly were) of $508.00, a Recording fee of $129, a statutory mailing charge Plaintiff did not request of $147, a "Posting" fee (when nothing had been "posted") of $136.92 and a "Sale Costs" of $500 for a total of $36,364.14. The Defendants stated Plaintiff had to restate 11 days prior to December 10, 2010 or the Property would be sold at auction on December 10, 2010. The Amended Notice was again signed by Vonnie McElligott.

**Northwest Trustee's Principal, as related to their actions, was OneWest Bank.** NWTS admits to being OneWest's "agent" prior to being unlawfully appointed Successor Trustee (Exhibit 11) on February 4, 2010 by their Principal.

**OneWest claimed to be the owner (Principal) of the Note and Creditor of Plaintiff**: As discussed in the sections above, OneWest falsely claimed to be the owner of the Note and Creditor of the Plaintiff. They also falsely claim to be the holder and beneficiary of the Note (also discussed supra). OneWest has also claimed that they service the loan for Freddie Mac, but provide no evidence that Freddie Mac is the owner of the Note. The evidence before the Court does show that Plaintiff's Note is owned by a MBS trust (Exhibit 4), in which case the owner/HDC of the Note,

wherever it may be, would be the certificate holders of said trust. OneWest does not claim they are the servicer or agent of that trust. As discussed above in V.3.3 Plaintiff's Note is a security instrument under Article 9 of the UCC.

**USC §1692(f)(6)(A) "there is no present right to possession of the property…"**

OneWest now admits to not being the owner of the Note. If they were the servicer for the real party of interest, which they are not, they would still not be Plaintiff's creditor as they also claimed to be in the NOD. As discussed throughout the response, they are not the legal holder or beneficiary of the Note. Nor are they performing these acts under order from the real party of interest.

The Defense's claim that, "A logical extension of this argument (essentially that OneWest and NWTS violated the FDCPA by adhering to the requirements of the DTA in effectuating non-judicial foreclosure) would lead to every non-judicial foreclosure proceeding in Washington resulting in a per se violation of the FDCPA," is ludicrous. If the parties effectuating a foreclosure were legally allowed to do so, there would be no violation. However in this case, as discussed supra, these are violations because the parties do not have the legal right to possession as discussed supra.

**V.6 Consumer Protection Act Violations (RCW 19.86 et seq.)**

At this time, Plaintiff would like to refresh the Court's memory regarding the 9th Circuit of Appeals Court decision regarding *Kanamu* discussed above. The Appeals Court ruled that violations of a state's DOTA constitute an unfair and deceptive act which directly correlates to the violations Plaintiff asserts herein.

Further, rather than correct each individual portion, Plaintiff must correct the Defense. The Defense erroneously switches the word "injury" with "damages" which are not similes. The 5th Element of proving a CPA claim is, "which causes injury to Plaintiff". Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790 (1986).

**V.6.1 Consumer Protection Act Violations – OneWest Bank**

**Deceptive Act or Practice:** As specifically stated in the FAC and supra, each deceptive claim and false swearing that OneWest committed was an unfair and deceptive act. In the Defendants' Motion, the Defense only focuses on the false claims of ownership that OneWest made and Plaintiff will focus on that argument in this Response. Once again Miss Buck claims that ownership of the Note has no bearing on foreclosure. However as discussed supra 61.24.030(7)(a)

requires the beneficiary be the Note Owner. OWB made false statements sworn under the penalty of perjury TWICE that they were the Note Owner. Once might be a mistake, but twice is a pattern. These deceptions were an attempt to legally gain possession of or profit from Plaintiff's real property. Further, OneWest has a known pattern for making false statements and giving false testimony as shown in *Arizmendi, Doble, Carter and Telebrico* discussed supra.

**Public Interest Impact**: Plaintiff performed a public records search (Exhibit 15) in Snohomish County and Pierce County for Indymac Bank in real estate transactions. There were 7,486 records in Snohomish and 7,089 records in Pierce. Over 14,000 entries combined. As OWB claims to have succeeded in servicing interest to all Indymac Bank loans, there are thousands of potential victims. OWB does not currently have a retail or wholesale presence in Washington, yet they appear by name in 1,445 records in Snohomish and 1,285 records in Pierce, which indicates they have conducted or attempted to conduct over 2,000 foreclosures in 2 years in those 2 counties. That compilation only takes into account two of the dozens of counties in this state. When you extrapolate that to consider all the other counties in this state, the prospect of the sheer amount of violations they likely committed is gut wrenching as it is improbable Plaintiff was singled out for their deception.

**Injury to Plaintiff**:

A. Foreclosing on the property removes the security to Plaintiff's loan. The real party of interest is still out there. Without the DOT as security the real party of interest will still want to get paid. According to RCW 62A.3-309, "The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." Further, clouding the title with false statements recorded in public records in violation of RCW 40.16.030 harms Plaintiff's ability to execute his rights to sell the property.

B. Plaintiff has a second mortgage. By illegally depriving Plaintiff of his property he is liable for a $95,000 deficiency judgment as the second mortgage owner will no longer have a secured loan.

C. OWB, as discussed in the First Amended Complaint, has listed for over two years that Plaintiff is in Foreclosure on his credit report. OWB is not a creditor of Plaintiff. Plaintiff is in the finance industry and cannot find a better paying position partially as a result of this illegal foreclosure and partially because of the sheer amount of time spent on this case.[12]

---

[12] http://www.foxbusiness.com/personal-finance/2011/09/20/dont-let-bad-credit-keep-from-landing-job/

D. Plaintiff has had to spend the last two years dealing with the Defendants violations of the DOTA which as described above and in his MSJ are unfair and deceptive acts. The Defense is incorrect stating that Plaintiff has the "unilateral power: when it is the Defendants who had the unilateral power to obey the law and not cause this in the first place. As Pro se, Plaintiff doesn't have access to the legal resources at the disposal of the Defendants. Therefore it takes Plaintiff an inordinate amount of time to litigate his case. Plaintiff spent over 70 hours working on his Reply to his MSJ alone, in both the writing and research required to litigate properly. Plaintiff will still be working on it for the next two days in reviewing and rewording his writing until he has to submit it on March 30, 2012. Considering he has been working on this issue almost full time for two years to remediate these violations of his civil rights, which is most definitely an injury that the Defendants could have prevented by never breaking the law.

"Injury may be presumed when the consumer has to take time or expend money when the consumer has to remediate his status due to a CPA violation." *Panag v Farmers Ins. Co. of Washington,* 166 Wn.2d 27, 204 P.3d 885 (2009).

### V.6.2 Consumer Protection Act Violations – MERS

**Deceptive Act:** Here the Defense just reiterates Plaintiff's claim against MERS and makes no argument against it. However, as the FAC and Plaintiff's MSJ, MERS did deceptively claim to assign the Note to OneWest in the Assignment of DOT.

Public Interest Impact: Defense makes no argument about MERS' Public Interest Impact in her statement therefore it appears that the Defense concedes the Public's Interest is Impacted. Regardless, as of last year MERS claimed to be the beneficiary of 60 million deeds of trust.[13] Their actions and/or negligence definitely have a public impact.

**Injury to Plaintiff**:

A. Foreclosing on the property removes the security to Plaintiff's loan. The real party of interest is still out there. Without the DOT as security the real party of interest will still want to get paid. According to RCW 62A.3-309, "The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." Further, clouding the title with false statements recorded in public records in violation of RCW 40.16.030 harms Plaintiff's ability to execute his rights to sell the property.

---

[13] http://www.nytimes.com/2011/03/06/business/06mers.html?pagewanted=all

Plaintiff's Opposition and Counter     -34-     James McDonald
To Defendants' Second Motion for Summary     14840 119th PL NE, Kirkland, WA 98034
Judgment     Phone: (425) 210-0614

B. Plaintiff has a second mortgage. By illegally depriving Plaintiff of his property he is liable for a $95,000 deficiency judgment as the second mortgage owner will no longer have a secured loan.

C. Plaintiff has had to spend the last two years dealing with the Defendants violations of the DOTA which as described above and in his MSJ are unfair and deceptive acts. The Defense is incorrect stating that Plaintiff has the "unilateral power: when it is the Defendants who had the unilateral power to obey the law and not cause this in the first place. As Pro se, Plaintiff doesn't have access to the legal resources at the disposal of the Defendants. Therefore it takes Plaintiff an inordinate amount of time to litigate his case. Plaintiff spent over 70 hours working on his Reply to his MSJ alone, in both the writing and research required to litigate properly. Plaintiff will still be working on it for the next two days in reviewing and rewording his writing until he has to submit it on March 30, 2012. Considering he has been working on this issue almost full time for two years to remediate these violations of his civil rights, which is most definitely an injury that the Defendants could have prevented by never breaking the law. See also *Panag* supra.

**V.6.3 Consumer Protection Act Violations – NWTS**

**Deceptive Act**: *Leingang* only applies if there was no violation of good faith. In this case, Plaintiff has shown that NWTS violated their duty of good faith by being complicit in the filing of records containing false statements (that it knew or should have known to be false before Plaintiff advised them of it) and by continuing to foreclose after Plaintiff showed NWTS that OneWest was not the owner or legal beneficiary (which the NWTS does not contest Plaintiff did).

**Public Interest Impact**: Plaintiff also performed a public records search on NWTS in Snohomish and Pierce Counties. NWTS only performs foreclosure duties and does not act as a title trustee in non-foreclosure cases according to their website[14]. There are 70,171 records in Snohomish and 74,492 records in Pierce County in the search for NWTS (Exhibit 15). A combined record search of 144,663. As stated supra, it is implausible that Plaintiff was singled out as the sole target of these deceptive acts. Adding in the rest of the counties in this state could effect well over 500,000 Washington residents.

**Injury**: In order not to simply reiterate, injuries listed in V.6.1, items A, B and D apply in the same fashion against NWTS. They also had the opportunity to refuse to be party to violating Plaintiff's civil rights and chose not to. Their actions cause the same injuries as noted above.

---

[14] http://www.northwesttrustee.com/Services.aspx

The fact that Plaintiff is still in his house is immaterial. Plaintiff has been working nonstop for two years fighting the violations these Defendants have committed rather than having a quality of life. We are looking at the element of injury. None of the parties involved are the real party of interest as discussed at length above.

**V.7 Fraud**

**Misrepresentations**

Unlike what the Defense tries to attempt the Court to believe, Plaintiff has identified very material misrepresentations in his fraud claims. The claims, which reflect the DOTA and CPA violations, are deceptive misrepresentation of the facts. They include falsely sworn declarations and false claims of ownership. As shown supra, OneWest is not the owner, the beneficiary, holder or real party of interest. Nor are they directly working for the real party of interest. MERS was never the Note Owner and could never assign the Note. NWTS was never legally appointed successor trustee, which they knew to be true, and assisted the other Defendants in breaking the law with false claims. (RCW 40.16.030).

Again, ownership of the Note is vital in the opinion of the Legislature who clearly requires that the Beneficiary of the DOT be the Owner of the Note. RCW 61.24.030(7)(a), "the trustee shall have **proof that the beneficiary is the owner of any promissory note**". This is reflective of UCC Article 9 as discussed above.

**Damages**

1. Plaintiff is surprised the Defense is still trying to claim an "undisputed default" when they, and their counsel, is well aware that the default is disputed. In this very motion, the Defense referenced the Notice of Dispute (Exhibit 12). Also, for there to be a default, the real party of interest, who is not one of the Defendants or Freddie Mac as discussed above, would have to show a default. Plaintiff has and is still trying to determine who the certificate holders are (real party of interest) and what debt remains after loan guarantees, insurance payoffs and over-collateralization is calculated. OneWest never purchased the Note, therefore is owed no money. Freddie Mac sold the Note and therefore is owed no money. The Defendants are merely seeking to be unjustly enriched.

2. The Defendants unlawful actions are the direct result that the foreclosure is showing on Plaintiff's credit. Further, Plaintiff has disputed the debt, yet OneWest has yet, after two years, to mark the account in dispute. Further, failing to mark the account in dispute and falsely

listing the account in foreclosure (not to mention even reporting to Plaintiff's personal credit file when OneWest is not a creditor of Plaintiff) is a violation of FCRA.

3. Second, like Plaintiff's CPA claim, this is not a meritless claim. The trier of fact will determine who is correct. And the damage of the loss of income and quality of life (as discussed supra) as a result of their deliberate deceptions. OneWest knew that it was not what it claimed, as MERS knew it had no right to assign the Note and the Assignment of the DOT was a recorded misrepresentation as OneWest is not the owner/holder/beneficiary of said Note. Further, NWTS knew both parties were committing these offenses but continued to be the good little "one stop shop" for OneWest.

4. The Defense is quite incorrect when claiming that the false claims, unlawful notices of sale and unlawful appointments do not affect title. There are now four unlawful recordings, in violation of RCW 40.16.030 no less, on Plaintiff's title.  As the actions of the Defendants are unlawful the foreclosure, though still threatened, cannot be legally concluded as the real party of interest is still out there and that leaves Plaintiff subject to a separate action against the Note which RCW 62A.3-309 expressly prohibits. Should Plaintiff wish to sell, he has to warranty condition of his title so must defend its reliability. Thereby, upon winning this Case, Plaintiff still has to work on getting those items removed in a quiet title action.

**V.8 Civil Conspiracy**

The Defense is correct; the Civil Conspiracy claim must be accompanied by another claim of unlawful activity. The unlawful activities which constitute violations of the DOTA, CPA, RESPA, FDCPA and Fraud are the accompanying violations. The evidence does not prove that the actions of the Defendants are lawful. It proves quite the opposite. All of the Defendants' exhibits either fail to specifically identify Plaintiff's Note or state that Defendant OneWest has no benefit of said note (Exhibit 2). Further, the evidence shows that Defense has committed fraud on the Court by claiming that Freddie Mac owns the Note when an uninterested third party in authenticated evidence states perfectly clearly that the Note is part of a trust (Exhibit 4). Defendant OneWest's trustworthiness has been shown completely lacking by similar types of deceptions used in other cases such as *Macado, Azrimendi, Doble, Carter and Telebrico* which not only includes destroying the credibility of the company and Mr. Boyle, but destroys the credibility of the individuals that signed the documents that exist in evidence before this Court.

Further, it is already well established that NWTS acted in concert with OneWest in the actions discussed in the First Amended Complaint. NWTS admits that they were the agent in executing, filing and recording false statements in King County public records in violation of RCW 40.16.030. They acted in concert with OneWest and MERS in filing and recording the Assignment of Deed of Trust that falsely transfers the note to OneWest. These parties worked together to commit the unfair and deceptive acts and therefore the Civil Conspiracy claim is proven.

**V.9 Slander of Title**

The Defense attempts to utilize *Hulse v Ocwen Fed. Bank, FSB,* 195 F.Supp.2d 1188, 1208 (2002) as part of their defense against the slander of title claim. Routh Crabtree Fennel was a defendant in this lawsuit. Plaintiff has read the order the Defense is using and there is no mention of malice, malicious or slander of title to be found. In point of fact, the case ended up being settled out of court. There was a second case involving the same parties in 2004 that did include a slander of title claim, however that case never received a judicial order for dismissal or on a MSJ save for the one dismissing the case because the parties had settled that case as well. Plaintiff truly hopes he is incorrect, but it appears that the Defense is trying to manufacture case law to support her position.

**Malice**

"A conscious violation of the law (or the prompting of the mind to commit it) which operates to the prejudice of another person." Further, "Malice in law is not necessarily personal hate or ill will, but it is that state of mind which is reckless of the law and of the legal rights of the citizen." (Black's Law, P. 1061). Reckless of course is "heedless" or "indifference of the consequences" (Black's Law, P. 1397).

The Defendants actions in this case are most definitely with malice. They knowingly and willfully executed, filed and recorded documents into public records (Plaintiff's title) that contained falsely sworn declarations as discussed in depth above. They knew that they were executing and recording these documents that contained falsely sworn declarations and that it was unlawful to do so. They knew, or most definitely should have known, committing perjury is unlawful. So, too, is recording documents containing false statements (RCW 40.16.030)[15]. It is

---

[15] **Every person who shall knowingly** procure or **offer any false** or forged **instrument to be filed, registered, or recorded** in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, **is guilty of a class C felony** and shall be punished by imprisonment in a state correctional facility for not more than five years, or by a fine of not more than five thousand dollars, or by both.

perfectly implausible that these companies and their employees did not know better and thus committed these acts with recklessness of the law.

As discussed before, NWTS violated their duty of good faith. As the Defense pointed out in her Motion, good faith is the "absence of intent to defraud or to seek unconscionable advantage." As the violations throughout this litigation are about deception, none of these parties were operating in good faith. OneWest has been caught by other Courts providing deceptive statements in declarations and in instruments just like they are here. They have a pattern of deceptive practices that go far beyond this case. The Federal Reserve recently announced it plans on fining OneWest for fraudulent activities relating to their foreclosure business[16].

**Damages**

The Defense is incorrect. The Damage is done. The title has become clouded as stated previously. Plaintiff, once he has won this case, then has to deal with cleaning up his title. Whether or not the sale is concluded is immaterial. The falsely sworn statements that are recorded on Plaintiff's title are stuck there until Plaintiff goes through another legal process to get them removed. That is further time, money and effort that Plaintiff has to deal with in order to clean up the damage they have done. Should Plaintiff wish to sell, he has to warranty condition of his title so must defend its reliability.

And again, the disputed default is not proven as the real party of interest has not declared Plaintiff in default. As discussed supra, the real party of interest may very well have been paid off through an insurance claim or guarantee on the MBS it is a part of. Plaintiff still has to break through the brick wall and find those certificate holders to see what needs to be done to satisfy the real party of interest. As OneWest stated in the response to the 1st RTP to OneWest, they have no record of any monies actually being disbursed to the owner of the Note (Exhibit 9). Therefore, even though Plaintiff has paid a considerable amount on this loan, the proceeds don't appear to have ever made it to the real party of interest.

**V.10 Defense is correct; there is no further basis for a preliminary injunction. However, it is now time for a permanent injunction.**

**V.10.1 Evidence**

The Defense has provided no evidence that supports their position. The Custodial Agreement (Exhibit 5) the Defense keeps claiming gives beneficial status to OneWest implicitly states they

---

[16] http://www.pasadenanow.com/main/federal-reserves-to-slap-fines-on-onewest-bank-seven-others

have no benefit. Therefore they had no constructive possession as they claim. The Custodian never even received the Note in the first place (Exhibit 4). Therefore the original note they claim to have received from the custodian is nothing more than a fake, which supports Plaintiff's suspicion when he viewed it. The assignment not only is a nullity as it transfers beneficial status of the DOT only (*Carpenter v Longan*), it unlawfully transfers the note. The Appointment of Successor Trustee unlawfully appoints NWTS and claims that OneWest is the owner of the Note. The pattern of deceptions throughout this case cannot be ignored.

Further, the "testimony" that the Defense provides in the Declaration of Charles Boyle is unreliable and filled with hearsay as discussed at length in §IV.1 above. The documents the Defense purports as evidence in support of their defense is irrelevant and does not specify Plaintiff's note whatsoever. The claims the Defendants make keep changing: First they are the owner and holder. Then they're holding it but servicing the loan for Freddie Mac. Then they're the holder in due course after having acquired the note from the FDIC who never owned the note to divest it. None of those stories are true. The truth is they are not the holder, beneficiary, owner, holder in due course or creditor (all titles they have claimed). The only portion of their stories remaining the same is their claim to be the servicer of the loan. However, they admit to having no record of any payments ever being disbursed to the owner of the Note (Exhibit 9). If Indymac Mortgage Services, whom OneWest purchased and has full access to the records of, never dispersed payments to the real party of interest, Plaintiff wants the money back.

**V.10.2 Setting a sale date would only enable the Defendants to further violate the law.**

Plaintiff's allegations of the Defendants violations have been proven. The Defendants now request that the Court become an accomplice to their actions by setting a sale date for them so that they may falsely record yet another document and culminate their attempt at theft.

RCW 62A.3-309, "The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument."

For the reasons stated in V.10.1 and throughout this litigation, the Plaintiff is not protected against loss from the real party of interest. Further, the Court cannot be an active participant in breaking the law and the Defendants should not request the Court be their accomplice for an artificial resemblance of legitimacy.

**V.10.3 Current Preliminary Injunction**

As Plaintiff told the Clerk when he called about not being able to make the payment into the Court Register, he regrets but is unable to work full time while working full time learning to be a competent litigant without an educational institution's assistance and spending the hundreds of hours researching and litigating this case.

Frankly, the Preliminary Injunction, a temporary bandage until the case is resolved, was pled under the wrong statute to begin with. Plaintiff now looks to correct that. Whereas he pled for a preliminary injunction, in his days of a complete novice litigant, under RCW 61.24 it should have been pled under RCW 9A.82. Plaintiff moves the Court to allow him to amend his claim for Preliminary and Permanent injunction.

"Here, the court granted the injunction pursuant to RCW 61.24.130, the purpose of which is to protect good faith lenders. The court should have granted the injunction under RCW 9A.82. Its purpose is to protect homeowners." *Bowcutt v. Delta North Star Corp.,* 95 Wash.App 311 (1999).

### V.10.4 Request for Injunction Under RCW 9A.82

RCW 9A.82.100(1)(a): A person who sustains injury to his or her person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or [***] or by a violation of RCW 9A.82.060 or 9A.82.080 may file an action in superior court for the recovery of damages and the costs of the suit, including reasonable investigative and attorney's fees.

RCW 9A.82.100.010(4)- definition of pattern of criminal profiteering: any act, including any anticipatory or completed offense, committed for financial gain, that is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted, as any of the following: [certain specifically defined predicate acts, which plaintiffs assert each of the following defendants committed in concert with an intent to deprive so as to deprive plaintiffs and others property and services.]

RCW 9A.82.100(12): "Pattern of criminal profiteering activity" means engaging in at least three acts of criminal profiteering, one of which occurred after July 1, 1985, and the last of which occurred within five years, excluding any period of imprisonment, after the commission of the earliest act of criminal profiteering. In order to constitute a pattern, the three acts must have the same or similar intent, results, accomplices, principals, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events.

RCW 9A.82.060:

(1) A person commits the offense of leading organized crime by: (a) Intentionally organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity;

(2)(a) Leading organized crime as defined in subsection (1)(a) of this section is a class A felony.

### V.10.4.A OneWest did intentionally organize, manage, direct, supervise and finance 3 or more persons: Erica Johnson-Seck, Anna Elizabeth Ramsey, Alex McBride,  Brian Burnett, Suchan Murray, NWTS, Vonnie McElligott, Routh Crabtree Olsen, Charles Boyle and JC San Pedro, among others currently unknown with the intent to engage in a pattern of criminal profiteering activity including: fraud, perjury under 9A.72, deception, misrepresentation and filing and recording of false statements (RCW 40.16.030). All of these actions are described in full detail

Plaintiff's Opposition and Counter
To Defendants' Second Motion for Summary
Judgment

-41-

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

throughout the First Amended Complaint and this Response to Defendants' MSJ. Each of these parties worked as an employee, agent, vendor or associate of OneWest.

**V.10.4.B OneWest has a pattern of these acts as can be seen in:**

*Arizmendi, Doble, Carter, Telebrico & Machado* as discussed supra. All of the accounts found within these cases occurred after 1985.

**V.10.4.C NWTS has a pattern of these acts as can be seen in:**

*Mickelson v Chase Home Fin., LLC*, 2011 WL 5553821 (W.D. Wash. Nov, 14, 2011)
*Mize v JP Morgan Chase*, 2:11-cv-01245
*Reinke v NWTS*, Bankruptcy No. 09–19609.Adversary No. 09–01541.Oct. 26, 2011 (Court acknowledged the violations but dismissed due to pleadings).

**V.10.4.D Plaintiff moves the Court for a Permanent Injunction**

Plaintiff moves the Court for a Permanent Injunction against OneWest in the capacity as owner, holder, creditor or beneficiary of the Note for the reasons described herein. Plaintiff moves the Court for a Permanent Injunction against NWTS in the role of successor trustee appointed by OneWest for the reasons described herein. Plaintiff moves the Court for a Permanent Injunction against MERS as the owner, holder or beneficiary of the Note for the reasons described herein.

## VI.    Conclusion and Prayer for Relief

In the Defendants' MSJ they have provided the Court with not a single shred of evidence specifically identifying Plaintiff's Note that gives them the right to foreclose on Plaintiff's property. What they do attempt to utilize are two separate fact patterns, irrelevant exhibits that only seeks to confuse the situation or mislead the Court and support their defenses with inapplicable case law. The Declaration they attempt to use is filled with hearsay, unauthenticated statements and unreliable testimony as shown in *Azrimendi*. OneWest claims to be the servicer but yet they state they don't even have a single record of dispersing funds to the owner Further, the Defense has, on multiple occasions, skewed Plaintiff's words or manufactured something that was never stated.

What Plaintiff has shown, through authenticated evidence, the law and relevant case law is that the Defendants are guilty of the violations they are accused of. Plaintiff has demonstrated a pattern of deception in both OneWest (and MERS as an underling of OneWest) and NWTS. Plaintiff has used the Defendants' own exhibit to prove not only did they commit the violations they are accused of but have attempted to mislead this Court by claiming their exhibits give OneWest rights they do not have.

**Wherefore, Plaintiff moves the Court for the following:**

Order to Strike for the reasons noted supra Defense Exhibits 3, 4, 5, 6, 7 and 9

Order that Sections of the Declaration of Charles Boyle Par. 4 Sentence 2, Par. 8, Par. 9, Par. 10,

Par. 11, Par. 12, Par 13 and Par. 17 be stricken as discussed above.

Deny the Defendant's Motion for Summary Judgment and/or find in favor of the Plaintiff under

FRCP 56(f)(1) and grant the Damages listed in Appendix "B".

Grant Plaintiff's Motion for Permanent Injunction against all Defendants or Amend the Complaint

to include a 9A.82 claim.

**/s/ James McDonald -**
**James McDonald**
**Pro Se**

**Certificate of Service**

I hereby certify that on the 9th day of, 2012 the foregoing was electronically filed with the Clerk of the Court using the ECF system, which sent notification and therefore served the following:

Heidi Buck
Routh Crabtree Olsen
13555 SE 36th ST Suite 300
Bellevue, WA 98006

**/s/ James McDonald   -**
**James McDonald**
**Pro Se**

Plaintiff's Opposition and Counter
To Defendants' Second Motion for Summary
Judgment

-43-

James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614