The Honorable Judge Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JAMES MCDONALD,<br><br>Plaintiff,<br><br>v.<br><br>ONEWEST BANK, FSB, NORTHWEST TRUSTEE SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., INDYMAC BANK FSB, DOES 1-50,<br><br>Defendants. | No. C10-1952 RSL<br><br>**DEFENDANT ONEWEST BANK, FSB'S PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>**[NOTE ON MOTION CALENDAR: August 24, 2012]**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. RELIEF REQUESTED

COMES NOW, Defendant OneWest Bank, FSB ("OneWest" or "Defendant") and moves the court for an order granting summary judgment in favor of OneWest. This motion is made pursuant to Fed. R. Civ. P. 56 on the grounds that no genuine issue of material fact exists as to James McDonald's ("McDonald" or "Plaintiff") cause of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), as stated in his Second Amended Complaint ("SAC"), such that OneWest is entitled to judgment as a matter of law.

## II. INTRODUCTION

This partial motion for summary judgment is on the heels of the motion for summary judgment filed by Defendants OneWest, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Northwest Trustee Services, Inc., which is currently noted for August 24, 2012. *See* Dkt. 121. Defendants' motion for summary judgment has been fully briefed. *See* Dkt. 143.

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 1 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

This partial motion for summary judgment addresses only the claim under the FCRA waged against OneWest, which the court allowed <u>after</u> Defendants had filed their motion for summary judgment. *See* Dkt. 121, 137, and 138. On or about April 19, 2012, the court granted Plaintiff's motion for reconsideration in relation to his motion for leave to file a second amended complaint thereby allowing Plaintiff to amend his complaint to add the FCRA claim. *See* Dkt. 137. The SAC added the claim under the FCRA, yet left all the other allegations and claims, as addressed by Defendants motion for summary judgment, undisturbed. *See* Dkt. 138.

Thus, this motion will only address Plaintiff's claim under the FCRA. To the extent necessary, Defendant OneWest incorporates by reference Defendants' motion for summary judgment and supporting documents as if fully set forth herein. *See* Dkt. $121^1$, $122^2$, $123^3$, and $133^4$.

## III. STATEMENT OF FACTS

### A. PLAINTIFF'S LOAN.

On or about January 8, 2007, Plaintiff James B. McDonald received a loan in the amount of $389,481.60. *See* Dkt. 123, Exhibit 1, Note; *see also* SAC, ¶¶ 2.1-2.2 and Ex. 2 to SAC. The loan was evidenced by a promissory note ("Note"), which was signed by Plaintiff. *Id.*

To secure repayment of the Note, Plaintiff granted to Mortgage Electronic Registration Systems as nominee for the original lender, Indymac Bank, F.S.B. and its successors and assigns, a deed of trust (the "Deed of Trust"). *See* Dkt. 123, Exhibit 2, Deed of Trust.

The Deed of Trust encumbers the real property commonly known as 14840 119th PL NE, Kirkland, Washington 98034 (the "Property"). The Deed of Trust was recorded on January 10, 2007, under King County Auditor's File No. 20070110002077. *See* Dkt. 123, Exhibit 2, Deed of Trust.

As detailed in Defendants' motion for summary judgment, OneWest has been in possession

---

[1] Defendants' Motion for Summary Judgment.
[2] Declaration of Vonnie McElligott in support of Defendants' Motion for Summary Judgment.
[3] Declaration of Charles Boyle in support of Defendants' Motion for Summary Judgment.
[4] Defendants' Reply to Motion for Summary Judgment.

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 2 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

of the Note and therefore the holder entitled to enforce both the Note and Deed of Trust since on or about March 19, 2009, and the Note has been held by the Custodian since on or about May 12, 2009. *See* Dkt. 123 at ¶ 11. *See also See* Dkt. 123, Exhibit 8.

**B. PLAINTIFF'S DEFAULT.**

On or about October 1, 2009, Plaintiff defaulted by failing to make the payment due for October 1, 2009, and every payment thereafter due. *See* Dkt. 123 at ¶ 12.

**C. THE NONJUDICIAL FORECLOSURE.**

On or about January 12, 2010, as an agent of OneWest Bank, FSB, NWTS mailed and posted a notice of default (the "Notice of Default") in response to Plaintiff's default. *See* Dkt. 122 at ¶ 4 and Exhibit 10, Notice of Default.

**D. PLAINTIFF'S BANKRUPTCY.**

On or about July 22, 2010, Plaintiff filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Western District of Washington under Case No. 10-18496-SJS.[5]

On or about August 4, 2010, Plaintiff filed his bankruptcy schedules. *See* Case No. 10-18496-SJS, Dkt. 15.[6]

Under Schedule F, Plaintiff listed his account, identified as account **6681**009111244 (emphasis added) with OneWest Bank (Indymac) as an "unsecured nonpriority claim."

Schedule F identifies OneWest Bank as Plaintiff's creditor. *Id.*

Plaintiff's bankruptcy was ultimately dismissed and Plaintiff did not receive a discharge. *See* Dkt. for Case No. 10-18496-SJS.

To the extent Plaintiff alleges OneWest has reported a bankruptcy since September 2009, OneWest has been unable to locate any information to verify that it reported the account as being included in or discharged by bankruptcy at any time prior to when Plaintiff actually filed

---

[5] Pursuant to FRE 201, the court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Thus, the court may take judicial notice of the fact of Plaintiff's bankruptcy filing and the information Plaintiff provided in his petition and schedules.

[6] A true and correct copy of Plaintiff's schedules are attached to the declaration of Heidi Buck as Exhibit #.

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 3 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

bankruptcy in June 2010. *See* Declaration of Charles Boyle ("Boyle Decl."), ¶ 2, Exhibit A. This is supported by the July 2012 credit report. *See* Boyle Decl., Ex. A.

E. **PLAINTIFF'S DISPUTE TO THE CREDIT REPORTING AGENCIES, ONEWEST'S INVESTIGATION, AND REPORT.**

Plaintiff provided notice to OneWest that he disputed the debt on or about April 27, 2010. SAC, ¶ 3.5.2. Plaintiff provided notice to the CRAs that he disputed the debt on or about June 29, 2010. *Id.*

1. **The TransUnion Dispute.**

On or about July 16, 2010, OneWest was notified by TransUnion that information reported to TransUnion by OneWest had been disputed (the "TransUnion Dispute").[7] *See* Boyle Decl., ¶ 4. The TransUnion Dispute indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not his/hers." *Id.* at ¶ 5. The dispute instructed OneWest to "provide or confirm complete ID." *Id.* at ¶ 6.

Following receipt of the TransUnion Dispute, OneWest performed an investigation to verify that OneWest's records matched the following information provided by TransUnion: (1) debtor's name, (2) current address, (3) previous address, (4) social security number, (5) date of birth, (6) telephone number, (7) second previous address, (8) the account status, (9) date account opened, (10) account balance, (11) amount past due, (12) origination amount, (13) amount of scheduled payment, (14) term duration, (15) the account type, (16) foreclosure had been initiated, and (17) the date upon which the account was last reported. *Id.* at ¶ 7.

OneWest's investigation found that the foregoing information as previously reported to TransUnion was accurate and required no modification. *Id.* at ¶ 8.

---

[7] Disputes received from the Credit Reporting Agencies ("CRAs") are received in electronic form through a reporting system portal. The dispute information is provided to OneWest with the white data entry fields labeled "Request Data" completed. OneWest verifies the information provided, and updates the information, if needed, by completing the corresponding gray data fields labeled "Response Data." Upon completion of the report, OneWest submits the report electronically through the reporting system portal. In order to keep a copy of the report for OneWest's records, OneWest prints a copy of the completed form before submitting the finalized report, which causes a "DRAFT" watermark as shown in Exhibits A and B. *See* Boyle Decl., ¶ 3.

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 4 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

After the completion of the investigation, OneWest submitted its report. *Id.* at ¶ 9. OneWest submitted its report to TransUnion, on or about July 30, 2010, providing that "account information was accurate as of the date reported." *See* Boyle Decl., ¶¶ 10-11, Ex. A.

### 2. The Equifax Dispute.

On or about July 13, 2010, OneWest was notified by Equifax that information reported to Equifax by OneWest had been disputed (the "Equifax Dispute"). *Id.* at ¶ 12. The Equifax Dispute indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not his/hers." *Id.* at ¶ 13. The dispute instructed OneWest to "provide or confirm complete ID." *Id.* at ¶ 14.

Following receipt of the Equifax Dispute, OneWest performed an investigation to verify that OneWest's records matched the following information provided by Equifax: (1) debtor's name, (2) current address, (3) previous address, (4) social security number, (5) date of birth, (6) telephone number, (7) second previous address, (8) the account status, (9) date account opened, (10) account balance, (11) amount past due, (12) origination amount, (13) date of account information, (14) date of last payment, (15) amount of scheduled payment, (16) term duration, and (17) the account type. *See* Boyle Decl., ¶ 15.

OneWest's investigation found that it was necessary to modify the report in regard to the "past due amount" and the "date of account information." *Id.* at ¶ 16.

After the completion of the investigation, OneWest submitted its report. *See* Boyle Decl., ¶ 17. To that effect, on or about August 6, 2010, OneWest submitted its report to Equifax. The report provided "modify account information as indicated." *Id.* at ¶ 18. The report modified the "past due amount" from $23,892.00 to $26,240, and updated the "date of account information" from 07-01-2010 to 08-01-2010. *Id.* at ¶¶ 19-20, Ex. B.

### 3. Experian Dispute.

To date, OneWest has not received dispute information relating to Plaintiff's loan from Experian. *See* Boyle Decl., ¶ 21.

### F. INFORMATION REPORTED IN CURRENT CREDIT REPORT.

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 5 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

On or about July 20, 2012, OneWest obtained a credit report for James McDonald from Equifax (the "Equifax Report"). *Id.* at ¶ 22, Ex. C. Based on the Equifax Report, Plaintiff's account with OneWest is reported as: "debt included in **or** discharged through bankruptcy 7, 11, or 12." (emphasis added). *See* Boyle Decl., ¶ 23.

## IV. ISSUES PRESENTED

Whether Defendant OneWest is entitled to judgment, as a matter of law, as to Plaintiff's claim under the FCRA.

## V. EVIDENCE RELIED UPON

This Motion for Summary Judgment is supported by the pleadings, exhibits thereto, records, and docket on file in this case, this Motion and Memorandum of law and exhibits attached hereto, the Declaration of Heidi E. Buck and exhibits attached thereto, and the Declaration of Charles Boyle and exhibits attached thereto.

## VI. AUTHORITY AND ARGUMENT

### A. INTRODUCTION.

Summary judgment is appropriate because Plaintiff's claim under the FCRA fails. First, McDonald lacks standing to pursue claims based upon any allegedly incomplete or inaccurate information reported by OneWest concerning his account, including the alleged failure to report his account as disputed. In addition, his claim fails because the record shows that OneWest conducted a reasonable investigation into each of the disputes it received from the credit reporting agencies concerning Plaintiff's account, reported its findings, and modified the account as necessary. Finally, the claim fails because Plaintiff has no competent, admissible evidence that OneWest's alleged conduct caused any harm to him, or that he suffered any compensable damages.

### B. SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 6 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

of law." *See* Fed. R. Civ. Proc. 56(c). To survive a motion for summary judgment, Plaintiff "must present competent evidence that creates a genuine issue of material fact." *See Federal Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780-81 (9th Cir. 1998). The materiality of a fact is determined by the underlying substantive law. *See id.* at 782. A dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (affirming summary judgment on FDCPA claims).

The Court is not required to search the record for evidence on which to deny summary judgment. *See Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988). To the contrary, Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## C. STATUTORY BACKGROUND AND OBLIGATIONS IMPOSED UNDER THE FCRA.

"Congress enacted the [FCRA] in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir.2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)); *see also Rogers v. JPMorgan Chase Bank, N.A.*, C11-1689JLR, 2012 WL 2190900 (W.D. Wash. June 13, 2012).

Section 1681s–2 of the FCRA imposes two responsibilities on sources that provide credit information to Credit Reporting Agencies ("CRAs"). These sources are called "furnishers" under the statute. *Gorman*, 584 F.3d at 1153. First, a furnisher must provide accurate information. 15

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 7 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

U.S.C. § 1681s–2(a). Second, a furnisher must investigate and/or correct inaccurate information. 15 U.S.C. § 1681s–2(b). The duties to investigate and correct inaccurate information are triggered only " 'upon notice of dispute'—that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." *Gorman*, 584 F.3d at 1154. "[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Id.*

Section 1681s—2(b) provides that, after receiving a notice of dispute, the furnisher shall:

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) ...;
(C) report the results of the investigation to the [CRA];
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information ...; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) ... (i) modify ... (ii) delete ... [or] (iii) permanently block the reporting of that item of information [to the CRAs].

15 U.S.C. § 1681s–2(b).

"The FCRA expressly creates a private right of action for willful...noncompliance with its requirements." *Gorman*, 584 F.3d at 1154. This right of action, however, is limited to claims arising under § 1681s–2(b). *Id.* "A private litigant can bring a lawsuit to enforce § 1681s–2(b), but only after reporting the dispute to a CRA, which in turn reports it to the furnisher." *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir.2002). Duties imposed under § 1681s–2(a), by contrast, are enforceable only by federal or state agencies. 15 U.S.C. § 1681s–2(d). Furthermore, the FCRA provides that a party may recover actual and punitive damages for willful violations of the statute, 15 U.S.C. § 1681n(a).

A furnisher's investigation of a dispute pursuant to § 1681s–2(b) (1)(A) must be reasonable. *Gorman*, 584 F.3d at 1157. The burden of showing that the investigation was unreasonable is on the plaintiff. *See id.* The furnisher's duty to conduct a reasonable investigation arises when it receives a notice of dispute from a CRA. *Id.* "Such notice must include 'all relevant information regarding the dispute that the [CRA] has received from the consumer.' " *Id.*

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 8 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

(quoting 15 U.S.C. § 1681 i(a)(2)(A)). Thus, "the pertinent question is ... whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir.2005) (holding that the furnisher's investigation in that case was reasonable given the "scant information" it received from the CRA regarding the nature of the consumer's dispute)). Although reasonableness is normally a question for the finder of fact, summary judgment is appropriate "when only one conclusion about the conduct's reasonableness is possible." *Id.*

### D. ONEWEST IS ENTITLED TO SUMMARY JUDGMENT TO THE EXTENT PLAINTIFF'S CLAIM FALLS UNDER 15 USC § 1681S–2(a), BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER § 1681S–2(a).

Plaintiff claims that OneWest has violated the FCRA by failing to mark the account in dispute and/or correct the disputed issues since Plaintiff lodged his dispute. SAC, ¶ 3.5.2. Such a claim falls under Section 1681s–2(a) (providing "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer"). However, as discussed *supra*, no private right of action exits for claims falling under Section 1681s–2(a). In other words, Plaintiff's claim under Section 1681s–2(a) is not actionable against OneWest. Accordingly, it fails as a matter of law.

### E. ONEWEST IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT DEMONSTRATE THAT ONEWEST FAILED TO MEET ITS OBLIGATIONS UNDER § 1681S-2(B)(1).

While Plaintiff does have a private right of action to challenge OneWest's alleged failure to meet its obligations under § 1681s–2(b), such a claim fails here. Section 1681s–2(b) requires a furnisher, upon receiving notice of such dispute, to investigate and both report the results of the investigation *and*, "if the investigation finds that the information is incomplete or inaccurate,

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 9 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

report those results" to the CRAs. *See* Section 1681s–2(b)(1)(C), (D); *See also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162, 09 Cal. Daily Op. Serv. 12858, 2009 Daily Journal D.A.R. 15027, 2009 WL 3365928 (9th Cir. 2009).

The Ninth Circuit has described "furnishers" as the "sources that provide credit information to the CRAs." *Gorman*, 584 F.3d at 1153. Thus, for purposes of Plaintiff's FCRA claim, OneWest is a furnisher.

### 1. **OneWest conducted a reasonable investigation of each dispute and reported its findings in accordance with the FCRA.**

FCRA states that the creditor shall conduct "an investigation with respect to the disputed information." § 1681s–2(b)(1)(A); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155, 09 Cal. Daily Op. Serv. 12858, 2009 Daily Journal D.A.R. 15027, 2009 WL 3365928 (9th Cir. 2009). Courts have determined that the level of inquiry is dependent upon what it learned about the nature of the dispute from the description in the CRA's notice of dispute. *See Gorman, at* 1157 *(citing Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir.2005) ("[The furnisher's] investigation in this case was reasonable given the scant information it received regarding the nature of [the consumer's] dispute.")).

Here, OneWest received dispute information as to Plaintiff's account from two of the three credit reporting agencies, Equifax and TransUnion. OneWest did not receive dispute information from Experian.[8]

Plaintiff alleges his dispute was based on the following information being reported by OneWest: (1) OneWest was Plaintiff's creditor, (2) that the loan has been discharged in a bankruptcy, and (3) that a foreclosure process had been started.

\\

\\\

---

[8] Because OneWest received no notice of dispute from Experian, it had no duty to investigate or report finding to Experian. Thus, to the extent Plaintiff's claims are based on a dispute with Experian, such a claim fails as a matter of law. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155, 09 Cal. Daily Op. Serv. 12858, 2009 Daily Journal D.A.R. 15027, 2009 WL 3365928 (9th Cir. 2009).

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 10 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### a. The TransUnion Dispute.

On or about July 16, 2010, OneWest was notified by TransUnion that information reported to TransUnion by OneWest had been disputed. The TransUnion Dispute indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not his/hers." The dispute instructed OneWest to "provide or confirm complete ID."

OneWest performed an investigation, in accordance with the information provided by TransUnion, to verify that OneWest's records matched the following information provided by TransUnion: (1) debtor's name, (2) current address, (3) previous address, (4) social security number, (5) date of birth, (6) telephone number, (7) second previous address, (8) the account status, (9) date account opened, (10) account balance, (11) amount past due, (12) origination amount, (13) amount of scheduled payment, (14) term duration, (15) the account type, (16) foreclosure had been initiated, and (17) the date upon which the account was last reported.

OneWest's investigation found that the foregoing information as previously reported to TransUnion was accurate and required no modification.

After the completion of the investigation, OneWest submitted its report. The report, submitted on or about July 30, 2010, provided that the "account information was accurate as of the date reported."

### b. The Equifax Dispute.

On or about July 13, 2010, OneWest was notified by Equifax that information reported to Equifax by OneWest had been disputed. The Equifax Dispute indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not his/hers." The dispute instructed OneWest to "provide or confirm complete ID."

OneWest performed an investigation, in accordance with the information provided by Equifax, to verify that OneWest's records matched the following information provided by Equifax: (1) debtor's name, (2) current address, (3) previous address, (4) social security number, (5) date of birth, (6) telephone number, (7) second previous address, (8) the account status, (9) date account opened, (10) account balance, (11) amount past due, (12) origination amount, (13)

ONEWEST'S PARTIAL MOTION FOR SUMMARY
JUDGMENT AS TO FCRA CLAIM – PAGE 11 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

date of account information, (14) date of last payment, (15) amount of scheduled payment, (16) term duration, and (17) the account type.

After the completion of the investigation, OneWest submitted its report. The report, submitted on or about August 6, 2010, provided "modify account information as indicated." The report modified the "past due amount" from $23,892.00 to $26,240, and updated the "date of account information" from 07-01-2010 to 08-01-2010.

Plaintiff's SAC alleges he provided notice to OneWest of the dispute on or about April 27, 2010, and notice to the CRAs on or about Jun 29, 2010. SAC, ¶ 3.5.2. Given that OneWest received notice of the disputes on July 13, 2010 and July 16, 2010, it is reasonable to assume that such disputes correlate to the dispute as alleged in Plaintiff's SAC. In other words, the evidence demonstrates Plaintiff lodged his dispute, and upon notification from the CRAs, OneWest conducted a reasonable investigation and properly reported the results in accordance with the FCRA. Plaintiff does not allege any facts that would suggest an ongoing duty or additional duty was triggered on the part of OneWest to either report the account as disputed or conduct further investigation after it submitted the responses on July 30, 2010 and August 6, 2010.

While Plaintiff alleges his dispute was based on a three-part dispute: (1) OneWest was not Plaintiff's creditor, (2) that the loan had improperly been reported as being discharged in bankruptcy, and (3) that the loan had improperly been reported as having the foreclosure process started, the evidence demonstrates that the information provided to OneWest from Equifax and TransUnion did not advise OneWest as to the specifics of Plaintiff's dispute. Accordingly, in light of the scant information provided to OneWest, its investigation was reasonable.

### 2. Even if OneWest had a duty to investigate Plaintiff's specific disputes, the evidence demonstrates Plaintiff's specific disputes are meritless.

*First*, Plaintiff claims OneWest erroneously reported Plaintiff's account was discharged in bankruptcy in September 2009. SAC, ¶ 3.5.4. Yet, Plaintiff goes on to allege that OneWest has erroneously reported that information for the last five hundred seventy-three days (573).

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 12 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Plaintiff's SAC was filed on or about April 26, 2012, thus 573 days prior to that date is October 1, 2010.

Based on Plaintiff's credit report dated July 20, 2012, Plaintiff's account with OneWest is reported as: "**debt included in or** discharged through bankruptcy 7, 11, or 12." (emphasis added). This information is accurate.

Plaintiff filed a Chapter 7 bankruptcy on or about July 22, 2010[9] with the United States Bankruptcy Court for the Western District of Washington under Case No. 10-18496-SJS. Schedule F, filed by Plaintiff on or about August 4, 2010, lists Plaintiff's account[10] with OneWest Bank (Indymac) as an "unsecured nonpriority claim." While Plaintiff's classification of the account as unsecured nonpriority is incorrect, the schedules clearly indicate that Plaintiff's account with OneWest was "included in" a Ch. 7, 11, or 12 bankruptcy such that OneWest's reporting of such facts was accurate.

***Second,*** Plaintiff claims OneWest erroneously reported that OneWest is Plaintiff's creditor. SAC, ¶ 3.5.3.

Plaintiff asserts that OneWest is neither the original creditor nor a subsequent creditor of Plaintiff's. SAC, ¶ 3.5.3. However, Plaintiff's allegation is seriously undercut by the fact that Plaintiff identified OneWest Bank as a creditor in Schedule F of his bankruptcy schedules.

Moreover, the evidence,[11] which demonstrates that OneWest is the Note holder and the beneficiary under Plaintiff's Deed of Trust demonstrates that information reporting OneWest as Plaintiff's creditor is accurate.

***Third,*** Plaintiff claims OneWest erroneously reported for the last 835 days to Equifax and TransUnion that the account has a "foreclosure process started." SAC, ¶ 3.5.5. Plaintiff's SAC

---

[9] To the extent Plaintiff alleges OneWest has reported a bankruptcy since September 2009, OneWest has been unable to locate any information to verify that it reported the account as being included in or discharged by bankruptcy in September 2009. Neither the credit report nor Plaintiff's SAC provides any evidence that a bankruptcy was reported in September 2009. Plaintiff's SAC, current credit reports, and OneWest's records do indicate that Plaintiff's account was reported as "included in or discharged in bankruptcy" after Plaintiff filed his Ch. 7 petition in July 2010.
[10] Account Number 6681009111244. *See* Schedule F.
[11] *See* Dkt. 121, 122, 123, and 133.

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 13 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

was filed on or about April 26, 2012. Eight hundred thirty-five (835) days prior to April 26, 2012 is approximately January 12, 2010. Thus, Plaintiff alleges that no foreclosure process had been initiated as of January 12, 2010.

However, January 12, 2010, is precisely the date foreclosure was initiated. On or about January 12, 2010, OneWest Bank, FSB, through its duly authorized agent NWTS transmitted the Notice of Default.[12] Despite Plaintiff's legal conclusion[13] that the foreclosure is not legal, the evidence demonstrates that information reported by OneWest as of January 12, 2010, that the foreclosure process has been started is entirely accurate.

***Finally***, to the extent Plaintiff alleges OneWest erroneously reported Plaintiff's account number ("the account listed of Plaintiff's credit beginning with 6681 [a number Plaintiff is unfamiliar with as it is not the loan number of any loan Plaintiff has transacted])", such an allegation is disingenuous. *See* SAC, ¶ 3.5.4. On or about August 4, 2010, Plaintiff filed his bankruptcy schedules, which identified his account with OneWest as Account number **6681**009111244. (emphasis added). Thus, Plaintiff's allegation as of April 26, 2012 that "6681" is a number he is unfamiliar with" is not credible as nearly two years prior Plaintiff had listed his account number using those same four digits in his bankruptcy schedules.

### F. ONEWEST IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT SUFFERED ANY ACTUAL DAMAGES.

Plaintiff alleges OneWest has been in daily willful noncompliance in violation of 15 U.S.C. § 1681(b) & (n) and claims damages. SAC, ¶ 3.5.6.

---

[12] Under RCW 61.24. *et seq.*, the Notice of Default initiates the nonjudicial foreclosure process. *See* RCW 61.24.031; *see also Vawter v. Quality Loan Serv. Corp. of Washington*, 707 F. Supp. 2d 1115, 1121, 2010 WL 1629355 (W.D. Wash. 2010).

[13] The court is not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955, 2011 WL 1108226 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 456, 2011 WL 3584723 (U.S. 2011).

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 14 OF 16
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Even if Plaintiff could establish that OneWest failed to comply with 15 U.S.C. § 1681s-2(b), Plaintiff has failed to provide sufficient evidence to support an award of actual, consequential or punitive damages.

Section 1681n provides for damages arising from willful noncompliance, including actual damages sustained by the consumer, or damages in the amount of $100-$1,000, as well as punitive damages such as the Court may allow. To show "willful" noncompliance with the FCRA, as required for an award of punitive damages, Plaintiff must first show that OneWest acted in conscious disregard of his rights or that OneWest's noncompliance was deliberate and purposeful. *See Spector v. Trans Union LLC*, 301 F. Supp. 2d 231 (D. Conn. 2004); *see also Safeco Ins. Co. of Am. v. Burr* 551 U.S. 47, 69, 127 S. Ct. 2201 (2007) (liability for willful noncompliance under § 1681n extends to a furnisher's reckless disregard of statutory duty). However, pursuant to *Burr*, "a company subject to the FCRA does not act in reckless disregard ... unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 551 U.S. at 69.

Plaintiff does not have sufficient evidence to establish that OneWest willfully failed to comply with the FCRA in this case. Each time OneWest received notice of a dispute from CRAs, OneWest promptly investigated the dispute and responded within the statutorily prescribed time limit under §§ 1681i(a) and 1681s-2. *See* discussion *supra*. Moreover, aside from the bare legal conclusion that Plaintiff has been damaged, Plaintiff has set forth no facts to support that Plaintiff has suffered any injury in relation to the FCRA claim.

\\
\\
\\
\\
\\\

ONEWEST'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FCRA CLAIM – PAGE 15 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## VII. CONCLUSION

Based on the foregoing, Defendant OneWest respectfully requests that this court enter an order on summary judgment in favor of Defendant as to Plaintiff's claim under the FCRA.

DATED this 27th day of July, 2012.

                          **ROUTH CRABTREE OLSEN, P.S.**

                          /s/ Heidi E. Buck
                          Heidi E. Buck, WSBA No. 41769
                          Of Attorneys for Defendants OneWest Bank,
                          Mortgage Electronic Registration Systems, Inc.,
                          and Northwest Trustee Services, Inc.

ONEWEST'S PARTIAL MOTION FOR SUMMARY
JUDGMENT AS TO FCRA CLAIM – PAGE 16 OF 16
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131