James McDonald
14840 119th PL NE
Kirkland, WA 98034

The Honorable Robert S Lasnik

# UNITED STATES DISTRICT COURT,
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| James McDonald<br>                                    Plaintiff<br>v.<br>**OneWest Bank, FSB,**<br>**Northwest Trustee Services,**<br>**Mortgage Electronic Registration Systems,**<br>                                    Defendants. | No. **C10-1952-RSL**<br><br>Plaintiff's Opposition and Response to Defendants' Motion for Partial Summary Judgment on Plaintiff's FCRA Claims<br><br>Noting Date: August 24, 2012 |
|---|---|

## **I.**  **Introduction**

COMES NOW, Plaintiff James McDonald, *pro se* and respectfully submits this opposition to Defendant OneWest Bank, FSB's (hereafter "OneWest") Motion for Partial Summary Judgment in reference to Plaintiff's Fair Credit Reporting Act (FCRA) claims included in his Second Amended Complaint. Plaintiff respectfully requests the Court to deny OneWest's motion or to rule in favor of the Plaintiff as allowed by FRCP 56(f)(1).

## **II.**  **Facts**

**OneWest's false claim of ownership of the promissory note and actions taken based on the same false claim violated Plaintiff's rights and interests under the FCRA**

1. **Note and Deed of Trust**

On January 8, 2007 Plaintiff signed a Note and Deed of Trust as described fully in the Second Amended Complaint Sections 2.1 and 2.2. The original lender named in the Note and Deed of Trust is Indymac Bank, FSB ("Indymac").

2. **<u>Indymac Sold the Note</u>**

In discovery, Plaintiff learned that on or about February 27, 2007 Indymac sold the Note into a securitized pool of mortgage loans identified as Pool 1J1527 with a CUSIP (Committee on Uniform Securities Identification) Number of 3128NHVU4. This information was obtained via subpoenaed upon third party Freddie Mac, the government sponsored entity.  Michael Henderson, Esq., in house counsel for Freddie Mac, confirmed via telephone conversations and email exchanges that this information is accurate (<u>Declaration of James McDonald, Exhibits 14 & 15</u>). Plaintiff then located the Pool using the CUSIP Number on Freddie Mac's website[1] . Further, production by Freddie Mac on the identified Pool included a document entitled "Additional Supplement for Mortgage Participation Certificates" (<u>Exhibit 16, Additional Supplement for Mortgage Participation Certificates</u>).

The document reads, *inter alia*, "*Information and representations in this Additional Supplement about the seller and the Mortgages are the information and representations only of the seller of the Mortgage*; we make no representations or warranties concerning the accuracy or completeness of the information contained herein."  (<u>Emphasis added</u>). The Seller identified in the Pool and this document is Indymac Bank, FSB and not OneWest. According to the production made by Freddie Mac, Freddie acted as a broker for the securitized transaction and not the purchaser of the Note.

Prior to, and during this litigation, for the past two years, OneWest has continued to deny that the subject loan is part of a mortgage-backed securities product. OneWest in fact has repeatedly claimed that it owns and holds the promissory note and has right to foreclose upon Plaintiff's homestead under the terms of the deed of trust. Once the litigation commenced,

---

[1] http://www.freddiemac.com/mbs/index.html?intcmp=MSMAIN-T

1  OneWest altered its claims to state that Freddie Mac was and had been upon sale of the Note

2  by Indymac the owner of the Note. Sworn declarations, affidavits and representations have

3  been submitted by OneWest's into this Court and are now proven to be completely untruthful

4  given Freddie Mac's disclosure and Plaintiff's independent research  (Is there a composite of

5  affidavits or declarations you can attach here?).

6        3. **Unlawful Non-Judicial Foreclosure**

7  Based on the foregoing misrepresentations and cover up, OneWest and the other named

8  defendants commenced non-judicial foreclosure against Plaintiff's homestead. In the Notice of

9  Default, the defendants stated that OneWest *is* the owner, beneficiary and creditor of

10  Plaintiff's Note.  OneWest conduct of sending out Notice of Default and commencing

11  foreclosure under the Washington Deed of Trust Act without actually being the owner and

12  beneficiary is patently illegal. OneWest further made false claims of ownership and beneficial

13  status in the Appointment of Successor Trustee. Defendant MERS unlawfully transferred

14  beneficial rights to the Note and Deed of Trust to OneWest in the Assignment of Deed of

15  Trust.

16  **OneWest's Claim of Ownership has been challenged by Plaintiff repeatedly and consistently**

17

18        4. **Qualified Written Request, Dispute and Debt Validation Demand**

19  On April 27, 2010, Plaintiff sent to Defendant OneWest a Qualified Written Request,

20  Dispute and Debt Validation Demand (Exhibit 3, QWR). This document demanded strict proof

21  and advised OneWest of the nature of Plaintiff's dispute thoroughly.

22        5. **Dispute Letter and Responses**

23  On June 29, 2012, Plaintiff sent a dispute letter to OneWest (Exhibit 4, Dispute Letter),

24  TransUnion, Experian and Equifax. OneWest received this letter on July 1, 2010 (Exhibit 5,

1  Proof of Receipt). The three CRAs, including Experian, all responded that they had

2  communicated with OneWest in their responses to Plaintiff (Exhibits 6-8, Composite of

3  Responses by CRAs).

4      6. **Plaintiff's Bankruptcy Filing**

5   In the Petition for Bankruptcy Plaintiff included every item showing on his credit report

6  on his Schedule F (<u>Exhibit 9</u>). Under 11 USC, Plaintiff was required to list anyone with a

7  potential (valid or invalid) claim against Plaintiff. This is because failure to list every potential

8  claim would result in non-dischargeable debts under the Bankruptcy Code. *In Re Harris* WL

9  1732924 (1st Cir BAP 2008) (The Court denied her a discharge under Bankruptcy Code

10  727(a)(4)(A) which allows for a denial of a discharge when a debtor (i) knowingly and

11  fraudulently makes a false oath, (ii) relating to a material fact in his bankruptcy case. The BAP

12  affirmed). Plaintiff listed OneWest Bank as a disputed non-priority claim and as a result,

13  OneWest was notified by the Bankruptcy court of the nature of Plaintiff's dispute of its

14  ownership.

15  **Despite Plaintiff's dispute, OneWest continues to perpetuate its claim of ownership of the subject mortgage loan**

16

17      7. **Declarations of Charles Boyle**

18  It is not until after Plaintiff has filed suit that OneWest started to alter their story about

19  the ownership of the Note (which is still patently false). On or about March 23, 2011, Charles

20  Boyle, Vice President of OneWest, submitted a declaration in support of the Defense's first

21  Motion for Summary Judgment (Dkt. 49). Sworn under the penalty of perjury, Mr. Boyle

22  declared, "After origination, Indymac Bank, FSB sold Plaintiff's Note to Federal Home Loan

23  Mortgage Company ("Freddie Mac"). *Freddie Mac has remained the investor and owner of

24  the Note*." This Declaration cannot be true in light of the representations made by Freddie

1  Mac's counsel, Michael Henderson, Esq. As noted supra, Indymac sold the Note to a Security

2  and not to Freddie Mac.

3  On or about March 15, 2012, Charles Boyle made another declaration in support of the

4  Defense's Second Motion for Summary Judgment (Dkt. 123). Again, under the penalty of

5  penalty. He declared that he had personally reviewed the records in relation to Plaintiff's Note

6  by stating, "In connection to making this declaration, I have personally examined these

7  business records." He also declared, "After origination, Indymac Bank, FSB sold Plaintiff's

8  Note to Federal Home Loan Mortgage Company ("Freddie Mac"). Indymac Bank, FSB

9  retained the servicing rights and serviced the loan on behalf of Freddie Mac. Freddie Mac has

10  remained the investor and owner of the Note."

11  On or about July 26, 2012, Charles Boyle made a third declaration in support of

12  OneWest's Partial Motion for Summary Judgment (Dkt. 156) in which he repeated essentially

13  the same information. These declarations have become comical because while OneWest denies

14  that any responsive files and records exist in response to Plaintiff's interrogatories (<u>Declaration</u>

15  <u>of James McDonald, Exhibit 13)</u>, apparently Mr. Boyle was able to see them, read them, and

16  form concrete conclusions about them. The more serious conclusion, however, based on these

17  facts, is that Mr. Boyle's representations should not be taken at face value but must be tested.

18      8. **Declaration of JC San Pedro**

19  On or about January 12, 2011, OneWest submitted a declaration (Dkt. 16) signed by JC

20  San Pedro as Vice President of Indymac Mortgage Services, a division of OneWest in which

21  Mr./Ms. Pedro stated : "I have reviewed the records that pertain to the McDonald loan…

22  Freddie Mac is the investor on the Loan, and prior to 2009, *Indymac serviced the loan for*

23  *Freddie Mac*". In addition to the phantom files that these individuals were able to review–

24  phantom because OneWest declared it does not have any files or records responsive to

1  Plaintiff's interrogatories–the fact remains that Freddie Mac's lawyer contradicts these

2  individuals by providing proof that Freddie Mac did not purchase the Note and therefore

3  cannot be the investor.

4  **9. Plaintiff's Motion for Partial Summary Judgment contains misrepresentations**

5  <u>First</u>, OneWest has deliberately attempted to distract the Court by recasting Plaintiff's

6  original dispute as having to do with the CRAs' report that the subject account was "included

7  in or discharged in bankruptcy." Plaintiff has written to the CRAs, including Experian to alert

8  the CRAs of the facts that OneWest was not the owner or a party in interest of the subject loan

9  and must explain why it has been conveying account information to the CRAs as if it is in fact

10 the creditor and that the derogatory information reported was inaccurate and willfully unlawful

11 (Exhibit 4). Moreover, together with TransUnion and Equifax, Experian acknowledged receipt

12 of Plaintiff's dispute and responded in writing.  Therefore, it would be difficult for OneWest to

13 claim it should not have to do anything about Experian's report.

14 <u>Second</u>, defense counsel selectively couched her argument around an incomplete

15 definition of the term "furnisher" in OneWest's Motion for Partial Summary Judgment.

16 Counsel contends that the statutory definition applies only to "sources that provide credit

17 information to the CRAs", citing to *Gorman, supra* (Motion, p. 10, line 4). Yet, the *Gorman*

18 court in fact relies on H.R. Rep. No. 108-263, at 24 (2003) for the definition of furnisher: "The

19 most common… furnishers of information are credit card issuers, auto dealers, department and

20 grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." In

21 other words, furnishers are creditors or the government. A creditor is "a person to whom a debt

22 is owing by another person," (Black's Law, 6th Ed, P.409). OneWest Bank has never extended

23 credit to Plaintiff or loaned him any funds.  This particular financial institution has never

24 purchased a debt signed by Plaintiff.  Under RCW 62A.9-318, OneWest is NOT a creditor of

1  Plaintiff, nor has any legal or equitable interest in any debt of the Plaintiff. Based on clear

2  evidence that Plaintiff does not owe a debt to OneWest, because his mortgage loan was in fact

3  sold to several entities before becoming a part of a securitized chain, where none of these

4  entities was either OneWest, or Freddie Mac, OneWest violated the FCRA.

5      <u>Third</u>, based on the fact that OneWest has always known it is neither the creditor of the

6  account nor the beneficiary under the Deed of Trust, its commencement of non-judicial

7  foreclosure against Plaintiff was based on complete falsehood.  Because OneWest has actual

8  knowledge that it is not a creditor relating to an indebtedness incurred by Plaintiff, its failure to

9  explain, modify or terminate the derrogatory trade lines results in daily damages until remedial

10 actions are taken or OneWest's behavior is sanctioned by the court.

11     <u>Fourth,</u> OneWest now admits that it has pulled Plaintiff's credit through Equifax

12 Mortgage Solutions on July 20, 2012. This act is in violation of FCRA §604 defining that are

13 the permissible purposes for obtaining consumer reports. As the parties are actively engaging

14 in an adversary proceeding, OneWest must obtain a subpoena or have a court order for this

15 pulling of Plaintiff's credit report. OneWest's act of taking liberty with Plaintiff's once again

16 illustrates its arrogance and reckless disregards for the laws. Moreover, OneWest's order of

17 Plaintiff's credit report further damages Plaintiff's credit standing[2] on each of the three CRAs.

18 This credit report pull will remain and continue to affect Plaintiff's score for months to come.

19     9. **Defense Counsel might have committed fraud on the Court**

20     OneWest, as a corporate defendant, could not have made these various claims in

21 opposition of Plaintiff's efforts to get at the truth, except through its counsel, Heidi Buck, Esq.

22 Counsel has submitted various Motions, Responses, Declarations of herself and of others.

23

24     [2] http://www.bankrate.com/finance/credit-cards/how-credit-inquiries-affect-credit-score.aspx

Along with her client, Ms. Buck has boldly made representations that based on facts that can be fully verified, are simply not true. For example, in Defendant's Response to Plaintiff's Motion for Reconsideration in allowing Plaintiff's FCRA claim to move forward (Dkt. 118), Ms. Buck claimed there was no evidence that OneWest had been notified by the CRAs of the dispute. For the numerous requests that Plaintiff has made directly to OneWest, and the responses from CRAs that Plaintiff has received about his dispute of OneWest's claim, Heidi Buck's representations to the Court in this case are just untenable.

### III.   Arguments

1. **Summary Judgment is Inappropriate as a Matter of Law**

The issue of material fact rendering summary judgment inappropriate is whether the investigation claimed to have been conducted by OneWest was reasonable following notification by the CRAs and by Plaintiff himself that the reported information was being disputed. The Court cannot make a determination of reasonableness simply based on OneWest's self-serving claim. Many courts have ruled that the reasonableness of the investigation is a question of fact for the jury to decide. *Gorman v. Wolpoff & Abramson, LLP*. 584 F.3d 1147 (9th Cir. 2009); *Rambarran v. Bank of America*, 609 F.Supp.2d 1253 (S.D. Fla. 2009)("the reasonableness of an investigation is a matter to be determined at trial not summary judgment, unless the facts of the case establish the reasonableness or unreasonableness of a particular investigation beyond all doubt ... Simply stated, this is not such an open-and-shut case. A genuine issue of material fact remains as to whether [defendant's] investigation was reasonable in light of the fact that it verified the existence of Plaintiff's charged off account to the CRAs ... , even though its owner records reflected that Plaintiff's account was 'paid in full'"); *Smith v. Ohio Sav. Bank*, 2008 WL 2704719 (D.Nev. July 7, 2008)(reasonableness was a jury question that required denial of cross motion for

1  summary judgment when funisher inaccurately noted bankruptcy filing on account of non-

2  filing spouse); *Ferrarelli v. Federated Fin. Corp. of Am.* 2009 WL 116972 (S.D. Ohio Jan. 16,

3  2008)(factors for jury's consideration included prevailing industry standards, a cost-benefit

4  inquiry, the time spent by furnisher's employee performing each investigation, employee's

5  failure to refer to supporting documentation submitted by consumer, and the fact that

6  employee's only training was on the job); *Drew v. Equifax Info. Services , LLC*, 2009 WL

7  595459 (N.D. Cal. Mar. 5, 2009)(jury could find that investigation was not reasonable when

8  furnisher continued to report and make inquires about a known fraudulent account and later

9  sent correspondence to consumer at fraudster's address).

10      OneWest's miscomprehension of the law is evidenced by counsel's statement that the

11  CRA/the dispute only "instructed OneWest to 'provide or confirm complete ID.'" (Motion, p.

12  11, lines 3-5). Even if the CRA does not adequately convey the nature or details of the dispute,

13  OneWest as the Furnisher and the named defendant in the instant case, always has sufficient

14  information about the account to respond to Plaintiff's dispute and thus has a duty to so

15  respond fully to the dispute. *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142

16  (4th Cir. 2008)(furnisher incurs liability under §1681s-2(b) when it fails to report to the CRA

17  as part of its investigation results that a meritorious dispute has in fact been disputed by the

18  consumer as required by §1681s-2(a)(3); *Talley v. Dept. of Agric.*, 2009 WL 303134 (N.D. Ill.

19  Feb. 4, 2009)(findings and conclusions of bench trial holding furnisher liable for negligently

20  re-reporting on multiple occasions information previously deleted as a result of its §1681s-2

21  (b) investigation and negligently failing to investigate its internal reporting system that did not

22  block reporting of deleted information).

23      Defense Counsel's mischaracterization of the central dispute raised by the Plaintiff is

24  particularly egregious in that she and her client have known all along that Plaintiff in fact

1  claims OneWest has fraudulently passed itself off as the owner of the subject mortgage loan,

2  and affected Plaintiff's credit status with its reports on the status of the mortgage loan.

3  Regardless of the specific language or codes used by a particular CRA in its notification to

4  OneWest, OneWest cannot denounce its knowledge of Plaintiff's actual dispute. Plaintiff has

5  NEVER claimed that the debt is not his. Rather, Plaintiff has continuously and steadfastly

6  denied that OneWest has any ownership interest in the subject loan sufficiently to acquire

7  standing or status of a party in interest.

8  　　　The Defense attempts to utilize *Gorman v Wolpoff & Abramson, LLP,* 584 F.3d 1147,

9  1153 (9th Cir. 2009) as their reasoning that Summary Judgment is appropriate; the case

10 actually cuts against their argument.  In *Gorman* the Ninth Circuit states, "We have held that

11 "summary judgment is generally an inappropriate way to decide questions of reasonableness

12 because the jury's unique competence in applying the 'reasonable man' standard is thought

13 ordinarily to preclude summary judgment," citing *In re Software Toolworks Inc,* 50 F.3d, 615,

14 621 (9th Cir. 1994). Neither OneWest, as an interested party, or its counsel, as someone being

15 paid by the interested party can make the determination of whether the investigation

16 conducted, if any, was reasonable. The Defense also cited to *Rogers v. JPMorgan Chase Bank,*

17 *N.A.*, C11-1689-JLR, 2012 WL 2190900 (W.D. Wash, June 13, 2012), for support of summary

18 judgment. However, the *Rogers* court explained that, "The Ninth Circuit's decision in *Gorman*

19 is distinguishable because there, the furnisher reviewed all of the pertinent records in its

20 possession, *id*., whereas here, Chase did not review Ms. Baydid's ticket or incorporate her

21 knowledge of Mr. Rogers' dispute into its investigation. Whether Chase's investigation was

22 unreasonable because of these omissions is an issue for the finder of fact."  Again, FRCA

23 jurisprudence heavily favors the determination to be made by the fact finder and not by way of

24 summary judgment and Plaintiff's case is more akin to *Rogers* than *Gorman* as OneWest's

"investigation" appears to be more of a quick glance at a credit summary screen than a real investigation.

### 2. **Defendant's Proof in support of Summary Judgment [Declaration of Charles Boyle] is unreliable and insufficient**

Defendant relies upon a Declaration signed by Charles Boyle as support of its Motion for Partial Summary Judgment. However, Charles Boyle is an unreliable witness as has been proven in this particular case as well as in other cases. Plaintiff requests that this Court takes judicial notice of the decision issued on May 26, 2011 by Judge Fabre of the US Bankruptcy Court in the District of Southern California, *In re OneWest Bank, FSB v Arizmendi* BK Case 09-19263-PB13 (2011). *Arizmendi* involves the same entities, MERS, IndyMac and OneWest as well as Mr. Boyle as a witness on behalf of OneWest in an evidentiary proceeding.

The Opinion recounts how Mr. Boyle testified under oath that Freddie Mac was the real party of interest and current beneficiary of the mortgage loan in that particular case. Although Mr. Boyle testified that he had *reviewed the records* pertaining to Mrs. Arizmendi's case, he testified also that he was unaware of payments that had been made. Based on Mr. Boyle's testimony and the quality of proof produced by OneWest, Judge Fabre concluded, "OneWest's handling of this issue was sloppy at best and **illustrates the problem with any reliance on its witnesses.** To put it bluntly, the right hand does not know what the left hand is doing at OneWest." The Judge continued to express, "Thus, MERS' purported assignment of the Trust Deed **and the related note** as nominee for the Original Lender and without a reference to Indymac Bank, FSB or Freddie Mac appears **designed to disguise rather than to illuminate the facts**…**OneWest failed to tell the true and complete story** in the OneWest Declaration and the Claim." Judge Fabre denied OneWest's motion for relief from stay stating that, "The

Court will not participate in a process where OneWest increases its profits by disobeying the rules of this Court and by providing the Court with erroneous information."

In the matter of *In re Doble*; BK Case No 10-11296-MM13 (2010), OneWest and its professional witness, Charles Boyle, were held to have made representations and given testimony that were "neither candid nor credible".  In the matter of *In re Carter;* BK Case No 10-10257-MM13, witness Charles Boyle and Brian Burnett were submitting declarations in support of OneWest's position. In the matter of *In Re Telebrico* Bk. No. 10-07643-LA13, OneWest used a declaration by Suchan Murray (who signed under oath the Appointment of Successor Trustee in Plaintiff's case) which resulted in the court's finding that, "OneWest provided evidence that was either intentionally or recklessly false."

The systematic fraud perpetrated in these court cases is evident in this case. As demonstrated herein, Counsel for the Plaintiff has knowingly submitted Charles Boyle's sworn declarations where he claimed that Indymac sold the Note to Freddie Mac and that Freddie Mac had remained the owner of the Note ever since which is directly contradicted by Counsel for Freddie Mac. Counsel has an affirmative duty not to present false or perjured testimony under the Ethics Code and she cannot claim ignorance because Charles Boyle's testimony has been sanctioned by other court. The contradiction between what Freddie Mac claims to have happen and what OneWest asserts to be the truth, couple with the quality of Mr. Boyle's testimony creates a genuine issue of material fact and renders Mr. Boyle's sworn statements unreliable for purpose of summary judgment.

3. **Plaintiff is entitled to damages**

Damages to the consumers are authorized by §1681n: "Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of: 1(A) any actual damages sustained by the

1 consumer as a result of the failure or damages of not less than $100 and not more than $1000;

2 or 1(B) in the case of liability of a natural person for obtaining a consumer report under false

3 pretenses or knowingly without a permissible purpose, actual damages sustained by the

4 consumer as a result of the failure or $1,000, whichever is greater."

5     Plaintiff has shown throughout this Response that OneWest has committed and continues

6 to commit violations under FCRA on a daily basis. It is undisputed that the bank knowingly

7 failed to mark the account as being disputed, knowingly listed the account as being in

8 foreclosure or as part of a bankruptcy when neither of these status applied during the period in

9 question, knowingly misrepresented to the CRAs that it is a creditor relating to the mortgage

10 loan account, and knowingly exacerbated the damages suffered by the Plaintiff are all

11 actionable conduct under the FCRA, under 1681s-2(b) and result in damages under 1681n.

12     In addition to the actual damages which will be proven at trial, the FCRA allows for

13 statutory damages, which the Defense acknowledged in their Motion. Each day that OneWest

14 falsely claims to be Plaintiff's creditor to each CRA is three separate violations of willful

15 noncompliance. Each day OneWest refuses to mark the account in dispute with each of the

16 CRAs is three separate violations of willful noncompliance. Each day OneWest fails to

17 remove that a debt owed to OneWest, which there is none, was included or discharged in a

18 bankruptcy to Equifax is a violation of willfully providing inaccurate information. Each day

19 that OneWest fails to remove that a foreclosure process has been started, when there is no legal

20 foreclosure process started, to TransUnion and Experian are two separate violations of willful

21 noncompliance.

22                                **IV.**   **Conclusion**

23     **WHEREFORE**, Plaintiff humbly moves this honorable Court to deny the Defense's

24 Motion for Partial Summary Judgment and/or find in favor of the Plaintiff as allowed by FRCP

1  56(f)(1). Further, Plaintiff moves the Court to require OneWest and its witnesses, Charles

2  Boyle and JC San Pedro and their counsel, Heidi Buck, Esq., to appear and explain to the

3  Court as to the inconsistencies described herein.

**/s/ James McDonald -**
**James McDonald**
**Pro Se**

**Certificate of Service**

I hereby certify that on the 21st day of August, 2012 the foregoing was electronically filed with the Clerk of the Court using the ECF system, which sent notification and therefore served the following:
Heidi Buck
Routh Crabtree Olsen
13555 SE 36th ST Suite 300
Bellevue, WA 98006

**/s/ James McDonald -**
**James McDonald**
**Pro Se**

Plaintiff's Opposition to Partial MSJ

14

James McDonald
14840 119th PL NE
Kirkland, WA 98034
(425) 210-0614