1

The Honorable Judge Robert S. Lasnik

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

8

9

JAMES MCDONALD,

10

              Plaintiff,

11

    v.

12

ONEWEST BANK, FSB, NORTHWEST
TRUSTEE SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., INDYMAC BANK FSB, DOES 1-50,

13

14

              Defendants.

15

No.  C10-1952 RSL

**DEFENDANTS ONEWEST, MERS,
AND NORTHWEST TRUSTEE
SERVICES, INC.'S MOTION FOR
SUMMARY JUDGMENT AND TO
DISSOLVE INJUNCTION**

**[NOTE ON MOTION CALENDAR:
October 19, 2012]**

**ORAL ARGUMENT REQUESTED**

16

17

### I.   INTRODUCTION AND RELIEF REQUESTED

18

      COME NOW, Defendants OneWest Bank, FSB ("OneWest"), Mortgage Electronic

19

Registration Systems Inc. ("MERS"), and Northwest Trustee Services, Inc. ("NWTS")

20

(collectively "Defendants") and move the Court for an order granting summary judgment in

21

favor of Defendants and dissolving the injunction entered on January 25, 2011. This motion is

22

made pursuant to Fed. R. Civ. P. 56 on the grounds that no genuine issue of material fact exists

23

as to James McDonald's ("Plaintiff") causes of action against Defendants as stated in Plaintiff's

24

Second Amended Complaint ("SAC"), and Defendants are entitled to judgment as a matter of

law and dissolution of the injunction restraining the trustee's sale.

25

26

//

//

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 1 OF 48
CASE NO. C10-1952 RSL

Routh
Crabtree
Olsen, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## II.     STATEMENT OF FACTS

On or about January 8, 2007, Plaintiff James B. McDonald received a loan in the amount of $389,481.60. The loan was evidenced by a promissory note ("Note"), which was signed by Plaintiff. Declaration of Charles Boyle ("Boyle Decl."), Exhibit 1, Note.

To secure repayment of the Note, Plaintiff granted to MERS as nominee for the original lender, Indymac Bank, FSB and its successors and assigns, a deed of trust (the "Deed of Trust"). The Deed of Trust encumbers the real property commonly known as 14840 119th PL NE, Kirkland, Washington 98034 (the "Property"). The Deed of Trust was recorded on January 10, 2007, under King County Auditor's File No. 20070110002077.  Boyle Decl., ¶ 3, Exhibit 2, Deed of Trust.

Thereafter, Indymac Bank, FSB sold Plaintiff's Note to Federal Home Loan Mortgage Company ("Freddie Mac"). Boyle Decl. ¶ 4. SAC, ¶ 2.12.  Indymac Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac. Boyle Decl. ¶ 4. Freddie Mac has remained the investor and owner of the Note. Boyle Decl. ¶ 4.

IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. *See* Boyle Decl. ¶ 5, Exhibit 3, OTS Order No. 2008-24 (July 11, 2008).[1] IndyMac Federal Bank ("IMFB") was created and the FDIC was appointed Conservator. *See* Boyle Decl. ¶ 6, Exhibit 4, Excerpts from the Purchase and Assumption Agreement.[2]

On March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the assets including the rights to service the loan presently at issue to OneWest Bank, FSB. *See* Boyle Decl. ¶ 7, Exhibit 5, Excerpts from the Master Purchase Agreement;[3] Exhibit 6; Excerpts

---

[1] The Office of Thrift Supervision Order No. 2008-24, dated July 11, 2008, can be found, in entirety, online at http://www.ots.treas.gov/_files/680018.pdf.
[2] The Purchase and Assumption Agreement, in entirety, can be found online at http://www.fdic.gov/bank/individual/failed/IndyMac_P_and_A.pdf.
[3] The Master Purchase Agreement, in entirety, is available online at http://www.fdic.gov/about/freedom/IndyMacMasterPurchaseAgrmt.pdf.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 2 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  from the Loan Sale Agreement;[4] and Exhibit 7, Excerpts from the Servicing Business Asset

2  Purchase Agreement.[5]

3        OneWest Bank is the current servicer; IndyMac Mortgage Services is a division of

4  OneWest Bank. Boyle Decl., ¶ 8. OneWest services the loan on behalf of Freddie Mac in

5  accordance with Freddie Mac's Single-Family Seller/Servicer Guide (the "Freddie Mac Servicer

6  Guide").[6,7] *Id.* As part of the Freddie Mac Servicer Guide, OneWest has possession of the blank

7  endorsed Note through a document custodian, Deutsche Bank National Trust Co. ("Custodian").

8  *See* Boyle Decl. ¶ 9, Exhibit 8, Custodial Agreement. OneWest is entitled to collect payments,

9  initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification

10 in accordance with investor guidelines.[8] Boyle Decl., ¶ 10.

11       OneWest has been in possession of the Note and therefore the holder since on or about

12 March 19, 2009, and the Note has been held by the Custodian since on or about May 12, 2009.

13 Boyle Decl., ¶ 11. *See also* Exhibit 8.[9]

14       On or about October 1, 2009, Plaintiff defaulted by failing to make the payment due for

15 October 1, 2009, and every payment thereafter due. Boyle Decl., ¶ 12.

---

[4] The Loan Sale Agreement, in entirety, is available online at
http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf.
[5] The Servicing Business Asset Purchase Agreement, in entirety, is available online at
http://www.fdic.gov/bank/individual/failed/ServicingBusinessAssetPurchaseAgreement.pdf.
[6] The Freddie Mac Servicer Guide is available, in entirety, at http://www.allregs.com/tpl/Main.aspx.
[7] Congress created the Federal Home Loan Mortgage Corporation ("Freddie Mac") in order to promote a stable
secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery,
and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans;
rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage
investments and to improve the distribution of investment capital available for residential mortgage financing. *See*
12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708
(N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir.
1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced
for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes
collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.
[8] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Servicer
Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at
http://www.allregs.com/tpl/Main.aspx.
[9] On or about October 1, 2010, OneWest requested that the Custodian deliver the Note to OneWest. The Note was
released to OneWest on or about October 5, 2010. The Note is currently stored at the office of counsel for
Defendants'.  Boyle, Decl., ¶¶ 16-17.

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 3 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

On or about November 2, 2009 and November 16, 2009, IndyMac Mortgage Services, a division of OneWest Bank, FSB mailed to Plaintiff via first class mail letters (the "November 2009 Letters") which satisfied the "written contact" requirement set forth in RCW 61.24.031(b).[10] Boyle Decl., ¶ 13. *See also* Exhibit 9, November 2009 Letters.

On or about January 12, 2010, as an agent of OneWest Bank, FSB, NWTS mailed and posted a notice of default (the "Notice of Default") in response to Plaintiff's default. *See* Declaration of Vonnie McElligott ("McElligott Decl."), ¶ 4, Exhibit 10, Notice of Default.

On or about January 27, 2010, MERS  executed an assignment of deed of trust (the "Assignment") whereby MERS assigned its interest under the Deed of Trust to OneWest Bank, FSB. The Assignment was recorded February 4, 2010, under King County Auditor's File No. 20100204000502. *See* Boyle Decl., Exhibit 11, Assignment; Boyle Decl., ¶ 6.[11,12]

On or about February 4, 2010, OneWest recorded an appointment of successor trustee (the "Appointment") naming Northwest Trustee Services, Inc. the successor trustee. The Appointment was recorded under King County Auditor's File No. 20100204000503. *See* Boyle Decl., ¶ 15, Exhibit 12, Appointment.

On or about February 16, 2010, NWTS recorded a notice of trustee's sale (the "Notice of Sale") under King County Auditor's File No. 20100216001242, setting the trustee's sale for May 21, 2010, 2010. *See* McElligott Decl., ¶ 5, Exhibit 13, Notice of Sale.

On or about April 27, 2010, Plaintiff mailed to OneWest a purported Qualified Written Request, Dispute of Debt, and Debt Validation Demand. SAC, ¶ 2.11. In a letter dated May 18, 2010, OneWest responded to Plaintiff's Qualified Written Request, Dispute of Debt, and Debt Validation Demand stating that Freddie Mac was the investor on the loan as well as provided

---

[10] RCW 61.24.031 has since been amended.
[11] Under Washington law, the security (Deed of Trust) follows the debt (Note) with or without actual assignment. *Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) ("transfer of the note carries … the security"); Leisure Time Sports v. Wolfe, 194 B.R. 859, 861 (9th Cir. BAP 1996) ("security … follows the debt").
[12] *In re United Home Loans*, 71 B.R. 885, 891 (W.D. Wash. 1987), aff'd 876 F.2d 897 (9th Cir. BAP 1989) ("assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded"; "Recording of the assignments is for the benefit of third parties").

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Plaintiff copies of the Note, Deed of Trust, and payment history on the loan. SAC, ¶ 2.12.

2       On or about November 4, 2010, NWTS recorded an Amended Notice of Trustee's Sale

3   (the "Amended Notice of Sale") under King County Auditor's File No. 20101104001321, setting

4   the trustee's sale for December 10, 2010. McElligott Decl., ¶ 6, Exhibit 14, Amended Notice of

5   Sale.

6       On or about December 3, 2010, Plaintiff filed his original complaint, which alleged

7   violations of Washington's Deed of Trust Act ("DTA"), wrongful foreclosure, and slander of

8   title as well as requested a Temporary Restraining Order and Permanent Injunction. Dkt. 1.

9       On January 25, 2011, the court granted a preliminary injunction ("Injunction") against the

10  Property. Dkt. 24. The Injunction was conditioned upon Plaintiff making the monthly payment

11  due under the Note and Deed of Trust into the court registry each month while the Injunction

12  was in place. *Id.* Plaintiff has failed to pay any amounts into the court registry since May 2011,

13  and therefore his payments for June 2011 through March 2012 are overdue.

14      Plaintiff has since filed his First Amended Complaint ("FAC") as well as the SAC. The

15  SAC alleges violations of the DTA, violations of the Consumer Protection Act ("CPA"), fraud,

16  civil conspiracy, slander of title, and violations of the Fair Credit Reporting Act ("FCRA") and

17  asks the court for declaratory relief and damages awards. Defendants' motion for partial

18  summary judgment only as to Plaintiff's claim under the FCRA has been fully briefed and was

19  noted for consideration on August 24, 2012. *See* Dkt. 154, 155, 156, 162, and 166. The following

20  motion will address all claims alleged in the SAC with the exception of the claim under the

21  FCRA.[13]

22

23  [13] Defendants previously filed a motion for summary judgment as to Plaintiff's FAC on or about March 22, 2012.
    Dkt. 121. The motion was originally noted for consideration on April 13, 2012. *Id.* On or about June 10, 2012, the

24  Court entered an order continuing Defendants' motion to August 24, 2012 in light of questions posed in two cases
    pending before the Washington State Supreme Court, *Bain v. Metro. Mortg. Group, Inc.*, C09-0149JCC, and

25  *Selkowitz v. Litton Loan Servicing LP*, C10-5523JCC. Dkt. 143. On or about August 16, 2012, the Washington
    Supreme Court entered a decision in the *Bain* and *Selkowitz* case. *See* Dkt. 164. And, on August 22, 2012, the Court

26  entered an Order in which it extended the dispositive motion cutoff date to September 21, 2012 and urged the parties
    to consider withdrawing and re-filing the pending motions for summary judgment to address the impact of the *Bain*
    decision on the present case. Dkt. 164. In light of the Court's suggestion, Defendants withdrew the motion for
    summary judgment addressing claims under the DTA, CPA, for fraud, civil conspiracy, slander of title, and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 5 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### III.    ISSUES PRESENTED

Whether Defendants OneWest, MERS, and NWTS are entitled to judgment, as a matter of law, as to Plaintiff's claims as asserted in the SAC for (1) violations of the DTA, (2) violations of the CPA, (3) fraud, (4) civil conspiracy, (5) slander of title, and (6) declaratory relief.

### IV.    EVIDENCE RELIED UPON

This Motion for Summary Judgment is supported by the pleadings, exhibits thereto, records, and docket on file in this case, this Motion and Memorandum of law and exhibits attached hereto, the Declaration of Vonnie McElligott, and Declaration of Charles Boyle.

### V.    AUTHORITY & ARGUMENT

**A.    LEGAL STANDARD FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56.**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Indeed, "the moving party may simply point to the absence of evidence to support the nonmoving party's case." *In re Brazier Forest Prod. Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). And, the non-movant may not rest on the allegations of the pleadings, but must produce specific facts showing a genuine issue. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986). Nor can the non-movant merely state that he will discredit his opponent's evidence at trial. *T.W. Elect. Serv.v. Pac. Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987). Conclusory statements, speculation, personal beliefs, and unsupported assertions cannot withstand a summary judgment motion, and the court will not "presume[]" "missing facts." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

---

declaratory relief on August 24, 2012. Dkt. 167. The Court previously granted Defendants permission to file an overlength motion. Dkt. 116.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 6 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

**B.     PLAINTIFF'S CLAIM FOR VIOLATIONS OF THE DEED OF TRUST ACT.**

2

**1.     Plaintiff's claim for violations of the DTA as to OneWest fails as a matter of**

3

**law because Washington does not recognize a cause of action for damages for**

4

**"wrongful initiation of foreclosure."**

5

Plaintiff's claim for violations of the DTA as to OneWest are based upon Plaintiff's

6

allegations that (1) OneWest is not the beneficiary of the Note because it never took the note "for

7

value"; (2) the custodial agreement shows OneWest has no beneficial interest in the notes that

8

Deutsche Bank, as custodian, releases to it; (3) OneWest violated RCW 61.24.030 by claiming to

9

be the beneficiary in the Notice of Default; and 4) OneWest violated RCW 61.24.030(8)(1) by

10

failing to list the note owner on the Notice of Default. *See* SAC, ¶¶ 3.1.2 and 3.1.8. Plaintiff also

11

cites a host of errors he purports to have found in the documentation supporting the nonjudicial

12

foreclosure. *See* SAC.

13

In Washington, several courts have concluded that where no trustee's sale has occurred,

14

the DTA does not authorize a cause of action for "wrongful initiation of nonjudicial foreclosure

15

proceedings" like the one Plaintiff attempts to put forth here.[14] *Vawter v. Quality Loan Serv.*

16

*Corp. of Washington*, 707 F. Supp. 2d 1115, 1123 (W.D. Wash. 2010); *see also Pfau v. Wash.*

17

*Mutual, Inc.*, No CV-08-00142-JLQ, 2009 WL 484448, at *12 (E.D. Wash. Feb. 24, 2009);

18

*Krienke v. Chase Home Fin., LLC,* 140 Wn. App. 1032, 2007 WL 2713737, at *5 (Wash. Ct.

19

App. 2007); *see also Henderson v. GMAC Mortgage Corp.*, No. C05-5781RBL, 2008 WL

20

1733265, at *5 (W.D. Wash. Apr. 10, 2008) (holding that plaintiff's claim for wrongful

21

foreclosure under the DTA failed because, among other things, no foreclosure occurred).  In both

22

*Pfau* and *Krienke,* the courts rejected the argument that a grantor can maintain a damages claim

23

for wrongful institution of nonjudicial foreclosure proceedings where no trustee's sale actually

24

occurs. These courts emphasized their view that there is simply no statutory authority or case law

25

26

[14] The DTA specifically states that a trustee's sale may be restrained only upon the tendering of the obligations due. RCW 61.24.130. This restraint may be for any legal or equitable grounds. Here, the Court granted Plaintiff a preliminary injunction to enjoin the sale, which was conditioned upon Plaintiff making monthly payments into the court registry. *See* Dkt. 24. Plaintiff, however, has failed to make the monthly payment as required by the preliminary injunction since May 2011. Dkt. 94.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    to support such a claim. As the *Krienke* court explained:

2        There is no case law supporting a claim for damages for the *initiation* of an
3        allegedly wrongful foreclosure sale. Moreover, there is no statutory basis
         supporting a claim for damages for wrongful *institution* of foreclosure
4        proceedings. On the contrary, courts promote the [DTA's] objectives, declining to
         invalidate completed sales even where trustees have not complied with the
5        statute's technical requirements.

6    *Krienke*, 2007 WL 2713737, at *5 (emphasis in original).

7        The court in *Vawter* further emphasized that recognizing a cause of action for the

8    wrongful institution of foreclosure proceedings would be inconsistent with the intent of the DTA.

9    *Vawter*, 707 F. Supp. 2d at 1124 ("Interjecting a cause of action for damages for wrongful

10   institution of nonjudicial foreclosure proceedings into the DTA's scheme would potentially upset

11   the balance struck by the legislature.").  The sole method to contest a foreclosure sale is to file an

12   action to enjoin or restrain the sale in accordance with 61.24.130 of the DTA. Washington courts

13   are clear in holding that "[a]nyone having any objection to the sale on any grounds whatsoever

14   will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to

15   restrain the sale pursuant to the Revised Code of Washington 61.24.130." *Plein v. Lackey*, 67

16   P.3d 1061, 1066 (Wash. 2003).  Failure to properly bring such a lawsuit may result in a waiver of

17   any proper grounds for invalidating the trustee's sale.  RCW 61.24.040(1)(f)(IX); *see also* RCW

18   61.24.127.  Recognizing a cause of action for the wrongful institution of foreclosure procedures

19   in spite of the DTA's statutory scheme and objectives, would, as the court in *Vawter* explained,

20       undermine the legislature's goal that the nonjudicial foreclosure process remains efficient
         and inexpensive . . . [The approach would] spawn litigation under the DTA for damages,
21       thereby interfering with the efficient and inexpensive nature of the nonjudicial
         foreclosure process, while at the same time failing to address directly the propriety of
22       foreclosure or advancing the opportunity of interested parties to prevent wrongful
         foreclosure.

23   *Vawter*, 707 F.Supp.2d at 1123–24.  Here, Plaintiff's cause of action, though styled in the

24   complaint as one for violations of the DTA, is properly construed as a claim for wrongful

25   institution of nonjudicial foreclosure proceedings since the trustee's sale has not occurred. *See*

26   *Id*. When viewed in this light, as a matter of law, Plaintiff's claim fails.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**2. Even assuming Plaintiff's "wrongful initiation of nonjudicial foreclosure" was plausible, the claim fails as a matter of law as to OneWest.**

**a. Under the federal holder-in-due-course doctrine, OneWest is a holder-in-due-course.**

Plaintiff alleges that OneWest is not the beneficiary of the Note because it "never took the note for value" per RCW 62A.3-302." SAC, ¶ 3.1.1.

Pursuant to the federal holder-in-due-course doctrine, which has been expressly adopted in the Ninth Circuit, OneWest qualifies as a holder-in-due-course. The technical requirements for holder-in-due-course are greatly relaxed, if not dispensed with altogether, when the FDIC acquires a note in a purchase and assumption transaction from a failed bank. *Resolution Trust Corp. v Kennelly*, 57 F.3d 819, 821 (9th Cir. 1995); *see also Fed. Sav. and Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 559-60 (5th Cir. 1990) (extending the status of a federal holder-in-due-course to private assignees of the FDIC and FSLIC). Washington law is in accord. RCW 62A.3-203(b) ("Transfer of an instrument ... vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder-in-due-course").

Technically, the FDIC cannot qualify as a holder-in-due-course; it is not a "holder" as defined by NMSA 1978, Section 55-1-201(20) (Repl.Pamp.1993), and often, as receiver, it acquires notes by bulk transactions. *Id.* (citing Steven A. Weiss & Kenneth E. Kraus, *D'Oench Protection for Private Institutions Assisting the FDIC: A Necessary Component of the Thrift and Bank Bailout,* 108 Banking L.J. 256, 270 (1991)). The principle of allowing the FDIC and its successors in interest to enjoy the benefits of a holder-in-due-course is grounded in the need for a uniform rule of immunity for the FDIC in order to perform its statutory function. *Id.* (citing *Gunter v. Hutcheson,* 674 F.2d 862, 869 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), *and overruled on other grounds Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987)). The federal holder-in-due-course doctrine requires that, given the special circumstances that face the FDIC, state holder-in-due-course law does not apply. *Id.* A purchase and assumption transaction helps preserve stability of and confidence in the banking

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

system and is the preferred method for resolving bank failures. *Id.* Subsequent holders who acquire notes from the FDIC also enjoy holder-in-due-course status "whether or not they satisfy the technical requirements of state law." *Campbell Leasing,* 901 F.2d at 1249; *see* Kraus, *supra,* at 270 ("an assignee from the FDIC cannot technically be a holder in due course").

As the *Cadle* court stated:

> To hold otherwise "would emasculate the policy behind ... promoting purchase and assumption transactions. If holder in due course status did not run with the notes acquired by the FDIC in purchase and assumption transactions, the market for such notes would be smaller, which would have a deleterious effect on the FDIC's ability to protect the assets of failed banks." *FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989). We recognize that "a subsequent purchaser ... stands in the shoes of the FDIC" for holder-in-due-course status. *Id.*

*Cadle Co., Inc. v. Wallach Concrete, Inc.*, 120 N.M. 56, 61, 897 P.2d 1104, 1109, 27 UCC Rep. Serv. 2d 518, 1995 WL 367288 (1995).

Here, after the Plaintiff's Note was sold to Freddie Mac, Indymac Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac.  IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. IndyMac Federal Bank ("IMFB") was created and the FDIC was appointed Conservator, and on March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the assets including the rights to service the loan presently at issue to OneWest Bank, FSB. Thus, under the federal holder-in-due-course doctrine, as a subsequent holder following the FDIC, OneWest is a holder-in-due-course.

Moreover, as the Note is endorsed in blank, and OneWest is currently in possession of the Note and has been at all times in actual possession or constructive possession through the Custodian,[15] OneWest is entitled to enforce the Note. Additionally, this is consistent with RCW 62A.3-301 in that OneWest need not own the Note to enforce it.

//

///

---

[15] At all times since May 12, 2009 (date of Custodial Agreement), OneWest could demand actual possession of the Note at any time from the Custodian and the Note would be delivered to OneWest.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**b.  The Custodial Agreement provides that Deutsche Bank acts as Custodian to house the original Note for the benefit of Freddie Mac and OneWest.**

The Custodial Agreement, dated May 12, 2009, details an agreement between Freddie Mac, the owner, OneWest, the servicer, and Deutsche Bank, the custodian. *See* Exhibit 8. Pursuant to the Agreement, Deutsche Bank will hold the subject Notes on behalf of Freddie Mac and OneWest. At any time either Freddie Mac or OneWest may request the custodian deliver the Note to them. On or about October 1, 2010, OneWest requested that the Custodian deliver the Note to OneWest. The Note was released to OneWest on or about October 5, 2010, and the Note is currently stored at the office of counsel for Defendants'. *See* Declaration of Heidi E. Buck, Dkt. 49. At any time, OneWest could request that Defendants' counsel return the Note to OneWest.

Courts have held that constructive possession is sufficient to satisfy the requirement of possession in the definition of "holder" such that a person is a "holder" of commercial paper when, like here, it is in the physical possession of his agent or when the party otherwise can obtain the instrument on demand. *In re McFadden*, 471 B.R. 136, 175, 77 UCC Rep. Serv. 2d 608, 2012 WL 1614806 (Bankr. D.S.C. 2012) (citing *Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.,* 893 F.Supp. 1304, 1314 (D.S.C.1994)).

**c.  OneWest is a beneficiary entitled to enforce the Note and Deed of Trust.**

RCW 61.24.005(2) provides that, "unless the context otherwise requires," the term "'beneficiary' means the holder of the instrument or document evidencing the obligation secured by the deed of trust[.]" RCW 61.24.005(2). Under the U.C.C., as adopted in Washington, a "[p]erson entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). RCW 62A.3-301. **A person may be a person entitled to enforce the**

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**instrument even though the person is not the owner of the instrument** or is in wrongful possession of the instrument. *Id.* (Emphasis added). "Holder" status may be evidenced by physical possession of the note, which has either been endorsed to that person or endorsed in blank. RCW 62A.1-201.

Under the DTA and the terms of the Note and Deed of Trust, a beneficiary may enforce the underlying obligation, may appoint a successor trustee, and may take steps in furtherance of the nonjudicial foreclosure. *See* RCW 61.24 *et seq.*

OneWest has been the note holder since March of 2009 when OneWest acquired the assets and operations of IndyMac from the FDIC. Accordingly, OneWest is a beneficiary entitled to enforce the Note, and was entitled to enforce the Note and to take steps in furtherance of the nonjudicial foreclosure[16] at all times since March 2009. Thus, at all times relevant to the underlying foreclosure (initiated on or about January 12, 2010 with the Notice of Default by OneWest), OneWest was authorized to enforce the Note and Deed of Trust through nonjudicial foreclosure.

Plaintiff claims that OneWest has no "standing" and that **only** the note owner may enforce the Note. However, such statements are not grounded in the law. In fact, OneWest does not dispute that Freddie Mac is the owner of the Loan. OneWest services the loan on behalf of Freddie Mac in accordance with the Freddie Mac Servicer Guide.[17,18] As part of the Freddie Mac Servicer Guide, as with all loans owned by Freddie Mac, the servicer, OneWest in this matter,

---

[16] This includes directing NWTS to transmit the Notice of Default on behalf of OneWest and appointing NWTS as successor trustee.

[17] Available at http://www.allregs.com/tpl/Main.aspx.

[18] Congress created the Federal Home Loan Mortgage Corporation ( "Freddie Mac") in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708 (N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir. 1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 12 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

has possession[19] of the blank endorsed Note, and is entitled to collect payments, initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in accordance with investor guidelines.[20]   In fact the Freddie Mac Servicer Guide provides that where default occurs, foreclosure is to be carried out in the name of the servicer.[21] The Freddie Mac Servicer Guide designates sweeping authority to the servicer to "act in the most time, efficient and responsible manner to protect Freddie Mac's interests."[22]

Accordingly, in accordance with the federal holder-in-due-course doctrine, the U.C.C. and DTA, <u>OneWest is the beneficiary entitled to enforce the Note and Deed of Trust through foreclosure in response to Plaintiff's undisputed default.</u>

Moreover, Plaintiff's allegations that OneWest wrongfully asserted itself as the note owner in the Appointment and Notice of Default are irrelevant and immaterial. "The issue of ownership, however, is largely immaterial...[b]ecause under Washington law the focus of the analysis is on who is the holder of the note, and thus the beneficiary under the [DTA], Plaintiff's concern should be whether he knows who to pay." *In re Reinke*, BR 09-19609, 2011 WL 5079561 at *11 (Bankr. W.D. Wash. Oct. 26, 2011) (citing *Veal v. American Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011)). Plaintiff, however, makes no allegations that his default was caused by his uncertainty as to who payments should be directed.

### d. Alleged errors identified by Plaintiff in the foreclosure process and supporting documents do not refute OneWest's authority to foreclose and do not give rise to any damages.

Before a court will set aside or restrain a trustee's sale in the face of allegations of errors like those asserted by Plaintiff, a showing of prejudice must be made. *See Amresco Independence*

---

[19] Actual or through the custodian.
[20] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Freddie Mac Servicer Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at http://www.allregs.com/tpl/Main.aspx.
[21] *See* Freddie Mac Servicer Guide, Volume 2, Chapter  67.17, available at http://www.allregs.com/tpl/Main.aspx.
[22] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 51.1, available at http://www.allregs.com/tpl/Main.aspx.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 13 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    *Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing

2    *Koegel v. Prudential Mut. Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988). In *Koegel*, the

3    court declined to invalidate a sale where Plaintiff identified "technical, formal error[s], non-

4    prejudicial, and correctable." *Koegel*, 752 P.2d at 388. Thus, even where technical errors exist,

5    like those asserted here, a foreclosure may proceed without restraint in the absence of prejudice.

6    *Id.*[23]

7         ***Notice of Default***. The alleged errors identified in the Notice of Default are not

8    prejudicial to Plaintiff and do not warrant restraint of the trustee's sale nor do they give rise to

9    any liability. Plaintiff alleges that the Notice of Default (1) erroneously lists OneWest as owner,

10   (2) erroneously lists OneWest as beneficiary; (3) was transmitted by a party who was not the

11   beneficiary or trustee in violation of RCW 61.24.030(8), and (4) falsely listed OneWest as the

12   creditor to whom the debt is owed. SAC, ¶ 2.4.

13        As noted *supra,* note ownership is immaterial to determining who is legally entitled to

14   enforce the promissory note. *In re Reinke,* 2011 WL 5079561 at *11.

15        There is no dispute Plaintiff's loan is owned by Freddie Mac and therefore governed by

16   the Freddie Mac Servicer Guide such that the Note is endorsed in blank, housed by a custodian

17   for the benefit of Freddie Mac and OneWest, and enforceable by the servicer, OneWest. As the

18   servicer, at all times relevant (prior to and following Plaintiff's default), OneWest was the entity

19   charged with the responsibility of accepting and applying his payments, communicating in

20   regard to the default, initiating and carrying out the foreclosure, accepting and reviewing any

---

21   [23] The court in *Cervantes* listed several examples of prejudice sufficient to warrant a claim. *Cervantes,* 656 F.3d at
22   1043; *See e.g., Ed Peters Jewelry Co.*, 124 F.3d 252, 263 n.8 (declining to "countenance the freewheeling 'wrongful
     foreclosure' claim" advocated by the mortgagor and noting that the Massachusetts Supreme Court recognized a
23   claim for wrongful foreclosure where no default had occurred in *Mechanics Nat'l Bank of Worcester v. Killeen,* 384
     N.E.2d 1231, 1236 (Mass. 1979)); *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct.App. 2009) (In
24   Missouri, "[a] plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the
     foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose"
     (internal alteration and citation omitted)); *Gregorakos v. Wells Fargo Nat'l Ass'n,* 647 S.E.2d 289, 292 (Ga. Ct.
25   App. 2007) (In Georgia, a "plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it
     by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury
26   sustained, and damages." (internal quotation marks and alteration omitted)); *Collins v. Union Fed. Sav. & Loan
     Ass'n,* 662 P.2d 610, 623 (Nev. 1983) (In Nevada, "the material issue of fact in a wrongful foreclosure claim is
     whether the trustor was in default when the power of sale was exercised.")

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 14 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    request for modification, and providing reinstatement figures. As Plaintiff points out, the Notice

2    of Default identified OneWest as the Servicer and the Beneficiary and incorrectly referenced

3    OneWest as the "Note Owner." Such an error offers no prejudice, however. Plaintiff was still

4    provided the relevant information, the party to which he could provide his payment, negotiate a

5    loan modification, or coordinate reinstatement. Furthermore, the evidence demonstrates Plaintiff

6    knew OneWest was the party designated to collect and apply his payments as he made payments

7    to OneWest prior to his undisputed default. SAC, ¶ 2.12.

8           Additionally, OneWest is a Beneficiary. *See* Section B(2)(c)¶4 *supra*.

9           ***Beneficiary Declaration***. The allegations relating to the Beneficiary Declaration, as a

10   matter of law, do not amount to an actionable claim and offer Plaintiff no prejudice. Plaintiff

11   alleges the Beneficiary Declaration was ineffective because it was signed by a "notorious robo-

12   signer." SAC, ¶ 2.4.1.

13          First, this court has held that generic allegations that documents were "robo-signed" are

14   nothing more than conjecture and are too vague and conclusory to state a plausible claim for

15   relief under the standards set forth in *Twombly,* 550 U.S. at 570; *see also Mickelson v. Chase*

16   *Home Fin. LLC*, C11-1445 MJP, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011).

17          Secondly, RCW 61.24.030(7)(a) requires that before a notice of sale is recorded,

18   transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any

19   promissory note or other obligation secured by the deed of trust. One way in which the

20   requirement is satisfied is through receipt of a declaration by the beneficiary made under the

21   penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other

22   obligation secured by the deed of trust. *See* RCW 61.24.030(7)(a).

23          Here, even if Plaintiff could show the Beneficiary Declaration was "robo-signed" and

24   that such a showing resulted in the Beneficiary Declaration being void (which he cannot),

25   Plaintiff can make no showing of injury based upon NWTS' reliance on the Beneficiary

26   Declaration. NWTS only relied on the Beneficiary Declaration to record the Notice of Sale and

     Amended Notice of Sale, both of which have now expired. *See* RCW 61.24.040(6).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    In order for a new trustee's sale to be scheduled, a new notice of sale must be recorded.

2    Since NWTS' receipt of the Beneficiary Declaration, NWTS has been presented with the original

3    promissory note, which is endorsed in blank and in the possession of OneWest. Thus, the

4    Beneficiary Declaration is no longer necessary, and NWTS need not rely upon the Beneficiary

5    Declaration going forward.

6    Similarly, Plaintiff's conclusory statements that Erica Johnson-Seck, Brian Burnett, and

7    Suchan Murray are "well-known robo-signers" are nothing more than conjecture and therefore

8    insufficient to state a plausible claim for relief.   *See Mickelson v. Chase Home Fin. LLC*, C11-

9    1445 MJP, 2011 WL 5553821, at *3 (W.D. Wash. Nov. 14, 2011).

10    ***Letter dated January 15, 2010***. The fact that Routh Crabtree Olsen, P.S., as counsel to

11    OneWest mailed Plaintiff a letter in an effort to advise Plaintiff of options that may exist that

12    would allow him to avoid foreclosure does not offer Plaintiff any prejudice nor does it give rise

13    to liability as to any Defendant herein.

14    Plaintiff incorrectly presumes the letter from Routh Crabtree Olsen, P.S. was meant to

15    satisfy the "written contact" as required under RCW 61.24.031(1)(b). Plaintiff is incorrect,

16    however. OneWest sent, in accordance with RCW 61.24.031(1)(b), two letters in November

17    2009, which served as the "written contact."

18    ***Assignment***. Allegations identifying alleged errors in the Assignment offer no prejudice

19    to Plaintiff and do not give to liability under any legal theory. Plaintiff alleges the following

20    "defects" with the Assignment: 1) it was signed by a known "robo-signer," 2) the signer, Brian

21    Burnett, is not truly a MERS employee, 3) the Corporate Resolution evidencing Burnett's

22    signing authority was not instructive as it was dated after the Assignment, 4) the Assignment was

23    a nullity because it purported to transfer the note ("together with note or notes therein"), and

24    because MERS never owned the note (and therefore was never the beneficiary) and therefore

25    could not assign any note. SAC, ¶ 2.6.

26    As discussed *supra*, conclusory allegations of "robo-signing" are insufficient to state a

claim as a matter of law. *Mickelson,* WL 5553821, at *3.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 16 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1       Additionally, "[t]here is simply nothing deceptive about using an agent to execute a

2   document, and this practice is commonplace in deed of trust actions." *Bain v. Metropolitan*

3   *Mortgage Group, Inc.*, 2010 WL 891585, *6 (W.D.Wash.) (*citing Russell v. Lundberg,* 120 P.3d

4   541, 544 (Utah Ct.App.2005)). An agent may perform "mere ministerial acts" relating to a

5   foreclosure. *Id.* (*citing Buse v. First Am. Title Co.,* C08-0510-MJP, 2009 WL 1543994, at *3

6   (W.D.Wash. May 29, 2009)).

7       In *Bain*, the Plaintiff borrower challenged a scenario in which the defendant Lender

8   Processing Services ("LPS") had contracts with defendants IndyMac Bank and MERS. Under

9   the contract with MERS, LPS employees were "appointed as assistant secretaries and vice

10  presidents of [MERS] and, as such, are authorized to ... execute any and all documents necessary

11  to foreclose upon the property securing any mortgage loan registered on the MERS system ...

12  including but not limited to (a) substitution of trustee on Deeds of Trust ..." Similarly, LPS had

13  separate contractual authority to execute documents as signing officers of IndyMac. There, the

14  LPS employees who signed the appointment and assignment were employed by LPS and had

15  signing authority for Indymac and MERS. The court held that using the LPS employees to sign

16  the documents was not an affirmative misrepresentation of fact and there was simply nothing

17  deceptive about this practice. *Bain,* *6.[24]

18      Finally, Plaintiff challenges the Assignment on the basis that it improperly attempts to

19  transfer the underlying Note. Defendants OneWest and MERS concede that any purported

20  transfer of an interest in the Note by the MERS assignment of deed of trust was ineffective as,

21  pursuant to the U.C.C., a negotiable instrument may be transferred through endorsement and

22  delivery. As discussed *supra*, OneWest has had the authority to enforce the Note and Deed of

23  Trust as the Note holder since March 2009 notwithstanding any assignment of deed of trust or

24  language used in the Assignment.

25

26  [24] The previous holding from Judge Coughenour in *Bain* regarding the acceptability of and common place use of agents in the nonjudicial foreclosure process was not disturbed by the Supreme Court's ruling in *Bain*. In fact, the Court in *Bain* recognized the propriety of agency in the nonjudicial foreclosure context by recognizing that MERS can act as the nominee or agent for the beneficiary if it discloses the beneficiary. *Bain*, 2012 WL 3517326, at *11.

---

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1      ***Appointment.*** Errors identified in the Appointment offer no prejudice Plaintiff and do not

2      give rise to any liability. Plaintiff alleges the Appointment was signed by a known "robo-signer"

3      and that the Appointment erroneously identified OneWest as the Note owner. SAC, ¶ 2.7.

4          As previously discussed, OneWest is and has been the beneficiary authorized to foreclose

5      and conclusory allegations that a document was "robo-signed" cannot support any claim. *See*

6      Section B(2)(c), ¶4 *supra*; *see also Mickelson,* WL 5553821, at *3. Moreover, as discussed

7      *supra*, to the extent OneWest was erroneously identified as the Note owner, such an error is of

8      no prejudicial consequence given the fact that note ownership is not germane to determining who

9      is entitled to enforce the Note and Deed of Trust. *See In re Reinke,* 2011 WL 5079561 at *11; *see*

10     *also* RCW 61.24 *et seq.*, *and see* RCW 62A.1-201.

11         ***Notice of Sale & Amended Notice of Sale.*** RCW 61.24.040(1) provides that, at least 90

12     days before sale, the trustee shall record a notice with the county auditor comporting with the

13     form described in subsection (f) of the statute.  Additionally, the trustee must transmit a copy of

14     the notice of sale to certain individuals, including the "borrower and grantor."  *See* RCW

15     61.24.040(1)(b)(i).

16         A trustee may only "continue the sale for a period… not exceeding 120 days."  *See* RCW

17     61.24.040(6); *Albice v. Premier Mortg. Services of Washington, Inc.*, 174 Wash. 2d 560, 568,

18     276 P.3d 1277, 1281, 2012 WL 1881022 (2012).  Should the sale be unable to occur within the

19     required 120 days, the trustee must again comply with RCW 61.24.040(1), and record a new

20     Notice of Sale. *Id.*

21         Where a trustee's sale is stayed as a result of a federal bankruptcy petition, upon entry of

22     an order dismissing the case, the trustee may set a new sale date, which shall not be less than

23     forty-five days after the bankruptcy court's order. RCW 61.24.130(4).[25]

24         Here, Plaintiff has set forth a laundry list of allegations in regard to the Notice of Sale and

25     Amended Notice of Sale. Plaintiff's demands and allegations, however, are without merit. For

26

---

[25] Plaintiff's Chapter 7 Bankruptcy was dismissed on October 14, 2010. In accordance with RCW 61.24.130(4), NWTS recorded the Amended Notice of Sale on or about November 4, 2010.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 18 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

example, each of the charges set forth in the Notice of Sale and Amended Notice of Sale are statutorily provided for, and Defendants are under no obligation to provide a "mathematical equation" or an explanation within the notices as Plaintiff suggests (Plaintiff provides no authority for such a proposition). Plaintiff's allegations suggest additional requirements that a trustee and beneficiary must comply with that are simply not part of the statute-driven nonjudicial foreclosure process requirements. *See* RCW 61.24 *et seq.*

Notwithstanding the lack of merit to Plaintiff's challenges of the Notice of Sale and Amended Notice of Sale, because NWTS must re-issue and record a new notice of sale as more than 120 days have passed from the December 10, 2010 sale date, any arguments concerning the Notice of Sale and Amended Notice of Sale are moot.[26]

In sum, even if Plaintiff's claim under the DTA was actionable, the claim would fail because Plaintiff has not shown any prejudice as technical errors that are correctible are not prejudicial. *Amresco,* 119 P.3d  at 886–87; *see also Koegel*, 752 P.2d at 388. Moreover, even in states that do recognize substantive claims for wrongful foreclosure, such claims are available only *after* foreclosure and are based upon allegations that the borrower was not in default or upon some technical issue that resulted in damages to the borrower (i.e., a form of prejudice). *Cervantes*, 656 F.3d at 1043-1044.

In this case, a trustee's sale has not occurred.  Plaintiff does not dispute that Plaintiff was in default for failure to make payments as required by the Note and Deed at the time the Notice of Default was posted and mailed. Plaintiff further does not dispute that Plaintiff failed to timely cure the default set forth in the Notice of Default as required to reinstate the loan and prevent recording of the Notice of Trustee's Sale. Although Plaintiff alleges that Defendants failed to comply with the procedural requirements of the DTA, those allegations, which identify hyper-technical errors cannot indefinitely prevent the foreclosure from proceeding absent a showing of prejudice.

---

[26] Plaintiff cannot show any prejudice or injury he has suffered by virtue of a notice that did not result in an actual sale of the Property. *See Vawter*, 707 F. Supp. 2d  at  1124.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Any allegation by the Plaintiff as to uncertainty regarding to whom the debt is owed or

2    whether the foreclosing party has authority to foreclose is similarly insufficient to establish

3    prejudice even assuming the allegation were true.  Once the trustee's sale occurs, the debt owed

4    by the borrower and secured by the deed of trust is satisfied by the sale.  *See e.g., Udall v. T.D.*

5    *Escrow Svcs., Inc.*, 154 P.3d 882, 890 (2007) (pointing to the DTA's anti-deficiency provision).

6    Even if foreclosure were initiated by a party without authority, the borrower's interests are not

7    injured and no prejudice exists. With no evidence proffered in support of the notion that Plaintiff

8    has suffered prejudice, Plaintiff's claim fails as a matter of law.

9           **e.   Securitization of the loan has no effect on OneWest's right to**

10                **foreclose.**

11          Plaintiff suggests that the supposed securitization of his Note renders both the Note and

12   Deed of Trust void and unenforceable.  However, this Court has recognized that a loan's alleged

13   securitization has no bearing on whether a party may foreclose and does not provide a basis to

14   relieve a borrower or his loan obligations.  "[S]ince the securitization merely creates a separate

15   contract, distinct from plaintiffs' debt obligations under the Note and does not change the

16   relationship of the parties in any way, plaintiffs' claims arising out of securitization fail." *Lamb*

17   *v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 5827813, *6 (W.D. Wash. 2011) (citing cases);

18   *Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229, *5 (W.D. Wash. 2011) (citing cases); *In re Veal*,

19   450 B.R.at 912 ("[Plaintiffs] should not care who actually owns the Note—and it is thus

20   irrelevant whether the Note has been fractionalized or securitized—so long as they do know who

21   they should pay.").

22          Thus, Plaintiff's securitization allegations – even assuming they are accurate – do not

23   provide any basis for him to assert claims against OneWest, MERS, or NWTS, or for the Court

24   to declare the loan documents void or prevent Defendants from foreclosing on the Property.

25   Therefore, the fact of securitization does not preclude foreclosure and does not support any

26   claim.

           **3.   Plaintiff's claim for violation of the DTA fails as a matter of law as to NWTS.**

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2

      **a.  NWTS, as Trustee, is entitled to foreclose and has complied with the DTA in carrying out the foreclosure.**

3       Under the DTA, a trustee so appointed by a beneficiary may foreclose a deed of trust

4  nonjudicially. RCW 61.24 *et seq*. A beneficiary has the power to appoint any trustee that is qualified

5  to act as such pursuant to law. RCW 61.24.010(2).  Upon recording the appointment of a successor

6  trustee…the successor trustee shall be vested with all powers of an original trustee.  *See* RCW

7  61.24.010(2) and Exhibit 2. The Deed of Trust grants the trustee [or successor trustee] the power

8  of sale in the event of default. *See* Exhibit 2.

9       **b.  NWTS was not required to be Trustee to issue the Notice of Default.**

10      Plaintiff claims NWTS began acting as trustee under the Deed of Trust before it had been

11 properly appointed as trustee when it mailed and posted the Notice of Default on January 12,

12 2010. But under the DTA, the Notice of Default need not be delivered by the trustee, and instead

13 may be delivered by the beneficiary or its agent (as well as the trustee).  *See* RCW 61.24.030(8);

14 *see also* RCW 61.24.031 ("A trustee, beneficiary, or ***authorized agent***" may issue notice of

15 default) (emphasis added).  Thus, an agent of the beneficiary may issue the Notice of Default,

16 which is exactly what happened here, since the Notice of Default makes clear that NWTS was

17 not acting as Trustee, but rather the "duly authorized agent" for OneWest. *See* Exhibit 10. This is

18 common practice.  *See, e.g., Klinger v. Wells Fargo Bank, NA*, 2010 WL 4237849 (W.D. Wash.

19 2010) ("Defendant [NWTS] … as agent to Wells Fargo, mailed a Notice of Default to Plaintiffs

20 and posted the Notice of Default at the Property") (Emphasis added).  Thus, the fact that NWTS

21 was not yet appointed as trustee at the time it issued the Notice of Default (acting as OneWest's

22 agent) is irrelevant (since it was acting as an agent, not as trustee) and cannot form the basis for

23 liability.

24      **c.  NWTS took no action as Trustee until after the Appointment was recorded.**

25

26      On February 4, 2010, OneWest named NWTS successor trustee by recording the

Appointment. Thereafter, on February 16, 2010, NWTS recorded the Notice of Trustee's Sale

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 21 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

and later the Amended Notice of Sale consistent with RCW 61.24 *et seq*. Therefore, the facts demonstrate that NWTS acted properly in proceeding with foreclosure as successor trustee for the beneficiary, OneWest Bank.

### d. Standard for Acting in Good Faith.

Under RCW 61.24.010(4), "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."[27] "This subsection became effective on June 12, 2008, and was intended to address ambiguities regarding the duties of trustee after the Washington Supreme Court imposed dual (and in many ways competing) obligations in *Cox*." *Thepvongsa v. Reg'l Tr. Services Corp.*, C10-1045 RSL, 2011 WL 307364 (W.D. Wash. Jan. 26, 2011), *citing Cox v. Helenius,* 103 Wn.2d 383, 693 P.2d 683 (1985), Wn. Senate Bill Report, 2008 Reg. Sess. S.B. 5378 (Feb. 9, 2008); Wn. House Rep. Bill Report, 2008 Reg. Sess. S.B. 5378 (March 6, 2008).

In general, "good faith" is also the "absence of intent to defraud or to seek unconscionable advantage." *See* Black's Law Dictionary, 701 (7th ed. 1999); *see also Indus. Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520 (1990).

A "covenant of good faith and fair dealing cannot 'be read to prohibit a party from doing that which is expressly permitted by an agreement'." *Collins v. Power Default Services, Inc.*, 2010 WL 234902 (N.D. Cal. Jan. 14, 2010), *citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992).

In *Mickelson v. Chase Home Fin. LLC*, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011), the Western District of Washington recently dismissed a "Breach of Good Faith" action against an original trustee, holding that "Plaintiffs would have every trustee conduct a secondary investigation into the papers filed by the beneficiary, which is simply too great a demand."[28]

---

[27] RCW 61.24.010(3) also notes that a "trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." *Cf. Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 403, 663 P.2d 104 (1983), *citing Esmieu v. Schrag,* 88 Wn.2d 490, 498, 563 P.2d 203 (1977) (scope of care for trustees which possess fiduciary duties.).

[28] The Court also noted, "Plaintiffs suggest the duty of good faith required Chicago to undertake a separate investigation as to whether the signatures on the papers appointing Chase and Northwest as successor beneficiary

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 22 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Under RCW 61.24.030(7):

(a)… for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust.  A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

(b) [u]nless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.

In this case, Plaintiff seeks to impose additional requirements on trustees which are not present in the DTA, and implies that reliance on a beneficiary's declaration that is later shown to be inaccurate is – by itself – a violation of the good faith requirement.  Plaintiff, however, lacks legal authority for this reasoning.

**e.   NWTS did not violate its duty of good faith.**

Plaintiff alleges NWTS failed to act pursuant to the duty of good faith because 1) it was aware of false statements by OneWest when it prepared the Notice of Default and Appointment, 2) was aware of false statements by MERS when it prepared the Assignment, 3) there was a "preexisting relationship between two of the three parties," 4) that NWTS failed to reveal misrepresentations by OneWest and MERS in order to solicit future business from Defendant OneWest for NWTS and Routh Crabtree Olsen, and 5) NWTS violated its duty of good faith by failing to disclose it "was an affiliated entity relationship with Routh Crabtree Olsen" who was Defendant OneWest's collection agency and legal counsel."

As a threshold matter, if NWTS was never properly appointed the successor trustee, it owed *no* legal duty of good faith under RCW 61.24 to either Plaintiff or the purported beneficiary.

Nonetheless, as discussed *supra*, any hyper-technical deficiencies Plaintiff has identified in the Notice of Default, Appointment, Assignment, and Notices of Sale are either irrelevant given the expiration of the Notice of Sale or inconsequential as they offer no prejudice.

---

and trustee, respectively, were valid or forgeries.  While there is no binding authority discussing the scope of the statutory duty of good faith, Plaintiffs' view is unreasonable." *Id.* at *3.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 23 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Additionally, the evidence demonstrates that at all times OneWest was, in fact,

2   authorized to pursue the foreclosure and direct NWTS as an agent or trustee to take steps in

3   furtherance of the foreclosure and that NWTS was in receipt of information that it could

4   reasonably rely on to proceed with the foreclosure. Moreover, the evidence demonstrates that in

5   executing the Assignment MERS was authorized to act for its disclosed principal, OneWest.

6   Finally, Plaintiff has put forth nothing more than bare allegations of impropriety based on some

7   "affiliation" with a non-party or "pre-existing relationship." Plaintiff can cite no legal authority

8   or verified facts to support such a theory of liability, and it should be dismissed.

9        **4.  Plaintiff's claim for violation of the DTA fails as a matter of law as to MERS.**

10    Plaintiff alleges Defendant MERS assisted OneWest and NWTS in preparing for and

11   attempting to conduct an illegal non-judicial foreclosure by executing the Assignment. SAC, ¶

12   3.1.1. Plaintiff takes issue with the Assignment as he alleges it was signed by a known "robo-

13   signer" who was not a true employee of MERS. Plaintiff also alleges that the corporate

14   resolution previously provided by Defendants to evidence Brian Burnett's authority to sign on

15   behalf of MERS was inapplicable to the timeframe when he signed the subject Assignment.

16   Finally, Plaintiff takes issue with the language in the Assignment that purported to assign the

17   "note or notes therein described or referred to."

18    Defendants incorporate the argument as stated in Section (V)(B)(2)(d) of this brief.

19    Washington state courts recognize the ability of MERS to act as an agent of the note

20   holder beneficiary if MERS discloses the beneficiary (i.e., MERS's principal). *Bain v.*

21   *Metropolitan Mortgage Group, Inc.*, __ Wn.2d __, 2012 WL 3517326 *11 (2012). Moreover,

22   both federal district courts in Washington, the Bankruptcy Appellate Panel for the Ninth Circuit

23   Court of Appeals, and the Ninth Circuit Court of Appeals have recognized the propriety of

24   MERS' assigning its beneficial interest to the note holder. *See Salmon v. Bank of Am. Corp.*,

25   2011 WL 2174554, at *8 (E.D. Wash. 2011); *Klinger*, 2010 WL 5138478 at *7 (dismissing

26   Plaintiff's argument that an assignment of a deed by MERS is improper because MERS "has no

beneficial interest in the underlying Debt Obligation); *Daddabbo v. Countrywide Home Loans,*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 24 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Inc.*, 2010 WL 2102486 (W.D. Wash. 2010); *Vawter*, 707 F. Supp. 2d at 1125–26;[29] *Thomas v.*

2   *Saxon Mortgage Services, Inc., Adv. Proc. No. 10-01186-MLB (Bankr. W.D. Wash.)* (aff'd

3   *Thomas v. Saxon Mortgage Services, Inc.,* (9th Cir. B.A.P. April 30, 2012); *and see Cervantes*,

4   656 F.3d at 1042 ("[T]he disclosures in the deed indicate that MERS is acting 'solely as nominee

5   for Lender and Lender's successors and assigns.' . . . By signing the deeds of trust, the plaintiffs

6   agreed to the terms and were on notice of the contents.").

7       Moreover, even if Plaintiff could show that MERS acted without agency authority,

8   OneWest, as Note holder and principal could ratify MERS' conduct. "Ratification is the

9   affirmance by a person of a prior act which did not bind **\*208** him but which was done or

10  professedly done on his account, whereby the act ... is given effect as if originally authorized by

11  him." *In re Eicholz*, 310 B.R. 203, 207-08, 2004 WL 1170561 (W.D. Wash. 2004) (*citing Riss v.*

12  *Angel,* 131 Wash.2d 612, 636, 934 P.2d 669 (1997)). The principal ratifies the prior act if, with

13  full knowledge of the facts, he "accepts the benefits of the acts" or assumes that an obligation is

14  imposed. *Id.* And any conduct manifesting an intent to treat an unauthorized act as authorized,

15  such as failure to repudiate a contract, supports a finding of ratification. *Id.* (citing *Rayonier Inc.*

16  *v. Polson,* 400 F.2d 909, 915 (9th Cir.1968)).

17      Finally, Plaintiff lacks standing to challenge the assignment from MERS to OneWest

18  because he is not a party to or third-party beneficiary to the assignment. *See In re Mortg. Elec.*

19  *Reg. Sys. (MERS) Litig.*, 2011 WL 4550189, *4-5 (D. Ariz. 2011). As a stranger to the

20  assignment, Plaintiff cannot "demonstrate a concrete and particularized injury in fact that is

21  fairly traceable to the challenged assignment." *In re MERS Litig.*, 2011 WL 4550189, *5

22  (plaintiffs lacked standing to challenge assignments executed by MERS). Indeed, as long as

23  Plaintiff knew to whom to make his monthly payments, any assignment did not affect him in a

---

[29] *See also* See, e.g., *Corales v. Flagstar Bank, FSB*, --- F. Supp. 2d ---, No. C10–1922JLR, 2011 WL
4899957, *5 (W.D. Wash. Oct. 24, 2011); *St. John v. Northwest Trustee Services, Inc.*, No. C11-5382BHS, 2011
WL 4543658, *3 (W.D. Wash. Sept. 29, 2011); *Cebrun v. HSBC Bank USA, N.A.*, No. C10-5742BHS, 2011 WL
321992, *3 (W.D. Wash. Feb. 2, 2011); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102485, *5;
*Vawter*, 707 F. Supp. 2d at 1125-26; *Moon v. GMAC Mortgage Corp.*, 2008 WL 4741492 (W.D. Wash. 2008).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 25 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  legally cognizable way.  Id. ("as third-party borrowers, [Plaintiffs] are uninvolved and unaffected

2  by the alleged Assignments") (*citing Bridge v. Aames Cap. Corp.*, 2010 WL 3834059, *3 (N.D.

3  Ohio 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the

4  assignments does not affect whether Borrower owes its obligations, but only to whom Borrower

5  is obligated.")).  *See also In re Veal*, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011) ("[T]he

6  [borrower] should be indifferent as to who owns or has an interest in the note").

7  C.    **PLAINTIFF'S RESPA CLAIM.**

8         **1.    Plaintiff's RESPA claim under 12 U.S.C. §2605 fails as to OneWest.**

9         RESPA provides in pertinent part:

10            If any servicer of a federally related mortgage loan receives a qualified written
              request from the borrower (or an agent of the borrower) for information
11            relating to the servicing of such loan, the servicer shall provide a written
              response acknowledging receipt of the correspondence within 20 days
12            (excluding legal public holidays, Saturdays, and Sundays) unless the action
              requested is taken within such period.
13
14  12 U.S.C. § 2605(e)(1)(A).

15         A "Qualified Written Request" ("QWR") is defined as a written document including the

16  name and account of the borrower and "includes a statement of the reasons for the belief of the

17  borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

18  servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A loan

19  servicer has the duty to act when it receives a QWR "for information relating to the servicing of

20  the loan." 12 U.S.C. § 2605(e)(1)(A); *see also Joern v. Ocwen Loan Servicing, LLC*, CV-10-

21  0134-JLQ, 2010 WL 3516907 (E.D. Wash. Sept. 2, 2010).

22         Plaintiff asserts violations of 12 U.S.C. § 2605 based on allegations that he served a

23  purported Qualified Written Request ("QWR"), Dispute of Debt ("Dispute"), and Debt

24  Validation Demand ("DVD") on Defendants on April 27, 2010. Plaintiff further asserts MERS

25  never responded and OneWest responded to Plaintiff advising that Freddie Mac was the investor

26  on the loan and provided Plaintiff copies of the Note, Deed of Trust, and payment history.

    Plaintiff asserts, however, that OneWest did not provide a "chain of title" for the Note or Deed of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 26 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Trust, any accounting records, purchase agreements, or other information Plaintiff has requested. Based on the foregoing allegations, Plaintiff concludes that 1) Defendant OneWest violated 12 USC § 2605(e)(2)(C)(1) "by refusing to provide the requested information regarding Plaintiff's loan or providing a reason for the inability the information was unavailable other than it was burdensome in their letter to Plaintiff on May 18, 2010" (SAC, ¶ 3.2.1); 2) that Defendant OneWest violated RESPA § 2605(e)(3) when it failed to adequately respond to Plaintiff's QWR (SAC, ¶ 3.2.5), and 5) that Defendant OneWest violated 12 USC § 2605(e)(3) by continuing to report derogatory information to the credit bureaus during the 60 days they had to review Plaintiff's QWR (SAC, ¶ 3.2.6).

Plaintiff attached as Exhibit 10 to the SAC copies of his QWR, Dispute, and DVD. Plaintiff's QWR, Dispute, and DVD includes of list of 198 demands, which encompass every request imaginable to address Plaintiff's formal "complain[t] about intentional accounting omissions and probable fraud in the factum that took place at the closing in the purchase of my home." *See* SAC, Exhibit 10. Plaintiff's demands provide that "[i]n order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan." Plaintiff goes on to list his voluminous 198 demands. *See* SAC, Exhibit 10.

Recently Washington courts, in analyzing RESPA claims relating to the alleged non-response or insufficient response to a borrower's alleged QWR, have held that where a borrower's request is related to allegations of underlying fraud or mischief in the transaction, fail to contain specific reasons why they feel their account was in error, put forth a general inquiry regarding the account with broad requests for several categories of documents, and are so voluminous so as to demand "anything and everything that relates to their loan, from its inception, as well as to the Deed of Trust," such letters do not assist the servicer in identifying and investigating any purported discrepancies with the servicing of the loan. *See Bhatti v. Guild Mortg. Co.*, C11-0480JLR, 2011 WL 6300229 (W.D. Wash. Dec. 16, 2011); *Eifling v. National City Mortg.*, 2011 WL 893233 (W.D.Wash.2011); *and see Segle v. PNC Mortg.*, 10-5655RJB,

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  2011 WL 1098936 (W.D. Wash. Mar. 25, 2011). And, "such broad requests for information and

2  documentation related generally to Plaintiffs' loan are not covered by section 2605 of Title 12."

3  *Bhatti* (citing *Derusseau v. Bank of Am., N.A.,* No. 11 CV 1766 MMA (JMA), 2011 WL

4  5975821, at *4 (S.D.Cal. Nov.29, 2011); *Rymal v. Bank of Am.,* No. CV 10–00280 DAE–BMK,

5  2011 WL 6100979, at *4 (D.Hawai'i Dec.6, 2011) (dismissing complaint for failing to

6  adequately allege facts to establish that request was "qualified written request" under RESPA);

7  and *Lettenmaier v. Fed. Home Loan Mortg. Corp.,* No. CV–11–156–HZ, 2011 WL 3476648, at *

8  12 (D.Or. Aug.8, 2011) (dismissing a RESPA claim because plaintiffs failed to "attach a copy of

9  their correspondence to the Complaint or to allege facts showing the communication concerned

10  servicing of the loan as defined by the statute")).

11          As the *Bhatti* Court noted, section 2605 only requires loan servicers to respond to a

12  proper qualified written request by correcting the account discrepancy, explaining why the

13  account is correct, or if the information is unavailable, by providing contact information for

14  someone who can assist the borrower with her inquiry. *See* 12 U.S.C. §§ 2605(e) (2)(A)-(C).

15  And, as the *Segle* Court noted, a "QWR" that largely serves as a repudiation of the national

16  lending industry does not meet the first portion of the definition of a QWR. *Segle* at *6.

17          Here, like the letters in *Bhatti* and *Segle*, Plaintiff's QWR, Dispute, and DVD "far exceed

18  the scope of information" OneWest is required to provide in a response. And, Plaintiff's letter

19  appears to be more akin to a repudiation of the lending industry than a letter including specific

20  reasons he believes the account to be in error. OneWest had no statutory obligation under

21  RESPA to provide Plaintiff "the extraordinary amount of information and documents" he

22  requested in his letters. *Bhatti*; see also *See Derusseau,* 2011 WL 5975821, at *4. Plaintiff

23  concedes OneWest responded within the required time frame, provided a payment history so as

24  to verify the payments made on the account as well as copies of the Note and Deed of Trust.

25  Given that Plaintiff's QWR did not meet the definition of a QWR, OneWest was under no

26  obligation to respond. To the extent Plaintiff's letter could be construed as a QWR, Defendant

OneWest satisfied its obligation in responding and providing information to validate the debt.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 28 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

### 2.   Plaintiff's RESPA claim under 12 USC § 2605(e)(3) fails as to OneWest.

2      12 U.S.C. § 2605(e)(3) provides that during the 60-day period beginning on the date of

3  the servicer's receipt from any borrower of a qualified written request relating to a dispute

4  regarding the borrower's payments, a servicer may not provide information regarding any

5  overdue payment, owed by such borrower and relating to such period or qualified written

6  request, to any consumer reporting agency (as such term is defined under section 1681a of Title

7  15).

8      Plaintiff alleges that OneWest violated 12 U.S.C. § 2605(e)(3) by continuing to report

9  derogatory information to the credit bureaus during the 60 days they had to review Plaintiff's

10  QWR. SAC, ¶ 3.2.6.

11      Because Plaintiff's request did not meet the definition of a QWR, the duties under 12

12  U.S.C. § 2605(e)(3) to refrain from reporting derogatory information to credit reporting agencies

13  were not triggered

14  ### D.   PLAINTIFF'S FAIR DEBT COLLECTION PRACTICES ACT CLAIM.

15      Here, the Court has determined that a claim under the FDCPA could only be plausible

16  pursuant to an allegation under 15 U.S.C. § 1692f(6).

17      For purposes of Section 1692f(6), a debt collector is "any person who uses any

18  instrumentality of interstate commerce or the mails in any business the principal purpose of

19  which is the enforcement of security interests." 15 U.S.C. 1692a(6). Section 1692f(6) prohibits a

20  debt collector from taking or threatening to take "non-judicial action to effect dispossession or

21  disablement of property if – (A) there is no present right to possession of the property claimed as

22  collateral through an enforceable security interest; (B) there is no present intention to take

23  possession of the property; or (C) the property is exempt by law from such dispossession or

24  disablement.

25      As the Court has noted, Plaintiff's theory under the FDPCA is that neither NWTS or

26  OneWest has the present right to possession of the property through nonjudicial foreclosure

because neither they nor their principals were the holders of the Note.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 29 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

**1. Plaintiff's claim under the FDCPA as to OneWest fails as a matter of law.**

2

OneWest is not a debt collector under the FDCPA. The FDCPA excludes from its

3

definition of a "debt collector" "any person collecting or attempting to collect any debt owed or

4

due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt

5

which was not in default at the time it was obtained by such person."  15 U.S.C. §

6

1692a(6)(F)(iii) (emphasis added).  As a result, the Ninth Circuit recently held that a defendant

7

who acquired the debt before it went into default cannot constitute a "debt collector" under the

8

FDCPA.  *De Dios v. Int'l Realty & Invs.,*  641 F.3d 1074-175 (9th Cir. 2011).

9

In *De Dios v. International Realty Investments*, plaintiff, a tenant, stopped making his

10

rent payments when the landlord increased the rent.  641 F.3d at 1073.  Subsequently, in

11

February 2006, the property went into receivership and defendant became a court-appointed

12

receiver, tasked with managing the property. *Id.* at 1073-74.  In June 2006, defendant and the

13

property owner agreed defendant would continue to manage the property. *Id.* at 1073.

14

Meanwhile, in 2006 plaintiff and other tenants that had sued the property owner over the rent

15

disputes entered a stipulated forbearance, under which plaintiff did not have to pay the increased

16

rent pending resolution of the claims. *Id.*  On July 1, 2007, the court struck plaintiff's rent claims

17

and the parties negotiated a rent increase. *Id.* at 1073-74.  Following those events, defendant sent

18

plaintiff a letter seeking the accrued rent during the forbearance period.  Plaintiff sued for

19

FDCPA violations.  On appeal, the Ninth Circuit affirmed the district court's grant of summary

20

judgment for defendant because plaintiff's debt was not in "default" when defendant acquired it.

21

*Id.* at 1074-75.  The Court so concluded because defendant acquired the debt in February 2006,

22

when it became the receiver, but plaintiff's debt did not go into "default" until the court struck

23

her rent claims in July 2007. *Id.* at 1074-75.  Thus, the Court found defendant "exempt from the

24

definition of a 'debt collector' under § 1692a(6)(F)(iii)." *Id.* at 1075.

25

Similarly here, no issue of fact exists that OneWest became the note holder before

26

Plaintiff's default.  Thus, the FDCPA exempts OneWest from its definition of debt collector.

Plaintiff obtained his loan from Indymac Bank, FSB. Boyle Decl., ¶ 3. IndyMac Bank, FSB

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 30 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

endorsed the note in blank. OneWest took possession of the blank endorsed Note on or about

March 19, 2009. Boyle Decl., ¶ 11. Plaintiff then defaulted on October 1, 2009. Thus, OneWest

became the Note holder approximately five months prior to Plaintiff's default. As a result, the

FDCPA expressly excludes OneWest from its definition of a "debt collector," and the Court

should grant OneWest's motion for summary judgment, dismissing this claim.  15 U.S.C. §

1692a(6)(F)(iii); *De Dios*, 641 F.3d at 1074-75; *see also Corales v. Flagstar Bank, FSB*, 822 F.

Supp. 2d 1102, 1112 (W.D. Wash. 2011) ("Plaintiffs cannot state a plausible claim under the

FDCPA because the FDCPA does not apply to lenders acquiring debt before default.") (*citing De

Dios*, 641 F.3d at 1074); *Allen v. United Fin. Mortg. Corp.*, 2010 WL 1135787, *6 n.7 (N.D. Cal.

2010) (mortgage servicer assigned debt before it went into default not a debt collector under the

FDCPA).

        Moreover, OneWest does not meet the FDCPA's definition of "debt collector" for two

additional reasons. First, "[t]he legislative history of [the FDCPA] indicates conclusively that a

debt collector does not include the consumer's creditors."  *Gentsch v. Ownit Mortg. Solutions*,

2009 WL 1390843, *7 (E.D. Cal. 2009) (*citing Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208

(5th Cir. 1985), mod. on other grounds, 761 F.2d 237 (5th Cir. 1985)) (emphasis added); *see also

Brooks v. Citibank NA*, 345 Fed. Appx. 260, 262 (9th Cir. 2009) (same). And second, although

the Ninth Circuit has not ruled on whether the FDCPA encompasses nonjudicial foreclosures,

several district courts in the Ninth Circuit have concluded that lenders (and foreclosure trustees)

engaging in foreclosure are not "debt collectors" because they do not seek to collect money;

instead, they seek to enforce a secured interest (the Deed of Trust) to gain property.  *See, e.g.,

Miller v. Nw. Tr. Servs., Inc.*, 2005 WL 1711131, *3 (E.D. Wash. 2005) (*citing Hulse v. Ocwen

Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)); *Fong v. Prof'l Foreclosure Corp.*,

2005 WL 3134059, *2 (W.D. Wash. 2005).  Indeed, Washington law bars deficiency judgments

against borrowers after nonjudicial foreclosure.  *See* RCW 61.24.100(1); *In re Hale,* 359 B.R.

310, 319 (Bankr. E.D. Wash. 2007) ("When [the creditor] elected to foreclose non-judicially, it

also elected to waive any right to collect a deficiency from the debtors should the value of the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 31 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    property be less than the obligation."); *Fluke Cap. & Mgmt. Servs. v. Richmond*, 106 Wn.2d 614,

2    624 (1986) (the "remedies of a creditor who chooses nonjudicial procedures are limited to

3    foreclosure alone").

4            **2.   Plaintiff's claim under the FDCPA as to NWTS fails as a matter of law.**

5            The contention that NWTS "did not have a right to possession of the subject real

6    property" is legally flawed, however, and therefore fails to bring NWTS within the requirements

7    of the FDCPA.  In order for a claim under section 1692f(6) to suceed, as a matter of law,

8    Plaintiff would need to establish not only that NWTS was enforcing a security interest, but also

9    that NWTS was threatening to effectuate dipossession of the Property where there was no

10   present right to possess the collateral. An examination of the nature of a nonjudicial foreclosure

11   proceeding reveals that allegations NWTS did not have a "right to possession" fails as a matter

12   of law.

13           The act of enforcing a security interest is not an action to effect dispossession of property

14   or assert a present right to possession. Nonjudicial foreclosure is "a process where property that

15   secures a defaulted obligation is sold by a trustee pursuant to [the] power of sale contained in a

16   deed of trust, without recourse to the courts." *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097,

17   1105 (9th Cir. 1998). The conduct of NWTS in this case is therefore limited to that which they

18   are permitted to accomplish under the terms of the Note and Deed and pursuant to the DTA in

19   enforcing the security interest. A nonjudicial foreclosure proceeding is not an action wherein the

20   trustee or beneficiary are effecting dispossession of property or asserting a present "right to

21   possess." Rather, a nonjudicial foreclosure action in Washington is an action to establish title to

22   the property. In Washington, "[t]he trustee holds an interest *in the title* of the grantor's property

23   on behalf of the lender." *Vawter,* 707 F. Supp. 2d at 1123. (Emphasis added).  This concept is

24   also highlighted by the DTA's third public policy objective, which is to promote the stability of

25   land titles.  *Cox v. Helenius*, 693 P.2d 683 (1985).

26           The effectuating of "dispossession" of the property and the "right to possess" the

property occurs only **after** the foreclosure process has completed.  A sale through nonjudicial

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

foreclosure conveys to the purchaser at the sale the rights, title, and interest possessed by the grantor, or borrower, when the borrower originally executed the deed of trust to the grantee, or lender. *See* RCW 61.24.050. Specifically, "the trustee sells the property at auction, the purchaser pays the price bid, and the trustee executes the deed to the purchaser *at which time* 'all of the right, title, and interest' in the property is conveyed." *Udall v. T.D. Escrow Services, Inc.*, 154 P.3d 882, 887 (Wash. 2007) (Emphasis in original). Moreover, the statutory scheme of the DTA grants the purchaser at a trustee's sale the *right to possession* on the twentieth day following the sale. RCW 61.24.060. Given the foregoing, any claim under section 1692f(6) fails as a matter of law because NWTS was neither "taking or threatening to take any nonjudicial action to effect dispossession or disablement" of the Property by virtue of its actions to effectuate the foreclosure nor was it asserting a "present right to possess" the Property via enforcement of the security interest. A logical extension of this argument (essentially that NWTS violated the FDCPA by adhering to the requirements of the DTA in effectuating nonjudicial foreclosure) would lead to every nonjudicial foreclosure proceeding in Washington resulting in a *per se* violation of the FDCPA. Such an attempt to stretch the law is without merit. Therefore, NWTS' conduct as successor trustee does not fall within Section 1692f(6) of the FDCPA and Plaintiff's claim fails as a matter of law.

Given that none of Plaintiff's contentions under the FDCPA can succeed as a matter of law, it appears as though the Plaintiff's allegations under the FDCPA have been construed as a collateral attack on NWTS' authority to act as foreclosure trustee in this case. To the extent that Plaintiff's FDCPA claims are premised upon NWTS' authority to act as foreclosure trustee, the claims fail as a matter of law.  NWTS' authority to act is described *supra* in Section B(3)(a)-(e).

**E.    PLAINTIFF'S CONSUMER PROTECTION ACT CLAIM.**

The five elements of a Consumer Protection Act (CPA) claim under RCW 19.86 are: (1) an unfair or deceptive act or practice, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) an injury to the plaintiff's business or property, and (5) a causal link between the unfair or deceptive act or practice and the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 33 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 719 P.2d 531 (1986). Failure to meet any one of these elements is fatal and necessitates dismissal. *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002). "[W]hether a particular action gives rise to a CPA violation is reviewable as a question of law." *Columbia Physical Therapy Inc., P.S. v. Benton Franklin Orthopedic Assoc., P.L.L.C.*, 168 Wn.2d 421, 228 P.3d 1260 (2010), *citing Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 930 11 P.2d 288 (1997).

"Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App. 210, 135 P.3d 499 (2006). But "acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang*, *supra*. at 155.

Plaintiff can meet the first CPA element in only two ways: he may show either that an act or practice (i) "has a capacity to deceive a substantial portion of the public," or (ii) that "the alleged act constitutes a per se unfair trade practice." *See Saunders v. Lloyd's of London*, 113 Wn.2d 330 (1989), *quoting Hangman*, *supra*.[30]

The third factor articulated in *Hangman Ridge* also requires "a showing of impact to public interest separate and apart from showing an unfair and deceptive act." *Holiday Resort*, *supra*. at 226, *citing Hangman Ridge*, *supra*. Courts may look to a number of factors, including:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.*

In a private dispute, it is more difficult to show public interest. *Hangman Ridge*, *supra*. at 790; *see also Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009) (dismissing CPA claim where defendant did not advertise to the general public).

"Mere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim.

---

[30] An unfair trade practice "requires a showing that a statute has been violated which contains a specific legislative declaration of the public interest impact." *Hangman*, 105 Wn.2d at 791. Plaintiff does not allege that either.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing*

2   *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006).

3   Instead, the test to determine the public interest requirement is based upon the context of the

4   practice. "Where the transaction was essentially a consumer transaction... these factors are

5   relevant to establish [a] public interest… (1) Were the alleged acts committed in the course of

6   defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3)

7   Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and

8   substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If

9   the act complained of involved a single transaction, were many consumers affected or likely to

10   be affected by it?" *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*

11   162 Wn.2d 59, 170 P.3d 10 (2007).

12        Under the fourth *Hangman Ridge* factor, the alleged acts must also result in injury to

13   Plaintiff. *See Hangman Ridge* at 792, *citing Cooper's Mobile Homes, Inc. v. Simmons,* 94

14   Wn.2d 321, 617 P.2d 415 (1980). The injury must be expressly "*by*" a violation of RCW

15   19.86.020, meaning that "but for" a defendant's conduct, the alleged injury would not have

16   occurred. *See Carlile v. Harbour Homes, Inc.*, 147 Wn.App. 193, 194 P.2d 280 (2008).

17        Even if Plaintiff did somehow allege facts supporting the other four elements of a CPA

18   claim, the final *Hangman Ridge* factor requires that he also allege a causal link between a

19   defendant's unlawful actions and a resulting injury. *See Indoor Billboard*, *supra*.

20        The State Supreme Court has clarified that reliance on false or deceptive acts is not an

21   element under the CPA; rather, the Court concluded that "where a defendant has engaged in an

22   unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact,

23   our case law establishes that there must be some demonstration of a causal link between

24   misrepresentation and the plaintiff's injury." *Indoor Billboard*, 162 Wn.2d at 81-82. A plaintiff

25   must demonstrate that the "injury complained of ... would not have happened" if not for

26   defendant's acts. *Id.* at 82.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   **1.  Plaintiff's claim under the Consumer Protection Act fails as a matter of law**

2   **as to OneWest and MERS.**

3          Plaintiff alleges OneWest violated the Consumer Protection Act by participating in and

4   causing NWTS to initiate a nonjudicial foreclosure when OneWest knew it did not have

5   ownership of note. And, Plaintiff alleges MERS violated the CPA by assigning ownership to a

6   note it knew it did not own and by assigning beneficiary status to the deed of trust it knew not to

7   be the note holder which, in turn, kept plaintiff from learning the identities of the real party in

8   interest.

9          ***Deceptive Act or Practice.*** As a matter of law, any representation about ownership of the

10  underlying loan is "largely immaterial" under both case law and the U.C.C., and therefore is not

11  of "material importance" so as to qualify as deceptive. *In re Reinke,* 2011 WL 5079561 at *11;

12  *see also Amresco Independence Funding, Inc.*, 119 P.3d 884, 886–87; *and see Koegel*, 752 P.2d

13  385, 388. With no deceptive act or practice, Plaintiff's CPA claim fails as a matter of law. Again,

14  OneWest and MERS concede that any purported transfer of an interest in the Note by the MERS

15  assignment of deed of trust was ineffective. Yet, given OneWest's possession of the Note, it was

16  entitled to enforce, and the language in the assignment resulted in no prejudice to Plaintiff.

17         ***Public Interest Impact.*** Plaintiff cannot show a public interest impact. Plaintiff puts forth

18  speculative assertions as to how OneWest's conduct has caused home values decrease and

19  creates risk and **potential** losses for buyers at trustee auctions. However, Plaintiffs allegations

20  completely speculative and are not support by any shred of evidence. Here, Plaintiff has alleged

21  nothing more than facts relating to his own foreclosure and therefore has plead nothing to

22  support claims of decreased home values or losses for buyers. As "[m]ere speculation that an

23  alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is

24  insufficient to survive summary judgment" on a CPA claim, Plaintiff's claim fails. *Brown ex rel.*

25  *Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing Westview Invs.,*

26  *Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn. App. 835, 854 n. 27, 138 P.3d 638 (2006).

           ***Damages.*** Plaintiff claims he has been damaged in the following manner as a result of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 36 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

OneWest's CPA violation as described above: 1) title to the property has been clouded, 2) his credit report has been damaged, and 3) he has suffered punitive injury by forcing him to continue this litigation.

It is unclear how a representation of who owns the underlying loan constitutes a cloud on title. Nonetheless, any cloud on title has little effect on plaintiff, the defaulting borrower on a property currently in foreclosure. Upon foreclosure, Plaintiff's interest in the property will be extinguished. Thus, the condition of title is of no relevance to Plaintiff.

Additionally, it is unclear how a representation of who owns the loan would damage Plaintiff's credit report. Any damage to Plaintiff's credit is a direct result of his failure to make good on his commitment to repay his loan.

Finally, Plaintiff appears to have confused the parties' roles in this lawsuit. Plaintiff filed this lawsuit, and Defendants are entitled to put on a defense. In fact, it is only Plaintiff who has unilateral authority to cause the litigation to cease, not Defendants.

In sum, as a matter of law, Plaintiff cannot prove necessary elements to prevail on his CPA claim as to OneWest and therefore OneWest is entitled to summary judgment in its favor.

> **2. Plaintiff's claim under the Consumer Protection Act fails as a matter of law as to NWTS.**

Plaintiff alleges that NWTS violated the CPA when it began its duties as trustee after having already been a witness and participant of Defendants MERS and OneWest filing misrepresentations to the ownership of the note and that it was aware MERS was not the owner yet but caused the Assignment to be recorded and that it knew OneWest was not the owner/beneficiary of the Note but continued with the foreclosure.

> **a. <u>Deceptive Act or Practice</u>.**

Plaintiff cannot show any deceptive act or practice by NWTS. As discussed at length *supra*, neither OneWest nor MERS need to be the owner of the note to take action in furtherance of a foreclosure. Moreover, as discussed *supra*, a representation as to note ownership is immaterial. Finally, "acts performed in good faith under an arguable interpretation of existing

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 37 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  law do not constitute unfair conduct violative of the consumer protection law." *Leingang*, *supra*.

2  at 155. Thus, even if Plaintiff could show that ownership was somehow material, there is nothing

3  to suggest to NWTS' conduct was anything beyond acts performed in good faith under an

4  arguable interpretation of existing law.

**b.  Public Interest Impact.**

6  Plaintiff cannot show a public interest impact. Plaintiff puts forth grand speculation as to

7  how NWTS' conduct effects thousands of Washington homeowners, potential real estate buyer,

8  and investors and that they conduct has made home values decrease. However, Plaintiffs

9  allegations completely speculative and are not support by any shred of evidence. Plaintiff has

10  alleged nothing more than facts relating to his own foreclosure. And, while Plaintiff can

11  speculate, "[m]ere speculation that an alleged unfair or deceptive act had the capacity to deceive

12  a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim.

13  *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing*

14  *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n,* 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006).

**c. Damages.**

16  Plaintiff claims he has been damaged in the following manner as a result of NWTS' CPA

17  violation as described above: 1) title to the property has been clouded, 2) **if** the sale goes

18  forward, he will lose his home, and, 3) he has suffered stress, loss of sleep, and illness.

19  As with the damages claimed against OneWest, Plaintiff has failed to show any injury to

20  himself as a result of an apparent cloud on title. Moreover, Plaintiff's statement of damages

21  touches on something of great importance, **if** the property is sold, he will lose his home. As

22  Plaintiff concedes, the property has not been sold, and therefore he has suffered no injury. Courts

23  have agreed that were no sale of the property has actually occurred, a borrower plaintiff cannot

24  show he is damaged by conduct to carry out the nonjudicial foreclosure. *In re Reinke*, BR 09-

25  19609, 2011 WL 5079561 (Bankr. W.D. Wash. Oct. 26, 2011). Moreover, courts have agreed

26  that mental distress alone does not establish injury to support a CPA claim. *Id. (citing Stephens v.*

*Omni Ins. Co.*, 138 Wn. App. 151, 180, 159 P.3d 10, 2007 WL 1180497 (2007) *aff'd sub nom.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 38 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 204 P.3d 885, 2009 WL 866274

2   (2009)). Finally, incurring time and money to prosecute a CPA claim does not suffice as an

3   injury to business or property. *Id. (citing Sign–O–Lite Signs, Inc. v. DeLaurenti Florists, Inc.,* 64

4   Wash.App. 553, 563, 825 P.2d 714 (1992)).

5      Here, Plaintiff has, in fact, received the benefit of living in the home for well over two

6   years without making even one mortgage payment. This alone, counters any damage he has

7   suffered as a result of a hyper-technical error in the documentation supporting the foreclosure.

8      Accordingly, Plaintiff cannot prove necessary elements to support his CPA claim and

9   NWTS is entitled to summary judgment.

10  **F. PLAINTIFF'S FRAUD CLAIM.**

11     **1. Legal Standard for Fraud.**

12     To sustain a finding of common law fraud in Washington, the trial court must make

13  findings of fact as to each of the nine elements of fraud. *Howell v. Kraft,* 10 Wn. App. 266, 517

14  P.2d 203 (1973). The elements of fraud are (1) a representation of an existing fact; (2) its

15  materiality; (3) its falsity; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that it

16  be acted upon by the person to whom it is made; (6) ignorance of the falsity on the part of the

17  person to whom the representation is addressed; (7) the latter's reliance on the truth of the

18  representation; (8) the right to rely upon it; and (9) consequent damage. *Chen v. State,* 86 Wn.

19  App. 183, 188, 937 P.2d 612 (1997). Each element of fraud must be proven by clear, cogent, and

20  convincing evidence. *Id.*

21     An essential element of a fraud claim under Washington law is that the plaintiff suffers

22  consequent damage from the fraud. *See Blanton v. Mobil Oil Corp.,* 721 F.2d 1207, 1218 (9th

23  Cir. 1983); *see also A.B.C. Packard, Inc. v. General Motors Corp.,* 275 F.2d 63, 71 (9th Cir.

24  1960) ("The burden is on the plaintiff to prove all essential elements, and the absence of any of

25  them is fatal to a recovery").

26  //

 //

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 39 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

**2.  Plaintiff's Fraud claim fails as a matter of law as to OneWest, NWTS, and**

2  **MERS.**

3  **a.  "Falsities" identified by Plaintiff are immaterial.**

4  Plaintiff cannot maintain a fraud claim because he has not identified any material

5  representation upon which he relied, has not demonstrated knowledge of the immaterial falsities

6  he alleges, has not demonstrated intent, and has not demonstrated damages casually linked to the

7  alleged immaterial falsities.

8  Plaintiff's fraud claim is premised on alleged falsities he has discovered relating to the

9  Notice of Default, Notice of Trustee's Sale, Amended Notice of Sale, Appointment, and

10  Assignment.

11  As Plaintiff alleges, the falsities includes (1) statements that OneWest was the Owner and

12  Beneficiary, (2) erroneous statements regarding charges by NWTS in the Notice of Sale and

13  Amended Notice of Sale, and (3) language relating to "transfer of the note" in the assignment of

14  deed of trust by MERS to OneWest.

15  As discussed at length *supra*, OneWest is a beneficiary entitled to enforce the Note and

16  Deed of Trust and the issue of ownership is immaterial.

17  **b.  Plaintiff has not identified any damages suffered casually linked to**

18  **the alleged falsities.**

19  Washington courts require a causal connection between the alleged omission and the loss.

20  *First Maryland Leasecorp v. Rothstein,* 72 Wn. App. 278, 282, 864 P.2d 17 (1993) ("In damage

21  actions based on common law fraud, a party is entitled to judicial relief only if damages have

22  occurred as a consequence of the fraudulent acts").

23  Plaintiff alleges the following damages in support of his fraud claim: (1) Plaintiff now

24  has an illegal foreclosure on his credit report, which has reduced his ability to obtain credit and

25  job opportunities; (2) Plaintiff has had to turn away from his life and career to "fight the fraud"

26  resulting in loss of income; and (3) title to the Property has been clouded.

First, as discussed *supra*, damage to Plaintiff's credit report is a direct result of Plaintiff's

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 40 OF 48
CASE NO. C10-1952 RSL

Routh
Crabtree
Olsen, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  undisputed default on the underlying loan. Even if Plaintiff could show that any of the

2  representations he complains of were materially false, he cannot show a causal link to his

3  damaged credit. Neither NWTS nor MERS (and there are no allegations to suggest otherwise)

4  report to credit agencies, and while OneWest has reported Plaintiff's account in default, Plaintiff

5  does not dispute this his account has been in default since October 1, 2009.

6      Second, like his CPA claim, Plaintiff cannot claim damages for time he incurred to

7  pursue a meritless fraud claim. *See e.g., In re Reinke*, BR 09-19609, 2011 WL 5079561 (Bankr.

8  W.D. Wash. Oct. 26, 2011); *see also Sign–O–Lite*, 64 Wash.App. at 564, 825 P.2d 714.

9      Third, there is no requirement that a transfer of ownership of the underlying note be

10  recorded, and, in practice, ownership of promissory notes is not tracked through county property

11  records. Thus, any declaration of ownership or transfer of ownership would have no effect on the

12  condition of title, and would have no impact on those who are intended to benefit from county

13  property records, third party purchasers, investors, buyers…not the defaulting borrower like

14  Plaintiff. Moreover, any cloud on title has little effect on the defaulting Plaintiff as his interest in

15  the property will be extinguished upon the foreclosure. Again, the condition of title is of no

16  relevance to Plaintiff and cannot have caused any injury to Plaintiff.

17  **G.    PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.**

18      Under Washington law, a plaintiff proves a civil conspiracy by showing "by clear, cogent

19  and convincing evidence that (1) two or more people contributed to accomplish an unlawful

20  purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the

21  conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v.

22  State of Washington,* 84 Wn. App. 332, 350–51, 929 P.2d 448 (1996).  Because the conspiracy

23  must be combined with an unlawful purpose, civil conspiracy does not exist independently—its

24  viability hinges on the existence of a cognizable and separate underlying claim. *N.W. Laborers–

25  Employers Health & Sec. Trust Fund v. Philip Morris. Inc.,* 58 F.Supp.2d 1211, 1216

26  (W.D.Wash.1999). A conspiracy claim fails if the underlying act or claim is not actionable. *Id.*;

*Wilson v. State,* 84 Wash. App. 332, 350–51, 929 P.2d 448 (1996).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Plaintiff's civil conspiracy claim is premised on the allegation that OneWest, NWTS, and MERS conspired together to initiate and execute an unlawful nonjudicial foreclosure against Plaintiff by filing false documents and executing false statements in the Notice of Default, Notice of Trustee Sale,  Amended Notice of Sale, Appointment, and Assignment. In other words, Plaintiff's civil conspiracy claim is premised on the same allegations that support Plaintiff's claims for DTA violations, CPA violations, and Fraud. However, because none of the aforementioned claims are actionable as a matter of law, Plaintiff's civil conspiracy claim fails as well. Moreover, as the evidence demonstrates, the foreclosure was not unlawful or wrongful. OneWest held the Note and was therefore authorized to enforce the Note and Deed of Trust notwithstanding an assignment of deed of trust or a "declaration of" or showing of ownership." RCW 62A.3-205(b); RCW 61.24.005(2). Plaintiff simply cannot establish OneWest falsely represented the identity of the beneficiary. Compl. ¶¶ 3.8-3.8.3.4. Similarly, Plaintiff cannot state a claim based on the Notice of Default and Appointment of Successor Trustee because OneWest could, as it did, direct NWTS to issue the Notice of Default as OneWest's "agent," and subsequently appointed NWTS as successor trustee. *See* RCW 61.24.030, .031, .040. Accordingly, the claim fails as a matter of law.

## H.    PLAINTIFF'S SLANDER OF TITLE CLAIM.

To prevail on a claim for slander of title, plaintiff must prove the following that the alleged slanderous statements were: (1) false; (2) maliciously published; (3) spoken with reference to some pending sale or purchase of the property; (4) resulting in a pecuniary loss or injury to the claimant; and (5) be such as to defeat the claimant's title. *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 375, 617 P.2d 704 (1980).

Plaintiff's slander of title claim fails because Plaintiff cannot demonstrate malice or any injury or loss.

"Malice is not present where the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity." *Brown,* 94 Wn.2d at 375.

In *Brown,* an action was initiated against Safeway for an alleged breach of a written

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   lease. *Brown,* 94 Wn.2d at 362. Safeway claimed the action constituted slander of title

2   precluding a proposed sublease to a third party. *Brown,* 94 Wn.2d at 363. The court held "[t]he

3   initiation of litigation to determine the rights of the respective parties to a lease cannot, without

4   more, be characterized as malicious conduct." *Brown,* 94 Wn.2d at 375. Likewise, the initiation

5   of foreclosure proceedings cannot be deemed malicious in the context of a bona fide dispute over

6   mortgage payments. *See, e.g., Hulse v. Owen Fed. Bank, FSB,* 195 F.Supp.2d 1188, 1208 (2002).

7          By Plaintiff's own allegations of damages, it is clear that Plaintiff has, in fact, suffered no

8   damages. The property has not been sold, and therefore Plaintiff has incurred no loss. An

9   allegation of what may occur is not sufficient to demonstrate actual damages. And, as discussed

10  *supra,* the damages Plaintiff would suffer as a result of the foreclosure moving forward are a

11  direct result of his default. As necessary elements to support the claim are missing, Defendants'

12  slander of title claim fails.

13  **I.      THERE IS NO FURTHER BASIS FOR AN INJUNCTION.**

14         The power to modify, continue, or dissolve a temporary or permanent injunction, whether

15  preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court,

16  according to the facts and circumstances of the particular case, and its action in exercise of that

17  discretion will not be disturbed on appeal in the absence of a clear showing of abuse. *United*

18  *States v. Swift & Co.*, 286 U.S. 106, 114 (1932). The dissolution of a preliminary injunction, a

19  temporary or provisional injunction or restraining order, or the modification of an injunction or

20  restraining order is largely a matter of judicial discretion to be determined by the facts of each

21  particular case. *Id.* The court is charged with the same exercise of discretion it exercised in

22  granting or denying injunctive relief. *Id*. While the power exists to modify or dissolve an

23  injunction, courts generally only do so when there is a change in the operative facts, a change in

24  decisional law, or a change in statutory law. *Bedford v. Sugarman*, 112 Wn.2d 500, 505 (1989).

25         In the Preliminary Injunction, the court noted that based upon what was before the court

26  as of the date of entry, the court had not been able to determine 1) whether OneWest had

    authority to appoint a successor trustee on January 27, 2010, 2) whether the Notice of Default

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 43 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    complied with the statutory requirements, and 3) whether OneWest is the beneficiary as defined

2    by the DTA. *See* Dkt. 24.

3        Moreover, as the court noted in its Order Denying Plaintiff's Motion for Relief from

4    Preliminary Injunction, Plaintiff has failed to comply with the terms of the Preliminary

5    Injunction by failing to make any payment since May 13, 2011. As the court further noted,

6    unless the Plaintiff brings his registry account current for payments due June 2011 through

7    March 2012 by April 2, 2012, the injunction will be lifted. Dkt. 94.

8        Moreover, in support of this motion, Defendant OneWest has submitted a Declaration

9    attesting to the fact that OneWest took possession of Plaintiff's Note on or about March 19,

10   2009, and has provided the Custodial Agreement evidencing the fact that the Note is now held by

11   the Custodian for the benefit of OneWest.  Accordingly, as OneWest has been in possession of

12   Plaintiff's Note since on or about March 19, 2009, a date clearly prior to both the Notice of

13   Default and the Appointment, it is clear that when the Notice of Default was sent by NWTS as

14   an agent to OneWest on January 12, 2010, OneWest was the beneficiary such that the Notice of

15   Default was authorized. Similarly, OneWest, as beneficiary in possession of the Note, was

16   authorized on February 4, 2010, to appoint NWTS as successor trustee. Therefore, the

17   Defendants have demonstrated OneWest's current and prior authority to enforce the note such

18   that the injunction should be dissolved.

19       Upon dissolution of the Preliminary Injunction, the Defendants move the court, pursuant

20   to RCW 61.24.130(3), to set a sale date for the Property to be sold, which is not less than forty-

21   five days from entry of the order granting summary judgment and dissolving the Preliminary

22   Injunction.

23   **J.   THE RECENT *BAIN* DECISION DOES NOT AFFECT ONEWEST, MERS, OR**

24   **NWTS' ENTITLEMENT TO SUMMARY JUDGMENT AS TO ALL OF**

25   **PLAINTIFF'S CLAIMS.**

26       In *Bain*, the Court held MERS cannot act as beneficiary in its own right under RCW

     61.24.005(2) unless it holds the promissory note, but a beneficiary (i.e., note holder) may appoint

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 44 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   MERS to act as its agent if MERS discloses the beneficiary (i.e., MERS' principal).  *Bain v.*
2   *Metropolitan Mortgage Group, Inc.*, __ Wn.2d __, 2012 WL 3517326 *11 (2012). The *Bain*
3   Court also held that if MERS represents to borrowers that it is acting as beneficiary in its own
4   right such a representation is presumptively deceptive, but that MERS may rebut the
5   presumption by showing it acted on behalf of a known principal.  *Id.* at *17. In particular, the
6   Court clarified that "the mere fact that MERS is listed on the deed of trust as a beneficiary,"
7   without more, does *not* violate the CPA.  *Id.* at *18.

8          Here, unlike in *Bain*, MERS acted on behalf of a disclosed principal, OneWest. And, the
9   Defendants did not rely on MERS for the authority to foreclose. OneWest is the holder of
10  Plaintiff's Note and thus has the authority to foreclose under Washington law. *See supra.*
11  Moreover, the gravamen of Plaintiff's complaint here is that OneWest was not entitled to initiate
12  the foreclosure because it was not the owner of Plaintiff's Note, not that MERS improperly
13  attempted to foreclose. Thus, not only are the underlying facts in *Bain* distinguishable from the
14  present case so is the basis upon which the borrower plaintiffs assert their claims.

15         In *Bain*, the Washington Supreme Court addressed the question of whether MERS may
16  act as a deed of trust beneficiary in a non-agency capacity, and if not, what the effect of that
17  conduct was. *Bain*, 2012 WL 3517326, at *2. In deciding these issues, the Court also considered
18  the consolidated case, *Selkowitz. Selkowitz* involved a nonjudicial foreclosure where MERS
19  (acting as beneficiary) appointed the successor trustee, which in turn initiated foreclosure by
20  recording a notice of trustee's sale.  *Id.*[31]  The Court held that unless MERS was the note holder,
21  it could not act as beneficiary in a non-agency capacity, but recognized MERS could act as an
22  agent for the beneficiary note holder. Specifically, the Washington Supreme Court held in *Bain*
23  that if MERS never held the promissory note, it cannot be a beneficiary under RCW

24  ────────────────────
[31] The Supreme Court mistakenly suggests that in *Bain*, MERS also appointed the successor Trustee, and frames the
25  "primary issue" as whether "MERS is a lawful beneficiary with the power to appoint trustees … if it does not hold
    the promissory notes secured by the deeds of trust."  2012 WL 3517326, at *1-*2. But in *Bain*, MERS did not
    appoint the successor trustee, IndyMac did, after receiving an assignment from MERS.  *See Bain v. Metropolitan*
26  *Mortg. Group., Inc.*, 2011 WL 917385, *2 (W.D. Wash. 2011). Rather, the argument in *Bain*, was that if MERS is
    not a valid beneficiary, then its assignment to IndyMac Bank is void, and therefore IndyMac's appointment of the
    Trustee was void, and the Notice of Trustee's Sale was also void.  *Id.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 45 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

61.24.005(2).  *Id.* at *6-*8.  The Court also held, however, that MERS may act as an agent for a known principal (i.e., the note holder and thus, the beneficiary).  *Id.* at *11.  But the Court concluded because the record before it contained no facts disclosing the note holder (i.e., beneficiary), MERS "ha[d] not established that it is an agent for a lawful principal."  *Id.* In *Bain*, the defendants' right to foreclose turned exclusively on the rights assigned or appointed by MERS.  Accordingly ***nothing*** in *Bain* addresses the present scenario in which the lender seeking to foreclose is not relying on MERS or any MERS assignment or appointment for the right to foreclose, but instead relies on possession of the Note.  *Compare Florez v. OneWest Bank, FSB*, 2012 WL 1118179, *1 (W.D. Wash. 2012) (Coughenour) (granting motion to dismiss with prejudice, and holding that "the situation at issue here is unlike the situation in *Bain* ….  In *Bain*, the alleged authority to foreclose was based solely on MERS's assignment of the deed of trust, rather than on possession of the Note.  Here, … OneWest had authority to foreclose, independent of MERS, since OneWest held Plaintiffs' Note").

Other courts have also distinguished the scenario presented in Selkowitz from the present. See e.g. Thomas v. Saxon Mortgage Services, Inc., Adv. Proc. No. 10-01186-MLB (Bankr. W.D. Wash.) (aff'd Thomas v. Saxon Mortgage Services, Inc., (9th Cir. B.A.P. April 30, 2012). Here, like in Thomas, MERS sent no notice of default, recorded no notice of trustee's sale, and took no other action that directly affected the borrower with respect to the foreclosure of his property. Thomas, at *12. Rather, MERS' only act here was the assignment of its beneficial interest in the deed of trust to [the loan servicer, OneWest]. Id. The borrower ignores the agency relationship MERS had with the lender and its successors and assigns and simply makes conclusory statements that MERS did not have the express authority from the lender to assigns its beneficial interest in the deed of trust to [the loan servicer]. Id.

Finally, the *Bain* Court held "the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury" under the CPA. Bain, at *18.  Rather, the court determined that a representation by MERS that it is the beneficiary is presumptively deceptive

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 46 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

but that each CPA claimant must prove all of the required five elements under the CPA to establish liability.

In fact, the Washington Court of Appeals recently issued an unpublished opinion (citing *Bain*), which affirmed a motion to dismiss in favor of MERS, including a foreclosure related CPA claim. *Peterson v. Citibank, N.A.*, No. 67177-4-1, at 5 (Wash. Ct. App. Sep. 17, 2012), available at http://www.courts.wa.gov/opinions/pdf/67177-4.unp.docx.pdf. (Appendix A hereto). There, the court affirmed dismissal because the borrowers "alleged no facts tending to demonstrate that, but for MERS's conduct, they would not have suffered the same [alleged] injuries." *See also id.* (plaintiffs "do not contend that any action by MERS caused or induced [them] to default on the loan. … Regardless of MERS's conduct as the beneficiary under the deed of trust, [Plaintiffs'] property would still have been foreclosed upon based on their" default).[32]  Washington Superior Courts have also reached similar conclusions in foreclosure related post-*Bain. See Benofsky v. Regional Trustee Svcs. Corp.*, King County Case No. 12-2-16790-7-SEA (Sept. 7, 2012) (Appendix B hereto) (granting motion to dismiss anti-foreclosure claims post-Bain/Selkowitz); *Jiminez v. Fed. Nat'l Morg. Ass'n*, King County Case No. 11-2-38345-8-KNT (Aug. 30, 2012) (Appendix C hereto) (same).

Here, Plaintiff's CPA claim against MERS is not based on a "representation that MERS is beneficiary." Rather, Plaintiff's CPA claim is based upon MERS purportedly "assigning ownership to a note it knew it did not own and by assigning beneficiary status to the deed of trust to a party it knew not to be the note owner or holder."[33] SAC. ¶ 3.6.5.1. As established *supra*, not only has Plaintiff failed to show any deceptive act or practice based on irrelevant allegations of ownership, Plaintiff has also failed to show any injury caused by such conduct. Thus, nothing in *Bain* saves Plaintiff's CPA claim.

---

[32] This court may consider an unpublished state court opinion. *Nunez v. City of San Diego*, 114 F.3d 935, 942 n. 4 (9th Cir.1997) (court is "not precluded from considering unpublished state court opinions").
[33] Again, OneWest and MERS concede that the MERS assignment of deed of trust was ineffective to transfer any interest in the Note.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S SAC – PAGE 47 OF 48
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

## VI.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court enter an order on summary judgment in favor of Defendants as to all of Plaintiff's claims, dissolve the injunction entered on January 25, 2011, and set a sale date pursuant to RCW 61.24.130(3).

DATED this 21st day of September, 2012.

**ROUTH CRABTREE OLSEN, P.S.**

/s/ Heidi E. Buck
_____
Heidi E. Buck, WSBA No. 41769
Of Attorneys for Defendants OneWest
Bank, Mortgage Electronic Registration
Systems, Inc., and Northwest Trustee
Services, Inc.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# Appendix A

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| DANIEL C. PETERSON and KRISTI J. PETERSON, husband and wife, | ) ) ) | DIVISION ONE |
| Appellant, | ) ) ) | No. 67177-4-I |
| v. | ) ) ) | |
| CITIBANK, N.A., AS TRUSTEE ON BEHALF OF HOLDERS OF THE AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4; NORTHWEST TRUSTEE SERVICES, INC.; AMERICAN HOME MORTGAGE SERVICING, INC.; AMERICAN BROKERS CONDUIT; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; ALL PERSONS UNKNOWN, CLAIMING ANY VALID SUBSISTING INTEREST, AND RIGHT TO THE POSSESSION IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO; and DOES I-X, INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) | FILED:  September 17, 2012 |

DWYER, J. — Following the initiation of nonjudicial foreclosure proceedings against their property, Daniel and Kristi Peterson filed suit seeking to enjoin the trustee's sale and alleging various statutory and common law causes of action. The trial court dismissed the Petersons' claims against Mortgage Electronic

No. 67177-4-I/2

Registration System, Inc. (MERS) pursuant to CR 12(b)(6) and, in a separate

order, dismissed the Petersons' claims against Citibank and American Home

Mortgage Servicing, Inc. (AHMSI) pursuant to CR 12(c) based upon principles of

issue preclusion.  Because the Petersons' failed to allege the existence of facts

establishing a violation by MERS of the Washington Consumer Protection Act

(CPA), chapter 19.86 RCW, we affirm the trial court's order on the CR 12(b)(6)

motion.  In addition, we determine that the Petersons' initial notice of appeal was

insufficient to permit appellate review of the CR 12(c) order and, moreover, that

their filing of a second notice of appeal indicating an intent to appeal from that

order was untimely.  Accordingly, we grant the motion of Citibank and AHMSI to

dismiss the appeal of the trial court's CR 12(c) order.

I

On July 13, 2006, Daniel Peterson obtained a $579,975 home loan from

American Brokers Conduit (ABC), promising repayment by executing a

promissory note in favor of ABC.  As security for the note, Mr. Peterson executed

a deed of trust.  The deed of trust identified ABC as the lender, First American

Title Company as the trustee, and MERS as the beneficiary "acting solely as a

nominee for Lender and Lender's successors and assigns."[1]  The note was

thereafter sold to the American Home Mortgage Assets Trust 2006-4.  Citibank

---

[1] A deed of trust differs from a standard mortgage because it involves not only a lender and a borrower, but also a third party called a trustee.  If a borrower defaults on the loan, the trustee may conduct a nonjudicial foreclosure sale, the proceeds of which are conveyed to the "beneficiary"—defined by statute as the "the holder of the instrument or document evidencing the obligations secured by the deed of trust."  RCW 61.24.005(2).

No. 67177-4-I/3

serves as the trustee for this securitized trust.[2]  MERS, however, continued to act

as the beneficiary—"solely as nominee" for the new note holder.

On June 3, 2008, the Petersons received notice from their loan servicer,

AHMSI, informing them that their loan payments were set to substantially

increase.[3]  The Petersons thereafter contacted AHMSI to request a loan

modification.  AHMSI informed the Petersons that they must cease payments on

the loan to qualify for such relief.  The Petersons stopped making payments in

April 2009.  Nevertheless, AHMSI denied their request for a loan modification.

On December 18, 2009, Northwest Trustee Services (Northwest)

transmitted a notice of default to the Petersons.  The notice identified Northwest

as the agent of Citibank.  Citibank was identified as the note owner and the

beneficiary under the deed of trust; AHMSI was identified as the loan servicer.

However, as of the date of this notice, MERS had not yet assigned its beneficial

interest under the deed of trust to Citibank, nor had Citibank yet appointed

Northwest as a successor trustee.[4]

Northwest thereafter scheduled a nonjudicial foreclosure sale for August

13, 2010.  On August 5, Mr. Peterson filed a voluntary petition for bankruptcy

under Chapter 11 of the U.S. Bankruptcy Code that automatically stayed the

---

[2] Citibank's title as a "trustee" for the securitized trust appears to have generated some
confusion in the pleadings.  Contrary to the facts alleged in the Petersons' complaint, Citibank did
not serve as the trustee under the deed of trust but as the trustee of the securitized trust which
held the Petersons' promissory note.
[3] The monthly loan payment increased from $2,150 to $4,628 in July 2008.
[4] Citibank did not name Northwest as the successor trustee until December 21, 2009,
and MERS did not assign the beneficial interest under the deed of trust to Citibank until January
25, 2010.  Both the assignment of the deed of trust and the appointment of the successor trustee
were recorded in King County on February 1, 2010.

No. 67177-4-I/4

pending foreclosure. Citibank filed a motion for relief from stay in the bankruptcy proceeding in which Citibank requested an order allowing the foreclosure to proceed. The bankruptcy court granted Citibank's motion and entered an order granting relief from the stay.

Northwest, on behalf of Citibank, thereafter initiated a new foreclosure action against the Petersons' property. A second foreclosure sale was scheduled for December 10, 2010. On December 1, 2010, the Petersons filed this lawsuit against Citibank, Northwest, AHMSI, MERS, and ABC.[5] The complaint alleged causes of action for defective trustee's sale, defective initiation of foreclosure, quiet title, slander of title, breach of contract, violation of the CPA, and unjust enrichment. In addition, the Petersons moved to enjoin the trustee's sale.

MERS thereafter filed a motion to dismiss the Petersons' breach of contract and CPA claims—the only claims brought against the company—for failure to state a claim upon which relief can be granted pursuant to CR 12(b)(6). In addition, Citibank, AHMSI, Northwest, and MERS moved for judgment on the pleadings pursuant to CR 12(c) and to dismiss for lack of jurisdiction pursuant to CR 12(h)(3).

On April 22, 2011, the trial court granted MERS's motion to dismiss and entered judgment in favor of MERS on all claims against MERS in the complaint. On that same day, the court granted the motion for judgment on the pleadings pursuant to CR 12(c) and entered judgment "in favor of Defendants on all claims

---

[5] ABC ceased operations in August 2007 and did not participate in the litigation.

- 4 -

No. 67177-4-I/5

against them in the Complaint."  Applying principles of issue preclusion, the trial court determined that Citibank was a "party in interest" with standing to proceed in the foreclosure proceeding against the Petersons' property.

On May 19, 2011, the Petersons timely appealed from the order dismissing the breach of contract and CPA claims against MERS.  On June 15, 2011, the Petersons filed a second document—entitled "amended notice of appeal"—seeking review not only of the order on MERS's motion to dismiss but also of the order granting the remaining defendants' motion for judgment on the pleadings.

II

The Petersons first contend that their complaint alleged facts sufficient to demonstrate a violation of the CPA and that, accordingly, the trial court erred by granting MERS's motion to dismiss.[6]  We disagree.

Pursuant to CR 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."[7]  For purposes of a CR 12(b)(6) motion, we presume the plaintiff's allegations in the complaint to be true.  Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994).  Moreover, in determining whether dismissal is warranted, we may consider hypothetical facts outside of the record.  Burton v. Lehman, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005).  Dismissal under CR 12(b)(6) is proper where "'it appears beyond

---

[6] The Petersons concede that the trial court did not err by granting the motion to dismiss their breach of contract claim.

[7] We review a trial court's decision to dismiss pursuant to CR 12(b)(6) de novo.  Gaspar v. Peshastin Hi-Up Growers, 131 Wn. App. 630, 634, 128 P.3d 627 (2006).

No. 67177-4-I/6

doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Lawson v. State, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986) (internal quotation marks omitted) (quoting Bowman v. John Doe, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)).

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. In order to prove a CPA claim, a plaintiff must establish: (1) that the defendant engaged in an unfair or deceptive act or practice, (2) that the act occurred in trade or commerce, (3) that the act impacts the public interest, (4) that the plaintiff suffered injury to his or her business or property, and (5) that the injury was causally related to the unfair or deceptive act. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009). Failure to satisfy even one element is fatal to a CPA claim. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 793, 719 P.2d 531 (1986).

Here, the Petersons contend that MERS engaged in unfair or deceptive conduct—the first element of a valid CPA claim—by falsely representing its authority to act as a beneficiary under the deed of trust.[8] Our Supreme Court has recently determined that MERS is "an ineligible beneficiary within the terms of the Washington Deed of Trust Act, if it never held the promissory note or other

---

[8] The Petersons further contend that Citibank's allegedly unauthorized appointment of Northwest as successor trustee constitutes an unfair or misleading practice. However, this action was taken by Citibank, not by MERS, and cannot support a CPA claim against MERS. Similarly, the Petersons' assertion that MERS transferred its purported interest only after Citibank initiated foreclosure proceedings also cannot support a CPA claim against MERS. It was Citibank, not MERS, that initiated the foreclosure proceeding prior to the transfer of the beneficial interest.

- 6 -

No. 67177-4-I/7

debt instrument secured by the deed of trust." Bain v. Mortg. Elec. Registration Sys., No. 86206-1, slip op. at 29 (Wash. August 16, 2012) (internal quotations marks omitted). The court noted that many courts have determined that it is "deceptive to claim authority when no authority existed and to conceal the true party in a transaction." Bain, No. 86206-1, slip op. at 36 (citing Stephens v. Omni Ins. Co., 138 Wn. App. 151, 159 P.3d 10 (2007); Floersheim v. Fed. Trade Comm'n, 411 F.2d 874, 876-77 (9th Cir. 1969)). Accordingly, the court explained, "characterizing MERS as the beneficiary has the capacity to deceive and thus . . . presumptively the first element [of a CPA claim] is met." Bain, No. 86206-1, slip op. at 37.

In the case at hand, MERS does not dispute the Petersons' assertion that the company never held the promissory note secured by the deed of trust. Moreover, given the procedural posture of this case, we must presume the allegations contained in the complaint are true. Cutler, 124 Wn.2d at 755. Accordingly, the first element of the Petersons' CPA claim is presumptively met.

Nevertheless, in order to plead a valid CPA claim, a plaintiff must also allege facts demonstrating that his or her injuries were caused by the deceptive practice. In order to prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 84, 170 P.3d 10 (2007). Our Supreme Court has explained that with regard to a CPA claim against MERS, causation necessarily depends upon the facts of a particular case. Bain, No. 86206-1, slip op. at 38.

-7-

No. 67177-4-I/8

Here, the Petersons' asserted injuries consist of the resources expended to "avert an unlawful foreclosure" and "the cloud of title arising from those foreclosure proceedings." However, the Petersons alleged no facts demonstrating how these injuries flowed from the improper characterization of MERS as a beneficiary on the deed of trust. Our Supreme Court has indicated that injuries under the CPA may arise where, due to MERS's actions, the homeowner is unable to locate the holder of the note and, as a result, suffers some harm to his or her interests. <u>Bain</u>, No. 86206-1, slip op. at 38. No such circumstances, however, were present here. Nothing in the Petersons' pleadings indicated that they were misled by MERS regarding the identity of the holder of the promissory note; nor did they assert that such ignorance led, even indirectly, to the initiation of foreclosure proceedings against their property.

Indeed, the Petersons alleged no facts tending to demonstrate that, but for MERS's conduct, they would not have suffered these same injuries. It is undisputed that the Petersons defaulted on their loan and that it was this default that led to the foreclosure proceedings. The Petersons do not contend that any action by MERS caused or induced the Petersons to default on the loan. Nor do the Petersons assert that there was no party entitled to foreclose on the property. Accordingly, the Petersons have failed to plead facts demonstrating that their alleged injuries would not have occurred but for MERS's actions; regardless of MERS's conduct as the beneficiary under the deed of trust, the Petersons' property would still have been foreclosed upon based on their failure to make payments on the loan.

- 8 -

No. 67177-4-I/9

Even accepting the allegations in the complaint as true, the Petersons have failed to allege the existence of facts sufficient to establish the elements of a CPA claim against MERS.  The trial court properly granted MERS's CR 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

III

Citibank and AHMSI assert that the Petersons' notice of appeal of the trial court's order granting the defendants' CR 12(c) motion was untimely and that, accordingly, the Petersons are not entitled to appellate review of that order.[9]  We agree.

A brief review of the procedural history of this case is necessary.  Two motions were heard by the trial court on April 22, 2011:  a CR 12(c) motion for judgment on the pleadings was brought by Citibank, AHMSI, and MERS; a CR 12(b)(6) motion to dismiss for failure to state a claim was brought by MERS alone.  The trial court granted both motions, and separate orders were signed by the judge and filed with the court clerk on that day.  These two orders—in addition to an April 22 order dismissing the Petersons' claims against Northwest—disposed of all parties and claims in the lawsuit.[10]

On May 19, 2011, the Petersons filed a timely notice of appeal from the order entered on MERS's CR 12(b)(6) motion.  The notice of appeal stated that

_____

[9] Given our resolution of the initial question presented, this issue is now moot as to MERS.
[10] The Petersons do not assign error to the trial court's decision dismissing their claims against Northwest.

- 9 -

No. 67177-4-I/10

the Petersons were seeking "review . . . of the Order Granting [MERS's] Motion to Dismiss entered . . . on April 22, 2011." A copy of this order, dismissing all of the Petersons' claims against MERS and entering judgment, was attached to the notice of appeal. The Petersons did not, however, appeal from the order on the CR 12(c) motion brought by Citibank and AHMSI.[11]

Our court clerk thereafter notified the Petersons that it appeared that the order dismissing the claims against MERS was not appealable as a matter of right because it did not dispose of all claims in the case.[12] Consequently, on June 15, the Petersons filed a document entitled "amended notice of appeal" seeking review not only of the order dismissing the claims against MERS but also of the order granting the CR 12(c) motion of Citibank and AHMSI. Given that the trial court had granted both motions and entered judgments in favor of all of the defendants, the Petersons argued that no claims remained to be litigated and that they were therefore entitled to appeal as a matter of right. However, because this second filing occurred well after the 30-day deadline set forth in RAP 5.2(a), Citibank and AHMSI thereafter moved to dismiss review of the CR 12(c) order pursuant to RAP 18.9(c), which requires an appellate court to "dismiss review of a case . . . for failure to timely file a notice of appeal."[13] It is

---

[11] Although this motion was brought by MERS as well, all claims against the company had already been dismissed by the trial court pursuant to CR 12(b)(6).

[12] A hearing to determine the appealability of the order dismissing the Petersons' claims against MERS was initially set for July 1, 2011. This motion was stricken following the Petersons' clarification that all claims had been resolved as to all parties.

[13] There is no merit to the Petersons' contention that, because Citibank and AHMSI had "the opportunity to raise this issue" during earlier correspondence with the court, they are now precluded from doing so. "A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits. The answer to a motion within a brief may be made

No. 67177-4-I/11

this motion that is now before us.

We first note that the Petersons' initial notice of appeal, which sought review only of the order granting MERS's motion to dismiss, is insufficient to permit appellate review of the trial court's order granting the CR 12(c) motion. RAP 5.3(a) specifies that a notice of appeal must "designate the decision or part of decision which the party wants reviewed" and, in general, we will not review an order that was not designated in the notice of appeal.  RAP 2.4(a); Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 378, 46 P.3d 789 (2002).  An exception to this rule exists, however, where an undesignated order "prejudicially affects the decision designated in the notice." RAP 2.4(b). Our Supreme Court has explained that an order "prejudicially affects" the decision designated in the notice of appeal where the designated decision would not have occurred in the absence of the undesignated order.  Right-Price Recreation, 146 Wn.2d at 380.

That circumstance is not present in this case.  Here, the trial court's order granting MERS's CR 12(b)(6) motion was unrelated to and independent of the trial court's order on the CR 12(c) motion.  The order on the CR 12(c) motion did not prejudicially affect the designated order and, accordingly, the relief afforded by RAP 2.4(b) is unavailable.[14]

_____

within the brief of the answering party in the time allowed for filing the brief." RAP 17.4(d).  Here, the granting of respondents' motion to dismiss review would preclude hearing the Petersons' claims.  Accordingly, the inclusion of this motion within the respondents' brief was proper.
    [14] RAP 5.3(f), which instructs an appellate court to "disregard defects in the form of a notice of appeal . . . if the notice clearly reflects an intent by a party to seek review," is similarly inapplicable.  We have determined that review of an undesignated order is appropriate under this provision where the notice of appeal "clearly reflects [the appellant's] intent to seek review of the

No. 67177-4-I/12

Nor may RAP 18.8(a) be applied to permit review of the undesignated order in this case.  This provision stipulates that "[t]he appellate court may, on its own initiative or on motion of a party, waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice."  RAP 18.8(a).  As the Petersons correctly point out, pursuant to this rule, we have occasionally reviewed a trial court's orders even where the notice of appeal did not designate the orders to which error was later assigned in the briefing.  See, e.g., In re the Truancy of Perkins, 93 Wn. App. 590, 594, 969 P.2d 1101 (1999), abrogated on other grounds by Bellevue Sch. Dist. v. E.S., 148 Wn. App. 205, 199 P.3d 1010 (2009); but see, In re the Estates of Foster, 165 Wn. App. 33, 44-45, 268 P.3d 945 (2011) (declining to review order that was not designated in notice of appeal), review denied, 173 Wn.2d 1032 (2012).  In Perkins, for instance, we determined that, because the State had received notice of the appeal and the appellants had set forth their assignments of error with sufficient clarity, RAP 18.8(a) should apply to permit review of the undesignated orders.  93 Wn. App. at 594.

Here, however, the Petersons' assignments of error involve not merely *orders* that were not designated in the original notice of appeal but also additional *parties*.  The trial court's order on the CR 12(b)(6) motion involved only the Petersons' claims against MERS—neither the rights of Citibank nor of AHMSI

issues decided" by that order.  S&K Motors, Inc. v. Harco Nat'l Ins. Co., 151 Wn. App. 633, 638-39, 213 P.3d 630 (2009).  Here, the Petersons' notice of appeal did not clearly reflect any such intent.  Accordingly, this provision does not apply to permit review.

No. 67177-4-I/13

were affected by this order.  The notice of appeal from that order gave no

indication that the Petersons had not acquiesced in the trial court's resolution of

their claims against Citibank and AHMSI.  Accordingly, at the conclusion of the

30-day appeal period, these parties were entitled to believe that the litigation

against them was at an end.[15]

As we have repeatedly explained, "'[t]he purpose of a notice of appeal is

to notify the adverse party that an appeal is intended.'" Perkins, 93 Wn. App. at

594 (alteration in original) (quoting State v. Olson, 74 Wn. App. 126, 128, 872

P.2d 64 (1994), aff'd, 126 Wn.2d 315, 893 P.2d 629 (1995)).  This case is not

similar to Perkins, wherein the appellants' notice of appeal, while technically

deficient, clearly put the respondent on notice that an appeal was intended.  93

Wn. App. at 594.  Nothing in the notice of appeal or in the record indicates any

intent by the Petersons to preserve their claims against Citibank and AHMSI.

Accordingly, the Petersons' notice of appeal failed to fulfill the most basic

purpose of this filing requirement.  See, e.g., Cox v. Shell Oil Co., 196 S.W.3d

747, 761 (Tenn. Ct. App. 2005) (noting that, where case involves multiple parties,

designation of orders involving only a subset of those parties "undermine[s] the

notice function that notices of appeal are intended to serve").  Because the

Petersons' notice of appeal was inadequate to notify Citibank and AHMSI that an

appeal was intended, the ends of justice would not be served by disregarding the

---

[15] It is of no consequence that Citibank, AHMSI, and MERS shared the same attorney of record.  At most, Citibank and AHMSI may be charged with knowledge that the Petersons had appealed from the trial court's dismissal of their claims against MERS.  Indeed, given the content of the notice of appeal, this knowledge may reasonably have created a belief by Citibank and AHMSI that they were *not* parties to the Petersons' appeal.

No. 67177-4-I/14

requirement that a notice of appeal must "designate the decision or part of decision which the party wants reviewed."[16]  RAP 5.3(a).  Accordingly, RAP 18.8(a) does not apply to permit review.

Finally, the "amended notice of appeal" filed by the Petersons on June 15, 2011—the first document to reference the trial court's order on the CR 12(c) motion—does not meet the strict time requirements for filing set forth by our rules of procedure.  RAP 5.2(a) requires that a notice of appeal be filed within 30 days of the entry of the judgment in the trial court.  RAP 18.8(a), cited by the Petersons as a basis for deviation from this rule, does not apply where an appellant seeks additional time to file an appeal.  Instead, "[t]he appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal."  RAP 18.8(b).  "In contrast to the liberal application we generally give the Rules of Appellate Procedure (RAP), [this provision] expressly requires a narrow application."  Beckman v. Dep't of Social & Health Servs., 102 Wn. App. 687, 693, 11 P.3d 313 (2000).  This is because, in general, "the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time."

---

[16] The Petersons may not rely on RAP 5.3(h) to amend their notice of appeal in this case. This provision stipulates that an "appellate court may, on its own initiative or on the motion of a party, permit an amendment of a notice to include additional *parts of a decision* in order to do justice."  RAP 5.3(h) (emphasis added).  This is a rule of limited applicability.  It permits the amendment of a notice of appeal only to include additional "parts of a decision."  "The term 'decision' refers to rulings, orders, and judgments of the trial court."  RAP 2.1(a).  Here, the decision which the Petersons designated in the notice of appeal was the order granting MERS's motion to dismiss pursuant to CR 12(b)(6).  The trial court's separate order granting the CR 12(c) motion is not a "part of" that decision.  Indeed, RAP 5.3(h) is intended merely "to address the situation in which the court makes an oral ruling, but the ruling is followed later by a written order that may or may not conform to the oral ruling."  2A KARL. B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, RAP 5.3, at 479 (6th ed. 2004).  Accordingly, this provision cannot be invoked to permit review of the undesignated order.

No. 67177-4-I/15

RAP 18.8(b).  Thus, it is immaterial that there would be no prejudice to a particular respondent—"the prejudice of granting an extension of time would be 'to the appellate system and to litigants generally, who are entitled to an end to their day in court.'"  Beckman, 102 Wn. App. at 694 (quoting Reichelt v. Raymark Indus., Inc., 52 Wn. App. 763, 766 n.2, 764 P.2d 653 (1988)).

   The standard has been rigorously applied.  See State v. Moon, 130 Wn. App. 256, 260, 122 P.3d 192 (2005).  Only where the tardy filing has occurred due to excusable error or circumstances beyond the party's control has an extended time to file been deemed warranted.  Shumway v. Payne, 136 Wn.2d 383, 394-97, 964 P.2d 349 (1998); Scannell v. State, 128 Wn.2d 829, 834-35, 912 P.2d 489 (1996).  A lack of reasonable diligence does not amount to extraordinary circumstances sufficient to allow extension.  Beckman, 102 Wn. App. at 694.  Nor does the gravity of the appellant's claims constitute such circumstances.  In Beckman, we refused to accept notice of appeal—submitted 10 days too late—from a 17.76 million dollar judgment.  102 Wn. App. at 693-94; see also Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 368, 849 P.2d 1225 (1993) ("We recognize that Schaefco raises many important issues . . . . However, it would be improper to consider these questions given the procedural failures of this case.").  Moreover, it is the appellant's burden to provide "sufficient excuse for [the] failure to file a timely notice of appeal" and to demonstrate "sound reasons to abandon the [judicial] preference for finality."  Schaefco, 121 Wn.2d at 368.

   Here, the Petersons have offered no excuse for their failure to file a timely

- 15 -

No. 67177-4-I/16

notice of appeal that properly designated the trial court's order resolving their

claims against Citibank and AHMSI.  Although the Petersons contend that these

parties will not be "unduly prejudiced" as a result of their untimely notice of

appeal, this is not the standard applicable to a determination as to whether an

extension of time is warranted.  Reichelt, 52 Wn. App. at 766 n.2 (finding lack of

prejudice to respondent immaterial).  Because there is "'nothing in the nature of

an event or circumstance so extraordinary in this case as to excuse'" the late

notice of appeal, Beckman, 102 Wn. App. at 696 (quoting State v. One 1977 Blue

Ford Pick-Up Truck, 447 A.2d 1226, 1231 (Me. 1982)), the Petersons are not

entitled to appellate review of the trial court's order granting the CR 12(c) motion.

IV

Citibank requests attorneys fees and costs on appeal pursuant to the deed

of trust, which provides that the "[l]ender shall be entitled to recover its

reasonable attorneys' fees and costs in any action or proceeding to construe or

enforce any term of this Security Instrument."  The Petersons assert that Citibank

has not demonstrated that it is the successor in interest to ABC (the original

holder of the note), and that, accordingly, Citibank is not entitled to recover

attorney fees pursuant to this provision.  The trial court, however, conclusively

determined that Citibank was the proper party to enforce the note and foreclose

upon the Petersons' property.  Because we have determined that the Petersons

are not entitled to appellate review of the order granting Citibank's CR 12(c)

motion, we do not review the correctness of this legal conclusion.  The trial

court's order is a final one.  Accordingly, Citibank, as the prevailing party, is

- 16 -

No. 67177-4-I/17

entitled to its attorney fees and costs on appeal.[17]

     Affirmed.

                                                _Dwyer, J._

We concur:

_Cox, J._                     _Grosse, J._

---

[17] The Petersons request their costs pursuant to RAP 14.2. Because they have not prevailed on appeal, they are not entitled to such an award.

- 17 -

# Appendix B

1

2

3

4

5

6

7           IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                    IN AND FOR KING COUNTY

9    DARIN W. BENOFSKY, an individual,

10                    Plaintiff,                    Case No. 12-2-16790-7 SEA

11          v.

12   REGIONAL TRUSTEE SERVICES,                    **ORDER**
     CORPORATION; INDYMAC BANK, FSB
13   N/K/A ONE WEST BANK, FSB;
     MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.;
14   MERSCORP; DEUTSCHE BANK
     NATIONAL TRUST COMPANY; INDYMAC
15   INDX MORTGAGE LOAN TRUST 2005-AR2
     and JOHN DOES NOS. 1-25,
16
17                    Defendants.

18

19

20       This matter came before this Court on defendants OneWest Bank, FSB, Mortgage

21   Electronic Registration Systems, Inc., MERSCORP, & Deutsche Bank National Trust

22   Company's Motion to Dismiss.  The Court having reviewed the record, having considered the

23   //

24
     //
25

26   //

Page 1 —    ORDER

                                                         LARKINS VACURA LLP
                                                         621 SW Morrison St., Ste 1450
                                                         Portland, Oregon 97205
                                                         503-222-4424

1

2    matter, and being fully advised in the premises,

3         It is hereby ORDERED:

4

5         Defendants motion to dismiss is granted as
6    to plaintiffs claims for wrongful foreclosure, consumer
7    protection act violations, negligence/breach of good
8    faith, quiet title, rescission, and slander of title.
9    Defendants' motion is ~~grant~~ denied as to plaintiffs
10   claims for injunctive and declaratory relief

11        DATED this 7th day of September, 2012.

12

13                              Richard D Eadie
                              The Honorable Richard Eadie

14

15   Submitted by:

16   LARKINS VACURA LLP

17   /s/ Danielle J. Hunsaker
     Danielle J. Hunsaker, WSBA #43430
18   dhunsaker@larkinsvacura.com
     Attys for OneWest Bank, MERS,
19   MERSCORP, & Deutsche Bank National
     Trust Company
20

21

22   Approved as to form by:

23                   # 14608

24   Attorney for Plaintiff

25

26


Page 2 –    ORDER                              LARKINS VACURA LLP
                                              621 SW Morrison St., Ste 1450
                                                Portland, Oregon 97205
                                                   503-222-4424

1

2                                                              Judge Eadie

3                                                       September 7, 2012

4                                                              9:00 a.m.

5

6

7           IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                      IN AND FOR KING COUNTY

9    DARIN W. BENOFSKY, an individual,

              Plaintiff,                    Case No. 12-2-16790-7 SEA
10

11        v.

12   REGIONAL TRUSTEE SERVICES,             **REPLY IN SUPPORT OF MOTION TO**
     CORPORATION; INDYMAC BANK, FSB         **DISMISS**
     N/K/A ONE WEST BANK, FSB;
13   MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.;
14   MERSCORP; DEUTSCHE BANK
     NATIONAL TRUST COMPANY; INDYMAC
15   INDX MORTGAGE LOAN TRUST 2005-AR2
     and JOHN DOES NOS. 1-25,
16
              Defendants.
17

18        Plaintiff's Response Brief illustrates that his primary contention here is that MERS'

19   designation as a beneficiary of his trust deed was invalid.  This is an expected proposition

20   following the recent decision in *Bain*.  What is unexpected, however, are the consequences that

21   plaintiff asserts follow from this defect.  He repeatedly argues that all of the transfers and

22   assignments of his note and trust deed were invalid, that none of the defendants have a valid

23   interest in his loan entitling them to foreclose, and that he can keep his property stripped of any

24   encumbrance related to his loan without paying the over $700,000 balance owing.

25        The Motion to Dismiss was filed before the *Bain* decision issued, and the moving

26   defendants recognize that it necessarily impacts the analysis of some of the issues presented.

Page 1 —    REPLY IN SUPPORT OF MOTION TO DISMISS        LARKINS VACURA LLP
                                                         621 SW Morrison St., Ste 1450
                                                         Portland, Oregon 97205
                                                         503-222-4424

1

2    The undersigned counsel will address this impact in greater detail at oral argument, but suffice

3    it to say, the Supreme Court *did not* hold that MERS' designation as a party to a residential

4    trust deed invalidates the trust deed, thereby entitling the borrower to a free house.  Rather, it

5    declined to define the precise consequence of MERS' designation as beneficiary of a trust deed,

6    but it gave every indication that either through principles of agency or through an evidentiary

7    showing of the chain of ownership of the loan and security agreement, this technical defect

8    would be overcome and the authority of subsequent owners to enforce the loan contract

9    established.  *See Bain v. Metropolitan Mortg. Grp., Inc. et al.*, 2012 WL 351326, at *10-12,

10   *13-15 (Wash. Aug. 16, 2012).  Undercutting the plaintiff's position, the Supreme Court

11   expressly noted that there was no authority establishing that "listing an ineligible beneficiary on

12   a deed of trust would render the deed void and entitle the borrower to quiet title." *Id.* at *14.

13          The moving defendants do not respond further in this reply to plaintiff's arguments

14   concerning his claims for wrongful foreclosure and injunctive and declaratory relief but will

15   those issues at argument.  Below, the moving defendants do respond further to plaintiff's

16   arguments concerning his remaining common-law and CPA claims.

17   **I.      Plaintiff is not entitled to quiet title against encumbrances arising from his loan**
18   **         contract.**

19          As just discussed, there is no authority, including *Bain*, supporting plaintiff's asserting

20   that he is entitled to "clear title, . . . free of any encumbrances that have been asserted by the

21   defendants" based on the loan obligation.  (Compl. at ¶ 10.2.)  Courts have repeatedly held that

22   property owners cannot quiet title in themselves against mortgage interests without satisfying

23   fully their payment obligations. *See, e.g., Evans v. BAC Home Loans Serv. LP*, 2010 WL

24   5138394, at *4 (W.D. Wash. Dec. 10, 2010) ("[I]t would be unreasonable to allow a borrower

25   to bring an action to quiet title against its lender without alleging satisfaction of those loan

26   obligations.").  Further, as previously briefed, none of the moving defendants are claiming any

     *title* interest in the property that can be quieted.  *See Brashkis v. Hyperion Capital Grp., LLC*,

Page 2 –    REPLY IN SUPPORT OF MOTION TO DISMISS

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon 97205
503-222-4424

1

2    2011 WL 6130787 (W.D. Wash. Dec. 8, 2011).

3    **II.    Plaintiff is not entitled to rescission of the loan contract.**

4            Citing *Botelho v. U.S. Bank*, 692 F.Supp.2d 1174 (N.D. Cal. 2010), plaintiff argues that

5    he does not have to allege the ability and willingness to tender the loan proceeds he received as

6    an element of his rescission claim.  This case is inapposite.  The *Botelho* decision analyzes

7    rescission under the federal Truth in Lending Act ("TILA").  Plaintiff's rescission claim arises

8    under Washington law.  (*See* Compl. at ¶¶ 11.2-11.4.)  Thus, the Washington authority cited in

9    the Motion to Dismiss applies.  And even if plaintiff were relying on TILA, his rescission claim

10   would be time barred.  15 U.S.C. ¶ 1635(f) ("An obligor's right of rescission shall expire three

11   years after the date of consummation of the transaction.").

12   **III.   CPA claim fails as a matter of law and is untimely.**

13           While the Complaint is wholly unclear, plaintiff's Response Brief indicates that the

14   basis of his CPA claim, as with his claims challenging the foreclosure process, is that the

15   MERS system for tracking transfers of mortgage interests is a deceptive practice in and of itself

16   because it misled him concerning who held valid interests in his note and trust deed and that the

17   challenged foreclosure proceeding is invalid because defendants lack the authority to

18   foreclosure.  The *Bain* court instructed that "the mere fact that MERS is listed on the deed of

19   trust as a beneficiary is not itself an actionable injury" for purposes of a CPA claim.  2012 WL

20   3517326, at *18.  And beyond his general complaints about MERS, plaintiff has not identified

21   any cognizable injury is support of this claim.  *Hangman Ridge Training Stables, Inc. v. Safeco*

22   *Title Ins. Co.*, 105 Wash 2d 778, 780 (1986) (holding that injury is a required element of a CPA

23   claim).  Plaintiff suggests that he has been injured by the temporary loss of title to his property.

24   (Resp. Br. at 19.)  This is in error.  No foreclosure has yet occurred.  As such, plaintiff has not

25   been deprived of title by any of the defendants for any period of time.  He also claims he has

26   suffered injury due to investigation and legal expenses.  (*Id.* at 19-20.)  Legal expenses are not

Page 3 –   REPLY IN SUPPORT OF MOTION TO DISMISS

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon97205
503-222-4424

1

2   an actionable CPA injury, *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash 2d 27, 60 (2009),

3   and "investigation" expenses are only actionable if the plaintiff establishes that the

4   investigation caused a loss of business profits, *id.* at 60-63.

5         Moreover, CPA claims are subject to a four-year limitations period.  RCW 19.86.120.

6   MERS' designation as a beneficiary of plaintiff's trust deed occurred in December 2004.

7   (Compl. at ¶¶ 3.2-3.3.)  To the extent plaintiff argues that the confusion caused by the MERS

8   system did not occur until his loan was transferred from his original lender, such also fails.

9   Plaintiff's loan was sold by his original lender, IndyMac Bank, FSB ("IndyMac"), in 2005.

10  (Compl. at ¶ 3.7.)  Thus, any harm that plaintiff claims to have suffered as a result of transfers

11  made utilizing the MERS system and the alleged improper "splitting" of his note and trust deed

12  occurred at that time—well outside the limitations period.

13  **IV.**    **Plaintiff's good faith and fair dealing fails as a matter of law and is untimely.**

14        Plaintiff argues that his initial lender, IndyMac Bank, FSB ("IndyMac"), breached its

15  implied obligation of good faith and fair dealing by failing to exercise "due diligence to

16  determine whether the loan would benefit Plaintiff and that the loan would be repaid according

17  to its terms." (Resp. Br. at 28.)  This claim fails for three reasons.  First, the implied duty of

18  good faith and fair dealing is not a "free-floating" duty; it arises only after a contract is created.

19  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash 2d 171, 177 (2004) (en banc).  Second,

20  even if these allegations could form the basis for good faith/fair dealing claim, contract actions

21  are subject to a six-year statute of limitations.  RCW 4.16.040(1).  Plaintiff's loan was executed

22  in December 2004.  (Compl. at ¶ 3.2.)  Thus, this action filed in 2012 is untimely.  Finally, even

23  if it were valid, this claim cannot be asserted against any of the moving defendants as the

24  underlying events relate solely to *IndyMac*, a non-party.

25  **V.**    **Plaintiff's negligence claim fails as a matter of law.**

26        Plaintiff explains for the first time in his Response Brief that the basis of his negligence

Page 4 —   REPLY IN SUPPORT OF MOTION TO DISMISS

1

2   claim is that the defendants "knowingly participate[ed]" in splitting his note and deed of trust

3   by selling only the note to Deutsche Bank and allowing MERS to assign his trust where it held

4   no interest in such instrument. (Resp. Br. at 25.) Again, this claim is essentially based on the

5   plaintiff's overarching argument discussed at the outset of this brief. Plaintiff cannot establish

6   that necessary elements for a negligence claim. *See Schwartz v. Elerding*, 166 Wash App 608,

7   615 (Wash Ct App Div 3 2012). Lenders do not owe a fiduciary duty to their borrowers.

8   *Miller v. U.S. Bank of Wash, N.A.*, 72 Wash App 416, 426-27 (1994). Likewise, whereas the

9   entire lending industry has relied on the MERS system for tracking movement of mortgage

10  interests for the past 20 years, there is no basis for finding that the moving defendants acted

11  negligently by failing to exercise ordinary care in proceeding in this fashion. *Schwartz*, 166

12  Wash App at 615. To reach a contrary result would be capricious.

13          Plaintiff's negligence claim is also untimely. Whereas this claim is based on challenges

14  the MERS system in total, the limitations period began to run when the loan contract was

15  executed in 2004, or at the latest when the MERS system was first utilized in relation to

16  transfer of the loan in 2005. Either way, this claim fails.

17  **IV.     Plaintiff's slander of title claim is not asserted against the moving defendants.**

18          In his Response Brief, plaintiff only discusses his slander of title claim in relation to

19  Regional Trustee Services Corporation. (*See* Resp. Br. at 27-28.) Thus, the moving defendants

20  do not further address this claim.

21          DATED: September 6, 2012.

22                                          LARKINS VACURA LLP

23                                          /s/ Danielle J. Hunsaker
                                            Danielle J. Hunsaker, WSBA #43430
24                                          dhunsaker@larkinsvacura.com
                                            Attys for OneWest Bank, MERS, MERSCORP, &
25                                          Deutsche Bank National Trust Company

26

Page 5 —    REPLY IN SUPPORT OF MOTION TO DISMISS

1

2                                      ORAL ARGUMENT REQUESTED

3                                      Judge Eadie, August 31, 2012, 9:00 a.m.

4

5

6

7          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                          IN AND FOR KING COUNTY

9    DARIN W. BENOFSKY, an individual,

                    Plaintiff,                    Case No. 12-2-16790-7 SEA
10

11          v.

12   REGIONAL TRUSTEE SERVICES,
     CORPORATION; INDYMAC BANK, FSB       **MOTION TO DISMISS**
     N/K/A ONE WEST BANK, FSB;
13   MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.;
14   MERSCORP; DEUTSCHE BANK
     NATIONAL TRUST COMPANY; INDYMAC
15   INDX MORTGAGE LOAN TRUST 2005-AR2
     and JOHN DOES NOS. 1-25,
16
                    Defendants.
17

18                          **RELIEF REQUESTED**

19          Defendants OneWest Bank, FSB ("OneWest"), Deutsche Bank National Trust

20   Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2005-AR2, Mortgage Pass-

21   Through Certificates, Series 2005-AR2 ("Deutsche Bank"), and Mortgage Electronic

22   Registration Systems, Inc. and MERSCORP Holdings, Inc. (collectively, "MERS") move to

23   dismiss all of plaintiff's claims under CR 12(b)(6) for failure to state a claim.  This motion is

24   based on the record in this case and the following argument and authorities.

25                          **STATEMENT OF FACTS**

26          Consistent with the standard of review on a motion to dismiss, the following statement

Page 1 –     MOTION TO DISMISS                    LARKINS VACURA LLP
                                                   621 SW Morrison St., Ste 1450
                                                   Portland, Oregon 97205
                                                   503-222-4424

1

2    of facts is based on the allegations stated in plaintiff's Complaint and the attachments thereto.

3         In December 2004, plaintiff received a mortgage loan from IndyMac Bank, FSB

4    ("IndyMac") in the principal amount of $720,000.00. (Compl. at ¶ 3.2.) This loan agreement

5    was memorialized in a promissory note signed by plaintiff ("Note"). Plaintiff also executed a

6    Deed of Trust granting IndyMac a security interest in his real property located at 899 NW

7    Elford Drive, Seattle, Washington 98177 (the "Secured Property"). (*Id.*) At the same time,

8    plaintiff received a second loan in the amount of $67,500.00, which was memorialized in

9    separate loan documents. (*Id.* at ¶ 3.32.)

10        Under the Deed of Trust, Chicago Title Insurance Company was named as trustee and

11   MERS was named as the beneficiary. (*See id.*, Ex. 1 at 5.) IndyMac endorsed the Note in

12   blank, (*see id.*, Ex. 1 at 4), and in January 2005, IndyMac transferred the Note to the IndyMac

13   INDX Mortgage Loan Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2

14   (the "Trust"), (*id.* at ¶ 3.7). Deutsche Bank is the trustee for the Trust. (*Id.*)

15        Plaintiff defaulted under the Note and Deed of Trust in May 2010 for non-payment.

16   (*See id.*, Ex. 6 at 2.) In preparation for foreclosure proceedings, on August 25, 2010, MERS

17   assigned the Deed of Trust to Deutsche Bank in its capacity as trustee of the Trust. (*Id.*, Ex. 4.)

18   Deutsche Bank also appointed defendant Regional Trustee Services Corporation ("RTSC") as

19   successor trustee under the Deed of Trust. (*Id.*, Ex. 3.) The assignment and the appointment

20   were recorded in the King County land records on September 30, 2010. (*Id.*, Exs. 3-4.)

21   Mistakenly, both documents misidentified the Trust name as "IndyMac INDX Mortgage Loan

22   Trust 2005-AR2, Mortgage Pass-Through Certificates, **Series 2005-AR1**," rather than

23   "IndyMac INDX Mortgage Loan Trust 2005-AR2, Mortgage Pass-Through Certificates, **Series**

24   **2005-AR2.**" This error was corrected on August 11, 2011, when a new assignment of deed of

25   trust was recorded that properly identified the Trust name. (*Id.*, Ex. 5.)

26        Because plaintiff had not cured his default, on October 13, 2011, RTSC recorded a

Page 2 –    MOTION TO DISMISS

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon 97205
503-222-4424

1

2   Notice of Trustee's Sale, scheduling the foreclosure sale for January 2012. (*Id.*, Ex. 6.)  The

3   sale date was postponed and no sale has yet been completed.  Plaintiff filed this action on May

4   10, 2012, alleging claims for wrongful foreclosure, negligence, injunctive relief, declaratory

5   relief, slander of title, quiet title, and rescission.

6                  **DISCUSSION OF ISSUES AND AUTHORITY**

7   **A. Standard of Review**

8          Dismissal is required where the plaintiff "fail[s] to state a claim upon which relief can

9   be granted." CR 12(b)(6).  Rule 12(b)(6) "weeds out complaints where, even if what the

10   plaintiff alleges is true, the law does not provide a remedy." *McCurry v. Chevy Chase Bank,*

11   *FSB*, 169 Wash. 2d 96, 101 (2010).  In considering a Rule 12(b)(6) motion, the court takes as

12   true the factual allegations of the complaint, but it may disregard bare legal conclusions

13   asserted by the plaintiff. *Rodriguez v. Loudeye Corp.*, 144 Wash. App. 709, 717-18 (Wash. Ct.

14   App. Div. 1 2008).

15   **B. Washington does not recognize a claim for wrongful *initiation* of foreclosure.**

16         Even though no foreclosure sale has occurred yet, plaintiff's first claim is for wrongful

17   foreclosure.  Plaintiff contends that defendants lack standing to foreclose because of fraudulent

18   and defective documentation.  Regardless of the title assigned to this claim, it is a claim is for

19   wrongful *initiation* of foreclosure.  Washington, however, does not recognize such a claim.

20         Four years ago, the federal district court was faced with a claim of "illegal foreclosure"

21   in a situation identical to this one where no sale had yet occurred. *Henderson v. GMAC Mortg.*

22   *Corp.*, 2008 WL 1733265, at *5 (W.D. Wash. Apr. 10, 2008).  That court dismissed the claim,

23   explaining that "the Plaintiffs' claim for illegal foreclosure fails because . . . no foreclosure ever

24   occurred . . . ." *Id.*  The Ninth Circuit affirmed, holding that "[t]he district court also correctly

25   determined that the [plaintiffs] could not recover on their illegal foreclosure claim because no

26   foreclosure has occurred . . . ." 347 F. App'x at 302 (9th Cir. 2009) (memorandum opinion).

Page 3 –   MOTION TO DISMISS

1

2          Later, in *Pfau v. Washington Mutual, Inc.*, 2009 WL 484448, at *11 (E.D. Wash. Feb.

3  24, 2009), another federal district court dismissed a claim styled by the plaintiff as "wrongful

4  institution of foreclosure," explaining that "such a claim is not recognized in Washington.

5  '[T]here is no case law supporting a claim for damages for the *initiation* of an allegedly

6  wrongful foreclosure sale. Moreover, there is no statutory basis supporting a claim for

7  damages for wrongful *institution* of foreclosure proceedings.'" *Id.* at *12 (quoting *Krienke v.*

8  *Chase Home Fin., LLC*, 140 Wash. App. 1032, 2007 WL 2713737, at *5 (unpublished

9  opinion)) (emphasis in *Krienke*).

10          The court in *Vawter v. Quality Loan Service Corp.*, 707 F. Supp. 2d 1115, 1122-24

11  (W.D. Wash. 2010), followed and expanded on the reasoning of *Henderson*, *Pfau*, and *Krienke*,

12  noting that "the Washington legislature, in enacting the [Deed of Trust Act], established a

13  comprehensive scheme for the nonjudicial foreclosure process, including specific remedies for

14  grantors and borrowers facing the potential loss of their homes.  Interjecting a cause of action

15  for damages for wrongful institution of nonjudicial foreclosure proceedings into the DTA's

16  scheme would potentially upset the balance struck by the legislature." *Id.* at 1123.  The *Vawter*

17  court further explained that

18          recognizing a cause of action for damages for wrongful institution of foreclosure
            proceedings would potentially undermine the legislature's goal that the
19          nonjudicial foreclosure process remains efficient and inexpensive.  In this case,
            for instance, the [plaintiffs] do not contest their default under the terms of the
20          Note, but rather seek to pursue a damages claim predicated on the nonjudicial
            foreclosure proceedings.  This approach would spawn litigation under the DTA
21          for damages, thereby interfering with the efficient and inexpensive nature of the
            nonjudicial foreclosure process, while at the same time failing to address directly
22          the propriety of foreclosure or advancing the opportunity of interested parties to
            prevent wrongful foreclosure.  Although the court recognizes that an action for
23          damages might often have the incidental effect of stopping a trustee's sale, as in
            this case, it is not the statutory method established by the Washington legislature
24          to restrain a sale.

25  *Id.* at 1123-24.

26          Consistent with the federal courts applying Washington law, this Court should dismiss

Page 4 –    MOTION TO DISMISS

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon 97205
503-222-4424

1

2    plaintiff's wrongful foreclosure claim as a matter of law because no such claim exists in this

3    jurisdiction.  And even if there were such a claim, plaintiff cannot establish that he has suffered

4    any legally cognizable harm due to the initiation of foreclosure.  Plaintiff does not dispute that

5    he received the proceeds from the loan agreement that he entered into.  Nor does he dispute that

6    he is in default for failing to make the required payments under his Note or that non-payment is

7    a basis for his creditor to foreclose on the Secured Property under the terms of the Deed of

8    Trust.  Thus, plaintiff's wrongful foreclosure claim should be dismissed with prejudice.

9        **C.  Plaintiff's CPA claim is untimely and fails as a matter of law.**

10           1.  Plaintiff has not alleged any specific CPA claim.

11           Next, plaintiff asserts a claim under Washington's Consumer Protection Act without

12    identifying any specific actions that he asserts violate the statute *or* even which part of the CPA

13    that he alleges was violated.  For this reason alone, this claim should be dismissed for

14    insufficient pleading.  And as explained below, this claim also fails as a matter of substance.

15           2.  Plaintiff cannot state a CPA claim based on the loan origination because such claim
               is untimely and none of the moving defendants were involved in the loan
16             origination.

17           Plaintiff alleges that abusive lending practices were used when the loan was originated

18    and that he "neither wanted or needed" the loan that he received.  (Compl. at ¶ 3.29.)  To the

19    extent his CPA claim is based on those allegations, it is untimely.  Plaintiff received the loan at

20    issue in 2004, well beyond the CPA's four-year limitations period.  RCW 19.86.120.

21    Additionally, even if such claim were viable, it is not properly asserted against any of the

22    moving defendants because none of them were involved with the origination of plaintiff's loan.

23    IndyMac, which is not a party to this case, originated the loan.  (Compl. at ¶ 34, Ex. 1.)  MERS

24    was named only as beneficiary of the Deed of Trust; there is no allegation that it participated in

25    loan origination process.  (*See id.* at ¶¶ 3.3, 3.5.)  And Deutsche Bank did not acquire any

26    interest in the loan until after it was originated.  (*Id.* at ¶ 3.6.)

Page 5 –    MOTION TO DISMISS

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon97205
503-222-4424

1

2          Plaintiff wrongly suggests that OneWest and IndyMac are the same entity. (*Id.* at

3     ¶ 1.3.) They are not. As numerous courts have recognized, IndyMac is a failed institution, and

4     after it was taken over by the FDIC, certain of its assets, including servicing rights, were sold to

5     OneWest. *See, e.g., Thomas v. OneWest Bank, FSB*, 2011 WL 867880, * 8 (D. Or. Mar. 10,

6     2011). Not only is OneWest a wholly separate entity, it was not even formed until several

7     years after the events about which plaintiff complains. *See Akbari v. Aztec Foreclosure Corp.*,

8     2012 WL 2521992, *5 (E.D. Cal. June 27, 2012) (recognizing OneWest was not formed until

9     2009 and dismissing claim against OneWest related to loan origination that occurred several

10    years earlier). Thus, whereas none of the moving defendants originated plaintiff's loan, they

11    cannot be held liable for any violations of the CPA that may have occurred during origination.

12          3.   <u>Plaintiff cannot state a CPA claim based on his "robo-signer" theory.</u>

13          Plaintiff makes numerous allegations about defective documents and "robo signers,"

14    (*see* Compl. at ¶¶ 3.8-3.23), but he cannot state a CPA claim based on those allegations. Each

15    of the following elements must be established to succeed on a CPA claim: "(1) unfair or

16    deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4)

17    injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge*

18    *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). Plaintiff does not

19    plead any of these elements, let alone all of them. And courts have routinely dismissed CPA

20    claims raised in this context. *See, e.g., Mickelson v. Chase Home Fin., LLC*, 2012 WL

21    1301251, at *4-6 (W.D. Wash. Apr. 16, 2012) (dismissing CPA claims against MERS, loan

22    servicer, and deed of trust beneficiary).[1]

23          Further, plaintiff lacks standing to challenge the recorded documents as invalid because

24    he was not party to nor a third-party beneficiary of those documents. *See Lonsdale v.*

25    _____

26    [1] *See also Vawter*, 707 F. Supp. 2d at 1129-30; *Myers v. MERS*, 2012 WL 678148, at *5 (W.D. Wash. Feb. 24, 2012); *Thein v. ReconTrust Co., N.A.*, 2012 WL 527530, at *2 (W.D. Wash. Feb. 16, 2012); *Williams v. Wells Fargo Bank, NA*, 2012 WL 72727, at *8 (W.D. Wash. Jan. 10, 2012); *Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229, at *14-16 (W.D. Wash. Dec. 16, 2011) (all same).

Page 6 –    MOTION TO DISMISS

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon97205
503-222-4424

1

2  *Chesterfield*, 19 Wash. App. 27, 31 (1978) (to challenge validity of contract, plaintiff must be

3  party to it or third party beneficiary of it).  As one court recently explained:

> [E]ven if these allegations [of forgery] were well pled, Plaintiffs lack standing to
> challenge the validity of the [deed of trust] assignments.  Even if an assignment
> were voidable, an action to declare an assignment void could only be brought by
> someone who can demonstrate a concrete and particularized injury in fact that is
> fairly traceable to the challenged assignment.  No such injury is alleged.  Thus,
> Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged
> Assignments, and do not possess standing to assert a claim based on such.

8  *In re MERS*, 2011 WL 4550189, at *5 (D. Ariz. Oct. 3, 2011); *see also Brown v. U.S. Bancorp*,

9  2012 WL 665900, at *4 (C.D. Cal. Feb. 27, 2012) ("[B]ecause plaintiffs are not investors in

10  [the] loan, they lack standing to challenge the allegedly invalid assignment."); *Livonia Prop.*

11  *Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 748

12  (E.D. Mich. 2010) (same).

13         Finally, even if plaintiff could challenge these documents, he cannot establish that he

14  suffered any harm as a result of the claimed errors.  The loan is still in default, and the Secured

15  Property is still subject to foreclosure.  *See Henkels v. JP Morgan Chase Bank, NA*, 2012 WL

16  10380, at *3 (D. Ariz. Jan. 3, 2012) ("Plaintiff has failed to establish that his injury (foreclosure

17  of the Property) is fairly traceable to the challenged act of Defendant (filing a document it

18  allegedly knew to be forgery)."); *see also Herrera v. Fed. Nat.'l Mortg. Ass'n*, 141 Cal.Rptr.3d

19  326, 335-36 (Cal. Ct. App. 2012) (holding borrower must show actual prejudice suffered as a

20  result of claimed errors in foreclosure process).  As the Western District of Washington

21  recently stated, "robo-signing" claims are "nothing more than legal conclusions unsupported by

22  factual allegations.  These theories fail to demonstrate how Plaintiffs suffered damages from

23  this conduct . . . ."  *Mickelson v. Chase Home Fin., LLC*, 2012 WL 1301251, at *5 (W.D.

24  Wash. Apr. 16, 2012).

25         4.  Plaintiff cannot state a claim based on the Pooling and Servicing Agreement.

26         Plaintiff also challenges foreclosure arguing that the Pooling and Servicing Agreement

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon 97205
503-222-4424

1

2  governing the Trust ("PSA") was not complied with when his loan was transferred into the

3  Trust. (*See* Compl. at ¶¶ 3.8-3.11.)  Again, any claims asserted by plaintiff based on the PSA

4  necessarily fail because plaintiff is not a party to or beneficiary of such agreement, and,

5  therefore, is not entitled to enforce it.  *Livonia Property Holdings, LLC*, 717 F.Supp.2d at 737;

6  *Frazer v. Deutsche Bank Nat. Trust Co.*, 2012 WL 1821386, at *2 (WD Wash. May 18, 2012).

7      **D. Plaintiff's negligence claim is also untimely and fails as a matter of law.**

8          Consistent with his other claims, plaintiff's negligence claim is entirely conclusory and

9  fails to identify with any specificity what it is that he thinks was negligent.  Again, to the

10  degree this claim is based on actions which occurred prior to 2009, including the loan

11  origination, it is time-barred.  *See* RCW 4.16.080(1) (three-year statute of limitations for tort

12  actions).  To the degree that he complains about later conduct (i.e., the alleged document errors

13  discussed above), those allegations are meritless, as discussed above in Section C(2)(3).

14          Additionally, for the negligence claim, plaintiff needs to identify "a tort duty arising

15  independently of the terms of the contract."  *Eastwood v. Horse Harbor Found., Inc.*, 170

16  Wash. 2d 380, 389 (2010).  "The general rule in Washington is that a lender is not a fiduciary

17  of its borrower."  *Miller v. U.S. Bank of Wash., N.A.*, 72 Wash. App. 416, 426-27 (1994).

18  Plaintiff has not identified any tort duty that any of the moving defendants owed to him.  For

19  those reasons, courts in Washington have routinely dismissed foreclosure-based negligence

20  claims.  *See, e.g., Schwarz v. World Sav. Bank*, 2012 WL 993295, at *7 (W.D. Wash. Mar. 23,

21  2012); *Tuttle v. Bank of N.Y. Mellon*, 2012 WL 726969, at *6 (W.D. Wash. Mar. 6, 2012);

22  *Myers v. MERS*, No., 2012 WL 678148, at *5 (W.D. Wash. Feb. 24, 2012); *Schanne v.*

23  *Nationstar Mortg. LLC*, 2011 WL 5119262, at *3 (W.D. Wash. Oct. 27, 2011); *Thornes v. IMB*

24  *Lender Business Proc. Svcs., Inc.*, 2011 WL 677428, at *3 (W.D. Wash. Feb. 15, 2011).

25      **E. Plaintiff's slander of title claim fails as a matter of law.**

26          "[I]nitiation of foreclosure proceedings cannot form the basis of a slander of title

Page 8 –     MOTION TO DISMISS

1

2   claim." *Beaton v. JPMorgan Chase Bank N.A.*, 2012 WL 909768, at *3 n.5 (W.D. Wash. Mar.

3   15, 2012); *see also id.* ("[T]he initiation of foreclosure proceedings cannot be deemed

4   malicious in the context of a bona fide dispute over mortgage payments.") (quoting *Krienke v.*

5   *Chase Home Fin., LLC*, 140 Wash. App. 1032, 2007 WL 2713737, at *6 (unpublished

6   opinion)). The federal court in Western Washington has repeatedly rejected slander of title

7   claims brought by property owners in an attempt to avoid foreclosure. *See, e.g., Siver v.*

8   *CitiMortgage, Inc.*, 830 F. Supp. 2d 1194, 1200-01 (W.D. Wash. 2011); *Frase v. U.S. Bank,*

9   *NA*, 2012 WL 1658400, at *9-*10 (W.D. Wash. May 11, 2012); *Fay v. MERS*, 2012 WL

10   993437, at *5 (W.D. Wash. Mar. 22, 2012). This Court should do the same.

11      **F. Plaintiff's claim for quiet title fails as a matter of law.**

12         Plaintiff's quiet title claim asserts, without explanation, that he "is entitled to an order of

13   this Court quieting title to the contested real property in its favor, and extinguishing all rights

14   and claims of the defendants in this action to any claim upon the subject real property."

15   (Compl. at ¶ 10.2.) Plaintiff is not entitled to such relief. First, none of the moving defendants

16   claim any *title interest* in the Secured Property. Therefore, no quiet title claim exists against

17   them. *See Brashkis v. Hyperion Capital Group, LLC*, No. 11-5635-RBL, 2011 WL 6130787, at

18   *4 (W.D. Wash. Dec. 8, 2011) (dismissing quiet title claim as to defendants who claimed no

19   title or other interest in the property at issue). Likewise, plaintiff's claim fails against Deutsche

20   Bank because a property owner cannot quiet title in itself against a mortgage lender without

21   paying the mortgage. Federal court applying Washington law have repeatedly so held. *See,*

22   *e.g., Evans v. BAC Home Loans Servicing LP*, 2010 WL 5138394 (W.D. Wash. Dec. 10, 2010).

23         In *Evans*, the plaintiffs brought a quiet title action against the defendant, which had

24   instituted nonjudicial foreclosure proceedings. The plaintiffs asserted that because the

25   defendant had not shown proof that it was entitled to enforce their loan, they owned the

26   property free and clear of the deed of trust lien. The district court dismissed the quiet title

Page 9 –    MOTION TO DISMISS

1

2 claim because the defendant had not "asserted a title interest in the subject property," which is a

3 prerequisite. *Id.* at \*3. Even though the defendant claimed a *security interest* in the property

4 and sought to turn that security interest into an ownership interest through a nonjudicial

5 foreclosure, such "does not constitute a claim of *title* on the part of the Defendant." *Id.* at \*4

6 (emphasis added); *see id.* at \*3 ("Plaintiffs do not allege that Defendant is claiming ownership

7 of the Property, so Defendant is not a proper party to a quiet title action.").

8      The *Evans* court also dismissed the quiet title claim because borrowers "cannot assert

9 an action to quiet title against a purported lender without demonstrating that they have satisfied

10 their obligations under the Deed of Trust." *Id.* at \*3; *see also id.* ("Plaintiffs should not be able

11 to obtain free and clear title to their home without showing that they have paid their

12 mortgage."). As the court explained:

13      The logic of such a rule is overwhelming. Under a deed of trust, a borrower's
       lender is entitled to invoke a power of sale if the borrower defaults on its loan
14     obligations. As a result, the borrower's right to the subject property is contingent
       upon the borrower's satisfaction of loan obligations. Under these circumstances,
15     it would be unreasonable to allow a borrower to bring an action to quiet title
       against its lender without alleging satisfaction of those loan obligations. Plaintiffs
16     have not provided any rationale that would support an alternate rule.

17 *Id.* at \*4. Washington federal courts have repeatedly followed the reasoning of *Evans*. Under

18 this authority, plaintiff's quiet title claim fails in this case because none of the moving

19 defendants are asserting any claim to the title of plaintiff's property, and plaintiff's own

20 Complaint shows that the mortgage is in default. Nowhere does plaintiff allege any intention or

21 ability to cure that default. Thus, a both a matter of law and equity, plaintiff is not entitled to

22 inherit an encumbered property and then strip it of the encumbrance without repaying the debt.

23 **G. Plaintiff's request for rescission of his loan contract fails as a matter of law and
       equity.**
24
       For all of the reasons previously discussed, plaintiff has not alleged *any* legitimate basis
25
   for rescinding his loan contract. But even if he had, his claim for rescission fails. "It is a well-
26
   settled rule that a party in default cannot maintain an action of rescission without first tendering

Page 10 –   MOTION TO DISMISS

1

2    performance, or showing a willingness to perform, or else clearly establishing such facts as

3    would excuse performance by him." *Eberhart v. Lind*, 173 Wash. 316, 319 (1933).

4         Here, the principal balance owing on the loan is over $700,000.00. (*See* Compl., Ex. 6

5    at 2.)  Plaintiff has not alleged that he is ready, willing, or able to repay the balance.  Nor has he

6    alleged any excuse for its failure to tender the loan balance.  Under these circumstances,

7    Washington courts routinely deny the remedy of rescission. *See Eberhart* 173 Wash. at 319;

8    *see also Hopper v. Williams*, 27 Wash. 2d 579, 587 (1947) (en banc) ("On the principle that he

9    who seeks equity must do equity, it is the general rule that one who demands rescission of a

10    contract of purchase to which he is a party must restore or offer to restore to the other party

11    whatever he may have received under the contract in the way of money, property, or other

12    consideration or benefit.").

13    **H. Plaintiff's claims for injunctive and declaratory relief fail as a matter of law.**

14         Plaintiff requests that the Court enter a judgment declaring his Note and Deed of Trust

15    "null and void." (Compl. at ¶ 3.1.)  Essentially this is the same as plaintiff's rescission claim,

16    and this request must be rejected for the same reasons stated in section G, above.  Plaintiff also

17    requests that the Court prevent any attempt by defendants to sell the Property.  Washington's

18    Trust Deed Act allows a borrower to seek an injunction against foreclosure "on any proper

19    legal or equitable ground." RCW 61.24.130(1).   This is not a freestanding *claim*; it is a

20    *remedy. Hollis v. Garwall, Inc.*, 88 Wash. App. 10, 16 (Wash. Ct. App. Div. 1 1997).  And

21    when seeking an injunction, the plaintiff must demonstrate that there is a cognizable wrong to

22    be corrected. *See id.* ("The essential elements of the right to injunctive relief are necessity and

23    irreparable injury."); *see also* RCW 61.24.130(1).

24         As already discussed, plaintiff cannot do this.  He has failed to make payments as

25    promised under the terms of his loan for several years, and he has not identified any cognizable

26    error entitling him to relief that he seeks.  In addition to the arguments discussed above,

LARKINS VACURA LLP
621 SW Morrison St., Ste 1450
Portland, Oregon97205
503-222-4424

1

2   plaintiff alleges that "[t]here is no evidence of proof of ownership of a promissory note or a

3   deed of trust by any of the defendants." (Compl. at ¶ 3.45.)  It is not clear what plaintiff means

4   by those allegations, but he seems to be making the familiar "show me the note" argument,

5   asserting that the initiation of foreclosure was unlawful because defendants did not produce to

6   plaintiff the original "wet ink" promissory note evidencing the debt, in order to prove that

7   defendants own or hold the note.  This argument has been repeatedly discredited:

8           In 2009, a foreclosure defense colloquially termed "show me the note" began
            circulating through courts across the country.  Advocates of this theory believe
9           "that only the holder of an original wet-ink signature note has the lawful power to
            initiate a non judicial foreclosure."  Courts have routinely rejected the defense on
10          the ground that foreclosure statutes simply do not require production of the
            original note at any point during the proceedings.

11  *Stein v. Chase Home Fin., LLC*, 2010 WL 4736828, at *3 (D. Minn. Aug. 13, 2010) (citations

12  omitted; quoting *Sundell-Bahrd v. Tiffany & Bosco, P.A.*, 2010 WL 2595083, at *1 (D. Ariz.

13  June 24, 2010)); *see also, e.g., Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1170

14  (W.D. Wash. 2011); *Wallis v. IndyMac Fed. Bank*, 717 F. Supp. 2d 1195, 1200 (W.D. Wash.

15  2010); *Vawter*, 707 F. Supp. 2d at 1127 (W.D. Wash. 2010).  This Court should likewise reject

16  this argument.  And without any viable underlying claim for relief, plaintiff is not entitled to

17  injunctive relief and this claim should be denied with prejudice.

18                                  **CONCLUSION**

19          For the foregoing reasons, this case should be dismissed in its entirety with prejudice.

20  Plaintiff cannot dispute his default and he has failed to allege any claim upon which he is

21  entitled to relief.

22          DATED:  July 27, 2012.

23                                  LARKINS VACURA LLP

24
                                    /s/ Danielle J. Hunsaker
25                                  Danielle J. Hunsaker, WSBA #43430
                                    dhunsaker@larkinsvacura.com
26                                  Attys for OneWest Bank, MERS, MERSCORP, &
                                    Deutsche Bank National Trust Company


Page 12  –   MOTION TO DISMISS                    LARKINS VACURA LLP
                                                  621 SW Morrison St., Ste 1450
                                                  Portland, Oregon97205
                                                  503-222-4424

The Honorable Judge Regina Cahan
Hearing Date: August 24, 2012
Hearing Time: 11:00 a.m.
Submitted by:  Defendants / Moving Parties

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

JOSE JIMENEZ, an individual,

        Plaintiff,

    v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION (Fannie Mae); NORTHWEST
TRUSTEE SERVICES, INC.; and the
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

        Defendants.

No.  11-2-38345-8KNT

**ORDER GRANTING DEFENDANTS
MOTION TO DISMISS**

THIS MATTER having come before the undersigned judge on Defendants Federal National Mortgage Association ("FNMA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Northwest Trustee Services, Inc. ("Northwest Trustee") (collectively, "Defendants") motion to dismiss, and the Court having reviewed the materials submitted, and the Court determining that Plaintiff has failed to state a claim upon which relief can be granted as to FNMA, MERS, and Northwest Trustee, IT IS HEREBY ORDERED that this action commenced by Plaintiff is hereby dismissed, in entirety, with prejudice as to Defendants FNMA, MERS, and Northwest Trustee.

DATED: this 3 0 day of _____, 2012.

_____
The Honorable Judge Regina Cahan

ORDER OF DISMISSAL -1 of 2

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

ORIGINAL

1

2    Presented by:

3    **ROUTH CRABTREE OLSEN, P.S.**

4    By:

5        Heidi E. Buck, WSBA No. 41769
         Of Attorneys for Defendants Federal
6        National Mortgage Association, Mortgage
         Electronic Registration Systems, Inc., and
7        Northwest Trustee Services, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER OF DISMISSAL -2 of 2

ROUTH
CRABTREE
OLSEN, P.S.   |   13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# Appendix C

1

2

The Honorable Regina Cahan
Hearing Date: Friday, August 24, 2012
Hearing Time: 11:00 a.m.
Moving Party: Defendants

3

4

5

6

7

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

8

9   JOSE JIMENEZ, an individual,

Plaintiff,

10

v.

11

12   FEDERAL NATIONAL MORTGAGE
ASSOCIATION (Fannie Mae); NORTHWEST
TRUSTEE SERVICES, INC.; and the
13   MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

14

Defendants.

15

No. 11-2-38345-8KNT

**DEFENDANTS FEDERAL NATIONAL
MORTGAGE ASSOCIATION,
NORTHWEST TRUSTEE SERVICES,
INC., AND MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.'S REPLY TO
PLAINTIFF'S SUPPLEMENTAL
BRIEFING**

16   Defendants Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic

17   Registration Systems, Inc. ("MERS"), and Northwest Trustee Services, Inc. ("Northwest

18   Trustee") (collectively, "Defendants") submit the following in reply to the Plaintiff's

19   Supplemental Briefing.

20   **I. REPLY TO SUPPLEMENTAL BRIEFING**

21   **A. The Washington State Supreme Court's holding in *Bain* and *Selkowitz*.**

22   On or about August 16, 2012, the Washington State Supreme Court issued a decision in

23   the matters *Bain v. Metropolitan Mortgage Group* and *Selkowitz v. Litton Loan Servicing, LP*

24   (hereafter referred to as "*Bain*")[1] in response to certification of three questions from the

25   Honorable John C. Coughenour in the Western District Court of Washington.

26   _____

[1] *Bain v. Metro. Mortg. Grp., Inc.,* --- Wn.2d ---, --- P.3d ---, 2012 (August 16, 2012), No. 86206-1 consolidated
with No. 86207-9. As of August 23, 2012, no Westlaw citation is currently available. The full opinion is available at
http://www.courts.wa.gov/opinions/index.cfin?fa=opinions.showOpinion&filename=862061MAJ.

REPLY TO SUPPLEMENTAL BRIEFING IN
SUPPORT OF DEFENDANTS MOTION TO
DISMISS – Page 1 of 6

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Judge Coughenour certified the following three questions for consideration by the

2    Supreme Court:

   1. Is Mortgage Electronic Registration Systems, Inc., a lawful
3      "beneficiary" within the terms of Washington's Deed of Trust Act,
       Revised Code of Washington section 61.24.005(2), if it never held the
4      promissory note secured by the deed of trust?

5    2. If so, what is the legal effect of Mortgage Electronic Registration
       Systems, Inc., acting as an unlawful beneficiary under the terms of
6      Washington's Deed of Trust Act?

7    3. Does a homeowner possess a cause of action under Washington's Consumer
       Protection Act against Mortgage Electronic Registration Systems, Inc., if
8      MERS acts as an unlawful beneficiary under the terms of Washington's
       Deed of Trust Act?

9    *Bain*, *5.

10   In answering the first question, the *Bain* court held that the beneficiary, as defined under

11   RCW 61.24.005(2), is the note holder. *Bain*, *2. The *Bain* court relied on the Uniform

12   Commercial Code in reaching its conclusion. *Id.* at 20. As the *Bain* court noted, under the UCC

13   as adopted in Washington, the "holder" with respect to a negotiable instrument, means the person

14   in possession if the instrument is payable to bearer," and a "holder" is entitled to enforce an

15   instrument. *See* Bain, Pg. 21 citing RCW 62A.3-205; RCW 62A.3-301; 62A.1-201(20). Thus,

16   the *Bain* court reasoned, if MERS is not the note holder, it is not the beneficiary. *Id.* Moreover,

17   the *Bain* court noted that if MERS could prove it is an agent of the beneficiary, it could act as a

18   representative of the note holder. *Bain*, *24-25.

19   The *Bain* court declined to answer the second question. *Id.* at 28. However, in doing so,

20   the *Bain* court did point out that suggestions by one of the borrowers that a deed of trust naming

21   MERS would be rendered void and unenforceable was not supported by any authority, that

22   simply naming MERS in the original deed of trust does not relieve the borrowers of their

23   obligation to pay the actual note holder or entitle the borrower plaintiff to quiet title. *Bain*, *30.

24   Finally, in answering the third question, the *Bain* court held that while a CPA cause of

25   action may lie, a representation that MERS is the beneficiary is not a per se violation, and in

26   order to prevail on such a claim, the Plaintiff must prove all five CPA elements. *Bain*, *4 and 36.

REPLY TO SUPPLEMENTAL BRIEFING IN
SUPPORT OF DEFENDANTS MOTION TO
DISMISS – Page 2 of 6

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**B. The present case is factually distinguishable from *Bain* because the actual note holder initiated and carried out the nonjudicial foreclosure and appointed the successor trustee.**

The present case is factually distinguishable from *Bain*. In applying the *Bain* court's analysis to the present case, Plaintiff overlooks two crucial factual distinctions.

First, in both *Bain* and *Selkowitz*, MERS appointed the trustees who initiated the foreclosure proceedings.[2] *Bain*, \*3. Here, however, as note holder Fannie Mae, through its attorney-in-fact IBM Lender Business Process Services, Inc., appointed Northwest Trustee Services as successor trustee by recording an appointment of successor trustee ("Appointment") under King County Auditor's File No. 20110330000788. *See* Dkt. 17, Exhibit 5.

Second, in both *Bain* and *Selkowitz*, the foreclosure was initiated and attempted to have been carried out in the name of MERS. Here, however, at no time was the foreclosure carried out in the name of MERS and at no time did Fannie Mae rely on acts by MERS as beneficiary to carry out the foreclosure. *See* Dkt. 17, Exhibits 4[3], 5,[4] and 6[5].

Rather, Fannie Mae's authority to act and foreclose was based solely on its status as note holder.[6] The very judge that certified the questions in *Bain* for consideration by the Supreme Court, Judge Coughenour, has agreed that cases where the foreclosure is carried out by the note holder and based on the authority as note holder, the issues in *Bain* are inapplicable. *See Florez v. OneWest Bank, F.S.B.*, C11-2088-JCC, 2012 WL 1118179 (W.D. Wash. Apr. 3, 2012).

---

[2] "In May 2010, MERS, in its role as the beneficiary of the deeds of trust, named Quality Loan Service Corporation as the successor trustee in Selkowitz's case, and Regional Trustee Services as the trustee in Bain's case." *Bain*, \*3.

[3] Northwest Trustee Services, Inc. and Fannie Mae ("Federal National Mortgage Association") are listed as the Grantors of the Deed of Trust on the Notice of Sale recorded April 13, 2011. *See* Dkt. 17, Ex. 4.

[4] Fannie Mae ("Federal National Mortgage Association") is identified as the beneficiary appointing Northwest Trustee Services, Inc. as successor trustee. *See* Dkt. 17, Ex. 5.

[5] Paragraph 5 under the Trustee's Deed identifies Fannie Mae ("Federal National Mortgage Association") as the "holder of the indebtedness secured by the Deed of Trust." *See* Dkt. 17, Ex. 6.

[6] As discussed in Defendants' motion to dismiss, the fact that MERS assigned the deed of trust to Fannie Mae also has no bearing. In Washington, an assignment of deed of trust is not what confers beneficiary status and are recorded only to provide notice to third parties, not the borrower, of the security interest. *Corales v. Flagstar Bank, FSB*, --- F. Supp.2d ---, 2011 WL 4899957, \*5 (W.D. Wash. 2011); *United Home Loans*, 71 B.R. at 891 ("Recording of the assignments is for the benefit of third parties."). Moreover, an assignment by MERS, even if MERS had no rights to assign, is of no effect given that Fannie Mae's authority was derived from its status as note holder.

---

REPLY TO SUPPLEMENTAL BRIEFING IN
SUPPORT OF DEFENDANTS MOTION TO
DISMISS – Page 3 of 6

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1         "First, the situation at issue here is unlike the situation in *Bain v. Metro. Mortg. Group Inc.*, No. 09–0149–JCC, 2011 WL 917385 (W.D.Wash. Mar.15, 2011). In *Bain*, the alleged authority to foreclose was based solely on MERS's assignment of the deed of trust, rather than on possession of the Note. Here, however, the undisputed facts establish that OneWest had authority to foreclose, independent of MERS, since OneWest held Plaintiffs' Note at the time of foreclosure."

5     *Id.*

6         Thus, just as in *Florez*, the issues presented in *Bain* are utterly irrelevant to the present

7 case.

**C. The holding in *Bain* supports Defendants' position.**

9         As discussed *supra*, under *Bain*, only the actual note holder may be the beneficiary with

10 the power to appoint a trustee and proceed with a nonjudicial foreclosure. *Bain*, *3. Here, that is

11 precisely what occurred. As discussed at length in Defendants' motion to dismiss, Fannie Mae,

12 as holder of the blank indorsed note, acted as beneficiary at all times relevant to the nonjudicial

13 foreclosure by initiating the underlying nonjudicial foreclosure and appointing the successor

14 trustee who carried out the foreclosure. *See* Dkt. 17, Sec. (V)(C)(A)(2) and (3). If anything, the

15 *Bain* holding supports Defendants' position that Fannie Mae, as note holder, was entitled to

16 foreclose.

**D. *Bain* does not disturb the Waiver Doctrine that bars Plaintiff's Wrongful Foreclosure and IIED claims.**

19         As discussed in Defendants' motion to dismiss, Plaintiff's wrongful foreclosure and

20 intentional infliction of emotional distress claims are waived based on Plaintiff's failure to take

21 advantage of his presale remedies. *Plein v. Lackey*, 149 Wn.2d 214, 225, 67 P.3d 1061,

22 1067 (2003) (citing *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)); *see also* Dkt.

23 17, Sec. (V)B. The *Bain* court did not disturb the waiver doctrine, and Plaintiff does not make

24 such an argument. Thus, even if Plaintiff had pled sufficient facts to support a wrongful

25 foreclosure or IIED claim, relating to MERS' role or otherwise, Plaintiff is barred from bringing

26 such claims under the waiver doctrine.

---

REPLY TO SUPPLEMENTAL BRIEFING IN
SUPPORT OF DEFENDANTS MOTION TO
DISMISS – Page 4 of 6

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**E. Plaintiff still fails to state a claim under the Consumer Protection Act.**

Plaintiff still fails to state a claim under the CPA. The *Bain* court determined that a representation that MERS is the deed of trust beneficiary is not a per se violation. Rather, the *Bain* court held that in order to prevail on a CPA claim, the Plaintiff must prove each of the five elements necessary to support a CPA claim. *Bain*, Pg. 4.

As previously discussed, a claim for violation of the Washington Consumer Protection Act ("CPA") requires proof of: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) with a public interest impact; and (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Failure to meet any one of these elements under the CPA is fatal to the claim and requires dismissal. *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002).

In discussing the required injury element, the *Bain* court noted "if there have been misrepresentations, fraud, or irregularities in the proceedings, and if the homeowner borrower cannot locate the party accountable and with authority to correct the irregularity, there certainly could be injury under the CPA." *Bain*, Pg. 38-39. Here, the note holder, Fannie Mae, was both consistent and consistently identified throughout the foreclosure process. Fannie Mae took no action in reliance upon acts MERS as beneficiary, and as note holder it did not need to.

Finally, in regard to the final element, causation, Plaintiff does not dispute his default. The "injury" suffered by Plaintiff, the loss of his home, was brought on by Plaintiff's own default, and is the agreed upon consequence of Plaintiff's default based on the terms of the contract he signed.

//

//

//

///

REPLY TO SUPPLEMENTAL BRIEFING IN
SUPPORT OF DEFENDANTS MOTION TO
DISMISS – Page 5 of 6

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

**I.   CONCLUSION**

2      Defendants respectfully request that this Court consider the foregoing in further support

3  of their Motion to Dismiss.

4

5      DATED this 23rd day of August, 2012.

6

7                                      **ROUTH CRABTREE OLSEN, P.S.**

8

9                                      Heidi E. Buck, WSBA #41769
                                       Of Attorneys for Defendants Federal
                                       National Mortgage Association, Mortgage
10                                     Electronic Registration Systems, Inc., and
                                       Northwest Trustee Services, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY TO SUPPLEMENTAL BRIEFING IN
SUPPORT OF DEFENDANTS MOTION TO
DISMISS – Page 6 of 6

**ROUTH
CRABTREE
OLSEN, P.S.**

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

The Honorable Judge Regina Cahan
Hearing Date: April 20, 2012
Hearing Time: 9:00 a.m.
Moving Party: Defendants

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| JOSE JIMENEZ, an individual, | ) |
| Plaintiff, | ) No. 11-2-38345-8KNT |
| v. | ) **DEFENDANTS FEDERAL NATIONAL** |
| FEDERAL NATIONAL MORTGAGE | ) **MORTGAGE ASSOCIATION,** |
| ASSOCIATION (Fannie Mae); NORTHWEST | ) **NORTHWEST TRUSTEE SERVICES,** |
| TRUSTEE SERVICES, INC.; and the | ) **INC., AND MORTGAGE** |
| MORTGAGE ELECTRONIC | ) **ELECTRONIC REGISTRATION** |
| REGISTRATION SYSTEMS, INC., | ) **SYSTEMS, INC.'S MOTION TO** |
| | ) **DISMISS PLAINTIFF'S COMPLAINT** |
| Defendants. | ) |

## I.   RELIEF REQUESTED

COME NOW, Defendants Federal National Mortgage Association ("FNMA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Northwest Trustee Services, Inc. ("Northwest Trustee") (collectively, "Defendants"), by and through its counsel of record, Heidi E. Buck of Routh Crabtree Olsen, P.S., and moves the Court for an Order of Dismissal pursuant to CR 12(b)(6) on the grounds that Plaintiff Jose Jimenez's Complaint fails to state any claim upon which relief can be granted.

## II.   STATEMENT OF FACTS

### A. The Loan Documents demonstrate Fannie Mae was the Holder and Authorized to Foreclose Plaintiffs' Deed of Trust

*The Promissory Note.* In August 2007, Jose Luis Jimenez ("Plaintiff" or "Borrower") obtained a home loan ("Loan") evidenced by a promissory note ("Note") from Sierra Pacific

DEFENDANTS' MOTION TO DISMISS
-- Page 1 of 15

ROUTH
CRABTREE
OLSEN. P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Mortgage Company, Inc. ("Sierra Pacific") in the amount of $364,000.00. *See* Complaint, ¶ 6.

2    The Note expressly stated that Plaintiff "understands that Lender may transfer this Note." The

3    Note demonstrates that Sierra Pacific specially indorsed the Note to JPMorgan Chase Bank,

4    N.A., and JPMorgan Chase Bank, N.A. indorsed the Note in blank making it bearer paper. A true

5    and correct copy of the Note is attached hereto as Exhibit 1.[1] ER 902(i).

6         ***The Deed of Trust.*** In order to secure repayment of the Note, Plaintiff granted to

7    Mortgage Electronic Systems Registration, Inc. ("MERS") as nominee for the Lender, Sierra

8    Pacific, and Lender's successors and assigns, a deed of trust ("Deed of Trust"). The Deed of

9    Trust encumbered the real property ("Property") commonly known as 24005 35th Avenue South,

10    Kent, Washington 98032. The Deed of Trust was recorded on August 30, 2007, as King County

11    Auditor's File No. 20070803000238. *See* Complaint, ¶ 6. A true and correct copy of the recorded

12    Deed of Trust is attached hereto as Exhibit 2. *See* Declaration of Heidi E. Buck ("Buck Decl."), ¶

13    2.

14         Like the Note, the Deed of Trust explained: "The Note or a partial interest in the Note

15    (together with this Security Instrument) can be sold one or more times without prior notice to

16    Borrower." *Id.* at 20. The Deed of Trust also empowered the Lender to direct a trustee to initiate

17    foreclosure upon default. *Id.* at 22. Plaintiff signed the Deed of Trust. *Id.*

18         ***Fannie Mae's interest in the Note and Deed of Trust.*** As evidenced by the indorsements

19    on the Note, Sierra Pacific specially indorsed the Note to JPMorgan Chase Bank, N.A., its

20    successors and/or assigns. Thereafter, JPMorgan Chase Bank, N.A. indorsed the Note in blank

21    making it bearer paper. Thus, when Fannie Mae took possession of the Note on or about October

22    2007, it became the holder.

23         On March 25, 2011, MERS executed an assignment to Federal National Mortgage

24    Association of any remaining beneficial interest MERS had under the Deed of Trust. The

25

26    [1] This court may take judicial notice of publicly recorded documents and may consider the documents without turning this motion into one for summary judgment. *Rodriquez v. Loudeye Corp.*, 144 Wn. App. 709, 725-726, 189 P.3d 168 (2008). And, documents whose contents are alleged in a complaint may also be considered, even if not physically attached to the complaint. *Id.*

DEFENDANTS' MOTION TO DISMISS
– Page 2 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Assignment was recorded March 30, 2011, under King County Auditor's File No.
2   20110330000787. A true and correct copy of the recorded Assignment is attached hereto as
3   Exhibit 3. Buck Decl., ¶ 3. Thus, as of that date Fannie Mae was not only beneficiary as a matter
4   of law (due to its status as Note holder, RCW 61.24.005(2)), but also beneficiary of record under
5   the Deed of Trust.  Complaint ¶¶ 17 (citing RCW 61.24.005(2)); *id.* ¶ 6.28; *see also* RCW
6   62A.3-205(b) (instrument indorsed in blank transferable by possession alone); RCW
7   61.24.030(8) (beneficiary may initiate foreclosure)).

8       ***Plaintiff's Default.*** Plaintiff defaulted under the terms of the Note and Deed of Trust by
9   failing to make the payment due on October 1, 2009, and every payment thereafter due. *See* Notice
10  of Sale. A true and correct copy of the recorded Notice of Sale is attached hereto as Exhibit 4.
11  Buck Decl., ¶ 4.

12      ***The Nonjudicial Foreclosure Proceeding.*** On March 30, 2011, Fannie Mae, through its
13  attorney-in-fact IBM Lender Business Process Services, Inc., appointed Northwest Trustee
14  Services as the Successor Trustee by recording an appointment of successor trustee
15  ("Appointment") under King County Auditor's File No. 20110330000788. The Appointment
16  vested Northwest Trustee with the powers of the original trustee. A true and correct copy of the
17  recorded Appointment is attached as Exhibit 5. Buck Decl., ¶ 5.

18      Northwest Trustee recorded a notice of trustee's sale ("Notice of Sale") on April 13,
19  2011, under King County Auditor's File No. 20110413000699. *See* Complaint, ¶ 13. *see also* a
20  true and correct copy of the Notice of Sale attached hereto as Exhibit 4. The Notice of Sale set a
21  sale date of July 22, 2011. *Id.*

22      At no time prior to July 22, 2011, did Plaintiff file a lawsuit or move the Court to restrain
23  the trustee's sale. *See* Dkt.

24      ***The Trustee's Sale.*** On July 22, 2011, the Property sold to Fannie Mae as the highest
25  bidder via a trustee's sale. A trustee's deed ("Trustee's Deed") was executed and delivered to
26  Fannie Mae and thereafter recorded on July 29, 2011, under King County Auditor's File No.
    20110729001037. *See* Complaint, ¶ 14; *see also* a true and correct copy of the recorded Trustee's

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  Deed attached hereto as Exhibit 6. Buck Decl., ¶ 6.

2                        **III.   STATEMENT OF ISSUES**

3  The following issue is presented for resolution by the Court:

4        1.  Whether the Court must dismiss all claims against Defendants FNMA, MERS,

5            and Northwest Trustee pursuant to CR 12(b)(6).

6                        **IV.   EVIDENCE RELIED UPON**

7  This motion is based upon:

8            1.  Plaintiff's Complaint and the Exhibits attached thereto;

9            2.  This Motion, Memorandum of Law, and the Exhibits attached hereto.

10                       **V.   AUTHORITY & ARGUMENT**

11   **A. LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO CR
         12(b)(6).**

12       Under CR 8(a)(1), a Complaint need only set forth a short and plain statement of a claim

13  showing that the pleader is entitled to relief. *Berge v. Gorton*, 88 Wn.2d 756, 759, 567 P.2d 187

14  (1977). Despite the liberal rules of pleading, a Complaint must contain direct allegations

15  sufficient to give notice of the nature of the claim to the court and the opponent. *Id.* at 762.

16       Under CR 12(b)(6), a party may move to dismiss for failure to state a claim upon which

17  relief can be granted.  Dismissal is proper where claims are legally insufficient even after

18  considering hypothetical facts. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 215, 118 P.3d 311

19  (2005). The gravamen of the court's inquiry is whether the plaintiff's claim is legally sufficient,

20  which is answered by looking to the face of the pleadings. *Id.*; *Rodriguez v. Loudeye Corp.*, 144

21  Wn. App. 709, 725, 189 P.3d 168 (2008).

22       But in addition to the pleadings, "[d]ocuments whose contents are alleged in a complaint

23  but which are not physically attached to the pleading may also be considered in ruling on a CR

24  12(b)(6) motion to dismiss." *Rodriguez* at 726.  Submission of extraneous material normally

25  converts a CR 12(b)(6) motion into summary judgment. *See Hansen v. Friend*, 59 Wn.App. 236,

26  797 P.2d 521 (1990). However, "if the court can say that no matter what facts are proven within

DEFENDANTS' MOTION TO DISMISS
– Page 4 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  the context of the claim, plaintiffs would not be entitled to relief, motion remains one under CR

2  12(b)(6)." *Haberman v. Washington Public Power Supply System*, 109 Wn.2d 107,121, 744 P.2d

3  1032 (1987).

4      Under ER 201(b), a court may take judicial notice of public documents if their

5  authenticity cannot reasonably be disputed without converting a motion to dismiss into a motion

6  for summary judgment. *Rodriguez, supra.* at 725.[2]

7      Here, application of CR 12(b)(6) necessitates dismissal of Plaintiff's complaint, in its

8  entirety, as to Defendants Fannie Mae, MERS, and Northwest Trustee.

9  **B. AS A MATTER OF LAW, PLAINTIFF CANNOT STATE CLAIMS FOR**
   **WRONGFUL FORECLOSURE AND INFLICTION OF EMOTIONAL**
10  **DISTRESS BECAUSE SUCH CLAIMS ARE WAIVED.**

11      Plaintiff's failure to exercise available pre-sale remedies results in waiver of claims under

12  RCW 61.24.127. The Washington Deed of Trust Act ("DTA") has been construed to promote

13  three distinct goals, which include: 1) that the nonjudicial foreclosure process should be efficient

14  and inexpensive; 2) that the process should result in interested parties having an adequate

15  opportunity to prevent wrongful foreclosure; and 3) that the process should promote stability of

16  land titles. *Plein v. Lackey*, 149 Wn.2d 214, 225, 67 P.3d 1061, 1067 (2003) (citing *Cox v.*

17  *Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

18      Under Washington law, failure to take advantage of the presale remedies as provided by

19  the DTA results in waiver of the right to object to the sale where a party 1) received notice of the

20  right to enjoin the sale, 2) had actual or constructive knowledge of a defense to foreclosure prior

21  to the sale, and 3) failed to bring an action to obtain a court order enjoining the sale. *Plein v.*

22  *Lackey*, 149 Wn.2d 214, 227, 67 P.3d 1061, 1067 (2003) (citing *Country Express Stores, Inc.*, 87

23  Wn. App. at 749-51, 943 P.2d 374; *Steward v. Good*, 51 Wn. App. 509, 515-17, 754 P.2d 150

24  (1988); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 114, 752 P.2d 385 (1988);

25

26  [2] There is "no need to convert a motion to dismiss on the pleadings into one for summary judgment when the operative facts are undisputed, the core issue is one of law, and whatever else might be presented would not change the disposition of the motion." *Judy v. Hanford Environmental Health Foundation*, 106 Wn. App. 26, 22 P.3d 810 (2001), *quoting Ortblad v. State*, 85 Wn.2d 109, 530 P.2d 635 (1975).

DEFENDANTS' MOTION TO DISMISS
– Page 5 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 491 P.2d 1058 (1971)).

2      Even when a party has legitimate grounds to restrain a sale, by failing to take action, the

3  party waives its dispute. *Carlson v. Gibraltar Sav. Of Washington, F.A.*, 50 Wn. App. 424

4  (1988).

5      In addition to waiver of any ability to challenge or set aside the trustee's sale, the Court

6  of Appeals has held that post sale claims for damages are also waived by failing to request a

7  preliminary injunction or restraining order enjoining a nonjudicial foreclosure sale at least five

8  days before the sale date. *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 160, 189 P.3d

9  223 (2008).

10     The Washington State Legislature created a limited exception to the general rule when it

11  enacted RCW 61.24.127, which provides in pertinent part:

12          (1) The failure of the borrower or grantor to bring a civil action to enjoin a
            foreclosure sale under this chapter may not be deemed a waiver of a claim for
13          damages asserting:
               (a) Common law fraud or misrepresentation;
14             (b) A violation of Title 19 RCW; or
               (c) Failure of the trustee to materially comply with the provisions of this
15          Chapter.

16  RCW 61.24.127.

17     Here, there is no dispute the borrower Plaintiff made no effort to file a lawsuit and obtain

18  a temporary restraining order prior to the trustee's sale. It was only after the trustee's sale that he

19  filed this lawsuit seeking to set aside the trustee's sale and damages against the Defendants.

20  Accordingly, Plaintiff's claims for Wrongful Foreclosure, Intentional Infliction of Emotional

21  Distress, and claims under criminal statutes are waived.[3] Additionally, any right to challenge the

22  validity of the trustee's sale and any right to set aside the sale were also waived.

23  **C. NOTWITHSTANDING WAIVER, PLAINTIFF FAILS TO STATE A CLAIM
        UNDER ANY LEGAL THEORY.**

24      **A. Plaintiff has failed to state a claim for Wrongful Foreclosure.**

25      As already discussed, Plaintiff's wrongful foreclosure claim has been waived. However,

26

[3] While Plaintiff's CPA and Misrepresentation claims are not waived pursuant to RCW 61.24.127, Plaintiff has failed to adequately state either claim against Defendants so as to survive the present motion.

DEFENDANTS' MOTION TO DISMISS
– Page 6 of 15

ROUTH
CRABTREE
OLSEN, P.S.    13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

even if not waived, Plaintiff has failed to state a claim. Plaintiff's wrongful foreclosure theory is based upon the allegations that naming MERS as beneficiary under the Deed of Trust and MERS' conduct in assigning its interest to Fannie Mae was unlawful. Plaintiff also claims that, at the time of the foreclosure sale, Fannie Mae was not a beneficiary, but rather the originating lender, Sierra Pacific, remained the beneficiary. Plaintiff asserts this theory despite transfer of the Note to Fannie Mae in accordance with the express terms of both the Note and Deed of Trust, which allow for transfer and disclose MERS' role. Plaintiff's theory fails as a matter of law, therefore, Plaintiff has failed to state a claim for wrongful foreclosure.

1. **Plaintiff's Allegations As to MERS Do Not Support Any Claim because MERS was a proper beneficiary under the original Deed of Trust and properly assigned its interest in the Deed of Trust to Fannie Mae.**

a. **MERS' role was disclosed, and Plaintiff consented to its role at origination.**

The Note and Deed of Trust expressly contemplate that the security interest could be transferred without prior notice to Plaintiff and disclosed MERS' role as beneficiary. By signing both the Note and Deed of Trust, Plaintiff agreed to these terms and cannot now complain that MERS acted in the capacity as agreed upon by the terms of the Note and Deed of Trust. *See* Exhibits 1, 2, and 3.

Other courts have recently rejected similar claims, including a complaint which puts forth nearly identical theories. *See, e.g., Bhatti v. Guild Mortg. Co.*, C11-0480JLR, 2011 WL 6300229 (W.D. Wash. Dec. 16, 2011); *Vawter v. Quality Loan Serv. Corp. of Wash.*, 707 F.Supp.2d 1115, 1125–1126 (W.D.Wash.2010); *Ceburn v. HSBC Bank USA, N.A.*, No. C10–5742BHS, 2001 WL 321992, at *3 (W.D.Wash. Feb. 2, 2011); *Daddabbo v. Countrywide Home Loans, Inc. .*, No. C09–1417RAJ, 2010 WL 2102485, at *5 (W.D.Wash. May 20, 2010); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).

In *Bhatti*, the Court determined that "Plaintiffs' claims are without merit because [Plaintiffs] cannot establish that they were misinformed about the MERS system, relied on any misinformation in entering into their home loan, or were injured as a result of the

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   misinformation." *Bhatti v. Guild Mortg. Co.*, C11-0480JLR, 2011 WL 6300229 (W.D. Wash.

2   Dec. 16, 2011) (citing *Cervantes*, 656 F.3d at 1042). There, the Court reiterated that, as in the

3   present case, "the provisions in the Deed of Trust, which Plaintiff signed, specifically provides

4   MERS with the rights to foreclose and to sell the property, and to transfer interests under the

5   Deed of Trust." *Bhatti v. Guild Mortg. Co.*, C11-0480JLR, 2011 WL 6300229. Thus, Plaintiff

6   cannot establish an injury as he was on notice of the events when he signed the Note and Deed of

7   Trust.

### b. MERS properly served as a beneficiary in accordance with Washington law.

9   Deeds of trust, like mortgages, are contracts used to secure the performance of an

10  obligation or the payment of a debt. *In re McGrath's Estate*, 71 P.2d 395, 40 (1937) ("the trust

11  deeds are contracts"). Absent an unlawful purpose, parties are free to contract as they wish.

12  *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318, 322 (2009) ("It is

13  black letter law of contracts that the parties to a contract shall be bound by its terms."); *Patton v.*

14  *City of Bellingham*, 38 P.2d 364 (Wash. 1934) (Parties "are free to make any contract they

15  choose for a lawful purpose"). Deeds of trust are subject to all laws relating to mortgages on real

16  property. RCW 61.24.020. And, Washington law specifically provides that "parties may insert in

17  such mortgage any lawful agreement or condition," such as a clause agreeing that MERS is the

18  lender's nominal beneficiary. RCW 61.12.020.[4]

---

19  [4] Under Washington law, "[t]here is hardly a limit to the imaginable clauses that may be added to a mortgage or to
20  the accompanying obligation, usually clauses for the protection of the mortgagee." 18 WM. B. STOEBUCK,
    WASH. PRAC., Real Estate § 17.8 (2d ed. 2011). The DTA incorporates agency principles. *See Buse v. First Am.*
21  *Title Ins. Co.*, 2009 WL 1543994, *2 (W.D. Wash. 2009) (citations omitted). Likewise, Washington's UCC
    expressly incorporates agency principles for negotiable instruments (like Plaintiff's Note), and contemplates use of
22  agents in connection with recording transfers of property interests—MERS' role here. RCW 62A.1-103
    (incorporating agency principles); RCW 62A.9-502(a) (financing statement sufficient if it identifies debtor, the
23  "name of the secured party or a representative of the secured party," and identifies collateral covered by statement)
    (emphasis added). Thus, the clause identifying MERS as the nominal beneficiary (agent) for the originating lender
24  its successors and assigns (principal) is in accordance with Washington law. Washington courts have consistently
    held that an agent may enforce the rights of principals even when the agent does not own the debt, and even in the
25  context of foreclosure. *See, e.g., Carr v. Cohn*, 44 Wash. 586, 588 (1906) (nominee to whom property has been
    deeded without consideration and merely as title-holder for grantors, to convey as they might direct, can bring quiet
26  title action on deed); *Andrews v. Kelleher*, 124 Wash. 517, 534-36 (1923) (agent for bond holders had authority to
    prosecute suit foreclosing mortgage). Washington law clearly contemplates that parties to a Deed of Trust can, as
    they did here, agree to a contract provision allowing an entity like MERS to act as an agent or nominee for the
    lender and its assignees. "By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the

---

DEFENDANTS' MOTION TO DISMISS
– Page 8 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Courts have also repeatedly held that borrower will be held to the terms of their deed of

2  trust-- including terms relating to MERS' role. *See Salmon v. Bank of Am. Corp.*, 2011 WL

3  2174554, at *8 (E.D. Wash. 2011) (finding no issue where deed of trust expressly allowed for

4  MERS to serve as nominee); *Klinger*, 2010 WL 5138478, at *7 (dismissing argument that MERS

5  assignment is invalid); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102486 (W.D.

6  Wash. 2010 (same); *Vawter*, 707 F. Supp. 2d at 1125–26 (same).   The *Klinger* court also

7  dismissed Plaintiff's argument that an assignment of a deed by MERS is improper because

8  MERS "has no beneficial interest in the underlying Debt Obligation." *Compare Klinger*, 2010

9  WL 5138478, at *7, with Complaint, ¶ 22 ("MERS is not a beneficiary...where it never acquires

10  a beneficial interest").

11    The Ninth Circuit has also rejected these claims: "[T]he disclosures in the deed indicate

12  that MERS is acting 'solely as nominee for Lender and Lender's successors and assigns.' . . . By

13  signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents."

14  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011) (emphasis added).

15  In *Cervantes*, plaintiffs brought claims nearly identical to those found here: wrongful

16  foreclosure, fraud, and intentional infliction of emotional distress. *Id.* at 1038. The grounds for

17  those claims was similarly identical: plaintiffs alleged "that aspects of the MERS system are

18  fraudulent" and that they "were injured as a result of [] misinformation." *Id.* The Ninth Circuit

19  rejected these arguments, finding that plaintiffs could not show that "the alleged illegalities

20  associated with the MERS system injured them or violated state law." *Id.* at 1046.

21    Plaintiff, however, cites no law suggesting MERS cannot serve as nominee for "Lender

22  and Lender's successors and assigns," nor that suggests that MERS cannot be the nominee for

23  Fannie Mae, or that the DTA limits the parties' ability to insert this lawful agreement into the

24  terms of the Deed. As such, Plaintiff is "bound by the contract which he voluntarily and

25  knowingly sign[ed]." *Nat'l Bank of Wash. v. Equity Investors*, 81 Wn.2d 886, 912–13 (1973).

26  ─────────────────────────────

contents," including that MERS was the beneficiary, acting "solely as nominee for Lender," and their loan could be
transferred. *Cervantes*, 656 F.3d at 1042; *see also Corales*, 2011 WL 4899957, *5.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1
2

           **c.  At no time did MERS claim to be the Trustee or act in such a capacity.**

3        Here, MERS exercised no powers on behalf of Fannie Mae, and MERS had no contact

4  with the Plaintiff or Northwest Trustee.  MERS' sole act in this case was to assign its interest to

5  Fannie Mae.  Complaint, ¶ 11. Despite the lack of any discernible conduct, Plaintiff asserts that

6  "MERS claims to be or have been the trustee." Complaint, ¶¶ 33 - 37. Plaintiff appears to base

7  such an allegation on the language in the Deed of Trust, which provides:

8
9
10

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, . . . MERS (as nominee for Lender and Lender's successors and assigns) has the right: . . . to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

11  Complaint, ¶ 33. Based on such language, the Complaint reasons MERS cannot "hold legal title"

12  because "it is the trustee that holds legal title," and *ipso facto*, MERS must be claiming to be the

13  trustee. This argument fails on its face for several reasons.

14        First, because Washington is a lien-theory state, not a title theory state, Plaintiff's "claim"

15  fails as a matter of law. In Washington, the borrower at all times retains title to the property, with

16  the mortgagee holding merely a lien, enforceable by the trustee.  *See Kezner*, 87 Wn. App. at

17  463.  In other words, not even the Trustee has "legal title" to the property (and neither does

18  MERS).

19        Second, the quoted excerpt from the Deed of Trust merely states that MERS, as nominee,

20  has been authorized to act as beneficiary of record — i.e., has legal title to the role of beneficiary

21  under the Deed of Trust — and, thus may act on behalf of the Lender and its successors and

22  assigns to whatever degree Borrower (i.e., Plaintiff) has granted.  Plaintiff confuses "legal title"

23  under the Deed of Trust with "legal title" to the property.

24        Third, even if the quoted paragraph amounted to a claim by MERS to be Trustee, the

25  Complaint identifies no conduct by MERS attempting to act as the trustee: MERS recorded no

26  notice of trustee's sale; MERS conducted no foreclosure auction.

DEFENDANTS' MOTION TO DISMISS
– Page 10 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2    **2.  Fannie Mae was entitled to Foreclose as the Note Holder in response to Plaintiff's Default.**

3        Plaintiff's allegation that Fannie Mae was not entitled to foreclose is based upon a flawed

4    premise, namely, that Fannie Mae did not possess an equitable or beneficial interest in Plaintiff's

5    Deed of Trust until MERS assigned the Deed of Trust to Fannie Mae.

6        The DTA confers the right to foreclose on the beneficiary. *Vawter*, 707 F. Supp. 2d at

7    1121. Under the DTA, "Beneficiary" includes the note holder. RCW 61.24.005(2). Under the

8    Uniform Commercial Code, as adopted in Washington, the "holder" of the note includes any

9    party who takes possession of the note, specially indorsed or indorsed in blank, by transfer.

10   RCW 62A.3-205; RCW 62A.3-301. A promissory note is transferred through indorsement and

11   delivery and occurs, like all transfers of commercial paper, outside of county records. No

12   Washington statute requires parties to record such transfers to enforce rights under the

13   transferred notes. Indeed, "the assignment of a deed of trust and note is valid between the parties

14   whether or not the assignment is ever recorded." *In re United Home Loans*, 71 B.R. 885, 891

15   (W.D. Wash. 1987). Plaintiffs' Note and Deed of Trust expressly permitted Sierra Pacific to

16   transfer the Note and Deed of Trust without prior notice to them.

17       In Washington, assignments are recorded only to provide notice to third parties, not the

18   borrower, of the security interest. *Corales v. Flagstar Bank, FSB*, --- F. Supp. 2d ---, 2011 WL

19   4899957, *5 (W.D. Wash. 2011); *United Home Loans*, 71 B.R. at  891 ("Recording of the

20   assignments is for the benefit of third parties."). Fannie Mae had authority to enforce the Note

21   and Deed of Trust, even absent an assignment from MERS, because Fannie Mae was the Note

22   Holder.[5] RCW 61.24.005(2); RCW 62A.3-205; RCW 62A.3-301; *see also Chapel v. Mortg.*

23   *Elec. Reg. Sys., Inc.*, 2010 WL 4622526, *3 (W.D. Wash. 2010) (Washington's DTA does not

24   require notice of assignment before foreclosure).

25       Plaintiff's theory operates under the notion that beneficiary status can only be conferred

26   through an assignment. This, of course, ignores the law of negotiable instruments. Moreover,

---

[5] Plaintiff makes no allegation that Fannie Mae was not the Note Holder. *See* Complaint.

DEFENDANTS' MOTION TO DISMISS
– Page 11 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Plaintiff's theory ignores the well settled principle of law in Washington that the security (Deed

2    of Trust) follows the debt (Note) with or without formal assignment. *Fidelity & Deposit v. Ticor*,

3    88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009)

4    ("transfer of the note carries ... the security"); *Leisure Time Sports v. Wolfe*, 194 B.R. 859, 861

5    (9th Cir. B.A.P. 1996) (citing *Carpenter v. Longan*, 83 U.S. 271, 275, 21 L.Ed. 313 (1872)).

6         Accordingly, Plaintiff's allegation that Fannie Mae became the beneficiary only through

7    the Assignment from MERS is legally incorrect and does not provide the basis for any claim.

8
                 **3.  Fannie Mae properly appointed Northwest Trustee as Successor**

9                          **Trustee.**

10        Under Washington law, a trustee so appointed by a beneficiary may foreclose a deed of trust

11   nonjudicially. RCW 61.24 *et seq*. The beneficiary has the power to appoint any trustee that is

12   qualified to act as such pursuant to law. RCW 61.24.010(2).  Upon recording the appointment of a

13   successor trustee...the successor trustee shall be vested with all powers of an original trustee.

14   *See* RCW 61.24.010(2) and Exhibit 2.

15        The beneficiary, Fannie Mae, appointed Northwest Trustee as successor trustee on March

16   30, 2011. *See* Exhibit 5; *see also* RCW 61.24.010(2). Thus, the facts demonstrate that Northwest

17   Trustee acted properly in proceeding with the foreclosure, and Plaintiff has not stated any facts

18   that state claim as to Northwest Trustee.

19             **B.  Plaintiff has failed to state a claim for Infliction of Emotional Distress.**

20        Intentional infliction of emotional distress, also called the tort of outrage, requires proof

21   of: 1) extreme and outrageous conduct, 2) intentional or reckless infliction of emotional distress,

22   and 3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192,

23   66 P.3d 630, 632 (2003). The first element requires proof that the conduct was "so outrageous in

24   character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

25   regarded as atrocious, and utterly intolerable in a civilized community." *Robel v. Roundup Corp.*,

26   148 Wn.2d 35, 59 P.3d 611, 619 (2002). The Court makes the initial determination of whether

     "reasonable minds could differ on whether the conduct was sufficiently extreme to result in

DEFENDANTS' MOTION TO DISMISS
– Page 12 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  liability." *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 928 P.2d 1127, 1137

2  (Wash. Ct. App. 1996).

3      Again, this claim is waived pursuant to RCW 61.24.127. Even so, Plaintiff's IIED claim

4  is also based upon the role of MERS in the Deed of Trust and foreclosure process. As discussed

5  *supra* the allegations relating to MERS fail to state any claim upon which relief can be granted.

6  Moreover, even if the Court were to determine that MERS' role somehow affected the validity of

7  the already complete nonjudicial foreclosure process, under no stretch of the imagination could

8  the alleged conduct be deemed "beyond all possible bounds of decency, . . . atrocious and utterly

9  intolerable in a civilized community." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 59 P.3d 611, 620

10  (Wash. 2002). Accordingly, Plaintiff fails to state a claim for IIED.

11      **C.  Plaintiff has failed to state a claim for Fraudulent Misrepresentation.**

12      A fraud or misrepresentation claim under Washington law must establish the following

13  nine elements by clear, cogent, and convincing evidence: 1) representation of an existing fact; 2)

14  materiality of the representation; 3) falsity of the representation; 4) the speaker's knowledge of

15  its falsity; 5) the speaker's intent that it be acted upon by the plaintiff; 6) plaintiff's ignorance of

16  the falsity; 7) plaintiff's reliance on the truth of the representation; 8) plaintiff's right to rely upon

17  it; and 9) resulting damages. *Stieneke v. Russi*, 145 Wn. App. 544, 190 P.3d 60 (Wash. Ct. App.

18  2008); *Carlile v. Harbour Homes, Inc.*, 147 Wn. App. 193, 194 P.3d 280 (Wash. Ct. App. 2008),

19  review granted in part, 210 P.3d 1019 (2009).

20      Plaintiff's fraud claim is based upon the allegation that MERS knowingly assigned rights

21  it did not possess when it made the assignment to Fannie Mae. Complaint, ¶ 74. Again, as

22  discussed *supra*, it was entirely proper for MERS to assign its interest to Fannie Mae. Plaintiff's

23  theory relating to the impropriety of the Assignment from MERS to Fannie Mae is simply not in

24  accordance with Washington law, and therefore cannot be the basis for a fraud claim. The claim

25  must be dismissed.

26

DEFENDANTS' MOTION TO DISMISS
– Page 13 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**D.  Plaintiff has failed to state a claim for Fraudulently Produced Documents in Violation of Washington Criminal Code.**

Plaintiff's Complaint includes a "cause of action for fraudulently produced documents in violation of Washington criminal code [sic]." Complaint at 11.  The basis for the claim is unclear.  Plaintiff alleges "defendants have used fraudulently produced documents affecting the legal title of property" and "these fraudulent actions by Defendants subject them to criminal penalty under the laws of Washington State, Title 9A, et seq." *Id.* ¶ 76.  Regardless of the basis, the claim is waived under RCW 61.24.127. *See supra* § V.A.2; *Plein*, 149 Wn.2d at 227; *Brown Household Realty Corp.*, 146 Wn. App. 157, 163 (2008). A criminal fraud claim under RCW title 9A is statutory and not listed as an exception in RCW 61.24.127. Thus, the Court must dismiss the claim.

**E.  Plaintiff has failed to state a claim for Consumer Protection Act Claim.**

To establish a claim for violation of the Washington Consumer Protection Act ("CPA") Plaintiffs must establish: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) with a public interest impact; and (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Failure to meet any one of these elements under the CPA is fatal to the claim and requires dismissal. *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002).

To be "deceptive," an act or practice must be one that "misleads or misrepresents something of material importance." *Nguyen v. Doak Homes, Inc.*, 140 Wn. App. 726, 734 (2007). Here, Plaintiff does not identify even one fact suggesting deception. Moreover, the Ninth Circuit has held that a lender's open and forthright disclosure of business practices cannot constitute "deceptive" practices under the CPA. *In Penner v. Chase Bank USA, N.A.*, 2011 WL 5289466 (9th Cir. Nov. 4, 2011), the Ninth Circuit found that a lender sued for "its practice of increasing [credit] cardholders' interest rates upon default" could not be deceptive under the Washington CPA because the lender "openly and expressly notifies cardholders of the actions . .

DEFENDANTS' MOTION TO DISMISS
– Page 14 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    .." *Id.* at *1.

2         In this case, Plaintiff executed the Deed of Trust, listing MERS as the beneficiary's

3    nominee, and Plaintiff was thus openly and expressly notified that MERS would serve as the

4    beneficiary's nominee. And further, even if the Assignment were "null and void," Plaintiff

5    cannot argue that recording the Assignment affects a "substantial portion of the public"— it does

6    not even affect him.  In sum, Plaintiff has not, and cannot, show any deceptive act.

7         Finally, Plaintiff's allegations of injury are not sufficient to support a claim under the

8    CPA. Plaintiff claims "there is a causal link between the wrongful foreclosure engaged by the

9    defendants and the injury to plaintiff, as the defendants' actions have caused the plaintiff to be

10   evicted from his home." Complaint, ¶ 67. Such an allegation is not supported by law, however.

11   Plaintiff does not dispute he defaulted on the loan, and the evidence of which the Court may take

12   judicial notice evidences Plaintiff's default. The "injury" suffered by Plaintiff was brought on by

13   Plaintiff's own default, and is the agreed upon consequence of Plaintiff's default based on the

14   terms of the contract he signed.

15        As Plaintiff fails to sufficiently allege essential elements of his CPA claim, the Court

16   must dismiss it.

17                          **VI.   CONCLUSION**

18        Based on the foregoing, Defendants FNMA, MERS, and Northwest Trustee respectfully

19   request the Court grant their Motion to Dismiss and enter an Order dismissing all of Plaintiff's

20   claims, with prejudice.

21        DATED this 19th day of March, 2012.

22                              **ROUTH CRABTREE OLSEN, P.S.**

23

24                              Heidi E. Buck, WSBA #41769
                                Of Attorneys for Defendants Federal
25                              National Mortgage Association, Mortgage
                                Electronic Registration Systems, Inc., and
26                              Northwest Trustee Services, Inc.

DEFENDANTS' MOTION TO DISMISS
– Page 15 of 15

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131