1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Honorable Robert S Lasnik

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| **James McDonald** <br> **Plaintiff** | No. **C10-1952-RSL** |
| v. <br> **OneWest Bank, FSB,** <br> **Northwest Trustee Services,** <br> **Mortgage Electronic Registration Systems,** <br> **Defendants.** | Plaintiff's Motion for Summary Judgment <br><br> Oral Argument Requested <br> Noting Date: October 19, 2012 |

## I.    Introduction

PLAINTIFF JAMES MCDONALD ("McDonald"), by and through the undersigned

counsel, respectfully moves this Court for Summary Judgment against Defendants OneWest

Bank, FSB ("OneWest"), Northwest Trustee Services ("NWTS" or "Northwest Trustee") and

Mortgage Electronic Registration Systems ("MERS"). Plaintiff relies upon all documents that

have been filed by the parties in this case in general and as specifically referenced herein, the

attached Declaration of James McDonald, and Exhibits as attached.

## II. Standard of Summary Judgment

The primary question of this case is not whether the Plaintiff has been in default but

whether the named defendants as appeared before the Court had the legal right to initiate non-

judicial foreclosure upon Plaintiff's home. Plaintiff is not asking for a windfall by way of

having the Court declared that the debt does not exist. Plaintiff however requests the Court to

determine the right and interest of the parties as relating to the subject real property and

Motion for Summary Judgment                          1

HA THU DAO, ESQ.
3501 RUCKER AVE. EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1  determine whether the named defendants qualify as the real party in interest so that the right to

2  foreclose can be confirmed. This determination is necessary to carry out the legislative objects

3  of the Washington Deed of Trust Act and the Washington Consumer Protection Act. This

4  determination is further necessary to protect the integrity of the judicial system as the arbiter of

5  truth from tainted documents or testimony.

6        **Plaintiff submits that the Court should grant summary judgment in favor of the**

7  **Plaintiff as there exists no genuine issue of material fact and Plaintiff is entitled to**

8  **judgment as a matter of law on the issue that none of the named Defendants had**

9  **sufficient interest in Plaintiff's homestead to foreclose.** Fed.R.Civ.P. 56(c). As the movant,

10  Plaintiff bears the initial burden of demonstrating the absence of a genuine issue of material

11  fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A

12  fact is material if it might affect the outcome of the suit under the governing law.  *Anderson v.*

13  *Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As the instant

14  motion has been properly supported and presented for summary judgment, the named

15  Defendants "may not rely merely on allegations or denials in its own pleading" Fed.R.Civ.P.

16  56(e), but must set forth "specific facts" demonstrating the existence of a genuine issue for

17  trial. *Id.; Anderson,* 477 U.S. at 256. All "justifiable inferences" are to be drawn in favor of the

18  non-moving party. *Anderson,* 477 U.S. at 255. When the record, however, taken as a whole,

19  could not lead a rational trier of fact to find for the non-moving party, summary judgment is

20  warranted. *See Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 988 (9th Cir.2006). This is the

21  case where the record, taken as a whole, could not lead a rational trier of fact to find for the

22  Defendants.

23

24

Motion for Summary Judgment      2

**H A   T H U   D A O ,   E S Q .**
3501 RUCKER AVE. EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    James McDonald filed his Complaint to resist the Defendants' collective effort to

2    improperly foreclose upon his homestead and to address conduct by the Defendants that

3    violated state and federal laws. In the Second Amended Complaint, McDonald alleged the

4    following causes of action; Violations of Washington Deed of Trust Act; Violations of the

5    Washington CPA; Violation of RESPA; Violations of FDCA; Violations of FCRA; Common

6    Law Fraud; Fraud on the Court; Civil Conspiracy; Declaratory Relief and Permanent

7    Injunction. Summary Judgment is appropriate for each of these causes of action as alleged.

8                                 **III. Statement of Fact**

9    1.   Defendant NWTS sent Plaintiff a Notice of Default ("NOD") dated January 12, 2010

10        (Exhibit 1, Notice of Default). In this document, NWTS declares that it is the agent of

11        Defendant OneWest Bank who is the "Beneficiary (Note Owner)" under the Deed of

12        Trust executed by the Plaintiff. Section L.2 of the NOD states without any reservations

13        or qualifications whatsoever that, "The creditor to whom the debt is owed [is] OneWest

14        Bank, FSB/OneWest Bank, FSB."

15    2.   Discovery later reveals that Northwest Trustee was aware at the time it prepared the

16        Notice of Default that OneWest was not the owner of the Note. This is confirmed by

17        the Foreclosure Transmittal Package NWST received from OneWest, through their

18        agent Lender Processing Services ("LPS") that Freddie Mac was the "investor".

19        (Exhibit 3, Foreclosure Transmittal Package). As an experienced trustee being in

20        business for over 20 years, NWTS must have been aware that it is industry custom that

21        Freddie Mac would sell any notes that it purchases originally or acts as a guarantor for

22        notes sold by lenders directly to a securitized trust rather than keeping it in their

23        portfolio.

24

Motion for Summary Judgment                3

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1      3.  Defendant OneWest attached/produced a Beneficiary Declaration in support of the

2           foreclosure pursuant to RCW 61.24.031 in which OneWest is again identified as the

3           beneficiary. This Declaration, January 7, 2010, was signed by Erica A. Johnson-Seck

4           (Exhibit 2, Beneficiary Declaration). Erica A. Johnson-Seck's declaration under

5           penalty of perjury as to the contents this statutorily mandated Declaration as a

6           condition precedent to non-judicial foreclosure is suspicious and unreliable. This

7           individual has been caught signing hundreds and thousands of foreclosure documents

8           for many different corporate entities under very important sounding titles all without

9           any personal knowledge of the contents thereof.

10     4.  In the case of *IndyMac Fed. Bank v. Machado*, of Palm Beach County Circuit Court,

11          Florida, Ms. Johnson-Seck admitted in her deposition that she has signed as Vice

12          President of Defendant MERS while she was not paid by MERS, didn't know where

13          MERS was located or whose its president was, didn't attend any corporate meeting and

14          knew nothing about MERS' governance:

15                Q. Why does MERS appoint you as a vice president or assistant secretary as
                 opposed to a manager or an authorized agent to sign in that capacity?

16                A. I don't know.
                 Q. Why does MERS give you any kind of a title?

17                A. I don't know.

18          Erica A. Johnson-Seck testified in the *Machado* case that she, and others employed by

19  servicers and banks have signed thousands of foreclosure documents on behalf of various

20  entities simultaneously. Ms. Johnson-Seck testified that she would spend no more than thirty

21  seconds on each document to decipher who she is signing for but never read the document:

22                Q. **Is it true that you don't read each document before you sign it**?

23                A. **That's true**.
                            \*\*\*\*\*\*

24

**HA THU DAO, ESQ.**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1

Q. Is it fair to say that you don't personally check the accuracy of anything in the documents that you're signing?

2

A. Not, it's not clear that I don't check anything. The figures I don't, I do not check. We have a QC process around that used to be 100 per cent of the Affidavits of Debt and any figure for loans and bankruptcy, that have now been reduced to 10 percent because the errors were relatively low. **Now I pay, what I pay most attention to is the jurat and what entity I'm signing for, which is why I said 30 seconds instead of two seconds.**

3

4

5

6

([http://www.icelegal.com/files/Deposition_of_Erica_Johnson-Seck_Part_I & II.pdf](http://www.icelegal.com/files/Deposition_of_Erica_Johnson-Seck_Part_I & II.pdf))

7

Lawyers for homeowners are not the only party skeptical of the integrity of foreclosure

8

documents executed by Erica A. Johnson Seck. Judge Arthur Shack, of the Supreme Court of

9

New York, Kings County, has become quite concerned over a very similar set of facts in the

10

case of *OneWest Bank, FSB v Drayton*, 2010 NY Slip Op 20429 (Decided on 10/21/10)..

11

Judge Schack's opinion, attached herein, details the judge's strong reaction to the pattern of

12

conduct exhibited by OneWest, its counsel and Erica Johnson-Seck.

13

5.   In addition to the doubtful nature of the integrity of representations made by Erica

14

Johnson-Seck, it is also doubtful whether she herself has personally executed the

15

documents where her name appears. In the public records of various counties in

16

Washington as well as in other states, documents allegedly signed by Johnson-Seck for

17

purposes of residential foreclosure are countless. The Composite attached herein

18

illustrates how Erica Johnson-Seck's signatures so drastically from one document to

19

another; this enormous variation appears readily to the naked eye and does not require

20

any expertise to detect (Exhibit 4, Composite of Erica Johnson-Seck's documents

21

found in public records).

22

6.   Defendant MERS executed and caused to be recorded in the King County Public

23

Records the Assignment of Deed dated January 27, 2010 (Exhibit 5, AOD). This AOD

24

**HA THU DAO, ESQ.**
3501 RUCKER AVE. EVERETT, WA 98201
Tel. 727-269-9334
Fax 727-264-2447
E-mail: hadaojd@gmail.com

1    bears the signature of one Brian Burnett as Assistant Vice President of MERS. In the

2    course of this litigation, Defendant OneWest has admitted that Brian Burnett is one of

3    its employees and not a corporate officer of MERS. In so admitting, OneWest

4    produced in discovery a MERS' Corporate Resolution to bolster the claim that Burnett

5    had signing authority from MERS corporate officer. However, the Corporate

6    Resolution bears the date of August 19, 2010, nearly seven months after the fact

7    (Exhibit 6, MERS Corporate Resolution).

8    7.   In addition to the fact that Brian Burnett's act of signing of the AOD in this case was

9    taken *ultra vires*, the doubtful nature of documents submitted by OneWest for purpose

10   of foreclosure, including those executed by Brian Burnett is plain and has been noted in

11   the same opinion issued by Judge Schack. Moreover, in the case of *In Re: OneWest*

12   *Bank, FSB v Arizmendi* BK Case 09-19263-PB13 (2011), Judge Fabre also notices

13   Burnett's lack of reliability. *Arizmendi* involves Burnett's swearing under penalty of

14   perjury that OneWest was the real party of interest. Judge Fabre ordered a show cause

15   hearing and declared, "The Court will not participate in a process where OneWest

16   increases its profits by disobeying the rules of this Court and by providing the Court

17   with erroneous information."

18   8.   The AOD in this case represents that Defendant MERS transfers rights under the Deed

19   of Trust, "Together with note or notes therein described or referred to, the money due

20   and to become due thereon, with interest and all rights accrued or to accrue under said

21   Deed of Trust" to Defendant OneWest (Exhibit 5, AOD). By this plain language,

22   anyone who reads it can only conclude that MERS actually owned the Note and held it

23

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    prior to transferring it to OneWest. It is axiomatic that what one does not have, one

2    cannot give.

3    9.  In the public records of King County, there appears an Appointment of Successor

4        Trustee (Exhibit 7, Appointment) conferring authority for Defendant NWTS executed

5        by Defendant OneWest to initiate non-judicial foreclosure against Plaintiff. The

6        Appointment, dated January 27, 2010, was signed by Suchan Murray on behalf of

7        OneWest. The Appointment contains, *inter alia*, OneWest's warranty and assurance

8        that: "The undersigned present beneficiary warrants and represents that, as of the date

9        this Appointment of Successor Trustee has been executed and acknowledged, **it is the**

10       **owner and holder of the obligation secured by the subject deed of trust**".

11   Like the other signers involved in the instant case, Ms. Murray's sworn statements have

12   been repeatedly called in question. In the case of *In re Telebrico*, Ch. 13 Case No. 10-07643-

13   LA13 (Bankr. S.D. Cal.), Judge DeCarl Adler commented on the reliability of Murray's

14   declaration concerning OneWest's interest in a foreclosure proceeding. This declaration and

15   OneWest's conduct in the case resulted in a show cause hearing, following which the judge

16   concluded that "One West provided evidence that was either intentionally or recklessly false.

17       11.Defendant NWTS caused for a copy of the Notice of Trustee Sale ("NOT") to be

18       sent to Plaintiff advising that Plaintiff's homestead was going to be auctioned in front

19       of Northwest Trustee's office on May 10, 2010. The NOT was recorded in the public

20       records of King County under instrument number 20100216001242.  This NOT listed

21       Plaintiff as "Julie B. McDonald, a single man." The NOT repeats that Defendant

22       MERS was the Beneficiary under the Deed of Trust who assigned the beneficial

23       interest to OneWest (Exhibit 8, Notice of Trustee Sale).

24

Motion for Summary Judgment                7

12. The figures of amount due and owing listed in the NOT include various fees charged by defendant NWTS which are entirely unsubstantiated. In addition, the amount stated as the arrearages appear to have been inflated. The NOT was signed by Vonnie McElligott as an employee of NWTS. Vonnie McElligott has been sued personally in the case of *Mickelson v. Chase Home Finance*, 2:11-cv-01445, Western District of Washington, Seattle Division, for her act of signing as an officer of MERS while being employed by Defendant NWTS (Exhibit 5, Assignment of Mortgage signed by Vonnie McElligott as officer of MERS). In this NOT, Defendant NWTS boldly declares that the Notice is "an attempt to collect a debt."

13. Defendant NWTS subsequently caused for the Amended Notice of Trustee Sale ("ANOTS) to be sent to Plaintiff and recorded in the public records of King County under Instrument number 20101104001321 on November 4, 2010. This ANOT advises Plaintiff of another sale date of December 10, 2010 (Exhibit 9, ANOTS). The grantors in this ANOTS are listed as Defendant NWTS and Defendant OneWest Bank. **Again, the ANOTS reiterates that MERS, as Beneficiary, assigned its beneficial interest together with the note or notes to OneWest**. Just like the prior NOT, this document appears to contain inaccurate figures of amounts due and owing. The Trustee's Fee went inexplicably from $725 to $508. The "posting fee" on the other hand went from $70 to $136.92. The ANOTS contains a "sale cost" of $500 where the sale had not even occurred.

| Fee | First Notice | Second Notice |
| --- | --- | --- |
| Monthly Payments | $11,969.30 or $2393.86 per month | $30,934.98 or $2577 per month |
| Late Charges | $381.36 or $76.27 per month | $1,239.42 or $103.29 per month |
| Lenders Fees and Costs | $22.00 | $2768.82 |
| Trustee's Fee | $725 | $508 |

Motion for Summary Judgment                    8

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

| Title Report | $951 | $0 |
| Statutory Mailings | $9.56 | $147 |
| Recording Costs | $30 | $129 |
| Postings | $70 | $136.92 |
| Sale Costs | $0 | $500 |

14. Due to Plaintiff's background of being an employee of IndyMac Bank, and due to the well-documented and well-publicized incidents of foreclosure fraud, before this lawsuit was filed, Plaintiff made written inquiries to OneWest, MERS, and NWTS. Plaintiff sent a Qualified Written Request ("QWR"), a Dispute ("Dispute") of Debt, and a Debt Validation Demand ("DVD") (Exhibit 10, QWR, Dispute, DVD) to all defendants on April 27, 2010, via prepaid, certified return receipt requested mail. Plaintiff received confirmation that these documents were received by Defendants and he recorded a copy of the QWR, Dispute and DVD in the public records of King County to provide notice to anyone, including the actual owner of the Note and the actual beneficiary of the Deed of Trust.

15. Defendant MERS failed to respond to Plaintiff's inquiry. Defendant NWTS, on the other hand, responded with a letter signed by Jeff Stenman, as Foreclosure Manager, promising that NWTS would investigate. (Exhibit 11, Stenman's Letter)  In discovery, Plaintiff learned NWTS was completely dismissive of Plaintiff's inquiry. Vonnie McElligott made a mockery of Plaintiff's inquiry and referred to his request as "… internet stuff." (Exhibit 12, Excerpt of Northwest Trustee's Notes after redaction by Heidi Buck). In juxtaposing what Jeff Stenman said in the letter and what Vonnie McElligott marked in the file, it is clear that NWTS never intended to respond to Plaintiff's inquiry as required by law.

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

16. Defendant OneWest partially responded to Plaintiff by sending him a letter dated May 18, 2010 (Exhibit 13, May 18, 2010 Letter). In this letter, OneWest claimed that Freddie Mac is the "investor" of Plaintiff's loan. There was no documents or explanations provided by OneWest in support of this short-handed revelation. An investor is: "A person who makes investments. An investor may act either for him or herself or on behalf of others. A stock broker or mutual fund manager, for instance, makes investments for others who have entrusted that person with their money."[1] Despite Plaintiff's direct inquiry, OneWest refused to abide by the requirements of a QWR. OneWest failed to identify the owner of the Note or provide any of the requested answers/items.  In short, OneWest failed to validate the debt that it was seeking to collect from Plaintiff as required by law and properly address the QWR.

17. Once told that Freddie Mac is involved in Plaintiff's loan, Plaintiff went on Freddie Mac's website and reviewed Freddie's explanations: "Securitization is a process by which we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in the global capital markets, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend." These explanations are consistent with Freddie Mac's role as a GSE.

18.     On its website, under the Single Family Credit Guarantee Section, third paragraph down, Freddie Mac continues: "When a family stops making payments-often due to loss of income-Freddie Mac steps in and makes those payments to securities investors. Managing this risk, known as credit risk, is how we generate revenue. Each time we fund a loan, we collect a credit guarantee from the lender selling us the loan. This fee is intended to protect us in case of loan default." Based on Freddie's explanations, it follows logically that

---

[1] http://www.nolo.com/dictionary/investor-term.html

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   the entity possessing the beneficial interest under the Deed of Trust, whoever it is, is fully

2   insured of its investment and the promised returns. It further follows logically that once

3   Freddie "steps in and makes those payments to securities investors", there is no default and the

4   power of sale under the deed of trust is not invoked. Freddie Mac's representations, made for

5   public consumption, are reliable and consistent of its role as a guarantor, rather than the

6   "investor" or "owner" of the mortgage loan. (Exhibit 14, printout from Freddie Mac's website)

7       19. OneWest has submitted two Declarations of Charles Boyle in support of its previous

8   motions for summary judgment which contradicts this very basic information provided by

9   Freddie Mac. Mr. Boyle indicated in his Declaration that "**Freddie Mac has remained the**

10  **investor and owner of the Note**." (Exhibit 15, Composite of Declarations of Charles Boyle).

11  However, the veracity of Mr. Boyle's declaration has been questioned in many other judicial

12  proceedings in which OneWest acts as the foreclosing entity. In particular, Mr. Boyle's

13  statements, made under the "penalty of perjury", have been called into question by Judge

14  Fabre in *Arizmendi, supra.*.

15      20.     Mr. Boyle's claim that he has reviewed the files and documents relating to

16  Plaintiff's loan is simply not credible given how he appears to simply parrot the language, and

17  not having access to the actual file, or the actual personal knowledge of its contents.  In the

18  case of *Doble v. Deutsche Bank Nat'l Trust Co. (In re Doble)*, 2011 Bankr. LEXIS 1449

19  (Bankr. S.D. Cal. Apr. 14, 2011), both the conduct of OneWest and the testimony of Charles

20  Boyle in a show cause hearing led the court to conclude that they are "neither candid nor

21  credible".  *In re Carter*, Ch. 13 Case No. 10-10257-MM13 (Bankr. S.D. Cal.) (Show cause

22  concerning declarations by Brian Burnett and Charles Boyle). *In Re Telebrico* Bk. No. 10-

23

24

Motion for Summary Judgment                    11

1   07643-LA13 (Show cause concerning Suchan Murray and  OneWest's conduct where judge

2   held that  "One West provided evidence that was either intentionally or recklessly false.")

3      21. Plaintiff caused for subpoena *duces tecum* to be served on Deutsche Bank, National

4   Trust Company ("Deutsche"), because Deutsche was identified as the Custodian of records in

5   the Custodian Agreement produced by Defendant OneWest. In response, Deutsche's counsel

6   wrote a letter in which he indicated that Deutsche has "acted as the Custodian for several

7   trusts, of which these loans were a part of."  It would appear that since Plaintiff's loan was part

8   of a securitized trust, Freddie Mac does not "own" it and Freddie Mac is not the "investor" as

9   claimed by OneWest (Exhibit 15, Letter from Deutsche's counsel).

10      22. Additionally, the same material provided by Deutsche list both OneWest and Freddie

11   Mac as "servicers". The Complete Loan File Information provided by Deutsche specifies that

12   Plaintiff's loan is part of subpool IN070227. A subpool is a smaller group of loans which is a

13   part of the pool of loans belonging to a mortgage-backed securitized trust. Since Plaintiff's

14   Note was sold into a trust by Indymac Bank, FSB in February of 2007, there was no possibility

15   that Freddie Mac was either the "investor" or "owner".

16      23. The second page of Complete Loan File Information itemized documents received by

17   Deutsche as the Custodian of Records, including the Initial Loan Review on January 16, 2007;

18   the Mortgage (Deed of Trust); the Title (Lender's Title Policy) associated with the property

19   dated April 9, 2007. However, **the Note is not noted on this list**.

20      24. The Complete Loan File Information shows that the loan file was not withdrawn for

21   servicing by OneWest until October 6, 2010. This information renders OneWest's statement

22   through its counsel, Heidi Buck, of Routh Crabtree Olsen, that "… the Note has been held by

23   the Custodian since on or about May 12, 2009" entirely disingenuous (Doc. 121, page 3 of 41).

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    25. Plaintiff requested from Freddie Mac, via subpoena *duces tecum,* information specific

2    to his loan. In an email from Michael J. Henderson, counsel for Freddie Mac, it was indicated

3    that Plaintiff's loan "was in security pool 1J1527." (Exhibit 16, Email from Henderson).

4    Material provided by Freddie Mac also confirms that Plaintiff's loan was sold by IndyMac

5    Bank, FSB to a mortgage backed security in February of 2007 and its CUSIP number is

6    3128NHVU4 (Exhibit 17, Pool Information). CUSIP stands for "Committee on Uniform

7    Securities Identification Procedures". CUSIP numbers are assigned to facilitate the clearing

8    and settlement process of securities. www.sec.gov/answers/cusip.htm. These specific

9    identifiers confirm that Plaintiff's was sold into a mortgage-backed securitized trust as early as

10   2007. Therefore, only this specific securitized trust or its certificate holders who have the

11   beneficial interest of Plaintiff's loan, and only upon proof that their investment was defaulted

12   can they seek to foreclose as beneficiary under the Deed of Trust.

13   26. Despite discoverable and plain facts, OneWest continues to submit documents

14   perpetuating the myth that Freddie Mac owns Plaintiff's loan. Defendant OneWest submitted a

15   Declaration by JC San Pedro in opposition to preliminary injunction in which, declaring under

16   penalty of perjury and upon personal knowledge, San Pedro states that "Freddie Mac is the

17   investor on the Loan, and prior to March 2009, IndyMac serviced the loan for Freddie Mac."

18   (Exhibit 18, San Pedro's Declaration).

19   27. On or about April 28, 2010, Plaintiff caused for his Notice of Objection to Trustee Sale

20   (Exhibit 19, Objection) to be sent via certified mail to Defendant NWTS and Defendant

21   OneWest; neither one of these entities responded to his Objection, including the request to

22   cease all collection activities until the debt has been fully validated.

23

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    28. On or about June 29, 2010, Plaintiff sent a letter to all three credit reporting agencies,

2    Experian, TransUnion and Equifax, disputing the reporting by OneWest as the "creditor" of

3    Plaintiff's mortgage loan, as well as OneWest (Exhibit 19, Dispute Letter). OneWest did not

4    respond to Plaintiff's dispute. All three credit reporting agencies advised Plaintiff they had

5    communicated with OneWest, yet none of the false information had been removed or altered

6    and remains false to this day.

7

8                              IV. **Legal Arguments**

9    **Defendants cannot proceed with foreclosure under the Washington Deed of Trust Act as**

10   **a matter of fact and of law**

11           Plaintiff has established that Defendants conspired to violate the Washington

12   DOTA by improperly initiating and then perpetuating a non-judicial foreclosure that they did

13   not have the right to do, i.e., that they did not have standing or status of the real party in

14   interest in order to commence and complete the process. Defendants attempted to distract the

15   Court by mischaracterizing Plaintiff's claim as one for "wrongful" foreclosure while the proof

16   supports fully Plaintiff's allegation that the defendants have violated nearly every provision of

17   RCW 61.24, *et. seq.*

18   **Bain operates to invalidate MERS' Assignment of Deed of Trust to OneWest**

19           The non-judicial foreclosure initiated and advanced by Defendants is void ab initio

20   because Defendants allowed MERS to assign the Deed of Trust on behalf of IndyMac Federal

21   Bank onto OneWest. *In Bain v. Metropolitan Mortg. Servs.,* 2012 Wash. LEXIS 2012 578

22   (No. 86206-1, No. 86207-9, August 16, 2012), the Washington Supreme Court has

23   unanimously answered the question of whether MERS is a lawful "beneficiary" within the

24

Motion for Summary Judgment                    14

1    terms of Washington's Deed of Trust Act, with a resounding NO: "Under the plain language

2    of the deed of trust act, this appears to be a simple question. Since 1998, the deed of trust act

3    has defined a "beneficiary" as "the holder of the instrument or document evidencing the

4    obligations secured by the deed of trust, excluding persons holding the same as security for a

5    different obligation." LAWS OF 1998, ch. 295, § 1(2), codified as *RCW 61.24.005(2)*.  Thus, in

6    the terms of the certified question, if MERS never 'held the promissory note' then it is not a

7    lawful 'beneficiary'".

8         Bain involves an identical set of facts. Bain's deed of trust named IndyMac as the

9    original lender and MERS as beneficiary and MERS named the successor trustee in order to

10   commence non-judicial foreclosure. In the litigation, it was revealed that Bain's promissory

11   note was assigned to Deutsche Bank, as trustee of a securitized trust and sold by the original

12   lender IndyMac Bank in 2007 shortly after the loan was originated. To get the loan resurrected

13   from IndyMac Bank, who had ceased to exist at the time of the foreclosure of Bain's property,

14   the defendants there had MERS execute an assignment of deed of trust, which is exactly what

15   had happened in Plaintiff's case. *Id.*

16        *Bain* is squarely on point. There, the Supreme Court acknowledged the fact that MERS

17   was designed to promote liquidity in the secondary market where "investors" buy not the

18   mortgage loans in their entirety but "the right to interest payments" only: "With the assistance

19   of MERS, large numbers of mortgages may be pooled together as a single asset to serve as

20   security for creative financial instruments tailored to different investors. Some investors may

21   buy the right to interest payments only, others principal only; different investors may want to

22   buy interest in the pool for different durations." It is clear that under this set up, the investors

23

24

Motion for Summary Judgment                    15

1   don't own the note and don't hold the loan; what they have is the legal right to receive a

2   stream of payments from the homeowners and no more.

3           Applying this precept to the case at bar, the Defendants' representations to Plaintiff,

4   and to this Court, that MERS is the "beneficiary" and Freddie Mac is the "investor" are simply

5   false. Where it makes perfect sense for Freddie Mac to serve as a guarantor of the security

6   after receiving a credit-risk fee for each Note within the security, this action does not make

7   Freddie Mac an investor, owner or holder of the Note.

8   **The Assignment of Deed of Trust is invalid because MERS' principal, IndyMac Bank, did not exist on the date of its execution**

9

10          In addition to the overarching principle that MERS acts unlawfully as a beneficiary, the

    AOD executed by MERS in this case also is invalid due to the fact that IndyMac Bank was no
11
    longer in existence on January 27, 2010, when MERS purportedly assigned MERS' interest in
12
    the DOT and Note. It is rudimentary that an agency relationship results from the manifestation
13
    of consent by one person that another shall act on his behalf and be subject to his control, with
14
    a correlative manifestation of consent by the other party to act on his behalf and subject to his
15
    control. *Moss v. Vadman*, 77 Wn.2d 396, 402-036, 463 P.2d 159 (1969); *Restatement of*
16
    *Agency.* It is hard to fathom how MERS can act as an agent for IndyMac Bank several years
17
    after the bank had ceased to exist. *Bain, supra*. ("While we have no reason to doubt that the
18
    lenders and their assigns control MERS, agency requires a specific principal that is
19
    accountable for the acts of its agent. If MERS is an agent, its principals in the two cases before
20
    us remain unidentified.")
21
            When Defendant NWTS began to take steps to foreclose upon Plaintiff's homestead,
22
    its authority came from the Appointment of Successor Trustee because it was not named in the
23
    Deed of Trust as original trustee. However, because MERS was acting unlawfully, its
24

Motion for Summary Judgment                    16

1  Assignment of Deed of Trust was legally invalid and the subsequent Appointment of

2  Successor executed by OneWest too was legally invalid. Therefore, NWTS was without

3  authority to act and any and all actions it took in order to effectuate the non-judicial sale of

4  Plaintiff's home were similarly invalid. The fact that Plaintiff was delinquent in his mortgage

5  payments, after being encouraged by OneWest to do so, does not give the Defendants free

6  reign to do whatever they want. *Bain v. OneWest Bank,* 2011 U.S. Dist. LEXIS 26318 (C09-

7  0149-JCC, March 15, 2011) (Judge John C. Coughenour held that," A ruling favorable to

8  Plaintiff in this case and others like it cannot and should not create a windfall for all

9  homeowners to avoid upholding their end of the mortgage bargain—paying for their homes.

10  But a homeowner's failure to make payments cannot grant lenders, trustees, and so-called

11  beneficiaries like MERS license to ignore state law and foreclose using any means

12  necessary.").

13  **The subject non-judicial foreclosure is defective procedurally and cannot be sustained**

14  Because the *Bain*'s ruling applies to the instant foreclosure process substantively, the

15  process is invalidated and unlawful as a matter of law. Put it another way, the application of

16  *Bain* disposes the first cause of action of Violations of the Washington Deed of Trust Act

17  entirely. However, Plaintiff has pleaded with specificity of how Defendants have failed to

18  strictly comply with the Act in commencing and advancing the process of non-judicial

19  foreclosure against Plaintiff. These violations are ample and sufficient to permanently restrain

20  the non-judicial sale attempted by the Defendants.

21  RCW 61.24.010(2) mandates that only the beneficiary may appoint a successor trustee.

22  OneWest has falsely claimed in the Appointment of Successor Trustee that it is the beneficiary

23  and the owner of the Note (Exhibit 7). It is clear from record that OneWest is neither but

24

Motion for Summary Judgment                    17

1    NWTS went ahead and took various actions to effectuate the non-judicial foreclosure

2    regardless. Both OneWest and NWTS violated RCW 61.24.010(2). .

3        RCW 61.24.030(8)(l)  requires that the homeowner/borrower receive a notice of default

4    containing the name and address of the owner of the promissory note. NWTS was responsible

5    for preparing the Notice of Default in the instant case. On the date that the document was

6    prepared, NWTS had actual notice that OneWest was not the owner of the Note but listed

7    OneWest as the owner of the Note (Exhibit 1). RCW 61.24.030(7)(a) requires that "for

8    residential real property, before the notice of trustee's sale is recorded, transmitted, or served,

9    the trustee shall have proof that the beneficiary is the owner of any promissory note or other

10   obligation secured by the deed of trust." NWTS had actual knowledge prior to the Notice of

11   Trustee Sale was recorded and transmitted that OneWest was not the owner of the Note

12   whatsoever. Therefore, NWTS violated RCW 61.24.030(7)(a).

13       Because this case involves Plaintiff's primary residence, there are pre-notice of default

14   letters mandated by RCW 61.24.031 that the trustee must send him prior to issuing the Notice

15   of Default; NWTS did not send these statutorily mandated letters. Meanwhile, Northwest

16   Trustee prepared the Beneficiary Declaration/Loss Mitigation (Exhibit 2) and attached to the

17   Notice of Default which contains the false representation that OneWest is the beneficiary.

18   Such, both NWTS and OneWest violated RCW 61.24.031 by issuing a false declaration

19   required for owner occupied properties.

20       In *Grant v. First Horizon Home Loans*, 2012 Wash.App. LEXIS 1246 (May 29, 2012), the

21   Court of Appeals held: "Under the deeds of trust act (DTA), chapter 61.24, the trustee must

22   'have proof that the beneficiary is the owner of any promissory note or other obligation

23   secured by the deed of trust' before issuing a notice of trustee's sale. Thus, if BNYM is not the

24

H A  T H U  D A O ,  E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   owner of the note, then neither it nor Quality as its agent and/or trustee had authority to

2   foreclose, and the initiation of that proceeding was unlawful." OneWest has plainly conceded

3   that it has never been the owner of Plaintiff's Note to this Court, therefore NWTS either acting

4   as OneWest's agent or trustee under the deed of trust, did not have authority to initiate the

5   foreclosure proceeding against the Plaintiff and the proceeding itself is unlawful.

6        **On presumption that Defendant NWTS could act as successor trustee, NWTS has
    violated the duty of good faith as required under the Deed of Trust Act**

7
         It is undeniable that Northwest Trustee has violated their duty of good faith. Legally
8
    appointed or not, NWTS willingly participated in the role of successor trustee and took actions
9
    consistent with that role. The Supreme Court reminds the trustee of its duty of good faith in
10
    Bain:
11
         Critically under our statutory system, *a trustee is not merely an agent for the lender or
12       the lender's successors*. Trustees have obligations to all of the parties to the deed,
         including the homeowner. RCW 61.24.010(4) ("The trustee or successor trustee has a
13       duty of good faith to the borrower, beneficiary, and grantor."); *Cox v. Helenius*, 103
         Wn.2d 383, 389, 693 P.2d 683 (1985) (citing GEORGE E. OSBORNE, GRANT S. NELSON
14       & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 7.21 (1979) ("[A] trustee of a
         deed of trust is a fiduciary for both the mortgagee and mortgagor and must act
15       impartially between them.")).  Among other things, "the trustee shall have proof that
         the beneficiary is the owner of any promissory note or other obligation secured by the
16       deed of trust" and shall provide the homeowner with "the name and address of the
         owner of any promissory notes or other obligations secured by the deed of trust" before
17       foreclosing on an owner-occupied home. RCW 61.24.030(7)(a), (8)(*l*).
18
19   *Bain, supra, emphasis added*.

20        Despite this mandate, Defendant NWTS boldly asserted that it is the "duly authorized

21   agent of the beneficiary" or OneWest. Acting consistently with its fidelity to, and only to

22   OneWest, NWTS pushed forth and recorded NOT and ANOT in total disregards for the fact

23   that IndyMac Bank, FSB was no longer functioning as a corporate entity on January 27, 2010.

24

Motion for Summary Judgment                    19

1   It is impossible for NWTS to say that it had no knowledge that MERS could not and should

2   not have executed the Assignment because this is a simple and well-publicized fact. The

3   explanation for this glaring oversight is that the Defendants are actively engaging in a

4   conspiracy to default the Plaintiff individually and the public at large. NWTS actually

5   advertises itself as the "one stop shop for lenders" on its website[2]. NWTS has admitted to

6   drafting or providing all of the documents to OneWest and MERS that was executed and

7   recorded in regards to the non-judicial foreclosure of McDonald's property (Exhibit 20). Based

8   on these facts, it was impossible for NWTS to ever perform the duty of good faith as mandated

9   by law. NWTS' culpability is emphasized by the fact that even after Plaintiff has brought to

10  NWTS the falsities in their documents, NWTS continued to utilize them in order to advance

11  the foreclosure to its conclusions.

12  **OneWest's theory that mere holder status is sufficient to foreclose is not supported by fact or law**

13

14          Being confronted with discovery material that directly contradicts NWTS' initial claim

15  that OneWest was the owner of the Note on the day that NWTS commenced, the Defendants

16  now claim that the Court should not pay any attention to their previous lies and inconsistencies

17  but to accept their new claim that Freddie Mac is the investor and OneWest is the holder of the

18  Note and the inquiry should end there. The audacity of this argument notwithstanding, its

19  appeal and vitality is short-lived. Freddie Mac and Deutsche Bank already expressed that

20  Plaintiff's loan was securitized as early as 2007 (Exhibits 15 & 16). Pursuant to the customs of

21  securitization, the original Note and Deed of Trust should have been delivered from the

22  originator of the loan to the subsequent transferees in the securitization chain. Plaintiff's Note

23  _____

24      [2] http://www.northwesttrustee.com/profile.aspx

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   should have gone from the originator to the seller and then from the seller to the Trustee of the

2   securitized trust, or if not the Trustee, then its designated Custodian of Records. The Custodial

3   Agreement (Exhibit 21, Custodial Agreement) and records in this case failed to confirm that

4   the Note was ever delivered to the Trust, or maintained in the Custodial Loan File.

5   Additionally, Plaintiff has inspected the purported original Note and found it to be a high

6   quality reproduction because the document is of such pristine condition as it has not gone

7   through that many sets of human hands.

8        In support of holder status, OneWest utilized a Custodial Agreement executed between

9   OneWest, Deutsche and Freddie Mac as evidence of their rights as a holder in their previous

10   Motions for Summary Judgment. Section "g" of the agreement states, "Seller/Servicer shall

11   hold in trust and for <u>the sole benefit</u> of Freddie Mac all notes released to it" (emphasis added).

12   This requires Freddie Mac to own the Note in order for the Note to be held by Deutsche as

13   Custodian of Records.  Freddie Mac already disavowed ownership and specified instead that

14   Plaintiff's Note was sold to a mortgage-backed securitized trust. This Agreement does not give

15   OneWest the holder status as claimed. If anything, the Agreement indicates clearly that

16   OneWest has absolutely no benefit from the notes released to it.

17        The evidence produced herewith contradicts OneWest's claim that it received

18   possession of the Note from Deutsche because the discovery material provided by Deutsche

19   does not list the Note as one of the items given to Deutsche as the Custodial of Record to hold.

20   If Deutsche did not have possession of the Note, Deutsche could not provide it to OneWest to

21   hold at any time. The Custodial Loan File indicates they received the Mortgage (Deed of

22   Trust) and the Title policy. What happened to the original Note is a mystery. The missing links

23   between the point of origination by IndyMac Bank and OneWest's claim of present possession

24

Motion for Summary Judgment        21

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   of the Note buttress Plaintiff's belief that the Note currently held by counsel for OneWest is

2   nothing more than a superb reproduction of the original but not the genuine article

3   (Declaration of James McDonald).

4       Washington law defines the person entitled to enforce the note as: "(i) the holder of the

5   instrument, (ii) nonholder in possession of the instrument who has the rights of a holder, or

6   (iii) a person not in possession of the instrument who is entitled to enforce the instrument

7   pursuant to RCW 62a.3-309 or 62a. 3-418(d)." The facts show that OneWest simply does not

8   fit into any of these three categories. First of all, OneWest is not a holder of the Note because

9   it did not pay any value for it. RCW 62A.3-302. OneWest did not purchase the Note as part of

10  IndyMac Federal's assets from the FDIC in 2009 because IndyMac Bank had sold the Note in

11  2007 and divested itself from all legal and equitable interest in it. RCW 62A.9-318. Second,

12  OneWest does not claim that it is a non-holder in possession of the instrument who has the

13  rights of a holder so subsection (ii) does not apply. OneWest in fact steadfastly claims that it is

14  a holder and that it obtained possession of the Note from the Custodian of Records. However,

15  Deutsche's records as Custodian do not show that the Custodian ever took delivery or

16  possession of the Note. Even if Deutsche had in fact taken possession of the Note, OneWest

17  receives no benefit of any notes released to it by Deutsche. Meanwhile, Freddie Mac confirms

18  that Plaintiff's loan was securitized into a trust and not kept in its loan portfolio.

19      OneWest's has proffered that it can foreclose upon Plaintiff's home because there exists a

20  servicing agreement between itself and Freddie Mac. The proof of this agreement as relied

21  upon by OneWest is a link to Freddie Mac's "Servicing Guide" (Exhibit 22). This Servicing

22  Guide is just that, a general guide, and NOT an executed valid servicing agreement between

23  OneWest and Freddie Mac. Moreover, this general guide applies only to loans actually owned

24

Motion for Summary Judgment                    22

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   by Freddie Mac as is stated in Chapter 50-2 (Exhibit 23, Servicing Guide). Where Freddie Mac

2   denied that it ever owned the Note this guide simply does not apply. Finally, since there has

3   never been any claim by OneWest the Note was lost or destroyed, OneWest cannot avail itself

4   to subsection (iii) of RCW 62A.3-301 and RCW 62A.3-309.

5   **Even if OneWest has actual possession of the Note, the Deed of Trust does not follow**

6       Plaintiff is well aware of the argument made by the foreclosing entities that mere

7   possession of the note is sufficient to enforce the mortgage or deed of trust because "the

8   mortgage follows the note." *Carpenter v. Longan,* 83 U.S. (16 Wall.) 271, 21 L.Ed. 313 (1872)

9   ("all the authorities agree that the debt is the principal thing and the mortgage an accessory.")

10  However, the facts of this case have made it impossible for the Deed of Trust to follow the

11  Note because the Note's whereabouts, before it came into the possession of OneWest's

12  counsel, are completely unknown. Meanwhile, we know exactly where the Deed of Trust has

13  gone because MERS already executed and caused to be recorded the Assignment of Deed of

14  Trust from MERS onto OneWest in which MERS transferred not just the rights under the

15  Deed of Trust but also the interest under the Note, including the right of payments. Said

16  Assignment was recorded in the public records and was meant to be relied upon by the world.

17  If anything, the Assignment of Deed of Trust caused the Note to follow the Deed of Trust and

18  not the other way around. In other words, the execution and recording of the Assignment of

19  the Deed of Trust keeps the Note and Deed of Trust in MERS purgatory. Restatement 3d.,

20  Property: Mortgages, §5.4, Comments a. ("… it is nearly always sensible to keep the mortgage

21  and the right of enforcement of the obligation it secures in the hands of the same person. This

22  is so because separating the obligation from the mortgage results in a practical loss of efficacy

23

24

Motion for Summary Judgment              23

**HA THU DAO, ESQ.**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    of the mortgage. When the right of enforcement of the note and mortgage are split, the note

2    becomes, as a practical matter, unsecured.")

3    **The Defendants' violations of the Deed of Trust Act constitute violations of Washington**
     **Consumer Protection Act**

4
         The foregoing conduct taken by the Defendants constitute violations of the Washington

5    Consumer Protection Act as per the test set forth in *Hangman Ridge Training Stables, Inc. v*

6    *Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986). In the Ninth Circuit, the court

7    in *Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa)*, 674 F.3d 1083 (9th Cir.

8    2012), has held that irregularities in non-judicial foreclosure sales constitute unfair and

9    deceptive acts. Most relevant to this Court's consideration for summary judgment purposes is

10   the Supreme Court's holdings in *Bain v. Metro., supra.* There, the court has considered the

11   question of whether the homeowner has a cause of action under the CPA against MERS if

12   MERS acts as an unlawful beneficiary under the terms of the DOTA, and the Court's qualified

13   answer serves as road map to our analysis. On the contested elements of the test, the Bain

14   court held first that the assignment used by MERS which purports to transfer beneficial

15   interest on behalf of its own successors and assigns, and not on behalf of any principal, is

16   capable to deceive the public because it is deceptive for a party to claim authority when no

17   authority in fact existed. *Bain*, supra.  In our case, MERS doesn't even specify the source of its

18   authority to act as an agent:

19

20

21

22

23

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

**Assignment of Deed of Trust**

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to **OneWest Bank, FSB**, whose address is 888 East Walnut Street, Pasadena, CA 91101, all beneficial interest under that certain deed of trust, dated 01/08/07, executed by James B. McDonald, a single man, Grantors, to Pacific Northwest Title Insurance Co., Inc., Trustee, and recorded on 01/10/07, under Auditor's File No. 20070110002077, records of King County, Washington.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: _January 27_, 20_10_

**Mortgage Electronic Registration Systems, Inc. "MERS"**

By: _____

Title: __Brian Burnett__      **Assistant Vice President**

STATE OF ___Texas___ )

Second, the Bain court found because of "considerable evidence that MERS is involved in an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide" if the language of the assignment of the deed of trust is unfair or deceptive, it would have a broad impact. This element is met in Plaintiff's case because Plaintiff's loan is one of the millions that MERS is designated as beneficiary.

Third, the Bain court rejected MERS' contention that homeowners need not to know who the note holder is so long as they knew who the loan servicer is. Here, the court explained that homeowners have the need to know and the right to know who the note holder is in the event that they need to deal with the holder of the note "to resolve disputes or to take advantage of legal protections" as well as when "there have been misrepresentations, fraud, or irregularities in the proceedings". Plaintiff's case is classic in that the instant foreclosure process is replete with irregularities, defendants have made numerous misrepresentations and committed fraudulent conduct in order to vacate him from his own home, and Plaintiff is met with fierce resistance from Defendants when he tried to ascertain who the note holder and the note owner is.

Motion for Summary Judgment                          25

**HA THU DAO, ESQ.**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1         The Bain court finally recognized in foot note 18 that MERS officers often issue

2   assignments  without verifying the underlying information, resulting in incorrect or fraudulent

3   transfers. Clearly, in the instant case where the person who executed the Assignment of Deed

4   of Trust is NOT a corporate officer of MERS but an employee of OneWest, and where

5   OneWest produced a Corporate Resolution dated after the Assignment had already been

6   executed and recorded, and NWTS utilized the Assignment to commence foreclosure, Plaintiff

7   has been injured by the collective action of the Defendants. These same facts also prove

8   positively that MERS was a causal factor in the foreclosure because without MERS and the

9   Assignment, OneWest and its agent, NWTS could not have affected Plaintiff's title as they are

10  total strangers to the original transaction. In other words, MERS acted as a conduit for

11  OneWest and NWTS to perpetrate fraud upon Plaintiff. The Defendants' conspiracy to take

12  Plaintiff's home therefore met all the elements of the Consumer Protection Act.

13      The resulting injury to Plaintiff "may be presumed when the consumer has to take time or

14  expend money when the consumer has to remediate his status due to a CPA violation." *Panag*

15  *v Farmers Ins. Co. of Washington,* 166 Wn.2d 27, 204 P.3d 885 (2009)*.* Plaintiff McDonald

16  has spent the last 31 months fighting the unlawful and deceptive actions of the Defendants not

17  by choice but by necessity. In the world where homeowners struggle to make ends meet,

18  effective legal representation in opposition of foreclosure is not possible. The instant litigation

19  has been more than a full time employment for the Plaintiff. He has had to navigate through

20  extremely rough terrains without the benefit of a mentor or formal education. He has had to

21  forego employment opportunities in order to concentrate of his quest to get to the answer of

22  whether the named Defendants had proper authority to foreclose on his home. Plaintiff's credit

23  has been infected with reports by OneWest of active foreclosure.

24

Motion for Summary Judgment          26

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1

2    **In Trade Or Commerce**: Each of the defendants are conducting their trade while

3    committing these violations. NWTS is a foreclosure mill. Its sole purpose is to conduct non-

4    judicial foreclosures. MERS receives its income by removing the state oversight of the

5    transference and sales of promissory notes. One of OneWest's revenue streams is to foreclose

6    on peoples homes. McDonald may not have wanted to do business with the defendants, but he

7    has had them forced upon him. Too editorialized, let's make it neutral. The defendants are

8    huge corporations engaging in foreclosures of tens of thousands if not millions of homes all

9    over the country and reaping tremendous profits for doing so.  There is no doubt that the

10   defendants actively engage in trade or commerce and that their conduct directly impact public

11   interest. There are over 4000 records of OneWest Bank being connected to foreclosure within

12   Pierce, King and Snohomish Counties over a 24 month period. As to Northwest Trustee,

13   Snohomish County shows 75,931 instances of Northwest Trustee Services acting as trustee in

14   non-judicial foreclosures. Extrapolating these data to the rest of the state and it becomes clear

15   that the public interest implicated by these defendants' conduct in a very broad and profound

16   way.

17       **Injury to Plaintiff is real and capable of being measured :**

18       "Injury may be presumed when the consumer has to take time or expend money when the

19   consumer has to remediate his status due to a CPA violation." *Panag v Farmers Ins. Co. of*

20   *Washington,* 166 Wn.2d 27, 204 P.3d 885 (2009)*.* Plaintiff alleges that he has spent the last 31

21   months trying to get at the truth of who owns his loan and who has the right to foreclose upon

22   his homestead. This litigation has consumed all of Plaintiff's time as he has had to study law,

23   without the benefit of a mentor or formal schooling. Plaintiff has lost countless opportunities

24

Motion for Summary Judgment              27

1    to get back to earning the income he is capable of.  Additionally, the defendants' collective

2    action has severely clouded the title of Plaintiff's property for which only judicial intervention

3    and declaratory judgment can clear up. This constitutes real and substantial injury suffered by

4    Plaintiff. Finally, Plaintiff has an unlawful foreclosure being reported on his credit where it has

5    remained to this day despite his repeated requests made to the Defendants to correct the error.

6    These factors have hindered Plaintiff's ability to obtain employment and have caused to pay

7    more for everything from telephone service to utility connection.

8        **Causation**: This element is straightforward. Had the defendants not committed these

9    heinous deceptive acts, McDonald would not have filed this lawsuit.

10       The claims are further illustrated in Appendix "D" (WA CPA Spreadsheet).

11       **McDonald claims damages.** McDonald claims damages of $2,000 per violation and

12   trebles those damages as allowed by the CPA to $6,000 (Appendix B). McDonald also claims

13   damages for the amount of time he has had to put in to remediate these violations – which

14   resulted in a severe loss of income – in the amount of $177,352 (Declaration of James

15   McDonald).

16   **Defendants' conduct met all elements of common law fraud**

17       Plaintiff's claim of civil fraud is ripe for summary judgment based on the clear, cogent and

18   convincing evidence of the foregoing described conduct. The nine elements of fraud are: "(1)

19   representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its

20   falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's

21   ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's

22   right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 130 Wn.2d 486

23   (Wash.1996).

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    Here, according to the Transmittal Package, OneWest directed NWTS to commence

2   foreclosure claiming that it is the owner of the Note and the beneficiary under the Deed of

3   Trust. NWTS then prepared, transmitted and publicly recorded a series of documents

4   containing untruths and inaccuracies. MERS participated by executing the AOD purporting to

5   act on behalf of a bank that ceased to exist more than two years prior. Later, OneWest changed

6   its story and claimed Freddie Mac to be the "investor" of Plaintiff's loan. The former and latter

7   statements are proven to both be false. The former statements were utilized to foreclose; the

8   latter disclosure was used to gain an advantage over the Plaintiff in the litigation in order to

9   complete the foreclosure process. Therefore, they are material and intended to be relied upon

10  not just by the Plaintiff, but also the judge presiding over the case, and the public in general.

11  The Plaintiff, the Presiding Judge, and the Public at Large have the right to rely upon these

12  statements put forth by the Defendants and damages have resulted. Therefore, summary

13  judgment should be granted in favor of the Plaintiff. *McRae v. Bolstad*, 101 Wn.161, 676 P.2d

14  496 (1984) (Agent's failure to disclose material facts that are not reasonably ascertainable to

15  the buyer constitutes fraud); *Griffith v. Centex Real Estate Corp.*, 93 Wn.App. (Concealment

16  by seller of material facts about the property not readily discovered by buyer was an unfair and

17  deceptive act or practice and constituted fraud).

18    The specific documents containing misrepresentations are: the Assignment of Deed of

19  Trust, the Appointment of Successor Trustee; the Notice of Default, Section K where OneWest

20  is designated as Note Owner and creditor of the loan and beneficiary of the Deed of Trust;

21  Notice of Trustee Sale and Amended Notice of Trustee Sale. The timeline of these

22  misrepresentations can be viewed in Appendix C (Flow Chart of Defendants' documents).

23

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    The damages suffered by Plaintiff as a result of Defendants' conduct are discussed in detail

2  in Plaintiff's Declaration and illustrated further in Appendix E (Fraud Spreadsheet).

3        **The Defendants have committed Fraud on the Court**

4        The foregoing discussion leads naturally to the conclusion that the Defendants and

5  their lawyers have put forth documents in order to circumvent the statutory requirements of the

6  DOTA as well as to gain an unfair advantage in the litigation commenced by the Plaintiff. In

7  particular, Heidi Buck, Esq., as attorney for NWTS, has made arguments and filed statements

8  made under oath of material facts that are simply unsupported either factually or legally. None

9  of the Defendants can claim ignorance as to the fact that MERS could not be a lawful

10  beneficiary and therefore OneWest cannot receive any right or interest transferred via the

11  AOD executed by MERS. Once Plaintiff filed the instant lawsuit, defense counsel began to

12  advance arguments grounded on these false documents. What more, Counsel have filed

13  additional documents in order to reinforce the validity of their former proof and further

14  obfuscate the identification of the note owner or note holder. These activities were taken

15  deliberately by the Defendants and their counsel with the knowledge that this Court would rely

16  upon these documents and counsel arguments in its determination of the dispute.

17        The assertions made and documents submitted in the underlying foreclosure by the

18  named defendants fits neatly into the concept of "fraud upon the court," as it has been defined,

19  which is "a species of fraud which is designed to subvert the integrity of the court itself, or

20  fraud committed by officers of the court as to disable the judiciary's function as an impartial

21  arbiter of disputes between parties."  J. Moore & J. Lucas*, Moore's Federal Practice* P60.33,

22  at 360-62 (2d. ed. 1983) (footnotes omitted); *Hazel-Atlas Glass Co. Hartford-Empire Co.,* 322

23  U.S. 238 (1944) (forged article used to secure patent was referred to in appellate proceedings

24

Motion for Summary Judgment                    30

HA THU DAO, ESQ.

3501 RUCKER AVE. EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    to support patentee's case of infringement and constituted fraud upon on the court); *Shaffer v.*

2    *City Nat'l Bank*, 384 B.R. 214 (W.D. Ark.2008) (" 'Fraud on the court' is defined as 'a scheme

3    to interfere with the judicial machinery performing the task of impartial adjudication, as by

4    preventing the opposing party from fairly presenting his case or defense.'"); *Landscape Prop.,*

5    *Inc. v. Vogel,* 46 F.3d 1416, 1422 (8th Cir. 1995) (internal quotation and citation

6    omitted)( "most egregious misconduct directed to the court itself" justifies a finding of fraud

7    on the court. *Landscape Prop.,* 46 F.3d at 1422 (internal quotation and citation omitted).

8    Examples of such egregious misconduct include the fabrication of evidence and bribery of a

9    judge or jury. *Id.* (*internal quotation and citation omitted*). Because attorneys are officers of

10   the court, dishonest conduct on their part "would constitute fraud on the court**."** *H.K. Porter*

11   *Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1119 (6th Cir. 1976); *see*

12   *also Kupferman,* 459 F.2d at 1078 (same); *Pearson v. First NH Mortgage Corp.,* 200 F.3d 30,

13   38 (1st Cir. 1999) (same); to prove fraud on the court, Plaintiff must establish that the officer

14   of the court's misrepresentation or nondisclosure was *material* to the court's judgment. The

15   court must determine whether the officer's fraudulent conduct "was likely to have made a

16   difference to the outcome of the matter if it had been known." ); *Apotex Corp. v. Merck &*

17   *Co.,* 507 F.3d 1357, 1360 (Fed. Cir. 2007) (stating that "[f]raud upon the court requires that

18   there was a material subversion of the legal process such as could not have been exposed

19   within the one-year window"); *Zakrzewski v. McDonough,* 490 F.3d 1264, 1267 (11th Cir.

20   2007) (encouraging the district court, on remand, to consider whether counsel made a

21   "material misrepresentation" to the court in determining whether a fraud on the

22   court occurred); *State Street Bank & Trust Co. v. Inversiones Errazuriz,* No. 01 Civ. 3201

23   (RLC), 2003 U.S. Dist. LEXIS 6560, 2003 WL 1907955, at *1 (S.D.N.Y. April 18,

24

Motion for Summary Judgment                    31

1   2003) (unpublished) ("[U]nless the allegedly concealed information was material to the

2   determination made by the court, relief under Rule 60(b) will not lie.").

3       Here, counsel for MERS, OneWest and NWTS knew that the proof they submitted would

4   be material to the Court's consideration as to whether the named parties have the requisite

5   legal rights to foreclose upon Plaintiff's homestead. First and foremost, counsel should have

6   been alerted to the obvious legal impossibility of MERS's executing the Assignment on behalf

7   of IndyMac Bank on January 27, 2010, when it has been public knowledge that IndyMac Bank

8   ceased to exist on July 11, 2008. Second, it is likewise difficult for defense counsel to deny

9   knowledge that the veracity of those who signed these documents including Erica A. Johnson-

10  Seck, Brian Burnett, and Charles Boyle has all been called into doubt by several judicial

11  bodies. Third, for an unsuspecting homeowner who believes in the documents transmitted to

12  him and recorded in the public records at face value, his home would have been irretrievably

13  lost to those who are without authority to foreclose.

14  **Defendants have conspired to defraud Plaintiff and the public at large, thereby guilty of criminal profiteering**

15      Washington Criminal Profiteering Act provides that a person who sustains injury to his or

16  her property by *an act of criminal profiteering that is part of a pattern of criminal profiteering*

17  *activity*, or by any offense defined in the enumerated statutes, may recover damages and the

18  costs of the suit filed, including reasonable investigative and attorney's fees. RCW

19  9A.82.100(1)(a). Mortgage Fraud is one of the enumerated statutes entitling the injured party

20  to damages. RCW 19.144.080(3) prohibits the "use or facilitate the use of any misstatement,

21  misrepresentation, or omission, knowing the same to contain a misstatement,

22  misrepresentation, or omission, during the mortgage lending process with the intention that it

23  be relied on by a mortgage lender, borrower, or any other party to the mortgage lending

24

Motion for Summary Judgment                 32

1   process." The Defendants have conspired to violate the Mortgage Fraud statute by using

2   MERS as an assignor of the interests in deeds of trust to foreclose upon Washingtonians with

3   the full knowledge that MERS never owned or held the promissory note in any of these

4   mortgage loan transactions.

5       The Defendants' conspiracy is apparent because each one of them has depended on the

6   other to carry out the objective of foreclosure. For example, OneWest needed MERS to assign

7   the DOT in order to appoint NWTS as the successor trustee. Not until the appointment was

8   executed and recorded, was NWTS able to prepare, transmit and record Notices of Trustee

9   Sale which sustained the foreclosure process of Plaintiff's home. A simple search of the public

10  records in our counties using MERS, OneWest and NWTS as key words would yield a

11  substantial number of non-judicial foreclosures in excess of the required three predicate acts

12  occurring with the past five years (Exhibit 24, Composite of Public Records). RCW

13  9A.82.010(12). These facts establish fully that the Defendants are guilty of criminal

14  profiteering entitling Plaintiff to injunctive relief without having to post a bond. *Bowcutt v.*

15  *Delta N. Star Corp.,* 95 Wn.App 311; 976 P.2d 643 (Wash.App.1999) (Non-judicial sale can

16  be restrained by the superior court under the Criminal Profiteering statute without the bond

17  required by the Deed of Trust Act).

18      **The Defendants violated RESPA by failing to validate the debt**

19      Defendants have violated RESPA by failing to respond to Plaintiff's request for them

20  made in April of 2010 for them to validate the debt being collected. Because the Defendants

21  did not challenge the Qualified Written Request made by Plaintiff, they are obligated to

22  respond to the same within the time provided for in the Act. 12 U.S.C. §2605(e)(2)(C)(1).

23  OneWest, as the servicer of the loan, is responsible to: 1) make any necessary corrections to

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   the Plaintiff's account and provide written notification of the corrections; or 2) after

2   conducting an investigation, provide Plaintiff with a written explanation or clarification as to

3   why OneWest believes that the account is correct; or 3) after conducting an investigation,

4   provide Plaintiff with the information requested, or an explanation why the information sought

5   is unavailable. 12 U.S.C. §2605(e)(2) (C)(i); Reg. X, 24 C.F.R. §3500.21(e)(3)(ii)(B). Here,

6   OneWest simply gave an unsubstantiated "burdensome" blanket response (Exhibit 13). In

7   contrast with other sections of RESPA, §2605(f) provides Plaintiff with an express right of

8   action under which he can recover actual damages, statutory damages, costs and reasonable

9   attorney's fees. Actual damages are all that naturally flow from OneWest's failure to respond

10  appropriately make appropriate corrections or otherwise comply with the Act's requirements.

11  These include but not limited to costs of transmitting the QWRs, time spent, additional

12  interest, late fees, and foreclosure costs, payments made to former service after effective date

13  of transfer, and damages to credit rating. Plaintiff is also entitled to damages for emotional

14  anguish and distress resulting from OneWest's persistent refusal to comply with the law. *Moon*

15  *v. GMAC Mortgage Corp.*, 2009 U.S. Dist LEXIS 91933 (W.D. Wash, Oct. 2, 2009); *McLean*

16  *v. GMAC Mortgage Corp.*, 595 F.Supp.2d 1360 (S.D. Fla.2009); *Wright v. Litton Loan*

17  *Servicing, LP*, 2006 U.S. Dist. LEXIS 15691 (E.D. Pa. April 4, 2006) (concluding actual

18  damages include non-economic losses such as suffering and emotional distress and awarding

19  plaintiff $25,000) .

20      On the central question of whether OneWest is the lawful creditor of the mortgage

21  loan, OneWest failed to answer. Over the period of two months, OneWest continued reporting

22  to all three of the Credit Reporting Agencies twice in violation of the requirement that no

23  reporting occur during the 60 day period of the QWR. OneWest never once attempted to

24

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1  respond to Plaintiff's dispute that it is not the creditor of the loan and therefore has no legal

2  right to enforce the note prior to expiration of the time allowed for its response. The continuing

3  nature of OneWest's refusal constitutes a "pattern and practice of non-compliance" under the

4  Act. For just these six separate violations, the statutory damages provided for under RESPA

5  total $12,000 or $2000 per violation. *Ploog v. Homeside Lending, Inc.,* 209 F.Supp.2d 863

6  (N.D. Ill. 2002). Failing to appropriately address the questions posed by the Plaintiff is an

7  additional violation and results in another $2,000 statutory fine for each of the violation

8  enumerated here.

9  **The Defendants have violated the Fair Credit Reporting Act.**

10         The evidence in this case proves conclusively that Defendants failed to treat Plaintiff's

11  dispute made in 2010 of their inaccurate and unlawful reporting to the Credit Reporting

12  Agencies with any seriousness and as a result, failed to conduct the requisite reinvestigation.

13  15 U.S.C. §1681i(a)(1)(A). Defendant OneWest had actual knowledge of Plaintiff's dispute

14  that OneWest was neither the creditor of the subject mortgage loan, nor the owner of the Note

15  because Plaintiff sent the Qualified Written Request, Dispute and Debt Validation Demand.

16  Similarly, OneWest does not deny receipt of a separate letter sent by Plaintiff disputing

17  specifically OneWest's reporting as the creditor of Plaintiff's mortgage loan. The receipt of the

18  dispute by the credit reporting agencies and their notification to OneWest triggered its

19  statutory duties. *Gordon v. Greenpoint Credit*, 266 F.Supp.2d 1007 (S.D. Iowa 2003)

20  (Complaint adequately alleged furnisher liability claim under FCRA based on false reporting

21  of late payments on manufactured home contract).  By doing nothing, OneWest is liable to

22  Plaintiff for actual damages, or in the alternative, statutory damages of $100 to $1000, plus

23

24

Motion for Summary Judgment                    35

**HA THU DAO, ESQ.**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    attorney's fees. 15 U.S.C §1681n(a)(1), (3). The Act authorizes punitive damages as well. 15

2    U.S.C. §1681n(a)(2).

3         In the instant case, OneWest has never retracted its prior false claim that it is the creditor of

4    the mortgage loan, and the owner of the Note. There has been 815 days from the date of

5    Plaintiff's dispute to the present. Never once during this period of 815 days did OneWest take

6    corrective actions or report that the account is being disputed to the three CRAs as required

7    under 1681s-2(b). As a result, OneWest has listed Plaintiff as being in active foreclosure each

8    of the last 815 days to the CRAs. OneWest has knowingly reported the mortgage loan account

9    as belonging to OneWest as being, and reported further that the account was discharged in

10   bankruptcy while in fact the bankruptcy was dismissed before any debt was included or

11   discharged. These violations are on-going and not limited to the 815 days that have passed.

12        In addition to the actual damages which will be proven at trial, the FCRA allows for

13   statutory damages, which the Defense acknowledged in their Motion. Each day that OneWest

14   falsely claims to be Plaintiff's creditor to each CRA is three separate violations of willful

15   noncompliance. Each day OneWest refuses to mark the account in dispute with each of the

16   CRAs is three separate violations of willful noncompliance. Each day OneWest fails to

17   remove that a debt owed to OneWest, which there is none, was included or discharged in a

18   bankruptcy to Equifax is a violation of willfully providing inaccurate information. Each day

19   that OneWest fails to remove that a foreclosure process has been started, when there is no legal

20   foreclosure process started, to TransUnion and Experian are two separate violations of willful

21   noncompliance. While there is no formula provided by the courts in the case law concerning

22   the calculation of continuing violations under the FCRA, the simple fact is that at the $100 per

23   day per violation, the statutory damages would be 815 days times the bureaus included times

24

Motion for Summary Judgment                    36

1  $100 or $724,100. If calculated at the maximum statutory of $1,000 per day per violation, the

2  statutory damages would total $7,241,000 (Appendix B, Damages Calculation).

3

4  **By collecting and foreclosing on a mortgage loan that Defendants have no rights under,
   Defendants violated the FDCPA**

5

6       Defendant NWTS is a debt collector. Its voicemail announcements and its printed

7  materials admit as much. In commencing and pursuing the non-judicial foreclosure against

   Plaintiff's homestead under false pretense, NWTS violated 15 U.S.C. §1692 *et. seq.*

8

9       Defendant OneWest similarly is a debt collector under the Act. OneWest has

10 consistently caused for notices to be transmitted to Plaintiff via USPS, as well as posted on

   Plaintiff's door on a monthly basis for over a year period.

11

12      The Defendants' activities taken against Plaintiff were all without legal authority to do

   so. As discussed, the foreclosure process was made possible by the Assignment signed by an

13 employee of OneWest on behalf of MERS despite actual knowledge that MERS never owns or

14 holds the Note. Additionally, MERS purported to act as agent for IndyMac Bank in 2010 when

15 the bank had ceased to operate in 2008. OneWest declared that it was the owner of the Note

16 and the Beneficiary of the Deed of Trust in 2010 with the actual knowledge that Plaintiff's

17 loan was sold to a securitized trust in 2007. OneWest then declared that it was holding the

18 Note for the benefit of Freddie Mac but Freddie Mac disavowed any ownership interest in the

19 Note. OneWest claimed that it took possession of the Note from Deutsche Bank, the Custodian

20 of Records, but Deutsche's records show no receipt, and therefore, no transfer of possession of

21 the Note. These acts violated the following prohibitions of the Fair Debt Collection Practices

22 Act: any false, deceptive or misleading representations. 15 U.S.C. §1692e, *Hartman v.*

23 *Meridian Fin. Servs.*, Inc., 191 F.Supp.2d 1031, 1044 (W.D. Wis. 2002) (granting summary

24

Motion for Summary Judgment                37

1   judgment to debtors on claims that servicer's collection letters were deceptive); falsely

2   representing the character, amount or legal status of any debt, 15 U.S.C. 1692e(2)(a);  see *In*

3   *Re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002) (servicer demanded amounts borrower did

4   not owe); *In re Hart*, 246 B.R. 709 (Bankr. D. Mass. 2000) (servicer misrepresented that

5   consumer was obligated to pay amounts in "negative suspense account"); reporting or

6   threatening to report false information to a credit bureau, 15 U.S.C. §1692e(8); any conduct

7   the natural consequence of which is to harass, oppress or abuse. 15 U.S.C. §1692d.

8       OneWest further violated the FDCPA by sending an individual to knock on Plaintiff's

9   door and leave postings no less than 27 times after receiving and acknowledging a letter from

10  Plaintiff requiring that the only contact be done through the mail. OneWest knew Plaintiff was

11  living in his home and had no reason to send someone other than to unlawfully harass Plaintiff

12  (Dec. of James McDonald).

13      FDCPA is a strict liability statute under which Plaintiff is entitled to actual damages,

14  statutory damages up to $1000, attorney's fees and costs. National Consumer Law Center, Fair

15  Debt Collection§5.2.3 (6th ed. 2008 & Supp.); 15 U.S.C. §1692k(a). Summary judgment is

16  appropriate because the evidence establish conclusively the violations as well as the

17  Defendants' liability under the Act.

18                                   V.  **Conclusion**

19      There is simply nothing in the record of facts or law that could sustain the Defendants'

20  claim that they are the real party in interest and have the requisite right to foreclose upon

21  Plaintiff's home non-judicially. Defendants' own documentary record belies their claim of

22  ownership and holder status. In initiating and conducting an unlawful foreclosure and

23  committing the collateral act of false reporting to the CRAs and attempting to collect on a debt

24

Motion for Summary Judgment                38

1 that they have no right to, the Defendants violated the laws and caused the resulting damages

2 to Plaintiff. Plaintiff therefore respectfully requests the Court to grant summary judgment in

3 his favor and to set an evidentiary hearing to determine damages.

4

5       DATED this 21 day of September, 2012.

6

7                             Respectfully Submitted By:

8                             /s/ Ha Thu Dao

9                             HA THU DAO, WSBA 21793
                            Counsel for the Plaintiff

10

11                     **CERTIFICATION OF SERVICE**

12       I hereby certify on August 29th, 2012, the foregoing document is being served via
___First Class Mail ___Priority Mail, ___Messenger Service ___Facsimile __Electronic

13 Mail__X__ECF,  upon the following parties:

14 Heidi Buck, Attorney for Defendants
Routh Crabtree Olsen

15 13555 SE 36th Street, Ste 300, Bellevue WA 98006
425-213-5534/Fax 425-458-2131

16 hbuck@rcolegal.com

17

DATED this 21st day of September, 2012.

18

19                             /s/ Ha Thu Dao

20                             Ha Thu Dao, WSBA 21793
                            3501 Rucker Ave, Everett, WA 98201

21                             (727) 269-9334/Fax 727-264-2447
                            hadaojd@gmail.com

22                             Attorney for Plaintiff

23

24

**HA THU DAO, ESQ.**
3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

# Appendix "A"
# Table of Authorities

1

2

3

## Appendix "A"
## Table of Authorities

4

5

## Cases

6

*Celotex Corp. v. Catrett,*

7

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)……………………….…..2

8

*Anderson v. Liberty Lobby, Inc.*

9

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)……………………….…..2

10

*Miller v. Glenn Miller Prod., Inc.*

11

454 F.3d 975, 988 (9th Cir.2006)……………………………………………………...2

12

*IndyMac Fed. Bank v. Machado*

13

Case No. 50 2008 CA 037322XXXX MBAW, (15th Circ. Ct in & for Palm Beach Cty.,

FL)……………………………………………………………………………………4,

14

*OneWest Bank, FSB v Drayton*

15

2010 NY Slip Op 20429 (Decided on 10/21/10)……………………………………...5

16

*In Re: OneWest Bank, FSB v Arizmendi*

17

BK Case 09-19263-PB13 (2011)……………………………………………….6, 10,

18

*In re Telebrico*

19

Ch. 13 Case No. 10-07643-LA13 (Bankr. S.D. Cal.)………………………………6, 7, 11

20

*Mickelson v. Chase Home Finance*

21

2:11-cv-01445, Western District of Washington, Seattle Division……………………7

22

*Doble v. Deutsche Bank Nat'l Trust Co. (In re Doble)*

23

2011 Bankr. LEXIS 1449 (Bankr. S.D. Cal. Apr. 14, 2011)………………………….11

24

*In re Carter*

25

Ch. 13 Case No. 10-10257-MM13 (Bankr. S.D. Cal.)………………………………11

26

*In Bain v. Metropolitan Mortg. Servs.*

27

2012 Wash. LEXIS 2012 578 (No. 86206-1, No. 86207-9, August 16, 2012)…14, 16, 18,

19, 23, 24, 25

28

-1-        James McDonald
14840 119th PL NE, Kirkland, WA 98034
Phone: (425) 210-0614

*Moss v. Vadman*

77 Wn.2d 396, 402-036, 463 P.2d 159 (1969)……………………………………………15

*Grant v. First Horizon Home Loans*

2012 Wash.App. LEXIS 1246 (May 29, 2012)……………………………………………18

*Cox v. Helenius*

103 Wn.2d 383, 389, 693 P.2d 683 (1985)……………………………………………18,

*Carpenter v. Longan*

83 U.S. (16 Wall.) 271, 21 L.Ed. 313 (1872)…………………………………………...22

*Hangman Ridge Training Stables, Inc. v Safeco Title Ins. Co.*

105 Wn.2d 778, 780, 719 P.2d 531 (1986)……………………………………………23

Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa)

674 F.3d 1083 (9th Cir. 2012)…………………………………………………………...23,

*Panag v Farmers Ins. Co. of Washington*

166 Wn.2d 27, 204 P.3d 885 (2009)……………………………………………25, 26

*Stiley v. Block*

130 Wn.2d 486 (Wash.1996)……………………………………………………………28

*McRae v. Bolstad*

101 Wn.161, 676 P.2d 496 (1984)………………………………………………………28

*Griffith v. Centex Real Estate Corp*.

93 Wn.App.………………………………………………………………………………28

*Hazel-Atlas Glass Co. Hartford-Empire Co.*

322 U.S. 238 (1944)……………………………………………………………………30

*Shaffer v. City Nat'l Bank*

384 B.R. 214 (W.D. Ark.2008)…………………………………………………………30

*Landscape Prop., Inc. v. Vogel*

46 F.3d 1416, 1422 (8th Cir. 1995)……………………………………………………30

*H.K. Porter Co. v. Goodyear Tire & Rubber Co.*

536 F.2d 1115, 1119 (6th Cir. 1976)…………………………………………………...30

*Pearson v. First NH Mortgage Corp.*

200 F.3d 30, 38 (1st Cir. 1999)………………………………………………………...30

*Apotex Corp. v. Merck & Co.*

507 F.3d 1357, 1360 (Fed. Cir. 2007)…………………………………………………………..30

*Zakrzewski v. McDonough*

490 F.3d 1264, 1267 (11th Cir. 2007)…………………………………………………………..30

*State Street Bank & Trust Co. v. Inversiones Errazuriz*

No. 01 Civ. 3201 (RLC), 2003 U.S. Dist. LEXIS 6560, 2003 WL 1907955, at *1 (S.D.N.Y.

April 18, 2003)………………………………………………………………………………………...31

*Bowcutt v. Delta N. Star Corp.*

95 Wn.App 311; 976 P.2d 643 (Wash.App.1999)………………………………………...…..32

*Moon v. GMAC Mortgage Corp.*

2009 U.S. Dist LEXIS 91933 (W.D. Wash, Oct. 2, 2009)……………………………..…..33

*McLean v. GMAC Mortgage Corp.*

595 F.Supp.2d 1360 (S.D. Fla.2009)…………………………………………………………33

*Wright v. Litton Loan Servicing, LP*

2006 U.S. Dist. LEXIS 15691 (E.D. Pa. April 4, 2006)………………………………...…..33

*Ploog v. Homeside Lending, Inc.*

209 F.Supp.2d 863 (N.D. Ill. 2002)……………………………………………………………...34

*Gordon v. Greenpoint Credit*

266 F.Supp.2d 1007 (S.D. Iowa 2003)………………………………………………………34

*Hartman v. Meridian Fin. Servs. Inc.*

191 F.Supp.2d 1031, 1044 (W.D. Wis. 2002)……………………………………………………37

*In Re Maxwell*

281 B.R. 101 (Bankr. D. Mass. 2002)………………………………………………………..37

*In re Hart*

246 B.R. 709 (Bankr. D. Mass. 2000)…………………………………………………………...37

## Statutes

RCW 61.24.031……………………………………………………………………..3, 17, 18

RCW 61.24, *et. seq.* ……………………………………………………………………14,

RCW 61.24.005(2)…………………………………………………………………..…14

RCW 61.24.010(2)…………………………………………………………………..…17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RCW 61.24.030(8)(l)………………………………………………………………………………17, 19

RCW 61.24.030(7)(a)……………………………………………………………………………17, 19

RCW 61.24.010(4)…………………………………………………………………………………..18

RCW 62A.3-302……………………………………………………………………………………..21

RCW 62A.9-318……………………………………………………………………………………..21

RCW 62A.3-301……………………………………………………………………………………..22

RCW 62A.3-309……………………………………………………………………………………..22

RCW 19.86………………………………………………………………………………… 23-27

RCW 9A.82.100(1)(a)………………………………………………………………………………31

RCW 19.144.080(3)……………………………………………………………………………… 31

RCW 9A.82.010(12)……………………………………………………………………………… 32

12 U.S.C. §2605(e)(2)(C)(1)……………………………………………………………………… 33

12 U.S.C. §2605(e)(2) (C)(i)……………………………………………………………………… 33

Reg. X, 24 C.F.R. §3500.21(e)(3)(ii)(B)…………………………………………………….…. 33

12 U.S.C. §2605(f)………………………………………………………………………………… 33

15 U.S.C. §1681i(a)(1)(A) …………………………………………………………………………34

15 U.S.C §1681n(a)(1), (3)……………………………………………………………………… 35

15 U.S.C. §1681n(a)(2)…………………………………………………………………………… 35

15 U.S.C. §1681s-2(b)……………………………………………………………………….…... 35

15 U.S.C. §1692 *et. seq* ………………………………………………………………… 36-38

15 U.S.C. §1692e……………………………………………………………………………… 36

15 U.S.C. 1692e(2)(a)…………………………………………………………………………… 37

15 U.S.C. §1692e(8)……………………………………………………………………………… 37

15 U.S.C. §1692d ………………………………………………………………………….…... 37

15 U.S.C. §1692k(a)……………………………………………………………………………… 37

1

## Other Authorities

2   http://www.icelegal.com/files/Deposition_of_Erica_Johnson-Seck_Part_I &

3   II.pdf..................................................................................................................................5

4   http://www.nolo.com/dictionary/investor-term.html............................................................9

5   www.sec.gov/answers/cusip.htm...................................................................................12,

6   http://www.northwesttrustee.com/profile.aspx ...............................................................19

7   Restatement 3d., Property: Mortgages, §5.4…………………………………………………23

8   J. Moore & J. Lucas, *Moore's Federal Practice* P60.33, at 360-62 (2d. ed. 1983)..…29, 30

    National Consumer Law Center, Fair Debt Collection§5.2.3 (6th ed. 2008 & Supp.)…….37

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Appendix "B"
# Damages

# McDonald v. OneWest *et al.*
# Appendix "B"
# Calculation of Damages

DOTA/CPA Violation Damages Breakdown

| Section | No. of violations | Statutory Damage | Treble Damage | Party |
|---------|---|---|---|---|
| 3.1.1 | 1 | 2,000 | 6,000 | OneWest |
| 3.1.2 | 1 | 2,000 | 6,000 | OneWest |
| 3.1.3 | 1 | 2,000 | 6,000 | OneWest |
| 3.1.4 | 1 | 2,000 | 6,000 | MERS |
| 3.1.5 | 2 | 4,000 | 12,000 | NWTS |
| 3.1.6 | 1 | 2,000 | 6,000 | NWTS |
| 3.1.6 | 1 | 2,000 | 6,000 | OneWest |
| 3.1.7 | 1 | 2,000 | 6,000 | NWTS |
| 3.1.8 | 2 | 4,000 | 12,000 | NWTS |
| 3.1.9 | 2 | 4,000 | 12,000 | NWTS |
| 3.1.10 | 1 | 2,000 | 6,000 | OneWest |
| 3.1.11 | 1 | 2,000 | 6,000 | OneWest |
| | Total Damages: | 30,000 | 90,000 | |
| | Total OneWest: | 12,000 | 36,000 | |
| | Total MERS: | 2,000 | 6,000 | |
| | Total NWTS: | 16,000 | 48,000 | |

*Amount based on precedent set by WA AG in *State of Washington v Recontrust* 2:2011cv01460 (2011)

**Punitive Damages as a Result of WA CPA Violations**
**Lost Wages Calculation/Time Spent on Case**

| | |
|---|---|
| Average Annual Income Prior to Violations: | $98,075.00 |
| Adjustment for National Economic Recession: | -30% |
| Adjusted Annual Income Prior to Violations: | $69,652.50 |
| Adjusted Monthly Income: | $5,721.04 |
| 31 Months of Litigating this Case: | $177,352.24 |

**Court and Supply Costs**

| Item | Amout | Cost | | Total Cost |
|---|---|---|---|---|
| Filing Fee | 1 | | $300.00 | $300.00 |
| Service Fee | 3 | | $25.00 | $75.00 |
| Printer Ink | 7 | | $35.03 | $245.21 |
| Paper | 5 | | $4.92 | $24.60 |
| Card Stock | 2 | | $16.20 | $32.40 |
| Binders 3" | 6 | | $14.78 | $88.68 |
| Binders 2" | 1 | | $10.94 | $10.94 |
| Post It Flags | 4 | | $6.01 | $24.04 |
| Mailings | 17 | | $6.50 | $110.50 |
| Parking | 10 | | $10.00 | $100.00 |
| | | Total | | $1,011.37 |

**FDCPA Damages**

| Cause | Statutory Damage | Party |
|---|---|---|
| NOD | $1,000 | OneWest |
| NOD | $1,000 | NWTS |
| RCO Letter | $1,000 | OneWest |
| NOTS | $1,000 | OneWest |
| NOTS | $1,000 | NWTS |
| ANOTS | $1,000 | OneWest |
| Monthly visit | $27,000 | |
| ANOTS | $1,000 | NWTS |
| Total | $34,000 | |
| Total OWB | $31,000 | |
| Total NWTS | $3,000 | |

**RESPA - OneWest Bank**

| Violation | Statutory Damage |
|---|---|
| Time spent litigating | $20,000 |
| Failure to provide information | $2,000 |
| Reporting to Experian 1st month | $2,000 |
| Reporting to Experian 2nd month | $2,000 |
| Reporting to Equifax 1st month | $2,000 |
| Reporting to Equifax 2nd month | $2,000 |
| Reporting to Transunion 1st mont | $2,000 |
| Reporting to Transunion 2nd mor | $2,000 |
| Total | $34,000 |

| Slander of Title | Amount Claimed | Party |
|---|---|---|
| Assignment DOT | $15,000 | OneWest |
| Assignment DOT | $15,000 | MERS |
| Assignment DOT | $15,000 | NWTS |
| Appointment ST | $15,000 | OneWest |
| Appointment ST | $15,000 | NWTS |
| NOTS | $15,000 | OneWest |
| NOTS | $15,000 | NWTS |
| ANOTS | $15,000 | OneWest |
| ANOTS | $15,000 | NWTS |

| | | |
|---|---|---|
| Total | $135,000 | |
| Total OneWest | $60,000 | |
| Total MERS | $15,000 | |
| Total NWTS | $60,000 | |

**Fraud Claims**

| Section | Amount Claimed | Party |
|---|---|---|
| 3.7.3 | $25,000 | OneWest |
| 3.7.4 | $25,000 | NWTS |
| 3.7.5 | $25,000 | NWTS |
| 3.7.6 | $25,000 | NWTS |
| 3.7.7 | $25,000 | MERS |
| 3.7.8 | $25,000 | OneWest |

| | |
|---|---|
| Total | $150,000 |
| Total OWB | $50,000 |
| Total MERS | $25,000 |
| Total NWTS | $75,000 |

**Civil Conspiracy**

| | |
|---|---|
| OneWest | $25,000 |
| NWTS | $25,000 |
| MERS | $25,000 |
| Total | $75,000 |

**FCRA Claimed Damages- OneWest**

| Claim | Total Days | Violations Per Day | $100 | $500 | $1,000 |
|---|---|---|---|---|---|
| 3.5.2 | 815 | 3 | $244,500 | $1,222,500 | $2,445,000 |
| 3.5.3 | 815 | 3 | $244,500 | $1,222,500 | $2,445,000 |
| 3.5.4 | 721 | 1 | $72,100 | $360,500 | $721,000 |
| 3.5.5 | 815 | 2 | $163,000 | $815,000 | $1,630,000 |
| | | Total Damages: | $724,100 | $3,620,500 | $7,241,000 |

**Total Damages Claimed**

| | |
|---|---|
| CPA- Statutory and Punitive: | $267,352.24 |
| Court and Supply Costs: | $1,011.37 |
| FDCPA Damages: | $34,000 |
| RESPA Damages: | $34,000 |
| Slander of Title Damages: | $135,000 |
| Fraud Damages: | $150,000 |
| Civil Conspiracy Damages: | $75,000 |
| FCRA Median Damages: | $3,620,500 |
| Total Damages Claimed | $4,316,863.61 |

# Appendix "C"
# Flow Chart



**James McDonald v. OneWest Bank, FSB, et al. - Actual Events**

| ORIGINAL LOAN | | EXHIBITS 16 & 17 |
|---|---|---|
| Note and Deed of Trust executed on January 8, 2007 | → | Indymac Bank, FSB sold the Note into a MBS with CUSIP #3128NHVU4 |



**James McDonald v. OneWest Bank, FSB, et al. - OneWest Documents**

**FORECLOSURE MISREPRESENTATIONS**

OneWest claims to be the "owner" and "holder" of the Note

→

**EXHIBITS 12 & 3**

NWTS and RCO receive a "referral" from LPS to begin foreclosure proceedings in OneWest's name on 12/29/09.

Package shows OneWest is **not** the Owner.

**EXHIBIT 25**

OneWest makes NWTS their "agent" but failed to provide any documentation of that nomination during discovery upon requests for all communication between NWTS and OneWest   (RTP 3 #10)



**Northwest Trustee begins drafting and recording documents containing false statements under penalty of perjury.**

→

**EXHIBIT 8**

NWTS issues and records Notice of Trustee Sale claiming OneWest beneficiary and creditor of McDonald which was posted on McDonald's home 2/12/10

→

**EXHIBIT 9**

NWTS issues an Amended Notice of Trustee Sale recorded on 11/4/10 naming OneWest beneficiary and creditor of McDonald with a sale date of 12/10/10, less than the required 90 days from RCW 61.24.030.

**EXHIBIT 1**

NWTS drafts a Notice of Default claiming OneWest is the owner and beneficiary of McDonald's Note and DOT.

This is dated January 12, 2010.

**EXHIBIT 7**

NWTS drafts the Appointment of Successor Trustee. OneWest claims to be the owner and beneficiary of the Note and DOT. Signed by Suchann Murray on January 27, 2010 and recorded by NWTS in King County Public Records on 2/4/10.

**EXHIBIT 5**

NWTS drafts the Assignment of DOT claiming to transfer MERS' beneficial interest in the DOT and Note to OneWest. Signed under penalty of perjury by Brian Burnett on January 27, 2010.

**EXHIBIT 2**

Erica Johnson-Seck signs the Beneficiary Loss Mitigation form, under penalty of purgery, on January 7, 2010.

She falsely claimed that appropriate contact had been made with Plaintiff.

James McDonald v. OneWest Bank, FSB, et al. - Disputes



**EXHIBIT 10**

McDonald sent QWR, Dispute & DVD regarding loan to Indymac Mortgage Services, a division of OWB, MERS and NWTS on 4/27/10

**EXHIBIT 13**

On 5/12/10 OneWest sends a response, refusing to answer or obey the regulations. States they are servicer and Freddie Mac is "investor", without identifying the actual owner of the Note.

**EXHIBIT 11**

Jeff Stenman, Foreclosure Manager at NWTS, sent me a letter indicating that NWTS would investigate this matter.

**EXHIBIT 12**

However, the system notes of NWTS show a notation by Vonnie McElligott dismissing the QWR, Dispute and DVD as "…18 pages internet stuff".

There is no indication NWTS researched the issue whatsoever, but instead proceeded as OneWest's "one-stop shop".

**EXHIBIT 19**

On June 29, 2010, Plaintiff issued a dispute to Equifax, Experian, and TransUnion regarding OneWest's reporting on his credit report. OneWest was also sent a letter.

**EXHIBIT 26**

Each of the Credit Bureaus responded that they had communicated with OneWest and the information remained unchanged.

OneWest failed to remove the false information or mark the account in dispute in violation of the Fair Credit Reporting Act. OneWest did not respond to the dispute letter.

**SCHEDULE 27**

In July of 2010 Plaintiff filed an involuntary bankruptcy, which was later dismissed due to procedural error. Plaintiff listed OneWest on his Schedule F as a disputed account.

# Appendix "D"
# CPA Spreadsheet

| Claim | Party | An Unfair or Deceptive Act | In Trade or Commerce | Public Interest Impact | Injury to Plaintiff | Causation |
|---|---|---|---|---|---|---|
| Assignment DOT- Exhibit 5 | MERS | MERS assigned interest it did not have in NOTE and DOT to OneWest | MERS' revenue comes from being listed as the Beneficiary. | MERS is listed as the "beneficiary" for over half of the DOT's in the state. | The Defendants actions have injured Plaintiff. Plaintiff has had to focus on fighting the fraudulent acts committed by the defendants for the last 31 months, resulting in significant lost income and quality of life. False statements have been recorded on the title to Plaintiff's homestead. Plaintiff was unable to negotiate with the actual party of interest as OneWest and their cohorts hid the identity of the owner of Plaintiff's Note. | The Defendants' deceptive and unfair acts directly caused the injuries discussed herein. |
| Amended Notice of Trustee Sale- Exhibit 9 | NWTS | NWTS drafted and recorded an ANOTS when it knew the preceding actions were unlawful and falsely claimed OneWest to be Plaintiff's creditor and beneficiary of the Note/DOT. | | | | |
| Appt. of Successor Trustee- Exhibit 7 | NWTS | NWTS drafted Appt when it knew OneWest was not the owner or beneficiary. | Northwest Trustee's trade is being a foreclosure mill and "one stop shop" for entities claiming to be the party of interest in conducting non-judicial foreclosures. They derive income from being the agent and auctioneer for their clients, while being forced upon homeowners. | Performing a public records search for Northwest Trustee in Pierce and Snohomish Counties brought up a list of over 74,000 results. Using a logical extrapolation, the public interest impact is potentially devastating to the homeowners in this state. | | |
| Assignment DOT- Exhibit 5 | NWTS | NWTS drafted Assignment when it knew MERS did not own the Note or have legal beneficial status. | | | | |
| Notice of Default- Exhibit 1 | NWTS | NWTS drafted, mailed and caused to be posted a NOD falsely claiming OneWest and beneficiary of Plaintiff's Note, as well as Plaintiff's creditor. | | | | |
| Notice of Trustee Sale- Exhibit 8 | NWTS | NWTS drafted and recorded a NOTS when it knew the preceding actions were unlawful and falsely claimed OneWest to be Plaintiff's creditor and beneficiary of the Note/DOT. | | | | |

| | | | | The Defendants actions have injured Plaintiff. Plaintiff has had to focus on fighting the fraudulent acts committed by the defendants for the last 31 months, resulting in significant lost income and quality of life. False statements have been recorded on the title to Plaintiff's homestead. Plaintiff was unable to negotiate with the actual party of interest as OneWest and their cohorts hid the identity of the owner of Plaintiff's Note. | The Defendants' deceptive and unfair acts directly caused the injuries discussed herein. |
|---|---|---|---|---|---|
| Amended Notice of Trustee Sale- Exhibit 9 | OneWest | OneWest caused NWTS to draft and record an ANOTS when it knew the preceding actions were unlawful and the NOTS falsely claimed OneWest to be Plaintiff's creditor and beneficiary of the Note/DOT. | | | |
| Appt. of Successor Trustee- Exhibit 7 | OneWest | OneWest unlawfully appointed NWTS as Successor Trustee when neither owner, holder or beneficiary. | | A public records search of Pierce and Snohomish Counties reveals OneWest being involved in over 2500 public records. OneWest conducts no retail business in creating new mortgage loans in Washington. When you incorporate the rest of the state, there is a significant public interest impact as this seems to be OneWest's normal behavior pattern. | |
| Assignment DOT- Exhibit 5 | OneWest | OneWest's employee executed Assignment when OneWest knew no beneficial interest in note or DOT existed. | One of OneWest's income streams is the lucrative business of foreclosing on homeowners. While Plaintiff never chose to work with OneWest, they forced themselves upon him. | | |
| Beneficiary Declaration- Exhibit 2 | OneWest | OneWest falsely swore to be the beneficiary and that proper communication had taken place. | | | |
| Notice of Default- Exhibit 1 | OneWest | OneWest directed NWTS to draft and post a NOD claiming OneWest was the owner, beneficiary and creditor of the Note and DOT. | | | |
| Notice of Trustee Sale- Exhibit 8 | OneWest | OneWest caused NWTS to draft and record a NOTS when it knew the preceding actions were unlawful and the NOTS falsely claimed OneWest to be Plaintiff's creditor and beneficiary of the Note/DOT. | | | |

# Appendix "E"
# Fraud Spreadsheet

# Appendix "E" - Fraud Claim

| Element | OneWest & NOD | NWTS & NOD | NWTS & NOTS |
|---|---|---|---|
| Representation of an existing fact | OneWest caused a NOD to be drafted listing OWB as the owner and beneficiary of the Note, as well as Plaintiff's creditor. | NWTS drafted a NOD listing OneWest as the owner and beneficiary of the Note, as well as Plaintiff's creditor. | NWTS drafted, published and recorded a NOTS stating that OneWest was the beneficiary and Plaintiff's creditor, as well as claiming they were the Succ. Trustee. |
| Occurred On | January 15, 2010 at Plaintiffs Home | January 15, 2010 at Plaintiff's Home | February 16, 2010 in King County Public Records |
| Materiality | A NOD begins the non-judicial foreclosure procedure. If unlawful, everything after it is unlawful. | A NOD begins the non-judicial foreclosure procedure. If unlawful, everything after it is unlawful. | A NOTS is the required document in order to hold a non-judicial foreclosure. |
| Falsity | OneWest has never been Plaintiff's creditor, the owner of the Note or the beneficiary of the DOT. | OneWest has never been Plaintiff's creditor, the owner of the Note or the beneficiary of the DOT. | The NOD preceding it was unlawful. OneWest was not the beneficiary or Plaintiff's creditor. |
| Speaker's Knowledge | OneWest knew this as they later admitted. | NWTS received a referral prior to drafting the NOD which showed OneWest was not the owner or beneficiary. | NWTS had knowledge that the NOD & Appt. were unlawful and therefore no legal NOTS could be recorded. |
| Speaker's Intent | OneWest intended to falsely claim ownership in order to unlawfully sell Plaintiff's home. | NWTS assisted their principle in falsely claiming ownership in order to unlawfull sell Plaintiff's home. | NWTS intended to sell Plaintiff's home regardless of the fact it would be unlawful to do so. |
| Plaintiff's Ignorance | At the time, Plaintiff did not know who owned his Note. | At the time, Plaintiff did not know who owned his Note. | At the time, Plaintiff did not know who owned his Note. |
| Plaintiff's Reliance | Plaintiff was unaware of the foreclosure fraud overtaking the nation. | Plaintiff was unaware of the foreclosure fraud overtaking the nation. | Plaintiff had not yet realized that NWTS was OneWest's willing accomplice. |
| Plaintiff's Right to Rely | OneWest is governed by federal and state law, therefore they should be conducting themselves in a lawful and ethical manner. | NWTS is governed by state law as well as a duty of good faith to Plaintiff. | NWTS is governed by state law as well as a duty of good faith to Plaintiff. |
| Damages | The defendants have caused an unlawful foreclosure procedures to occur through their fraud. This has caused a severe loss of income and quality of life in order to battle this fraud (See App. B) An unlawful report to Plaintiff's credit shows a foreclosure which causes Plaintiff embarassment and lost opportunity for credit and employment. Plaintiff's title has become severely clouded due to these unlawful and fraudulent acts. | | |

| Element | NWTS & ANOTS | MERS & Assignment | OneWest & Appointment |
|---|---|---|---|
| Representation of an existing fact | NWTS drafted, published and recorded an ANOTS stating that OneWest was the beneficiary and Plaintiff's creditor, as well as claiming they were the Succ. Trustee. | MERS allowed an Assignment of Deed of Trust transferring MERS' interest in the DOT and Note in question. | OneWest caused an Appointment to be drafted, which OneWest executed, claiming to be the owner/beneficiary of to fire the original trustee and appt. their accomplice NWTS. |
| Occurred On | November 4, 2010 in King County Public Records | February 4, 2010 in King County Public Records | February 4, 2010 in King County Public Records |
| Materiality | A NOTS is the required document in order to hold a non-judicial foreclosure. | An Assignment is a transfer in the chain of title used as proof of being a party with standing. | An Appt. removes the trustee and gives the duties and responsibilities to another entity. |
| Falsity | The NOD preceding it was unlawful. OneWest was not the beneficiary or Plaintiff's creditor. | MERS never owned Plaintiff's Note and was never a lawful beneficiary. | OneWest was never the owner/holder/beneficiary |
| Speaker's Knowledge | NWTS had knowledge that the NOD & Appt. were unlawful and therefore no legal NOTS could be recorded. | MERS knew it had never owned/held Plaintiff's note and that it was an unlawful beneficiary. | OneWest knew it was not the owner, beneficiary or holder of the Note or DOT. |
| Speaker's Intent | NWTS intended to sell Plaintiff's home regardless of the fact it would be unlawful to do so. | MERS intended for the Plaintiff and the public to be duped into believing the forthcoming foreclosure was lawful. | OneWest intended to remove the unbiased original trustee so their willing accomplice could help them unlawfully foreclose on Plaintiff's home. |
| Plaintiff's Ignorance | While Plaintiff was aware OneWest was not the owner he was still unaware that NWTS was OneWest's willing henchman | Plaintiff was uneducated in the laws regarding Assignments and foreclosure. | At the time, Plaintiff was unaware of the fraud. |
| Plaintiff's Reliance | Plaintiff had not yet realized that NWTS was OneWest's willing accomplice. | The defendants are governed by both state and federal law. | OneWest is governed by state and federal law and therefore he expected OneWest to conduct themselves in a legal and ethical manner. |
| Plaintiff's Right to Rely | NWTS is governed by state law as well as a duty of good faith to Plaintiff. | The defendants are governed by both state and federal law. | OneWest is governed by state and federal law and therefore he expected OneWest to conduct themselves in a legal and ethical manner. |
| Damages | The defendants have caused an unlawful foreclosure procedures to occur through their fraud. This has caused a severe loss of income and quality of life in order to battle this fraud (See App. B) An unlawful report to Plaintiff's credit shows a foreclosure which causes Plaintiff embarrassment and lost opportunity for credit and employment. Plaintiff's title has become severely clouded due to these unlawful and fraudulent acts. | | |

| Onewest Bank, F.S.B. v Drayton |
| --- |
| 2010 NY Slip Op 20429 |
| Decided on October 21, 2010 |
| Supreme Court, Kings County |
| Schack, J. |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This opinion is uncorrected and subject to revision before publication in the printed Official Reports. |

Decided on October 21, 2010

## Supreme Court, Kings County

| Onewest Bank, F.S.B., Plaintiff, against Covan Drayton, et al., Defendants. |
| --- |

15183/09

Plaintiff

Gerald Roth, Esq.

Stein Wiener and Roth, LLP

Carle Place NY

Defendant did not answer

Arthur M. Schack, J.

In this foreclosure action, plaintiff ONEWEST BANK, F.S.B. (ONEWEST), moved for an order of reference and related relief for the premises located at 962 Hemlock Street, Brooklyn, New York (Block 4529, Lot 116, County of Kings), upon the default of all defendants. The Kings County Supreme Court Foreclosure Department forwarded the motion papers to me on August 30, 2010. While drafting this decision and order, I received on October 14, 2010, in the midst of the present national media attention about "robo-signers," an October 13, 2010-letter from plaintiff's counsel, by which "[i]t is respectfully requested that plaintiff's application be withdrawn at this time." There was no explanation or reason given by plaintiff's counsel for his request to withdraw the motion for an order of reference other than "[i]t is our intention that a new application containing updated information will be re-submitted shortly."

The Court grants the request of plaintiff's counsel to withdraw the instant motion for an order of reference. However, to prevent the waste of judicial resources, the instant foreclosure action is dismissed without prejudice, with leave to renew the instant motion for an order of [*2]reference within sixty (60) days of this decision and order, by providing the Court with necessary and additional documentation.

First, the Court requires proof of the grant of authority from the original mortgagee, CAMBRIDGE HOME CAPITAL, LLC (CAMBRIDGE), to its nominee, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), to assign the subject mortgage and note on March 16, 2009 to INDYMAC FEDERAL BANK, FSB (INDYMAC). INDYMAC subsequently assigned the subject mortgage and note to its successor, ONEWEST, on May 14, 2009.

Second, the Court requires an affidavit from Erica A. Johnson-Seck, a conflicted "robo-signer," explaining her employment status. A "robo-signer" is a person who quickly signs hundreds or thousands of foreclosure documents in a month, despite swearing that he or she has personally reviewed the mortgage documents and has not done so. Ms. Johnson-Seck, in a July 9, 2010 deposition taken in a Palm Beach County, Florida foreclosure case, admitted that she: is a "robo-signer" who executes about 750 mortgage documents a week, without a notary public present; does not spend more than 30 seconds signing each document; does not read the documents before signing them; and, did not provide me with affidavits about her employment in two prior cases. (*See* Stephanie Armour, "*Mistakes Widespread on Foreclosures, Lawyers Say,*" USA Today, Sept. 27, 2010; Ariana Eunjung Cha, "*OneWest Bank Employee: Not More Than 30 Seconds' to Sign Each Foreclosure Document,*" Washington Post, Sept. 30, 2010).

In the instant action, Ms. Johnson-Seck claims to be: a Vice President of MERS in the March 16, 2009 MERS to INDYMAC assignment; a Vice President of INDYMAC in the May 14, 2009 INDYMAC to ONEWEST assignment; and, a Vice President of ONEWEST in her June 30, 2009-affidavit of merit. Ms. Johnson-Seck must explain to the Court, in her affidavit: her employment history for the past three years; and, why a conflict of interest does not exist in the instant action with her acting as a Vice President of assignor MERS, a Vice President of assignee/assignor INDYMAC, and a Vice President of assignee/plaintiff ONEWEST. Further, Ms. Johnson-Seck must explain: why she was a Vice President of both assignor MERS and assignee DEUTSCHE BANK in a second case before me, *Deutsche Bank v Maraj*, 18 Misc 3d 1123 (A) (Sup Ct, Kings County 2008); why she was a Vice President of both assignor MERS and assignee INDYMAC in a third case before me, *Indymac Bank, FSB, v Bethley*, 22 Misc 3d 1119 (A) (Sup Ct, Kings County 2009); and, why she executed an affidavit of merit as a Vice President of DEUTSCHE BANK in a fourth case before me, *Deutsche Bank v Harris* (Sup Ct, Kings County, Feb. 5, 2008, Index No. 35549/07).

Third, plaintiff's counsel must comply with the new Court filing requirement, announced yesterday by Chief Judge Jonathan Lippman, which was promulgated to preserve the integrity of the foreclosure process. Plaintiff's counsel must submit an affirmation, using the new standard Court form, that he has personally reviewed plaintiff's documents and records in the instant action and has confirmed the factual accuracy of the court filings and the notarizations in these documents. Counsel is reminded that the new standard Court affirmation form states that "[t]he wrongful filing and prosecution of foreclosure proceedings which are discovered to suffer from these defects may be cause for disciplinary and other sanctions upon participating counsel."

## Background

Defendant COVAN DRAYTON (DRAYTON) executed the subject [*3]

mortgage and note on January 12, 2007, borrowing $492,000.00 from CAMBRIDGE. MERS "acting solely as a nominee for Lender [CAMBRIDGE]" and "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD," recorded the instant mortgage and note on March 19, 2007, in the Office of the City Register of the City of New York, at City Register File Number (CRFN) 2007000143961. Plaintiff DRAYTON allegedly defaulted in his mortgage loan payment on September 1, 2008.

Then, MERS, as nominee for CAMBRIDGE, assigned the instant nonperforming mortgage

and note to INDYMAC, on March 16, 2009. Erica A. Johnson-Seck executed the assignment as a Vice President of MERS, as nominee for CAMBRIDGE. This assignment was recorded in the Office of the City Register of the City of New York, on March 24, 2009, at CRFN 200900084809. However, as will be discussed below, there is an issue whether MERS, as CAMBRIDGE's nominee, was authorized by CAMBRIDGE, its principal, to assign the subject DRAYTON mortgage and note to plaintiff INDYMAC.

Subsequently, almost two months later, Ms. Johnson-Seck, now as a Vice President of INDYMAC, on May 14, 2009, assigned the subject mortgage and note to ONEWEST. This assignment was recorded in the Office of the City Register of the City of New York, on May 22, 2009, at CRFN 2009000155018.

Plaintiff ONEWEST commenced the instant foreclosure action on June 18, 2009 with the filing of the summons, complaint and notice of pendency. On August 6, 2009, plaintiff ONEWEST filed the instant motion for an order of reference. Attached to plaintiff ONEWEST's moving papers is an affidavit of merit by Erica A. Johnson-Seck, dated June 30, 2009, in which she claims to be a Vice President of plaintiff ONEWEST. She states, in ¶ 1, that "[t]he facts recited herein are from my own knowledge and from review of the documents and records kept in the ordinary course of business with respect to the servicing of this mortgage." There are outstanding questions about Ms. Johnson-Seck's employment, whether she executed sworn documents without a notary public present and whether she actually read and personally reviewed the information in the documents that she executed.

### *July 9, 2010 deposition of Erica A. Johnson-Seck in the Machado case*

On July 9, 2010, nine days after executing the affidavit of merit in the instant action, Ms. Johnson-Seck was deposed in a Florida foreclosure action, *Indymac Federal Bank, FSB, v Machado* (Fifteenth Circuit Court in and for Palm Beach County, Florida, Case No. 50 2008 CA 037322XXXX MB AW), by defendant Machado's counsel, Thomas E. Ice, Esq. Ms. Johnson-Seck admitted to being a "robo-signer," executing sworn documents outside the presence of a notary public, not reading the documents before signing them and not complying with my prior orders in the *Maraj* and *Bethley* decisions.

Ms. Johnson-Seck admitted in her *Machado* deposition testimony that she was not employed by INDYMAC on May 14, 2009, the day she assigned the subject mortgage and note to ONEWEST, even though she stated in the May 14, 2009 assignment that she was a Vice

President of INDYMAC. According to her testimony she was employed on May 14, 2010 by assignee ONEWEST. The following questions were asked and then answered by Ms. Johnson Seck, at p. 4, line 11 - p. 5, line 4:

Q. Could you state your full name for the record, please.

A. Erica Antoinette Johnson-Seck. [*4]

Q. And what is your business address?

A. 7700 West Parmer Lane, P-A-R-M-E-R, Building D, Austin, Texas

78729.

Q. And who is your employer?

A. OneWest Bank.

Q. How long have you been employed by OneWest Bank?

A. Since March 19th, 2009.

Q. Prior to that you were employed by IndyMac Federal Bank, FSB?

A. Yes.

Q. And prior to that you were employed by IndyMac Bank, FSB?

A. Yes.

Q. Your title with OneWest Bank is what?

A. Vice president, bankruptcy and foreclosure.

Despite executing, on March 16, 2009, the MERS, as nominee for CAMBRIDGE, assignment to INDYMAC, as Vice President of MERS, she admitted that she is not an officer of MERS. Further, she claimed to have "signing authority" from several major banking institutions and the Federal Deposit Insurance Corporation (FDIC). The following questions were asked and then answered by Ms. Johnson-Seck, at p. 6, lines 5 - 21:

Q. Are you also an officer of Mortgage Electronic Registration Systems?

A. No.

Q. You have signing authority to sign on behalf of Mortgage Electronic

Registration Systems as a vice president, correct?

A. Yes.

Q. Are you an officer of any other corporation?

A. No.

Q. Do you have signing authority for any other corporation?

A. Yes.

Q. What corporations are those?

A. IndyMac Federal Bank, Indymac Bank, FSB, FDIC as receiver for

Indymac Bank, FDIC as conservator for Indymac, Deutsche Bank, Bank of

New York, U.S. Bank. And that's all I can think of off the top of my head.

Then, she answered the following question about her "signing authority," at page 7, lines 3 - 10:

Q. When you say you have signing authority, is your authority to sign

as an officer of those corporations?

A. Some. Deutsche Bank I have a POA [power of attorney] to sign as

attorney-in-fact. Others I sign as an officer. The FDIC I sign as attorney-

in-fact. IndyMac Bank and IndyMac Federal Bank I now sign as attorney-

in-fact. I only sign as a vice president for OneWest.

Ms. Johnson-Seck admitted that she is not an officer of MERS, has no idea how MERS is
organized and does not know why she signs assignments as a MERS officer. Further, she
admitted that the MERS assignments she executes are prepared by an outside vendor, Lender

Processing Services, Inc. (LPS), which ships the documents to her Austin, Texas office from Minnesota. Moreover, she admitted executing MERS assignments without a notary public [*5]present. She also testified that after the MERS assignments are notarized they are shipped back to LPS in Minnesota.

LPS, in its 2009 Form 10-K, filed with the U.S. Securities and Exchange

Commission, states that it is "a provider of integrated technology and services to the mortgage lending industry, with market leading positions in mortgage processing and default management services in the U.S. [p. 1]"; "we offer lenders, servicers and attorneys certain administrative and support services in connection with managing foreclosures [p. 4]"; "[a] significant focus of our marketing efforts is on the top 50 U.S. banks [p. 5]"; and, "our two largest customers, Wells Fargo Bank, N.A. and JP Morgan Chase Bank, N.A., each accounted for more than 10% of our aggregate revenue [p. 5]."LPS is now the subject of a federal criminal investigation related to its foreclosure document preparation. (*See* Ariana Eunjung Cha. "*Lender Processing Services Acknowledges Employees Allowed to Sign for Managers on Foreclosure Paperwork,*" Washington Post, Oct. 5, 2010). Last week, on October 13, 2010, the Florida Attorney-General issued to LPS an "Economic Crimes Investigative Subpoena Duces Tecum," seeking various foreclosure documents prepared by LPS and employment records for various "robo-signers."

The following answers to questions were given by Ms. Johnson-Seck in the *Machado* deposition, at p. 116, line 4 - p. 119, line 16:

Q. Now, given our last exchange, I'm sure you will agree that you are

not a vice president of MERS in any sense of the word other than being

authorized to sign as one?

A. Yes.

Q. You are not - -

A. Sorry.

Q. That's all right. You are not paid by MERS?

A. No.

Q. You have no job duties as vice president of MERS?

A. No.

Q. You don't attend any board meetings of MERS?

A. No.

Q. You don't attend any meetings at all of MERS?

A. No.

Q. You don't report to the president of MERS?

A. No.

Q. Who is the president of MERS?

A. I have no idea.

Q. You're not involved in any governance of MERS?

A. No.

Q. The authority you have says that you can be an assistant secretary, right?A. Yes.

Q. And yet you don't report to the secretary - -

A. No.

Q. - - of MERS.

You don't have any MERS' employees who report to you? [*6]

A. No.

Q. You don't have any vote or say in any corporate decisions of MERS?

A. No.

Q. Do you know where the MERS' offices are located?

A. No.

Q. Do you know how many offices they have?

A. No.

Q. Do you know where they are headquartered?

A. No.

Q. I take it then you're never been to their headquarters?

A. No.

Q. Do you know how many employees they have?

A. No.

Q. But you know that you have counterparts all over the country signing as MERS's vice-presidents and assistant secretaries?

A. Yes.

Q. Some of them are employees of third-party foreclosure service companies, like LPS?

A. Yes.

Q. Why does MERS appoint you as a vice president or assistant secretary as opposed to a manager or an authorized agent to sign in that capacity?

A. I don't know.

Q. Why does MERS give you any kind of a title?

A. I don't know.

Q. Take me through the procedure for drafting and - - the drafting and execution of this Assignment of Mortgage which is Exhibit E.

A. It is drafted by our forms, uploaded into process management, downloaded by LPS staff in Minnesota, shipped to Austin where we sign and notarize it, and hand it back to an LPS employee, who then ships it back to Minnesota, up uploads a copy and mails the original to the firm.

Q. Very similar to all the other document, preparation of all the other documents.

A. (Nods head.)

Q. Was that a yes? You were shaking your head.

A. Yes.

Q. As with the other documents, you personally don't review any of the information that's on here - -

A. No.

Q. - - other than to make sure that you are authorized to sign as the person you're signing for?

A. Yes. [*7]

Q. Okay. As with the other documents, you signed these and took them to be notarized just to a Notary that's outside your office?

A. Yes.

Q. And they will get notarized as soon as they can. It may or may

not be the same day that you executed it?

A. That's true.

Further, with respect to MERS, Ms. Johnson-Seck testified in answering questions, at p. 138, line 2 - p. 139, line 17:

Q. Do you have an understanding that MERS is a membership

organization?

A. Yes, yes.

Q. And the members are - -

A. Yes.

Q. - - banking entities such as OneWest?

A. Yes.

Q. In fact, OneWest is a member of MERS?

A. Yes.

Q. Is Deutsche Bank National Trust Company a member of MERS?

A. I don't know.

Q. Most of the major banking institutions in the Untied States, at

least, are members of MERS, correct?

A. That sounds right.

Q. It's owned and operated by banking institutions?

A. I'm not a big - - I don't, I don't know that much about the ins

and outs of MERS. I'm sorry. I understand what it's for, but I don't

understand the nitty-gritty.

Q. What is it for?

A. To track the transfer of doc - - of interest from one entity to another.

I know that it was initially created so that a servicer did not have to

record the assignments, or if they didn't, there was still a system to

keep track of the transfer of property.

Q. Does it also have a function to hold the mortgage separate and

apart from the note so that note can be transferred from entity to entity

to entity, bank to bank to bank - -

A. That sounds right.

Q. - - without ever having to rerecord the mortgage?

A. That sounds right.

Q. So it's a savings device. It makes it more efficient to transfer notes?

A. Yes.

Q. And cheaper?

A. Yes.

Moreover, Ms. Johnson-Seck testified that one of her job duties was to sign documents, which at that time took her about ten minutes per day [p. 11]. Further, she admitted, at p. 13, line [*8]11 - p. 14, line 15, that she signs about 750 documents per week and doesn't read each document.

Q. Okay. *How many documents would you say that you sign on a*

*week on average, in a week on average?*

A. I could have given you that number if you had that question in there because I would brought the report. However, I'm going to guess, today I saw an e-mail that 1,073 docs are in the office for signing. So if we just - - and there's about that a day. So let's say 6,000 a week and I do probably - - let's see. There's eight of us signing documents, so what's the math?

Q. *Six thousand divided by eight, that gives me 750*.

A. *That sounds, that sounds about right.*

Q. Okay. That would be a reasonable estimate of how many you sign, you personally sign per week?

A. Yes.

Q. And that would include Lost Note Affidavits, Affidavits of Debt?

A. Yes.

Q. What other kinds of documents would be included in that?

A. Assignments, declarations. I can sign anything related to a bankruptcy or a foreclosure.

Q. *How long do you spend executing each document?*

A. I *have changed my signature considerably. It's just an E now. So not more than 30 seconds.*

Q. *Is it true that you don't read each document before you sign it?*

A. *That's true*. [*Emphasis added*]

Ms. Johnson-Seck, in the instant action, signed her full name on the March 16, 2009 MERS, as nominee for CAMBRIDGE, assignment to INDYMAC. She switched to the letter E in signing the May 14, 2009 INDYMAC to ONEWEST assignment and the June 30, 2009 affidavit of merit on behalf of ONEWEST.

Additionally. she testified about how LPS prepares the documents in Minnesota and ships them to her Austin office, with LPS personnel present in her Austin office [pp. 16 - 17]. Ms. Johnson-Seck described the document signing process, at p. 17, line 6 - p. 18, line 18:

Q. Take me through the procedure for getting your actual signature

on the documents once they've gone through this quality control process?

A. The documents are delivered to me for signature and I do a quick

purview to make sure that I'm not signing for an entity that I cannot sign

for. And I sign the document and I hand it to the Notary, who notarizes

it, who then hands it back to LPS who uploads the document so that the

firms know it's available and they send an original.

Q. "They" being LPS?

A. Yes.

Q. Are all the documents physically, that you were supposed to sign,

are they physically on your desk?

A. Yes. [*9]

Q. You don't go somewhere else to sign documents?

A. No.

Q. *When you sign them, there's no one else in your office?*

A. *Sometimes.*

Q. *Well, the Notaries are not in your office, correct?*

A. *They don't sit in my office, no.*

Q. *And the witnesses who, if you need witnesses on the document, are*

*not sitting in your office?*

A. *That's right.*

Q. So you take your ten minutes and you sign them and then you give

them to the supervisor of the Notaries, correct?

A. I supervise the Notaries, so I just give them to a Notary.

Q. You give all, you give the whole group that you just signed to one

Notary?

A. Yes. [*Emphasis added*]

Ms. Johnson-Seck testified, at p. 20, line 1 - p. 21, line 4 about notaries not witnessing her

signature:

Q. I'm mostly interested in how long it takes for the Notary to notarize

your signature.

A. I can't say categorically because the Notary, that's not the only

job they do, so.

Q. In any event, it doesn't have to be the same day?

A. No.

Q. When they notarize it and they put a date that they're notarizing

it, is it the date that you signed it or is it the date that they're notarizing

it?

A. I don't know.

Q. *When you execute a sworn document, do you make any kind*

*of a verbal acknowledgment or oath to anyone?*

A. I *don't know if I know what you're talking about. What's a*

*sworn document?*

Q. Well, an affidavit.

A. Oh. No.

Q. *In any event, there's no Notary in the room for you to - -*

A. *Right.*

Q. *- - take an oath with you, correct?*

A. *No there is not.*

Q. *In fact, the Notaries can't see you sign the documents; is that correct?*

A. *Not unless that made it their business to do so?*

Q. To peek into your office?

A. Yes. [*Emphasis added*]

As noted above, I found Ms. Johnson-Seck engaged in "robo-signing" in *Deutsche Bank v Maraj* and *Indymac Bank, FSB, v Bethley*. In both foreclosure cases I denied plaintiffs' motions [*10]for orders of reference without prejudice with leave to renew if, among other things, Ms. Johnson-Seck could explain in affidavits: her employment history for the past three years; why she was a Vice President of both assignor MERS and assignee Deutsche Bank National Trust Company in *Maraj;* and, Vice President of INDYMAC in *Bethley*. Mr. Ice questioned Ms. Johnson-Seck about my *Maraj* decision and showed her the *Maraj* decision as exhibit M in the *Machado* deposition. The following colloquy at the *Maraj* deposition took place at p. 153, line 15 - p. 156, line 9.

Q. Exhibit M is a document that you saw before in your last deposition,

correct?

A. Yes.

Q. It's an opinion from Judge Schack up in New York - -

A. Yes.

Q. - - correct? You're familiar with that?

A. Yes.

Q. In it, he says that you signed an Assignment of Mortgage as the vice

president of MERS, correct - -

A. Yes.

Q. - - just as you did in this case? Judge Schack also says that you

executed an affidavit as an officer of Deutsche Bank National Trust

Company, correct?

A. Yes.

Q. And is that true, you executed an affidavit for Deutsche Bank in

that case?

A. That is not true.

Q. You never executed a document as an officer of Deutsche Bank

National Trust Company in that case, Judge Schack's case?

A. Let me just read it so I can - - I have to refresh my memory completely.

Q. Okay.

A. I don't remember. Most likely.

Q. That you did?

A. It sounds reasonable that I may have. I don't remember, and since

it's not attached, I can't say.

Q. And as a result, Judge Schack wanted to know if you were engaged

in self-dealing by wearing two corporate hats?

A. Yes.

Q. And the court was concerned that there may be fraud on the part

of the bank?

A. I guess.

Q. I mean he said that, right?

A. Oh, okay. I didn't read the whole thing. Okay.

Q. Okay. The court ordered Deutsche Bank to produce an affidavit

from you describing your employment history for the past three years,

correct? [*11]

A. That's what this says.

Q. Did you do that?

A. No, because we were never - - no affidavit ever existed and no request

ever came to produce such a document. The last time we spoke, I told

you that in-house counsel was reviewing the whole issue and that's kind

of where - - and we still haven't received any communication to produce

an affidavit.

Q. From your counsel?

A. From anywhere.

Q. Well, you're reading Judge Schack's opinion. He seems to want

one. Isn't that pretty clear on its face.

A. We didn't get - - we never even got a copy of this.

Q. Okay. But now you have it - -

A. And - -

Q. And you had it when we met at our deposition back in February 5th.

A. And our in-house counsel's response to this is we were never - -

this was never requested of me and it was his recommendation not

to comply.

Q. What has become of that case?

A. I don't know.

Q. Was it settled?

A. I don't know.

After a break in the *Machado* deposition proceedings, Mr. Ice questioned Ms.
Johnson-Seck about various documents that were subpoenaed for the July 9, 2010 deposition,
including her employment affidavits that I required in both *Maraj* and *Bethley*. Ms.
Johnson-Seck answered the following questions at p. 159, line 19 - p. 161, line 9:

Q. So let's start with the duces tecum part of you notice, which is the

list of documents. No. 1 was: The affidavit of the last three years of

deponent's employment provided to Judge Schack in response to the

order dated January 31st, 2008 in the case of Deutsche Bank National

Trust Company vs. Maraj, Case No. 25981-07, Supreme Court of

New York. We talked about that earlier. There is no such affidavit,

correct?

A. Correct.

Q. By the way, why was IndyMac permitted to bring the case in Deutsche

Bank's name in that case?

A. I don't - - I don't know. Now, errors have been made.

Q. No. 2: The affidavit of the deponent provided to Judge Schack

in response to the order dated February 6th, 2009 in the case of IndyMac

Bank, FSB vs, Bethley, New York Slip Opinion 50186, New York

Supreme Court 2/5/09, "explaining," and this is in quotes, "her

employment history for the past three years; and, why a conflict of

interest does not exist in how she acted as vice president of assignee [*12]

IndyMac Bank, FSB in the instant action, and vice president of both

Mortgage Electronic Registrations Systems, Inc. and Deutsche Bank

in Deutsche Bank vs. Maraj," and it gives the citation and that's the

case referred to in item 1 of our request. Do you have that affidavit

with you here today?

A. No.

Q. Were you aware of that second opinion where Judge Schack asks

for a second affidavit?

A. Nope. Where is Judge Schack sending these?

Q. Presumably to your counsel.

A. ***I wonder if he has the right address. Maybe that's what we should***

***do, send Judge Schack the most recent, and I will gladly show up in***

***his court and provide him everything he wants.***

Q. Okay. Well, I sent you this back in March. Have your or your

counsel or in-house counsel at IndyMac pursued that?

A. No. [***Emphasis added***]

Counsel for plaintiff ONEWEST has leave to produce Ms. Johnson-Seck in my courtroom to "gladly show up . . . and provide [me] . . . everything he wants."

## Discussion

Real Property Actions and Proceedings Law (RPAPL) § 1321 allows the Court in a foreclosure action, upon the default of the defendant or defendant's admission of mortgage payment arrears, to appoint a referee "to compute the amount due to the plaintiff." In the instant action, plaintiff ONEWEST's application for an order of reference is a preliminary step to obtaining a default judgment of foreclosure and sale against defendant DRAYTON. (*Home Sav. of Am., F.A. v Gkanios*, 230 AD2d 770 [2d Dept 1996]). Plaintiff's request to withdraw its application for an order of reference is granted. However, to allow this action to continue without seeking the ultimate purpose of a foreclosure action, to obtain a judgment of foreclosure and sale, makes a mockery of and wastes the resources of the judicial system. Continuing the instant action without moving for an order of reference is the judicial equivalent of a "timeout." Granting a "timeout" to plaintiff ONEWEST to allow it to re-submit "a new application containing new information . . . shortly" is a waste of judicial resources. Therefore, the instant action is dismissed without prejudice, with leave granted to plaintiff ONEWEST to renew its

motion for an order of reference within sixty (60) days of this decision and order, if plaintiff ONEWEST and plaintiff ONEWEST's counsel can satisfactorily address the various issues previously enumerated.

Further, the dismissal of the instant foreclosure action requires the

cancellation of the notice of pendency. CPLR § 6501 provides that the filing of a notice of pendency against a property is to give constructive notice to any purchaser of real property or encumbrancer against real property of an action that "would affect the title to, or the possession, use or enjoyment of real property, except in a summary proceeding brought to recover the possession of real property." The Court of Appeals, in *5308 Realty Corp. v O & Y Equity Corp.* (64 NY2d 313, 319 [1984]), commented that "[t]he purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of [*13]whether a purchaser had any notice of the pending suit," and, at 320, that "the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review."

CPLR § 6514 (a) provides for the mandatory cancellation of a notice of pendency by:

*The Court,*upon motion of any person aggrieved and upon such

notice as it may require, ***shall direct any county clerk to cancel***

***a notice of pendency,*** if service of a summons has not been completed

within the time limited by section 6512; or ***if the action has been***

settled, discontinued or ***abated***; or if the time to appeal from a final

judgment against the plaintiff has expired; or if enforcement of a

final judgment against the plaintiff has not been stayed pursuant

to section 551. [*emphasis added*]

The plain meaning of the word "abated," as used in CPLR § 6514 (a) is the ending of an action. "Abatement" is defined as "the act of eliminating or nullifying." (Black's Law Dictionary 3 [7th ed 1999]). "An action which has been abated is dead, and any further enforcement of the

cause of action requires the bringing of a new action, provided that a cause of action remains (2A Carmody-Wait 2d § 11.1)." (*Nastasi v Nastasi*, 26 AD3d 32, 40 [2d Dept 2005]). Further, *Nastasi* at 36, held that the "[c]ancellation of a notice of pendency can be granted in the exercise of the inherent power of the court where its filing fails to comply with CPLR § 6501 (*see 5303 Realty Corp. v O & Y Equity Corp., supra* at 320-321; *Rose v Montt Assets*, 250 AD2d 451, 451-452 [1d Dept 1998]; Siegel, NY Prac § 336 [4th ed])." Thus, the dismissal of the instant complaint must result in the mandatory cancellation of plaintiff ONEWEST's notice of pendency against the subject property "in the exercise of the inherent power of the court."

Moreover, "[t]o have a proper assignment of a mortgage by an authorized agent, a

power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage." (*HSBC Bank, USA v Yeasmin*, 27 Misc 3d 1227 [A], *3 [Sup Ct, Kings County 2010]). "No special form or language is necessary to effect an assignment as long as the language shows the *intention of the owner of a right to transfer it* [*Emphasis added*]." (*Tawil v Finkelstein Bruckman Wohl Most & Rothman*, 223 AD2d 52, 55 [1d Dept 1996]). (*See Suraleb, Inc. v International Trade Club, Inc.*, 13 AD3d 612 [2d Dept 2004]).

MERS, as described above, recorded the subject mortgage as "nominee" for CAMBRIDGE. The word "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others." (Black's Law Dictionary 1076 [8th ed 2004]). "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." (*Landmark National Bank v Kesler*, 289 Kan 528, 538 [2009]). The Supreme Court of Kansas, in *Landmark National Bank*, 289 Kan at 539, observed that:

> The legal status of a nominee, then, depends on the context of
>
> the relationship of the nominee to its principal. Various courts have
>
> interpreted the relationship of MERS and the lender as an agency
>
> relationship. See *In re Sheridan*, 2009 WL631355, at *4 (Bankr. D.
>
> Idaho, March 12, 2009) (MERS "acts not on its own account. Its [*14]
>
> capacity is representative."); *Mortgage Elec. Registrations Systems,*

*Inc. v Southwest*, 2009 Ark. 152 ___, ___SW3d___, 2009 WL 723182

(March 19, 2009) ("MERS, by the terms of the deed of trust, and its

own stated purposes, was the lender's agent"); *La Salle Nat. Bank v*

*Lamy*, 12 Misc 3d 1191 [A], at *2 [Sup Ct, Suffolk County 2006]) . . .

("A nominee of the owner of a note and mortgage may not effectively

assign the note and mortgage to another for want of an ownership interest

in said note and mortgage by the nominee.")

The New York Court of Appeals in *MERSCORP, Inc. v Romaine* (8 NY3d 90 [2006]),
explained how MERS acts as the agent of mortgagees, holding at 96:

In 1993, the MERS system was created by several large

participants in the real estate mortgage industry to track ownership

interests in residential mortgages. Mortgage lenders and other entities,

known as MERS members, subscribe to the MERS system and pay

annual fees for the electronic processing and tracking of ownership

and transfers of mortgages. ***Members contractually agree to appoint***

***MERS to act as their common agent on all mortgages they register***

***in the MERS system.*** [*Emphasis added*]

Thus, it is clear that MERS's relationship with its member lenders is that of agent with principal.
This is a fiduciary relationship, resulting from the manifestation of consent by one person to
another, allowing the other to act on his behalf, subject to his control and consent. The principal
is the one for whom action is to be taken, and the agent is the one who acts. It has been held that
the agent, who has a fiduciary relationship with the principal, "is a party who acts on behalf of
the principal with the latter's express, implied, or apparent authority." (*Maurillo v Park Slope
U-Haul*, 194 AD2d 142, 146 [2d Dept 1992]). "Agents are bound at all times to exercise the

utmost good faith toward their principals. They must act in accordance with the highest and truest principles of morality." (*Elco Shoe Mfrs. v Sisk*, 260 NY 100, 103 [1932]). (*See Sokoloff v Harriman Estates Development Corp.*, 96 NY 409 [2001]); *Wechsler v Bowman*, 285 NY 284 [1941]; *Lamdin v Broadway Surface Advertising Corp.*, 272 NY 133 [1936]). An agent "is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." (*Lamdin*, at 136).

Therefore, in the instant action, MERS, as nominee for CAMBRIDGE, is an agent of CAMBRIDGE for limited purposes. It can only have those powers given to it and authorized by its principal, CAMBRIDGE. Plaintiff ONEWEST has not submitted any documents demonstrating how CAMBRIDGE authorized MERS, as nominee for CAMBRIDGE, to assign the subject DRAYTON mortgage and note to INDYMAC, which subsequently assigned the subject mortgage and note to plaintiff ONEWEST.

Recently, in *Bank of New York v Alderazi*, 28 Misc 3d at 379-380, my learned colleague, Kings County Supreme Court Justice Wayne Saitta explained that:

A party who claims to be the agent of another bears the burden

of proving the agency relationship by a preponderance of the evidence

(*Lippincott v East River Mill & Lumber Co.*, 79 Misc 559 [1913]) [*15]

and "[t]he declarations of an alleged agent may not be shown for

the purpose of proving the fact of agency." (*Lexow & Jenkins, P.C. v*

*Hertz Commercial Leasing Corp.*, 122 AD2d 25 [2d Dept 1986]; *see*

*also Siegel v Kentucky Fried Chicken of Long Is.* 108 AD2d 218 [2d

Dept 1985]; *Moore v Leaseway Transp/ Corp.*, 65 AD2d 697 [1st Dept

1978].) "[T]he acts of a person assuming to be the representative of

another are not competent to prove the agency in the absence of evidence

tending to show the principal's knowledge of such acts or assent to them."

(*Lexow & Jenkins, P.C. v Hertz Commercial Leasing Corp.*, 122 AD2d

at 26, quoting 2 NY Jur 2d, Agency and Independent Contractors § 26).

Plaintiff has submitted no evidence to demonstrate that the

original lender, the mortgagee America's Wholesale Lender, authorized

MERS to assign the secured debt to plaintiff.

Therefore, in the instant action, plaintiff ONEWEST failed to demonstrate how MERS, as nominee for CAMBRIDGE, had authority from CAMBRIDGE to assign the DRAYTON mortgage to INDYMAC. The Court grants plaintiff ONEWEST leave to renew its motion for an order of reference, if plaintiff ONEWEST can demonstrate how MERS had authority from CAMBRIDGE to assign the DRAYTON mortgage and note to INDYMAC.

Then, plaintiff ONEWEST must address the tangled employment situation of "robo-signer" Erica A. Johnson-Seck. She admitted in her July 9, 2010 deposition in the *Machado* case that she never provided me with affidavits of her employment for the prior three years and an explanation of why she wore so-many corporate hats in *Maraj* and *Bethley*. Further, in *Deutsche Bank v Harris*, Ms. Johnson-Seck executed an affidavit of merit as Vice President of Deutsche Bank. If plaintiff renews its motion for an order of reference, the Court must get to the bottom of Ms. Johnson-Seck's employment status and her "robo-signing." The Court reminds plaintiff ONEWEST's counsel that Ms. Johnson-Seck, at p. 161 of the *Machado* deposition, volunteered, at lines 4 - 5 to "gladly show up in his court and provide him everything he wants."

Lastly, if plaintiff ONEWEST'S counsel moves to renew its application for an order of reference, plaintiff's counsel must comply with the new filing requirement to submit, under penalties of perjury, an affirmation that he has taken reasonable steps, including inquiring of plaintiff ONEWEST, the lender, and reviewing all papers, to verify the accuracy of the submitted documents in support of the instant foreclosure action. According to yesterday's Office of Court Administration press release, Chief Judge Lippman said:

We cannot allow the courts in New York State to stand by idly and

be party to what we now know is a deeply flawed process, especially

when that process involves basic human needs — such as a family home —

during this period of economic crisis. This new filing requirement will

play a vital role in ensuring that the documents judges rely on will be

thoroughly examined, accurate, and error-free before any judge is asked [*16]

to take the drastic step of foreclosure.

(*See* Gretchen Morgenson and Andrew Martin, *Big Legal Clash on Foreclosure is Taking Shape*, New York Times, Oct. 21, 2010; Andrew Keshner, *New Court Rules Says Attorneys Must Verify Foreclosure Papers*, NYLJ, Oct. 21, 2010).

## *Conclusion*

Accordingly, it is

ORDERED, that the request of plaintiff ONEWEST BANK, F.S.B., to withdraw its motion for an order of reference, for the premises located at 962 Hemlock Street, Brooklyn, New York (Block 4529, Lot 116, County of Kings), is granted; and it is further

ORDERED, that the instant action, Index Number 15183/09, is dismissed without prejudice; and it is further

ORDERED, that the notice of pendency in the instant action, filed with the Kings County Clerk on June 18, 2009, by plaintiff ONEWEST BANK, F.S.B., to foreclose a mortgage for real property located at 962 Hemlock Street, Brooklyn, New York (Block 4529, Lot 116, County of Kings), is cancelled; and it is further

ORDERED, that leave is granted to plaintiff, ONEWEST BANK, F.S.B., to

renew, within sixty (60) days of this decision and order, its motion for an order of reference for the premises located at 962 Hemlock Street, Brooklyn, New York (Block 4529, Lot 116, County of Kings), provided that plaintiff, ONEWEST BANK, F.S.B., submits to the Court:

(1) proof of the grant of authority from the original mortgagee,

CAMBRIDGE CAPITAL, LLC, to its nominee, MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC., to assign

the subject mortgage and note to INDYMAC FEDERAL BANK,

FSB; and

(2) an affidavit by Erica A. Johnson-Seck, Vice President of plaintiff

ONEWEST BANK, F.S.B., explaining: her employment history for

the past three years; why a conflict of interest does not exist in how

she acted as a Vice President of assignor MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., a Vice President of assignee/

assignor INDYMAC FEDERAL BANK, FSB, and a Vice President

of assignee/plaintiff ONEWEST BANK, F.S.B. in this action; why

she was a Vice President of both assignor MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC. and assignee DEUTSCHE BANK

in *Deutsche Bank v Maraj*, 18 Misc 3d 1123 (A) (Sup Ct, Kings County

2008); why she was a Vice President of both assignor MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. and assignee

INDYMAC BANK, FSB in *Indymac Bank, FSB, v Bethley*, 22 Misc 3d

1119 (A) (Sup Ct, Kings County 2009); and, why she executed an

affidavit of merit as a Vice President of DEUTSCHE BANK in

*Deutsche Bank v Harris* (Sup Ct, Kings County, Feb. 5, 2008, Index

No. 35549/07); and

(3) counsel for plaintiff ONEWEST BANK, F.S.B. must comply

with the new Court filing requirement, announced by Chief Judge [*17]

Jonathan Lippman on October 20, 2010, by submitting an affirmation,

using the new standard Court form, pursuant to CPLR Rule 2106 and

under the penalties of perjury, that counsel for plaintiff ONEWEST

BANK, F.S.B. has personally reviewed plaintiff ONEWEST BANK,

F.S.B.'s documents and records in the instant action and counsel for

plaintiff ONEWEST BANK, F.S.B. confirms the factual accuracy of

plaintiff ONEWEST BANK, F.S.B.'s court filings and the accuracy

of the notarizations in plaintiff ONEWEST BANK, F.S.B.'s documents.

This constitutes the Decision and Order of the Court.

ENTER

_____HON. ARTHUR M. SCHACK

J. S. C.