The Honorable Judge Robert S. Lasnik

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JAMES MCDONALD,

        Plaintiff,

    v.

ONEWEST BANK, FSB, NORTHWEST
TRUSTEE SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., INDYMAC BANK FSB, DOES 1-50,

        Defendants.

No. C10-1952 RSL

**DEFENDANTS' ONEWEST, MERS,
AND NWTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**NOTING DATE: OCTOBER 19, 2012**

## I.    INTRODUCTION

    OneWest Bank, FSB ("OneWest"), Mortgage Electronic Registration Systems Inc. ("MERS"), and Northwest Trustee Services, Inc. ("NWTS") (collectively "Defendants") submits the following in opposition to Plaintiff's motion for summary judgment ("Plaintiff's Motion").

## II.    FACTS

    In January 2007, James McDonald ("Plaintiff") received a loan in the amount of $389,481.60. The loan was evidenced by a promissory note ("Note") and was signed by Plaintiff. *See* Dkt. 172 and 173, Exhibit 1, Note.[1]

    To secure repayment of the Note, Plaintiff granted to MERS as nominee for the original lender, Indymac Bank, FSB and its successors and assigns, a deed of trust (the "Deed of Trust"). The Deed of Trust encumbers the real property commonly known as 14840 119th PL NE,

---

[1] Defendants have submitted multiple declarations from OneWest testifying to the facts set forth herein. *See* Dkt. 16, 49, 123, 156, and 173. Defendants will refer to the most current declaration herein.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 1 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Kirkland, Washington 98034 (the "Property"). The Deed of Trust recorded January 10, 2007, under King County Auditor's File No. 20070110002077. Dkt. 173, ¶ 3, Exhibit 2, Deed of Trust.

Thereafter, Indymac Bank, FSB sold Plaintiff's Note to Federal Home Loan Mortgage Company ("Freddie Mac"). Dkt. 173, ¶ 4. SAC, ¶ 2.12.  Indymac Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac. Dkt. 173, ¶ 4. Since, Freddie Mac has remained the investor and owner of the Note. Dkt. 173, ¶ 4.

IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. Dkt. 173, ¶ 5, Exhibit 3, OTS Order No. 2008-24 (July 11, 2008).[2] IndyMac Federal Bank ("IMFB") was created and the FDIC was appointed Conservator. Dkt. 173, ¶ 6, Exhibit 4.[3]

On March 19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the assets including the rights to service the loan presently at issue to OneWest Bank, FSB. Dkt. 173, ¶ 7, Exhibits 5[4], 6[5] and 7.[6]

OneWest Bank is the current servicer; IndyMac Mortgage Services is a division of OneWest Bank. Dkt. 173, ¶ 8. OneWest services the loan on behalf of Freddie Mac in accordance with Freddie Mac's Single-Family Seller/Servicer Guide (the "Freddie Mac Servicer Guide").[7,8] *Id.*  As part of the Freddie Mac Servicer Guide, OneWest has possession of the blank

---

[2] The Office of Thrift Supervision Order No. 2008-24, dated July 11, 2008, can be found, in entirety, online at http://www.ots.treas.gov/_files/680018.pdf.
[3] The Purchase and Assumption Agreement, in entirety, can be found online at http://www.fdic.gov/bank/individual/failed/IndyMac_P_and_A.pdf.
[4] The Master Purchase Agreement, in entirety, is available online at http://www.fdic.gov/about/freedom/IndyMacMasterPurchaseAgrmt.pdf.
[5] The Loan Sale Agreement, in entirety, is available online at http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf.
[6] The Servicing Business Asset Purchase Agreement, in entirety, is available online at http://www.fdic.gov/bank/individual/failed/ServicingBusinessAssetPurchaseAgreement.pdf.
[7] The Freddie Mac Servicer Guide is available, in entirety, at http://www.allregs.com/tpl/Main.aspx.
[8] Congress created the Federal Home Loan Mortgage Corporation ("Freddie Mac") in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708 (N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir. 1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 2 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  endorsed Note through a document custodian, Deutsche Bank National Trust Co. ("Custodian").

2  *See* Dkt. 173, ¶ 9, Exhibit 8, Custodial Agreement. OneWest is entitled to collect payments,

3  initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification

4  in accordance with investor guidelines.[9] Dkt. 173, ¶ 10.

5        OneWest has been in possession of the Note and therefore the holder since on or about

6  March 19, 2009, and the Note has been held by the Custodian since on or about May 12, 2009.

7  Dkt. 173, ¶ 11, Exhibit 8.[10]

8        On or about October 1, 2009, Plaintiff defaulted by failing to make the payment due for

9  October 1, 2009, and every payment thereafter due. Dkt. 173, ¶ 12.

10        On or about November 2, 2009 and November 16, 2009, IndyMac Mortgage Services, a

11  division of OneWest Bank, FSB mailed to Plaintiff via first class mail letters (the "November

12  2009 Letters") which satisfied the "written contact" requirement set forth in RCW

13  61.24.031(b).[11] Dkt. 173, ¶ 13, Exhibit 9, November 2009 Letters.

14        On or about January 12, 2010, as an agent of OneWest Bank, FSB, NWTS mailed and

15  posted a notice of default (the "Notice of Default") in response to Plaintiff's default. *See* Dkt.

16  174[12], ¶ 4, Exhibit 10, Notice of Default.

17        On or about January 27, 2010, MERS executed an assignment of deed of trust (the

18  "Assignment") to OneWest Bank, FSB. The Assignment was recorded February 4, 2010, under

19  King County Auditor's File No. 20100204000502. *See* Dkt. 173, Exhibit 11, Assignment; Dkt.

20

21

---

22  for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes
   collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.

23  [9] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Servicer
   Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at

24  http://www.allregs.com/tpl/Main.aspx.
   [10] On or about October 1, 2010, OneWest requested that the Custodian deliver the Note to OneWest. The Note was

25  released to OneWest on or about October 5, 2010. The Note is currently stored at the office of counsel for
   Defendants'. Dkt. 173, ¶¶ 16-17.

26  [11] RCW 61.24.031 has since been amended.
   [12] Defendants have submitted multiple declarations of Vonnie McElligott throughout this proceeding. *See* Dkt. 13,
   49, 76, 122, and 174. Defendants will cite to the most recent herein.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 3 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

173, ¶ 6.[13,14]

On or about February 4, 2010, OneWest appointed NWTS successor trustee. *See* Dkt. 173, ¶ 15, Exhibit 12, Appointment.

On or about February 16, 2010, NWTS recorded a notice of trustee's sale (the "Notice of Sale") under King County Auditor's File No. 20100216001242, setting the trustee's sale for May 21, 2010, 2010. *See* Dkt. 174, ¶ 5, Exhibit 13, Notice of Sale.

On or about July 22, 2010, Plaintiff filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Western District of Washington under Case No. 10-18496-SJS.[15]

On or about August 4, 2010, Plaintiff filed his bankruptcy schedules. *See* Case No. 10-18496-SJS, Dkt. 15.

Under Schedule F, Plaintiff listed his account, identified as account **6681**009111244 (emphasis added) with OneWest Bank (Indymac) as an "unsecured nonpriority claim." *Id.* Schedule F identifies OneWest Bank as Plaintiff's creditor. *Id.*

OneWest has been unable to locate any information to verify that it reported the account as being included in or discharged by bankruptcy at any time prior to when Plaintiff actually filed bankruptcy in June 2010. *See* Dkt. 156, ¶ 2, Exhibit A.

Plaintiff provided notice to OneWest that he disputed the debt on or about April 27, 2010. SAC, ¶ 3.5.2. Plaintiff provided notice to the CRAs that he disputed the debt on or about June 29, 2010. *Id.*

**The TransUnion Dispute.**   On or about July 16, 2010, OneWest was notified by

---

[13] Under Washington law, the security (Deed of Trust) follows the debt (Note) with or without actual assignment. *Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) ("transfer of the note carries ... the security"); Leisure Time Sports v. Wolfe, 194 B.R. 859, 861 (9th Cir. BAP 1996 ("security ... follows the debt").

[14] *In re United Home Loans*, 71 B.R. 885, 891 (W.D. Wash. 1987), aff'd 876 F.2d 897 (9th Cir. 861 (9th Cir. BAP 1989) ("assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded"; "Recording of the assignments is for the benefit of third parties").

[15] Pursuant to FRE 201, the court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Thus, the court may take judicial notice of the fact of Plaintiff's bankruptcy filing and the information Plaintiff provided in his petition and schedules.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 4 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

TransUnion that information reported to TransUnion by OneWest had been disputed (the "TransUnion Dispute").[16] Dkt. 156, ¶ 4. The TransUnion Dispute indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not his/hers." *Id.* at ¶ 5. The dispute instructed OneWest to "provide or confirm complete ID." *Id.* at ¶ 6.

Following receipt of the TransUnion Dispute, OneWest performed an investigation to verify that OneWest's records matched the following information provided by TransUnion: (1) debtor's name, (2) current address, (3) previous address, (4) social security number, (5) date of birth, (6) telephone number, (7) second previous address, (8) the account status, (9) date account opened, (10) account balance, (11) amount past due, (12) origination amount, (13) amount of scheduled payment, (14) term duration, (15) the account type, (16) foreclosure had been initiated, and (17) the date upon which the account was last reported. *Id.* at ¶ 7.

OneWest's investigation found that the foregoing information as previously reported to TransUnion was accurate and required no modification. *Id.* at ¶ 8.

After the completion of the investigation, OneWest submitted its report. *Id.* at ¶ 9. OneWest submitted its report to TransUnion, on or about July 30, 2010, providing that "account information was accurate as of the date reported." Dkt. 156, ¶¶ 10-11, Ex. A.

**The Equifax Dispute.** On or about July 13, 2010, OneWest was notified by Equifax that information reported to Equifax by OneWest had been disputed (the "Equifax Dispute"). *Id.* at ¶ 12. The Equifax Dispute indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not his/hers." *Id.* at ¶ 13. The dispute instructed OneWest to "provide or confirm complete ID." *Id.* at ¶ 14.

Following receipt of the Equifax Dispute, OneWest performed an investigation to verify

---

[16] Disputes received from the Credit Reporting Agencies ("CRAs") are received in electronic form through a reporting system portal. The dispute information is provided to OneWest with the white data entry fields labeled "Request Data" completed. OneWest verifies the information provided, and updates the information, if needed, by completing the corresponding gray data fields labeled "Response Data." Upon completion of the report, OneWest submits the report electronically through the reporting system portal. In order to keep a copy of the report for OneWest's records, OneWest prints a copy of the completed form before submitting the finalized report, which causes a "DRAFT" watermark as shown in Exhibits A and B. *See* Dkt. 156, ¶ 3.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 5 OF 46
CASE NO. C10-1952 RSL

ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   that OneWest's records matched the following information provided by Equifax: (1) debtor's

2   name, (2) current address, (3) previous address, (4) social security number, (5) date of birth, (6)

3   telephone number, (7) second previous address, (8) the account status, (9) date account opened,

4   (10) account balance, (11) amount past due, (12) origination amount, (13) date of account

5   information, (14) date of last payment, (15) amount of scheduled payment, (16) term duration,

6   and (17) the account type. Dkt. 156, ¶ 15.

7       OneWest's investigation concluded it was necessary to modify the report in regard to the

8   "past due amount" and the "date of account information." *Id.* at ¶ 16.

9       After investigation, OneWest submitted its report. *See* Dkt. 156, ¶ 17. To that effect, on

10  or about August 6, 2010, OneWest submitted its report to Equifax. The report provided "modify

11  account information as indicated." *Id.* at ¶ 18. The report modified the "past due amount" from

12  $23,892.00 to $26,240, and updated the "date of account information" from 07-01-2010 to 08-

13  01-2010. *Id.* at ¶¶ 19-20, Ex. B.

14      **Experian Dispute.**   To date, OneWest has not received dispute information relating to

15  Plaintiff's loan from Experian. Dkt. 156, ¶ 21.

16      Based on a recent Equifax Report, Plaintiff's account with OneWest is reported as: "debt

17  included in **or** discharged through bankruptcy 7, 11, or 12." (emphasis added). Dkt. 156, ¶ 23.

18      Following dismissal of Plaintiff's Bankruptcy, NWTS recorded an Amended Notice of

19  Trustee's Sale. Dkt. 174, ¶ 6, Exhibit 14. The Amended Notice of Sale has expired by operation

20  of law. RCW 61.24.040.

21                    **III.   ARGUMENT**

22  **A. Discussion of *Bain v. Metropolitan Mortgage*.**

23      According to Plaintiff, the Washington's State Supreme Court recent decision in *Bain v.*

24  *Metro. Mortg. Group, Inc.* solidifies Plaintiff's claim for violation of the DTA as well as his

25  claims under the CPA, FDCPA, for Fraud and Civil Conspiracy. *See Bain v. Metro. Mortg.*

26  *Group, Inc.,* 175 Wn. 2d 83, 285 P.3d 34, 45, 2012 WL 3517326 (2012). This is not the case.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 6 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    In *Bain*, the Washington Supreme Court addressed the question of whether MERS may

2    act as a Deed of Trust beneficiary in a non-agency capacity, and if not, what the effect of that

3    conduct was. *Bain*, 285 P.3d at *37-38. The issue arose in conjunction to the *Selkowitz* case

4    (certified along with *Bain* by Judge Coughenour), because in that case, MERS (acting as

5    beneficiary) appointed the successor Trustee, which in turn initiated foreclosure by recording a

6    Notice of Trustee's sale. *Id.*[17]  The Court held that unless MERS was the Note holder, it could

7    not act as beneficiary in a non-agency capacity, but recognized that MERS could act as an agent

8    for the beneficiary Note holder. *Id.* at 45. ("MERS argues that lenders and their assigns are

9    entitled to name it as their agent...That is likely true and nothing in this opinion should be

10   construed to suggest an agent cannot represent the holder of a note. Washington law, and the

11   deed of trust act itself, approves of the use of agents.). Specifically, the Washington Supreme

12   Court held in *Bain* that if MERS never held the promissory note, it cannot be a beneficiary in its

13   own right under RCW 61.24.005(2). *Id.* at 37.

14   The Court also held, however, that MERS may act as an agent for a known principal (i.e.,

15   the note holder and thus, the beneficiary). *Id.* at *46. But the Court concluded because the

16   record before it contained no facts disclosing the note holder (i.e., beneficiary), MERS "ha[d] not

17   established that it is an agent for a lawful principal." *Id.*

18   Notably, in *Bain*, the defendants' right to foreclose turned exclusively on the rights

19   assigned or appointed by MERS; ***nothing*** in *Bain* addresses the scenario here—where the lender

20   seeking to foreclose is not relying on MERS, any assignment from MERS, or appointment from

21   MERS for the right to foreclose and instead relies on possession of the Note and an appointment

22

23

---

24   [17] The Supreme Court mistakenly suggested in *Bain* that MERS also appointed the successor Trustee, and frames the
     "primary issue" as whether "MERS is a lawful beneficiary with the power to appoint trustees ... if it does not hold

25   the promissory notes secured by the deeds of trust." 2012 WL 3517326, at *1-*2. But in *Bain*, MERS did not
     appoint the successor Trustee, IndyMac did, after receiving an assignment from MERS. *See Bain v. Metropolitan*

26   *Mortg. Group., Inc.*, 2011 WL 917385, *2 (W.D. Wash. 2011). Rather, the argument in *Bain*, was that if MERS is
     not a valid beneficiary, then its assignment to IndyMac Bank is void, and therefore IndyMac's appointment of the
     Trustee was void, and the Notice of Trustee's Sale was also void. *Id.*

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 7 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  by the note holder.[18] *Compare Florez v. OneWest Bank, FSB*, 2012 WL 1118179, *1 (W.D.

2  Wash. 2012) (Coughenour) (granting motion to dismiss with prejudice, and holding that "the

3  situation at issue here is unlike the situation in *Bain* ....")   In *Bain*, the alleged authority to

4  foreclose was based solely on MERS' assignment of the deed of trust, rather than on possession

5  of the Note. Here, OneWest had authority to foreclose, independent of MERS, since OneWest

6  held Plaintiffs' Note. And, unlike in *Bain*, MERS acted on behalf of a disclosed principal,

7  OneWest, and OneWest appointed NWTS as successor trustee[19], not MERS. In sum, neither

8  OneWest nor NWTS relied on any grant of authority from OneWest to initiate the foreclosure.

9       Plaintiff also claims the recent *Bain* decision operates to invalidate the subject ADOT.

10  Dkt. 176, *14. Yet, the *Bain* Court recognized MERS can act as the nominee or agent for the

11  beneficiary if it discloses the beneficiary, which would include the ability of MERS to assign the

12  Deed of Trust on behalf of the beneficiary, OneWest, as it did here. *Bain*, 2012 WL 3517326, at

13  *46.  Accordingly, the *Bain* decision has little impact on the present case and certainly does not

14  result in a blanket entitled to summary judgment on Plaintiff's behalf.

15  **B.  Plaintiff's Violation of the Deed of Trust Act claim fails as a matter of law because there**

16      **is no pre-sale cause of action for damages under the DTA where no trustee's sale has**

17      **occurred.**

18       Plaintiff alleges Defendants conspired to violate the DTA by improperly initiating and

19  perpetuating a nonjudicial foreclosure where they had no right to do so. Dkt. 176, * 14. Despite

20  Plaintiff's allegations, however, there is no dispute that the nonjudicial foreclosure has never

21  been completed. *See* Dkt. 174. Over the course of this litigation, Plaintiff has classified his

22  "wrongful foreclosure" claim as both one for the "tort of wrongful foreclosure" and "violation of

23  the Deed of Trust Act." *See* Dkt. 131 and 176. However, under either classification, Washington

24

25  ―――――――――――――
[18] OneWest took possession of the blank endorsed note in March 2009 approximately a year prior to the assignment
26  executed January 27, 2010. Dkt. 173. OneWest, as note holder, appointed NWTS successor trustee in February
2010. Dkt. 173. Plaintiff mistakenly states *Bain* involved an identical set of facts to the present case.
[19] Plaintiff erroneously suggests that the involvement of MERS somehow invalidates the Appointment of Successor
Trustee despite the fact that OneWest, as note holder and beneficiary, appointed NWTS trustee. Dkt. 176, *17.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 8 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    law simply does not provide for a pre-sale damages claim for an alleged wrongful initiation of

2    nonjudicial foreclosure. *Olander v. ReconTrust Corp.*, 2012 WL 686980, * 1 (W.D. Wa.,

3    March 2, 2012) (citing *Vawter v. Quality Loan Serv. Corp. of Washington*, 707 F. Supp. 2d

4    1115, 1123 (W.D. Wash. 2010)); *see also Frase v. U.S. Bank*, 2012 WL 1658400 (W.D. Wa,

5    May 11, 2012; *see also Henderson v. GMAC Mortgage Corp.*, No. C05-5781RBL, 2008 WL

6    1733265, at *5 (W.D. Wash. Apr. 10, 2008). (holding that plaintiff's claim for wrongful

7    foreclosure under the DTA failed because, among other things, no foreclosure occurred). *Bain*

8    does not disturb this principle. *See Bain*, 2012 WL 3517326.

9          It remains that the sole method to contest a foreclosure sale is to file an action to enjoin or

10   restrain the sale in accordance with 61.24.130 of the DTA. *Plein v. Lackey*, 67 P.3d 1061, 1066

11   (Wash. 2003); *Brown v. Household Realty Corp.*, 146 Wn.App. 157, 189 P.3d 233, 235 (2008).

12         Here, Plaintiff's cause of action is properly construed as a claim for wrongful institution

13   of nonjudicial foreclosure proceedings since the trustee's sale has not occurred. *See Vawter* at

14   1123. When viewed in this light, as a matter of law, the damages claim, under the DTA fails as a

15   matter of law.

16   **C. Even if Plaintiff could seek pre-sale damages under a "wrongful initiation of**

17   **nonjudicial foreclosure" theory, the claim fails as a matter of law as to all Defendants.**

18                    **1.  Plaintiff's focus on ownership is misplaced.**

19         Plaintiff's focus on note ownership is misplaced as ownership is both irrelevant and

20   immaterial. OneWest (or any party for that matter) need not be the note owner to properly

21   enforce the Note, and allegations that OneWest wrongfully asserted itself as the note owner in

22   the Appointment and Notice of Default are irrelevant and immaterial and do not entitle Plaintiff

23   to summary judgment on any claim. Plaintiff asserts that OneWest improperly characterized

24   itself note owner in the notice of default.  Plaintiff also claims that Freddie Mac is not the note

25   owner because the loan has been securitized.

26         Plaintiff' challenge, at times, appears to confuse the terms holder and owner using them

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 9 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

synonymously.[20]

In any event, pursuant to both the definition of "Beneficiary" and the principles set forth under the Uniform Commercial Code (U.C.C.), the Note holder is entitled to enforce the promissory note. *See* RCW 61.24.005(2); *see also* RCW 62A.1-301, RCW 62A.1-201, and RCW 62A.3-205. "The issue of ownership, however, is largely immaterial...[b]ecause under Washington law the focus of the analysis is on who is the holder of the note, and thus the beneficiary under the [DTA], Plaintiff's concern should be whether he knows who to pay." *In re Reinke*, BR 09-19609, 2011 WL 5079561 at *11 (Bankr. W.D. Wash. Oct. 26, 2011) (citing *Veal v. American Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011)).

Any erroneous identification of ownership status is a hyper-technical error that offers no prejudice and cannot be the basis for a claim or further enjoining the sale. *Amresco Independence Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing *Koegel v. Prudential Mut. Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988).

## 2.  Nonetheless, Freddie Mac is the Note owner.

Freddie Mac is the note owner. Dkt. 173. OneWest services the loan on behalf of Freddie Mac in accordance with the Freddie Mac Servicer Guide.[21,22,23] As part of the Freddie Mac

---

[20] The terms are not synonymous. *In re Veal*, 450 B.R. 897, 912 ("one can be an owner of a note without being' a holder."). The term "owner" is not defined in Articles 3 or 9 of the UCC, or in the Deed of Trust Act. RCW 62A.3-103 (negotiable instruments); RCW 62A.9A-102 (secured transactions); RCW 61.24.005. Rather, under the DTA and the U.C.C., the note holder is the party entitled to enforce the Note and Deed of Trust through nonjudicial foreclosure. *See* RCW 61.24.005(2) and RCW 62A.3-301.

[21] This court may take judicial notice of the Freddie Mac Servicer Guide, which is publicly available at http://www.freddiemac.com/sell/guide/.

[22] Congress created the Federal Home Loan Mortgage Corporation ( "Freddie Mac") in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731, 103 Stat. 183, 429. Freddie Mac does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C. §§ 1451, 1454. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1395, 1997 WL 82708 (N.D. Ala. 1997) *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.*, 140 F.3d 1043, 1998 WL 148686 (11th Cir. 1998). Freddie Mac does not service the mortgages in which it has an interest. Rather, those mortgages are serviced for the Freddie Mac by loan "servicers" in the primary market with whom the FHLMC contracts. Servicing includes collecting the borrower's payments and foreclosing in the event of default. *Deerman* 955 F. Supp. at 1396.

[23] Plaintiff attempts to discredit the Freddie Mac Servicer Guide claiming it not an executed valid servicing agreement. Dkt. 176, * 22. However, Plaintiff has offered no support for his conclusion, and courts regularly consider the Freddie Mac Servicer Guide in conjunction with loans owned by Freddie Mac. *See In re Thorien*, 06-

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 10 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Servicer Guide, as with all loans owned by Freddie Mac, the servicer, OneWest in this matter,

2    has possession[24] of the blank endorsed Note, and is entitled to collect payments, initiate

3    foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in

4    accordance with investor guidelines.[25]   The Freddie Mac Servicer Guide provides that where

5    default occurs, foreclosure is to be carried out in the name of the servicer.[26] The Freddie Mac

6    Servicer Guide designates sweeping authority to the servicer to "act in the most time, efficient

7    and responsible manner to protect Freddie Mac's interests."[27] Thus, the Freddie Mac Servicer

8    Guide further supports the notion that OneWest is the Note holder entitled to enforce through

9    nonjudicial foreclosure.

10       Freddie Mac has not "disavowed ownership" as Plaintiffs suggests. Dkt. 176, *21.

11   According to Plaintiff's self serving declaration, he claims (via hearsay) that Michael Henderson,

12   Freddie Mac's General Counsel advised him that his note has been sold into Pool 1J1527 and

13   that further information from Freddie Mac showed the note had been sold on the secondary

14   market as a mortgage-backed security. Dkt. 177. Even if these statements could be verified, a

15   representation that a loan has been securitized is not a disavowment of ownership. As a matter of

16   law, whether or not the loan was securitized on the secondary market has no bearing on either

17   OneWest's status as note holder or Freddie Mac's status as note owner. Washington courts have

18   agreed. "[S]ince the securitization merely creates a separate contract, distinct from plaintiffs'

19   debt obligations under the Note and does not change the relationship of the parties in any way,

20   plaintiffs' claims arising out of securitization fail." *Lamb v. Mortg. Elec. Registration Sys., Inc.*,

21   2011 WL 5827813, *6 (W.D. Wash. 2011) (citing cases); *Bhatti v. Guild Mortg. Co.*, 2011 WL

---

00081-TLM, 2008 WL 5683488 (Bankr. D. Idaho Nov. 6, 2008); *see also In re Mitchell*, 476 B.R. 33, 48, 2012 WL 2974781 (Bankr. D. Mass. 2012). The Freddie Mac Service Guide, Volume 2 Chapter 51.1, is available at http://www.freddiemac.com/sell/guide/.

[24] Actual or through the custodian.

[25] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Freddie Mac Servicer Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at http://www.freddiemac.com/sell/guide/.

[26] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 67.17, available at http://www.freddiemac.com/sell/guide/..

[27] *See* Freddie Mac Servicer Guide, Volume 2, Chapter 51.1, available at http://www.freddiemac.com/sell/guide/.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 11 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

6300229, *5 (W.D. Wash. 2011) (citing cases); *In re Veal*, 450 B.R. at 912 ("[Plaintiffs] should not care who actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized—so long as they do know who they should pay.").

### 3. **OneWest is the Note holder.**

Plaintiff alleges that OneWest is not the beneficiary of the Note because it "did not pay any value for it" per RCW 62A.3-302. *See* Dkt. 176,*22; *see also* SAC, ¶ 3.1.1.

Pursuant to the federal holder-in-due-course doctrine, which has been expressly adopted in the Ninth Circuit, OneWest qualifies as a holder-in-due-course. The technical requirements for holder-in-due-course are greatly relaxed, if not dispensed with altogether, when the FDIC acquires a note in a purchase and assumption transaction from a failed bank. *Resolution Trust Corp. v Kennelly*, 57 F.3d 819, 821 (9th Cir. 1995); *see also Fed. Sav. and Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 559-60 (5th Cir. 1990) (extending the status of a federal holder-in-due-course to private assignees of the FDIC and FSLIC). Washington law is in accord. RCW 62A.3-203(b) ("Transfer of an instrument ... vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder-in-due-course").

Technically, the FDIC cannot qualify as a holder-in-due-course; it is not a "holder" as defined by NMSA 1978, Section 55-1-201(20) (Repl.Pamp.1993), and often, as receiver, it acquires notes by bulk transactions. *Id.* (citing Steven A. Weiss & Kenneth E. Kraus, *D'Oench Protection for Private Institutions Assisting the FDIC: A Necessary Component of the Thrift and Bank Bailout*, 108 Banking L.J. 256, 270 (1991)). The principle of allowing the FDIC and its successors in interest to enjoy the benefits of a holder-in-due-course is grounded in the need for a uniform rule of immunity for the FDIC in order to perform its statutory function. *Id.* (citing *Gunter v. Hutcheson*, 674 F.2d 862, 869 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), *and overruled on other grounds Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987)). The federal holder-in-due-course doctrine requires that, given the special circumstances that face the FDIC, state holder-in-due-course law does not apply. *Id.* A

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 12 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    purchase and assumption transaction helps preserve stability of and confidence in the banking

2    system and is the preferred method for resolving bank failures. *Id.* Subsequent holders who

3    acquire notes from the FDIC also enjoy holder-in-due-course status "whether or not they satisfy

4    the technical requirements of state law." *Campbell Leasing*, 901 F.2d at 1249; *see* Kraus, *supra*,

5    at 270 ("an assignee from the FDIC cannot technically be a holder in due course").

6          As the *Cadle* court stated:

7            To hold otherwise "would emasculate the policy behind ... promoting
     purchase and assumption transactions. If holder in due course status did not

8            run with the notes acquired by the FDIC in purchase and assumption
     transactions, the market for such notes would be smaller, which would have a

9            deleterious effect on the FDIC's ability to protect the assets of failed banks."
     *FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir.1989). We recognize that "a

10           subsequent purchaser ... stands in the shoes of the FDIC" for holder-in-due-
     course status. *Id.*

11   *Cadle Co., Inc. v. Wallach Concrete, Inc.*, 120 N.M. 56, 61, 897 P.2d 1104, 1109, 27 UCC Rep.

12   Serv. 2d 518, 1995 WL 367288 (1995).

13         Here, after the Plaintiff's Note was sold to Freddie Mac, Indymac Bank, FSB retained the

14   servicing rights and serviced the loan on behalf of Freddie Mac.  IndyMac Bank FSB was closed

15   by the Office of Thrift Supervision ("OTS") in July 2008, and the Federal Deposit Insurance

16   Corporation ("FDIC") was appointed as Receiver. IndyMac Federal Bank ("IMFB") was created

17   and the FDIC was appointed Conservator, and on March 19, 2009, the FDIC was appointed as

18   Receiver for IMFB and sold most of the assets including the rights to service the loan presently

19   at issue to OneWest Bank, FSB. Thus, under the federal holder-in-due-course doctrine, as a

20   subsequent holder following the FDIC, OneWest is a holder-in-due-course.

21         Moreover, as the Note is endorsed in blank, and OneWest is currently in possession of

22   the Note and has been at all times in actual possession or constructive possession through the

23   Custodian,[28],[29]

24

25   [28] At all times since May 12, 2009 (date of Custodial Agreement), OneWest could demand actual possession of the
     Note at any time from the Custodian and the Note would be delivered to OneWest.

26   [29] Plaintiff cannot now claim the original note, which he reviewed is a "high quality reproduction." Dkt. 176, *21.
     Plaintiff viewed the original note in possession of Defendants' counsel on or about July 13, 2011. Following that
     meeting, Plaintiff amended his complaint twice and neglected to allege the note he viewed was not the note he

Rᴏᴜᴛʜ
Cʀᴀʙᴛʀᴇᴇ
Oʟsᴇɴ, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

4. **The Custodial Agreement provides that Deutsche Bank acts as Custodian to house the original Note for the benefit of Freddie Mac and OneWest.**

The Custodial Agreement, dated May 12, 2009, details an agreement between Freddie Mac, the owner, OneWest, the servicer, and Deutsche Bank, the custodian. Dkt. 173, Ex. 8. Pursuant to the Custodial Agreement, Deutsche Bank holds the subject Note on behalf of Freddie Mac and OneWest. At any time either Freddie Mac or OneWest may request the custodian deliver the Note to them. On or about October 1, 2010, OneWest requested that the Custodian deliver the Note to OneWest.[30] The Note was released to OneWest on or about October 5, 2010. *Id.* The Note is currently stored at the office of counsel for Defendants'. *See* Dkt. 49. At any time, OneWest could request that Defendants' counsel return the Note to OneWest.

Courts have held that constructive possession is sufficient to satisfy the requirement of possession in the definition of "holder" such that a person is a "holder" of commercial paper when, like here, it is in the physical possession of his agent or when the party otherwise can obtain the instrument on demand. *In re McFadden*, 471 B.R. 136, 175, 77 UCC Rep. Serv. 2d 608, 2012 WL 1614806 (Bankr. D.S.C. 2012) (citing *Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.*, 893 F.Supp. 1304, 1314 (D.S.C.1994)).

5. **As Note holder, OneWest is the beneficiary and was entitled to initiate the nonjudicial foreclosure.**

Plaintiff asserts OneWest's theory that mere holder status is sufficient to foreclose is not supported by fact of law. Dkt. 176, * 20.

RCW 61.24.005(2) defines beneficiary to mean "the holder of the instrument or document evidencing the obligation secured by the deed of trust[.]" RCW 61.24.005(2). Under

---

signed in either of those complaints. Now, in conjunction with his motion for summary judgment, after the close of discovery Plaintiff asserts he believes the note he viewed is a fake.

[30] The October 2010 release was made in conjunction with OneWest's Motion for Relief from Stay in Plaintiff's Chapter 7 Bankruptcy, which was noted for hearing on or about October 1, 2010 in which Plaintiff challenged OneWest's status as note holder. *See* Dkt. Case No. 10-18496-SJS.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 14 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

the Uniform Commercial Code, as adopted in Washington, a "[p]erson entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). RCW 62A.3-301. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument. *Id.* "Holder" status may be evidenced by physical possession of the note, which has either been endorsed to that person or endorsed in blank. RCW 62A.1-201.

Under the DTA and the terms of the Note and Deed of Trust, a beneficiary may enforce the underlying obligation, may appoint a successor trustee, and may take steps in furtherance of the nonjudicial foreclosure. *See* RCW 61.24 *et seq.*

OneWest has been the note holder since March of 2009 and is the beneficiary. OneWest was entitled to enforce the Note and to take steps in furtherance of the nonjudicial foreclosure[31] at all times since March 2009. Thus, at all times relevant to the underlying foreclosure (initiated on or about January 12, 2010 with the Notice of Default by OneWest), OneWest was authorized to enforce the Note and Deed of Trust through nonjudicial foreclosure.

Plaintiff now claims, contrary to the well settled principle set forth by the United States Supreme Court in *Carpenter v. Longan,* 83 U.S. 271, 275-276 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident") that even if OneWest is the Note holder, the Deed of Trust did not follow the Note as a matter of law in this case because the note whereabouts "before it came into possession of OneWest's counsel are completely unknown." Dkt. 176, * 23. This argument fails as OneWest has testified as to whereabouts of the Note and because it appears to be a species of the "Show me the Note" argument, which has been wholly and soundly rejected by all Washington courts. *See, e.g., Freeston v. Bishop, White & Marshall, P.S.,* 2010 WL 1186276, *6 (W.D.Wash. March 24, 2010) (*quoting, Diessner v.*

---

[31] This includes directing NWTS to transmit the Notice of Default on behalf of OneWest and appointing NWTS as successor trustee.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 15 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.    13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Mtg. Elec. Reg. Sys., Inc.*, 618 F.Supp.2d 1184, 1187 (D.Ariz. 2009) (collecting cases).

2        Additionally, Plaintiff's citation to the Restatement of Property Third Section 5.4,

3   *comment a* is incomplete. Dkt. 176, *23. Plaintiff fails to consider comments c and e, which

4   recognize the employment of agency relationship to prevent the split of the note and deed of

5   trust. Comment c of the Restatement states, "mortgage may be enforced only by, *or on*

6   *behalf of,* a person who is entitled to enforce the obligation the mortgage secures."

7   Restatement (Third) Property, § 5.4(c). Comment e gives a more detailed explanation of

8   how agency (nominee) relationships may be deployed by promissory note owner(s) to prevent

9   the split of the note from the corresponding mortgage.[32]

10       In sum, OneWest has set forth evidence to demonstrate it is the note holder, and Plaintiff

11  has set forth bald, unsupported, and faulty assertions or theories to counter. Yet, nothing Plaintiff

12  has thrown at the wall should stick, and the inquiry should end.

13        **6.**   **<u>Alleged errors identified by Plaintiff in the foreclosure process and</u>**

14                  **<u>supporting documents do not refute OneWest's authority to</u>**

15                  **<u>foreclose and do not give rise to a pre-sale damages claim as to any</u>**

16                  **<u>Defendant.</u>**

17

---

18  [32] It states,

    [A] [m]ortgage may not be enforced except by a person having the right to enforce the
19      obligation or one acting on behalf of such person. As mentioned, in general a mortgage is
    unenforceable if it is held by one who has no right to enforce the secured obligation. For
20      example, assume that the original mortgagee transfers the mortgage alone to A and the
    promissory note that it secures to B. Since the obligation is not enforceable by A, A
    can never suffer a default and hence cannot foreclose the mortgage. B, as holder of the
21      note, can suffer a default. However, in the absence of some additional facts creating authority
    in A to enforce the mortgage for B, B cannot cause the mortgage to be foreclosed since B does
22      not own the mortgage. . .

    The result is changed if A has authority from B to enforce the mortgage on B's behalf. For
23      example, A may be a trustee or agent of B with responsibility to enforce the mortgage at B's
    direction. A' enforcement of the mortgage in these circumstances is proper . . . The trust or
24      agency relationship may arise from the terms of the assignment, from a separate agreement,
    or from other circumstances. <u>Courts should be vigorous in seeking to find such a "[a]</u>
25      <u>transfer of an obligation secured by a mortgage also transfers the mortgage unless the</u>
    <u>parties to the transfer relationship, since the result is otherwise likely to be a windfall</u>
26      <u>for the mortgagor and the frustration of B's expectation of security.</u>

Restatement (Third) Property, § 5.4, comment e (emphasis added).

R OUTH
C RABTREE
O LSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Before a court will set aside or restrain a trustee's sale in the face of allegations of errors

2   like those asserted by Plaintiff, a showing of prejudice must be made. *See Amresco Independence*

3   *Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing

4   *Koegel v. Prudential Mut. Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988). In *Koegel*, the

5   court declined to invalidate a sale where Plaintiff identified "technical, formal error[s], non-

6   prejudicial, and correctable." *Koegel*, 752 P.2d at 388. Thus, even where technical errors exist,

7   like those asserted here, a foreclosure may proceed without restraint in the absence of prejudice.

8   *Id.*[33] Furthermore, as no sale has actually occurred, Plaintiff cannot show any damage actually

9   suffered as a result of the incomplete nonjudicial foreclosure even if the alleged errors are

10  proven.

11  ***Pre-Foreclosure Notice.*** Plaintiff asserts there are pre-notice of default letters mandated

12  by RCW 61.24.031 that the trustee must send prior to issuing the NOD, and NWTS did not send

13  these statutorily mandated letters. RCW 61.24.031 (2009 version) actually specified that the

14  "initial contact" be made by the beneficiary or its agent, not the trustee. MORTGAGES—

15  DEEDS OF TRUST—FORECLOSURE, 2009 Wash. Legis. Serv. Ch. 292 (S.B. 5810) (WEST).

16  Plaintiff's new allegation that NWTS failed to satisfy this requirement fails. Moreover, OneWest

17  has set forth evidence of two letters sent in November 2009, which satisfied the "written contact"

18  required under RCW 61.24.031(1)(b). Dkt. 173, Ex. 9.

19  ***Notice of Default.*** The alleged errors identified in the Notice of Default do not give rise

20

---

21  [33] The court in *Cervantes* listed several examples of prejudice sufficient to warrant a claim. *Cervantes*, 656 F.3d at
    1043; *See e.g., Ed Peters Jewelry Co.*, 124 F.3d 252, 263 n.8 (declining to "countenance the freewheeling 'wrongful
22  foreclosure' claim" advocated by the mortgagor and noting that the Massachusetts Supreme Court recognized a
    claim for wrongful foreclosure where no default had occurred in *Mechanics Nat'l Bank of Worcester v. Killeen*, 384
23  N.E.2d 1231, 1236 (Mass. 1979)); *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct.App. 2009) (In
    Missouri, "[a] plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the
24  foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose"
    (internal alteration and citation omitted)); *Gregorakos v. Wells Fargo Nat'l Ass'n*, 647 S.E.2d 289, 292 (Ga. Ct.
25  App. 2007) (In Georgia, a "plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it
    by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it
26  sustained, and damages." (internal quotation marks and alteration omitted)); *Collins v. Union Fed. Sav. & Loan
    Ass'n*, 662 P.2d 610, 623 (Nev. 1983) (In Nevada, "the material issue of fact in a wrongful foreclosure claim is
    whether the trustor was in default when the power of sale was exercised.")

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 17 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    to any claim. Plaintiff alleges that the Notice of Default (1) erroneously lists OneWest as owner,

2    (2) erroneously lists OneWest as beneficiary; (3) was transmitted by a party who was not the

3    beneficiary or trustee in violation of RCW 61.24.030(8), and (4) falsely listed OneWest as the

4    creditor to whom the debt is owed. Dkt. 176, *18; SAC, ¶ 2.4.

5         As noted *supra,* note ownership is immaterial to determining who is legally entitled to

6    enforce the promissory note. *In re Reinke,* 2011 WL 5079561 at *11. Thus, any reference to the

7    owner, correct or note, is immaterial.

8         Freddie Mac is the note owner, and OneWest services the loan on behalf of Freddie Mac.

9    Therefore, the Freddie Mac Servicer Guide governs. The Freddie Mac Servicer Guide requires

10   such that the Note is endorsed in blank, housed by a custodian for the benefit of Freddie Mac and

11   OneWest, and enforceable by the servicer, OneWest. As the servicer, at all times relevant (prior

12   to and following Plaintiff's default), OneWest was the entity charged with the responsibility of

13   accepting and applying his payments, communicating in regard to the default, initiating and

14   carrying out the foreclosure, accepting and reviewing any request for modification, and

15   providing reinstatement figures. As Plaintiff points out, the Notice of Default identified OneWest

16   as the Servicer and the Beneficiary and incorrectly referenced OneWest as the "Note Owner."

17   Such an error offers no prejudice, however. Plaintiff was still provided the relevant information,

18   the party to which he could provide his payment, negotiate a loan modification, or coordinate

19   reinstatement. Furthermore, the evidence demonstrates Plaintiff knew OneWest was the party

20   designated to collect and apply his payments as he made payments to OneWest prior to his

21   undisputed default. SAC, ¶ 2.12. Additionally, OneWest is, in fact, the Beneficiary. *See* Dkt.

22   173.

23        ***Beneficiary Declaration***. The allegations relating to the Beneficiary Declaration, as a

24   matter of law, do not amount to an actionable claim and offer Plaintiff no prejudice. Plaintiff

25   alleges the Beneficiary Declaration was ineffective because it was signed by a "notorious robo-

26   signer" and that the signer is "suspicious and unreliable." SAC, ¶ 2.4.1; *see also* Dkt. 176, * 4.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 18 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    First, this court has held that generic allegations that documents were "robo-signed" are

2    nothing more than conjecture and are too vague and conclusory to state a plausible claim for

3    relief under the standards set forth in *Twombly,* 550 U.S. at 570; *see also Mickelson v. Chase*

4    *Home Fin. LLC,* C11-1445 MJP, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011).

5    Secondly, RCW 61.24.030(7)(a) requires that before a notice of sale is recorded,

6    transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any

7    promissory note or other obligation secured by the deed of trust. One way in which the

8    requirement is satisfied is through receipt of a declaration by the beneficiary made under the

9    penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other

10   obligation secured by the deed of trust. *See* RCW 61.24.030(7)(a).

11   Here, even if Plaintiff could show the Beneficiary Declaration was "robo-signed" and

12   that such a showing resulted in the Beneficiary Declaration being void (which he cannot),

13   Plaintiff can make no showing of injury based upon NWTS' reliance on the Beneficiary

14   Declaration. NWTS only relied on the Beneficiary Declaration to record the Notice of Sale and

15   Amended Notice of Sale, both of which have now expired. *See* RCW 61.24.040(6).

16   In order for a new trustee's sale to be scheduled, a new notice of sale must be recorded.

17   Since NWTS' receipt of the Beneficiary Declaration, NWTS has been presented with the original

18   promissory note, which is endorsed in blank and in the possession of OneWest. Thus, the

19   Beneficiary Declaration is no longer necessary, and NWTS need not rely upon the Beneficiary

20   Declaration going forward.

21   Similarly, Plaintiff's conclusory statements that Erica Johnson-Seck, Brian Burnett, and

22   Suchan Murray are "well-known robo-signers" are nothing more than conjecture and therefore

23   insufficient to state a plausible claim for relief. *See Mickelson v. Chase Home Fin. LLC,* C11-

24   1445 MJP, 2011 WL 5553821, at *3 (W.D. Wash. Nov. 14, 2012).

25   *Assignment.* Plaintiff's challenge to the validity of the ADOT fails as a matter of law. In

26   addition to arguing the ADOT was made invalid by *Bain,* Plaintiff also claims the ADOT is

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 19 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    invalid because IndyMac Bank was no longer in existence when the ADOT was executed and

2    therefore MERS could not have acted as IndyMac Bank's agent. *15.

3         Again, *Bain* recognized the ability of MERS to act as an agent of the note holder

4    beneficiary if MERS discloses the beneficiary (i.e., MERS' principal). *Bain*, *46. Moreover,

5    both federal district courts in Washington, the Bankruptcy Appellate Panel for the Ninth Circuit

6    Court of Appeals, and the Ninth Circuit Court of Appeals have recognized the propriety of

7    MERS' assigning its beneficial interest to the note holder. *See Salmon v. Bank of Am. Corp.*,

8    2011 WL 2174554, at *8 (E.D. Wash. 2011); *Klinger*, 2010 WL 5138478 at *7 (dismissing

9    Plaintiff's argument that an assignment of a deed by MERS is improper because MERS "has no

10   beneficial interest in the underlying Debt Obligation); *Daddabbo v. Countrywide Home Loans,*

11   *Inc.*, 2010 WL 2102486 (W.D. Wash. 2010); *Vawter*, 707 F. Supp. 2d at 1125–26;[34] *Thomas v.*

12   *Saxon Mortgage Services, Inc., Adv. Proc. No. 10-01186-MLB (Bankr. W.D. Wash.)* (aff'd

13   *Thomas v. Saxon Mortgage Services, Inc.,* (9th Cir. B.A.P. April 30, 2012); *and see Cervantes*,

14   656 F.3d at 1042 ("[T]he disclosures in the deed indicate that MERS is acting 'solely as nominee

15   for Lender and Lender's successors and assigns.' . . . By signing the deeds of trust, the plaintiffs

16   agreed to the terms and were on notice of the contents."). Here, when it assigned the deed of

17   trust, MERS acted for its principal and current beneficiary OneWest, not Indymac Bank.

18        Furthermore, even if Plaintiff could show that MERS acted without agency authority,

19   OneWest, as Note holder and principal could ratify MERS' conduct. "Ratification is the

20   affirmance by a person of a prior act which did not bind him but which was done or professedly

21   done on his account, whereby the act ... is given effect as if originally authorized by him." *In re*

22   *Eicholz*, 310 B.R. 203, 207-08, 2004 WL 1170561 (W.D. Wash. 2004) (*citing Riss v. Angel*, 131

23   Wn.2d 612, 636, 934 P.2d 669 (1997)). The principal ratifies the prior act if, with full knowledge

24

---

25   [34] *See also* See, e.g., *Corales v. Flagstar Bank, FSB*, --- F. Supp. 2d ---, No. C10–1922JLR, 2011 WL
     4899957, *5 (W.D. Wash. Oct. 24, 2011); *St. John v. Northwest Trustee Services, Inc.*, No. C11-5382BHS, 2011

26   WL 4543658, *3 (W.D. Wash. Sept. 29, 2011); *Cebrun v. HSBC Bank USA, N.A.*, No. C10-5742BHS, 2011 WL
     321992, *3 (W.D. Wash. Feb. 2, 2011); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102485, *5;
     *Vawter*, 707 F. Supp. 2d at 1125–26; *Moon v. GMAC Mortgage Corp.*, 2008 WL 4741492 (W.D. Wash. 2008).

ROUTH
CRABTREE
OLSEN, P.S.

1   of the facts, he "accepts the benefits of the acts" or assumes that an obligation is imposed. *Id.*

2   And any conduct manifesting an intent to treat an unauthorized act as authorized, such as failure

3   to repudiate a contract, supports a finding of ratification. *Id.* (citing *Rayonier Inc. v. Polson,* 400

4   F.2d 909, 915 (9th Cir.1968)).

5        Finally, Plaintiff lacks standing to challenge the assignment from MERS to OneWest

6   because he is not a party to or third-party beneficiary to the assignment. *See In re Mortg. Elec.*

7   *Reg. Sys. (MERS) Litig.,* 2011 WL 4550189, *4-5 (D. Ariz. 2011). As a stranger to the

8   assignment, Plaintiff cannot "demonstrate a concrete and particularized injury in fact that is

9   fairly traceable to the challenged assignment." *In re MERS Litig.,* 2011 WL 4550189, *5

10  (plaintiffs lacked standing to challenge assignments executed by MERS). Indeed, as long as

11  Plaintiff knew to whom to make his monthly payments, any assignment did not affect him in a

12  legally cognizable way. *Id.* ("as third-party borrowers, [Plaintiffs] are uninvolved and unaffected

13  by the alleged Assignments") (*citing Bridge v. Aames Cap. Corp.,* 2010 WL 3834059, *3 (N.D.

14  Ohio 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the

15  assignments does not affect whether Borrower owes its obligations, but only to whom Borrower

16  is obligated.")). *See also In re Veal,* 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011) ("[T]he

17  [borrower] should be indifferent as to who owns or has an interest in the note").

18       ***Appointment.*** Errors identified in the Appointment offer no prejudice Plaintiff and do not

19  give rise to any liability. Plaintiff alleges the Appointment was signed by a known "robo-signer"

20  and that the Appointment erroneously identified OneWest as the Note owner. Dkt., *17; *see also*

21  SAC, ¶ 2.7.

22       As previously discussed, OneWest is and has been the beneficiary authorized to foreclose

23  based on its possession of the Note, and conclusory allegations that a document was "robo-

24  signed" cannot support any claim. *See* Section B(2)(c), ¶4 *supra; see also Mickelson,* WL

25  5553821, at *3. Moreover, as discussed *supra,* to the extent OneWest was erroneously identified

26  as the Note owner, such an error is of no prejudicial consequence given the fact that note

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 21 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  ownership is not germane to determining who is entitled to enforce the Note and Deed of Trust.

2  *See In re Reinke*, 2011 WL 5079561 at *11; *see also* RCW 61.24 *et seq.*, *and see* RCW 62A.1-

3  201.

4        ***Notice of Sale & Amended Notice of Sale.*** Plaintiff's SAC alleges Defendants lacked

5  proper authority to record both the Notice of Sale and Amended Notice of Sale and that the

6  Notices set forth charges to which they provided no explanation for. Plaintiff's motion for

7  summary judgment does not specifically address improprieties with the Notice of Sale and

8  Amended Notice of Sale. Thus, to the extent Plaintiff's motion seeks a finding on summary

9  judgment as a result of the now expired Notice of Sale or Amended Notice of Sale, Defendants

10  incorporate their argument as set forth in their motion for summary judgment. Dkt. 172, Sec.

11  (V)(B)(2)(d).

12        No trustee's sale has occurred.  Plaintiff does not dispute his default since October 2009.

13  Plaintiff further does not dispute he failed to timely cure the default set forth in the Notice of

14  Default as required to reinstate the loan and prevent recording of the Notice of Trustee's Sale.

15  Although Plaintiff alleges that Defendants failed to comply with the procedural requirements of

16  the DTA, those allegations, which identify hyper-technical errors cannot indefinitely prevent the

17  foreclosure from proceeding absent a showing of prejudice and cannot give rise to any damages

18  when Plaintiff has yet to suffer any injury.

19        **7.  <u>NWTS did not violate its duty of good faith.</u>**

20        Plaintiff suggests NWTS violated its duty of good faith, whether legally appointed or note,

21  when it issued the Notice of Default as an agent to OneWest and when it recorded the Notice of Sale

22  and Amended Notice of Sale as successor trustee identifying OneWest as beneficiary. Dkt. 176,

23  *19. Plaintiff also alleges NWTS breached its duty of good faith by identifying OneWest as

24  "Beneficiary (Note Owner)" in the Notice of Default. Dkt. 176, *20.

25        As a threshold matter, if NWTS was not properly appointed successor trustee, it owed no

26

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 22 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    duty of good faith to Plaintiff.[35]

2         In any event, NWTS was properly appointed successor trustee by OneWest. Under the

3    DTA, a trustee so appointed by a beneficiary may foreclose a deed of trust nonjudicially. RCW

4    61.24 *et seq.* A beneficiary has the power to appoint any trustee that is qualified to act as such

5    pursuant to law. RCW 61.24.010(2). Upon recording the appointment of a successor trustee…the

6    successor trustee shall be vested with all powers of an original trustee. *See* RCW 61.24.010(2).

7    As discussed *supra*, OneWest is a beneficiary and has been since March 2009. Thus, upon

8    recordation of the Appointment on February 4, 2010, NWTS was validly appointed successor

9    trustee.

10        Yet, prior to being appointed successor trustee, NWTS issued the Notice of Default as an

11   agent to OneWest. The DTA contemplates that an agent of the beneficiary may issue the Notice

12   of Default under RCW 61.24.031. *See* RCW 61.24.031(1)(a) ("A trustee, beneficiary, or

13   authorized agent may not issue a notice of default…"). And, in fact, this is common practice.

14   *See, e.g., Klinger v. Wells Fargo Bank, NA,* 2010 WL 4237849 (W.D. Wash. 2010) ("Defendant

15   [NWTS] … as agent to Wells Fargo, mailed a Notice of Default to Plaintiffs and posted the

16   Notice of Default at the Property") (Emphasis added).

17        Moreover, there is no prohibition on the party who is eventually named successor trustee

18   from acting as the beneficiary's agent for the limited purpose of transmitting a notice of

19   default.[36] *See* RCW 61.24 *et seq.* Thus, there is no legal basis for Plaintiff's claim that NWTS'

20   conduct in acting as an agent to OneWest for the purpose of transmitting the Notice of Default

21   gives rise to a breach of its duty of good faith or violation of the DTA.

---

[35] And, at the time it transmitted the Notice of Default, as it had not been appointed successor trustee, NWTS owed no duty of good faith.

[36] Plaintiff has claimed that by acting as an agent to OneWest, NWTS was impartial. However, NWTS does not owe a duty of impartiality. *See* RCW 61.24 *et seq.* In fact, during the 2009 legislative session, the legislature removed the "duty of impartiality" and replaced it with the "duty of good faith to the borrower, beneficiary, and grantor." *See* 2009 Reg. Sess. S.B. No. 5810 (July 26, 2009). Additionally, RCW 61.24.010(3) also notes that a "trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." *Cf. Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 403, 663 P.2d 104 (1983), *citing Esmieu v. Schrag,* 88 Wn.2d 490, 498, 563 P.2d 203 (1977) (scope of care for trustees which possess fiduciary duties.).

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 23 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   After being appointed successor trustee and receipt of the beneficiary declaration under

2   RCW 61.24.030(7)(a),[37] NWTS was entitled to record the Notice of Sale and Amended Notice of

3   Sale pursuant to RCW 61.24 *et seq.* and the terms of the Deed of Trust. Plaintiff claims NWTS

4   did so with a total disregard that IndyMac Bank, FSB was no longer functioning. This is

5   irrelevant given OneWest had provided a declaration attesting to its holder status.

6   Plaintiffs also assert that NWTS breached its duty of good faith because it knew MERS

7   could not and should not executed the Assignment because this is a simply and well-publicized

8   fact. Defendants beg to differ. It was only two months ago that the Washington Supreme Court

9   issued its decision about whether MERS could act as a beneficiary in its own right. *See Bain*, *34

10  ("Decided August 16, 2012").

11  And, the *Bain* decision still recognized the ability of MERS to act as an agent to a

12  disclosed principal as it did here. *Id.* at 46. The conduct Plaintiff complains of occurred before

13  December 2010.[38] Plaintiff's bald assertion is meritless.

14  **D. Plaintiff's Consumer Protection Act claim fails as a matter of law.**

15  Plaintiff's motion for summary judgment makes it clear that Plaintiff's claim under the

16  CPA is contingent upon a finding that the conduct discussed at length *supra* was wrongful and

17  supports a claim under the DTA. In other words, Plaintiff's CPA claim is a wholly derivative

18  claim of his claim under the DTA. Accordingly, if Plaintiff's claim under the DTA fails, so does

19  the CPA claim. As discussed *supra*, Plaintiff's claim under the DTA fails against each

20  Defendant. Thus, the CPA claim should as well. Moreover, beyond generally referring the

21  "foregoing conduct," the Plaintiff's motion solely focuses on the Assignment from MERS to

22  OneWest as the basis for his CPA claim. Dkt. 176, * 24-28.

23

---

24  [37] RCW 61.24.030(7)(a) requires that before a notice of sale is recorded, transmitted, or served, the trustee shall have

25  proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. One way in which the requirement is satisfied is through receipt of a declaration by the beneficiary, made under the penalty of perjury, stating that the beneficiary is the actual holder of the promissory note or other obligation secured

26  by the deed of trust. *See* RCW 61.24.030(7)(a). Here, there is no dispute that NWTS received the Beneficiary Declaration prior to its issuance of the Notice of Sale and Amended Notice of Sale.
[38] The date when Plaintiff filed his Complaint. Dkt. 1.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 24 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

            **1.** <u>**Legal standard for a claim under Washington's Consumer**</u>

2

                  <u>**Protection Act.**</u>

      To prevail on his (CPA) claim, Plaintiff must prove the following five elements: (1) an unfair or deceptive act or practice, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) an injury to the plaintiff's business or property, and (5) a causal link between the unfair or deceptive act or practice and the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). **Failure to meet any one of these elements is fatal and necessitates dismissal.** *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002). (Emphasis added). "[W]hether a particular action gives rise to a CPA violation is reviewable as a question of law." *Columbia Physical Therapy Inc., P.S. v. Benton Franklin Orthopedic Assoc., P.L.L.C.*, 168 Wn.2d 421, 228 P.3d 1260 (2010), *citing Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 930 11 P.2d 288 (1997).

      "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC*, 134 Wn. App. 210, 135 P.3d 499 (2006). But "acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang, supra.* at 155.

      The *Bain* court, in determining whether a "homeowner possess a cause of action under Washington's Consumer Protection Act against Mortgage Electronic Registration Systems, Inc., **if MERS acts as an unlawful beneficiary** under the terms of" the DTA, determined that where MERS represents itself as beneficiary, the first CPA element is presumptively met. *See Bain at* 49. Here, however, MERS did not act as an unlawful beneficiary because it acted in an agent capacity for the note holder, OneWest. Moreover, nothing in *Bain* addresses whether a CPA claim lies against the foreclosure trustee or the beneficiary. Moreover, the *Bain* court specifically rejected the notion a representation that MERS is the beneficiary is **<u>not</u>** a *per se* violation of the

---

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 25 OF 46
CASE NO. C10-1952 RSL

R OUTH
C RABTREE
O LSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

CPA. *Id.*

Plaintiff can meet the first CPA element in only two ways: he may show either that an act or practice (i) "has a capacity to deceive a substantial portion of the public," or (ii) that "the alleged act constitutes a per se unfair trade practice." *See Saunders v. Lloyd's of London*, 113 Wn.2d 330 (1989), *quoting Hangman, supra.*[39]

The third factor articulated in *Hangman Ridge* also requires "a showing of impact to public interest separate and apart from showing an unfair and deceptive act." *Holiday Resort, supra.* at 226, *citing Hangman Ridge, supra.* Courts may look to a number of factors, including:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.*

In a private dispute, it is more difficult to show public interest. *Hangman Ridge, supra.* at 790; *see also Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009) (dismissing CPA claim where defendant did not advertise to the general public).

"Mere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment" on a CPA claim. *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006). Instead, the test to determine the public interest requirement is based upon the context of the practice. "Where the transaction was essentially a consumer transaction... these factors are relevant to establish [a] public interest... (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to

---

[39] An unfair trade practice "requires a showing that a statute has been violated which contains a specific legislative declaration of the public interest impact." *Hangman*, 105 Wn.2d at 791. Plaintiff does not allege that either.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    be affected by it?" *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*
2    162 Wn.2d 59, 170 P.3d 10 (2007).

3         Under the fourth *Hangman Ridge* factor, the alleged acts must also result in injury to
4    Plaintiff. *See Hangman Ridge* at 792, *citing Cooper's Mobile Homes, Inc. v. Simmons,* 94
5    Wn.2d 321, 617 P.2d 415 (1980). The injury must be expressly "*by*" a violation of RCW
6    19.86.020, meaning that "but for" a defendant's conduct, the alleged injury would not have
7    occurred. *See Carlile v. Harbour Homes, Inc.*, 147 Wn.App. 193, 194 P.2d 280 (2008).

8         The State Supreme Court has clarified that reliance on false or deceptive acts is not an
9    element under the CPA; rather, the Court concluded that "where a defendant has engaged in an
10   unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact,
11   our case law establishes that there must be some demonstration of a causal link between
12   misrepresentation and the plaintiff's injury." *Indoor Billboard*, 162 Wn.2d at 81-82. A plaintiff
13   must demonstrate that the "injury complained of ... would not have happened" if not for
14   defendant's acts. *Id.* at 82. Furthermore, the Washington Supreme Court instructs that "[i]f
15   investigative expense would have been incurred regardless of whether a violation existed,
16   causation cannot be established." *Panag,* 166 Wn.2d at 64, 204 P.3d 885.

17        Washington cases articulate very specific requirements for proving injury under the CPA.
18   Before a violation of the CPA may be found, an injury to the claimant's business or property
19   must be established. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d
20   at 792, 719 P.2d 531. The injury "need not be great" and no monetary damages need be proven.
21   *Mason v. Mortgage America, Inc.,* 114 Wn.2d 842, 854, 792 P.2d 142 (1990); *Sign–O–Lite*
22   *Signs, Inc. v. DeLaurenti Florists, Inc.,* 64 Wn.App. 553, 563, 825 P.2d 714 (1992).
23   Nonquantifiable injuries, such as loss of goodwill, suffice to prove injury, *Nordstrom, Inc. v.*
24   *Tampourlos,* 107 Wn.2d 735, 733 P.2d 208 (1987), but mental distress alone does not establish
25   injury. *Stephens,* 138 Wn.App. at 180, 159 P.3d 10. Incurring time and money to prosecute a
26   CPA claim does not suffice as an injury to business or property. *Sign–O–Lite Signs, Inc. v.*

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 27 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  *DeLaurenti Florists, Inc.,* 64 Wn.App. 553, 564, 825 P.2d 714 (1992).

2  In *Sign–O–Lite,* plaintiff brought a collection action against the defendant, DeLaurenti

3  Florists, Inc. DeLaurenti defended against the action and brought a CPA counterclaim against the

4  plaintiff. The court found that

5  "DeLaurenti's mere involvement in having to defend against Sign's collection action and

6  having to prosecute a CPA counterclaim is insufficient to show injury to her business or

7  property.... To hold otherwise would be to invite defendants in most, if not all, routine collection

8  actions to allege CPA violations as counterclaims."

9  *Sign–O–Lite,* 64 Wn.App. at 563, 825 P.2d 714.

10  Plaintiff clearly claims damages based on his time spent litigating the underlying case

11  ("Plaintiff "has spent the last 31 months trying to get to the truth of who owns his loan" by

12  litigating the underlying matter), not any actual damage he suffered as a result of OneWest,

13  MERS, or NWTS executing, recording, or mailing any document relating to a foreclosure that

14  has never been completed. *See* Dkt. 176, *27. Plaintiff also claims he has been injured because

15  Defendants' action has severely clouded title to the Property. Any cloud on title has little effect

16  on the defaulting Plaintiff as his interest in the property will be extinguished upon the

17  foreclosure. The claim fails.

18  **E.  Plaintiff's common law fraud claim fails as a matter of law.**

19  Plaintiff bases his fraud claim on the following allegations: (1) OneWest directed NWTS

20  to commence foreclosure on its behalf, (2) NWTS prepared, transmitted, and recorded

21  documents containing untruths and inaccuracies, (3) MERS participated by executing the

22  Assignment, (4) OneWest then changed its story to assert that Freddie Mac was actually the note

23  owner. Dkt. 176, *29.

24  To prevail on a fraud claim, Plaintiff must prove the following nine elements: The

25  elements of fraud are (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4)

26  the speaker's knowledge of its falsity; (5) the speaker's intent that it be acted upon by the person

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 28 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   to whom it is made; (6) ignorance of the falsity on the part of the person to whom the

2   representation is addressed; (7) the latter's reliance on the truth of the representation; (8) the right

3   to rely upon it; and (9) consequent damage. *Chen v. State,* 86 Wn. App. 183, 188, 937 P.2d 612

4   (1997). Each element of fraud must be proven by clear, cogent, and convincing evidence. *Id.*

5       An essential element of a fraud claim under Washington law is that the plaintiff suffers

6   consequent damage from the fraud. *See Blanton v. Mobil Oil Corp.,* 721 F.2d 1207, 1218 (9th

7   Cir. 1983); *see also A.B.C. Packard, Inc. v. General Motors Corp.,* 275 F.2d 63, 71 (9th Cir.

8   1960) ("The burden is on the plaintiff to prove all essential elements, and the absence of any of

9   them is fatal to a recovery").

10             1.   **"Falsities" identified by Plaintiff are immaterial.**

11       Plaintiff cannot maintain a fraud claim because he has not identified any material

12   representation upon which he relied, has not demonstrated knowledge of the immaterial falsities

13   he alleges, has not demonstrated intent, and has not demonstrated damages casually linked to the

14   alleged immaterial falsities.

15       Plaintiff's fraud claim is premised on alleged falsities he has discovered relating to the

16   Notice of Default, Notice of Trustee's Sale, Amended Notice of Sale, Appointment, and

17   Assignment. Dkt. 176, *29.

18       As Plaintiff alleges, the falsities includes (1) statements that OneWest was the Owner and

19   Beneficiary, (2) erroneous statements regarding charges by NWTS in the Notice of Sale and

20   Amended Notice of Sale, and (3) language relating to "transfer of the note" in the assignment of

21   deed of trust by MERS to OneWest. *Id.*, Appendix C.

22       As discussed at length *supra*, OneWest is a beneficiary entitled to enforce the Note and

23   Deed of Trust, the issue of ownership is immaterial, and no hyper-technical errors identified in

24   the documents prejudiced Plaintiff.

25             2.   **Plaintiff has not identified any damages suffered casually linked to**

26                 **the alleged falsities.**

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 29 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Washington courts require a causal connection between the alleged omission and the loss.

2    *First Maryland Leasecorp v. Rothstein,* 72 Wn. App. 278, 282, 864 P.2d 17 (1993) ("In damage

3    actions based on common law fraud, a party is entitled to judicial relief only if damages have

4    occurred as a consequence of the fraudulent acts").

5    Plaintiff alleges "The defendants have caused an unlawful foreclosure procedures (*sic*) to

6    occur through their fraud." *See* Appendix E to Dkt. 176. No foreclosure has actually occurred.

7    Therefore, Plaintiff has suffered no damage as a result of said foreclosure. *See* Vawter at *1123;

8    *In re Reinke,* *15.

9    Plaintiff also alleges the foreclosure proceeding has caused a severe loss of income and

10   quality of life. *See* Appendix E to Dkt. 176. Like his CPA claim, Plaintiff cannot claim damages

11   for time he incurred to pursue a meritless fraud claim. *See e.g., In re Reinke,**15; *see also Sign–*

12   *O–Lite,* 64 Wn.App. at 564, 825 P.2d 714.

13   Plaintiff also alleges the unlawful report caused Plaintiff embarrassment and lost

14   opportunity for credit and employment. *See* Appendix E to Dkt. 176. Damage to Plaintiff's credit

15   report is a direct result of Plaintiff's undisputed default on the underlying loan. Even if Plaintiff

16   could show that any of the representations he complains of were materially false, he cannot show

17   a causal link to his damaged credit. Neither NWTS nor MERS (and there are no allegations to

18   suggest otherwise) report to credit agencies, and while OneWest has reported Plaintiff's account

19   in default, Plaintiff does not dispute this his account has been in default since October 1, 2009.

20   Finally Plaintiff asserts he has been injured because title to property has been clouded as

21   a result of Defendants' fraud. *See* Appendix E to Dkt. 176. There is no requirement that a

22   transfer of ownership of the underlying note be recorded, and, in practice, ownership of

23   promissory notes is not tracked through county property records. Thus, any declaration of

24   ownership or transfer of ownership would have no effect on the condition of title, and would

25   have no impact on those who are intended to benefit from county property records, third party

26   purchasers, investors, buyers…not the defaulting borrower like Plaintiff. Moreover, any cloud on

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 30 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Case 2:10-cv-01952-RSL   Document 182   Filed 10/15/12   Page 31 of 46

1  title has little effect on the defaulting Plaintiff as his interest in the property will be extinguished

2  upon the foreclosure. Again, the condition of title is of no relevance to Plaintiff and cannot have

3  caused any injury to Plaintiff.

4  **F. Plaintiff's fraud on the court claim fails as a matter of law.**

5  Plaintiff alleges that his discussion relating to the alleged misrepresentations in the

6  Assignment, Appointment, Notice of Default, Notice of Trustee's Sale, and Amended Notice of

7  Sale "leads naturally to the conclusion that Defendants and their lawyer have put forth

8  documents in order to circumvent the statutory requirements of the DTA as well as gain an unfair

9  advantage in the litigation commenced by Plaintiff." Dkt. 176, *30. Plaintiff goes on to allege

10  that Defendants' counsel has "made arguments and filed statements made under oath of material

11  facts that are simply unsupported either factually or legally."

12      **1.  "Fraud on the court" is not a cause of action under which Plaintiff**

13         **can seek relief.**

14  Plaintiff may pursue his common law claim for fraud. However, there is no cause of

15  action for "Fraud on the court." *In re Intermagnetics Am., Inc.*, 926 F.2d 912, (9th Cir. 1991).

16  Rather, "fraud on the court" is an equitable ground upon which a party may move to vacate a

17  judgment. *See Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 65 Fed. R. Serv. 3d 779

18  (9th Cir. 2006). "Fraud on the court" comes into play only where a judgment was obtained by

19  fraud, and the court, after finding there was "fraud on the court" by clear and convincing

20  evidence" employs its inherent power to vacate the judgment. *United States v. Estate of*

21  *Stonehill*, 660 F.3d 415, 444, (9th Cir. 2011). Here, no judgment has entered.

22      **2.  Neither Defendants nor their counsel have committed fraud on the**

23         **court.**

24  Even if a judgment had entered, Plaintiff could not demonstrate by clear and convincing

25  evidence that either Defendants or their counsel have engaged in fraud on the court. In struggling

26  to define what constitutes "fraud on the court," courts have determined that "not all fraud is fraud

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 31 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

on the court," and the relevant inquiry is not whether fraudulent conduct "prejudiced the opposing party," but whether it " 'harm[ed]' the integrity of the judicial process." *United States v. Estate of Stonehill*, at 444 (citing *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.1989)). Fraud on the court involves "far more than an injury to a single litigant." *Id.* (citing *Hazel–Atlas*, 322 U.S. at 246, 64 S.Ct. 997).

> [T]he inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process....

*Id.* (citing *In re Intermagnetics America, Inc.*, at 917).

A fraud "connected with the presentation of a case to a court" is not necessarily a fraud on the court. *United States v. Estate of Stonehill*, at 444

> "Fraud on the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*Id.* (citing *In re Intermagnetics America, Inc.*, at 916).

Mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and "perjury by a party or witness, by itself, is not normally fraud on the court."

Plaintiff alleges "counsel for MERS, OneWest and NWTS knew that the proof they submitted would be material to the Court's consideration as to whether the named parties have the requisite legal rights to foreclose" and "counsel should have been alerted to the obvious legal impossibility of MERS executing the Assignment on behalf of IndyMac Bank" in 2010 when IndyMac has ceased to exist in 2008.

First, to the extent Plaintiff suggests that counsel should have relied on Washington's Supreme Court decision in *Bain*, which was entered in August 2012 at times prior to August 2012 is an absurdity. Moreover, even after *Bain*, it is clear that MERS may act as an agent to the note holder as it did here. *Bain*, *46. And, *Bain* does not change the weight of authority in Washington's federal courts, Bankruptcy Courts and the Ninth Circuit that approved the use of MERS prior to *Bain* decision. *See Vawter*, 707 F. Supp. 2d at 1125–26, *See Salmon v. Bank of Am. Corp.*, 2011 WL 2174554, at *8 (E.D. Wash. 2011); *Thomas v. Saxon Mortgage Services*,

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 32 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   *Inc., Adv. Proc. No. 10-01186-MLB (Bankr. W.D. Wash.)* (aff'd *Thomas v. Saxon Mortgage*

2   *Services, Inc.,* (9th Cir. B.A.P. April 30, 2012); *and see Cervantes*, 656 F.3d at 1042.

3          Here, MERS acted on behalf of its disclosed principal, OneWest , when it executed the

4   Assignment. Even if that was not the case, OneWest has ratified its conduct. *See supra.*

5   Accordingly, the Assignment provides no basis for a challenge by Plaintiff.

6          Second, to the extent that Plaintiff suggests counsel for Defendants is liable for some type

7   of fraud for setting forth legal arguments and undisputed evidence to this Court, such a claim is

8   meritless. Throughout this proceeding, the factual statements and arguments set forth by counsel

9   on behalf of Defendants have been consistent in nature and consistent with the documentary

10  evidence presented. Throughout this proceeding Defendants and counsel have represented to the

11  Court that (1) Freddie Mac is the owner/investor of the loan, (2) OneWest services the loan on

12  behalf of Freddie Mac, and pursuant to such relationship has possession of the endorsed in blank

13  note; and (3) the following documents were prepared, mailed, and/or recorded in conjunction

14  with the nonjudicial foreclosure proceeding: Assignment, Appointment of Successor Trustee,

15  Notice of Default, Notice of Sale, and Amended Notice of Sale. Moreover, Defendants and their

16  counsel have set forth the arguments that the note holder, OneWest, is entitled to enforce the note

17  as provided by both the DTA and U.C.C., that ownership is ultimately irrelevant, and that the

18  nonjudicial foreclosure, which has never been completed, does not give rise to a claim for

19  damages. Those arguments are supported by law, and cannot be the basis for any claim against

20  Defendants or their counsel.[40]

21  **G. Plaintiff's criminal profiteering claim fails as a matter of law.**

22         Plaintiff does not plead a claim for criminal profiteering under RCW 9A.82.100(a) in his

23  Second Amended Complaint. *See* Dkt. 138. Plaintiff may not assert an entirely new theory of

---

[40] Throughout this proceeding, Defendants' counsel has endured multiple personal attacks on her personal conduct and character by Plaintiff who was acting pro se. Given both the personal and emotional subject of this matter from Plaintiff's perspective, the loss of his home, counsel understood why Plaintiff would attempt to personally attack Defendants and their counsel. Plaintiff, now represented by counsel, continues to lodge personal attacks against Defendants' counsel.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 33 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   recovery in his motion for summary judgment before the court after the close of discovery and

2   less than two months from trial. Doing so prejudices Defendants. *See Coleman v. Quaker Oats*

3   *Co.*, 232 F.3d 1271, 1292 & 1294 (9th Cir. 2000). "A complaint guides the parties' discovery,

4   putting the defendant on notice of the evidence it needs to adduce in order to defend against the

5   plaintiff's allegations." *Id.; accord Palmer v. I.C. Sys., Inc.*, 2005 WL 3001877, *3 (N.D. Cal.

6   Nov. 8, 2005).  (it "would be unfair to permit plaintiff to amend her complaint by way of her

7   cross-motion for summary judgment" where plaintiff alleged no facts in complaint to support

8   new claim and defendant lacked sufficient notice to conduct necessary discovery into merits of

9   new claim).

10  **H.  Plaintiff's civil conspiracy claim fails as a matter of law.**

11        Under Washington law, a plaintiff proves a civil conspiracy by showing "by clear, cogent

12  and convincing evidence that (1) two or more people contributed to accomplish an unlawful

13  purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the

14  conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v.*

15  *State of Washington*, 84 Wn. App. 332, 350–51, 929 P.2d 448 (1996).  Because the conspiracy

16  must be combined with an unlawful purpose, civil conspiracy does not exist independently—its

17  viability hinges on the existence of a cognizable and separate underlying claim. *N.W. Laborers–*

18  *Employers Health & Sec. Trust Fund v. Philip Morris. Inc.*, 58 F.Supp.2d 1211, 1216

19  (W.D.Wash.1999). A conspiracy claim fails if the underlying act or claim is not actionable. *Id.*;

20  *Wilson v. State*, 84 Wash. App. 332, 350–51, 929 P.2d 448 (1996).

21        Plaintiff's civil conspiracy claim is now premised on Defendants' alleged violation of

22  RCW 19.144.080(3).[41]  Plaintiff asserts Defendants conspired to violate the Mortgage Fraud

23  statute, RCW 19.144.080(3) by "using MERS as an assignor of the interests in the deed of

24  trust...with full knowledge that MERS never owned or held the promissory note."

25        Under RCW 19.144.080(3), It is unlawful for any person in connection with making,

26

---

[41] Plaintiff makes absolutely no mention of RCW 19.144.080(3) in the Second Amended Complaint. *See* Dkt. 138.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 34 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

brokering, obtaining, or modifying a residential mortgage loan to directly or indirectly use or facilitate the use of any misstatement, misrepresentation, or omission, knowing the same to contain a misstatement, misrepresentation, or omission, during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

First, the claim fails because OneWest, MERS, and NWTS were not involved with "making, brokering, obtaining, or modifying" Plaintiff's loan.

By Plaintiff's own admission, IndyMac Bank, FSB made the loan to Plaintiff, not OneWest, MERS, or NWTS. Dkt. 138, ¶ 2.1. Additionally, Plaintiff makes no allegation that any of the parties brokered or modified his loan. *See* Dkt. 138.

Moreover, Plaintiff's reasoning in support of the conspiracy claim is faulty. As a basis, Plaintiff asserts "OneWest needed MERS to assign the DOT in order to appoint NWTS as successor trustee." Dkt. 176. However, OneWest's status as note holder was all the authority OneWest needed to appoint NWTS as successor trustee. As discussed herein, the Assignment was done primarily for the benefit of a title report, not to transfer or confer beneficiary status. And, an assignment is not a prerequisite to nonjudicial foreclosure. Thus, even if an assignment was done without proper authority it would simply be a nullity.

## I.   Plaintiff's RESPA claim fails as a matter of law.

Plaintiff asserts "Defendants[42] have violated RESPA (12 U.S.C. § 2603(e)) by failing to respond to Plaintiff's request for them (*sic*) made in April 2010 for them to validate the debt being collected." Dkt. 176, * 33; *see also* Dkt. 138, Ex. 10 (Plaintiff's purported Qualified Written Request ("QWR"), Dispute of Debt ("Dispute"), and Debt Validation Demand ("DVD")).   Plaintiff's RESPA claim fails as a matter of law because RESPA does not apply to either MERS or NWTS and because Plaintiff's purported QWR does not fit the definition of a QWR.

---

[42] The Court previously determined Plaintiff's RESPA claim as to NWTS was futile and Plaintiff was not entitled to amend his complaint to assert a claim under RESPA as to NWTS. Dkt. 100, * 5.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 35 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Federal courts in the Ninth Circuit have held that broad requests for information

2  and documentation related generally to Plaintiffs' loan are not covered by Section 2605.

3  *Derusseau v. Bank of Am., N.A.*, 2011 WL 5975821, at *4 (S.D.Cal. Nov.29, 2011);

4  *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1013-14 (N.D. Cal. 2009)

5  (inquiry that sought information pertaining to validity of loan was not a QWR). Washington

6  federal courts in the Western District of Washington have agreed. *See Bhatti v. Guild Mortg. Co.*,

7  C11-0480JLR, 2011 WL 6300229 (W.D. Wash. Dec. 16, 2011); *Eifling v. National City Mortg.*,

8  2011 WL 893233 (W.D.Wash.2011); *and see Segle v. PNC Mortg.*, 10-5655RJB, 2011 WL

9  1098936 (W.D. Wash. Mar. 25, 2011). Further, an "accusation of unlawful conduct, demand to

10  produce loan documents for inspection and a threat of legal action was not a QWR." *King v.*

11  *American Mortgage Network, Inc.*, 2010 WL 3516475, *2 (D. Utah Sept. 2, 2010). Furthermore,

12  it is well established that "[t]he RESPA and the QWR regulations were not designated, and

13  should not be used, as a vehicle to permit in default borrowers to flood their lender with

14  documentary requests, on the hope that a failure to timely comply will lead to an

15  affirmative cause of action, or a defense to a collection or foreclosure action." *Eifling v.*

16  *National City Mortgage*, No. CV10-5713 RBL, 2011 WL 893233 (W.D. Wash. Mar. 15, 2011).

17    As the *Bhatti* Court noted, section 2605 only requires loan servicers to respond to a

18  proper qualified written request by correcting the account discrepancy, explaining why the

19  account is correct, or if the information is unavailable, by providing contact information for

20  someone who can assist the borrower with her inquiry. *See* 12 U.S.C. §§ 2605(e) (2)(A)-(C).

21  And, as the *Segle* Court noted, a "QWR" that largely serves as a repudiation of the national

22  lending industry does not meet the first portion of the definition of a QWR. *Segle* at *6.

23    Here, like the letters in *Bhatti* and *Segle*, Plaintiff's QWR, Dispute, and DVD "far exceed

24  the scope of information" OneWest is required to provide in a response. And, Plaintiff's letter

25  appears to be more akin to a repudiation of the lending industry than a letter including specific

26  reasons he believes the account to be in error. OneWest had no statutory obligation under

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 36 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    RESPA to provide Plaintiff "the extraordinary amount of information and documents" he

2    requested in his letters. *Bhatti*; see also *See Derusseau*, 2011 WL 5975821, at *4. Plaintiff

3    concedes OneWest responded within the required time frame, provided a payment history so as

4    to verify the payments made on the account as well as copies of the Note and Deed of Trust.

5    Given that Plaintiff's QWR did not meet the definition of a QWR, OneWest was under no

6    obligation to respond. To the extent Plaintiff's letter could be construed as a QWR, Defendant

7    OneWest satisfied its obligation in responding and providing information to validate the debt.

8    *See* Dkt. 138, Ex. 13.

9          Plaintiff also asserts OneWest violated RESPA by continuing to report derogatory

10   information during the 60 days after Plaintiff's purported QWR. Dkt. 176, *34; *see also* SAC, ¶

11   3.2.6.

12         Section 2605(e)(3) provides that during the 60-day period beginning on the date of the

13   servicer's receipt from any borrower of a qualified written request relating to a dispute regarding

14   the borrower's payments, a servicer may not provide information regarding any overdue

15   payment, owed by such borrower and relating to such period or qualified written request, to any

16   consumer reporting agency (as such term is defined under section 1681a of Title 15).

17         Because Plaintiff's request did not meet the definition of a QWR, the duties under 12

18   U.S.C. § 2605(e)(3) to refrain from reporting derogatory information to credit reporting agencies

19   were not triggered.

20         To the extent Plaintiff asserts a claim under RESPA as to MERS[43], it fails. Neither

21   MERSCORP Holdings nor MERS originate loans, so they are not subject to RESPA or TILA.

22   *See In re MERSCORP, Inc. RESPA Litigation*, 2008 U.S. Dist. LEXIS 40473 (S.D. Tex. May 16,

23   2008) (holding that, because MERS collected a fee from MERS® System Members in exchange

24   for a service that it actually performed, MERS did not receive a kickback for business referral

25   and did not violate RESPA).

26
_____

[43] Plaintiff makes no mention of MERS in his motion for summary judgment in relation to his RESPA claim. *See*
Dkt. 176, *33-34.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 37 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

**J.  Plaintiff's FRCA claim fails as a matter of law.**

2       "Congress enacted the [FCRA] in 1970 'to ensure fair and accurate credit reporting,

3   promote efficiency in the banking system, and protect consumer privacy.' " *Gorman v. Wolpoff*

4   *& Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir.2009) (quoting *Safeco Ins. Co. of Am. v. Burr,*

5   551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)); *see also Rogers v. JPMorgan Chase*

6   *Bank, N.A.,* C11-1689JLR, 2012 WL 2190900 (W.D. Wash. June 13, 2012).

7       Section 1681s–2 of the FCRA imposes two responsibilities on sources that provide credit

8   information to Credit Reporting Agencies ("CRAs"). These sources are called "furnishers" under

9   the statute. *Gorman,* 584 F.3d at 1153. First, a furnisher must provide accurate information. 15

10  U.S.C. § 1681s–2(a). Second, a furnisher must investigate and/or correct inaccurate information.

11  15 U.S.C. § 1681s–2(b). The duties to investigate and correct inaccurate information are

12  triggered only " 'upon notice of dispute'—that is, when a person who furnished information to a

13  CRA receives notice from the CRA that the consumer disputes the information." *Gorman,* 584

14  F.3d at 1154. "[N]otice of a dispute received directly from the consumer does not trigger

15  furnishers' duties under subsection (b)." *Id.*

16      Section 1681s—2(b) provides that, after receiving a notice of dispute, the furnisher shall:

17      (A) conduct an investigation with respect to the disputed information;
        (B) review all relevant information provided by the [CRA] pursuant to section
18      1681i(a)(2) ...;
        (C) report the results of the investigation to the [CRA];
19      (D) if the investigation finds that the information is incomplete or inaccurate, report
        those results to all other [CRAs] to which the person furnished the information ...; and
20      (E) if an item of information disputed by a consumer is found to be inaccurate or
        incomplete or cannot be verified after any reinvestigation under paragraph (1) ... (i)
21      modify ... (ii) delete ... [or] (iii) permanently block the reporting of that item of
        information [to the CRAs].
22
    15 U.S.C. § 1681s–2(b).
23
24      "The FCRA expressly creates a private right of action for willful...noncompliance with

25  its requirements." *Gorman,* 584 F.3d at 1154. This right of action, however, is limited to claims

26  arising under § 1681s–2(b). *Id.* "A private litigant can bring a lawsuit to enforce § 1681s–2(b),

    but only after reporting the dispute to a CRA, which in turn reports it to the furnisher." *Nelson v.*

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 38 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    *Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir.2002). Duties imposed

2    under § 1681s–2(a), by contrast, are enforceable only by federal or state agencies. 15 U.S.C. §

3    1681s–2(d). Furthermore, the FCRA provides that a party may recover actual and punitive

4    damages for willful violations of the statute, 15 U.S.C. § 1681n(a).

5       A furnisher's investigation of a dispute pursuant to § 1681s–2(b) (1)(A) must be

6    reasonable. *Gorman,* 584 F.3d at 1157. The burden of showing that the investigation was

7    unreasonable is on the plaintiff. *See id.* The furnisher's duty to conduct a reasonable investigation

8    arises when it receives a notice of dispute from a CRA. *Id.* "Such notice must include 'all

9    relevant information regarding the dispute that the [CRA] has received from the consumer.' " *Id.*

10   (quoting 15 U.S.C. § 1681 i(a)(2)(A)). Thus, "the pertinent question is ... whether the furnisher's

11   procedures were reasonable in light of what it learned about the nature of the dispute from the

12   description in the CRA's notice of dispute." *Id.* (citing *Westra v. Credit Control of Pinellas,* 409

13   F.3d 825, 827 (7th Cir.2005) (holding that the furnisher's investigation in that case was

14   reasonable given the "scant information" it received from the CRA regarding the nature of the

15   consumer's dispute)). Although reasonableness is normally a question for the finder of fact,

16   summary judgment is appropriate "when only one conclusion about the conduct's reasonableness

17   is possible." *Id.*

18       Plaintiff claims Defendants failed to treat Plaintiff's dispute in 2010 of their inaccurate

19   and unlawful reporting to the Credit Reporting Agencies with any seriousness and as a result,

20   failed to conduct the requisite investigation to which they had actual notice as a result of

21   Plaintiff's QWR and failed to mark Plaintiff's account in dispute. Dkt. 176, * 35-36; SAC, ¶

22   3.5.2.

23        **a.   OneWest's alleged failure to mark the account in dispute.**

24       The claim OneWest failed to mark Plaintiff's account in dispute falls under Section

25   1681s–2(a) (providing "If the completeness or accuracy of any information furnished by any

26   person to any consumer reporting agency is disputed to such person by a consumer, the person

---

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 39 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   may not furnish the information to any consumer reporting agency without notice that such

2   information is disputed by the consumer"). As discussed *supra*, no private right of action exits

3   for claims falling under Section 1681s–2(a). Thus, Plaintiff's claim under Section 1681s–2(a) is

4   not actionable against OneWest and fails as a matter of law.

5              **b.  Allegations OneWest failed to meet its duties under § 1681s-2(b)(1)**

6   Plaintiff does have a private right of action to challenge OneWest's alleged failure to meet its

7   obligations under § 1681s–2(b), such a claim fails here. Section 1681s–2(b) requires a furnisher,

8   upon receiving notice of such dispute, to investigate and both report the results of the

9   investigation *and,* "if the investigation finds that the information is incomplete or inaccurate,

10  report those results" to the CRAs. *See* Section 1681s–2(b)(1)(C), (D); *See also Gorman v.*

11  *Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162, 09 Cal. Daily Op. Serv. 12858, 2009 Daily

12  Journal D.A.R. 15027, 2009 WL 3365928 (9th Cir. 2009).

13          The Ninth Circuit has described "furnishers" as the "sources that provide credit

14  information to the CRAs." *Gorman,* 584 F.3d at 1153. Thus, for purposes of Plaintiff's FCRA

15  claim, OneWest is a furnisher.

16                      i.   *OneWest conducted a reasonable investigation of each*

17                           *dispute and reported its findings in accordance with the*

18                           *FCRA.*

19          FCRA states that the creditor shall conduct "an investigation with respect to the disputed

20  information." § 1681s–2(b)(1)(A); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d

21  1147, 1155, 09 Cal. Daily Op. Serv. 12858, 2009 Daily Journal D.A.R. 15027, 2009 WL

22  3365928 (9th Cir. 2009). Courts have determined that the level of inquiry is dependent upon

23  what it learned about the nature of the dispute from the description in the CRA's notice of

24  dispute. *See Gorman, at* 1157 *(citing Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827

25  (7th Cir.2005) ("[The furnisher's] investigation in this case was reasonable given the scant

26  information it received regarding the nature of [the consumer's] dispute.")).

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 40 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Here, OneWest has set forth a declaration testifying it received dispute information as to

2    Plaintiff's account from two of the three credit reporting agencies, Equifax and TransUnion.

3    OneWest did not receive dispute information from Experian.[44]

4    Plaintiff alleges his dispute was based on the following information being reported by

5    OneWest: (1) OneWest was Plaintiff's creditor, (2) that the loan has been discharged in a

6    bankruptcy, and (3) that a foreclosure process had been started. Dkt. 176, *36.

7    **The TransUnion Dispute.** On or about July 16, 2010, OneWest was notified by

8    TransUnion that information reported to TransUnion by OneWest had been disputed. The

9    TransUnion Dispute indicated that the debtor disputed OneWest's reporting on the basis that the

10   debt was "not his/hers." The dispute instructed OneWest to "provide or confirm complete ID."

11   OneWest performed an investigation, in accordance with the information provided by

12   TransUnion, to verify that OneWest's records matched the following information provided by

13   TransUnion: (1) debtor's name, (2) current address, (3) previous address, (4) social security

14   number, (5) date of birth, (6) telephone number, (7) second previous address, (8) the account

15   status, (9) date account opened, (10) account balance, (11) amount past due, (12) origination

16   amount, (13) amount of scheduled payment, (14) term duration, (15) the account type, (16)

17   foreclosure had been initiated, and (17) the date upon which the account was last reported.

18   OneWest's investigation found that the foregoing information as previously reported to

19   TransUnion was accurate and required no modification.

20   After the completion of the investigation, OneWest submitted its report. The report,

21   submitted on or about July 30, 2010, provided that the "account information was accurate as of

22   the date reported."

23   **The Equifax Dispute.** On or about July 13, 2010, OneWest was notified by Equifax

24   that information reported to Equifax by OneWest had been disputed. The Equifax Dispute

25

26   [44] Because OneWest received no notice of dispute from Experian, it had no duty to investigate or report finding to Experian. Thus, to the extent Plaintiff's claims are based on a dispute with Experian, such a claim fails as a matter of law. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155, 09 Cal. Daily Op. Serv. 12858, 2009 Daily Journal D.A.R. 15027, 2009 WL 3365928 (9th Cir. 2009).

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 41 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   indicated that the debtor disputed OneWest's reporting on the basis that the debt was "not

2   his/hers." The dispute instructed OneWest to "provide or confirm complete ID."

3          OneWest performed an investigation, in accordance with the information provided by

4   Equifax, to verify that OneWest's records matched the following information provided by

5   Equifax: (1) debtor's name, (2) current address, (3) previous address, (4) social security number,

6   (5) date of birth, (6) telephone number, (7) second previous address, (8) the account status, (9)

7   date account opened, (10) account balance, (11) amount past due, (12) origination amount, (13)

8   date of account information, (14) date of last payment, (15) amount of scheduled payment, (16)

9   term duration, and (17) the account type.

10         After the completion of the investigation, OneWest submitted its report. The report,

11  submitted on or about August 6, 2010, provided "modify account information as indicated." The

12  report modified the "past due amount" from $23,892.00 to $26,240, and updated the "date of

13  account information" from 07-01-2010 to 08-01-2010.

14         Plaintiff's SAC alleges he provided notice to OneWest of the dispute on or about April

15  27, 2010, and notice to the CRAs on or about Jun 29, 2010. SAC, ¶ 3.5.2. Given that OneWest

16  received notice of the disputes on July 13, 2010 and July 16, 2010, it is reasonable to assume that

17  such disputes correlate to the dispute as alleged in Plaintiff's SAC. In other words, the evidence

18  demonstrates Plaintiff lodged his dispute, and upon notification from the CRAs, OneWest

19  conducted a reasonable investigation and properly reported the results in accordance with the

20  FCRA.  Plaintiff does not allege any facts that would suggest an ongoing duty or additional duty

21  was triggered on the part of OneWest to either report the account as disputed or conduct further

22  investigation after it submitted the responses on July 30, 2010 and August 6, 2010.

23         While Plaintiff alleges his dispute was based on a three-part dispute: (1) OneWest was

24  not Plaintiff's creditor, (2) that the loan had improperly been reported as being discharged in

25  bankruptcy, and (3) that the loan had improperly been reported as having the foreclosure process

26  started, the evidence demonstrates that the information provided to OneWest from Equifax and

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 42 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    TransUnion did not advise OneWest as to the specifics of Plaintiff's dispute. Accordingly, in

2    light of the scant information provided to OneWest, its investigation was reasonable.

3                    *ii.   Even if OneWest had a duty to investigate Plaintiff's*

4                        *specific disputes, the evidence demonstrates Plaintiff's*

5                        *specific disputes are meritless.*

6         **First,** Plaintiff claims OneWest erroneously reported Plaintiff's account was discharged

7    in bankruptcy in September 2009. SAC, ¶ 3.5.4. Yet, Plaintiff goes on to allege that OneWest

8    has erroneously reported that information for the last five hundred seventy-three days (573).

9    Plaintiff's SAC was filed on or about April 26, 2012, thus 573 days prior to that date is October

10   1, 2010.

11        Based on Plaintiff's credit report dated July 20, 2012, Plaintiff's account with OneWest is

12   reported as: "**debt included in or** discharged through bankruptcy 7, 11, or 12." (emphasis

13   added). This information is accurate.

14        Plaintiff filed a Chapter 7 bankruptcy on or about July 22, 2010[45] with the United States

15   Bankruptcy Court for the Western District of Washington under Case No. 10-18496-SJS.

16   Schedule F, filed by Plaintiff on or about August 4, 2010, lists Plaintiff's account[46] with

17   OneWest Bank (Indymac) as an "unsecured nonpriority claim." While Plaintiff's classification of

18   the account as unsecured nonpriority is incorrect, the schedules clearly indicate that Plaintiff's

19   account with OneWest was "included in" a Ch. 7, 11, or 12 bankruptcy such that OneWest's

20   reporting of such facts was accurate.

21        **Second,** Plaintiff claims OneWest erroneously reported that OneWest is Plaintiff's

22   creditor. SAC, ¶ 3.5.3.

23

24   ---

[45] To the extent Plaintiff alleges OneWest has reported a bankruptcy since September 2009, OneWest has been
25   unable to locate any information to verify that it reported the account as being included in or discharged by
     bankruptcy in September 2009. Neither the credit report nor Plaintiff's SAC provides any evidence that a
26   bankruptcy was reported in September 2009. Plaintiff's SAC, current credit reports, and OneWest's records do
     indicate that Plaintiff's account was reported as "included in or discharged in bankruptcy" after Plaintiff filed his
     Ch. 7 petition in July 2010.
[46] Account Number 6681009111244. *See* Schedule F.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 43 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Plaintiff asserts that OneWest is neither the original creditor nor a subsequent creditor of

2   Plaintiff's. SAC, ¶ 3.5.3. However, Plaintiff's allegation is seriously undercut by the fact that

3   Plaintiff identified OneWest Bank as a creditor in Schedule F of his bankruptcy schedules.

4   Moreover, the evidence,[47] which demonstrates that OneWest is the Note holder and the

5   beneficiary under Plaintiff's Deed of Trust demonstrates that information reporting OneWest as

6   Plaintiff's creditor is accurate.

7   **Third,** Plaintiff claims OneWest erroneously reported for the last 835 days to Equifax and

8   TransUnion that the account has a "foreclosure process started." SAC, ¶ 3.5.5. Plaintiff's SAC

9   was filed on or about April 26, 2012. Eight hundred thirty-five (835) days prior to April 26, 2012

10   is approximately January 12, 2010. Thus, Plaintiff alleges that no foreclosure process had been

11   initiated as of January 12, 2010.

12   However, January 12, 2010, is precisely the date foreclosure was initiated. On or about

13   January 12, 2010, OneWest Bank, FSB, through its duly authorized agent NWTS transmitted the

14   Notice of Default.[48] Despite Plaintiff's legal conclusion[49] that the foreclosure is not legal, the

15   evidence demonstrates that information reported by OneWest as of January 12, 2010, that the

16   foreclosure process has been started is entirely accurate.

17   **Finally,** to the extent Plaintiff alleges OneWest erroneously reported Plaintiff's account

18   number ("the account listed of Plaintiff's credit beginning with 6681 [a number Plaintiff is

19   unfamiliar with as it is not the loan number of any loan Plaintiff has transacted])", such an

20   allegation is disingenuous. *See* SAC, ¶ 3.5.4. On or about August 4, 2010, Plaintiff filed his

21   bankruptcy schedules, which identified his account with OneWest as Account number

---

[47] *See* Dkt. 121,122, 123, and 133.

[48] Under RCW 61.24. *et seq.*, the Notice of Default initiates the nonjudicial foreclosure process. *See* RCW 61.24.031; *see also Vawter v. Quality Loan Serv. Corp. of Washington*, 707 F. Supp. 2d 1115, 1121, 2010 WL 1629355 (W.D. Wash. 2010).

[49] The court is not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955, 2011 WL 1108226 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 456, 2011 WL 3584723 (U.S. 2011).

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 44 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   **6681**009111244. (emphasis added). Thus, Plaintiff's allegation as of April 26, 2012 that "6681"

2   is a number he is unfamiliar with" is not credible as nearly two years prior Plaintiff had listed his

3   account number using those same four digits in his bankruptcy schedules.

4       There is no dispute Plaintiff filed bankruptcy in July 2010. Plaintiff alleges OneWest has

5   reported the account as being discharged in bankruptcy. Plaintiff fails to prove any difference of

6   a report that the loan was subject to a dismissed bankruptcy as opposed to discharged in

7   bankruptcy. Without such proof, Plaintiff has failed to prove any damage.

8   **K.  Plaintiff's FDCPA claim[50] fails as a matter of law.**

9       The court previously determined in granting Plaintiff's motion for leave to file an

10   amended complaint[51] that, "[i]n the absence of any allegations that NWTS or OneWest engaged

11   in conduct beyond that necessary to effectuate a nonjudicial foreclosure, they are not "debt

12   collectors" for any purpose other than § 1692f(6) and are not subject to the other requirements or

13   prohibitions of the FDCPA." Dkt. 100. After filing the amended complaint that was the subject

14   of the court's decision, Plaintiff did not add any additional allegations in support of his FDCPA

15   claim. *See* Dkt. 138.

16       However, Plaintiff now seeks to obtain summary judgment on an FDCPA claim pursuant

17   to 15 U.S.C. § 1692e(2)(a)(demands made on sums borrower did not owe), 15 U.S.C. §

18   1692e(8)(reporting or threatening to report false information), and 15 U.S.C. § 1692d (conduct to

19   harass, oppress, and abuse).

20       Plaintiff's motion for summary judgment does not address alleged violations of §

21   1692(f)(6).[52] However, Defendants have briefed Plaintiff's FDCPA claim as pled in the Second

22

23   [50] Plaintiff does not assert a claim under the FDCPA as to MERS. *See* Dkt. 138, ¶ 3.4-3.5.

24   [51] Plaintiff later filed a Second Amended Complaint after the court granted his motion for reconsideration as to his claim under FCRA. *See* Dtk. 100, 105, 137, and 138. Plaintiff's Amended Complaint and Second Amended Complaint contain the same allegations in regard to the FDCPA claim. *See* Dkt. 100 and 138.

25   [52] Section 1692f(6) prohibits a debt collector from taking or threatening to take "non-judicial action to effect

26   dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

---

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 45 OF 46
CASE NO. C10-1952 RSL

R OUTH
C RABTREE
O LSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Amended Complaint as it pertains to § 1692f(6) in their motion for summary judgment (Dkt.

2    172), and incorporates that argument herein by reference. To the extent Plaintiff asks the court to

3    grant him summary judgment for his FDCPA claim under 1692f(6) despite his failure to address

4    1692f(6), Defendants rely on their briefing in their motion for summary judgment. *Id.*

**IV.    CONCLUSION**

6           Ultimately, Plaintiff is not entitled to summary judgment because each and every one of

7    his claims fail as a matter of law. Based on the foregoing, Defendants respectfully request the

8    Court deny Plaintiff's motion for summary judgment.

9           DATED this 15th day of October 2012.

11                                          **ROUTH CRABTREE OLSEN, P.S.**

13                                          Heidi E. Buck, WSBA No. 41769
                                            Of Attorneys for Defendants OneWest
                                            Bank, FSB, Mortgage Electronic
14                                          Registration Systems, Inc. ,and
                                            Northwest Trustee Services, Inc.

DEFENDANTS ONEWEST, MERS, AND NWTS'
RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT – PAGE 46 OF 46
CASE NO. C10-1952 RSL

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131