1

2                                                              The Honorable Robert S Lasnik

3

4

5

6                            UNITED STATES DISTRICT COURT,
                    WESTERN DISTRICT OF WASHINGTON AT SEATTLE

7    **James McDonald**                          | No. 2:10-cv-01952-RSL
                                    **Plaintiff**
8                        **v.**                    | Plaintiff's Opposition and Response to
                                                   | Defendants' Third Motion for Summary
9    **OneWest Bank, FSB,**                        | Judgment
     **Northwest Trustee Services,**
     **Mortgage Electronic Registration Systems,**
10                              **Defendants.**    | **Noting Date: October 19, 2012**

11

12              I.        INTRODUCTION & STANDARD OF SUMMARY JUDGMENT

13          As the movant, Defendants bear the initial burden of demonstrating the absence of a

14   genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

15   L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of the suit under the

16   governing law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

17   L.Ed.2d 202 (1986). Only when the record, taken as a whole, could not lead a rational trier of

18   fact to find for the non-moving party, then summary judgment is warranted. *See Miller v.*

19   *Glenn Miller Prod., Inc..* Plaintiff's Response is being supported by the Declaration of James

20   McDonald and the Declaration of Charles Chong, as attached.  Plaintiff respectfully requests

21   the Court to consider his Motion for Summary Judgment and all material submitted therewith

22   in consideration of the Defendants' Third Motion for Summary Judgment.

23

24
*Plaintiff's Response to*
*Defendants' Third Motion for*                    1
*Summary Judgment*

H A   T H U   D A O ,   E S Q .
3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

## II.     BACKGROUND FACTS

At the risk of oversimplification, the Defendants' assertions can be summarized in this fashion: The subject Note was sold to Freddie Mac but Freddie Mac never took actual possession of it. Instead, the original IndyMac Bank, having sold the loan and the Note to Freddie Mac, retained servicing right until it was closed down in July of 2008. Through the receivership by the FDIC of the failed bank, and then FDIC's creation of IndyMac Federal Bank, then the FDIC's sale of IndyMac Federal Bank to Defendant OneWest, this servicing right morphed into the right to enforce not just the Note but also the Deed of Trust. Never mind all the places that the Note could have been, OneWest asserts that it has "constructive possession" through the Custodian, Deutsche Bank. What more, OneWest asserts that it is the "holder in due course" as defined by Washington Uniform Commercial Code and is fully qualified to foreclose upon the Plaintiff's homestead (Defendants Motion for Summary Judgment, Doc. 172, pp. 9-10) . These assertions are seriously called into doubt by the facts that actually occurred and verified as per Plaintiff James McDonald's Declaration, who contests not only the chain of transfer of the Note and Deed of Trust, but also the authenticity of the so-called original Note in defense counsel's possession:

1.     Defendant NWTS sent Plaintiff a Notice of Default ("NOD") dated January 12, 2010 (Exhibit 1, Notice of Default). In this document, NWTS declares that it is the agent of Defendant OneWest Bank who is the "Beneficiary (Note Owner)" under the Deed of Trust executed by the Plaintiff. Section L.2 of the NOD states without any reservations or qualifications whatsoever that, "The creditor to whom the debt is owed [is] OneWest Bank, FSB/OneWest Bank, FSB."

**H A   T H U   D A O ,   E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

2.      Discovery later reveals that Northwest Trustee was aware at the time it prepared the Notice of Default that OneWest was not the owner of the Note. This is confirmed by the Foreclosure Transmittal Package NWST received from OneWest, through their agent Lender Processing Services ("LPS") that Freddie Mac was the "investor". (Exhibit 3, Foreclosure Transmittal Package). Having been in the trustee business for over 20 years, NWTS must have been aware that it is industry custom that Freddie Mac would sell any notes that it purchases originally or acts as a guarantor for notes sold by lenders directly to a securitized trust rather than keeping it in their portfolio. The Deed of Trust Act and the Foreclosure Fairness Act of Washington require NWTS to ascertain the actual owner of the Note.

3.      Defendant OneWest attached/produced a Beneficiary Declaration in support of the foreclosure pursuant to *RCW 61.24.031* in which OneWest is again identified as the beneficiary. This Declaration, January 7, 2010, was signed by Erica A. Johnson-Seck (Exhibit 2, Beneficiary Declaration). Erica A. Johnson-Seck has been proven to sign hundreds and thousands of foreclosure documents for many different corporate entities under very important sounding titles all without any personal knowledge of the contents thereof.

4.      In the case of *IndyMac Fed. Bank v. Machado*, of Palm Beach County Circuit Court, Florida, Ms. Johnson-Seck admitted in her deposition that she has signed as Vice President of Defendant MERS even though she was not an employee of MERS, she didn't know where MERS was located or who its president was. Erica Johnson-Seck testified that she did not attend any corporate meeting and knew nothing about MERS' governance:

> Q. Why does MERS appoint you as a vice president or assistant secretary as opposed to a manager or an authorized agent to sign in that capacity?
> A. I don't know.
> Q. Why does MERS give you any kind of a title?
> A. I don't know.

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

3

**H A   T H U   D A O ,   E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

5.      Erica A. Johnson-Seck testified in the *Machado* case that she, and others employed by servicers and banks have signed thousands of foreclosure documents on behalf of various entities simultaneously. Ms. Johnson-Seck testified that she would spend no more than thirty seconds on each document to decipher who she is signing for but never read the document:

> Q. **Is it true that you don't read each document before you sign it**?
> A. **That's true**.
>                                              ******
> Q. Is it fair to say that you don't personally check the accuracy of anything in the documents that you're signing?
> A. Not, it's not clear that I don't check anything. The figures I don't, I do not check. We have a QC process around that used to be 100 per cent of the Affidavits of Debt and any figure for loans and bankruptcy, that have now been reduced to 10 percent because the errors were relatively low. **Now I pay, what I pay most attention to is the jurat and what entity I'm signing for, which is why I said 30 seconds instead of two seconds.**

(http://www.icelegal.com/files/Deposition_of_Erica_Johnson-Seck_Part_I & II.pdf)

6.      Lawyers for homeowners are not the only party skeptical of the integrity of foreclosure documents executed by Erica A. Johnson Seck. Judge Arthur Shack, of the Supreme Court of New York, Kings County, has become quite concerned over a very similar set of facts in the case of *OneWest Bank, FSB v Drayton*, 2010 NY Slip Op 20429 (Decided on 10/21/10). Judge Schack's opinion, attached herein, details the judge's strong reaction to the pattern of conduct exhibited by OneWest, its counsel and Erica Johnson-Seck.

7.      In addition to the doubtful nature of the integrity of representations made by Erica Johnson-Seck, it is also doubtful whether she herself has personally executed the documents where her name appears. In the public records of various counties in Washington as well as in other states, documents allegedly signed by Johnson-Seck for purposes of residential

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

4

**H A  T H U  D A O ,  E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1  foreclosure are countless. The Composite attached herein illustrates how Erica Johnson-Seck's

2  signatures so drastically from one document to another; this enormous variation appears

3  readily to the naked eye and does not require any expertise to detect (Exhibit 4, Composite of

4  Erica Johnson-Seck's documents found in public records).

5    8.    Defendant MERS executed and caused to be recorded in the King County

6  Public Records the Assignment of Deed dated January 27, 2010 (Exhibit 5, AOD). This AOD

7  bears the signature of one Brian Burnett as Assistant Vice President of MERS. In the course of

8  this litigation, Defendant OneWest has admitted that Brian Burnett is one of its employees and

9  not a corporate officer of MERS. In so admitting, OneWest produced in discovery a MERS'

10  Corporate Resolution to bolster the claim that Burnett had signing authority from MERS

11  corporate officer. However, the Corporate Resolution bears the date of August 19, 2010,

12  nearly seven months after the fact (Exhibit 6, MERS Corporate Resolution).

13    9.    In addition to the fact that Brian Burnett's act of signing of the AOD in this

14  case was taken *ultra vires*, the doubtful nature of documents submitted by OneWest for

15  purpose of foreclosure, including those executed by Brian Burnett is plain and has been noted

16  in the same opinion issued by Judge Schack. Moreover, in the case of *In Re: OneWest Bank,*

17  *FSB v Arizmendi,* BK Case 09-19263-PB13 (2011), Judge Fabre also notices Burnett's lack of

18  reliability. *Arizmendi* involves Burnett's swearing under penalty of perjury that OneWest was

19  the real party of interest. Judge Fabre ordered a show cause hearing and declared, "The Court

20  will not participate in a process where OneWest increases its profits by disobeying the rules of

21  this Court and by providing the Court with erroneous information."

22    10.    The AOD in this case represents that Defendant MERS transfers its own rights

23  under the Deed of Trust, "Together with note or notes therein described or referred to, the

24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

5

H A   T H U   D A O ,   E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

money due and to become due thereon, with interest and all rights accrued or to accrue under said Deed of Trust" to Defendant OneWest (Exhibit 5, AOD). By this plain language, anyone who reads it can only conclude that MERS actually owned the Note and held it prior to transferring it to OneWest.

11.     In the public records of King County, the Defendants caused to be recorded an Appointment of Successor Trustee (Exhibit 7, Appointment of Successor Trustee). This Appointment was executed by OneWest to confer upon NWTS the power of sale which resulted in the non-judicial foreclosure against Plaintiff's home. The Appointment, dated January 27, 2010, was signed by Suchan Murray on behalf of OneWest. The Appointment contains, *inter alia*, OneWest's warranty and assurance that: "The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, **it is the owner and holder of the obligation secured by the subject deed of trust**".

12.     Like the other signers involved in the instant case, Ms. Murray's sworn statements have been repeatedly called in question. In the case of *In re Telebrico*, Ch. 13 Case No. 10-07643-LA13 (Bankr. S.D. Cal.), Judge DeCarl Adler commented on the reliability of Murray's declaration concerning OneWest's interest in a foreclosure proceeding. Murray's declaration and OneWest's conduct in the case resulted in a show cause hearing, following which the judge concluded that "One West provided evidence that was either intentionally or recklessly false."

13.     Defendant NWTS caused for a copy of the Notice of Trustee Sale ("NOT") to be sent to Plaintiff advising that Plaintiff's homestead was going to be auctioned in front of Northwest Trustee's office on May 10, 2010. The NOT was recorded in the public records of

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

6

**HA THU DAO, ESQ.**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

King County under instrument number 20100216001242.  This NOT listed Plaintiff as "Julie B. McDonald, a single man." The NOT repeats that Defendant MERS was the Beneficiary under the Deed of Trust who assigned the beneficial interest to OneWest (Exhibit 8, Notice of Trustee Sale).

14.     The figures of amount due and owing listed in the NOT include various fees charged by defendant NWTS which are entirely unsubstantiated. In addition, the amount stated as the arrearages appear to have been inflated. The NOT was signed by Vonnie McElligott as an employee of NWTS. Vonnie McElligott has been sued personally in the case of *Mickelson v. Chase Home Finance*, 2:11-cv-01445, Western District of Washington, Seattle Division, for her act of signing as an officer of MERS while being employed by Defendant NWTS.

15.     Defendant NWTS subsequently caused for the Amended Notice of Trustee Sale ("ANOTS) to be sent to Plaintiff and recorded in the public records of King County under Instrument number 20101104001321 on November 4, 2010. This ANOT advises Plaintiff of another sale date of December 10, 2010 (Exhibit 9, ANOTS). The grantors in this ANOTS are listed as Defendant NWTS and Defendant OneWest Bank. **Again, the ANOTS reiterates that MERS, as Beneficiary, assigned its beneficial interest together with the note or notes to OneWest**. Just like the prior NOT, this document appears to contain inaccurate figures of amounts due and owing. The Trustee's Fee went inexplicably from $725 to $508. The "posting fee" on the other hand went from $70 to $136.92. The ANOTS contains a "sale cost" of $500 where the sale had not even occurred.

16.     Due to Plaintiff's background of being an employee of IndyMac Bank, his ability to detect fraud, and due to the well-documented and well-publicized incidents of foreclosure fraud, before this lawsuit was filed, Plaintiff made written inquiries to OneWest,

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

H A   T H U   D A O ,   E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   MERS, and NWTS. Plaintiff sent a Qualified Written Request ("QWR"), a Dispute

2   ("Dispute") of Debt, and a Debt Validation Demand ("DVD") (Exhibit 10, QWR, Dispute,

3   DVD) to all defendants on April 27, 2010, via prepaid, certified return receipt requested mail.

4   Plaintiff received confirmation that these documents were received by Defendants and he

5   recorded a copy of the QWR, Dispute and DVD in the public records of King County to

6   provide notice to anyone, including the actual owner of the Note and the actual beneficiary of

7   the Deed of Trust. Plaintiff also received Responses from the Credit Reporting Agencies

8   (Exhibit 26, Composite Credit Reporting Agencies Responses).

9        17.    Defendant MERS failed to respond to Plaintiff's inquiry. Defendant NWTS, on

10   the other hand, responded with a letter signed by Jeff Stenman, as Foreclosure Manager,

11   promising that NWTS would investigate. (Exhibit 11, Stenman's Letter)  In discovery,

12   Plaintiff learned NWTS was completely dismissive of Plaintiff's inquiry. Vonnie McElligott

13   made a mockery of Plaintiff's inquiry and referred to his request as "… internet stuff."

14   (Exhibit 12, Excerpt of Northwest Trustee's Notes after redaction by Heidi Buck). In

15   juxtaposing what Jeff Stenman said in the letter and what Vonnie McElligott marked in the

16   file, it is clear that NWTS never intended to respond to Plaintiff's inquiry in the manner

17   required by law.

18        18.    Defendant OneWest partially responded to Plaintiff by sending him a letter

19   dated May 18, 2010 (Exhibit 13, May 18, 2010 Letter). In this letter, OneWest claimed that

20   Freddie Mac is the "investor" of Plaintiff's loan. There was no documents or explanations

21   provided by OneWest in support of this short-handed revelation. The explanation that Freddie

22   Mac is an investor is unsatisfactory as an investor is: "A person who makes investments. An

23   investor may act either for him or herself or on behalf of others. A stock broker or mutual fund

24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

8

manager, for instance, makes investments for others who have entrusted that person with their money."[1] Despite Plaintiff's direct inquiry, OneWest refused to provide documents called for by the QWR. OneWest failed to identify the owner of the Note or provide any of the requested answers/items.  In short, OneWest failed to validate the debt that it was seeking to collect from Plaintiff as required by law and properly address the QWR.

19.    Once told that Freddie Mac is involved in Plaintiff's loan, Plaintiff went on Freddie Mac's website and reviewed Freddie's explanations: "Securitization is a process by which we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in the global capital markets, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend." These explanations are consistent with Freddie Mac's role as a GSE.

20.    On its website, under the Single Family Credit Guarantee Section, third paragraph down, Freddie Mac continues: "When a family stops making payments-often due to loss of income-Freddie Mac steps in and makes those payments to securities investors. Managing this risk, known as credit risk, is how we generate revenue. Each time we fund a loan, we collect a credit guarantee from the lender selling us the loan. This fee is intended to protect us in case of loan default." Based on these explanations, it follows logically that the entity possessing the beneficial interest under the Deed of Trust, whoever it is, is fully insured of its investment and the promised returns. It further follows logically that once Freddie Mac "steps in and makes those payments to securities investors", there is no default and the power of sale under the deed of trust is not invoked. Freddie Mac's representations, made for public

---

[1] http://www.nolo.com/dictionary/investor-term.html

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

9

**H A   T H U   D A O ,   E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    consumption, are reliable and consistent of its role as a guarantor, rather than the "investor" or

2    "owner" of the mortgage loan. (Exhibit 29, printout from Freddie Mac's website).

3          21.    OneWest has submitted two Declarations of Charles Boyle in support of its

4    previous motions for summary judgment which contradicts this very basic information

5    provided by Freddie Mac. Mr. Boyle indicated in his Declaration that "**Freddie Mac has**

6    **remained the investor and owner of the Note**." (Exhibit 14, Composite of Declarations of

7    Charles Boyle). However, the veracity of Mr. Boyle's declaration has been questioned in many

8    other judicial proceedings in which OneWest acts as the foreclosing entity. In particular, Mr.

9    Boyle's statements, made under the "penalty of perjury", have been the subject of scrutiny by

10   Judge Fabre in *Arizmendi, supra.*

11         22.    Mr. Boyle's claim that he has reviewed the files and documents relating to

12   Plaintiff's loan is simply not credible given how he appears to simply parrot the language, and

13   not having access to the actual file, or the actual personal knowledge of its contents.  In the

14   case of *Doble v. Deutsche Bank Nat'l Trust Co. (In re Doble)*, 2011 Bankr. LEXIS 1449

15   (Bankr. S.D. Cal. Apr. 14, 2011), both the conduct of OneWest and the testimony of Charles

16   Boyle in a show cause hearing led the court to conclude that they are "neither candid nor

17   credible".  *In re Carter*, Ch. 13 Case No. 10-10257-MM13 (Bankr. S.D. Cal.) (Show cause

18   concerning declarations by Brian Burnett and Charles Boyle). *In Re Telebrico* Bk. No. 10-

19   07643-LA13 (Show cause concerning Suchan Murray and  OneWest's conduct where judge

20   held that  "One West provided evidence that was either intentionally or recklessly false.")

21         23.    Plaintiff caused for subpoena *duces tecum* to be served on Deutsche Bank,

22   National Trust Company ("Deutsche"), because Deutsche was identified as the Custodian of

23   records in the Custodian Agreement produced by Defendant OneWest. In response, Deutsche's

24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

10

counsel wrote a letter in which he indicated that Deutsche has "acted as the Custodian for several trusts, of which these loans were a part of." It would appear that since Plaintiff's loan was part of a securitized trust, Freddie Mac does not "own" it and Freddie Mac is not the "investor" as claimed by OneWest (Exhibit 15, Letter from Deutsche's counsel).

24.     Additionally, the same material provided by Deutsche list both OneWest and Freddie Mac as "servicers". The Complete Loan File Information provided by Deutsche specifies that Plaintiff's loan is part of subpool IN070227. A subpool is a smaller group of loans which is a part of the pool of loans belonging to a mortgage-backed securitized trust. Since Plaintiff's Note was sold into a trust by Indymac Bank, FSB in February of 2007, there was no possibility that Freddie Mac was either the "investor" or "owner".

25.     The second page of Complete Loan File Information shows an itemized list of documents received by Deutsche as the Custodian of Records. These include the Initial Loan Review on January 16, 2007; the Mortgage (Deed of Trust); the Title (Lender's Title Policy) associated with the property dated April 9, 2007. However, **the Note is not listed on this list.**

26.     The Complete Loan File Information shows that the Loan File was not obtained by OneWest until October 6, 2010. This information renders OneWest's statement mde by defense counsel, Heidi Buck, of Routh Crabtree Olsen, that "… the Note has been held by the Custodian since on or about May 12, 2009" entirely disingenuous (Doc. 121, page 3 of 41).

27.     Plaintiff requested from Freddie Mac, via subpoena *duces tecum,* information specific to his loan. In an email from Michael J. Henderson, counsel for Freddie Mac, it was indicated that Plaintiff's loan "was in security pool 1J1527." (Exhibit 16, Email from Henderson). Material provided by Freddie Mac also confirms that Plaintiff's loan was sold by IndyMac Bank, FSB to a mortgage backed security in February of 2007 and its CUSIP number

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*     11

HA THU DAO, ESQ.
3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1  is 3128NHVU4 (Exhibit 17, Pool Information). CUSIP stands for "Committee on Uniform

2  Securities Identification Procedures". CUSIP numbers are assigned to facilitate the clearing

3  and settlement process of securities. www.sec.gov/answers/cusip.htm. These specific

4  identifiers confirm that Plaintiff's was sold into a mortgage-backed securitized trust as early as

5  2007. Therefore, only this specific securitized trust or its certificate holders who have the

6  beneficial interest of Plaintiff's loan, and only upon proof that their investment was defaulted

7  can they seek to foreclose as beneficiary under the Deed of Trust.

8       28.    Despite discoverable and plain facts, OneWest continues to submit documents

9  perpetuating the myth that Freddie Mac owns Plaintiff's loan. Defendant OneWest submitted a

10  Declaration by JC San Pedro in opposition to preliminary injunction in which, declaring under

11  penalty of perjury and upon personal knowledge, San Pedro states that "Freddie Mac is the

12  investor on the Loan, and prior to March 2009, IndyMac serviced the loan for Freddie Mac."

13  (Exhibit 18, San Pedro's Declaration).

14       29.    On or about April 28, 2010, Plaintiff caused for his Notice of Objection to

15  Trustee Sale to be sent via certified mail to Defendant NWTS and Defendant OneWest; neither

16  one of these entities responded to his Objection, including the request to cease all collection

17  activities until the debt has been fully validated.

18       30.    On or about June 29, 2010, Plaintiff sent a letter to all three credit reporting

19  agencies, Experian, TransUnion and Equifax, disputing the reporting by OneWest as the

20  "creditor" of Plaintiff's mortgage loan, as well as OneWest (Exhibit 19, FCRA Dispute

21  Letter). OneWest did not respond to Plaintiff's dispute. All three credit reporting agencies

22  advised Plaintiff they had communicated with OneWest, yet none of the false information had

23  been removed or altered and remains false to this day.

24  *Plaintiff's Response to Defendants' Third Motion for Summary Judgment*   12

HA THU DAO, ESQ.
3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1          In summary, the facts show that the documents utilized by the Defendants in the

2   foreclosure pre-litigation directly contradict their representations in this Motion. OneWest was

3   the "owner" of the Note in the Notice of Default (Exhibit 1, NOD) and Appointment of

4   Successor Trustee (Exhibit 7, AOST ) or when MERS purportedly transferred the Note to

5   OneWest in the Assignment of Deed of Trust (Exhibit 5, AOD).  This creates an issue of

6   material fact rendering summary judgment inappropriate.

7          The information obtained in discovery after the case was filed casts doubt on the

8   Defendants' current claim that the Note has always been with the Custodian. The material

9   provided by the Custodian of Records does not show that the Note was included with the

10  original Loan File. This creates an issue of material fact rendering summary judgment

11  inappropriate.

12                          **III. Legal Arguments**

13  **Defendants cannot proceed with foreclosure under the Washington Deed of Trust Act as
    because of the Plaintiff's resistance and litigation**

14

15         Plaintiff has in fact established that Defendants conspired to violate the Washington

16  DOTA by improperly initiating and then perpetuating a non-judicial foreclosure that they did

17  not have the right to do, *i.e.,* that they did not have standing or status of the real party in

18  interest in order to commence and complete the process. Specifically, Plaintiff has asserted

19  that MERS did not have standing to assign the Deed of Trust down line because it never held

20  the Note, never owned the loan, and never received any part of Plaintiff's mortgage payment.

21  This contention is fully supported by *Bain v. Metro. Mortg. Grp. Inc.,* 175 Wn.2d 83 (2012)

22  (The "beneficiary" of a deed of trust is the lender who has loaned money to the homeowner).

23  RCW 61.24.030(3) states that a default is a prerequisite to starting a nonjudicial foreclosure.

24

*Plaintiff's Response to
Defendants' Third Motion for
Summary Judgment*

13

1    Since Plaintiff did not owe MERS any money, Plaintiff's default did not pertain to MERS and

2    the foreclosure should not have been initiated. Addtionally, Plaintiff has enumerated the

3    violations and has made references to the documentary proof in support of each violation.

4    Having been unable to dispute the evidence put forth by Plaintiff, Defendants simply chose to

5    mislead the Court by labeling Plaintiff's claim as one for "wrongful foreclosure."

6            It is simply not true that if the Plaintiff's home has not been sold, there is no resulting

7    damage. The minute that the Defendants commenced foreclosure, Plaintiff's home was put

8    into the "foreclosure lists" where realtors and investors hunt for bargains. This translates into

9    immediate loss of value. The United States Supreme Court recognized that properties tainted

10   by foreclosure simply worth less. *BFP v. Resolution Trust Corp.*, 114 S.Ct. 1757, 511 U.S.

11   531, 128 L.Ed.2d 556 (1994);  *Albice v. Premier Mortg. Servs. of WA Inc.,* 239 P.3d 148

12   (2011).  The loss suffered by Plaintiff started with the threat of foreclosure and recording on

13   the public records the notices of trustee sale.

14           On at least two recent occasions, Washington courts have offered remedies in addition

15   to those prescribed by *RCW 61.24.130* to owners facing wrongful foreclosure. First, in *Olsen*

16   *v. Pesarik*, 118 Wn. App. 688, 684 77 P.3d 385 (2003);  the court clarified that the DOTA

17   permits a borrower to file an action to "assert an offset of the debt that is the basis of the non-

18   judicial proceeding" and "that a timely action filed in Superior Court was the only proper

19   means by which the Olsen's could assert any defenses to the non-judicial foreclosure".

20   Second, the Washington Supreme Court held that a trustee violated its duties, it sacrificed the

21   homeowner's equity. *Albice, supra*. Plaintiff has lost equity and property value in his home,

22   incurred attorney's fees and costs, and suffered negative credit reporting and rating. Plaintiff

23

24

*Plaintiff's Response to*
*Defendants' Third Motion for*            14
*Summary Judgment*

1   has also suffered physical and emotional distress from the Defendants' interference with his

2   title.

3        The damages suffered by the Plaintiff are not the only damages caused by the

4   Defendants. The *Bain* court has already determined that MERS is involved in an enormous

5   number of mortgage loans in the State and in the country. By unlawfully assign interests that it

6   did not have, and recording these assignments of deed of trust *en masse*, MERS has assailed

7   the integrity of Washington land titles system. Moreover, NWTS, whose appointment to be

8   successor trustee in hundreds of nonjudicial sales in Washington, rests entirely on the unlawful

9   MERS assignment, is an accomplice in this deceptive practice. The Court is reminded that the

10  only reason why Plaintiff's house has yet been sold is because he fought back and demanded

11  that the Defendants prove their authority to foreclose and not the result of the Defendants'

12  sensible or legal conduct. Therefore, the Defendants' claim of no harm no foul is not just

13  arrogant, but made in total disregard for the suffering of distress homeowners. If this were true,

14  the Defendants can simply initiate foreclosure only to discontinue when met with resistance,

15  and resume until the homeowners no longer have any resources left to challenge their action.  a

16        The citations relied upon by Defendants have been expressly rejected or qualified by

17  the *Bain* court. Id., note 14, holding that *Vawter v. Quality Loan Servicing Corp. of Wash*., 707

18  F.Supp.2d 1115 (W.D. Wash. 2010), is not helpful because it "mentions *RCW 61.24.005(2)*

19  once, in a block quote from an unpublished case, without analysis." *Krienke v. Chase Home*

20  *Finance, LLC, Pfau v. Washington Mutual Inc.,* and *Henderson v. GMAC Mortgage Corp*., are

21  all unreported opinions and do not constitute controlling authority. *Bain, supra., In re Elliott,*

22  74 Wash.2d 600, 446 P.2d 347 (1968).   If the Court does not curb the Defendants' practice of

23

24

H A   T H U   D A O ,   E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1  initiating foreclosure without proper legal authority or standing to do so, the system integrity

2  of lands title records and the judiciary will be seriously damaged.

3  **OneWest does not have standing to enforce the Note and foreclose under the Deed of Trust**

4  It is worth repeating that OneWest, after repeating *ad nauseam* that it was the owner and

5  holder of the Note, is now forced to concede that it only came into the transaction as a servicer.

6  It is also worth repeating that OneWest had earlier relied upon the MERS Assignment of Deed

7  of Trust entirely for its authority to foreclose but changed its position to the current statement

8  that its authority to foreclose is derived from its status as holder of the Note. OneWest's prior

9  and present positions cannot be reconciled either in fact or in law.

10  It is clear from the documentary evidence in this case that the Defendants can't walk back

11  to all the actions they had taken prior to Plaintiff's filing this lawsuit. First and foremost,

12  MERS executed and recorded the Assignment of Deed of Trust transferring the beneficial

13  interest under the Deed of Trust, "Together with note or notes therein described or referred to,

14  the money due and to be come due thereon, with interest, and all rights accrued or to accrue

15  under said Deed of Trust." The MERS assignment was made on January 27, 2010. The MERS

16  Assignment, recorded in the public records of King County, at face value, renders  defense

17  counsel's statement that "OneWest has been in possession of the Note and therefore the holder

18  since on or about March 19, 2009, and the Note has been held by the Custodian since on or

19  about May 12, 2009" completely bogus (Doc.172, p. 3). All evidence relied upon by counsel

20  in support of her statement that OneWest has been in possession of the Note since on or about

21  March 19, 2009, similarly conflict with the MERS Assignment. The conflicts suffice to defeat

22  summary judgment.

23

24

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

16

**H A   T H U   D A O ,   E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    Defense counsel's representation to the Court that "OneWest has been in possession of the

2    Note and therefore the holder since on or about March 19, 2009, and the Note has been held by

3    the Custodian since on or about May 12, 2009" needs further examination. This statement

4    carries great import because it is made by an officer of the court and it is filed with the court

5    for its determination of the controversy. Counsel made this statement relying on Charles

6    Boyle's Declaration; the same Mr. Charles Boyle that has been deemed by several courts to be

7    an unreliable witness. Summary judgment is premature because Mr. Boyle's declarations must

8    be tested at trial via cross-examination.

9    Defense counsel represents to the Court in this Motion that OneWest "qualifies as a

10   holder-in-due-course" because " after the Plaintiff's Note was sold to Freddie Mac, Indymac

11   Bank, FSB retained the servicing rights and serviced the loan on behalf of Freddie Mac.

12   IndyMac Bank FSB was closed by the Office of Thrift Supervision ("OTS") in July 2008, and

13   the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. IndyMac

14   Federal Bank ("IMFB") was created and the FDIC was appointed Conservator, and on March

15   19, 2009, the FDIC was appointed as Receiver for IMFB and sold most of the assets including

16   the rights to service the loan presently at issue to OneWest Bank, FSB. Thus, under the federal

17   holder-in-due-course doctrine, as a subsequent holder following the FDIC, OneWest is a

18   holder-in-due-course." This legal analysis is unsound as it equates the transfer of the servicing

19   right applicable to a servicer such as OneWest, to the ownership right and ability to enforce

20   that a real party in interest possesses. This factual and legal leap demonstrates that summary

21   judgment is inappropriate. Further, while acknowledging that a HIDC must take in good faith

22   and for value, OneWest, just like MERS, has never paid anything for the Note. §§ 62A.3-

23   302(a)(2), -305.

24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

17

H A   T H U   D A O ,   E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   OneWest's predecessors were also not holders in due course. Taking the Defendants'

2   representation that Indymac Bank, FSB sold the Note as part of a trust on or about February

3   27, 2007, as true, the Note was no longer a part of the receivership by the FDIC, or passed via

4   the FDIC's sale of IndyMac Federal Bank. Under the scenario suggested by the Defendants at

5   the present, the certificate holders of the securitized trust, who took in good faith, and paid

6   value, would qualify as the holder in due course, not any of the named defendants.

7   **OneWest does not qualify as "holder" and has failed to show how "constructive**
    **possession" of the Note would give it entitlement to enforce the Note and foreclose on the**

8   **Deed of Trust**

9   OneWest's counsel went on to assert that OneWest is entitled to foreclose upon

10  Plaintiff's homestead because it is the holder of the promissory note. This claim is contradicted

11  by another claim made by the Defendants, and that that is OneWest had only "constructive

12  possession." The exact statement is "as the Note is endorsed in blank, and OneWest is

13  currently in possession of the Note and has been at all times in actual possession or

14  constructive possession through the Custodian, OneWest is entitled to enforce the Note." (Doc.

15  172, p. 10).  The illogic of this statement is clear. Only one part of this statement can be true. If

16  OneWest only had constructive possession through the Custodian, and acquired possession

17  only for purpose of litigation, then OneWest is not the holder of the Note. If OneWest was in

18  actual possession at all times, then the Custodian's role is superfluous because the Custodian

19  never had possession of the Note. Additionally, if OneWest requested possession of the Note

20  because litigation necessitated it, then OneWest did not have holder status at the time that the

21  foreclosure was initiated against the Plaintiff.

22  OneWest cites to *RCW 62A.3-301* in support of its contention that OneWest need not

23  own the Note to enforce it. However, *RCW 62A.3-301* still requires PETE (Person Entitle To

24

*Plaintiff's Response to*
*Defendants' Third Motion for*      18
*Summary Judgment*

**H A   T H U   D A O ,   E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    Enforce) to be: 1) the holder of the instrument, 2) a nonholder in possession of the instrument

2    who has the rights of a holder, or 3) a person not in possession of the instrument who is

3    entitled to enforce the instrument under circumstances of lost or destroyed note. OneWest's

4    reliance on *RCW 62A.3-301* does not resolve its unarticulated claim of holder status, which is a

5    prerequisite for enforcement.

6          OneWest's claim of constructive possession rests on the Freddie Mac Servicing Guide

7    (Exhibit 23, Freddie Mac Servicing Guide) and the Custodial Agreement (Exhibit 24,

8    Custodial Agreement). The problem with the documents relied upon by OneWest is the

9    Freddie Mac Servicing Guide is only a guide and not an actual agreement between Freddie

10   Mac and OneWest. As to the Custodial Agreement that exists between Freddie Mac and the

11   Custodian, Deutsche Bank, the evidence produced by Deutsche Bank in discovery however

12   failed to substantiate OneWest's claim that the Plaintiff's Note was maintained by Deutsche

13   Bank as custodian for Freddie Mac. (Exhibit 16, Letter from Deutsche's counsel).

14         The Defendants have attempted to mislead the Court by referring to the Custodial

15   Agreement for support of OneWest' claim that the Document Custodian, Deutsche, holds

16   Notes for OneWest's benefit. However, Section 2.g of the Custodial Agreement furnished by

17   the Defendants clearly states, "Seller/servicer shall hold in trust and *for the sole benefit of*

18   *Freddie Mac* all Notes released to it." Yet, this Custodial Agreement may not be pertinent to

19   the subject transaction at all as IndyMac did not sell the Note to Freddie Mac but to a

20   securitized trust.  Therefore, one must ask, w*hat, if any, right that Freddie Mac has*

21   *concerning Plaintiff's Note.*

22         In discovery, Defendants have produced no executed servicing agreement despite

23   Court Order to do so (Exhibit 22, Defendants' Response to First Request for Production).

24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

19

H A   T H U   D A O ,   E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   (Doc. 136) . Defendant OneWest referred to a link to the supposed servicing agreement

2   between OneWest and Freddie Mac. However, this "link" was a broken hyperlink to the

3   Freddie Mac Servicing Guide (Exhibit 25, Response to Request to Produce 3).

4    Servicing Guide Ch. 50-2 (Exhibit 23) provides two relevant pieces of information.

5   First, it identifies that only loans purchased by Freddie Mac apply to the Servicing Guide.

6   Second, it states that a Master Servicing Agreement would exist between Freddie Mac and any

7   other entity utilizing the Guide for direction. OneWest could not identify a Master Servicing

8   Agreement. There is no evidence to support OneWest's claim that it is in fact the servicer for

9   the mortgage pool containing Plaintiff's loan. OneWest could not produce any records of

10  payments it received from the pool for servicing Plaintiff's loan. These are evidence that

11  militate against Defendants' claims of holder status, ownership, and right to enforce and render

12  summary judgment inappropriate.

13   In *Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.,* 893 F.Supp. 1304, 1314

14  (D.S.C.1994), a case relied upon by the Defendants,  the court stated, "In order to find

15  constructive delivery, the transferor must deliver the note with the unmistakable intention of

16  transferring title to the instrument."  OneWest, as a servicer, would never need to obtain

17  physical possession of the Note unless possession is required in litigation. Therefore, if

18  Freddie Mac, which is claimed by OneWest to be the real owner, relinquished possession to

19  OneWest, it would have done so only for the temporary purpose of litigation, and not with the

20  "unmistakable intention to transfer title" to OneWest. *Corporacion Venezolana de Fomento v.*

21  *Vintero Sales Corp.*, 452 F. Supp. 1108, 1117-1118 (S.D.N.Y. 1978) ("The essential ingredient

22  of a constructive delivery is that it be made with the unmistakable intention of transferring title

23  to the instrument."); *Russell v. Maxson Sales Co*., 591 P.2d 703, 706-707 (Okl. 1979) (No

24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

20

HA THU DAO, ESQ.

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1  evidence of an intention to transfer title to constitute constructive possession). The point that

2  OneWest's status as a PETE is a vicarious one is well-taken. If the original of a bearer note is

3  entrusted to an attorney simply for purpose of litigation, does possession by the attorney make

4  him a holder, can he enforce it for his benefit? Clearly, the note owner would say no.

5      If we are to accept the fact that OneWest is acting as a agent for purpose of resolving

6  default and conducting foreclosure, its status as a PETE is a vicarious one. The question

7  naturally arises is who is OneWest's principal? If OneWest is the agent for Freddie Mac, it

8  breached the duty of loyalty because it knew of the Assignment of the Note and Deed of Trust

9  effectuated by MERS, received the interest via such Assignment which had the effect of

10  divesting its principal of ownership interest of the Note and right under the Deed of Trust. In

11  fact, OneWest prosecuted the foreclosure in its own name and concealed the identity of

12  Freddie Mac. Defense counsel discloses that MERS is an agent of OneWest (Doc. 172, p. 45).

13  Under these facts, OneWest' conduct not only conflicts with but is detrimental to Freddie

14  Mac's interest.

15      Washington UCC *§62A.9A-318* explains that a seller of accounts, chattel paper,

16  payment intangibles or promissory notes, looses all "legal or equitable interest" in the object

17  sold and retains nothing: "The fact that a sale of an account or chattel paper gives rises to a

18  'security interest' does not imply that the seller retains an interest in the property that has been

19  sold. To the contrary, a seller of an account or chattel paper retains no interest whatsoever in

20  the property to the extent that it has been sold." *Official Comment 2.*

21      **OneWest's claim to be the Beneficiary under the Deed of Trust is fatally flawed**

22      When IndyMac Bank sold Plaintiff's loan to a securitized trust in 2007, as we now

23  know, IndyMac Bank had nothing left to transfer. *In Re Smoak,* 461 B.R. 510, 515 (Bankr.

24

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*   21   **HA THU DAO, ESQ.**
3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

S.D. Ohio 2011) ("[A PSA] is an agreement creating a trust that defines the terms under which promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and related loan documents were transferred by and between the parties to the trust, and sets forth various responsibilities of the parties to the trust. The promissory notes, mortgages or deeds of trust and related loan documents are the trust res. **Through the securitization process, the beneficial or ownership interests in the trust are held by investors.")** *Emphasis added; Kain v. Bank of New York Mellon,* 2012 Bankr. LEXIS 1406 (D.S.C. 2012) (same)*; Kemp v. Countrywide Home Loans,* 440 B.R. 624 (D.N.J. 2010) *; U.S. Bank v. Ibanez,* 458 Mass. 637 (2011).

Defendants now admit that but for the Plaintiff's filing the lawsuit, their fraud would have gone unnoticed and the foreclosure sale would have taken place: "**Defendants OneWest and MERS concede that any purported transfer of an interest in the Note by the MERS assignment of deed of trust was ineffective as, pursuant to the U.C.C., a negotiable instrument may be transferred through endorsement and delivery**." (Doc. 172, p. 17). This concession proves without a doubt that the lawyers and their clients, NWTS, MERS and OneWest, knew all along that MERS has been acting unlawfully, not due to any change or clarification in the law, but simply based on the fact that the UCC requires delivery and endorsement of the note. This concession should give the Court pause as it comes from the same law firm that represents NWTS as the successor trustee in hundreds of foreclosures. The lawyers and their clients knew that it was wrong to allow MERS to pose as a lawful beneficiary but they did it anyway? Who would have guessed? The admission that the MERS Assignment was unlawfully executed and recorded means that NWTS had no power to act as successor trustee and the entire domino falls.

**H A   T H U   D A O ,   E S Q .**

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

The biggest glaring problem with the Defendants' scheme to foreclose upon Plaintiff's homestead is, despite the Defendants' considerable efforts to pretend that Freddie Mac is the "investor" or "owner", Freddie Mac flat out denied owning the Plaintiff's loan but provided information that the loan was sold into a pool or mortgage loans, also known as a securitized trust. The identification of this securitized trust remains unknown. (<u>Exhibit 16, Email from Henderson), (Exhibit 17, Pool Information</u>). These conflicts are too great for the Court to overlook in its consideration whether to grant summary judgment.

### Defendants have engaged in unfair and deceptive business practices in violation of the Washington Consumer Protection Act

**Defendant NWTS** has engaged in unfair and deceptive business practices in violation of *RCW 19.86.020*, including but not limited to:

a.      Failing to observe plain inconsistencies of the documentary proof utilized in the foreclosure of the Plaintiff's property;

b.      Failing to ascertain the claims of Beneficiary status made by MERS and OneWest and failing to ascertain the accuracy of the Beneficiary Declaration;

c.      Commencing and advancing the trustee sale in a manner that favors MERS and OneWest in total disregard for the Plaintiff's right in violation of the good faith requirements of the Deed of Trust Act.

d.      Commencing and advancing the foreclosure process in disregards of the statutory requirements of the Deed of Trust Act;

d.      Utilizing documents clearly executed by robo-signers in order to foreclose;

e.      Failing to observe robo-signing and the lack of substance in the MERS Assignment of Deed of Trust and Appointment of Successor Trustee when the defects are

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

23

1   clearly observable without any discovery or expertise;

2       **Defendant MERS** has engaged in unfair and deceptive business practices in violation

3 of *RCW 19.86.020*, including but not limited to:

4       a.  Purporting to transfer interest that it did not have in the Deed of Trust repeatedly

5           throughout the State of Washington;

6       b.  Purporting to transfer the Note when it never owned or held the Note in this case

7           and in other cases via assignments of deed of trust;

8       c.  Utilizing robo-signers to execute documents to foreclose upon Plaintiff's home.

9       d.  Allowing individuals who neither work for MERS nor are MERS' corporate

10           officers to execute documents under important sounding titles such as Assistant

11           Secretary and Assistant Vice President in order to transfer legal interests that

12           MERS does not have;

13       The Supreme Court in *Bain v. Metropolitan Mortg. Group, supra*, held absolutely that

14 "characterizing MERS as the beneficiary has the capacity to deceive and thus," meets the first

15 element of the CPA. The second element, public impact, is also met because "there is

16 considerable evidence that MERS is involved with an enormous number of mortgages in the

17 country (and our state), perhaps as many as half nationwide." *Id.* at 117. The final element,

18 injury, according to the *Bain* court, is met if, "there have been misrepresentations, fraud, or

19 irregularities in the proceedings, and if the homeowner-borrower cannot locate the party

20 accountable and with authority to correct the irregularities." This is what has happened in this

21 case. These elements are what the *Bain* court referred to as "disputed" elements.

22       The disputed elements of the CPA have been met in this case because the Defendants

23 have in fact been: 1) characterizing MERS as the lawful beneficiary in order to deceive the

24

*Plaintiff's Response to Defendants' Third Motion for Summary Judgment*

24

1    Plaintiff and other borrowers; the MERS Assignment transferred not only the beneficial

2    interest under the Deed of Trust but also the right to payments under the Note; 2) violating the

3    Deed of Trust Act via irregularities in the foreclosure proceedings; 3) obfuscating the identity

4    of the Note Owner and Beneficiary'; 4) impeding the Plaintiff's effort to obtain a loan

5    modification that reflects not only his current financial conditions but also the Net Present of

6    the Property. The enormous volume of mortgage transactions involving MERS is indisputable

7    and the public impact based on this volume is similarly undeniable.

8         The Defendants do not dispute that their pattern of conduct is deceptive; they simply

9    argue that there is no resulting damages because their deceptive conduct is incapable of

10   producing harm. Defendant counsel boldly asserts: "It is unclear how a representation of who

11   owns the underlying loan constitutes a cloud on title." (Doc.172, p. 37). This statement ignores

12   the hundreds and thousands of assignments of deed of trust, appointments of successor trustee,

13   trustee's deeds and other documents that the Defendants have deliberately placed into the

14   public records which cannot be withdrawn. A foreclosure sale that was conducted in violation

15   of the law is void *ab initio* and can be set aside at any time. The injury inflicted by the

16   Defendants is not confined to the Plaintiff but will be felt by the public for many years to

17   come.

18        Defendants' rhetorical question on the impact and extent of their conduct demonstrates

19   either a complete ignorance or arrogance for the pain that is felt by those who have lost their

20   homes, those who are fighting to keep their homes, and for those who are a paycheck away

21   from losing their homes. The resulting harm, as felt by the Plaintiff, can be described by him at

22   trial and not summarily disposed of in the manner described by defense counsel. Summary

23   judgment, once again, is not appropriate at this juncture.

24

*Plaintiff's Response to*
*Defendants' Third Motion for*            25
*Summary Judgment*

H A   T H U   D A O ,   E S Q .

3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

## IV. CONCLUSION

Plaintiff respectfully requests the Court to consider, in addition to this Response and Objection, all matters presented in his counter Motion for Summary Judgment, and conclude that summary judgment should not be granted in favor of the Defendants as there exists a number of issues of material fact rendering the case appropriate for trial.

DATED this 15th day of October, 2012.


/s/ Ha Thu Dao
_____
HA THU DAO, WSBN 21793
Counsel for the Plaintiff
3501 Rucker Ave, Everett WA 98201
Phone 727-269-9334
Fax 727-264-2447
Email: hadaojd@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify on October 16th, 2012, the foregoing document will be served via _X__First Class Mail ___Priority Mail, __Messenger Service ___Facsimile __Electronic Mail__X__ECF,  upon the following parties:

Heidi Buck, Attorney for Defendants
Routh Crabtree Olsen
13555 SE 36th Street, Ste 300, Bellevue WA 98006
425-213-5534/Fax 425-458-2131
hbuck@rcolegal.com


/s/ Ha Thu Dao

_____
Ha Thu Dao, WSBA 21793

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

*Plaintiff's Response to*
*Defendants' Third Motion for*
*Summary Judgment*

27

**HA THU DAO, ESQ.**
3501 RUCKER AVE, EVERETT, WA 98201
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com