The Honorable Robert S Lasnik

**UNITED STATES DISTRICT COURT,**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| **James McDonald**<br>                                                    **Plaintiff**<br><br>                              **v.**<br>**OneWest Bank, FSB,**<br>**Northwest Trustee Services,**<br>**Mortgage Electronic Registration Systems,**<br>                                                **Defendants.** | No. **C10-1952-RSL**<br><br>Plaintiff's Response to Defendants'<br>Motion *In Limine* |

## I.    <u>Introduction</u>

**Defendants** collectively and through Routh Crabtree Olsen and the associated law firm of Larkins Vacura, submit their Motion *In Limine* on November 5, 2011 (Dkt. 196). Defendants submit to the Court that: "As of the time the plaintiff indisputably defaulted on his obligations here in October of 2009, the holder of the promissory note ("Note") was entitled to foreclose on the property securing the Note." The holder, according to the Defendants, is OneWest. Its alleged holder status is through "possession of the Note by May 12, 2009, through its agent." (Dkt. 196, pp. 2-3). In their Motion *In Limine*, the defendants attempted to convince the Court that their theory of the case is legally sound and that the evidence presented by the Plaintiff are irrelevant. Plaintiff respectfully submits this Response to explain, clarify, and further expose the fallacy of the framework created by the defendants.

RESPONSE TO MOTION IN
LIMINE

1

**H A   T H U   D A O ,   E S Q .**
787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

## Analysis

3

Defendants in fact affirmatively relied upon the Assignment of Deed of Trust executed by MERS, which gave rise to the Appointment of Successor Trustee enabling NWTS to initiate the foreclosure of Plaintiff's homestead

4

5

Despite the fact that MERS had executed and recorded an Assignment of Deed of

6

Trust into the public records of King County, Washington, the Defendants contend

7

that "OneWest does not and has not relied on any assignment of rights—including the

8

Assignment of Deed of Trust—from MERS. Rather, OneWest has relied and

9

continues to rely on its status as holder of the Note."  Defendants likewise argue that

10

the "MERS Corporate Resolution" that they put up in support of the Assignment of

11

Deed of Trust, should be ignored. (Dkt. 196, p. 3). The defendants inserted foot note 2

12

to explain that OneWest is the agent of Freddie Mac, the real owner of the Note and

13

that because OneWest is Freddie Mac's agent, "there is no reason that an agent and a

14

principal may not together constitute a 'holder.'" (Dkt. 196, p. 3, n.2).

15

    The defendants have anchored their entire objection to Plaintiff's evidence on this

16

premise which is proven to be faulty and causes the remainder of their argument to

17

collapse.

18

        The evidence produced in this case thus far proved that the Defendants

19

affirmatively relied upon the documents recorded in the public records of King

20

County, Washington, to commence the taking of Plaintiff's homestead: both OneWest

21

as the foreclosing party and NWTS as agent to the foreclosing party are strangers to

22

the Deed of Trust that Plaintiff signed. In fact, NWTS initiated nonjudicial foreclosure

23

upon Plaintiff's home by posting a notice of default and recording subsequent notices

24

of trustee sale. NWTS was not the original trustee named in Plaintiff's Deed of Trust

HA THU DAO, ESQ.
787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    and needed OneWest to appoint it as successor trustee; OneWest could not appoint

2    successor trustee until after it had been assigned the beneficiary interest by MERS as

3    nominee for the original lender, IndyMac Bank. In the Answer to Plaintiff's lawsuit, it

4    is admitted that Defendant MERS "is listed as the beneficiary of the Deed of Trust

5    named by the original lender IndyMac Bank". It is further admitted that the

6    Assignment of Deed of Trust and the Appointment of Successor Trustee speak for

7    themselves (Dkt. 29, p. 2).

8         In another declaration sworn out by Vonnie McElligott as Assistant Vice President

9    for Defendant NWTS, she admitted that NWTS, as "duly authorized agent of

10   OneWest", mailed and posted a notice of default relating to the Plaintiff's property, as

11   well as recording notice of trustee sale, and amended notice of trustee sale in the

12   public records (Dkt. 122). These documents do not disclose that OneWest is the

13   holder of Plaintiff's Note who relied upon certain guideline by Freddie Mac to

14   foreclose. As a matter of fact, the alleged role of Freddie Mac was never mentioned by

15   any of the defendants but was revealed by Plaintiff's own discovery effort.

16        <u>The defendants are equitably estopped from denying reliance of the MERS'
     Assignment of Deed of Trust and other foreclosure documents</u>

17

18        The defendants now want to walk back from their reliance upon the recorded

19   documents and argue that *OneWest and Freddie Mac together make up the note*

20   *holder status*. This is the classic case of "were you lying then or are you lying now?"

21   This is a desperate but ill-fated attempt to disengage from the fraud that the defendants

22   have perpetrated not only against the Plaintiff, but also against the public which relies

23   upon the public records to verify chain of title. The defendants should be equitably

24

RESPONSE TO MOTION IN
LIMINE

3

**HA THU DAO, ESQ.**
787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    estopped from denying that the recorded documents served as the foundation of their

2    nonjudicial foreclosure effort. The doctrine of equitable estoppel is a judicial remedy

3    by which a party may be precluded from its own act or admission, from asserting a

4    right to which it otherwise would have been entitled. *Heckler v. Community Health*

5    *Servs. of Crawford County, Inc.,* 467 U.S. 51, 59, 81 L.Ed.2d 42, 104 S.Ct. 2218

6    (1984); *In re Raanan*, 181 B.R. 480 (C.D. Cal. 1995) ("Estoppel arises either because

7    that party has taken inconsistent positions or has remained silent in the face of a duty

8    to speak, with resulting adverse consequences for an opposing party."); *United States*

9    *v. Georgia-Pacific Co*., 421 F.2d 92, 95-96 (9th Cir. 1970) (The four essential

10   elements of equitable estoppels are: 1) the party to be stopped must know the facts; 2)

11   he must intend that this conduct shall be acted on or must so act that the party

12   asserting the estoppel has a right to believe it is so intended; 3) the latter must be

13   ignorant of the true facts, and 4) he must rely on the former's conduct to his injury).

14   There is no denial that the foreclosure process initiated by the defendants in this case

15   was the nonjudicial foreclosure process under *RCW 61.24, et.seq*., and because the

16   defendants had taken actions to commence the process, including the recordation of

17   various documents, they are bound by the remedy they elected and the documents they

18   created and recorded.

19                    <u>Defendants' theory that OneWest is the holder of the Note executed by the
                      Plaintiff is not supported either by property law or by the UCC</u>

20

21          Even if the defendants are not deemed to be estoped from denying the effect

22   of the recorded Assignment of Mortgage, and Appointment of Successor Trustee, their

23   claim of Note Holder status fails nonetheless. Here, for support of the holder status,

24

RESPONSE TO MOTION IN LIMINE                    4

1   Defendants submitted Charles Boyle's Declaration which accompanied Defendants'

2   Motion for Summary Judgment filed on 03/22/2012. In the Declaration, Charles

3   Boyle, as Vice President for OneWest Bank, stated under penalty of perjury that: "As

4   part of the Freddie Mac Servicer Guide, OneWest has possession of the blank

5   endorsed Note *through a document custodian*, Deutsche Bank National Trust Co.

6   ('Custodian')." Additionally, Charles Boyle claims that "**OneWest has been in**

7   **possession of the Note and therefore the holder since on or about March 19, 2009.**

8   **OneWest has held the Note through the Custodian since on or about May 12,**

9   **2009**." (Dkt. 123, pp. 2-4).

10          Under Washington law, the person who can foreclose the mortgage or deed of

11  trust must be the one to whom the obligation is owed. 18 WILLIAM B. STOEBUCK &

12  JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.1, at

13  253 (2d ed. 2004). This requirement is consistent with the definition of the beneficiary

14  under the Deed of Trust Act requiring that the beneficiary "must either actually

15  possess the promissory note or be the payee." *Bain v. Metropolitan Mortg. Servs*. 175

16  Wn.2d 83, 285 P.3d 34 (2012). OneWest never possessed the Note and OneWest is

17  not named as the payee of the Note. Thus, assuming that the Note is a negotiable

18  instrument, OneWest has to prove that it is the Person Entitled to Enforce, or "PETE"

19  under the Washington UCC.

20          For a person other than the one to whom a negotiable instrument is made

21  payable to become a holder, there must a negotiation of the instrument. RCW 62A.3-

22  301 defines PETE as: 1) the holder of the instrument, 2) the nonholder in possession

23

24

RESPONSE TO MOTION IN
LIMINE

H A   T H U   D A O ,   E S Q .

787 Maynard Ave So, Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

of the note who has the rights of a holder, or 3) a person not in possession who is

entitled to enforce. The official comment of *RCW 62A.3-301* makes clear that:

> A person can become holder of an instrument when the
> instrument is issued to that person, or the status of holder can
> arise as the result of an event that occurs after issuance.
> "Negotiation" is the term used in Article 3 to describe this post-
> issuance event. Normally, negotiation occurs as the result of a
> voluntary transfer of possession of an instrument by a holder to
> another person who becomes the holder as a result of the
> transfer. Negotiation always requires a change in possession of
> the instrument because nobody can be a holder without
> possessing the instrument, either directly or through an agent.
> But in some cases the transfer of possession is involuntary and
> in some cases the person transferring possession is not a
> holder. In defining "negotiation" former Section 3-202 (1) used
> the word "transfer," an undefined term, and "delivery," defined
> in Section 1-201 (14) to mean voluntary change of possession.
> Instead, subsections (a) and (b) used the term "transfer of
> possession" and, subsection (a) states that negotiation can
> occur by an involuntary transfer of possession. For example, if
> an instrument is payable to bearer and it is stolen by Thief or is
> found by Finder, Thief or Finder becomes the holder of the
> instrument when possession is obtained. In this case there is an
> involuntary transfer of possession that results in negotiation to
> Thief or Finder.

*Id. Emphasis added.*

Section (b) requires that if the note is payable to bearer, or indorsed in blank,

*negotiation requires the transfer of possession of the instrument. Id., emphasis added.*

Here, the Note was indorsed in blank by the original lender, IndyMac Bank, and

OneWest was never intended to be the payee of the Note. There was no negotiation

because OneWest admits that it never had actual possession of the Note. And

OneWest does not contend that it is either a thief or a finder. **Neither Freddie Mac, if**

HA THU DAO, ESQ.

787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    **it is in fact the Note owner, nor OneWest, by their own fiat, can alter the legal**

2    **requirements of negotiation as prescribed by the Washington UCC**. Furthermore,

3    in order to be an effective negotiation, the transferor must part with the instrument

4    with the "unmistakable intention to transfer title to the instrument." *2 Ronald A.*

5    *Anderson, Uniform Commercial Code* §3-202. *Midfirst Bank v. C.W. Haynes & Co*.,

6    893 F.Supp. 1304(1994); *Russell v. Maxson Sales Co*., 591 P.2d 703, 706-707

7    (Okl.1979). This negotiation, Plaintiff submits, occurred when his Note was sold by

8    IndyMac Bank to the securitized trust in 2007. The Note, indorsed in blank, was

9    negotiated by delivery to the trustee of the securitized trust and the delivery would

10   have occurred with IndyMac's unmistakable intention to transfer title to the new

11   owner. Once IndyMac as the original lender sold the Plaintiff's loan into a trust, it was

12   divested of all legal and equitable interest and had nothing else to transfer to any other

13   entity including the FDIC. *RCW 62A.9-318*.[1]

14         The defendants' proposition that "**OneWest has been in possession of the**

15   **Note and therefore the holder since on or about March 19, 2009. OneWest has**

16   **held the Note through the Custodian since on or about May 12, 2009**" is

17   absolutely untenable. Actual possession means actual date, time, and manner of

18   acquisition or delivery. This statement, which is repeated by counsel and now

19   associated counsel for OneWest, has neither meaning nor credibility. How can

20

21         [1] The Defendants continue to ignore the truth perhaps because of its inconvenience.
22   Freddie Mac has already declared that it does not have ownership of the Plaintiff's loan at all
     and that the loan was sold into a pool of mortgaged-backed securities soon after it was
22   originated in 2007. Freddie Mac provided Plaintiff with a CUSIP number for his loan,
23   evidence of the securitization.

24

RESPONSE TO MOTION IN
LIMINE

7

H A   T H U   D A O ,   E S Q .

787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    someone be in possession of an instrument "since or about" certain date?  Wouldn't

2    you know when you came into actual possession of the instrument? And if possession

3    was not actual, but only constructive, constructive possession requires the payee or

4    holder, which is, according to defendants, Freddie Mac, to relinquish all legal and

5    equitable interests, including the right to payment, to OneWest. This did not happen at

6    all because while OneWest may be accepting payments from the borrowers as a

7    servicer; the payments are not the property of OneWest. Additionally, the defendants

8    have made clear that as a servicer, OneWest has been called upon only to collect

9    payments and to foreclose when payments are not made. OneWest's rights to collect

10   and to foreclose do not come from the promissory note but rather a separate agreement

11   – which OneWest admits does not exist – that it has with the true holder of the

12   promissory note, who Plaintiff has proven *not* to be Freddie Mac.

13          Assuming *arguendo* that Freddie Mac does own the Note, OneWest still

14   cannot achieve the status of holder because the holder is someone who is entitled to

15   payments under the instrument and not via a third-party servicing contract. If

16   OneWest had actual possession of the instrument, OneWest could qualify as a

17   transferee, but not a holder. Section 3-203 of the Washington UCC explains this

18   scenario:

19
20          (a) An instrument is transferred when it is delivered by a person
            other than its issuer for the purpose of giving to the person receiving
            delivery the right to enforce the instrument.

21          (b) Transfer of an instrument, whether or not the transfer is a
            negotiation, vests in the transferee any right of the transferor to
22          enforce the instrument, including any right as a holder in due course,
            but the transferee cannot acquire rights of a holder in due course by a
23          transfer, directly or indirectly, from a holder in due course if the
            transferee engaged in fraud or illegality affecting the instrument.

24

RESPONSE TO MOTION IN LIMINE                    8

(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this Article and has only the rights of a partial assignee.

*Id., emphasis added.*

While a transferee may have the right to enforce the instrument, certain conditions have to be met. The Official Comment explains:

Although transfer of an instrument might mean in a particular case that title to the instrument passes to the transferee, that result does not follow in all cases. *The right to enforce an instrument and ownership of the instrument are two different concepts*. A thief who steals a check payable to bearer becomes the holder of the check and a person entitled to enforce it, but does not become the owner of the check. If the thief transfers the check to a purchaser the transferee obtains the right to enforce the check. If the purchaser is not a holder in due course, the owner's claim to the check may be asserted against the purchaser. *Ownership rights in instruments may be determined by the principles of the law of property, independent of Article 3, which do not depend upon whether the instrument was transferred under Section 3-203*. Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y.

*Id., emphasis added.*

H A   T H U   D A O ,   E S Q .
787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1    Under this analysis, OneWest, who is lacking actual possession, and who

2  never became a transferee, because there is no proof that the Custodian for Freddie

3  Mac ever transferred the Note to OneWest, [2] cannot enforce the Note, which means

4  that OneWest cannot foreclose upon Plaintiff's home: "An instrument is a reified right

5  to payment.  The right is represented by the instrument itself.  The right to payment is

6  transferred by delivery of possession of the instrument 'by a person other than its

7  issuer for the purpose of giving to the person receiving delivery the right to enforce

8  the instrument.' The quoted phrase excludes issue of an instrument, defined in Section

9  3-105, and cases in which a delivery of possession is for some purpose other than the

10  transfer of the right to enforce. For example, if a check is presented for payment by

11  delivering the check to the drawee, no transfer of the check to the drawee occurs

12  because there is no intent to give the drawee the right to enforce the check." In order

13  to be a transferee, OneWest must prove its rights: "Because the transferee's rights are

14  derivative of the transferor's rights, those rights must be proved.  Because the

15  transferee is not a holder, there is no presumption under Section 3-308 that the

16  transferee, by producing the instrument, is entitled to payment.  *The instrument, by its*

17  *terms, is not payable to the transferee and the transferee must account for possession*

18  *of the unindorsed instrument by proving the transaction through which the transferee*

19  *acquired it.*  Proof of a transfer to the transferee by a holder is proof that the transferee

20  has acquired the rights of a holder. At that point the transferee is entitled to the

21

22

23    [2] In fact, Plaintiff has shown that 1) Freddie Mac is not the owner of the Note, and 2) Freddie Mac's Custodian, Deutsche Bank, has no proof that the Note was ever in its possession.

24

RESPONSE TO MOTION IN LIMINE

10

HA THU DAO, ESQ.
787 Maynard Ave So., Seattle WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1   presumption under Section 3-308." *Official Comment to Section 3-203, emphasis*

2   *added.*

3

4                                      **Conclusion**

5          Defendants' Motion *In Limine*, as their entire defense, is based on the

6   convoluted notion that OneWest and Freddie Mac together make up the holder of

7   Plaintiff's loan and that even though OneWest never had possession of the Plaintiff's

8   Note, certainly not at the time that OneWest, MERS, and NWTS commenced

9   nonjudicial foreclosure, the Court should believe that constructive possession saves

10  them from the falling dominoes. "**OneWest has been in possession of the Note and**

11  **therefore the holder since on or about March 19, 2009. OneWest has held the**

12  **Note through the Custodian since on or about May 12, 2009**" is not even a

13  logically sounding proposition, let alone a defensible legal framework. Therefore,

14  Plaintiff respectfully submits that his evidence which contradicts every one of the

15  defendants' allegations should be presented to the jury at trial. As to the appendices

16  that Plaintiff has prepared to aid the fact-finder at trial, they were prepared based on

17  Plaintiff's personal knowledge and information and they are admissible.

18         Respectfully Submitted this 13th day of November, 2012.

19

20                                      /s/ Ha Thu Dao

21                                      _____
                                        Ha Thu Dao, WSBA 21793

22                                      Attorney for Plaintiff
                                        787 Maynard Ave South, Seattle, WA 98104

23                                      Phone: 727-269-9334/Fax: 727-264-2447

24

H A   T H U   D A O ,   E S Q .
787 Maynard Ave So., Seattle, WA 98104
Tel. 727-269-9334
Fax727-264-2447
E-mail: hadaojd@gmail.com

1

2

3

4

5

6

7

## CERTIFICATION OF SERVICE

8

9          I hereby certify on November 13, 2012, the foregoing document is being
served via ___First Class Mail ___Priority Mail, ___Messenger Service ___Facsimile

10    __Electronic Mail__X__ECF,  upon the following parties:

11    Heidi Buck Morrison, Esq.
Charles Katz, Esq.

12    Routh Crabtree Olsen
13555 SE 36th Street, Ste 300, Bellevue WA 98006

13    425-213-5534/Fax 425-458-2131
hbuck@rcolegal.com

14    ckatz@rcolegal.com

15    Julie R. Vacura, Esq.
Joseph Mueller, Esq.

16    Larkins Vacura LLP
621 SW Morrison St., Ste 1450

17    Portland, OR 97205
503-222-4424

18    JMueller@larkinsvacura.com

19                                           /s/ Ha Thu Dao
_____

20                                           Ha Thu Dao, Esq.

21

22

23

24

RESPONSE TO MOTION IN                    12                **H A   T H U   D A O ,   E S Q .**
LIMINE                                                     787 Maynard Ave So., Seattle WA 98104
                                                           Tel. 727-269-9334
                                                           Fax727-264-2447
                                                           E-mail: hadaojd@gmail.com