


Positive
As of: January 18, 2013 2:38 PM EST

# James v. Interstate Credit & Collection, Inc.

United States District Court for the Eastern District of Pennsylvania
July 29, 2005, Decided
CIVIL ACTION NO. 03-CV-1037

**Reporter:** 2005 U.S. Dist. LEXIS 15495

ERROL JAMES v. INTERSTATE CREDIT AND COLLECTION, INC.

**Notice:**

**Subsequent History:** Motion denied by *James v. Interstate Credit & Collection, Inc., 2005 U.S. Dist. LEXIS 15494 (E.D. Pa., July 29, 2005)*

**Prior History:** *James v. Interstate Credit & Collection, Inc., 2005 U.S. Dist. LEXIS 33576 (E.D. Pa., Apr. 28, 2005)*

> **Core Terms**

consumer report, permissible purpose, credit report, consumer, business transaction, user, grant summary judgment, law firm, consumer reporting agency, reconsideration motion, legitimate business, lawsuit

> **Case Summary**

**Procedural Posture**
Plaintiff alleged debtor filed suit against defendant debt collector and raised two claims: violation of the Fair Debt Collection Practices Act of 1978 (FDCPA), *15 U.S.C.S. §§ 1692-1692o*; and violation of the Fair Credit Reporting Act (FCRA), *15 U.S.C.S. §§ 1681-1681x*. Plaintiff's motion for summary judgment was denied and the court sua sponte granted summary judgment to the collector on the FCRA claim. Plaintiff moved for reconsideration.

**Overview**
Plaintiff argued that it was improper to grant summary judgment to the collector because there were disputed facts regarding why the collector obtained plaintiff's consumer report. Plaintiff also asserted that the collector did not have a permissible purpose to obtain his consumer report under either *15 U.S.C.S. § 1681b(a)(3)(A)* or *15 U.S.C.S. § 1681b(a)(3)(F)*. When the collector requested plaintiff's consumer report, it had reason to believe that the debt was owed by plaintiff. In addition, the collector obtained the report after plaintiff filed the instant suit because it wanted to ensure that the report accurately reflected the status of the debt at issue. Thus, it was appropriate for the collector to obtain plaintiff's report under *§ 1681b(a)(3)(A)*. The disagreement about an underlying business transaction gave rise to plaintiff's dispute about the status of the debt, which in turn resulted in plaintiff's FDCPA action against the collector. Given the unique set of cir-

cumstances presented, it was appropriate under *§ 1681b(a)(3)(F)* for the collector to obtain plaintiff's report because it sought to ascertain whether the disputed debt had been removed from his report.

**Outcome**

Plaintiff's motion for reconsideration was denied.

---

**LexisNexis® Headnotes**

---

Banking Law > Consumer Protection > Fair Debt Collection > General Overview
Banking Law > Consumer Protection > Fair Debt Collection > Communications With Debtors
Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices
Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act

*HN1* The Fair Debt Collection Practices Act of 1978 (FDCPA), *15 U.S.C.S. §§ 1692-1692o*, was enacted to ensure that debt collectors engage in ethical business practices. The Act prohibits a debt collector from using any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt. *15 U.S.C.S. § 1692e*. Further, it provides a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors. A debt collector violates the FDCPA when it communicates or threatens to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. *15 U.S.C.S. § 1692e(8)*.

Civil Procedure > Judgments > Relief From Judgments > General Overview
Civil Procedure > Judgments > Relief From Judgments > Altering & Amending Judgments
Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

*HN2* The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Courts should grant these motions sparingly, reserving them for instances when (1) there has been an intervening change in controlling law, (2) new evidence has become available, or (3) there is a need to correct a clear error of law or fact or to prevent manifest injustice.

Banking Law > Consumer Protection > Fair Credit Reporting > General Overview
Banking Law > Consumer Protection > Fair Credit Reporting > Consumer Reports

*HN3* See *15 U.S.C.S. § 1681b(f)*.

Banking Law > Consumer Protection > Fair Credit Reporting > General Overview
Banking Law > Consumer Protection > Fair Credit Reporting > Consumer Reports

*HN4* The Fair Credit Reporting Act (FCRA), *15 U.S.C.S. §§ 1681-1681x*, recognizes several permissible purposes for the release of a consumer report. *15 U.S.C.S. § 1681b*. In evaluating whether the FCRA is violated, so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA. In determining whether a permissible purpose existed, a court is not required to consider what the defendant told the consumer reporting agency that released the credit report.

Banking Law > Consumer Protection > Fair Credit Reporting > General Overview
Banking Law > Consumer Protection > Fair Credit Reporting > Consumer Reports

*HN5* Under *15 U.S.C.S. § 1681b(a)(3)(A)* of the Fair Credit Reporting Act, *15 U.S.C.S. §§ 1681-1681x*, a consumer report may be obtained by a person who intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.

   Banking Law > Consumer Protection > Fair Credit Reporting > General Overview

*HN6* See *15 U.S.C.S. § 1681b(a)(3)(F)*.

**Counsel:** [*1] For ERROL JAMES, Plaintiff: CARY L. FLITTER, GREGORY L. NESTER, LUNDY FLITTER, BELDECOS & BERGER, PC, NARBERTH, PA; ERAN RUBINSTEIN, SUSAN M. BOLTZ, BOLTZ & RUBINSTEIN PC, PHILADELPHIA, PA.

For INTERSTATE CREDIT AND COLLECTION, INC., Defendant: SANDRA SUTTON-SIMANSKI, MAURICE & NEEDLEMAN, BRIDGEWATER, NJ; JOANN NEEDLEMAN, PHILADELPHIA, PA.

**Judges:** R. Barclay Surrick, Judge.

**Opinion by:** R. Barclay Surrick

**Opinion**

**MEMORANDUM & ORDER**

Presently before the Court is Plaintiff Errol James's Motion for Reconsideration (Doc. No. 42). For the following reasons, Plaintiff's Motion will be denied.

**I. BACKGROUND**

Errol James II, who was born on June 15, 1977, received medical treatment from the Albert Einstein Medical Center ("Einstein"). (Doc. No. 36 Ex. B; James Dep. at 30-31.) At some point, Einstein forwarded the unpaid medical bill for these medical services to Defendant Interstate Credit & Collection, Inc. ("ICC"), a debt collector. Instead of seeking payment for the Einstein debt from Errol James II, ICC sought payment from Plaintiff Errol James, the father of Errol James II. [1] (Doc. No. 38 Ex. A; Second Am. Compl. P 5; Answer to Second Am. Compl. P 5.)

 [*2] Plaintiff called ICC to dispute that he was responsible for the Einstein debt at some point in 1999. (Errol James Dep. at 31.) He also sent a letter to ICC disputing the debt on November 9, 2000. (Doc. No. 36 Ex. C.) However, Defendant did not receive either of these communications from Plaintiff. (Rosenberg Dep. at 23.) Despite Plaintiff's asserted attempts to notify Defendant that he disputed the Einstein debt, a December 19, 2002, Trans Union consumer report for Plaintiff still contained the Einstein debt. [2] (Doc. No. 38 Ex. D.) The report did not reflect that the debt was disputed by Plaintiff. Plaintiff then filed a consumer dispute form with Trans Union, which was re-

---

[1]   Defendant avers that Trans Union, a consumer reporting agency, "misfiled the information" about the unpaid medical bills. (Tr. 4/26/05 at 15.)

[2]   The Trans Union consumer report stated that the balance for the Einstein debt was $ 1,042.

ceived by Trans Union on or about December 26, 2002. (Doc. No. 36 Ex. J.) Defendant ICC received the consumer dispute form from Trans Union on January 3, 2003. (Rosenberg Dep. at 23.) It is at this point that Defendant discovered that Plaintiff disputed the Einstein debt. (*Id.*)

 **[*3]** Plaintiff Errol James filed a Second Amended Complaint on March 2, 2004, raising two claims against Defendant ICC: Count I: violation of the Fair Debt Collection Practices Act of 1978 ("FDCPA"), ³ *15 U.S.C. §§ 1692-1692o* (Second Am. Compl. PP 15-17); and Count II: violation of the Fair Credit Reporting Act ("FCRA") ⁴, *15 U.S.C. §§ 1681-1681x* (*id.* PP 18-23). On September 30, 2004, Plaintiff filed a Motion for Summary Judgment on each of these counts. (Doc. No. 35.) A hearing was held on the Motion on April 26, 2005. (Doc. No. 43.) The Motion was denied on April 28, 2005. *James v. Interstate Credit & Collection, Inc.*, 2005 U.S. Dist. LEXIS 33576, Civ. A. No. 03-CV-1037, 2005 WL 1017819 (E.D. Pa. Apr. 28, 2005). In addition to denying Plaintiff's Motion, we *sua sponte* granted summary judgment to Defendant ICC on Plaintiff's claim under the FCRA. *Id.* 2005 U.S. Dist. LEXIS 33576, [WL] at *2. Plaintiff then filed the instant Motion for Reconsideration. (Doc. No. 42.)

## II. LEGAL STANDARD

*HN2* "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Courts should grant these motions sparingly, reserving them for instances when (1) there has been an intervening change in controlling law, (2) new evidence has become available, or (3) there is a need to correct a clear error of law or fact or to prevent manifest injustice. *Gen. Instrument Corp. v. Nu-Tek Elecs.*, 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), *aff'd*, 197 F.3d 83 (3d Cir. 1999).

## III. DISCUSSION

In denying Plaintiff's Motion for Summary Judgment, we concluded that genuine issues of material fact existed regarding Defendant's alleged violation of *§ 1692e(8) of the FDCPA*. **[*5]** *James*, 2005 U.S. Dist. LEXIS 33576, 2005 WL 1017819, at *1. We then proceeded to analyze Plaintiff's claim that Defendant violated the FCRA. After noting that the FCRA requires a user of a consumer report to obtain it for a permissible purpose, we concluded that Defendant ICC obtained Plaintiff's consumer report to determine the status of the debt that is the subject of this suit, which is a permissible purpose under *15 U.S.C. § 1681b(a)(3)(A)*. *Id.* Defendant ICC also obtained Plaintiff's consumer report for a permissible purpose under *15 U.S.C. § 1681b(a)(3)(F)* because it had a legitimate business need to obtain the report when it sought to determine whether the disputed debt had been removed from the Plaintiff's consumer report. *Id.* 2005 U.S. Dist. LEXIS 33576, [WL] at *2. Because Defendant acted with a permissible purpose, we concluded that it could not have violated the FCRA. Even though Defendant had not moved for summary judgment on this count, we concluded that summary judgment in favor of the Defendant was appro-

---

³   Plaintiff avers that Defendant ICC violated *§ 1692e(8) of the FDCPA* when it did not communicate to the proper consumer reporting agencies that the Einstein debt was disputed. **HN1** The FDCPA was enacted to ensure that debt collectors engage in ethical business practices. *Sullivan v. Equifax, Inc.*, Civ. A. No. 01-4336, 2002 U.S. Dist. LEXIS 7884, at *9 (E.D. Pa. Apr. 19, 2002). The Act prohibits a debt collector from using "any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt." *15 U.S.C. § 1692e (2000)*. Further, it "provides a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) (citing *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3d Cir. 1987)). A debt collector violates the FDCPA when it communicates or threatens "to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *15 U.S.C. § 1692e(8)*.

⁴   Plaintiff avers that Defendant violated *15 U.S.C. § 1681b(f)* of the FCRA because it obtained Plaintiff's consumer report "through false pretenses and without a permissible purpose." (Second Am. Compl. P 22.)

priate because the record on this issue was fully developed, Plaintiff did not suffer prejudice, and the decision was based on a purely legal issue. *Id.*

 [*6]  Plaintiff's Motion for Reconsideration argues that we committed a clear error of law when we denied his Motion for Summary Judgment and *sua sponte* granted summary judgment to Defendant on the FCRA claim. (Doc. No. 42 at 1.) Specifically, Plaintiff argues that it was improper to grant summary judgment to Defendant ICC because there are disputed facts regarding why Defendant obtained Plaintiff's consumer report. Plaintiff also asserts that Defendant ICC did not have a permissible purpose to obtain his consumer report under either *§ 1681b(a)(3)(A)* or *§ 1681b(a)(3)(F) of the FCRA*. [5]

 [*7]  Initially, Plaintiff asserts that Defendant proffered various shifting reasons for obtaining his consumer report. (Doc. No. 42 at 4.) A review of the record, however, reveals that ICC obtained Plaintiff's consumer report to ensure that the disputed debt, which gave rise to the instant suit, was no longer reflected on Plaintiff's consumer report. [6] (Tr. 4/26/2005 at 18-19.) Initially, Seymour Lackier, Esq., then-counsel for Defendant ICC, [7] sought to obtain the consumer report from Plaintiff's counsel. (*Id.* at 18.) Even though Lackier provided Plaintiff's counsel with various materials, Plaintiff's counsel did not reciprocate by providing Defendant's counsel with the consumer report. (Answer to Second Am. Compl. PP 13, 22.) At that point, Lackier issued a subpoena to and personally served it on David Rosenberg, President of ICC, for the "credit report of Errol James." (Doc. No. 36 Ex. M; *see also* Rosenberg Dep. at 68-69; Tr. 4/26/2005 at 18-19.) During the April 26, 2005, hearing, Lackier stated that he issued a subpoena to ICC only after Plaintiff's counsel declined to provide him with Plaintiff's consumer report:

> THE COURT: So you're saying that the reason you [*8] subpoenaed this was because your request -
>
> MR. LACKIER: He [Plaintiff's Counsel] refused to turn it over.
>
> THE COURT: - for the report from the plaintiff and the plaintiff refused to give you the report.
>
> MR. LACKIER: That's right.
>
> THE COURT: And you simply wanted to verify what -
>
> MR. LACKIER: What -what shows and I want to take it off record. My client ultimately did take everything off record.

(Tr. 4/26/2005 at 19.) In response to the subpoena from its attorney, ICC obtained Plaintiff's consumer report. (Doc. No. 36 Exs. M, N, P at 4; [8] Cole Dep. at 13-14; Rosenberg Dep. at 65-66, 68-69.)

---

[5]  Plaintiff posits that the Court's *sua sponte* grant of summary judgment on his claim under the FCRA prejudiced him because he did not have the opportunity to address the authority on which we relied. (Doc. No. 42 at 3.) Plaintiff offers no law in support of his argument that a court's reliance on authority that is not specifically addressed by a moving party constitutes prejudice. In any event, Plaintiff's Motion for Reconsideration provided him with the opportunity to remedy any prejudice by addressing the legal authority on which we relied in granting summary judgment to Defendant.

[6]  Plaintiff filed his initial Complaint on February 25, 2003. (Doc. No. 1.) Defendant obtained Plaintiff's consumer report in July, 2003. (Doc. No. 36 Ex. N; Cole Dep. at 13-14.)

[7]  Lackier withdrew his appearance on behalf of ICC on June 13, 2005. (Doc. No. 46.)

[8]  In responding to Plaintiff's interrogatories, Defendant stated that "Plaintiff['s] attorney failed to provide [the] credit report as agreed at a joint meeting with Defendant. [The] credit report was a key issue for discovery because Plaintiff alleges that he lost money because of improper reporting. Defendant['s] attorney subpoenas credit report from Defendant's president under threat of punishment. On this basis, Defendant president turned over credit report." (Doc. No. 36 Ex. P.)

**[*9]** In Rosenberg's deposition, Rosenberg discussed why it was important to obtain Plaintiff's consumer report:

> Q. Why do you think you pulled the credit report?
>
> MR. LACKIER: Don't answer the question.
>
> THE WITNESS: We pull credit reports for a lot of different reasons.
>
> BY MR. RUBENSTEIN: But you're in a lawsuit with this person. You must --
>
> MR. LACKIER: That's the reason. The credit report is the key to the whole deal.
>
> THE WITNESS: That would have been reason enough to pull the
>
> credit report, if nothing else to make sure that Trans Union resolved the problem that I'm now being sued for. That in itself would have been reason enough for me to pull that report just to make sure that we did our job in notifying Trans Union to remove that derogatory.

(Rosenberg Dep. at 77-78.) The record here supports Defendant's position that it obtained Plaintiff's consumer report in order to determine whether the disputed debt was still reflected on the report. Plaintiff offers nothing of substance to counter this assertion. Plaintiff argues that Defendant ICC violated the FCRA because it lacked a permissible purpose when it requested Plaintiff's consumer report. **[*10]** Congress enacted the FCRA, in part, to protect consumer privacy. *TRW, Inc. v. Andrews*, 534 U.S. 19, 23, 151 L. Ed. 2d 339, 122 S. Ct. 441 (2001) (citing *15 U.S.C. § 1681(a)*). The FCRA requires that a user of a consumer report obtain it for a permissible purpose:**HN3**

> A person shall not use or obtain a consumer report for any purpose unless -(1) the consumer report is obtained for a purpose for which the consumer is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*15 U.S.C. § 1681b(f) (2000)*. **HN4** The statute recognizes several permissible purposes for the release of a consumer report. *Id. § 1681b*. In evaluating whether the FCRA is violated, "so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1276 (D. Md. 1996), *aff'd*, *131 F.3d 135 (4th Cir. 1997)* (table); *see also Minter v. AAA Cook County Consolidation, Inc.*, No. 02 C 8698, 2004 U.S. Dist. LEXIS 13629, at *6 (N.D. Ill. July 19, 2004) **[*11]** (explaining that "if defendants had a permissible purpose for accessing plaintiff's credit report under the [FCRA], then they necessarily did not access it under false pretenses"); *Allen v. Kirkland & Ellis*, No. 91 C 8271, 1992 U.S. Dist. LEXIS 12383, at *5 n.3 (N.D. Ill. Aug. 17, 1992).

In determining whether a permissible purpose existed, a court is not required to consider what the defendant told the consumer reporting agency that released the credit report. *Minter*, 2004 U.S. Dist. LEXIS 13629, at *6 n.4; *Allen*, 1992 U.S. Dist. LEXIS 12383, at *5 n.3. For instance, in *Allen*, a law firm told a consumer reporting agency that it wanted an individual's credit report because it sought to enforce a judgment that had been entered against him. However, there was no evidence that such a judgment had been entered. *Allen*, 1992 U.S. Dist. LEXIS 12383, at *4. The *Allen* court determined that the defendant did not violate the FCRA because it obtained plaintiff's credit report for a permissible purpose. As **[*12]** a result, it was not relevant that the law firm made a misrepresentation to the consumer reporting agency in order to obtain the report be-

cause the consumer reporting agency "was authorized to disclose the report regardless." *1992 U.S. Dist. LEXIS 12383, at *6 n.3*.

### A. Permissible Purpose Under § 1681b(a)(3)(A)

As discussed above, in granting summary judgment for Defendant, we concluded that its request constituted a permissible purpose under *§ 1681b(a)(3)(A)* because ICC obtained Plaintiff's consumer report to determine the status of the debt that is the subject of this suit. *James*, 2005 U.S. Dist. LEXIS 33576, 2005 WL 1017819, at *1. **HN5** Under this provision of the FCRA, a consumer report may be obtained by a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer[.]" *15 U.S.C. § 1681b(a)(3)(A)*; *see also Galligan v. Commonwealth Mortgage Assurance Co.*, Civ. A. No. 93-3129, 1994 U.S. Dist. LEXIS 7942, at *8 n.1 (E.D. Pa. June 14, 1994) (noting that the language "in connection with" [*13] is broad in scope).

In concluding that Defendant's conduct fell within the ambit of *§ 1681b(a)(3)(A)*, we cited *Korotki v. Attorney Services Corp. James*, 2005 U.S. Dist. LEXIS 33576, 2005 WL 1017819, at *1. In *Korotki*, a contractor asserted that the plaintiff owed it $ 6,000 for certain utility work that it performed. *931 F. Supp. at 1272*. In an attempt to collect this debt, the contractor retained the law firm of Thomas, Ronald & Cooper ("TRC"). *Id.* Daniel V. Schmitt, Esq., a TRC attorney, sought to establish a mechanic's lien against certain property with the assistance of Attorney Services Corporation ("ASC"). *Id.* During the course of trying to establish a proper mechanic's lien, Schmitt instructed ASC to obtain a current address for Korotki from his credit report. *Id.* ASC, "without any specific authorization from Korotki or Schmitt," obtained Korotki's credit report and provided it to Schmitt. *Id.* Korotki alleged that TRC, Schmitt, and ASC violated the FCRA because they obtained his credit report without a permissible purpose. *Id. at 1271, 1273*. The court concluded that the defendants' conduct fell within the scope of *§ 1681b(a)(3)(A)* because [*14] they apparently believed that the debt was owed by the plaintiff. *Id. at 1277*. Even though the parties disputed that a business relationship existed between the plaintiff and the contractor who hired the attorneys, the court noted that the creditor need only have "reason to believe that such a relationship existed." *Id.*

Here, Defendant ICC asserts that Plaintiff is responsible for the debt. [9] (Answer to Second Am. Compl. PP 11-12, 16, 20-21; Doc. No. 38 at 3 ("The plaintiff is, in fact, responsible for his indigent son's medical bill."); Tr. 4/26/2005 at 28.) [10] ICC "discontinued collection efforts in an attempt to settle the litigation despite the fact that the debt involved due Einstein was the responsibility of Plaintiff." [11] (Answer to Second Am. Compl. P 21.) The situation in the instant case is no different than that in *Korotki*. When Defendant requested Plaintiff's consumer report, it had rea-

---

[9] We need not address the merits of this argument at this juncture.

[10] 62 Pa. Cons. Stat. § 1973 provides in pertinent part that the "father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct." 62 Pa. Cons. Stat. § 1973; *see also Verna v. Verna*, 288 Pa. Super. 511, 432 A.2d 630, 632 (Pa. Super. Ct. 1981) ("The Support Law clearly indicates at 62 P.S. § 1973 the legislative intention to require parental support of indigent children regardless of their age."). While this provision was amended in 2005, Pennsylvania support law continues to recognize a parent's "responsibility to care for and maintain or financially assist an indigent person, regardless of whether the indigent person is a public charge." S.B. 86, 189th Leg., 2005-06 Reg. Sess. (Pa. 2005); 35 Pa. Bull. 4176 (2005). Interestingly, Plaintiff has never asserted that the son is not indigent.

[11] On July 7, 2005, Defendant ICC, through its current counsel, filed a motion for leave to amend its answer to Plaintiff's Second Amended Complaint. (Doc. No. 47.) The proposed amended answer still avers that Plaintiff is responsible for the debt and seeks to add specific affirmative defenses. (*Id.* Ex. A.)

son to believe that the debt was owed by Plaintiff. In addition, as discussed above, Defendant obtained Plaintiff's consumer report after Plaintiff filed the instant suit because it wanted to ensure that the report accurately reflected the status of the debt at [*15] issue. Given Plaintiff's FDCPA claim against the Defendant arising out of its collection efforts regarding the Einstein debt, it was appropriate for Defendant to obtain Plaintiff's consumer report to assess its possible liability under the FDCPA. Since the record contains no genuine issue of material fact regarding this issue, we again conclude that Defendant acted with a permissible purpose pursuant to *§ 1681b(a)(3)(A)* when it obtained Plaintiff's consumer report and that it did not violate the FCRA.

**B. Permissible Purpose Under § 1681b(a)(3)(F)**

In granting summary judgment for Defendant, we also concluded that its request constituted a permissible purpose under *§ 1681b(a)(3)(F)*. *James*, 2005 U.S. Dist. LEXIS 33576, 2005 WL 1017819, at *2. **HN6** That provision states that a consumer report may be provided to a person who "has a legitimate business need for the information - (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." [12] *15 U.S.C. § 1681b(a)(3)(F)*.

 [*17]  In concluding that *§ 1681b(a)(3)(F)* applied in this case, we explained that "when a plaintiff consumer files a lawsuit against a defendant debt collector, the defendant has a legitimate business need to obtain the plaintiff's consumer report when it seeks to ascertain whether a disputed debt has been removed from the plaintiff's consumer report." *James*, 2005 U.S. Dist. LEXIS 33576, 2005 WL 1017819, at *2. Thus, we adopted a very narrow construction of *§ 1681b(a)(3)(F)* as applied in the context of litigation. We relied primarily on *Minter v. AAA Cook County Consolidation, Inc.* and *Allen v. Kirkland & Ellis* in concluding that Defendant obtained Plaintiff's credit report pursuant to a permissible purpose under *§ 1681b(a)(3)(F)*. *James*, 2005 U.S. Dist. LEXIS 33576, 2005 WL 1017819, at *2.

In *Minter*, the plaintiff was a customer of a debt consolidation company from January to May, 2001, when she terminated her agreement with the company. *Minter*, 2004 U.S. Dist. LEXIS 13629, at *3. In March, 2002, she filed suit in state court against the company, alleging that it failed to make timely payments to her creditors. When plaintiff filed her suit, "she did not have a business relationship" [*18] with the defendant company. *Id*. After receiving notice of the litigation, the defendant accessed plaintiff's credit report. [13] The plaintiff then filed a lawsuit in federal court against the defendant company, asserting an FCRA violation. Because there was a genuine factual dispute about why the defendant obtained the report, the court declined to grant summary judgment. However, it proceeded to review the scope of the "business transaction" exemption and concluded that it could be construed to include "preparation for litigation." *2004 U.S. Dist. LEXIS 13629, at *13*. The filing of the lawsuit against the defendant provided a "legitimate business need" for the credit report. *2004 U.S. Dist. LEXIS 13629, at *16*. In addition, the defendant's asserted contractual obligation qualified as a "business transaction that [was] initiated by the consumer." *Id.*

In *Allen*, the [*19] plaintiff was the sole shareholder of Computer Resources Corp., which sued Siemens Information Systems, Inc. and Siemens/Nixdorf Information Systems Corp. *Allen*, 1992

---

[12]   This provision superseded 15 U.S.C. § 1681b(a)(3)(E), which stated "(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer." Pub. L. No. 104-208, § 2403, 1996 U.S.C.C.A.N. (110 Stat.) 3009-430.

[13]   In *Minter*, The parties disputed whether plaintiff gave the defendant consent to obtain her credit report. *Minter*, 2004 U.S. Dist. LEXIS 13629, at *3.

U.S. Dist. LEXIS 12383, at *3. The law firm that represented the Siemens defendants in the Computer Resources action requested the plaintiff's credit report "in connection with and for use in the Consumer Resources litigation." 1992 U.S. Dist. LEXIS 12383, at *3-4. After learning that the law firm requested his credit report, plaintiff asserted an FCRA claim against the law firm in a separate action. The court determined that the defendant did not violate the FCRA because it obtained plaintiff's credit report for a permissible purpose under the "business transaction" exemption. The commercial obligations between the two parties in the Consumer Resources litigation constituted business transactions and the litigation arising from those obligations were "in connection with" those obligations. [14] 1992 U.S. Dist. LEXIS 12383, at *7-8.

[*20] In the instant case, the analytical approach in *Minter* and in *Allen* militate in favor of finding that Defendant ICC's conduct constituted a permissible purpose under § 1681b(a)(3)(F). [15] Plaintiff's filing of the instant lawsuit provided Defendant ICC with a legitimate business need for Plaintiff's consumer report. [16] Furthermore, Defendant obtained the report "in connection with a business transaction that is initiated by the consumer." According to Plaintiff, the facts of this case suggest a troubling case of mistaken identity. The Einstein debt that was forwarded to Defendant for collection was incurred by the Plaintiff's son, and not by the Plaintiff. Defendant, however, continues to contend that Plaintiff himself is responsible for the debt. This disagreement about an underlying business transaction gave rise to Plaintiff's dispute about the status of the debt, which in turn resulted in Plaintiff's FDCPA action against Defendant. Given the unique set of circumstances presented here, it was appropriate under § 1681b(a)(3)(F) for Defendant ICC to obtain Plaintiff's consumer report because it sought to ascertain whether the disputed debt had been removed from his consumer [*21] report.

An appropriate Order follows.

**ORDER**

---

[14] The court concluded that the defendant's conduct also was encompassed by § 1681b(3)(A) because it obtained plaintiff's credit report in connection with the collection of an allegedly unpaid account. *Allen*, 1992 U.S. Dist. LEXIS 12383, at *8.

[15] Plaintiff asserts that "the 'business transaction' exception has been interpreted quite narrowly by our Court of Appeals," quoting *Houghton v. New Jersey Manufacturers Insurance Co.*, 795 F.2d 1144 (3d Cir. 1986). (Doc. No. 42 at 9-10.) In *Houghton*, plaintiff was involved in an automobile accident with an insured of defendant New Jersey Manufacturers Insurance Co. ("NJMI"). *Houghton*, 795 F.2d at 1146. After plaintiff sued the insured for damages sustained in the accident, NJMI requested certain financial information from a consumer reporting agency about the plaintiff. NJMI did not inform the plaintiff that it sought this information, and plaintiff only learned about the existence of the report several years after NJMI requested it. *Id.* When NJMI declined to provide the substance of the report to her, plaintiff filed suit against the insurer under the FCRA.

The Third Circuit concluded that the information provided by the consumer reporting agency was not a consumer report under the FCRA. *Id.* at 1148. Here, neither party has raised this argument. In interpreting the statutory definition of consumer report, the Third Circuit noted that the "business transaction" language of then- § 1681b(3)(E) should be narrowly construed. *Id.* at 1149. The court did not explicitly address the construction of the same language in the context of obtaining a consumer report for a permissible purpose, which is the subject of the instant Motion. *See id.* at 1152-54 (Sloviter, J., concurring); *see also Ippolito v. WNS, Inc.*, 864 F.2d 440, 451 n.11 (7th Cir. 1988) ("The fact that § 1681b(3)(E) is viewed restrictively for purposes of *defining* a consumer report does not mean that it has to be viewed so restrictively in determining the *permissible purposes* for which a report may be furnished by a consumer reporting agency."). Adopting a separate, broader construction of the "business transaction" exemption in the context of a permissible purpose analysis "prevents that statutory provision from being read out of the statute." *Ippolito*, 864 F.2d at 451 n.11.

[16] In arguing that "defense of litigation is not a permissible purpose," Plaintiff cites *Hall v. Harleysville Insurance Co.*, 896 F. Supp. 478 (E.D. Pa. 1995). In *Hall*, an insurance company asked a detective agency to obtain certain consumer credit reports so that the insurance company could investigate a workers' compensation claim. *Id.* at 480. None of the persons or entities accused of improperly accessing the reports did so as a result of pending litigation. Rather, litigation only arose when plaintiffs brought an action under the FCRA in response to the release of their consumer credit reports.

2005 U.S. Dist. LEXIS 15495, *21

AND NOW, this 29th day of July, 2005, upon consideration of Plaintiff's Motion for Reconsideration (Doc. No. 42, No. 03-CV-1037), and all papers submitted in support thereof and in opposition thereto, it is ORDERED that Plaintiff's Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

S:/R. Barclay Surrick, Judge