UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
JAMES MCDONALD,                            )   No. C10-1952RSL
                                           )
                    Plaintiff,             )
         v.                                )   ORDER REGARDING FAIR CREDIT
                                           )   REPORTING ACT CLAIM
ONEWEST BANK, FSB, *et al.*,               )
                                           )
                    Defendants.            )
_____)

This matter comes before the Court on "Defendant OneWest Bank, FSB's Partial Motion for Summary Judgment." Dkt. # 154. Defendant challenges the viability of plaintiff's Fair Credit Reporting Act ("FCRA") claim, arguing that it investigated the disputes forwarded by the credit reporting agencies and, where appropriate, corrected inaccurate information. Plaintiff argues that there are fact questions regarding the reasonableness of defendant's investigations or, in the alternative, that judgment on this claim should be entered in his favor under Fed. R. Civ. P. 56(f).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v.

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM

Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial.  Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor.  U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

## BACKGROUND

In January 2007, plaintiff borrowed money from IndyMac Bank, F.S.B.  The note memorializing the mortgage identifies plaintiff as the borrower and IndyMac as the lender.  Dkt. # 1, Ex. B.  A separate deed of trust was entered on the same date identifying  Pacific Northwest Title Insurance Company as the trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the lender's nominee to act as the beneficiary.  Dkt. # 1, Ex. A.

On or about January 12, 2010, defendant Northwest Trustee Services, Inc. ("NWTS"), acting as the agent of defendant OneWest Bank, FSB, sent plaintiff a Notice of Default under Washington's Deed of Trust Act ("DTA").  At the time, OneWest's interest in and relationship to the loan were unclear.[2]  In April of that year, plaintiff disputed IndyMac and

---

[1] The Court has considered the supplemental memorandum submitted by OneWest on January 28, 2013 (Dkt. # 216), and has conducted an evidentiary hearing. No additional argument is needed.

[2] Although the Notice of Default identifies OneWest as the beneficiary of the deed of trust and the servicer of the mortgage (Dkt. # 17, Ex. C), the document purporting to assign MERS' interests as beneficiary to OneWest was not signed until two weeks after the notice was issued.  Dkt. # 1, Ex. D.

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM                           -2-

NWTS' right to collect payments under the loan documents and/or the validity of any sale or transfer of the loan.  Plaintiff specifically demanded that the recipients or their representatives provide evidence that one of them or their assigns had possession of the original signed promissory note.  Dkt. # 17, Ex. F.  On May 18, 2010, OneWest responded on behalf of IndyMac but declined to state whether it had the original promissory note in its possession.  Dkt. # 1, Ex. G.[3]

At the end of June 2010, plaintiff sent IndyMac a brief letter stating:

> This is a letter of dispute.
>
> I recently pulled credit report and found that INDYMAC MORTGAGE SERVICES is reporting derogatory information in my account.
>
> I dispute this debt.

Decl. of James McDonald (Dkt. # 163), Ex. 4.  Plaintiff also notified the three credit reporting agencies, Equifax, Experian, and TransUnion, of the dispute.  OneWest acknowledges receiving notices of the dispute from Equifax and TransUnion, but states that it "has not received dispute information relating to Plaintiff's loan from Experian."  Decl. of Charles Boyle (Dkt. # 156) at

---

[3] The actual physical location of the original promissory note at the time the Notice of Default was delivered has been the primary issue in this litigation since at least January 2011 when the Court enjoined the foreclosure proceeding on the ground that OneWest's theory of constructive possession conflicted with the policy and practical considerations that underlie bearer paper and the DTA.  Dkt. # 24 at 3-4.  At some point during this litigation, counsel for OneWest apparently recognized the importance of actual possession of the note for purposes of the DTA and took whatever steps were necessary to obtain the original.  See Dkt. # 49 at 2 n.1.  Subsequently, however, OneWest reverted to its earlier constructive possession argument, asserting without qualification or explanation that it possessed the original promissory note as of March 2009 through a servicing agreement with Freddie Mac and/or a custodial arrangement with Deutsche Bank National Trust Company.  Decl. of Charles Boyle (Dkt. # 123) at ¶ 11;  Dkt. # 154 at 2-3;  Dkt. # 121, Ex. 8.  This theory of possession is untenable.

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM                    -3-

¶ 21.[4] The notices provided by Equifax and TransUnion used a "dispute code" to describe the nature of plaintiff's objection, simply stating that the charge was "Not his/hers. Provide or confirm complete ID." In response, OneWest compared the identifying information provided in the notices of dispute with the information in its servicing records and confirmed plaintiff's identity as the debtor. OneWest reported to TransUnion that the previously reported information was accurate and required no modification. OneWest updated the "past due amount" and "date of account information" fields in response to Equifax' notice, but required no additional modifications. OneWest asserts that it performed no investigation or follow-up reporting regarding Experian because Experian did not provide notice of a dispute.[5]

On July 20, 2012, OneWest ordered plaintiff's credit report from Equifax Mortgage Solutions, apparently for the purpose of showing that the OneWest debt is reported as "included in or discharged through bankruptcy 7, 11, or 12." Decl. of Charles Boyle (Dkt. # 156) at ¶¶ 22-23, Ex. C. Mr. Boyle testified at the January 31, 2013, hearing that he pulled plaintiff's credit report at the request of counsel.

---

[4] OneWest's statement that Experian did not provide a notice of dispute related to plaintiff was based only on Mr. Boyle's familiarity with and review of OneWest's business records. Id. at ¶ 1. This information turned out to be incorrect: Experian had, in fact, advised OneWest of the dispute. Decl. of James McDonald (Dkt. # 163), Ex. 7. As became clear at the evidentiary hearing held on January 31, 2013, Mr. Boyle had no personal knowledge regarding the notices provided by the credit reporting agencies: his statements under penalty of perjury were based on a review of computer records about which he had only the barest information regarding their creation or accuracy. All Mr. Boyle could say when asked about his misstatement was that OneWest's imaging system relies on accurate, manual inputs and that, while human error might explain why the Experian notice was not in the system, he really had no way of identifying the cause of the problem.

[5] The record shows that, on or about August 16, 2010, Experian notified plaintiff that it had investigated his dispute with OneWest and updated its records. Decl. of James McDonald (Dkt. # 163), Ex. 7. Presumably OneWest provided the updated data to Experian, just as it had to Equinox.

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM                               -4-

## DISCUSSION

Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). Section 1681s-2 imposes two responsibilities on "furnishers" of credit information to credit reporting agencies ("CRAs") such as Equifax, TransUnion, and Experian. A furnisher must not only provide accurate information to the CRA in the first instance (15 U.S.C. § 1681s-2(a)), it must also investigate and/or correct inaccurate information (15 U.S.C. § 1681s-2(b)). The duty to investigate and correct arises only after the furnisher receives notice of a dispute from the CRA. A complaint received directly from the consumer does not trigger the duty to investigate. Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002) ("A private litigant can bring a lawsuit to enforce § 1681s-2(b), but only after reporting the dispute to the CRA, which in turn reports it to the furnisher.").

**A.   Furnishing Inaccurate Information, 15 U.S.C. § 1681s-2(a)**

Plaintiff alleges that OneWest provided unlawful, inaccurate, and incomplete information to the CRAs. Pursuant to 15 U.S.C. § 1681s-2(d), however, only federal and state agencies can enforce the duties imposed under § 1681s-2(a). To the extent plaintiff is asserting a claim under 15 U.S.C. § 1681s-2(a), the claim fails as a matter of law.

**B.   Investigation and/or Correction, 15 U.S.C. § 1681s-2(b)**

After receiving notice of a dispute from a CRA, the furnisher of credit information must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency. . .;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM                    -5-

furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . promptly –

       (i) modify that item of information;
       (ii) delete that item of information; or
       (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Although there is no explicit "reasonableness" requirement enunciated in the text, the Ninth Circuit has determined that the term "investigation" "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute" and that requiring some degree of careful inquiry is appropriate given the consumer protection goal of the FCRA. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155 (9th Cir. 2009). The pertinent question is whether the furnisher's investigation was reasonable in light of the information it had regarding the nature of the consumer's dispute.

      Plaintiff bears the burden of showing that defendant's investigation was unreasonable. Gorman, 584 F.3d at 1157. Although FCRA requires the CRA to include in the notice of dispute "all relevant information regarding the dispute that the agency has received from the consumer . . ." (15 U.S.C. § 1681i(a)(2)(A)), the CRAs in this case apparently utilized an electronic form with a "Dispute Code" that read, "001: Not his/hers. Provide or confirm complete ID." Decl. of Charles Boyle (Dkt. # 156), Exs A and B. If this were all the information OneWest had regarding plaintiff's dispute, a simple review of plaintiff's file to confirm the identity of the person who signed the original promissory note might constitute a reasonable investigation. The CRA's notice was not the only information available to OneWest, however. At the end of June 2010, plaintiff simultaneously raised this dispute through letters to OneWest and the CRAs. Although the letters are ambiguous regarding the nature of his dispute, plaintiff's objection to OneWest's report of "derogatory information" could reasonably be

ORDER REGARDING FAIR CREDIT
REPUBLIC ACT CLAIM              -6-

interpreted as a challenge to the assertion that a debt is owed to OneWest. Decl. of James McDonald (Dkt. # 163), Ex. 4. This same objection was more fully stated in a letter to OneWest dated April 27, 2010, in which plaintiff contests the amount owed, the identity of the entity entitled to collect payments, the identity of the entity to whom the debt is owed, and the path by which plaintiff's original promissory note allegedly devolved to OneWest. In that letter, plaintiff specifically requests that OneWest conduct a *de novo* investigation[6] for the purpose of locating the original instrument, tracking the chain of transfer, and establishing OneWest's right to collect and/or benefit from payments. All of this information was in OneWest's possession and would have illuminated plaintiff's dispute had his file been reviewed.

OneWest argues that the reasonableness of its inquiry should be judged solely on what it learned from the CRA. Reply (Dkt. # 166) at 3. This may be a reasonable construction of a furnisher's statutory duty where the only information available to the furnisher comes through the notice of dispute. See Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (furnisher's initial investigation was found to be adequate where the notice from the CRA provided "scant information" regarding the nature of the dispute and did not mention fraud or identity theft). But there is no statutory, policy, or case law justification for allowing a furnisher to ignore what it knows about a consumer's complaint simply because it was not included in the notice from the CRA. In Westra, for example, the consumer sent an explanatory letter directly to the furnisher after it had initially declined to correct the disputed information. When the CRA sent a second notice of dispute, that letter formed part of the information considered during the investigation. In Gorman, the Ninth Circuit noted that while the notice from the CRA determines the nature of the dispute that is to be investigated, once the investigation starts, the notice is not a limitation that "cabins the scope of the investigation." 584

---

[6] "I firmly request that you do not rely on previous servicers or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account." Dkt. # 17, Ex. F.

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM                                -7-

F.3d at 1157 n.1. In Rogers v. JPMorgan Chase Bank, N.A., 2012 WL 2190900 at *9 (W.D. Wash. June 13, 2012), the court found that, although Chase's investigation would have been reasonable had it possessed only the notice of dispute from the CRA, Chase's failure to take into consideration an oral report of identity theft lodged by the consumer raised a fact issue for the jury regarding the reasonableness of the investigation.

In this case, OneWest's duty to investigate was triggered upon receipt of a notice of dispute from a CRA. OneWest does not describe the steps it took to "investigate" plaintiff's dispute, but it appears that OneWest did nothing more than compare the points of data provided by the CRA with its own records. Even if plaintiff were simply disputing his responsibility for the debt (as suggested by the dispute code chosen by the CRAs), OneWest's investigation would show only that the CRA was accurately reporting the information OneWest had previously provided. Any defect in the accuracy of the reported information would necessarily go undetected. Such an inquiry would be cursory at best and not "likely to turn up information about the underlying facts and positions of the parties . . . ." Gorman, 584 F.3d at 1155. A jury could determine that, despite the limited information provided by the CRA, a reasonable investigation would have involved a review of plaintiff's file (in whatever format it was kept) to determine whether he had signed the original promissory note (*i.e.*, that the debt was his). Given the additional information that OneWest had regarding the nature of plaintiff's objections, the reasonableness of OneWest's investigation is for the fact finder to resolve, not the Court on summary judgment. The Court declines to enter judgment in plaintiff's favor under Fed. R. Civ. P. 56(f)(1).

ORDER REGARDING FAIR CREDIT
REPORTING ACT CLAIM         -8-

For all of the foregoing reasons, plaintiff's claim under 15 U.S.C. § 1681s-2(a) fails as a matter of law. OneWest's motion for summary judgment regarding plaintiff's claim under 15 U.S.C. § 1681s-2(b)(1) is DENIED.

Dated this 7th day of March, 2013.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge