THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES MCDONALD,<br><br>             Plaintiff,<br><br>      v.<br><br>ONEWEST BANK, FSB, NORTHWEST TRUSTEE SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., INDYMAC BANK FSB, DOES 1-50,<br><br>             Defendants. | No.  2:10-cv-01952-RSL<br><br>ONEWEST BANK, FSB'S MOTIONS IN LIMINE<br><br>NOTE ON MOTION CALENDAR:  August 23, 2013<br><br>ORAL ARGUMENT REQUESTED |

**LCR 7(d) Certification**

Counsel for OneWest Bank, FSB ("OneWest") certifies that they conferred with opposing counsel regarding the substance of these motions, and could not reach agreement; except for Motion Number Four, as indicated below.

**Motions In Limine**

The focus of plaintiff's proposed exhibits and witnesses appears to be on confusing the jury regarding the legal issues remaining for trial, and on convincing the jury that defendants are generally bad actors who deserve to be punished.  To focus the evidence on the actual legal

issues for trial, and to prevent plaintiff from relying on confusing extrinsic evidence and improperly prejudicing defendants, OneWest makes the following motions in limine:

**Motion #1: Motion to Exclude the Testimony of James Kelley and Brett Bishop**

Plaintiff lists James Kelley and Brett Bishop as potential expert witnesses for trial, but plaintiff cannot satisfy his burden with respect to admissibility. Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a party seeking to admit expert testimony must first establish that the witness is qualified through relevant training, skill, or education to testify about a given subject. Fed. R. Evid. 702. Even if the witness's relevant expertise is established, the witness's methodology must also be proven reliable and helpful before the witness may be permitted to testify as an expert. *See, e.g.*, *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 989 (D. Ariz. 2000) ("The proponents of the evidence have the burden of proving that their expert witness testimony is admissible pursuant to Rule 702 and the *Daubert* standards.") (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)). Plaintiff here can establish neither.

**1. Mr. Kelley is not an expert in forensic document examination.**

The only court to have examined Mr. Kelley's qualification to testify as an expert witness ruled that Mr. Kelley was unqualified to testify as an expert on the authenticity of a promissory note and a borrower's signature thereon. *See Malin v. JP Morgan Chase Bank, N.A.,* No. 3:11-CV-554 (E.D. Tenn. May 7, 2013), at 5 ("*Malin* Order," attached hereto as **Attachment 1**) *adopted by* No. 3:11-CV-554 (E.D. Tenn. July 8, 2013) (attached hereto as **Attachment 2**). As the *Malin* Court found, Mr. Kelley possesses no education or training in either forensic document examination or handwriting analysis. *Id.* Though he claims to be an expert in the computer programs on which he relies when examining documents, he has never taken a single course in any of those programs. Transcript of Deposition of James Kelley ("Kelley Depo. Tr."), attached as Exhibit 1 to Declaration of Julie Vacura (Dkt. No. 266) at 19:11-18, 19:19-23, 19:24-20:10. Mr. Kelley claims to have developed expertise by reading

1  "hundreds" of research reports and "dozens and dozens" of articles, though in his deposition he
2  was unable to cite a single article or name even a single publication in which any of these
3  articles has appeared.  *Id.* at 12:18-14:3, 15:4-14, 16:5-15, 144:16-145:7.[1]

4  With respect to teaching, "[Mr. Kelley] has never given lectures, taught any courses, or
5  authored any articles or books on the subjects of handwriting analysis or document
6  examination.  In addition, he is not a member of any organization for computer forensic
7  documentation."  *Malin* Order (internal citation omitted); *see also* Kelley Decl., (Dkt. No. 262)
8  at 22-24.  Though he claims to be "teaching" one person his "methods" currently, he refused to
9  provide any information about his teachings because doing so would be "indiscreet," and Mr.
10 Kelley refused to respond to any such questioning in his deposition because it was "none of
11 [counsel's] business."  Kelley Depo. Tr. at 53:1-54:13.

12 In his deposition, Mr. Kelley struggled to articulate the subject matter of his purported
13 expertise.  Though he claims to be an expert in "comparing the differences between [two]
14 things," he admits he is not an expert in comparing signatures:

15 Q.  Have you received any training in signature comparison?
16 A.  From who?
17 Q.  Anywhere.  Anyone.
18 A.  I – I'm not aware that – I'm not really interested in the traditional signature
19 comparison forensics because it's flaw -- deeply flawed at this point.
20 Q.  Have you received any training in --
21 A.  And the answer --
22 Q.  -- signature comparison forensics?

---

[1] *Cf. U.S. v. Prime*, 220 F. Supp. 2d 1203, 1212 (W.D. Wash. 2002) (detailing document examiner's Master of Forensic Science degree, three-year apprenticeship, and training with Secret Service).  As noted in *Malin*, "[a]lthough Dr. Kelley has laboratory experience in chemistry, biology, physics, and the military industrial complex, his previous laboratory experience has nothing to do with document examination or making forgery determinations." *Malin* Order at 5; *see also* Kelley Decl. at 22-24.

MOTIONS IN LIMINE, 2:10-cv-01952-RSL, page 3

LARKINS VACURA LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
503-222-4424

1       A.  And the answer is no training.  No training.

2  Kelley Depo. Tr. at 78:20-79:7.  Nor does he testify regarding whether a signature is a forgery

3  (despite his having attempted to do just that in his original declaration filed in this case).  *Id.* at

4  73:1-73:3 ("I don't determine in a specific case whether it is a forgery because -- because I'm

5  not being hired to do that, okay?"); *see also id.* at 74:12-74:24 (stating that his declaration in

6  this case should not have used the word forgery).

7       Mr. Kelley's interest in and involvement with document examination began last year,

8  when he challenged the authenticity of his own promissory note in his bankruptcy adversary

9  proceeding in which he is currently seeking to rescind his mortgage loan and to challenge the

10 proof of claim filed by his mortgage servicer.  *See Malin* Order at 5; *Kelley v. JP Morgan*

11 *Chase Bank, N.A.*, No. 10-05245 (Bankr. N.D. Cal.).  Mr. Kelley admits that he is entirely self-

12 taught based on articles he has read on the Internet and experiments he has performed based

13 thereon.  Kelley Depo Tr. at 11:2-16:15; 19:4-20:25; 25:9-22.  Mr. Kelley has declined to name

14 even one source he relied upon in the course of his self-education and the experiments he has

15 conducted are neither published nor reviewed by anyone, let alone by legitimate document

16 examiners.  *See, e.g.*, Kelley Depo. Tr. at 13:15-14:3; 18:4-18:23.  Mr. Kelley admits he has

17 never submitted any of his work for peer review, saying that he has not done so because "[he's]

18 kind of busy right now."  Kelley Depo. Tr. at 85:22-86:23, 94:9-97:13, 97:15-23.

19       In addition to having received no training regarding document authentication, his

20 application of his self-taught skill is exceedingly limited.  He has performed document

21 examinations of only four sets of documents and has only reviewed 15 sets of documents to any

22 extent.  Kelley Depo. Tr. at 31:4-31:16; 34:11-34:13, 37:19-38:5.  Mr. Kelley refused to testify

23 at his deposition about any of the work he has performed in any other engagements.  *See, e.g.*,

24 Kelley Depo. at 34:11-20; 40:10-41:1; 118:16-124:21.  He offered only that he had submitted

25 reports in three cases:  this one, the *Malin* case, and in his own case.  *Id.* at 40:18-41:22.  Mr.

26 Kelley's unilateral refusal to testify about his purported prior experience prevents this Court

from giving it any weight in the context of reaching a reasoned decision on the admissibility of his proffered testimony.  Just as he was in *Malin*, Mr. Kelley is unqualified to testify as an expert forensic document examiner.

### 2. Mr. Kelley's methodology is not sufficiently reliable.

Relating to forensic document examination specifically, this Court has observed that reliability of the methods used is critical: "trial courts are to ensure that the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *U.S. v. Prime*, 220 F. Supp. 2d 1203, 1205 (W.D. Wash. 2002) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).  As this Court explained in *Prime*, the question is not whether forensic document examination testimony is generally admissible, but whether the methodology of a particular witness satisfies the *Daubert* standards. *See Prime*, 220 F. Supp. 2d at 1210.  In determining whether the proffered expert testimony is qualified and reliable, the Court may consider five non-exclusive factors: "(1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) its general acceptance within the scientific community." *United States v. Hidalgo*, 229 F. Supp. 2d 961, 965 (D. Ariz. 2002) (citing *Daubert*, 509 U.S. at 593-94).

Mr. Kelley's methodology falls woefully short.  Mr. Kelley's methods are out of step with generally accepted forensic document analysis practices.  Mr. Kelley first developed his approach to evaluating document authenticity in his own legal proceeding.[2]  To the extent it can be ascertained from his declarations and his deposition testimony, Mr. Kelley's novel methodology appears to consist of (1) using "high-powered microscopes" to take digital

---

[2] While not going directly to any *Daubert* factor, Mr. Kelley's personal investment in his novel theories about how lending institutions produce elaborately constructed copies of loan documents calls into question both the reliability of his methodology and his objectivity when employing it.  In addition, Mr. Kelley's work is promoted by an agency called BP Investigative Agency, whose website essentially states that its mission is to stop foreclosures.  *See* http://bpinvestigativeagency.com.

pictures and scans of purported original documents; (2) loading those "digital representations" of the documents into a computer; (3) manipulating the digital representations using various software programs, such as Adobe Photoshop; and then (4) using that software to draw conclusions about the authenticity of the documents. *See* Kelley Depo. Tr. at 57:12-57:25 (making digital representation of document); 177:15-177:25 (manipulation of image using software); Kelley Decl. at 9-19 (discussing numerous ways in which he uses software to evaluate and manipulate data).

None of the *Daubert* factors weighs in favor of admitting Mr. Kelley's opinion reached using the above methodology. First, only Mr. Kelley himself has tested his methods, and he insists on keeping to himself precisely what he alleges to have done to form his opinion regarding the authenticity of the original promissory note produced by OneWest. Specifically, Mr. Kelley alleges he has done "hundreds of things" to test plaintiff's note, none of which he has produced in this case. *See* Kelley Depo. Tr. at 94:9-95:17. Nor is Mr. Kelley willing to testify regarding any document-forensics work he claims to have performed outside this case. *See, e.g.*, *id.* at 39:21-40:17, 117:17-124:21. Neither his novel methodology nor his findings have ever been published or subject to any peer review. *Id.* at 85:22-86:23, 94:9-97:23.

To the extent Brett Bishop's untimely declaration is intended to supply the Court with such a peer review, it confirms that Mr. Kelley's methodology is inadequate when compared to the methods of true forensic document examiners. Mr. Bishop opines that a *qualified* "forensic document examiner," *looking at a document under a microscope* (not at copies of a document enlarged using software), might be able to draw conclusions about the document based on things like interactions between ink and paper fibers, indentations in the paper, and characteristics of the ink on the page. *See* Bishop Decl. (Dkt. No. 263) ¶¶ 9–11. But Mr. Bishop does not identify Mr. Kelley as a qualified document examiner (indeed he has never met or spoken with Mr. Kelley). *See* Bishop Decl. at ¶ 5. Moreover, while he claims that the methods used by Mr. Kelley are "valid," he does not say they are generally accepted within the

1  forensic document examination community as a reliable means to determine document
2  authenticity.  In fact, Mr. Bishop makes no attempt to address the propriety or reliability of
3  such methods to form opinions about document authenticity.  Nor does he agree with Mr.
4  Kelley's conclusion that the note at issue is a fake.  Rather, Mr. Bishop concedes that he would
5  need to see *the original document*.  *See* Bishop Decl. at ¶ 16.

6         Mr. Kelley has also provided no evidence regarding any actual or potential error rate in
7  his methods.[3]  In fact, at his deposition, Mr. Kelley expressed confusion about the concept of an
8  error rate: "Q. Did you establish an error rate with your testing . . . ?  A. What do you mean by
9  'error rate'?  Could you define for me what an error would be?"  Kelley Depo. Tr. at 142:2-
10 142:5.  Thereafter, he claimed there is no established error rate for the kind of work he
11 performs.  *Id.* at 143:6-143:22.  There is simply *no evidence* of what the error rate is for Mr.
12 Kelley's methodology, much less evidence that it is acceptably low.  The lack of evidence is
13 due in part to Mr. Kelley having only used his novel methodology in four complete document
14 examinations—which he refused to discuss.  *See* Kelley Depo. Tr. at 34:11-20; 40:10-41:1;
15 118:16-124:21.

16        Neither Mr. Kelley's use of software in forensic document examination, nor his process
17 of drawing conclusions from that software, has ever been reviewed by anyone—except the
18 court in *Malin*, which rejected it.  Similarly, because Mr. Kelley is the only person currently
19 using this new approach (except for a vague number of newcomers whom he has refused to
20 name), he cannot show that his methodology has gained general acceptance in any relevant
21 scientific or technical community.  *See* Kelley Depo. Tr. at 234:21-235:25 (refusing to identify

---

[3] Mr. Kelley states in his latest declaration, for the first time, that his "scientific method" is to take many photographs of both the questioned document and an unquestioned document and compare them. Docket No. 262, at 8, ¶ 13.  He then states he "repeated this exercise many times over and recorded the result each time.  The exercise can be replicated by another examiner using the same scientific method and the results will not vary.  Therefore the error rate is near zero." *Id.* at 8, ¶ 14; Mot. to Qualify at 7.  Yet one's ability to replicate an exercise does not equate to a "near zero" error rate.  Instead, there must be independent testing of the proffered methodology to measure its *actual* error rate.

MOTIONS IN LIMINE, 2:10-cv-01952-RSL, page 7

LARKINS VACURA LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
503-222-4424

other purported experts using his methodology because "it's sensitive information" and "that information will be revealed when the time is proper"); *Malin* Order at 6.[4]

In conclusion, it is clear that Mr. Kelley's methodology does not satisfy *Daubert*, and he is not qualified to draw conclusions about original documents based on his methodology. Mr. Kelley should not be allowed to provide expert testimony in this case.

### 3. Brett Bishop's testimony is also inadmissible.

As discussed above, Brett Bishop's declaration is untimely and inappropriate as an attempt to bolster James Kelley's inadmissible testimony. Mr. Bishop also may not testify directly as to the authenticity of the original note in this case because he simply did not opine on that issue. Bishop Decl. at 3 (acknowledging he did not examine the original document).

Because they are not qualified to speak to the authenticity of the note, Kelley's testimony and Bishop's supporting testimony should also be excluded as irrelevant, misleading, and certain to prolong the trial. *See* Fed. R. Evid. 401, 402, 403.

**Motion #2: Motion to Exclude Evidence Related to the Authenticity of the Promissory Note**

This Court should preclude plaintiff from offering any evidence as to whether the note in OneWest's possession is plaintiff's original promissory note, or, more generally, as to whether OneWest is entitled to foreclose. No foreclosure is currently pending, and the authenticity of the promissory note in OneWest's possession has no bearing on the remaining legal issues in this case: (1) whether defendants caused plaintiff injury and actual damages under the Consumer Protection Act ("CPA"); (2) whether OneWest caused actual damages

---

[4] Mr. Kelley also made unsupportable assumptions in his analysis in this case. For example, he assumed without any basis that an escrow company would always print the original version of loan documents for signature and the borrower's copy of those documents at the same time, on the same kind of paper, with the same printer. And from that, he drew the conclusion that a document on paper different from the borrower's copy is a forgery. *See* Kelley Depo. Tr. at 152:5-160:4. He also assumed that plaintiff used a ballpoint pen on the loan documents and did not consider the possibility that plaintiff might have used a fiber-tipped pen. The entire basis for this assumption was plaintiff's purported recollection that he had used a ballpoint pen to sign the documents, some six years prior. Kelley Depo. Tr. at 146:19-147:15.

1  under the Real Estate Settlement Procedures Act ("RESPA"); (3) whether Northwest Trustee
2  Services, Inc. ("NWTS") caused actual damages under the Fair Debt Collection Practices Act
3  ("FDCPA"); and (4) whether plaintiff can prove all elements of his claim under the Fair Credit
4  Reporting Act ("FCRA"). *Cf.* Fed. R. Evid. 401, 402. Moreover, any such evidence should be
5  excluded on the independent ground that any scintilla of probative value is substantially
6  outweighed by the potential that it would waste time, confuse the issues, and mislead the jury.
7  *See* Fed. R. Evid. 403.

**Motion # 3: Motion to Exclude Evidence Disputing Ownership or Servicing of Plaintiff's Loan**

This Court should exclude any evidence or argument disputing Freddie Mac's ownership and OneWest's servicing of plaintiff's loan, including whether plaintiff's loan is part of a securitized trust. It is indisputable that at all relevant times in this case, the owner of plaintiff's loan was Freddie Mac, and the servicer was OneWest. *See* Sec. Am. Compl., Dkt. No. 138, at ¶ 2.12); Order, Dkt. No. 238 at 20 (dismissing claims against other defendants because they are not servicers of plaintiff's loan).[5] Yet plaintiff will likely improperly suggest that there is something nefarious about OneWest taking action with respect to plaintiff's loan, which OneWest does not own but rather services. Not only would such a baseless implication be prejudicial and meritless, but it also has no relevance to any of the remaining claims in this litigation, and will cause delay, confuse the issues in the case, and mislead the jury. *See* Fed. R. Evid. 401, 402, and 403.

Plaintiff has also demonstrated that he is likely to waste time by erroneously contending that Freddie Mac no longer owns plaintiff's loan, based on an accusation that his loan is part of

---

[5] OneWest's reference to "ownership" of plaintiff's loan does not imply agreement with plaintiff's continuing misunderstanding about the role of ownership in the foreclosure process. That is, a note holder need not be the owner of a loan obligation in order to enforce it. Importantly, there is no pending foreclosure at issue in this case, and OneWest makes this motion only to ensure that plaintiff may not confuse the jury with irrelevant speculation about the ownership and servicing of his loan obligation. *See* Fed. R. Evid. 403.

MOTIONS IN LIMINE, 2:10-cv-01952-RSL, page 9

LARKINS VACURA LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
503-222-4424

1   a securitized pool.  *See* Pl.'s Mot. for Summ. J., Dkt. No. 176, at 12; *see also*, *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts.") (citing cases).  Plaintiff's speculation about what the "pool" designation for his loan means is irrelevant, and should be barred under Fed. R. Evid. 401 and 402.  Such inaccurate speculation would confuse the jury, require rebuttal testimony on a collateral issue, and therefore waste jury time.  *See* Fed. R. Evid. 403.

**Motion # 4: Motion to Exclude Previous Court Orders in This Action**

Upon conferral, plaintiff may not oppose the following motion in limine; however, OneWest has included it here in the event that understanding was incorrect.  Plaintiff should be precluded from presenting any evidence or testimony relating to or otherwise characterizing this Court's prior rulings in this proceeding, including, but not limited to, this Court's orders on summary judgment.  *See* Dkt. Nos. 238 & 239.  The jury must necessarily be informed of this Court's summary judgment orders to the extent they constrain the scope of the issues before the jury, but this information should be conveyed through a neutral instruction from this Court explaining the rulings and their significance.  Any attempt by plaintiffs to introduce or comment on this Court's rulings would usurp this Court's function in instructing the jury as to the governing law.

Furthermore, this Court's previous legal determinations have little probative value as to the factual issues that remain for the jury to decide.  Allowing plaintiff to comment on issues this Court has already decided as a matter of law would be unduly prejudicial to OneWest, would waste the jury's time, and poses a substantial risk of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403.  In particular, the monetary sanction levied against defendants in this case is not relevant to the legal claims remaining in the case, and testimony about that ruling should therefore be inadmissible.  Fed. R. Evid. 401, 402.  Moreover, such testimony would be unfairly prejudicial to defendants, even if relevant, and is inadmissible under Rule

403.  *See, e.g.*, *Fagin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999) (affirming exclusion of sanctions order in prior litigation under Rule 403).

**Motion #5: Motion to Exclude Evidence Relating to Discovery Disputes and Pleadings**

This Court should preclude plaintiff from offering any evidence relating to, or commenting on, the parties' previously-litigated discovery disputes.  The parties' discovery disputes have no bearing on the issues before the jury.  There is simply no reason for plaintiff to offer evidence of the parties' discovery disputes other than to attempt to prejudice OneWest in the eyes of the jury, and such evidence is not permissible under the Federal Rules of Evidence.  *See* Fed. R. Evid. 403; *see, e.g.*, *Fagin,* 184 F.3d at 80 (affirming exclusion of sanctions order in prior litigation under Rule 403).

Similarly, the discovery pleadings in this case, which plaintiff has listed as exhibits, are not independently admissible as affirmative evidence—as opposed to impeachment evidence—in this case.  It is unclear for what purpose plaintiff intends to offer such evidence.  However, to the extent plaintiff intends to use discovery pleadings to paint OneWest as a bad actor by showing purported inconsistencies among pleadings or by arguing that discovery responses were not adequate, such evidence is not relevant to the claims in this case, and is likely to confuse the jury and prejudice OneWest.  *Cf.* Fed. R. Evid. 401, 402, 403.

**Motion #6: Motion to Preclude Plaintiff from Testifying that OneWest Induced Him to Default on His Loan**

This Court should preclude plaintiff from testifying or offering any evidence to suggest that OneWest induced him to default on his loan obligation, since plaintiff's proposed testimony has nothing to do with any of the claims remaining in the case.  *Cf.* Fed. R. Evid. 401, 402.  In his reply brief in support of his Motion for Summary Judgment, plaintiff asserted for the first time he "would be able to testify in detail about how he was induced into foreclosure by the Defendant OneWest's advice for him to miss three mortgage payments

before they would consider him for a possible loan modification . . . ." Pl.'s Reply at 8. But any such testimony is irrelevant. As this Court has held, "[i]t is undisputed that plaintiff borrowed money to purchase his home and that he has defaulted on the loan." Order (Dkt. No. 238) at 8. The purported reason why plaintiff defaulted on his loan obligation has no bearing on whether plaintiff suffered any actual damages as a result of defendants' post-default activities or whether OneWest's investigation into its credit reporting was reasonable. And even if such testimony were relevant, which it is not, any probative value is substantially outweighed by its potential to prejudice OneWest, confuse the issues, waste time, and mislead the jury. Fed. R. Evid. 403.

**Motion #7: Motion to Exclude Unrelated Judicial Opinions**

This Court should preclude plaintiff from offering the Washington State Supreme Court opinion in *Bain v. Metropolitan Mortg. Grp., Inc.*, 175 Wash. 2d 83 (2012)—which plaintiff has identified as an exhibit—or any other opinion by this or any court. An opinion in an unrelated proceeding before a different court, involving different parties, different facts, and different issues has no bearing on the remaining questions in this litigation. *Cf.* Fed. R. Evid. 401, 402. Furthermore, any hypothetical probative value of another court's ruling is substantially outweighed by the potential for severe prejudice against OneWest. *See* Fed. R. Evid. 403. In particular, putting another court's opinion before the jury creates a substantial risk that the jury will give the opinion undue weight, despite that it does not govern any of the circumstances giving rise to the present action to any extent, and would thus undermine the fact-finding function of this jury. *See Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (affirming exclusion of judicial opinion due to risk jury would give it undue weight, "thus creating a serious danger of unfair prejudice"); *U.S. v. Zimmerman*, 943 F.2d 1204, 1212 (10th Cir. 1991) (admitting opinions by other judges was an abuse of discretion). In addition, putting judicial opinions before the jury would invade the role of the Court in instructing the jury

regarding issues of law, and would serve no purpose other than to confuse the jury regarding the issues it is to decide in this case.

**Motion #8: Motion to Exclude Improper Character Evidence**

This Court should preclude plaintiff from offering evidence from other matters regarding the purported credibility of a OneWest representative, Charles Boyle, whom OneWest does not intend to call as a witness in this case. The Court should further enter an order prohibiting plaintiff from calling Charles Boyle as a witness in his case in chief for the sole purpose of attempting to impeach him.

Plaintiff's pretrial statement and exhibit list indicate that he will attempt to introduce evidence about OneWest from other cases, including deposition transcripts and a "composite of cases showing Charles Boyle's testimony is unreliable." It is unclear how plaintiff believes such evidence would be relevant to the legal claims in this case, since OneWest does not plan to call Charles Boyle as a witness. To the extent plaintiff intends to offer documents or testimony pertaining to any actions taken by Mr. Boyle in previous litigation in order to suggest Mr. Boyle lacks credibility in this proceeding, such evidence is improper. Fed. R. Evid. 404(b)(1) (evidence of an act is not admissible to prove character in order to show conformity therewith); Fed. R. Evid. 608(b) (extrinsic evidence inadmissible to attack witness's character for truthfulness).

In particular, plaintiff has identified a transcript of a deposition of Charles Boyle from another case. It appears plaintiff intends to call Charles Boyle in his case-in-chief—by reading testimony from the evidentiary hearing in this case into the record—and then to introduce materials from other cases to attempt to impeach that testimony. If plaintiff plans to call Mr. Boyle primarily for the purpose of attacking him, and not to introduce affirmative evidence, this is improper impeachment and should be excluded. *See* Fed. R. Evid. 404(b)(1), 608(b); *see e.g.*, *U.S. v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001) (affirming exclusion of witness because "it's clear that a party may not call a witness for the sole purpose of impeaching him . . . .").

1  Moreover, calling a witness primarily for the purpose of painting OneWest as a bad actor is not
2  relevant to the legal issues at trial, and has the potential to prejudice OneWest, will confuse the
3  jury, and will delay the case.  *See* Fed. R. Evid. 401, 402, 403.

4  **Motion #9:  Motion to Exclude References to "Robo-Signers" or the "Mortgage**
5  **Crisis"**

6  This Court should preclude plaintiff from offering any testimony about "robo-signers"
7  and the "mortgage crisis" because any such testimony has no bearing on the issues remaining in
8  this action and use of these terms would be confusing to the jury and unfairly prejudicial to
9  OneWest.  *Cf.* Fed. R. Evid. 401, 402, and 403.  Since 2010, the term "robo-signing" has been
10 used indiscriminately by many borrowers challenging foreclosure proceedings, despite its
11 inapplicability to the vast majority of foreclosure cases.  OneWest anticipates that plaintiff here
12 will attempt to invoke those or other similar terms as a means to inflame the jury,
13 notwithstanding their irrelevance to the legal claims at trial.  This Court should not allow
14 plaintiff to do so.

15 **Motion #10:  Motion to Exclude Evidence of a Pattern or Practice of RESPA**
16 **Violations**

17 This Court should preclude plaintiff from offering any evidence for the purpose of
18 establishing a "pattern or practice" of violations of the Real Estate Settlement Procedures Act,
19 12 U.S.C. §§ 2601 *et seq.* ("RESPA") on the grounds that such evidence would be unfairly
20 prejudicial to OneWest.  *See* Fed. R. Evid. 403.  In its ruling on the summary judgment motions
21 regarding RESPA, this Court stated, "[t]he evidence reveals only a single wrong:  the failure to
22 treat plaintiff's letter as a QWR."  Order, Dkt. No. 238, at 21.  Plaintiff, for the first time in his
23 pretrial statement, claims that OneWest engaged in a pattern or practice of RESPA violations.
24 Plaintiff has never before alleged a pattern or practice of violations under RESPA.  *See* Sec.
25 Am. Compl. at ¶ 3.2.  As such, OneWest has been deprived of any opportunity to conduct
26

discovery on this last-minute theory, or to designate witnesses and it would be unfairly prejudicial to OneWest to allow plaintiff to change his theory of recovery at the eleventh hour.

**Motion #11: Motion to Exclude Evidence of Plaintiff's Litigation Costs**

Plaintiff should be barred from putting on evidence of attorneys' fees or other costs associated with litigation of this case after plaintiff filed this lawsuit. This Court has held that costs of pursuing a lawsuit under the Consumer Protection Act cannot constitute an "injury" or "actual damages" under the CPA. *See* Order, Dkt. No. 238, at 24; *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash. App. 553, 565–66, 825 P.2d 714 (Wash. App. 1992) (explaining that attorney fees incurred litigating a suit are not actual damages under the CPA); *Demopolis v. Galvin*, 52 Wash. App. 47, 57 (Wash. App. 1990). Similarly, attorney fees and costs under the federal statutory claims remaining for trial are also to be determined by the Court, if appropriate, and are not proper subjects of proof at trial. Thus, costs and fees after plaintiff initiated this lawsuit are not relevant to the issues the jury will assess, and plaintiff should be barred from introducing such evidence. *Cf.* Fed. R. Evid. 401, 402. Allowing evidence of expenses incurred after the filing of this case would also confuse or mislead the jury in determining whether plaintiff proved cognizable injury and actual damages caused by defendants. *Cf.* Fed. R. Evid. 403.

**Motion #12: Motion to Exclude Evidence That OneWest Reviewed Plaintiff's Credit Report During This Litigation**

This Court should not allow plaintiff to argue before the jury that OneWest reviewed his credit report without his permission during the course of this litigation. Plaintiff includes in his pretrial statement a contention that "[d]uring the course of the litigation, defendants pulled Plaintiff's credit without his permission." Plaintiff should be barred from putting on such evidence at trial because plaintiff has never pleaded any claim based on that contention, and it has no bearing on any claim at trial. *See* Fed. R. Evid. 401, 402.

1       Moreover, even if plaintiff had alleged a claim regarding OneWest's review of his credit report, the propriety of that review, and whether it was "with permission," would be legal issues, to be resolved by the Court, not the jury.  And as OneWest has previously briefed, OneWest's review of plaintiff's credit report was permissible as a matter of law.  *See* Dkt. No. 216 at 4–6; 15 U.S.C. § 1681b(a)(3)(A),(F); *see, e.g.*, *James v. Interstate Credit & Collection, Inc.*, No. 03-CV-1037, 2005 U.S. Dist. LEXIS 15495 at *5, 12–15 (E.D. Pa. July 29, 2005) ("Given plaintiff's FDCPA claim against the Defendant arising out of its collection efforts . . ., it was appropriate for Defendant to obtain Plaintiff's consumer report to assess its possible liability under the FDCPA.") (opinion attached as **Attachment 3** hereto); *McNall v. Credit Bureau*, 689 F. Supp. 2d 1265, 1273–74 (D. Or. 2010) (enforcement of medical services debt a permissible purpose to review credit report under section 1681b(a)(3)(A)).

      Accordingly, OneWest seeks an order from this court precluding plaintiff from testifying or offering any evidence to suggest that OneWest reviewed his credit report during the course of this litigation.

Dated:  August 12, 2013.

                                    LARKINS VACURA LLP

/s/ Julie R. Vacura
_____
Julie R. Vacura, WSBA # 34588
Joseph D. Mueller, OSB # 111780 (*pro hac vice*)
Attorneys for Defendant OneWest Bank, F.S.B.
and Mortgage Electronic Registration Systems, Inc.

**CERTIFICATE OF SERVICE**

I am employed in Multnomah County, State of Oregon.  I am over the age of 18 and am not a party to the within action; my business address is 621 SW Morrison St., Suite 1450, Portland, Oregon 97205.

On August 12, 2013, I served the following document(s) described as:

**ONEWEST BANK, FSB'S MOTIONS IN LIMINE**

on the party or parties listed on the following page(s) in the following manner(s):

☐    **BY HAND DELIVERY:**  For each party, I caused a copy of the document(s) to be placed in a sealed envelope and caused such envelope to be delivered by messenger to the street address(es) indicated on the attached service list.

☐    **BY FEDERAL EXPRESS:**  For each party, I caused a copy of the document(s) to be placed in a sealed envelope and caused such envelope to be delivered by Federal Express to the street address
(es) indicated on the attached service list.

☐    **BY FIRST-CLASS MAIL:**  For each party, I caused a copy of the document(s) to be placed in a sealed envelope and caused such envelope to be deposited in the United States mail at Portland, Oregon, with first-class postage thereon fully prepaid and addressed to the street address(es) indicated on the attached service list.

☐    **BY FACSIMILE:**   For each party, I caused a copy of the document(s) to be sent by facsimile to the facsimile number(s) indicated on the attached service list.  If this action is pending in Oregon state court, then printed confirmation of receipt of the facsimile generated by the transmitting machine is attached hereto.

☐    **BY E-MAIL:**  For each party, I caused a copy of the document(s) to be sent by electronic mail to the e-mail address(es) indicated on the attached service list.  If this action is pending in Oregon state court, then I received confirmation that the e-mail was received.

☒    **BY ECF:**  For each party, I caused a copy of the document(s) to be sent by electronic mail via ECF to the e-mail address(es) indicated on the attached service list.

I declare under penalty of perjury under the laws of the State of Oregon that the foregoing is true and correct.

/s/ Julie R. Vacura
Julie R. Vacura

Page 1 – Certificate of Service

Ha Thu Dao
hadaojd@gmail.com, haandlinda@gmail.com, youremylawyer@gmail.com
    Attorney for Plaintiff

Fred B Burnside fredburnside@dwt.com, cindybourne@dwt.com, lisabass@dwt.com, seadocket@dwt.com
    Attorney for MERS

Charles Elliot Katz    ckatz@rcolegal.com, aorr@rcolegal.com, chuckkatz@yahoo.com, ecflit@rcolegal.com
    Attorney for Defendants

Heidi Buck Morrison    hbuck@rcolegal.com, buck4343@gmail.com, ecflit@rcolegal.com, kstephan@rcolegal.com, tkwong@rcolegal.com
    Attorney for Defendants